UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., <br><br> Plaintiff, <br><br> v. <br><br> CELL GENESYS, INC. and TRANSKARYOTIC THERAPIES, INC., <br><br> Defendants. | C.A. No. 04-11810 (MLW) |

**MEMORANDUM IN SUPPORT OF CELL GENESYS, INC.'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE
ALTERNATIVE, FOR SEVERANCE AND TRANSFER OF
COUNT I OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

On August 18, 2004, defendant Cell Genesys, Inc. ("CGI") filed suit (the "D.C. Action") against plaintiff Applied Research Systems ARS Holding, N.V. ("ARS") in the U.S. District Court for the District of Columbia. See Exhibit A hereto. CGI brought the D.C. Action under 35 U.S.C. § 146, which provides for appeals from "interference" decisions of the U.S. Patent and Trademark Office Board of Patent Appeals and Interferences (the "PTO"). CGI was dissatisfied with one such decision, rendered in June 2004, involving competing patent claims by CGI and ARS.

On August 19, 2004, the day it was served with CGI's complaint in the D.C. Action, ARS filed its own § 146 action, involving the same PTO decision, in this Court. ARS claimed "on information and belief" that this Court had personal jurisdiction over CGI, and thus could bring its § 146 action here.

~BOST1:309363.v1

Not so: this Court lacks "general" personal jurisdiction over CGI, as CGI has no continuous or systematic presence in Massachusetts. This Court also lacks "specific" personal jurisdiction over CGI, as the events that are the subject of ARS's § 146 appeal did not arise, and do not relate to, the transaction of any business by CGI in Massachusetts. As a result, this Court thus may not assert personal jurisdiction over CGI under Massachusetts' long-arm statute, and this case should be dismissed under Rule 12(b)(2), Fed.R.Civ.P.

In the alternative, should this Court determine that it has personal jurisdiction over CGI in connection with ARS's § 146 appeal (now found in Count I of ARS's First Amended Complaint), this Court should sever Count I from Count II (a count that does not name CGI as a defendant) and transfer Count I to the U.S. District Court for the District of Columbia, pursuant to § 1404(a). ARS already has appeared voluntarily as a counterclaim-plaintiff in the D.C. Action, and its counterclaims there are identical to those in Count I. See <u>Exhibit B</u> hereto. ARS has admitted that the District of Columbia court is a proper venue. That court is as convenient as this Court (if not more so) for the parties and their witnesses, and as the venue of the "first-filed action" between the parties, the D.C. court should adjudicate their PTO dispute.

**Factual Background**

*Cell Genesys, Inc.*

CGI is a biotechnology company focused on the research, development and commercialization of biological therapies for cancer. CGI is a Delaware corporation whose headquarters is in South San Francisco, California. CGI owns three manufacturing facilities, two of which are in California and the other of which is in Tennessee. All of CGI's employees are in California or Tennessee. CGI owns no facilities, and employs no personnel, in Massachusetts. CGI is not registered to do business in Massachusetts, and has paid no taxes to the

Commonwealth or any of its municipalities. See Affidavit of Robert H. Tidwell, ¶¶ 1-2 ("Tidwell Affidavit," filed herewith).

CGI's contacts with Massachusetts have been sporadic. The company has nine directors, one of whom (Dr. John T. Potts, Jr.) is a Massachusetts resident. The company's directors conduct their business at meetings, none of which has occurred in Massachusetts during at least the last four years. See id. at ¶ 3. Dr. Potts also is a member of CGI's four-person Scientific Advisory Board, but his fellow members of that board live outside of Massachusetts, and the board conducts its business outside of the state. See id. at ¶ 4. Dr. Potts also is one of two Massachusetts residents who is a member of CGI's Medical Advisory Board, but like the Scientific Advisory Board, the Medical Advisory Board conducts its business outside of Massachusetts. See id.

*The '114 Interference Proceeding*

Paragraph ¶ 5 of ARS's initial Complaint in this matter admits that what is now Count I of this action arose out of an "interference" proceeding conducted at the PTO in 2003 and 2004 between CGI and ARS (Interference No. 105, 114, or the "'114 Interference"). The purpose of the '114 Interference, like other PTO interference proceedings, was to determine the first inventor of a disputed technology. The competing claims in the '114 Interference arose from a patent owned by ARS (U.S. Patent No. 5,272,071, or the "'071 Patent") and a CGI patent application, U.S. Application No. 08/102,390 (the "'390 Application"). See Complaint, ¶¶ 5-6; Affidavit of Steven B. Kelber, ¶¶ 4-5 ("Kelber Affidavit," filed herewith).

