Interference 105,114

While GENESYS's response to Paper No. 1 indicates that Claims 110 and 111 "may not require the use of homologous recombination" (Paper No. 10, p. 1, para. 3), GENESYS argued at oral hearing on February 26, 2004, that the prior knowledge of sequences upstream and/or downstream of the target gene, which Claim 111 purportedly requires for insertion of the heterologous DNA into said cell's genome "in a region in the vicinity of said gene," is required only when DNA is to be inserted by homologous recombination (TP (Paper No. 171), p. 25, l. 12, to p. 26, l. 18). However, GENESYS does not deny that the identical language in Claim 110 does not require insertion by homologous recombination (TP (Paper No. 171), p. 24, l. 18, to p. 25, l. 8), presumably because dependent Claim 112, whereby "said heterologous DNA has been inserted through the use of homologous recombination, must further limit Claim 110 upon which it depends to satisfy 35 U.S.C. § 112, fourth paragraph.

While prior knowledge of sequences upstream and/or downstream of a target gene may be required for insertion of heterologous DNA into a cell's genome "in a region in the vicinity of said gene" by homologous recombination, neither Claim 110 nor Claim 111 requires prior knowledge of sequences upstream and/or downstream of a target gene in a cell's genome before inserting a heterologous DNA into the cell's genome "in a

-31-

Interference 105,114

region in the vicinity of said gene" and neither claim explicitly requires insertion by homologous recombination. GENESYS does not point to any evidence of record indicating that prior knowledge of sequences upstream and/or downstream of a target gene is never needed to insert an heterologous DNA into a cell's genome "in a region in the vicinity of said gene" by other known insertion techniques. Nor has GENESYS pointed to any evidence of record that heterologous DNA cannot be inserted into a cell's genome in a region in the vicinity of a target gene absent prior knowledge of sequences upstream and/or downstream of the target gene, e.g., by random or point-specific insertion techniques. GENESYS has not shown that heterologous DNA cannot be randomly inserted into a cell's genome at a specific site in a region in the vicinity of a target gene by procedures other than homologous recombination (TP (Paper No. 171), p. 24, l. 22, to p. 25, l. 3). Moreover, prior art Genesys cites against the patentability of subject matter claimed in ARS's '071 patent, prior art which is discussed in depth later in this paper, indicates that heterologous DNA sequences can be inserted by random recombination (Kaufman I) or homologous recombination into the genome of a cell line in the vicinity of the target cell with or without prior knowledge of sequences upstream and/or downstream of the target gene. Heterologous DNA sequences are commonly inserted by homologous

-32-

Interference 105,114

recombination within flanking DNA sequences which correspond

to an endogenous target gene without prior knowledge of the

precise nucleotide sequences located upstream or downstream of

the endogenous target gene.

     During patent examination the pending claims must be
interpreted as broadly as their terms reasonably allow.
See In re Prater, 415 F.2d 1393, 1404-05, 162 USPQ 541,
550-51 (CCPA 1969)(before the application is granted,
there is no reason to read into the claim the limitations
of the specification).  The reason is simply that during
patent prosecution when claims can be amended, ambiguities
should be recognized, scope and breadth of language
explored, and clarification imposed.

In re Zletz, 893 F.2d 319, 321, 13 USPQ2d 1320, 1322 (Fed. Cir.

1989).

     Patent application claims are given their broadest
reasonable interpretation during examination proceeding,
for the simple reason that before a patent is granted the
claims are readily amended as part of the examination
process.  In re Prater, 415 F.2d 1393, 1405-05 [sic],
162 USPQ 541, 550 (CCPA 1969).  Claims may be amended
for the purpose of distinguishing cited references, or
in response to objections raised under section 112.

Burlington Industries. Inc. v. Quigg, 822 F.2d 1581, 1583,

3 USPQ2d 1436, 1438 (Fed. Cir. 1987).

    Giving Claims 110-112 of GENESYS's involved Application

08/102,390 their broadest reasonable interpretation consistent

with GENESYS's initial statement (Paper No. 10, p. 1, para. 3)

and continuing interpretation of the breadth of Claim 110 upon

which Claim 112 depends, we conclude that:

-33-

Interference 105,114

(1) Claims 110 and 111 are directed to prokaryotic or eukaryotic host cells capable of expressing a gene not normally expressed by that cell (Claim 110), or capable of expressing a gene at higher levels than normally expressed by that cell (Claim 111), comprising heterologous DNA which comprises at least one amplifiable gene or a regulatory sequence, inserted by any known technique in said cell's genome in a region in the vicinity of said gene, whereby said gene may be amplified and expressed; and

(2) Claim 112 is directed to a prokaryotic or eukaryotic host cell capable of expressing a gene not normally expressed by that cell, or capable of expressing a gene at higher levels than normally expressed by that cell, comprising heterologous DNA which comprises at least one amplifiable gene or a regulatory sequence, inserted by homologous recombination in said cell's genome in a region in the vicinity of said gene, whereby said gene may be amplified and expressed.

(b) Claim 105

Claim 105 is directed to a mammalian host cell that expresses a product encoded by a target gene not normally expressed within the genome of the cell line,[3] comprising a

--------

[3]    Genesys's Application 08/102390 expressly states, "The target genes may be any gene of interest . . ." (Exh. 2047, p. 5, 1. 24-25). We conclude, therefore, that a target gene may

-34-

Interference 105,114

heterologous <u>regulatory DNA sequence inserted by any known</u>
<u>technique in the genome of the cell line</u> such that it is
operatively associated with the target gene, whereby said
mammalian host cell expresses the target gene product.

