Interference 105,114

strongly traverses Genesys's position that successful transformations of mammalian cell lines by insertion of foreign DNA constructs by homologous recombination and enhanced expression of an endogenous gene resulting therefrom would have been obvious to persons having ordinary skill in the art in light of prior art describing successful transformations of microorganisms and yeasts by insertion of foreign DNA constructs by homologous recombination and enhanced expression of an endogenous gene resulting therefrom.  In such an unpredictable art, ARS must explain why the dearth of instruction and guidance proffered in its parent specification would have been enough to enable one skilled in the art to make and use the full scope of the subject matter it later claimed.  As said in Vaeck, 947 F.2d 488, 496, 20 USPQ2d 1436, 1445 (Fed. Cir. 1991)(footnote omitted):

> [T]here must be sufficient disclosure, either through illustrative examples or terminology, to teach those of ordinary skill how to make and how to use the invention as broadly as it is claimed.  This means that the disclosure must adequately guide the art worker to determine, without undue experimentation, which species among all those encompassed by the claimed genus possess the disclosed utility.  Where, as here, a claimed genus represents a diverse and relatively poorly understood group of microorganisms, the required level of disclosure will be greater than, for example, the disclosure of an invention involving a "predictable" factor such as a mechanical or electrical element.  See Fischer, 427 F.2d at 839, 166 USPQ at 24.

-121-

Interference 105,114

Furthermore, regarding the adequacy of the disclosure in ARS's parent specification of how to make and use the full scope of new DNA sequences to which Claims 26 and 27 of ARS's '071 are directed, the Federal Circuit has said, "For DNA sequences, that means disclosing how to make and use enough sequences to justify grant of the claims sought." Amgen Inc. v. Chugai Pharmaceutical Co., 927 F.2d 1200, 1213, 18 USPQ2d 1016, 1027 (Fed. Cir.), cert. denied, 502 U.S. 856 (1991). At 1214, 18 USPQ2d at 1028, the court stated:

> Considering the structural complexity of the . . . gene[s], the manifold possibilities for change in . . . [their] structure, with attendant uncertainty as to what utility will be possessed by these analogs, we consider that more is needed concerning identifying the various analogs that are within the scope of the claim[s], methods for making them, and structural requirements for producing compounds with . . . [specified] activity. It is not sufficient, having made the gene and a handful of analogs whose activity has not been clearly ascertained, to claim all possible genetic sequences that have . . . [specified] activity.

ARS's parent application discloses no DNA sequences whatsoever.

Most interestingly, both ARS and Genesys, in traverse of the other party's urging that one's own claims are unpatentable in view of prior art teachings or for inadequacy of their supporting disclosure, have argued that, while the skill and expertise in the art generally is high, the predictability in the art varies. For example, the disclosure required to render ARS's claims obvious seems to be low relative to the disclosure required to

-122-

Interference 105,114

render Genesys's claims obvious, and <u>vice versa</u>. For example,
the kind and amount of disclosure adequate to describe and enable
one skilled in the art to make and use the full scope of ARS's
claims seems to be high relative to the kind and amount of
disclosure adequate to describe and enable one skilled in the art
to make and use the full scope of Genesys's claims, and <u>vice
versa</u>.

We conclude that ARS had an obligation to explain why the
disclosure in its parent application described the full scope of
the subject matter now claimed and would have enabled one skilled
in the art to make and use the full scope of the subject matter
now claimed without undue experimentation. It is not enough to
cite various pages of the parent and patented specifications in
support of its position. <u>Clintec Nutrition Co. v. Baxa Corp.</u>,
44 USPQ2d 1719, 1723 n.16 (N.D. Ill. 1997), which notes that
where a party points the court to multi-page exhibits without
citing a specific portion or page, the court will not pour over
the documents to extract the relevant information, citing <u>United
States v. Dunkel</u>, 927 F.2d 955, 956 (7th Cir. 1991). <u>See also</u>
(1) <u>United States v. Lanzotti</u>, 205 F.3d 951, 957 (7th Cir. 2000)
(a party urging us to reverse a district court's judgment has an
obligation to argue why we should reverse that judgment, and to
cite appropriate authority to support that argument; the premise

