UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| APPLIED RESEARCH HOLDING<br>SYSTEMS ARS HOLDING, N.V.,<br><br>Plaintiff,<br><br>CELL GENESYS, INC. AND<br>TRANSKARYOTIC THERAPIES, INC.,<br><br>Defendants | C.A. No. 04 11810 MLW |

## DEFENDANT TRANSKARYOTIC THERAPIES, INC.'S MEMORANDUM OF REASONS IN SUPPORT OF ITS MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 21, defendant Transkaryotic Therapies, Inc. ("TKT") moves that it be dismissed from the above-captioned action on the grounds of misjoinder.

## I. INTRODUCTION

In its First Amended Complaint ("Amended Complaint"), plaintiff Applied Research Holding Systems ARS Holding, N.V. ("ARS") states two unrelated causes of action against two separate defendants. The main case (Count I of the Amended Complaint) is an appeal from an adverse decision of the U.S. Patent and Trademark Office concerning rights in an interference dispute between ARS and defendant Cell Genesys. Count I is thus fundamentally appellate and administrative in nature. The second and unrelated case (Count II of the First Amended Complaint) is a patent infringement case brought by ARS against TKT.

Because the two counts set forth in ARS' amended complaint arise out of different transactions and involve no overlapping questions of law or fact, TKT has been misjoined and would be prejudiced if forced to participate in an appellate dispute between ARS and Cell

1

Genesys. Moreover, because resolution of Count I may very well render Count II moot, ARS'
action against TKT is premature.

The only common element of the two Counts is that both involve at least some claims of
ARS' U.S. Patent No. 5,272,071 (the "'071 patent"). This "connection," however, is
insufficient as a matter of law to permit joinder – especially given that it appears that ARS
brought its unrelated claims against TKT primarily to bolster its arguments in favor of having the
ARS / Cell Genesys dispute proceed in this Court rather than in the District Court for the District
of Columbia.

TKT therefore respectfully requests that the Court dismiss TKT from this action.

## II. ALLEGATIONS MADE IN THE AMENDED COMPLAINT AND PROCEDURAL FACTS

For the purposes of this motion, TKT will not dispute the facts alleged either in the
Complaint, Amended Complaint or in the Decision of the Board of Patent Appeals and
Interferences (hereafter, the "Board" and the "Decision"), which was attached to the Amended
Complaint as exhibit 1. Reference will also be made to the related complaint of defendant Cell
Genesys (the "CG Complaint"), contemporaneously filed by Cell Genesys in federal district
court in the District of Columbia. The CG Complaint is attached to these motion papers as
exhibit A.[1]

### A. The Parties

Plaintiff ARS alleges that it is the assignee of U.S. Patent No. 5,272,071 ("the '071
patent"). The '071 patent purports to cover methods of modifying the proteins encoded by and
synthesized from genes. (Amended Compl. ¶¶ 6-7.)

---

[1] TKT does not concede that the facts as pleaded by ARS or Cell Genesys are true, and reserves its right to challenge
those allegations as appropriate.

ARS further contends that Defendant Cell Genesys is the assignee of U.S. Patent Application No. 08/102,390 ("the '390 application"), which ARS alleges concerns the same subject matter as ARS' '071 patent. (Amended Compl. ¶¶ 2, 8.)

TKT, the second defendant, is a Delaware company with its principal place of business in Massachusetts. (Amended Compl. ¶ 3.) The Amended Complaint alleges that TKT has a "financial interest" in Cell Genesys' '390 application.[2] (Amended Compl. ¶ 9.) TKT was not a party to the original Complaint that ARS filed on August 19, 2004.

## B. Count I:  ARS' Appeal of the Board Decision concerning Cell Genesys and ARS

On March 28, 2003, the Board declared an interference proceeding between ARS and Cell Genesys pursuant to 35 U.S.C. § 135(a). ARS and Cell Genesys were the only parties to the interference proceeding. The interference proceeding placed the '071 patent in issue against the '390 application. (Amended Compl. ¶ 6; Decision, pp. 2-3.) TKT was not a party to the interference.[3] (Id.)

An interference proceeding occurs when different inventors claim substantially the same invention. An interference is essentially a proceeding to determine who was the first to invent that particular invention. 35 U.S.C. §135(a); *see Noelle v. Lederman*, 355 F.3d 1343, 1350 (Fed. Cir. 2004) ("A patent interference is designed to determine whether two patent applications (or a patent application and an issued patent) are drawn to the same patentable invention and, if so, which of the competing parties was first to invent the duplicative subject matter") (internal quotations omitted).