The '114 Interference had no relationship to Massachusetts. None of facts or issues raised in the '114 Interference arises from the conduct of any business by CGI in Massachusetts,

from any contacts that CGI has had with Massachusetts, or from any communications that CGI has had with any Massachusetts resident. See Tidwell Affidavit at ¶ 5.

*CGI's Appeal of the '114 Interference*

The PTO issued its final decision in the '114 Interference on June 22, 2004 (the "Final Decision"). See Exhibit C hereto. CGI was dissatisfied with the Final Decision, and thus on August 18, 2004, it timely filed an appeal of the Final Decision pursuant to 35 U.S.C. § 146, in the D.C. Action. CGI served its complaint in the D.C. Action on ARS that same day, by Federal Express. See Kelber Affidavit at ¶ 5.

*ARS's Appeal of the '114 Interference, and its Later-Filed Claims Against TKT*

On the very day that it received service of CGI's complaint in the D.C. Action, ARS filed its own § 146 appeal of the PTO's Final Decision, by filing its Complaint here. Eleven days later, ARS filed its First Amended Complaint. ARS's § 146 appeal against CGI is now found in Count I of the First Amended Complaint, while in Count II of that complaint, ARS asserts that CGI's co-defendant, Transkaryotic Therapies, Inc. ("TKT"), is liable for patent infringement. ARS makes no patent-infringement or any other claims against CGI, apart from its § 146 appeal, and ARS has no claim against TKT other than that in Count II for patent infringement.

While ARS and CGI have conducted no business in Massachusetts with each other, CGI has conducted sporadic business with TKT in Massachusetts. In June 2002, CGI granted TKT a license (the "TKT License") to use, among other things, the technology described in the '390 Application. See Tidwell Affidavit at ¶ 7 and Exhibit 1 thereto. CGI and TKT negotiated and executed the TKT License primarily by telephone and meetings outside of Massachusetts at CGI, although one initial meeting took place in Massachusetts. The majority of CGI's performance under the TKT License has occurred, and continues to occur, outside of Massachusetts. CGI has

4

communicated with TKT about the TKT License since June 2002, but the majority of those communications have been by mail, telephone, email or facsimile. See Tidwell Affidavit at ¶ 7.

*The § 146 Proceedings*

CGI and ARS's § 146 claims will proceed as "quasi-de novo review" of the PTO's Final Decision. In such cases, findings by the PTO are entitled to deference by the district court, if based on evidence considered by the PTO. CGI intends to move the entire record before the PTO into evidence in the § 146 proceeding, as permitted by statute, and the district court's review will proceed on that record. See Kelber Affidavit at ¶ 6.

CGI anticipates that the evidence to be heard by the district court de novo will be quite limited. In its Final Decision, the PTO made certain findings with respect to art that it did not apply to the claims of ARS's '071 Patent, including U.S. Patent 6,528,313 (the "'313 Patent"). The PTO specifically found that the '313 Patent would be prior art against ARS's '071 Patent if that '071 Patent were not entitled to its earliest priority date for the full scope of the claims under 35 U.S.C. § 120. The PTO also found that the '071 Patent was not entitled to its earliest priority date. CGI does not anticipate presenting new evidence on this issue, and it is unlikely that ARS will present its own evidence on this issue. See Kelber Affidavit at ¶ 6.

CGI anticipates presenting the testimony of the inventor of the technology described in CGI's '390 Application, as well as corroborating witnesses, in connection with CGI's challenge to the PTO's finding that a Japanese publication was "prior art" against CGI's patent claims. See id. at ¶ 7. The inventor and his corroborators are under contract to CGI, and will appear to testify wherever CGI requests. See id. at ¶ 8. It is unlikely that ARS will present any testimony on the Japanese prior-art issue, other than expert testimony on the sufficiency of CGI's evidence. CGI is not aware of any evidence, or any witness who resides, in Massachusetts that is not under

~BOST1:309363.v1

contract to ARS, or who is more likely to appear in Massachusetts than in the District of Columbia. See Kelber Affidavit at ¶¶ 8-11.