      (c)  <u>Claim 106</u>

    The cell of <u>Claim 106</u> is a <u>human embryonal kidney cell</u>,
wherein the genome of the cell has <u>inserted, by any known</u>
<u>technique, an enhancer and promoter</u> of cytomegalovirus
operatively associated with human erythropoietin gene, so that
the cell expresses human erythropoietin.

      (d)  <u>Claims 107-109</u>

    The methods of <u>Claims 107-109</u> comprise <u>inserting</u> a DNA
construct <u>by homologous recombination</u> into the genome of a
mammalian cell in proximity to a target gene within the genome of
said cell to stimulate or enhance expression of the target gene,

    wherein the target gene encodes (1) a protein not normally
expressed in said cell (Claims 107 & 109), or (2) a protein
normally expressed in said cell (Claim 108); and

    wherein said DNA construct comprises (a) an amplifiable gene
(Claim 107, 108 and 109), a regulatory sequence (Claim 107, 108
and 109), or both (Claim 107, 108 and 109), and (b) DNA

---

be a gene endogenous or exogenous to the cell's genome, unless
the target gene is defined as a "gene of that cell's genome" as
it is in Claims 107-109 of Genesys's Application 08/102390.

Interference 105,114

homologous with DNA in a region of the genome in proximity to the target gene (Claim 107, 108 and 109).

There appears to be no significant difference in the scope of Genesys's method Claims 107 and 109. If there is a difference between Genesys's method Claims 107 and 109 and Genesys's method Claim 108, it is the level at which the target gene is expressed in the mammalian cell prior to inserting the DNA construct. In Claims 107 and 109, the target gene is silent for expression of the protein it encodes in the unmodified mammalian cell, and the insert stimulates its expression of that protein. In Claim 108, the protein the target gene encodes is expressed in the unmodified mammalian cell, and the insert enhances improved expression of that protein. There is no clear line of distinction between Claims 107 and 109.

   B.  <u>Patentability of the parties' claims over prior art</u>

In GENESYS's Preliminary Motion 2 under 37 CFR § 1.633(a) (Paper No. 63), Genesys moves for judgment that Claims 1-58 of ARS's '071 patent are unpatentable under 35 U.S.C. § 102/103 over prior art. In determining the prior art status of each of the references upon which Genesys relies in support of its motion, we initially will presume that Claims 1-58 of ARS's '071 patent are entitled to benefit under 35 U.S.C. § 120 of the December 22, 1989, filing date of ARS's parent U.S. Application 07/454,783.

-36-

Interference 105,114

Genesys relies on one or combinations of the following prior art

references:

   Japan Patent Publication 1-215280, published August 29,
   1989 (Exh. 3009 (Original Japanese); hereafter we refer
   to ARS's and Genesys's certified English translations of the
   Japanese publication (Exh. 3010; Exh. 2016));

   Nasmyth, K. (Nasmyth I), "At Least 1400 Base Pairs of
   5'-Flanking DNA Is Required for the Correct Expression
   of the HO Gene in Yeast," Cell, Vol. 42, pp. 213-223
   (August 1985)(Exh. 2008);

   Nasmyth, K. (Nasmyth II), "The Determination of Mother
   Cell-Specific Mating Type Switching in Yeast by a Specific
   Regulator of HO Transcription," The EMBO Journal, Vol. 6,
   No. 1, pp. 243-248 (1987)(Exh. 2009);

   Kaufman, R., et al. (Kaufman I), "Coamplification and
   Coexpression of Human Tissue-Type Plasminogen Activator
   and Murine Dihydrofolate Reductase Sequences in Chinese
   Hamster Ovary Cells," Molecular and Cellular Biology,
   Vol. 5, No. 7, pp. 1750-1759 (July 1985)(Exh. 2014);

   Smithies, O., et al. (Smithies), "Insertion of DNA
   Sequences into the Human Chromosomal β-Globin Locus by
   Homologous Recombination," Nature, Vol. 317, pp. 230-234
   (September 19, 1985)(Exh. 2010);

   Raibaud, O., et al. (Raibaud), "A Technique for
   Integrating Any DNA Fragment into the Chromosome of
   Escherichia coli," Gene, Vol. 29, 231-241 (1984)
   (Exh. 2012);

   Cid, A., et al. (Cid), "Replacement of the Promoter of the
   Yeast Plasma Membrane ATPase Gene by a Galactose-Dependent
   Promoter and its Physiological Consequences," Current
   Genetics, Vol. 12, pp. 105-110 (1987)(Exh. 2013);

and

   Thomas, K., et al. (Thomas), "Site-Directed Mutagenesis
   by Gene Targeting in Mouse Embryo-Derived Stem Cells,"
   Cell, Vol. 51, pp. 503-512 (November 6, 1987)(Exh. 2011).

Interference 105,114

Genesys also relies on Le Mouellic, H., et al. (Mouellic), U.S.
Patent 6,528,313 (Exh. 2017), which issued March 4, 2003, from
U.S. Application 08/301,037, filed September 6, 1994.  The '037
application is a continuation of U.S. Application 08/048,056,
filed April 19, 1993.  The '056 application is a continuation of
U.S. Application 07/598,679, filed as PCT/FR90/00185 on March 19,
1990, now abandoned.  Genesys cites Mouellic as prior art under
35 U.S.C. § 102(e) based on the its view that Claims 1-58 of
ARS's '071 patent are not entitled to benefit of the December 22,
1989, filing date of its parent U.S. Application 07/454,783,
which is a continuation-in-part of U.S. Application 07/893,447
from which ARS's '071 patent issued.