-123-

Interference 105,114

of our adversarial system is that tribunals do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them; it is not the court's responsibility to research and construct the parties' arguments); (2) Biotec Biologische Naturver-Packungen GmbH & Co. KG v. Biocorp, Inc., 249 F.3d 1341, 1354, 58 USPQ2d 1737, 1746 (Fed. Cir. 2001)(on this appeal the defendants do not review in any detail the evidence that they assert invalidates the patents); and (3) Winner International Royalty Corp. v. Wang, 202 F.3d 1340, 1351, 53 USPQ2d 1580, 1589 (Fed. Cir. 2000)(We agree with Winner that the district court did not abuse its discretion in allowing allegedly late-disclosed witnesses to testify. Such witnesses were never even identified by Wang in his opening brief, and, after Winner pointed this out in its response brief, Wang still failed to identify the witnesses in his reply brief. Under such circumstances, we will not search the record on the chance of discovering whether the district court abused its discretion.) We do not find the relevant facts and apply the pertinent law at our own volition. Nor will the board take on the role of an advocate for one of the parties. Compare Ernst Haas Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 111-112, 49 USPQ2d 1377, 1378-1379 (2d Cir. 1999). ARS has not shown that it is entitled to its earlier filing date

-124-

Interference 105,114

for the full scope of it claims.  Just as one could not "prevail
simply by asserting in a conclusory manner that . . . a
disclosure does not enable the transformation of . . . mammalian
. . . cells" based on the facts in Amgen Inc. v. Hoechst Marion
Roussel, Inc., 314 F.2d 1313, 1337, 65 USPQ2d 1385, 1402 (Fed.
Cir. 2003), based on the differences between the disclosures in
ARS's patented and parent applications in this case, ARS cannot
prevail simply by reasserting in a conclusory manner that its
parent disclosure would have enabled the transformation of all
cell lines in accordance with its claims corresponding to the
count.

        We conclude that ARS is entitled to no more than the
December 21, 1990, filing date of PCT/US90/07642, under 35 U.S.C.
§ 363, and Japan is prior art under 35 U.S.C. § 102(b) for all
claims of ARS's '071 patent designated as corresponding to the
interference count.  Accordingly, we conclude that (1) Claims 1,
2, 5-7, 9-20, 22, 23, 25, 26, 28-30, 32-39, 52-54, 56 and 57 of
ARS's '071 patent are unpatentable under 35 U.S.C. § 103 for
obviousness to persons having ordinary skill in the art in view
of Japan's teaching in combination with teachings of Kaufman I
(Exh. 2014), Smithies (Exh. 2010), and Thomas (Exh. 2011)),
optionally further in view of Kaufman II (Exh. 3015); and
(2) Claims 105 and 107-112 of Genesys's Application 08/102,390

-125-

Interference 105,114

are unpatentable under 35 U.S.C. § 103 in view of the same prior art teachings.

Having considered ARS's case in support of its motion under 37 CFR § 1.633(a) for unpatentability of Genesys's claims over cited prior art, we are confident that ARS has not met its burden to show that remaining Claim 106 of Genesys's Application 08/102,390 is unpatentable under 35 U.S.C. § 102/103. Having considered Genesys's case in support of its motion under 37 CFR § 1.633(a) for unpatentability of ARS's patent claims over cited prior art, we are not satisfied that Genesys has shown that Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of ARS's '071 patent are unpatentable under 35 U.S.C. § 102/103.

C.    Interference-in-fact

Having concluded that Claims 1, 2, 5-7, 9-20, 22, 23, 25, 26, 28-30, 32-39, 52-54, 56 and 57 of ARS's '071 patent and Claims 105 and 107-112 of Genesys's Application 08/102,390 are unpatentable over prior art, we need to further consider whether there is an interference-in-fact between the subject matter defined by patentable Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of ARS's '071 patent and patentable Claim 106 of Genesys's Application 08/102,390, the only patentable claims remaining before us. "An interference-in-fact exists when at least one claim that is designated to correspond to a count and at least

-126-

Interference 105,114

one claim of an opponent that is designated to correspond to the
count define the same patentable invention."   37 CFR § 1.601(j).
"Same patentable invention" and "separate patentable invention"
are defined in 37 CFR § 1.601(n) as follows:

> (n)  Invention "A" is the <u>same patentable invention</u> as an
> invention "B" when invention "A" is the same as (35 U.S.C.
> 102) or is obvious (35 U.S.C. 103) in view of the invention
> "B" assuming invention "B" is prior art with respect to
> invention "A".  Invention "A" is a <u>separate patentable</u>
> <u>invention</u> with respect to invention "B" when invention "A"
> is new (35 U.S.C. 102) and non-obvious (35 U.S.C. 103) in
> view of the invention "B" assuming invention "B" is prior
> art with respect to invention "A".

Claim 106 of Genesys's Application 08/102,390 reads:

> 106.  A human 293 embryonal kidney cell, wherein the
> genome of the cell has inserted therein an enhancer and
> promoter of cytomegalovirus operatively associated with
> human erythropoietin gene, so that the cell expresses
> human erythropoietin.

The products or methods of making the products defined by each of
Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of ARS's '071
patent comprise, or insert within the genome of a cell line, a
DNA construct comprising an expressible, amplifiable gene capable
of amplifying a target gene when inserted in close proximity
thereto.  It is sufficient to note that the genome of the human
293 embryonal kidney cell of Claim 106 of Genesys's Application
08/102,390 need not have inserted therein any expressible,
amplifiable gene capable of amplifying the silent human
erythropoietin gene in a human 293 embryonal kidney cell when

-127-

Interference 105,114

inserted in sufficiently close proximity thereto. Rather the genome of the human 293 embryonal kidney cell of Claim 106 of Genesys's Application 08/102,390 has inserted therein an enhancer and promoter of cytomegalovirus operatively associated with the silent human erythropoietin gene in the human 293 embryonal kidney cell. Not only is the specific DNA construct inserted into the genome of a human 293 cell of Genesys's Claim 106 patentably distinct in structure and function from any specific DNA construct described in ARS's patentable claims, but the DNA inserts in ARS's disclosure do not suggest enhancers and promoters of cytomegalovirus. Alternatively, the enhancers and promoters of cytomegalovirus comprising the human 293 cell genome insert of Genesys's Claim 106 do not collectively or severably constitute an amplifiable gene capable of amplifying a gene silent in the genome of any other mammalian cell. Nor does the evidence of record establish that the invention of any one of ARS's remaining patentable claims would have been obvious to persons having ordinary skill in the art in light of the specific subject matter defined by the only remaining claim which is patentable to Genesys.

ARS has not shown that the specific subject matter of Claim 106 of Genesys's Application 08/102,390 would have been obvious to a person having ordinary skill in the art further in

-128-

Interference 105,114

light of any other prior art of record, and we find no basis for such a conclusion of record. On the other hand, Genesys has argued that Claims 3 and 27 of ARS's '071 patent are unpatentable in view of prior art teachings including Kaufman I and Japan (Paper No. 63, pp. 12-1, para. 41, 44 and 47). However, Kaufman I does not appear to teach that expressible, amplifiable genes inserted into the genome of a cell line by homologous recombination reasonably would be expected to amplify endogenous target genes. For a suggestion to do so with reasonable expectation of success, Genesys points to Japan's disclosure. However, Japan does not reasonably suggest that expressible, amplifiable genes inserted into the genome of a cell line by homologous recombination would be capable of amplifying an endogenous target gene in a cell line. In short, Japan does not provide persons skilled in the art with a reasonable expectation of success. To the extent Genesys relies on Japan's teaching to establish that Claims 3 and 27 ARS's '071 patent would have been obvious in view of combined prior art teachings, Genesys merely concludes:

> 41. The inclusion of an amplifiable gene to increase expression, as called for in claims 3, 8, 31 and 43 was known in the prior art (Exhibit 2014, Kaufman et al., p. 1753, col. 2, last ¶, ll. 5-7 and table 2; JP-A-1215280, p. 5, 3rd ¶, ll. 1-3). Exhibit 2029, Nickoloff, ¶ 39.