Typically, an interference proceeding involves two phases:  the preliminary motions phase and the priority phase. The preliminary motions phase determines the subject matter at

---

[2] TKT is a licensee of Cell Genesys.   (Amended Complaint ¶ 9.)

[3] Dr. Michael Heartlein, a TKT employee, was deposed in the interference and provided a Declaration.

issue, as well as the patentability of the claims at issue (e.g., whether there is a novel invention). The second (or "priority") phase determines the <u>priority</u> of invention, i.e., which party was the first to invent the subject matter at issue. 37 C.F.R. §41.205.[4]

In the interference proceeding between ARS and Cell Genesys, the questions addressed were (a) what "inventions" were properly claimed in the '071 patent and the '390 application, (b) whether those inventions were the same or "interfered," and, if so, (c) who the real inventors were. (Amended Compl., Ex. 1, Decision.)

The interference proceeding before the Board lasted 15 months. ARS filed at least 19 motions; Cell Genesys filed at least 10, including a motion to suppress evidence and impose sanctions. More than 177 papers were either filed in the interference or issued by the Board. At least 70 exhibits were filed by the parties. The parties filed witness declarations, and witnesses were cross-examined. A hearing was held before the Board on February 26, 2004. (*See* Amended Compl., Ex. 1, Decision.)[5] TKT was not involved as a party in any of that proceeding.

On June 24, 2004, the Board issued its Decision. The Decision ruled that claims 1, 2, 5-7, 9-20, 22, 23, 25, 26, 28-30, 32-39, 52-54, 56 and 57 of ARS' '071 patent were invalid,[6] and that claims 105 and 107-112 of Cell Genesys's '390 application were unpatentable. The Board further ordered that the remaining claims of the '071 patent and the '390 application did not interfere with each other and, hence, that there was no interference-in-fact. (*See* Amended Compl., Exhibit 1, Decision.)

---

[4] New rules relating to interference practice became effective on September 13, 2004. <u>See</u> Federal Register, Vol. 169, No. 155, 49960-50020 (August 12, 2004).

[5] Since interference papers are not publicly available, the information in this paragraph has been gleaned from the Decision attached to the Complaint.

[6] The Decision states that claims 28, 29, and 30 are invalid (Decision pp. 79, 125-126), although these claims are not included in the summary of the Board's rulings (Decision pp. 136, 139).

At that point, if neither ARS nor Cell Genesys had appealed, the interference would have been considered "terminated," and the notice of invalidity of the ARS '071 patent claims would have been placed in the prosecution history file for the patent. 35 U.S.C. §135(a); MPEP §§ 2361, 2363. The '390 application would have been returned to the patent Examiner for examination consistent with the Board decision. MPEP §2363.

However, a party may appeal the Board's decision to a district court by way of a civil action under 35 U.S.C. § 146. In such a case, the district court sits to review the Board's decision. *See, e.g., Conservolite, Inc. v. Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994) (action under § 146 asks district court to "review the action of the Board").

That is what happened in this case. On August 18, 2004, Cell Genesys filed an appeal of the Decision pursuant to § 146 in the District Court for the District of Columbia, civil docket number 1:04-cv-01407-JDB. (*See* Ex. A, CG Compl.) On August 19, 2004, ARS also appealed the decision of the Board pursuant to § 146 by filing a Complaint in this Court. (*See* Ex. B, original Compl.) That original Complaint did *not* include TKT as a party or even *mention* TKT. (*Id.*)

On August 30, 2004, ARS filed a "First Amended Complaint." This Amended Complaint added a "Count II" against TKT, alleging patent infringement. As explained in more detail below, Count II alleges no relevant connection between TKT and the original § 146 action (i.e., Count I) that ARS brought against Cell Genesys.

In its appeal (i.e., in Count I of the Amended Complaint), ARS raises three main issues: (a) the priority date to which ARS is entitled for the invention at issue in the interference, (b) the validity of the 37 claims from the ARS '071 patent that the Board found invalid, and (c) the patentability of one claim from Cell Genesys' '390 application. (Amended Compl. ¶¶ 11-12.)

In its separate appeal now pending in the district court for the District of Columbia, Cell Genesys raises as principal issues the validity of all the claims of the '071 patent, and the patentability of claims of the '390 application. (*See* Ex. A, CG Compl. ¶ 23.)

On September 17, 2004, ARS made a motion to the district court in D.C. to transfer the Cell Genesys appeal to this Court. (*See* Ex. C, ARS Motion to Transfer Venue.)