Unless their § 146 claims are resolved by dispositive motion, ARS and CGI likely could have their cases ready for trial within ten (10) months. ARS's infringement claim against TKT likely will prolong the proceedings in this Court for CGI, and add to its expense. Since CGI is TKT's co-defendant before this Court (albeit not one named in any count along with TKT), CGI may find itself in a position where it considers itself obliged to defend against the infringement charge, lest a later court determine that CGI is bound by res judicata to any judgment of infringement by TKT. Patent infringement cases raise issues of claim construction, questions of inequitable conduct, a broad range of discovery issues, questions of damages, royalties and lost profits, and in the event infringement is found, willfulness of infringement. These issues (along with the witnesses and evidence that bear on those issues) are much broader than those presented by ARS and CGI's § 146 appeal of the '114 Interference – indeed, the PTO lacks jurisdiction to hear claims of infringement. Such cases often are not resolved or ready for trial even within two years. Moreover, as TKT was not a party to the '114 Interference, TKT would not be bound by the record of the '114 Interference, and hence it is likely that ARS would have to re-present the evidence of the validity of its '071 Patent again. See Kelber Affidavit at ¶¶ 12-14.

## Argument

I. THIS COURT LACKS PERSONAL JURISDICTION OVER CGI.

In patent cases, the decisions of the Federal Circuit control questions of personal jurisdiction. See, for example, <u>Akro Corporation v. Luker</u>, 45 F.3d 1541, 1543 (Fed.Cir. 1995); <u>Red Wing Shoe Company, Inc. v. Hockerson-Halberstadt, Inc.</u>, 148 F.3d 1355, 1358 (Fed.Cir. 1998). The Federal Circuit's test for whether personal jurisdiction exists is nonetheless familiar:

> In general, a district court's personal jurisdiction over a non-consenting defendant outside the boundaries of the forum is a two-step inquiry. First, the district court determines whether a provision makes the defendant amenable to process.... Second, the district court ensures that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" that are embodied in the Due Process Clause.

Id., quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). ARS's claims against CGI founder on the first prong of the Red Wing Shoe test: Cell Genesys is not amenable to process in the District of Massachusetts on Count I of ARS's First Amended Complaint.[1]

Rule 4, Fed.R.Civ.P., determines whether a defendant is amenable to process. See Akro, 45 F.3d at 1543-44[2]; Red Wing Shoe, 148 F.3d at 1358 & n. *. Rule 4(k) sets forth territorial limits on service:

(1)   Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant

   (A)   who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or

   ...

   (D)   when authorized by a statute of the United States.

(2)   If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Rules 4(k)(1)(D) and 4(k)(2) do not give any court in this District personal jurisdiction over CGI in connection with ARS's claims in Count I. Rule 4(k)(1)(D) does not apply, as the only "statute of the United States" that authorizes additional service in appeals from PTO decisions in

---

[1] In ¶ 5 of its First Amended Complaint, ARS alleges "[o]n information and belief" that CGI is subject to personal jurisdiction in this district.

[2] Akro's discussion of personal jurisdiction focuses on a prior version of Rule 4, especially Rule 4(e). Rule 4 was substantially revised and reorganized in 1993.

interference cases is § 146 itself. That statute provides in part: "If there be adverse parties residing in a plurality of districts not embraced within the same state, <u>or an adverse party residing in a foreign country</u>, the United States District Court for the District of Columbia shall have jurisdiction and may issues summons against the adverse parties directed to the marshal of any district in which any adverse party resides." By its terms, § 146 augments the jurisdiction <u>only</u> of the U.S. District Court for the District of Columbia (where CGI's D.C. Action is pending), and not the personal jurisdiction of district courts nationwide.

Rule 4(k)(2) likewise does not apply to this case.[3] Rule 4(k)(2) allows service of process only when a defendant is not subject to the "courts of general jurisdiction" of any state. It is beyond dispute that CGI is subject to the courts of general jurisdiction of California (its principal place of business) and Delaware (its state of incorporation). See Tidwell Affidavit at ¶ 2.

ARS's sole hope for establishing personal jurisdiction over CGI in Massachussetts is Rule 4(k)(1)(A), which authorizes service of a summons in a district where the defendant "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Massachusetts law permits service of process outside of Massachusetts only when the exercise of personal jurisdiction is authorized by c.223A of the Commonwealth's General Laws. See M.G.L. c.223A, § 4. The Massachusetts "long-arm statute," <u>id.</u> at § 3, provides as follows:

> A court may exercise personal jurisdiction over a person...<u>as to a cause of action in law or equity arising from</u> the person's
>
> > (a)   transacting any business in this commonwealth;
> >
> > (b)   contracting to supply services or things in this commonwealth;

---

[3] In ¶ 5 of its First Amended Complaint, ARS asserts again on "information and belief" that Rule 4(k)(2) permits service of CGI.