    All of the references upon which Genesys relies but two are
prior art under 35 U.S.C. § 102(b) with respect to ARS's '071
patent.  Japanese Patent Publication 1-215280 (Japan), published
August 29, 1989 (Exh. 3010; Exh. 2016), is no less than prior art
under 35 U.S.C. § 102(a).  Japan would be prior art under
35 U.S.C. § 102(b), and Mouellic's U.S. Patent 6,528,313, would
be prior art under 35 U.S.C. § 102(e), if Claims 1-58 of ARS's
'071 patent are not entitled to benefit under 35 U.S.C. § 120 of
the December 22, 1989, filing date of its parent U.S. Application
07/454,783.

Interference 105,114

In ARS's Preliminary Motions 3 (Paper No. 47), 4 (Paper No. 4), and 5 (Paper No. 49) under 37 CFR § 1.633(a), ARS moves for judgment that Claims 105 and 110-112 of Genesys Application 08/102,390, filed August 5, 1993, are unpatentable over prior art under 35 U.S.C. § 102/103.   In determining the prior art status of each of the references relied upon by ARS in support of its motions, again we shall presume that Claims 105-112 of Genesys Application 08/102,390 are entitled to benefit under 35 U.S.C. § 120 of the November 6, 1989, filing date of Genesys's parent U.S. Application 07/432,069.   In support of its motion, ARS relies on the following prior art references:

Kaufman, R., et al. (Kaufman I), "Coamplification and Coexpression of Human Tissue-Type Plasminogen Activator and Murine Dihydrofolate Reductase Sequences in Chinese Hamster Ovary Cells," Molecular and Cellular Biology, Vol. 5, No. 7, pp. 1750-1759 (July 1985)(ARS's Exh. 3007 (Paper No. 47); equivalent to Genesys Exh. 2014);

Raibaud, O., et al. (Raibaud), "A Technique for Integrating Any DNA Fragment into the Chromosome of Escherichia coli," Gene, Vol. 29, 231-241 (1984) (ARS's Exh. 3008 (Paper No. 48); equivalent to Genesys Exh. 2012); and

Japan Patent Publication 1-215280, published August 29, 1989 (Exh. 3009 (Original Japanese)(Paper No. 49); hereafter we refer to ARS's and Genesys's certified English translations of the Japanese publication (Exh. 3010; Exh. 2016)); and

Genetic Engineering, Principles and Methods, Vol. 9, Edited by Setlow, J., Plenum Press, New York, 1987; Kaufman, R. (Kaufman II), "High Level Production of Proteins in Mammalian Cells," pp. 155-198 (Exh. 3015).

-39-

Interference 105,114

All of the references upon which ARS relies but one are also prior art under 35 U.S.C. § 102(b) with respect to Genesys's Application 08/102,390. Japanese Patent Publication 1-215280, published August 29, 1989 (Exh. 3010; Exh. 2016), is prior art under 35 U.S.C. § 102(a).

We proceed first to consider the patentability of the subject matter defined by Claims 1-58 of ARS '071 patent and Claims 105-112 of Genesys's involved application over prior art under 35 U.S.C. § 102(b) which Genesys and ARS commonly cite against each other's claims designated as corresponding to the count. Thereafter, we will consider the patentability of Claims 1-58 of ARS's '071 patent over § 102(b) prior art which Genesys alone cites. Finally, we will consider the patentability of the subject matter defined by Claims 1-58 of ARS '071 patent and Claims 105-112 of Genesys's involved application over the teachings of Japanese Patent Publication 1-215,280, published August 29, 1989, commonly cited by Genesys and ARS against each other's claims designated as corresponding to the count, and if necessary, over Mouellic's U.S. Patent 6,528,313.

(1)  <u>Kaufman I (Exh. 2014/3007)</u>

<u>Kaufman I teachings</u>

Kaufman I describes the expression of elevated levels of human tissue-type plasminogen activator (t-PA) in a dihydrofolate

-40-

Interference 105,114

reductase (DHFR)-deficient Chinese hamster ovary (CHO) cell line
by cotransfection and coamplification using a (1) human t-PA cDNA
gene including an upstream simian virus 40 (SV40) enhancer and
(2) a mouse DHFR cDNA gene.  See Exh. 2014: p. 1750, abstract;
p. 1751, cols. 1-2; p. 1752, Fig. 1, col. 1, last para., and
col. 2, first para.  Kaufman I states, (Exh. 2014, p. 1757,
col. 1, first para.; emphasis added):

> The purpose of this investigation was to apply
> gene amplification to the development of a mammalian
> cell line which produces high levels of t-PA, a potential
> thrombolytic agent. . . . [A] cotransfection method was
> used which yields cells containing the t-PA sequences
> closely linked to the DHFR sequences.  Thus, selection
> for DHFR gene amplification by increasing MTX
> [(methotrexate cytotoxin)] resistance provided for
> the coamplification of t-PA sequences.  The DHFR
> transcription unit was constructed without an enhancer
> element. . . . However, cotransfection of the DHFR unit
> with a t-PA transcription unit containing an enhancer
> dramatically increased the efficiency of DHFR
> transformation.  This appeared to occur by in vivo
> ligation of the two separate transcription units,
> resulting in enhancement of DHFR expression by the
> t-PA-associated enhancer element.  Efficient DHFR
> expression was thus dependent on continued association
> with the enhancer from the t-PA transcription unit.