-129-

Interference 105,114

The pinpointed disclosure in Kaufman I does not support Genesys's conclusion (Exh. 2014, p. 1753-54, bridging para.; emphasis added):

> To understand why t-PA activity did not increase with MTX resistance, clone 4C1 was subcloned in nucleoside-free medium before MTX selection to generate five subclones, and these subclones were selected for MTX resistance.  Only subclones H3B and B10A expressed higher levels of t-PA when selected for MTX resistance (Table 2). The variation in responses of the different subclones to coamplification could have resulted from the integration of multiple DHFR genes at different sites; only some of which were linked to the t-PA gene, and upon MTX selection some subclones amplified DHFR sequences not linked to t-PA sequences.  Alternatively, the variation could have resulted from rearrangements around the site of amplification which separated the t-PA gene from the DHFR gene.  To examine these possibilities in more detail, Southern blot analysis of the original and MTX resistant transformants derived from clone 4C1 was performed.  The results showed that most subclones amplified a similar, if not identical, restriction fragment (35-kb band; Fig. 2A, arrow).  However, subclone B10A amplified all restriction fragments containing t-PA sequences.  Since B10A had amplified both the 35-kb band and the other restriction fragments, they were probably closely linked.  In other subclones the copy number of the 35-kb fragment did not correlate with the copy number of the various t-PA restriction fragments (for example, compare subclones D8Bα and H8Bα), but the 35-kb was preferentially amplified in all subclones.  These results indicate that the coamplification variability between subclones probably results from DNA rearrangements which dissociate the DHFR gene from the t-PA gene during the MTX selection. One subclone (H12B) exhibited no DNA amplification upon MTX selection, implying that in this subclone MTX resistance probably resulted from a mechanism other than gene amplification.

Nor does Japan teach that any of its "expression-controlling" sequences can be an "expressible, amplifiable gene" which can

-130-

Interference 105,114

amplify expression of a target gene when inserted into the genome

of a cell line by homologous recombination at a location

proximate thereto.  Japan merely teaches (Exh. 2016, p. 5, third

para., l. 1-3):

> The expression-controlling region to be inserted is
> normally inserted using plasmids that can be amplified
> in the host microbe or as cyclic or linear DNA that
> cannot be amplified in the host microbe.

With regard to Claim 27 of ARS's '071 patent, Genesys cites

Japan's Examples 1-3; Kaufman I, p. 1751, cols. 1-2, bridging

para.; and the Declaration of Nickoloff (Exh. 2029, para. 42).

Given the content of the discussion in each of Japan and

Kaufman I relating to amplification, we fail to see how the

materials and methods of Kaufman I and Japan's examples broaden

their general teachings.  Genesys's burden to explain its case

has not been satisfied, and we will not endeavor to make its case

for it.

Genesys further concludes (Paper No. 63, p. 14, para. 47):

> 47.  Furthermore, one of ordinary skill in the art
> would consider the use of an amplifiable gene as part of
> the method to increase gene expression, as recited in
> Claims 3, 8, 31, 41-43, 48-50 of the '071 patent, as an
> obvious variation of what is taught in Japan-A-1215280,
> especially given the teachings in Kaufman et al.
> (Exhibit 2014).  Exhibit 2029, Nickoloff, ¶ 45.

Initially, we thought that the Declaration of Jac A. Nickoloff,

Ph.D. (Exh. 2029, para. 39, 42 and 45) might shed greater light

-131-

Interference 105,114

on the matter. Upon full consideration of the declaration, we found little more than a restatement of Genesys's conclusion.

There being no persuasive evidence or argument to the contrary, we conclude that there is no interference-in-fact between the subject matter claimed in ARS's '071 patent which stands patentable to ARS over prior art teachings of record and the subject matter claimed in Genesys's Application 08/102,390 which stands patentable to Genesys over prior art teachings of record. More particularly, there is no interference-in-fact between the subject matter Genesys has not shown to be unpatentable to ARS, subject matter defined by Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of ARS's '071 patent, and the subject matter ARS has not shown to be unpatentable to Genesys, subject matter defined by Claim 106 of Genesys's Application 08/102,390.