A number of outcomes in the ARS/ Cell Genesys interference are possible, depending on the resolution of these two appeals. For example, a total affirmance of the Decision of the Board would leave 36 claims of the '071 patent invalid, would retain the finding that there is no interference in fact between claims of the '071 patent and the '390 application, and would allow Cell Genesys to pursue its application for the claims the Board found patentable. By contrast, a reversal of the Board's decision could mean, among other things, that both sides' claims are patentable, but also that both sides' claims interfere with one another.[7] This could result in a remand to the Board for a renewed priority phase to determine which party was the first to invent the subject matter at issue.[8] *See, e.g., Plumley v. Mockett,* Case No.: CV 98-6117-GHK(Ex), 1999 U.S. Dist. LEXIS 23308, at *19 (C.D. Cal. June 4, 1999) (remanding to Board and noting, "district courts in § 146 actions have more recently been remanding issues"). Many other outcomes of the appeals are also possible. TKT has no involvement in any of the issues that will affect those various potential outcomes.

There are at least two possible outcomes of the two § 146 appeals that would eliminate entirely any pending or prospective ARS claim against TKT under the '071 patent: 1) a reversal by this Court of the Board as to claims in the ARS patent that the Board previously found

---

[7] Neither side suggested that the interference as declared was in error since that issue was not raised before the Board. (*See*, Amended Compl., Ex. 1, Decision.)

[8] Either Cell Genesys or ARS could appeal the district court's decision to the Federal Circuit. 15 U.S.C. §3416(c). Additionally, if the district court (or the Federal Circuit) remanded to the Board for the second phase, either Cell Genesys or ARS could appeal the Board's determination again. 35 U.S.C. §§ 141, 146.

6

invalid, followed by a priority determination that ARS' inventor is not the first inventor (and, hence, is not entitled to a patent); or, 2) a determination on appeal that every claim of the '071 is invalid. In either case, the '071 patent would cease to exist and could not be asserted against TKT or anyone else.

## C. Count II: The Infringement Claim Against TKT

As set forth above, Count I of the Amended Complaint constitutes ARS' appeal from the adverse Board Decision issued in the interference proceeding between ARS and Cell Genesys.

But ARS added to its Amended Complaint an unrelated Count II against TKT, which was not a party to the complex and long-standing interference issues between ARS and Cell Genesys, and was not even a party to the action commenced by ARS' original Complaint. Count II alleges that TKT infringes the '071 patent. (Compl. ¶¶ 13-16.) The Amended Complaint does not specify what claims of the '071 patent TKT allegedly infringes, but the only claims listed by number are those that were specifically found patentable by the Board.[9] In other words, the only patent claims specifically asserted against TKT in Count II are claims expressly *not* at issue in ARS' appeal against Cell Genesys in Count I. (Amended Compl. ¶ 13.)[10]

The Amended Complaint does not identify a single infringing act by TKT. There is no allegation that the allegedly infringing conduct by TKT involves or even concerns Cell Genesys.

Similarly, no fact is alleged in the Amended Complaint to connect the alleged infringement by TKT to the events at issue in Count I. The Amended Complaint does not allege (nor can it) that TKT was a party to the interference. The Amended Complaint does not allege (nor can it) the existence of any interfering TKT patent or patent application. The Amended

---

[9] As stated *supra,* the Board found claims 28-30 unpatentable over the prior art. However, these claims are erroneously identified by ARS as having been found patentable. (Amended Compl. § 13.)
[10] These "extra" claims *are*, however, at issue on Cell Genesys' appeal against ARS, as noted above.

7

Complaint does not allege (nor can it) that TKT participated in any of the historical events relevant to the invention of the claims at issue in the interference.

## III. ARGUMENT

### A. Legal Standard

Federal Rule of Civil Procedure 21 states that parties who are misjoined "may be dropped . . . by order of the court on motion of any party . . . on such terms as are just." Fed. R. Civ. P. 21. Parties are misjoined when the preconditions for permissive joinder in Rule 20(a) are <u>not</u> met. *Beaulieu v. The Concord Group Ins. Co.*, 208 F.R.D. 478, 479 (D.N.H. 2002).