    (c)    causing tortious injury by an act or omission in this commonwealth;

    (d)    causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth;

    (e)    having an interest in, using or possessing real property in this commonwealth; [or]

    (f)    contracting to insure any person, property or risk located within this commonwealth at the time of contracting....[4]

Chapter 223A, § 3 extends to limits of the Due Process Clause "'only when some basis for jurisdiction enumerated in [c.223A, § 3] has been established.'" REMF Corp. v. Miranda, 60 Mass.App. 905, 907, 801 N.E.2d 296, 298 (2004) (rescript), quoting Heins v. Wilhelm Loh Wetzlar Optical Machinery GmbH & Co. KG, 26 Mass.App. 14, 16, 522 N.E.2d 989, 991 (1988). See also Morrill v. Tong, 390 Mass. 120, 129, 453 N.E.2d 1221, 1227 (1983) (even when presented with jurisdictional facts sufficient to survive a due-process inquiry, court must decline jurisdiction if plaintiff is unable to satisfy § 3's prerequisites); Tatro v. Manor Care, Inc., 416 Mass. 763, 767, 625 N.E.2d 549, 551 (1994) (due process tests applied only if "the literal requirements of the [long-arm] statute are satisfied"); Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 712 (1st Cir.1996) (§ 3 imposes requirements beyond those imposed by federal constitution).[5]

---

[4]   Subsections 3(g) and (h) pertain to family-law matters, and are irrelevant here.

[5]   "[I]n interpreting the meaning of state long-arm statutes, we elect to defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach the limit of federal due process." Graphic Controls Corporation v. Utah Medical Products, Inc., 149 F.3d 1382, 1386 (Fed.Cir. 1998).

ARS's claims against CGI in its First Amended Complaint – its appeal under 35 U.S.C. § 146 of the PTO's Final Decision — do not "arise" from any of the six activities listed in c.223A, § 3. Looking first at § 3(a), ARS's claims do not arise from CGI's transaction of any business in Massachusetts. In order to establish "transacting-business" jurisdiction under § 3(a), "the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." The latter requirement is a "but-for" test: that is, the plaintiff's claim must be "made possible by, or lie[] in the wake of, the [defendant's] transaction of business in the forum State." Tatro, 416 Mass. at 767, 769-772.

ARS cannot point to any transaction by CGI in Massachusetts that is a "but-for" cause of ARS's appeal of the PTO's Final Decision. Fundamentally, that appeal arises from (i) the filing of two competing patent applications in 1992 and 1993 (see First Amended Complaint at ¶ 6) and (ii) the '114 Interference proceeding. CGI did nothing in Massachusetts that is a "but-for" cause of the filing of its patent application or the result of the '114 Interference. See Tidwell Affidavit at ¶ 5. Since ARS cannot show that CGI business activities in Massachusetts are a "but-for" cause of its appeal under § 146 of the PTO's Final Decision, this Court cannot assert personal jurisdiction over CGI.[6]

---

[6] See Graphic Controls, 149 F.3d at 1386-88 (plaintiff's failure to prove that district court had "transaction-of-business" jurisdiction over defendant under New York's long-arm statue warrants dismissal of complaint under Rule 12(b)(2)); Pieczenik v. Dyax Corporation, 265 F.3d 1329 (Fed.Cir. 2001) (same result); Fern v. Immergut, 55 Mass.App. 577, 773 N.E.2d 972 (2002) (applying c.223A, § 3(a); no "transaction-of-business" jurisdiction over legal malpractice claim, where attorneys' alleged error – their negligent representation of client in a loan transaction – was not the but-for result of attorneys' business contacts with Massachusetts); Bennett v. Jack Dennis Whitewater Trips, 925 F.Supp. 889 (D.Mass. 1996) (applying § 3(a); no jurisdiction where defendant had no business contacts with plaintiff in Massachusetts, and defendant's conduct of business in Massachusetts was not a but-for cause of plaintiff's injuries); Sheridan v. Ascutney Mountain Resort Services, Inc., 925 F.Supp. 872 (D.Mass. 1996) (no jurisdiction under § 3(a) where plaintiff failed to show that her presence at defendant's out-of-state resort was the but-for result of defendant's Massachusetts activities).