Kaufman I states (Exh. 2014, p. 1757, col. 2):

> Since the continued presence of the enhancer element
> from the t-PA cDNA gene was necessary for efficient
> DHFR expression, a high percentage of this subset is
> expected to have coamplified t-PA sequences and to
> thus express t-PA at high levels.  Our results are
> consistent with this scheme.

-41-

Interference 105,114

Kaufman I adds (Exh. 2014, p. 1758, col. 1):

> It appears that this approach will prove generally
> applicable to the development of cell lines producing
> high levels of a variety of proteins which may prove
> therapeutically useful but which have been previously
> difficult to obtain in sufficient quantities.

### Findings based on teachings of Kaufman I

We find in Kaufman I no teaching or reasonable suggestion to
insert a DNA regulatory segment or amplifiable gene into the
genome of a cell line by homogeneous recombination, as
Claims 1-16 and 28-51 of ARS's '071 patent require.

We find in Kaufman I no teaching or reasonable suggestion
of a DNA construct comprising a DNA regulatory segment or
amplifiable gene capable of stimulating or modifying expression
of a target gene within the genome of a host cell line and a DNA
targeting segment homologous to a region of the target gene, as
Claims 26 and 27 of ARS's '071 patent require.

We find in Kaufman I no teaching or reasonable suggestion
of a genome of a cell line having a DNA regulatory segment
operatively linked with a gene naturally occurring in the genome
of the cell line at a genome-insertion site characterized by a
predetermined DNA sequence, as Claim 17 of ARS's '071 patent
requires.

We find in Kaufman I no teaching or reasonable suggestion of
a cell line expressing a product encoded by a gene normally

-42-

Interference 105,114

silent within the genome of the cell line, wherein the genome
has inserted therein a DNA regulatory segment operatively linked
with said normally silent gene which stimulates the expression
characteristics thereof, as Claims 18, 22-24, and 56-58 of ARS's
'071 patent require.

We find in Kaufman I no teaching or reasonable suggestion of
a cell line showing enhanced expression of a product encoded by a
target gene within the genome of the cell line, wherein the
genome has inserted therein an exogenous DNA regulatory segment
and/or amplifiable gene operatively linked with said target gene
which stimulates its expression characteristics, as Claims 19-21,
and 52-55 of ARS's '071 patent require.

We find in Kaufman I no teaching or reasonable suggestion to
insert an heterologous DNA regulatory sequence or amplifiable
gene into the genome of a cell line by homogeneous recombination,
as Claims 107-109 of Genesys's Application 08/102,390 require.

We find in Kaufman I no teaching or reasonable suggestion of
a human 293 embryonal kidney cell having inserted in its genome a
cytomegalovirus promoter or enhancer operatively associated with
a human erythropoietin gene, as Claim 106 of Genesys's
Application 08/102,390 requires.

However, we find that Kaufman I describes a DHFR-deficient
Chinese hamster ovary (CHO) cell line, i.e., the cell line of a

-43-

Interference 105,114

mammalian host.  Kaufman I teaches that the DHFR-deficient CHO
cell line was made to express a DHFR gene which is not normally
expressed within the genome of the DHFR-deficient CHO cell line
and a human t-PA gene which is not normally expressed within the
genome of the DHFR-deficient CHO cell line.  Abnormal expression
of the DHFR gene product within the genome of the DHFR-deficient
Chinese hamster ovary cell line is said to have resulted from
insertion of the SV40 enhancer (heterologous regulatory sequence)
in the vicinity of, and operatively associated with, a coinserted
exogenous DHFR cDNA target gene not normally expressed within the
genome of the DHFR-deficient CHO cell line.  Abnormal expression
of the t-PA gene product within the genome of DHFR-deficient
Chinese hamster ovary cell line is said to have resulted from
insertion of the amplifiable DHFR cDNA gene in the vicinity of,
and operatively associated with, a coinserted exogenous t-DNA
cDNA target gene not normally expressed in sufficient quantities
within the genome of the DHFR-deficient CHO cell line.  Thus,
we find that Kaufman I describes subject matter encompassed by
Claims 105, 110 and 111 of Genesys's Application 08/102,390.

     We find in Kaufman I no teaching or reasonable suggestion of
a cell which expresses a gene not normally expressed therein,
wherein the genome of the cell has an heterologous amplifiable
gene or DNA regulatory sequence inserted through homologous

-44-

Interference 105,114

recombination in the vicinity of the gene not normally expressed

so to stimulate expression thereof, as Claim 112 of Genesys's

Application 08/102,390 requires.

However, ARS argues (Paper No. 47, p. 13, first para.):

[I]nserting the heterologous DNA into the cell line via homologous recombination does not confer any specific or distinguishing characteristics to the cells. Homologous recombination can target essentially any sequence in the genome of the cell. Therefore, without a description in the claim of the specific sequence targeted in the cell, one cannot distinguish whether a cell in which the DNA was inserted by homologous recombination, or another process, such as a random insertion procedure. Exhibit 3002 ¶ 274.

ARS's argument is taken from paragraph 274 of the "First

Declaration of Randal Kaufman" (Exh. 3002, para. 274). Randal

Kaufman's statement is unsupported. As such, it does not satisfy

ARS's initial burden to show that it is entitled to the relief

sought in ARS's Preliminary Motion 3 (Paper No. 47). See 37 CFR

§ 1.637(a) ("A party filing a motion has the burden of proof to

show that it is entitled to the relief sought in the motion.")