While Claims 107-109 of Genesys's Application 08/102,390 are directed to the "same patentable invention" as Claims 3, 27 and 46 of ARS's '071 patent, Genesys has maintained throughout these proceedings that the subject matter defined by Claims 3, 27 and 46 of ARS's '071 patent is unpatentable to ARS under 35 U.S.C. § 103 in view of prior art teaching including Japan (Paper No. 63, pp. 12-14) and has suggested that the subject matter of Claims 107-109 of Genesys's Application 08/102,390 would have

-132-

Interference 105,114

been unpatentable to Genesys under 35 U.S.C. § 103 in view of prior art teaching including Japan had Genesys not successfully established under 37 CFR § 1.131(a) that it invented the subject matter of Claims 107-109 of Genesys's Application 08/102,390 prior to the August 29, 1989, effective date of Japan (Paper No. 63, p. 24, first full paragraph).

We conclude that Genesys has not established the subject matter of ARS's Claims 3, 27 and 46 is unpatentable under 35 U.S.C. § 103 over cited prior art including Japan. However, because Genesys argued that Japan's teaching cannot be applied to its claims because it invented the same patentable invention prior to the effective filing date of Japan, and Genesys failed to establish prior inventorship thereof under 37 CFR § 1.131(a), the subject matter defined by Claims 3, 27 and 46 of ARS's '071 patent is not patentable to Genesys. Therefore, on the record before us, this interference should be dissolved.

    D.  Preliminary Motions

        (1)  Genesys's Preliminary Motion 1 (Paper No. 62) under 37 CFR § 1.633(f) to be accorded the benefit of the November 6, 1989, filing date of parent U.S. Application 07/432,069 (Exh. 2028) is dismissed as moot.  Dismissed.

        (2)  ARS's Preliminary Motion 7 (Paper No. 50) under 37 CFR § 1.633(f) to be accorded the benefit of the filing dates

-133-

Interference 105,114

of its parent U.S. Application 07/454,783 (Exh. 3013), filed December 22, 1989, and its PCT application PCT/US90/07642 (Exh. 3016), filed December 21, 1990, "with regard to Count 1," is dismissed as moot. Dismissed.

(3) Genesys's Preliminary Motion 2 (Paper No. 63) under 37 CFR § 1.633(a) for judgment that Claims 1-58 of ARS's '071 patent are unpatentable ARS over prior art is granted for Claims 1, 2, 5-7, 9-20, 22, 23, 25, 26, 32-39, 52-54, 56, and 57 of ARS's '071 patent and denied for Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of ARS's '071 patent, for reasons stated herein. Granted-in-part; Denied-in-part.

(4) ARS's Preliminary Motion 3 (Paper No. 47) under 37 CFR § 1.633(a) for judgment that Genesys's Claims 105 and 110-112 are unpatentable over Kaufman I (Exh. 3007) is granted with regard to Genesys's Claims 105, 110 and 111 and denied with regard to Genesys's Claim 112, for reasons stated herein. Granted-in-part; Denied-in-part.

(5) ARS's Preliminary Motion 4 (Paper No. 48) under 37 CFR § 1.633(a) for judgment that Genesys's Claims 110-112 are unpatentable over Raibaud (Exh. 3008) is granted, for reasons stated herein. Granted.

(6) ARS's Preliminary Motion 5 (Paper No. 49) under 37 CFR § 1.633(a) for judgment that Genesys's Claims 110-112 are

-134-

Interference 105,114

unpatentable over Japan (Exh. 3009, 3010, and 2016) is granted, for reasons stated herein. <u>Granted</u>.

(7) ARS's contingent Preliminary Motions 8 (Paper No. 51), 10 (Paper No. 53), 12 (Paper No. 55), 14 (Paper No. 57), and 16 (Paper No. 59) under 37 CFR § 1.633(c)(1) or 1.633(c)(4) are dismissed. <u>Dismissed</u>.

(8) ARS's contingent Preliminary Motions 9 (Paper No. 52), 11 (Paper No. 54), 13 (Paper No. 56) and 15 (Paper No. 58) under 37 CFR § 1.633(f) are dismissed. <u>Dismissed</u>.