To properly join multiple defendants in one suit, the plaintiff must allege facts that show **both** (1) that the right to relief asserted against the defendants arises out of the same transaction, occurrence, or series of transactions or occurrences, **and** (2) that a question of law or fact in common to both defendants will arise in the action. *Beaulieu*, 208 F.R.D. at 479 (citing Rule 20(a)). Generally, the first "same transaction" test is met by plaintiff alleging that it has "some right to relief" against the defendants "growing out of the events in question." *Carroll v. Brotherhood of R.R. Trainmen*, 417 F.2d 1025, 1027 (1st Cir. 1969). Similarly, a plaintiff fails to meet the test for joinder if it alleges "distinct" wrongs "invasive of separate legal interests." *Beaulieu*, 208 F.R.D. at 479. Determination as to whether parties have been misjoined lies with the discretion of the trial court. *Beaulieu*, 208 F.R.D. at 479.

Permissive joinder exists to promote "judicial efficiency" and "fairness" by "resolving related issues in a single lawsuit." *Beaulieu*, 208 F.R.D. at 479.

**B. TKT Should Be Dismissed From the Case Because the Amended Complaint Does Not Allege Facts Sufficient To Permit Joinder.**

TKT should be dismissed from the case because the Amended Complaint fails to satisfy either of the two pre-conditions that must exist for permissive joinder.

1. A § 146 appeal is fundamentally different than a patent infringement action.

As a threshold matter, it is procedurally improper to include an infringement claim within an appeal of an interference judgment brought under § 146. A § 146 proceeding is, in essence, an appeal from the finding of an administrative agency, not a standard civil action. *See Conservolite, Inc. v. Widmayer,* 21 F.3d 1098, 1102 (Fed. Cir. 1994) ("an action under § 146 is essentially a proceeding to review the action of the Board"); *Velsicol Chem. Corp. v. Monsanto Co.,* 579 F.2d 1038, 1043 n.5 (7th Cir. 1978) (a § 146 action "is an extension of Patent Office proceedings. It is in essence a suit to set aside a judgment of a quasi-administrative body"). As a general rule, new evidence is admitted in a § 146 action only if it relates to issues previously raised by the parties during the interference or by the Board's decision. *Conservolite,* 21 F.3d at 1102. Notably, ARS essentially conceded this point by originally bringing a sole count against Cell Genesys in the original complaint. Apparently for strategic reasons related to venue, TKT was added as an afterthought.

Accordingly, if TKT is not dismissed from this case, there will essentially be two completely different cases—subject to different procedural rules, evidentiary rules, and burdens of proof—proceeding as one. On Count I, ARS will be appealing the Board's Decision regarding the patentability of the invention at issue and the other issues noted above. ARS and Cell Genesys will be precluded from raising issues not already raised before the Board below, and may be restricted in their right to introduce evidence. On Count II, by contrast, ARS and

9

TKT will be starting a new discovery process and preparing for a trial on the question of alleged infringement by TKT. This question has little, if anything, to do with the issues raised in the interference between ARS and Cell Genesys. If TKT alleges invalidity of the ARS '071 patent claims, it will not be limited to those issues raised during the interference. The two Counts of the Amended Complaint simply have nothing to do with one another and cannot logically co-exist in the same case. *Cf., e.g., McFarlane v. Resinite Corp.,* 273 F. Supp. 224, 224-26 (N.D. Ill. 1967) (bifurcating interference appeal count of the complaint from the infringement count of complaint).

## 2.  The Amended Complaint fails to allege that the right to relief sought against Cell Genesys and TKT arises from the "same transaction."

ARS' Amended Complaint against TKT fails because it lacks the proper joinder of a party, given that the claims against TKT do not arise out of the "same transaction" as ARS' interference dispute with Cell Genesys. That is, the "transaction" at issue on Count I is the alleged interference between ARS and Cell Genesys. By contrast, the "transaction" at issue on Count II is the alleged act of infringement by TKT. Count II of the Amended Complaint does not specify any such acts, let alone suggest the existence of any transaction or event that could possibly overlap with any transaction or event at issue in Count I. The fact that TKT was not included in the original complaint underscores this fact.

Therefore, the Amended Complaint fails to allege that ARS has "some right to relief" against TKT that "grow[s] out of the events in question" against Cell Genesys. *See Carroll,* 417 F.2d at 1027. When faced with analogous facts, courts have recognized that the claim against the misjoined party should be treated as a separate legal action. For instance, in *McFarlane v. Resinite Corp.,* 273 F. Supp. 224, 224-26 (N.D. Ill. 1967) the trial court, pursuant to Rule 42(b),

10

severed the interference appeal pleaded in the Amended Complaint from an infringement count of the Amended Complaint even though the counts were brought against the *same* party. *See also Stark v. Independent School District*, 163 F.R.D. 557, 563-65 (D. Minn. 1995) (dismissing defendant pursuant to Rule 21 where "essential claims" that would decide the outcome were alleged against different defendants, and where defendant's presence would be a "distraction").