10

ARS fares no better under §§ 3(b)-(f) of the long-arm statute. ARS's appeal of the PTO's Final Decision does not arise from any contract by CGI "to supply services or things" or to insure "a person, property or risk" located in Massachusetts. See c.223A, §§ 3(b), 3(f). ARS's appeal does not pertain to any "tortious injury" alleged to have been caused by CGI, either inside or outside of Massachusetts. See id. at §§ 3(c)-(d). Finally, ARS's appeal does not arise from CGI's interest in, use or possession of real property in Massachusetts, as CGI has none. See Tidwell Affidavit at ¶ 2. Since this Court may not assert personal jurisdiction over CGI under the Massachusetts long-arm statute, ARS's claims against CGI in Count I of the First Amended Complaint should be dismissed under Rule 12(b)(2).

II.   IN THE ALTERNATIVE, THIS COURT SHOULD SEVER COUNT I AND TRANSFER IT TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA.

Should this Court hold that it has personal jurisdiction over CGI, this Court should sever Count I from the First Amended Complaint and transfer it to the U.S. District Court for the District of Columbia, where the D.C. Action is pending. In conjunction with Rule 21 (which provides in part that "[a]ny claim against a party may be severed and proceeded with separately"), 28 U.S.C. § 1404(a) permits the transfer of a single claim within a civil action "[f]or the convenience of parties and witnesses, in the interests of justice, ... to any other district...where it might have been brought." See McGuire v. Singer Co., 441 F.Supp. 210 (D.V.I. 1977) (severing civil antitrust counts from false arrest, abuse of process and defamation counts, and transferring antitrust counts to the forum that was more convenient for the parties and witnesses on those counts).

A.     **ARS Could Have Brought its § 146 Appeal in the District of Columbia.**

Without question, ARS could have brought its appeal of the PTO's Final Decision in the District of Columbia.  Section 146 provides, in pertinent part: "If there be adverse parties residing in a plurality of districts not embraced within the same state, or an adverse party residing in a foreign country, the United States District Court for the District of Columbia shall have jurisdiction...." (Emphasis added.)  In such cases, the district court for the District of Columbia has the power to issue process nationwide.  See id.

ARS is a foreign corporation that has its principal place of business outside of the United States.  See First Amended Complaint at ¶ 1.  It thus could have brought its § 146 claims in the district court for the District of Columbia, where the D.C. Action is now pending.  Indeed, ARS has filed a Counterclaim and Cross-action in the D.C. Action, and concedes that venue is proper in the District of Columbia.  See Exhibit B at ¶ 3.  This Court thus has the power under § 1404(a) to transfer Count I to the U.S. District Court for the District of Columbia.

B.     **As the First-Filed Suit, the D.C. Action Should Take Priority; ARS Cannot Show That the Convenience of the Parties and Witnesses, or Any Other Factor, Overcomes that Priority.**

This Court has noted that in patent cases,

> "[t]he general rule favors the forum of the first-filed action.... Exceptions, however, are not rare, and are made when justice or expediency requires, as in any issue of choice of forum.... There must, however, be sound reasons that would make it unjust or inefficient to continue the first-filed action."

Biogen, Inc. v. Schering AG, 954 F.Supp. 391, 398 (D.Mass. 1996) (Wolf, J.), quoting Genentech, Inc. v. Eli Lilly, 998 F.2d 931, 937-38 (Fed.Cir. 1993).  See also Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987) ("Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision.").

In Biogen, plaintiff Biogen filed a declaratory-judgment action in this Court, seeking a ruling that it was not infringing on its competitors' patent. Before they were served with process from this Court, Biogen's competitors filed an infringement action against Biogen in the District of New Jersey. Biogen's competitors then sought dismissal of Biogen's first-filed Massachusetts action. This Court placed the burden on those who brought the second-filed action (here, ARS) to show that either (a) the convenience of the parties or the witnesses warranted a preference for the second-filed action, or (b) the plaintiff in the first-filed action had acted inequitably in suing first. The plaintiffs in the second-filed action could not make either showing, and thus this Court refused to dismiss Biogen's first-filed lawsuit. See id. at 398-99.

ARS cannot make either of the showings necessary to overcome the "first-filed action" rule.

### 1. This Forum is Inconvenient to CGI.

At first glance, with respect to ARS and CGI, neither forum (the District of Columbia and Massachusetts) is more convenient than the other. CGI is headquartered in California, while ARS is based in the Netherlands Antilles. They both subjected themselves to the jurisdiction of the PTO by filing patent applications. By proceeding with the '114 Interference, they both subjected themselves to 35 U.S.C. § 146, including those provisions of the statute that create "default" jurisdiction in the U.S. District Court for the District of Columbia over certain § 146 appeals, particularly those involving foreign parties.