Kaufman's unsupported declaration that one skilled in the

art cannot distinguish between a cell in which DNA was inserted

by random insertion and a cell in which DNA was inserted by

homologous itself is insufficient to shift the burden to Genesys

to establish anew that Claim 112 is patentable over the teaching

of Kaufman I. Suffice it to say that DNA randomly inserted into

the genome of a cell does not carry terminal sequences which are

-45-

Interference 105,114

homologous, but not identical, to a predetermined portion of a
target sequence.  The homologous terminal sequences guide the DNA
to be inserted toward an area in the vicinity of the target
sequence, as required for insertion by homologous recombination.
How much, if any, of the homologous terminal targeting sequence
or sequences is inserted into the cell genome at the targeting
site, its identity, and precisely how it is inserted, are not
fully understood and determinable without comparative sequencing
of genes modified by homologous and random recombination
insertion procedures and resultant expression activities.

    ARS's arguments also appear to be inconsistent with its view
of the relevance of the teaching of Kaufman I to the subject
encompassed by Claims 18, 22-25 and 57-58 (Paper No. 47, pp. 15)
and Claims 26-27 (Paper No. 47, p. 16) of ARS's '071 patent.
Moreover, ARS's arguments do not appear to be supported by the
teaching of ARS's '071 patent itself (ARS's '071 patent, col. 7,
l. 8, to col. 8, l. 47).  For example, ARS' '071 patent
specification suggests that pieces of the "targeting DNA
sequences" terminally attached to a potential insert sequence
will be inserted by homologous recombination into the target
sequence of the genome along with the desirable foreign DNA
insert (ARS's '071 patent, col. 7, l. 67, to col. 8, l. 37),
although the mechanism is not completely understood (ARS's '071

-46-

Interference 105,114

patent, col. 7, l. 23-24).. Suffice it to say that ARS has not
satisfied its burden to show it is entitled to the relief it
seeks for Claim 112 of Genesys's involved application.

We find Claims 105, 110 and 111 of Genesys's Application
08/102,390 to be unpatentable under 35 U.S.C. § 102(b) over
subject matter described by Kaufman I.

We conclude that Claims 105, 110 and 111 of Genesys's
Application 08/102,390 are unpatentable under 35 U.S.C. § 103 in
view of the teaching of Kaufman I.

(2) Raibaud (Exh. 2012/3008)

Raibaud teachings

Raibaud describes a technique for integrating foreign
DNA into the chromosome of Escherichia coli via homologous
recombination (Exh. 3008, p. 231, Title & Summary).  According
to Raibaud, the foreign DNA is inserted into a chromosome of
E. coli at the EcoRI site within an endogenous promoter for
the structural gene encoding production of amylomaltase.
Segments of the endogenous promoter must flank the foreign DNA
insert, thus providing the targeting homologous sequences
required for homologous recombination (Exh. 3008, p. 231,
Summary; p. 238, Fig. 5).  Correct positioning of the foreign DNA
insert into the chromosome is shown by assaying for amylomaltase,
the expression product of the endogenous structural gene encoding

-47-

Interference 105,114

amylomaltase now operatively associated with a new promoter

either consisting of, or associated with, the foreign DNA insert

(Exh. 3008, p. 231, Summary).

Raibaud depicts insertions comprising the foreign structural

genes for colicin E3 (ceaC) and its immunity protein (ceiC) . . . .

(Exh. 3008, p. 238, Fig. 5). Raibaud teaches (Exh. 3008,

p. 237, col. 1, to p. 239, col. 1):

> (d)  Transposition into the chromosome of an EcoRI fragment
> containing the genes encoding colicin E3 and its immunity
> protein.
>
> . . . The first application has been the transposition
> onto the chromosome of a 3-kb EcoRI fragment obtained from
> the ColE3 plasmid and containing the genes encoding colicin
> E3 (ceaC) and its immunity protein (ceiC)(Fig. 5a).  The
> objective was to construct a strain carrying the ceiC
> gene on the chromosome, and therefore immune to colicin E3.
> . . . . .
>
> . . . When the ColE3 fragment is in the proper
> orientation, the malPQ operon should be put under the
> control of the colicin promoter, and its expression should
> be induced by MC.  This was indeed the case . . . .
> The amounts of amylomaltase and colicin E3 found in the
> different strains before and after MC induction are shown
> in Table II. . . . .

Raibaud adds the following discussion (Exh. 3008,

pp. 239-240)(emphasis added):

> In this paper we have described a technique which
> should allow, theoretically, the transposition of almost
> any DNA fragment, whatever its origin, onto the chromosome
> of E. coli, at the EcoRI site within the malPp promoter.
>
> . . . . .

-48-

Interference 105,114

. . . When the fragment contains a properly positioned
promoter, the insertion of this fragment (i) inactivates
the chromosomal malPQ promoter and (ii) puts the malPQ
operon under the control of the foreign promoter located in
the fragment. . . . [I]t can be concluded that the level of
amylomaltase synthesis provides a true reflection of the
activity of the [new] promoter located in the inserted
fragment.   In the examples presented in this paper we have
used amylomaltase synthesis as a measure of the activities
of promoters controlling the synthesis of colicin E3 and the
lac operon of E. coli. . . . .

<u>Findings based on Raibaud's teachings</u>

We find that Raibaud describes a technique for modifying the

expression characteristics of the endogenous structural gene

encoding amylomaltase in the genome of a prokaryotic cell line

(E. coli) comprising inserting a DNA construct (the ColE3 DNA

fragment within a malPp$^a$ promoter) by homologous recombination,

said DNA construct comprising a DNA regulatory segment (colicin

promoter within the ColE3 fragment) capable of modifying the

expression characteristics of the native amylomaltase structural

gene when operatively linked thereto, and a DNA targeting segment

homologous (the terminal segments of the malPp$^a$ promoter

containing the ColE3 DNA fragment) to a region of the genome

(the native malPp$^a$ promoter) proximal to the native amylomaltase

structural gene, wherein said DNA construct (the ColE3 DNA

fragment within the malPp$^a$ promoter) is inserted such that said

a new regulatory segment (colicin promoter within the ColE3

-49-

Interference 105,114

fragment) is operatively linked to said amylomaltase structural
gene of interest.