(9) Genesys's contingent Preliminary Motions 6 (Paper No. 78), 7 (Paper No. 79), 8 (Paper No. 80) and 9 (Paper No. 81) under 37 CFR § 1.633(c)(1) and 37 CFR § 1.633(f) are dismissed. <u>Dismissed</u>.

(10) Genesys's Preliminary Motion 4 (Paper No. 65) under 37 CFR § 1.633(c)(2) and 37 CFR § 1.633(c)(3) to add proposed Claims 113-126 to Application 08/102,390 and designate them as corresponding to the interference count is denied. Genesys has not shown that the subject matter thereof is patentable to Genesys as required by 37 CFR § 1.637(c)(ii). <u>Denied</u>.

(11) Genesys's Preliminary Motion 5 (Paper No. 77) under 37 CFR § 1.633(c)(2) and 37 CFR § 1.633(c)(3) to add proposed Claims 127-143 to Application 08/102,390 and designate

-135-

Interference 105,114

them as corresponding to the interference count is denied.
Genesys has not shown that the subject matter thereof is
patentable to Genesys as required by 37 CFR § 1.637(c)(ii).
<u>Denied</u>.

(12) ARS's Preliminary Motion 1 (Paper No. 45) under
37 CFR § 1.633(a) for judgment that Genesys's Claims 105-112 are
unpatentable under 35 U.S.C. § 112, first paragraph, for
noncompliance with its written description requirement; ARS's
Preliminary Motion 2 (Paper No. 46) under 37 CFR § 1.633(a) for
judgment that Genesys's Claims 105-112 are unpatentable under
35 U.S.C. § 112, first paragraph, for noncompliance with its
enablement requirement; and Genesys's Preliminary Motion 3 (Paper
No. 64) for judgment that Claims 1-58 of ARS's '071 patent are
unpatentable under 35 U.S.C. § 112, first paragraph, for
noncompliance with its enablement requirement; are dismissed
with regard to Claims 105 and 107-112 of Genesys's Application
08/102,390 and Claims 1, 2, 5-7, 9-20, 22, 23, 25, 26, 32-39,
52-54, 56 and 57 of ARS's '071 patent, which have been determined
to be unpatentable over alternative and/or collective prior art
teachings; and denied for Claim 106 of Genesys's Application
08/102,390 and Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58
of ARS's '071 patent. Our reasons are as follows.

-136-

Interference 105,114

We find that the evidence and arguments the parties submitted in support of their respective Section 112 motions generally are inconsistent with the evidence and arguments the parties submitted in support of their respective motions for judgment that same claims are unpatentable over cited prior art teachings. See Genesys's Preliminary Motion 2 (Paper No. 63) and ARS's Preliminary Motions 3 (Paper No. 47), 4 (Paper No. 48) and 5 (Paper No. 49). Both ARS and Genesys have urged that the subject matter the other party claims would have been obvious to persons having ordinary skill in the art in view of prior art with guidance and direction no more comprehensive than that found in the parties' respective specifications. For example, Genesys argues that references such as Japan and Kaufman I would have rendered the subject matter of ARS's Claims 1, 2, 3, 17-19, 26, and 27 obvious to persons having ordinary skill in the art regardless whether ARS's claims are directed to methods for activating, modifying or causing a prokaryotic microorganism or eukaryotic yeast, plant or animal cell to stimulate or enhance expression of an endogenous or exogenous target gene by inserting an effective DNA regulatory sequence or amplifiable gene into the genome of the microorganism or cell in operative vicinity to the target gene by homologous, or random recombination. None of Japan, Kaufman I, Raibaud, or other references cited by the

-137-

Interference 105,114

parties provide a broad scope of examples in support of their respective teachings. We find that each reference presents few examples and the scope of those examples is extremely limited. Nevertheless, to justify their respective positions, both ARS and Genesys note the high level of skill in the art and present conflicting expert testimony and prior art in support. We particularly note that the testimony of Bert Rowland, counsel for Cell Genesys at the appropriate time, is said to reflect Dr. Skoultchi's belief that insertion by homologous recombination is the only patentable feature of its invention (Exh. 2054, pp. 2-3, para. 2, and Exhibit A thereto). While we have found Rowland's testimony generally not credible, we cannot help but notice that his testimony, "I believe that once you had the idea, all the enabling technology was available" (Exh. 2055, p. 36), is inconsistent with the argument now made by Genesys.