Under the facts of this case, and given that ARS' claim against TKT does not even pass muster under the first prong of the two-part test for permissive joinder, the claim against TKT should be dismissed without the necessity of proceeding to the second prong of the test.

3. The Amended Complaint fails to allege a common question of law or fact.

Even if the Amended Complaint did allege that the allegations against Cell Genesys and TKT arise from the "same transaction" (and it does not), the Amended Complaint further fails to allege a common question of fact or law. The two claims should not be joined. *See, e.g., Black v. Unumprovident Corp.*, 245 F. Supp. 2d 194, 200 (D.Me. 2003) (denying joinder where relief for different parties depended on "wholly different factual scenarios").

The only possible common question between Count I and Count II concerns the validity of claims of the '071 patent that the Board found invalid. The Amended Complaint, however, does *not* expressly assert those patent claims against TKT. (Amended Compl. ¶ 13.) As such, there is not a single common issue as between Count I and Count II.

Even if ARS were to amend its complaint (again) to assert that TKT infringes the same claims that the Board found invalid, the determination of validity in the § 146 appeal and the determination of validity for infringement purposes do not necessarily overlap. For example, in

11

Count I, the validity case will presumably be limited to prior art cited before the Board, whereas there are no such limits on the evidence admissible in Count II.[11] Thus, even assuming that the same patent claims are at issue in Count I and Count II, there is no reason to believe that there is, actually, any common question of law or fact. At the least, the Amended Complaint fails to allege any commonality. *See, e.g.*, *DIRECTV, Inc. v. Armellino*, 216 F.R.D. 240 (E.D.N.Y. 2003) (dismissing the claims against all but the first named defendant because "[i]t is improper to join defendants who are unrelated either factually or legally.")

It also bears noting that, even if there were somehow a validity question in common, the standard of proof on such question would be different on Count I than on Count II. Count I would entail a preponderance of evidence standard (*see, e.g., Bruning v. Hirose*, 161 F.3d 681, 686 (Fed. Cir. 1998)) whereas Count II would entail a clear and convincing evidence standard (*see, e.g., Monarch Knitting Mach. Corp. v. Sulzer Morat GMBH*, 139 F.3d 877, 881, (Fed. Cir. 1998)).[12]

Furthermore, the standard of review may be different for Count I than for Count II. For Count I, unless new evidence is admitted, the Board's findings of facts would be reviewed under a "substantial evidence" review standard. *See In re Gartside*, 203 F.3d 1305, 1315 (Fed. Cir. 2000) (substantial evidence deference applies on "factual record compiled by the Board"); *Winner v. Wang,* 202 F.3d 1340, 1345 (Fed. Cir. 2000) (applying *Zurko* rule to § 146

---

[11] A patent is invalid if it does not concern a patentable subject matter (35 U.S.C. § 101), is not new (35 U.S.C. § 102), is obvious (35 U.S.C. § 103), lacks a written description (35 U.S.C. § 112), or is not enabled by its specification (35 U.S.C. § 112). *See generally* 35 U.S.C. § 282.

[12] Indeed, this point was cited in an article authored by Charles Gholz (one of the attorneys for ARS) as a factor weighing strongly in favor of resolving patent validity issues through the Patent Office procedures before proceeding with parallel infringement litigation *See* Gholz, "The Decisions of the Board in An Interference Are Entitled to Issue-Preclusive Effect in a Parallel Patent Infringement Action But Not Vice Versa," Intellectual Property Today, Vol. 6. No. 8, August 1999, page 8 ("I doubt that the Article III judge handling [such an] action will want to serve as a 'tryout' venue for patent validity issues that, ultimately, may be decided differently by Article I judges.") (Article is attached as Ex. D.)

proceedings). By contrast, for Count II, all of the district court's findings of fact would necessarily be de novo since there would be no prior decision to be reviewed.

## C. **The Court should exercise its discretion to dismiss under Rule 21.**

Even if ARS has met the standard for permissive joinder (and it has not), Rule 21 dismissal remains warranted in the Court's discretion.

### 1. TKT will be prejudiced if it is not dismissed.

Multiple and separate sets of evidence about different issues will have the tendency to be confusing and misleading.