What makes Massachusetts inconvenient for CGI is not the forum per se, but the specific claims now pending in this forum. ARS has joined TKT as a co-defendant in Count II of ARS's First Amended Complaint. As long as Count I and Count II are joined, CGI will have to litigate against ARS on both counts. Were Count I severed and transferred to the District of Columbia, CGI would no longer be "inconvenienced" by Count II, a count in which CGI is not named as a defendant. This factor favors severance of Count I and its transfer to the District of Columbia.

~BOST1:309363.v1

The other "convenience" factor, that concerning ARS and CGI's witnesses, does not overcome the presumption of the first-filed action rule. An action under § 146 is a "quasi-de nove review": it is a trial de novo on the discrete issues of fact raised by the parties in their pleadings, but otherwise review is on the record developed by the PTO. See Winner Int'l Royalty Corp. v. Wang, 202 F.3d 1340, 1347-48 (Fed.Cir. 2000). Moreover, in weighing the "convenience-of-witnesses" factor, the key question is not whether one forum is more convenient than another, but whether one court has greater power than the other to compel the attendance of reluctant witnesses. See, for example, Veryfine Products, Inc. v. Phlo Corporation, 124 F.Supp.2d 16, 24-25 (D.Mass. 2000) (Young, C.J.).

Against this backdrop, ARS cannot show that Massachusetts is more convenient than the District of Columbia. ARS has not identified any witness would be "available" in Massachusetts, but "unavailable" in the District of Columbia. Instead, both parties' likely witnesses are contractually obligated to, and likely will, appear wherever this case proceeds. See Kelber Affidavit at ¶¶ 6-8, 10; Assignment, Chappel to ARS (attached as Exhibit D hereto) (inventor of ARS's '071 Patent is obligated to appear wherever ARS requests). ARS thus cannot show that the "convenience of witnesses" overcomes the presumption described in Biogen that favors of the first-filed action.

### 2. CGI Did Not Act Inequitably By Filing its Action First.

This case does not involve any of the abusive, race-to-the-courthouse conduct reviewed by this Court in Biogen, 954 F.Supp. at 398-99, that merits setting aside the first-filed action rule:

- There was no race to the courthouse here, except (perhaps) for ARS's speedy filing of this action the day after it received service of CGI's D.C. complaint. CGI filed suit 56 days after the Final Decision, only four days before the statutory deadline for filing a § 146 appeal.

~BOST1:309363.v1

- There is no evidence that CGI lulled ARS into deferring the filing of its action here. See, for example, <u>Davox Corp. v. Digital Sys. Int'l, Inc.</u>, 846 F.Supp. 144 (D.Mass 1993) (Wolf, J.).

- The D.C. Action is a straightforward appeal under § 146, unlike suspect, first-filed declaratory-judgment actions that are intended to beat an opponent's suit for patent infringement. See, for example, <u>Veryfine</u>, 124 F.Supp.2d at 22 (describing practice).

- This is not a case where a first-filed suit for patent infringement involves a mere customer, while the (preferred) second-filed suit involves the manufacturer of the allegedly infringing device. See, for example, <u>Codex Corp. v. Milgo Electronic Corp.</u>, 553 F.2d 735, 737-38 (1st Cir. 1977) (describing "manufacturer" exception to the first-filed rule).

- The D.C. Action also was not a product of forum shopping: since ARS is a foreign corporation, it appeared that the <u>only</u> forum available to CGI to commence a § 146 appeal was the one created by statute, the U.S. District Court for the District of Columbia.

In short, ARS cannot point to any factor that counsels overturning the presumption that the first-filed action – here, the D.C. Action – should proceed first.

### Conclusion

This Court lacks personal jurisdiction over CGI, and thus ARS's claims against CGI should be dismissed under Rule 12(b)(2). In the alternative, this Court should sever Count I of

~BOST1:309363.v1

ARS's First Amended Complaint, and transfer that count to the U.S. District Court for the District of Columbia.

                          CELL GENESYS, INC.,

                          By its attorney,

                          /s/ Michael D. Vhay
                          Michael D. Vhay (BBO #566444)
                          PIPER RUDNICK LLP
                          One International Place, 21st Floor
                          Boston, MA  02110-2600
                          (617) 406-6000 (telephone)
                          (617) 406-6100 (fax)

Dated: October 4, 2004