Raibaud also teaches that the expression characteristics of
the native amylomaltase structural gene were modified when the
malPQ operon was driven by the colicin promoter insert, and
likely would be enhanced by an insert comprising a relatively
stronger promoter.  Raibaud explicitly states (Exh. 3008, p. 239,
col. 1, first full para.):

> The amount of amylomaltase found when the malPQ operon
> was driven by the promoter of the colicin gene was similar
> to that obtained after induction with maltose in the
> wild-type strain C600.  This result indicates that the
> efficiency of the colicin promoter is similar to that
> of the malPQ operon.

Raibaud states that, "in such constructions[,] the level of
amylomaltase is proportional to the strengths of the promoter"
(Exh. 3008, p. 239, col. 2).  "Therefore, it can be concluded
that the level of amylomaltase synthesis provides a true
reflection of the activity of the promoter located in the
inserted fragment" (Exh. 3008, p. 240, cols. 1-2, bridging
para.).  Accordingly, we find that Raibaud expressly teaches, and
we conclude that Raibaud reasonably would have suggested, subject
matter encompassed by Claims 2, 17, 19, 20, 26, 28, 31, 52, 53
and 54 of ARS's '071 patent to persons having ordinary skill in
the art.

-50-

Interference 105,114

On the other hand, Genesys has not shown that Raibaud discloses or would have taught methods of "activating a predetermined normally transcriptionally silent gene within the genome of a cell line," as required by Claims 1, 5-16, 18, 22-25, and 56-58 of ARS' '071 patent. We interpret the phrase "normally transcriptionally silent gene within the genome of a cell line" to refer to a gene endogenous to the cell line.

Nor has Genesys shown that Raibaud discloses or reasonably would have suggested methods of modifying the expression characteristics of a target gene within the genome of a cell line which comprises insertion of a DNA construct comprising an "expressible, amplifiable gene" which amplifies the target gene within the genome of the cell line when it is amplified, as required by Claims 3, 4, 19, 21, 27, 40-51, and 53-56 of ARS's '071 patent.[4]

Moreover, Genesys has not shown that Raibaud discloses or reasonably would have suggested methods for activating or modifying the expression characteristics of a gene within the genome of an eukaryotic cell line, as required by Claims 9-12, 32-35 and 44-47 of ARS's '071 patent.

---

[4]    We are unable to find antecedent basis in Claim 3 for the references to "said regulatory segment" in Claims 40, 41 and 43 of ARS's '071 patent which depend from Claim 3.

-51-

Interference 105,114

Genesys has not shown that Raibaud discloses or reasonably would have suggested methods for activating or modifying the expression characteristics of a gene within the genome of a cell line using a DNA construct comprising a selectable marker, as required by Claims 4, 6, 7, 13-16, 23, 24, 29, 30, 36-39, 41, 48-51, 57 and 58 of ARS's '071 patent.

We find that Raibaud does not disclose or teach a mammalian host cell or cell line, or methods for activating or modifying the expression characteristics of a gene within the genome of a mammalian host cell or cell line, as required by Claims 105-109 of Genesys's Application 08/102,390.

However, we find that Raibaud describes a cell of E. coli transformed to express a gene encoding colicin. Genes encoding colicin are not normally expressed by E. coli. The cell is said to have been transformed by insertion of an heterologous DNA fragment comprising a gene encoding colicin in proximity to its normal regulatory sequence (a colicin promoter) into the genome of an E. coli cell within its endogenous malPp promoter by homologous recombination. Therefore, we find that Raibaud describes subject matter encompassed by Claims 110 and 112 of Genesys's Application 08/102,390.

We also find that Raibaud describes a cell of E. coli transformed to express a gene encoding colicin at higher levels

-52-

Interference 105,114

than that normally expressed. Genes encoding colicin which
Raibaud describes are not normally expressed by E. coli at any
level. E. coli cells are said to have been transformed by
insertion of an heterologous DNA fragment comprising a gene
encoding colicin in proximity to its normal regulatory sequence
(a colicin promoter) into the genome of E. coli cells by
homologous recombination within an endogenous malPp promoter.
Accordingly, we find that Raibaud also describes subject matter
encompassed by Claim 111 of Genesys's Application 08/102,390.

Furthermore, we find that Raibaud teaches that cells of
E. coli can be transformed to express the expression product of
an endogenous gene encoding amylomaltase by inserting a foreign
regulatory sequence effective to promote expression of the
amylomaltase gene in association with a foreign gene (e.g., a
colicin promoter) into the genome of an E. coli cell within an
endogenous malPp promoter by homologous recombination. While the
active foreign colicin promoter insert Raibaud describes is
"similar" in strength to the endogenous malPp promoter, Raibaud
teaches that the level of amylomaltase expressed by transformed
E. coli is proportional to the strength of the active foreign
promoter inserted. Accordingly, we conclude that Raibaud
reasonably would have suggested subject matter encompassed by
Claim 111 of Genesys's Application 08/102,390.