Certainly, we find scant evidence in support of ARS's motions that the subject matter of Claim 106 of Genesys's Application 08/102,390, Genesys's only remaining patentable claim, is not adequately described and would not have been enabled by Genesys's supporting specification. With regard to the full scope of the subject matter the parties broadly claim, we note that both ARS and Genesys argue and point to the same relative kind, amount and weight of conflicting testimony and

-138-

Interference 105,114

prior art teaching in support their respective positions that the
subject matter the other party claims is inadequately supported.
On the other hand, the parties have not concomittently explained
why their own disclosures with substantially the same level of
support well satisfy the requirements of 35 U.S.C. § 112, first
paragraph. We are at a loss to understand how and why prior art
disclosures which would have rendered one party's claims obvious
to a person having ordinary skill in the art, and supported the
invention it claims, would not also have rendered the other
party's claims directed to the same patentable invention obvious
to person having ordinary skill in the art, and supported the
invention other party claims. ARS's disclosure appears to be no
less enabling than Genesys's disclosure, and _vice versa_. The art
Genesys applies against ARS's claims appears to be no less
pertinent to the subject matter Genesys's claims, and _vice versa_.

We need not dwell on the adequacy of support in the parties
respective disclosures for the subject matter of Genesys's
Claims 105 and 107-112 and Claims 1, 2, 5-7, 9-20, 22, 23, 25,
26, 32-39, 52-54, 56, and 57 of ARS's '071 patent. We conclude
that none of those claims is directed to subject matter which is
patentable over prior art of record. That same prior art is
evidence of the level of skill and knowledge in the art at the
pertinent time. ARS has not made a case for the unpatentability

-139-

Interference 105,114

of the subject matter of Genesys's Claim 106, and we find enough support for that claim in Genesys's disclosure to require ARS to establish that the subject matter thereof is unpatentable to Genesys. As for the subject matter of Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of ARS's '071 patent, having considered all the evidence of record, we conclude that Genesys's arguments, evidence and testimony against the patentability of ARS's patentable claims are no less complete, comprehensive and convincing than ARS's contravening arguments, evidence and testimony. Accordingly, Genesys has not met its burden to show that it is entitled to the relief it seeks against Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of ARS's '071 in Preliminary Motion 3 (Paper No. 64), and ARS has not satisfied its burden to show that it is entitled to the relief it seeks against Claim 106 of Genesys's Application 08/102,390. Therefore, the motions are dismissed-in-part and denied-in-part.

Dismissed-in-part; Denied-in-part.

    E.   Miscellaneous Motions

        (1)  ARS's Motion To Suppress the Declaration of Dr. Michael Heartlein (Exh. 2031) under 37 CFR § 1.635/1.656 (Paper No. 147) is dismissed. ARS acknowledges that "CG submitted Dr. Heartlein's declaration, Exhibit 2031, in support of its preliminary motion 3" (Paper No. 147, p. 1, III(1)).

Interference 105,114

Having considered all the pertinent evidence of record, we dismissed-in-part and denied-in-part Genesys's Preliminary Motion 3 (Paper No. 64). Accordingly, ARS's motion to suppress Heartlein's declaration is moot. <u>Dismissed</u>.

(2) ARS's Motion To Suppress (CG's Exhibit 2040 and Portions of Exhibit 2054)(Paper No. 147) is dismissed. Genesys submitted the Declaration of Bertram I. Rowland and supporting exhibits under 37 CFR § 1.131(a) which ARS here seeks to suppress to establish invention of the subject matter of Genesys's claims corresponding to the interference count prior to the effective date of Japanese Patent Publication No. 1-215280, published August 29, 1989. Herein we have concluded that Genesys's showing under 37 CFR § 1.131(a), including the Declaration of Bertram I. Rowland and supporting exhibits ARS seeks to suppress, does not establish that Genesys invented the subject matter defined by Genesys's claims corresponding to the interference count prior to August 29, 1989. Accordingly, ARS motion to suppress the Declaration of Bertram I. Rowland and supporting exhibits is moot. <u>Dismissed</u>.