If the patent claims do not overlap, there will be no points of commonality, and the Court will be forced to keep track of two entirely separate cases at once. Discovery and pre-trial activity will be similarly burdensome to TKT. If the patent claims do overlap, any invalidity analysis on Count II will likely concern different evidence than the invalidity analysis on Count I, and would involve a different standard of proof. Moreover, since any overlap would not be total, the Counts would involve different claims. Such a situation would invite confusion and unfair prejudice both during discovery and at trial. *See McFarlane v. Resinite Corp.,* 273 F. Supp. 224 (N.D. Ill. 1967) (noting the different discovery and evidence required for an infringement claim and an interference appeal and ordering separate trials).

Potentially adding to the prejudice is ARS' motion to transfer Cell Genesys's appeal to this Court. If the ARS appeal and the Cell Genesys appeal are consolidated into one action (a

13

result ARS appears to be seeking), the case would become even more complicated and even more distant from anything having to do with TKT.

Indeed, based on the arguments made by ARS in support of its Motion to Transfer, it appears that ARS appended the infringement claims against TKT onto its § 146 appeal—a claim that was added to its Amended Complaint by amendment—primarily to bolster ARS' arguments that the Cell Genesys appeal should be transferred to this Court from the District Court for the District of Columbia.

2. Count II is premature.

ARS' infringement claim against TKT is premature. As noted above, resolution of the § 146 appeal could well dispose of the infringement claim against TKT. Indeed, after the appeals, the '071 patent may cease to exist. Or, the patent may continue to exist but in a form that eliminates ARS' claim against TKT. In any case, the threshold matter is not resolved, so there is little, if any, justification in permitting Count II to be brought now against TKT.[13] *See Bayer AG v. Novartis Crop Prot. Inc.*, 55 USPQ2d 1509, 1511-12 (M.D. La. 2000) ("It seems more efficient to allow the administrative study of the patent to conclude before this matter moves toward trial. . . Moreover, if the patent held by Bayer is held to be invalid in the Interference proceeding, this case may be disposed of in its entirety."); *Wireless Spectrum Tech. v. Motorola Corp.*, 2001 WL 32852 (N.D. Ill. Jan. 12, 2001) (staying infringement action given pendency of interference proceeding on the same patent); *cf. Chase Manhattan Bank, N.A. v. Flexwatt Corp.*,

---

[13] Again, one of the attorneys representing ARS has made a similar argument elsewhere in at least two separate articles. *See* note 12, *supra*. *See also* Gholz, "Multi-Patent Interference," Intellectual Property Today, Vol. 5, December 1998, page 6 (noting that "If the court were to go ahead and decide the validity questions (including priority!) before the board did, its decision would not bind the board, because of the lower standard of proof imposed on the patent challenger in the interference" and opining that Administrative Patent Judges should make the validity decisions in the first instance – rather than an Article III judge – because "the board's decision is more likely to accurately apply the law.") (Article is attached as Ex. E.)

139 F.R.D. 573, 575 (D. Mass. 1991) (denying Rule 20 joinder where claim against defendant was "dependent upon a future event").

## IV. CONCLUSION

The Amended Complaint should be dismissed against TKT because plaintiff ARS has improperly joined TKT. Because plaintiff does not (and cannot) plead sufficient facts, a dismissal of TKT from the Amended Complaint under Rule 21 is appropriate. For these reasons, TKT's motion to dismiss should be granted and the Court should grant TKT whatever additional relief is just and appropriate under the circumstances.

TRANSKARYOTIC THERAPIES, INC.,

By their attorneys,

/s/ Alison R. Aubry
David B. Bassett (BBO # 551148)
Shann Kerner (BBO # 564537)
Donna M. Meuth (BBO # 645598)
Stephen M. Muller (BBO # 646699)
Alison R. Aubry (BBO # 657298)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000

Dated: October 4, 2004

## CERTIFICATE OF SERVICE

I, Alison R. Aubry, hereby certify that a true copy of the above document has been

delivered by hand upon Fred A. Kelly, Esq., Nixon Peabody LLP, 100 Summer St., Boston,

Massachusetts, 02110, and by first class mail upon each of the following:


Michael F. Borun, Esq.
Marshall, Gerstein, & Borun LLP
6300 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606-6357

Charles L. Gholz, Esq.
Oblon, Spivak, McClelland, Maier & Neustadt, P.C.
1940 Duke Street
Alexandria, Virginia 22314

Steven B. Kelber Esq.
Piper Rudnick LLP
1200 Nineteenth Street, NW
Washington, DC 20036-2430


Dated:  October 4, 2004

/s/   Alison R. Aubry
Alison R. Aubry

16