-53-

Interference 105,114

Therefore:

Claims 2, 17, 19, 20, 26, 28, 31, 52, 53 and 54 of ARS's '071 patent are unpatentable under 35 U.S.C. § 102(b) over subject matter described by Raibaud, or under 35 U.S.C. § 103 in view of the teaching of Raibaud; and

Claims 110-112 of Genesys's Application 08/102,390 are unpatentable under 35 U.S.C. § 102(b) over subject matter described by Raibaud, or under 35 U.S.C. § 103 in view of the teaching of Raibaud.

(3) <u>Nasmyth I and II (Exh. 2008; Exh. 2009)</u>

<u>Nasmyth II teachings</u>

Nasmyth II teaches (Exh. 2009, p. 243, cols. 1-2; emphasis added):

> Switching is thought to be initiated by a specific double strand cleavage of mating type DNA by an endonuclease encoded by the <u>HO</u> gene. . . . Two lines of evidence suggest that the <u>failure of [haploid homothallic budding yeast] daughter cells to switch [its mating type as do mother cells] is due to the absence of HO endonuclease in such cells.</u> First, neither the endonuclease activity nor its mRNA are made during the first cell cycle of $G_0$ stationary phase daughters upon their inoculation into fresh medium, whereas they are both produced in a cell cycle-dependent fashion in mother cells under the same circumstances. . . . Moreover, neither the endonuclease nor its mRNA are sufficiently stable to be transferred to a daughter cell after their synthesis in a mother cell.

> The second piece of evidence concerns the analysis of <u>cells carrying a recombinant HO gene whose transcription is driven by the GAL upstream promoter element</u>, which is presumably active in both mother and daughter cells . . . . In the presence of galactose, which activates the <u>GAL</u>

-54-

Interference 105,114

upstream promoter element . . . <u>daughter cells are now observed to switch as frequently as mother cells.</u> the interpretation of this experiment is complicated, however, by the fact that this <u>GAL/HO</u> fusion causes a 50- to 100-fold overproduction of the <u>HO</u> endonuclease. Nevertheless, it is a reasonable working hypothesis that the failure of daughter cells to switch their mating type is due to an underlying failure to transcribe the <u>HO</u> gene throughout their cell cycle.

In its Discussion, Nasmyth II instructs (Exh. 2009, p. 246, cols. 1-2; emphasis added)):

This paper describes the construction and characterization of a hybrid promoter composed by replacing the <u>HO</u> upstream activation sequence by that of the <u>GAL</u> promoter. The hybrid <u>GAL/OH</u> promoter is only active in cells grown in galactose, suggesting that the <u>GAL UAS</u> is playing an essential role, but it nevertheless retains the transcriptional start points, the <u>a/α</u> repression and cell cycle dependence characteristics of the parental <u>HO</u> promoter.

A crucial difference between the <u>HO</u> and <u>GAL/HO</u> promoters is that the later is active in daughter cells whereas the former is not. <u>GAL/HO</u> produces in both mother and daughter cells the sort of <u>HO</u> transcription normally (i.e. from <u>HO</u>) only seen in mother cells. Daughter cells normally never switch their mating type, but as a consequence of the alteration in <u>HO</u> transcription caused by <u>GAL/HO</u>, they now switch almost as frequently as mother cells. This implies that transcription of <u>HO</u> is the major rate-limiting event for switching which is <u>normally absent in daughter cells</u>. It should be pointed out that the <u>GAL/HO promoter appears to cause mother cells to switch slightly more frequently than daughter cells</u>: 52 versus 38%. . . . .

In Fig. 1. "The genotype and phenotype of important <u>HO</u> deletions and substitutions," specifically for the <u>GAL/HO</u> hybrid, Nasmyth II states, "All constructions were made and transplaced into the <u>HO</u> locus in yeast as described by Nasmyth (1985a)"

-55-

Interference 105,114

(Exh. 2009, p. 244, Fig. 1).  The Nasmyth (1985a) article to
which Nasmyth II (Exh. 2009) refers is Nasmyth I of record
(Exh. 2008).  In the section of Nasmyth I entitled, "The Transfer
of Mutations into the HO Locus," the author explains that "Such
replacements are of course only readily obtained if the
transforming fragments possess sequences homologous to those on
both sides of the deletion/fusion in the genome (100bp is
sufficient)" (Exh. 2008, p. 221, col. 1), i.e., constructions
enabling homologous recombination.

### Findings based on teachings of Nasmyth II/I

We find that Nasmyth II describes, or reasonably would have
suggested, a method for activating expression, and thus modifying
the expression characteristics, of the native HO gene encoding
endonuclease in haploid homothallic budding yeast daughter cells.
The HO gene normally is transcriptionally silent in haploid
homothallic budding yeast daughter cells.   The method comprises
insertion of a GAL/OH promoter construct comprising the GAL
promoter sequence within flanking, targeting HO fragments into
the genome of yeast daughter cells by homologous recombination.
Thereby, the inactive, endogenous HO promoter is replaced by the
active GAL/OH promoter and expression of the OH gene encoding
endonuclease is activated.  Claims 1, 2, 5, 9, 17, 18, 25, 26, 28
and 32 of ARS's '071 patent encompass subject matter which is

-56-

Interference 105,114

described by Nasmyth II, and/or reasonably would have been
suggested by Nasmyth II, optionally in view of Nasmyth I.

We find that Nasmyth II describes, or reasonably would have
suggested, a method for modifying the expression characteristics
of the HO gene encoding endonuclease in haploid homothallic
budding yeast mother cells by insertion of a GAL/OH promoter
construct comprising the GAL promoter within flanking, targeting
HO fragments into the genome of the yeast mother cells by
homologous recombination.  Thereby, the endogenous HO promoter is
replaced and expression of the HO gene encoding endonuclease is
enhanced.  Claims 2, 9, 17, 18, 22, 25, 26, 28 and 32 of ARS's
'071 patent encompass subject matter described by Nasmyth II,
and/or reasonably suggested by Nasmyth II, optionally in view of
Nasmyth I.