(3) Genesys's Motion To Suppress Evidence And Impose Sanctions pursuant to 37 CFR § 1.656(h)(Paper No. 149) relates to declaratory and testimonial evidence filed in support of ARS's Preliminary Motions 1 (Paper No. 45) and 2 (Paper No. 46). After

-141-

Interference 105,114

having considered all the pertinent arguments and supporting evidence, we dismissed-in-part and denied-in-part ARS's Preliminary Motions 1 and 2. Accordingly, Genesys's motion to suppress evidence in support thereof is dismissed as moot. Dismissed.

While the Board may impose appropriate sanctions under 37 CFR S 1.616(a) against a party who fails to comply with applicable regulations and orders entered by an Administrative Patent Judge or the Board, we shall not do so in this case. Suffice it to say that a proponent for imposition of sanctions should present its case with clean hands. Having considered all the evidence and testimony proffered by both parties in this case, we are not satisfied with the arguments and evidence either party has placed before us.

F.    Other observations

We note several violations of the guidelines for cross-examination (Paper No. 2, Standing Order, S 46), which counsel for ARS characterized as "idiosyncratic" and "unusual" (Exh. 2055, p. 6, l. 21-22). Even if counsel believe the guidelines are idiosyncratic and/or unusual, in the future we expect counsel to strictly adhere to those guidelines. The board's experience with the guidelines has been very positive. Side-show discussions have virtually been eliminated from transcripts of

-142-

Interference 105,114

cross-examination thereby allowing the parties and the board to concentrate on the witness testimony as opposed to counsel's attempting to "testify" or direct witness testimony through bogus objections.

     1.   By Mr. Kelber: "Mischaracterizes the testimony" (Exh. 2055, p. 20, l. 22, through p. 21, l. 1). If a lawyer for one party "mischaracterizes" testimony, any mischaracterization should be corrected (1) by the witness without help from counsel, or (2) by counsel on redirect.

     2.   By Mr. Kelber: "Objection as to form" (Exh. 2055, p. 22, l. 18). The objection appears in numerous places in the transcript (Exh. 2055). There is no objection as to form in interference practice. *See* Guideline 3, Example 2. If a question is in "improper form" (whatever that might be), the witness can state that the witness does not understand the question.

     3.   By Mr. Gholz: "Objection. Assumes a fact not in evidence" (Deposition Transcript of Roger L. Browdy (Exh. 2069), p. 20, l. 4-5). We note that the witness was able to answer the question. If a question "assumes a fact not in evidence," then in a brief a party may tell us why the answer is not entitled to much weight. Alternatively, the fact may turn out to be in evidence via testimony of a subsequent witness.

-143-

Interference 105,114

     4.   By Mr. Gholz: "Objection as to form" (Deposition Transcript of Roger L. Browdy, p. 28, l. 5).

     5.   By Mr. Gholz: "Numbered in ink or in the typing?" (Deposition Transcript of Roger L. Browdy, p. 33, l. 8-9). It is up to the witness, not counsel, to make clarifications. If the witness is not confused, then counsel should not say anything. If the witness is confused, the witness can ask a question. Counsel's opportunity to correct confusion is on redirect.

   G.   <u>Order</u>

The interference is returned to the Trial Section for such action as may be appropriate not inconsistent with the views expressed herein.


TEDDY S. GRON             )
Administrative Patent Judge   )
                          )
                          )
FRED E. McKELVEY         )  BOARD OF PATENT
Senior Administrative Patent Judge)  APPEALS AND
                          )  INTERFERENCES
                          )
JAMES T. MOORE          )
Administrative Patent Judge   )

Interference 105,114

cc (Fed Ex):

Counsel for APPLIED RESEARCH SYSTEMS
      ARS HOLDING, N.V.:

      Charles L. Gholtz, Esq.
      OBLON, SPIVAK, McCLELLAND, MAIER
          & NEUSTADT, P.C.
      1940 Duke Street
      Alexandria, VA  22314

Counsel for CELL GENESYS, INC.:

      Steven B. Kelber, Esq.
      PIPER RUDNICK LLP
      1200 Nineteenth Street, N.W.
      Washington, D.C.  20036-2430