We find that Nasmyth II describes a HO yeast daughter cell
expressing an HO gene encoding endonuclease not normally
expressed by that cell comprising heterologous DNA comprising a
regulatory sequence GAL/HO inserted in the HO yeast daughter cell
by homologous recombination whereby the HO gene encoding
endonuclease is amplified and expressed, as required by
Claims 110-112 of Genesys's Application 08/102,390.

We find that Nasmyth II describes a HO yeast mother cell
expressing an HO gene encoding endonuclease which expresses the

-57-

Interference 105,114

HO gene encoding endonuclease at higher levels than normally
expressed by that cell comprising heterologous DNA comprising a
regulatory sequence GAL/HO inserted in the HO yeast mother cell
by homologous recombination whereby the HO gene encoding
endonuclease is amplified and expressed, as required by
Claim 111 of Genesys's Application 08/102,390.

Therefore:

Claims 1, 2, 5, 9, 17, 18, 22, 25, 26, 28 and 32 of ARS's
'071 patent are unpatentable under 35 U.S.C. § 102(b) over
subject matter described by Nasmyth II, or under 35 U.S.C. § 103
in view of the teaching of Nasmyth II, optionally combined with
Nasmyth I.

Claims 110-112 of Genesys's Application 08/102,390 are
unpatentable under 35 U.S.C. § 102(b) over subject matter
described by Nasmyth II, or under 35 U.S.C. § 103 in view of the
teaching of Nasmyth II, optionally in view of Nasmyth I.

(4)  Smithies (Exh. 2010)

Smithies's teachings

Smithies teaches (Exh. 2010, p. 230, col. 1, para. 2-4;
citations omitted; emphasis added):

The series of experiments reported here shows that
homologous recombination between exogenous DNA and a
chromosomal gene does occur in cultured mammalian cells and
can allow the stable insertion of defined DNA sequences into
the [target] human β-globin locus in a predictable fashion.
Although the frequency of success (~10$^{-3}$ of transformed

-58-

Interference 105,114

cells) is at present modest, the data show unequivocally that the planned modification of a specific human gene is possible _in vivo_.

We chose the human β-globin locus as a target for gene modification . . . .

The rationale used to direct the incoming DNA to the β-globin locus is derived from experiments in yeast . . . showing that recombination between DNA sequences and homologous sequences within the genome can direct the exogenous DNA to the desired locus. A refinement . . . is to cut the incoming DNA within the region of homology using a suitable restriction enzyme. In a previous study, we showed that the provision of such recombinogenic ends greatly increases homologous recombination between plasmids in mammalian somatic cells. This suggests that cutting within the region of homology may also significantly increase the frequency of directed gene modification in mammalian cells.

In the experiments, Smithies describes the use of test plasmid pΔβ117 and identifies it as having four elements (Exh. 2010, p. 230, col. 1, Detecting target gene modification, through p. 231, col. 2, first full para.):

Figure 1 shows the planned modification of the human β-globin locus, that is, the integration by homologous recombination of a single copy of a test plasmid into the locus at a defined position. To achieve this modification, we constructed a special test plasmid, pΔβ117 . . . .

The test plasmid pΔβ117 incorporates four important elements. The first is 4.6 kilobases (kb) of DNA from the human the β-globin locus, including the 5' part of the adult human β-globin gene but lacking the second intervening sequence (IVS-2) and remaining 3' portion of the gene. This DNA provides sequences in the incoming test plasmid that can recombine with homologous target sequences in the β-globin locus of the recipient cell to accomplish the planned modification. Within the 4.6-kb element is a

-59-

Interference 105,114

single BstXI site used to cut the incoming plasmid in the region homologous with the target.

The second element is sequences from the plasmid pSV2Neo . . . that specify the neo gene and associated transcriptional signals. These sequences can confer resistance to G418 (an antibiotic related to neomycin) on mammalian cells. In some experiments, we used G418 to select recipient cells that had incorporated the test plasmid in a configuration in which the neo gene was functional.

The third element . . . is the supF gene, which encodes tyrosine transfer RNA that suppresses several amber mutations in Escherichia coli and its bacteriophages. When this suppressor gene is inserted into a mutant bacteriophage, carrying amber mutations preventing the phage from growing, the amber mutations will be suppressed and the phage will grow. . . . Only those phages that have rescued the supF gene will, in principle, grow on a wild-type strain of E. coli , . . . that lacks amber suppressors. (. . . [T]hese phages do not contain any globin sequences and so do not compromise the assay).

The fourth important element . . . is a site for the restriction endonuclease XbaI located upstream of the supF gene relative to the human β-globin sequences. . . . . .

Regarding the focal transformation, Smithies teaches

(Exh. 2010, p. 232, col. 2, full para. 1-2; citations omitted):

The second set of tests required a clonable recipient cell expressing the human adult β-globin gene. A cell line described by Zavodny et al. meets these criteria. It was made by fusing hypoxanthine phosphoribosyltransferase-deficient tetraploid mouse erythroleukaemia cells to diploid human fibroblasts bearing an X;11 translocation chromosome . . . . The resulting hybrid cell line, which we term the Hu 11 hybrid, expresses the adult β-globin gene on human chromosome 11 at a measurable level in the absence of induction, and at a high level after induction with dimethylsulfoxide.

-60-