ARS filed the action against CGI in Massachusetts because the issues in that action will be very similar if not identical to the issues that will be raised in ARS's action against TKT, thus making litigation of all issues related to ARS's issued patent in a single court most convenient for all parties and witnesses. Moreover, ARS is not aware that TKT would be subject to personal jurisdiction in any District other than Massachusetts (*i.e.*, it is unlikely that the action against TKT could be joined with any action in this District).

This case should be transferred to Massachusetts because (i) in ARS's action against TKT in Massachusetts, District Judge Mark L. Wolf will very likely be presented with most if not all of the same issues, arguments, and evidence that will be presented by CGI in its action against ARS here, making concurrent litigation in both Districts very wasteful of both judicial and party resources and possibly leading to inconsistent verdicts; (ii) neither of the parties nor their witnesses or documents are located in this District, nor is this action connected in any other way to this District, whereas some of ARS's relevant witnesses and documents are located in the District of Massachusetts; and (iii) trying this case in the District of Massachusetts in conjunction with ARS's pending case against TKT will not be less convenient for CGI.

Consequently, ARS respectfully requests that this Court transfer this action to the District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).

## II.    STATEMENT OF FACTS

### A.    The Parties

CGI is a Delaware corporation with its primary place of business in South San Francisco, California. (*See* CGI's Complaint filed herein, attached as Exhibit A hereto, at ¶ 1.) ARS believes CGI also has a manufacturing facility in Memphis, Tennessee. CGI does not appear to have any connection to this District (other than having retained counsel here, which is not relevant to a determination under § 1404(a)).

2

Like CGI, ARS has no connection to this District. ARS is a company organized and existing under the laws of the Netherlands Antilles and has its only place of business in Curacao, Netherlands Antilles. (*Id.* at 2.) ARS does not have any facilities or personnel in the United States. ARS is a wholly owned subsidiary of Serono S.A., a global biopharmaceutical company with headquarters in Geneva, Switzerland and facilities around the world.

**B.     The Nature of the Parties' Dispute**

CGI brought this action under 35 U.S.C. § 146[1] seeking to reverse the decision and final judgment (collectively "the Decision") of the PTO's Board of Patent Appeals and Interferences ("the Board") in Interference No. 105,114 between CGI and ARS ("the Interference"). (*See* Exhibit A at ¶¶ 3 and 7-23) (a copy of the Board's June 22, 2004 "Decision on Preliminary Motions" is attached as Exhibit B hereto).

**1.     The Nature of the Underlying Interference Proceeding**

As this Court may be aware, an interference in the PTO is conducted to determine which of two or more inventive entities was the first to invent patentable subject matter claimed in one or more pending patent applications and/or issued patents. The PTO declared the Interference between CGI and ARS on March 28, 2003 to determine which party was the first to invent the subject matter claimed in both ARS's issued patent and CGI's pending patent application, *i.e.*,

---

[1] 35 U.S.C. § 146 states, in pertinent part, "Any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences may have remedy by civil action, if commenced within such time after such decision, not less than sixty days, as the Director appoints or as provided in section 141 of this title, unless he has appealed to the United States Court of Appeals for the Federal Circuit, and such appeal is pending or has been decided." A section 146 action is a "hybrid of an appeal and a trial *de novo*": the District Court conducts a *de novo* trial, including *de novo* factual findings, when live testimony is admitted on an issue, and the record before the Board is treated as if it were produced in the action before the District Court. *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1347-48 (Fed. Cir. 2000).

methods to modify the expression of genes in cells, DNA constructs used in those methods, and the cells resulting from those methods.

Prior to the development of these inventions, scientists seeking to produce useful proteins in large quantities had to physically insert the DNA sequences encoding those proteins, as well as DNA sequences that caused multiplication ("amplification") of those protein-encoding DNA sequences inside cells and/or regulatory sequences that "turned on" the expression of the proteins from those DNA sequences, into isolated cells grown in a laboratory. Among other things, the inventions at issue in the Interference allowed scientists for the first time to insert just the amplification and/or regulatory sequences into the cells to "turn on" or increase the expression of genes that were already present in those cells without having to also insert the protein-encoding sequences themselves. They were able to accomplish this novel result by using the process of "homologous recombination."

### 2.    The Parties' Interfering Patent and Patent Application

ARS is the owner of the issued patent involved in the Interference, U.S. Patent No. 5,272,071 ("the '071 patent"). The '071 patent issued on December 21, 1993. It contains 58 claims directed to the methods, DNA constructs, and resulting cell lines described above. The '071 patent lists Scott C. Chappel of Jamaica Plain, Massachusetts as the inventor. Dr. Chappel, a Massachusetts resident formerly employed by another subsidiary of Serono S.A., assigned the '071 patent to ARS in July, 1992. (*See* Exhibit C.)

CGI is the owner of the patent application involved in the Interference (U.S. Patent Application Serial No. 08/102,390) ("the '390 application"). When the Interference was declared, the '390 application contained two claims directed to cells modified as described above. During the course of the Interference, the Administrative Patent Judge (the "APJ") designated to oversee the interlocutory phase of the Interference permitted CGI to amend the

4

'390 application to include an additional six claims directed to such methods and cells. The '390

application lists Arthur Skoultchi of Larchmont, New York as the inventor.

### 3.    The Subject Matter at Issue in the Interference

To determine which party was the first to invent these methods, DNA constructs and

cells, the APJ crafted a "Count" intended to encompass these inventions. The APJ determined

that this "Count" would consist of the subject matter of claims 2 and 3 of ARS's '071 patent,

which state:

> 2. A method of modifying the expression characteristics of a predetermined gene
> within the genome of a cell line, comprising inserting a DNA construct into said
> genome by homologous recombination, said DNA construct comprising a DNA
> regulatory segment capable of modifying the expression characteristics of said
> gene when operatively linked thereto, as compared to its existing DNA regulatory
> segment, and a DNA targeting segment homologous to a region of said genome
> within or proximal to said gene, wherein said construct is inserted such that said
> regulatory segment is operatively linked to said gene of interest.

> 3. A method of modifying the expression characteristics of a predetermined gene
> within the genome of a cell line, comprising inserting a DNA construct into said
> genome by homologous recombination, said DNA construct comprising an
> expressible, amplifiable gene capable of amplifying said gene when inserted in
> sufficiently close proximity thereto, and a DNA targeting segment homologous to
> a region of said genome within or proximal to said gene, wherein said construct is
> inserted such that said amplifiable gene is in sufficiently close proximity to said
> gene of interest to cause amplification thereof when said amplifiable gene is
> amplified.

The APJ provisionally determined that all of the claims of ARS's '071 patent and all of

the claims of CGI's pending patent application "corresponded to," *i.e.*, were encompassed by, the

Count.

### 4.    The Preliminary Motions in the Interference

Before a three-member panel of the Board determined which party was the first to invent

the subject matter of the Count (which would normally be determined based on the parties'

submission of evidence in a "Priority Phase"), the parties were permitted to file "Preliminary

Motions" (in a "Patentability Phase") setting out their arguments and evidence addressing, among other things, the patentability of each party's designated claims. The parties collectively filed a total of twenty-five such Preliminary Motions, as well as three motions to suppress evidence.

### 5.    The Witnesses in the Interference

In support of their Preliminary Motions, the parties submitted sworn declarations from a total of eleven witnesses. None of those witnesses resides in this District. However, two of the witnesses reside in Massachusetts. The first, Christie Kelton, is an employee of Serono Reproductive Biology Institute, Inc. in Rockland, Massachusetts. She submitted declarations in support of ARS. The second, Dr. Michael Heartlein, is a Vice-President in charge of research at Transkaryotic Therapies, Inc. ("TKT"), a Cambridge, Massachusetts biotechnology company (and exclusive licensee of CGI's '390 patent application, *see* discussion *infra*). He submitted a declaration on behalf of CGI. The other witnesses who testified in the Interference reside in California, Maryland, New Mexico, Michigan, Utah, Argentina, Australia, and Switzerland.

### 6.    The Board's Decision in the Interference

The Board set out its rulings on each of these Preliminary Motions in the Decision. In short, the Board found that certain prior-art references anticipated or rendered obvious all but one of CGI's pending claims and thirty-four of ARS's fifty-eight issued patent claims. The Board then determined that the sole remaining claim in CGI's pending patent application and the remaining twenty-four claims in ARS's '071 patent were not directed to the same patentable subject matter, resulting initially in dissolution of the Interference.

On June 23, 2004, the Board issued an "Errata" in which it indicated that the Interference was terminated rather than dissolved. (Exhibit D.) Then, in a "Judgment – No Interference-In-Fact" issued on June 24, 2004 (Exhibit E), the Board re-iterated its findings as to the

patentability of the parties' claims, its determination that the remaining claims found to be patentable were not directed to the same patentable subject matter (*i.e.*, they were not "interfering"), and its termination of the Interference. Consequently, the parties never proceeded to the "Priority Phase" of the Interference.

**C.    This Action**

Under 35 U.S.C. § 146 (*see* fn. 1 *supra*), the parties had sixty days (*i.e.*, until August 23, 2004) to file a civil action in a U.S. District Court seeking reversal of all or part of the Decision. Five days prior to this deadline, on August 18, 2004, CGI filed the instant action against ARS. (Exhibit A.) In its complaint, CGI seeks, among other things, reversal of the Board's determination that all but one of CGI's pending application claims are unpatentable and reversal of the Board's determination that twenty-four of the claims in ARS's '071 patent are not unpatentable. (*Id.* at ¶¶ 12-15 and 21-23.)

**D.    The Boston Action**

Counsel for ARS received CGI's complaint and summons in this action on August 19, 2004. That same day, ARS had filed a § 146 civil action against CGI in the U.S. District Court for the District of Massachusetts (*Applied Research Systems ARS Holding, N.V. v. Cell Genesys, Inc.*, D. Mass. Civil Action No. 04 11810 MLW) ("the Boston action"). (Exhibit F.) In the Boston action, ARS seeks, among other things, reversal of the Board's decision that thirty-four of the fifty-eight claims in ARS's '071 patent are "unpatentable" over certain prior-art references. (*Id.* at ¶ 8.)

On August 30, 2004, ARS amended its complaint against CGI in the Boston action to include a count for infringement of ARS's '071 patent by TKT, a biotechnology company located in Cambridge, Massachusetts. (Exhibit G.) ARS believes that TKT has utilized the

methods and DNA constructs claimed in the '071 patent to produce a number of cell lines covered by the claims of the '071 patent.

### E.    The Relationship Between CGI and TKT

During the Interference, ARS also became aware that TKT and CGI had entered into an agreement whereby TKT is an exclusive licensee under CGI's pending '390 patent application that is at issue in this action and in ARS's action against CGI in Boston. (Exhibit H.)  That license provides that if CGI is successful in obtaining issuance of the claims in its pending '390 patent application, while at the same time "knocking out" all of the claims of ARS's issued '071 patent, TKT is obligated to pay CGI more than $10 million dollars.

### F.    The Procedural Status of the Actions

In response to a request by CGI, ARS has agreed that the parties' respective answers or other responses to the complaints filed in this Court and in the Boston action are not due until October 4, 2004.[2] However, in an abundance of caution, in light of 37 C.F.R. § 1.304(a)(1)(i),[3] ARS filed its Counterclaim in this action on September 1, 2004. In response to a request by TKT, ARS has agreed that TKT's answer or other response to the amended complaint in the Boston action will also not be due until October 4, 2004.

---

[2] ARS brings this motion now, before it has filed its Answer in this action, in order to save the Court and the parties from expending any time or resources on an action that can be more conveniently tried in Boston. *See, e.g., Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 386-387 (5th Cir. 1983) (section 1404(a) motions should be made before or with answer if possible).

[3] 37 C.F.R. § 1.304(a)(1)(i) states, in relevant part, "Time for appeal or civil action. (a)(1) The time for filing the notice of appeal to the U.S. Court of Appeals for the Federal Circuit (§ 1.302) or for commencing a civil action (§ 1.303) is two months from the date of the decision of the Board of Patent Appeals and Interferences. . . . (i) In interferences, the time for filing a cross-appeal or cross-action expires: (A) Fourteen days after service of the notice of appeal or the summons and complaint; or (B) Two months after the date of decision of the Board of Patent Appeals and Interferences, whichever is later."

## III.   ARGUMENT

### A.   The Legal Standard for Transfer

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of the transfer statute is to prevent avoidable waste of time, energy and money, as well as to protect parties, witnesses and the public against prejudice, inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

To support a motion to transfer, the moving party must demonstrate that the "balance of convenience of the parties and witnesses and the interest of justice are in [its] favor." *Consol. Metal Products v. Am. Petroleum Inst.*, 569 F. Supp. 773, 774 (D. D.C. 1983). Because the transfer statute largely supplants the judicial doctrine of *forum non conveniens* (where the remedy is dismissal) with the remedy of transfer, the district court has broad discretion in transferring an action. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

In determining whether to transfer an action, a court must consider the private and public interests at stake. The private interest considerations include: (1) the plaintiffs' choice of forum; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, particularly unavailable or unwilling witnesses, and (6) the ease of access to sources of proof. *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Resources, Inc.*, 196 F. Supp. 2d 21, 31 (D. D.C. 2002). The public interest considerations include: (1) the transferee court's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Id.* at 32.

9

**B.    CGI Could Have Brought This Action in the District of Massachusetts**

Before analyzing the various transfer factors listed above, the Court must decide under

section 1404(a) whether CGI "could have brought" this action in the District of Massachusetts.

*Van Dusen*, 376 U.S. at 622; *Southern Utah Wilderness Alliance v. Gale Norton*, 315 F. Supp. 2d

82, 86 (D. D.C. 2004); *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Resources, Inc.*, 196 F.

Supp. 2d 21, 32 (D. D.C. 2002). Venue in a patent action is appropriate in any district where the

defendant corporation is subject to personal jurisdiction, and an alien corporation can be sued in

any district. 28 U.S.C. § 1391(c), (d); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d

1574, 1584 (Fed. Cir. 1990).

CGI could have established specific personal jurisdiction over ARS in Massachusetts. In

an action by CGI against an "out-of-state patentee" like ARS, Federal Circuit law governs the

determination of personal jurisdiction. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

The determination involves two inquiries: first, whether the Massachusetts long-arm statute

permits service of process and second, whether the assertion of personal jurisdiction would

violate due process. *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed.

Cir. 1997.)

ARS solicited and entered into a contract with the inventor of the '071 patent at issue

here, Scott C. Chappel, a Massachusetts resident, wherein Dr. Chappel assigned his interest in

the '071 patent to ARS. (Exhibit C.) ARS's activity in securing that contract for assignment, in

and of itself, would have been sufficient to establish specific personal jurisdiction over ARS in

this action under the Massachusetts long-arm statute. *See, e.g., Measurement Computing Corp. v.*

*General Patent Corp. Int'l*, 304 F. Supp. 2d 176, 180 (D. Mass. 2004) (purposeful

communication with Massachusetts resident satisfies the literal requirement of Mass. Gen. Laws

ch. 223A § 3 that it "transact[ed] any business in this commonwealth"); *A.I. Credit Corp. v.*

*Barmack, Inc.*, 1993 Mass. App. Div. 92, 93-94, 1993 Mass. App. Div. LEXIS 34, **7-8 (Mass.

App. Div. 1993) (execution of contract with Massachusetts resident, even in absence of evidence

showing physical execution within Massachusetts, sufficient to satisfy Massachusetts long-arm

statute).

Unlike the standard for claims of general jurisdiction, due process does not require a

plaintiff asserting specific jurisdiction to show that a defendant's contacts with the forum state

are "continuous and systematic." Indeed, the Federal Circuit has acknowledged that specific

jurisdiction may be based on a defendant's "isolated" activity within the forum state. *Silent Drive*

*Inc. v. Strong Indus., Inc.*, 326 F. 3d 1194, 1200 (Fed. Cir. 2003) (citing *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 472-3 (1985)).

As the Massachusetts District court stated in *Measurement Computing Corp.*, 304 F.

Supp. 2d at 180 (citations omitted):

> Because the Massachusetts long-arm statute extends personal jurisdiction to the
> limits of due process once a statutory basis for jurisdiction has been established,
> the remainder of the Court's analysis focuses on the second inquiry:  whether an
> exercise of personal jurisdiction would offend due process. To determine whether
> the assertion of personal jurisdiction would violate due process, the Court first
> considers whether (1) [the defendant] purposefully directed its activities at
> residents of Massachusetts, and (2) the claim arises out of or relates to those
> activities.

Here, there can be no dispute that ARS "purposefully directed" its activity at a

Massachusetts resident, Dr. Chappel, in securing the assignment of the '071 patent that is at issue

here. *C.f., Measurement Computing* at 180-181 (granting a license under the patent at issue to a

Massachusetts resident constitutes "purposefully directing.")

The current claim also "arises out of or relates to" that activity of ARS. Neither the

Supreme Court nor the Federal Circuit has made "general pronouncements on the nexus required

to satisfy the 'arise out of or relate to' prong of the due process inquiry." *Akro*, 45 F.3d at 1547.

11

In *Akro*, the Federal Circuit found that a party's declaratory judgment action was "related to" the patentee's exclusive licensing of one of the accused infringer's competitors within the forum state because that license prompted the party to initiate the dispute. *Id.* at 1548. The instant action likewise "relates to" the assignment of the '071 patent from Dr. Chappel to ARS. If ARS had not secured the assignment of the '071 patent from Dr. Chappel, a Massachusetts resident, it would not own the '071 patent, would not have been the real-party-in-interest to the '071 patent in the Interference, and would not be a party in the instant action. Thus, the present dispute "relates to" ARS's activity in Massachusetts.

The final and fundamental inquiry is whether the assertion of personal jurisdiction over ARS by a Massachusetts court in a suit involving the '071 patent would have been "reasonable and fair." *Measurement Computing*, *supra*, 304 F. Supp. 2d at 180. It would have been. Based on its acquisition of the '071 patent in Massachusetts from a Massachusetts resident, ARS could reasonably have expected to be subjected to the jurisdiction of the courts of Massachusetts in any disputes relating to that patent. Thus, it reasonably could have anticipated being subject to specific jurisdiction in Massachusetts in its dispute with CGI over the '071 patent, where its acquisition of that patent caused (and enabled) it to be a party in the Interference and in this action. And, as discussed further below, being haled into court in Massachusetts in a dispute about the '071 patent is actually more convenient for ARS than being haled into court in any other District, including this District.

Indeed, since 1992, ARS has acquired at least thirty issued U.S. patents, and at least five published U.S. patent applications, from at least twenty-six different Massachusetts residents. (*See* Exhibit I, containing the cover sheets from such patents.) ARS itself has also asserted patent rights against other parties in the District of Massachusetts. *See, e.g., ARES-Serono, Inc., Serono*

12

*Laboratories Inc., Applied Research Systems ARS Holding N.V., and Genzyme Corp. v. Organon Intern. B.V.*, 153 F.R.D. 4 (D. Mass. 1993). Based on its repeated patent-related business transactions with Massachusetts residents over the past decade, ARS could reasonably have anticipated being subjected to specific jurisdiction in the District of Massachusetts in suits involving any of those patents.

In addition (although it is not determinative), ARS effectively subjected itself to the personal jurisdiction of the Massachusetts court when it filed the counterpart to the instant § 146 action against CGI in Boston and then amended that complaint to include a count of infringement against CGI's exclusive licensee, TKT. Moreover (although again it is not determinative), ARS hereby expressly consents to and waives any objection to this action being heard in the District of Massachusetts. *See Reiffin v. Microsoft*, 104 F. Supp. 2d 48, 51 and fn. 6 (D. D.C. 2000) ("In any event, any doubt about Mr. Wegner's amenability to personal jurisdiction in the Northern District of California has been eliminated by his express written consent to be sued in that district. . . . The court emphasizes that Mr. Wegner will be expected to abide by this representation."); *cf. Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 22-23 (1960) (utilizing "common-sense" approach in authorizing transfer of *in rem* action to transferee court where related *in personam* action was pending despite the transferee court's lack of jurisdiction over *in rem* claim).

For these reasons, CGI "could have brought" this action against ARS in the District of Massachusetts and transfer to that court is available here.

C.    **Application of the § 1404(a) Transfer Factors Favors Transfer**

    1.    **CGI's choice of forum should be accorded little or no deference because there is no connection between this District and either the parties or their controversy**

Courts normally give deference to the plaintiff's choice of forum. *Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 17 (D. D.C. 1996); see *also Thayer/Patricof Educ. Funding*, 196 F. Supp. 2d at 31. "That deference, however, is lessened when plaintiff's forum choice 'lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter.'" *Southern Utah Wilderness Alliance v. Gale Norton*, 315 F. Supp. 2d 82, 86 (D. D.C. 2004), quoting *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D. D.C. 1979); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981).

Here, CGI's choice of this District should be given no deference. This District lacks any connection whatsoever to the controversy and has no interest in the parties or subject matter. Neither of the parties resides here or has a place of business here. Were it not for the situation-specific jurisdiction provision of 35 U.S.C. § 146, this District would not have personal jurisdiction over either party. None of the witnesses who testified in the Interference resides here. To ARS's knowledge, no potential witness resides here. The inventor on ARS's issued patent, Dr. Chappel, lives in Massachusetts, and the listed inventor on CGI's pending patent application, Dr. Skoultchi, lives in New York. Unlike in a patent infringement case (such as in ARS's suit against TKT in Boston), no tort was committed here that could establish a connection to this District.

In opposing this motion, CGI may stress that this action involves review of the Decision of the Board in the PTO, a U.S. governmental agency. But neither the PTO nor the Board is located in this District: they are both located in the Eastern District of Virginia. *See Froessl v. Expervision*, 1994 U.S. Dist. Lexis 4791 at *7 (D. D.C. April 14, 1994) ("The USPTO is not in

Washington, D.C., but in Arlington, Virginia . . . .").[4] Moreover, none of the individuals employed by the PTO who was involved in deciding the Interference or reviewed either of the parties' patent applications will likely be made available in this action (*see* 37 C.F.R. § 104.1 *et seq.* and Manual of Patent Examining Procedure, 8th Ed., May 2004 § 1701.01). In any event, "involvement on the part of federal agencies, or some federal officials who are located in Washington, is not determinative." *Southern Utah Wilderness Alliance, supra*, 315 F. Supp. 2d at 87.

CGI brought this action in this District because the lawyer who represented it in the Interference, Mr. Kelber, has his office here. CGI could have sued ARS in Boston. It chose not to only because it would be slightly less convenient for Mr. Kelber to try this case in Boston (although his 975-lawyer firm, Piper Rudnick LLP, has an office there). However, "[t]he location of counsel carries little, if any, weight in an analysis under § 1404(a)." *Reiffin v. Microsoft*, 104 F. Supp. 2d 48, 52 fn. 7 (D. D.C. 2000); *see also Froessl, supra*, 1994 U.S. Dist. Lexis 4791 at *7 ("the inconvenience experienced by plaintiff's counsel in having to travel . . . or to retain local counsel . . . is of minor if any importance under § 1404(a)" and "[t]he fact that counsel in D.C. is in possession of relevant documents is similarly unpersuasive in arguing party inconvenience.") (quoting *Islamic Republic*, 477 F. Supp. at 143).

In opposing this motion, CGI will almost certainly argue that the "first-filed" rule weighs against transfer. It does not. CGI filed the instant action only one day before ARS filed the Boston action, which weighs against application of this rule. *See Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1153 (S.D.N.Y. 1995) ("the [first-filed] rule is usually disregarded where the competing suits were filed merely days apart").

---

[4] Since the decision in *Froessel*, the PTO has moved to Alexandria, Virginia. The Board will move to Alexandria on October 4, 2004.

Moreover, "the first-filed rule is not rigidly or mechanically applied." *Thayer/Patricof Educ. Funding, L.L.C.*, 196 F. Supp. 2d at 29, citing *Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975), and *Lewis v. National Football League*, 813 F. Supp. 1, 4 (D. D.C. 1992). As this Court pointed out in *Thayer*, in *Columbia Plaza* the Court of Appeals specifically warned against a mechanical application of the rule:

> The opinions recognizing the rule have frequently contained a caveat that it should be ignored under some circumstances, and in a good many cases proceedings in an earlier-filed action have been stayed to enable the court later acquiring jurisdiction to proceed to judgment first. We do not regard an injunction favoring the first-filed action as a mandatory step in all instances because countervailing equitable considerations, where present, cannot be ignored. 525 F.2d at 627. Likewise, in *Lewis* the court stressed that the first-filed rule should not be applied rotely, particularly if a suit is filed as a preemptive strike to establish a preferred jurisdiction. *Lewis*, 813 F. Supp. at 4.

*Thayer*, 196 F. Supp. 2d at 30.

Here, the fact that there is no connection between this District and either the parties or their controversy and the fact that the instant action was filed only one day before the Boston action weigh strongly against application of the "first-filed" rule. Moreover, both cases are at a very early stage (answers have not yet been filed in either case), which means there is no procedural reason for favoring the first-filed action.

For all of these reasons, and because there is no connection between this District and these parties or this action, and there is some connection between the District of Massachusetts and this action, this factor slightly favors transfer.

### 2.    ARS's choice of forum favors transfer

Another factor to be considered in deciding whether to transfer is the defendant's choice of forum and its basis for seeking transfer to that forum. *Southern Utah Wilderness Alliance, supra*, 315 F. Supp. 2d at 85 ("defendant's forum choice"). Here, ARS has a good basis for seeking transfer to Massachusetts. This action involves the same '071 patent that is at issue in

16

ARS's action in Boston against TKT. As discussed below, it is almost inevitable that TKT will raise many of the same invalidity arguments against the '071 patent in the Boston action that CGI raised in the Interference and has already raised in this action. In light of this, ARS filed its § 146 action against CGI in Boston because, as discussed below, judicial economy, party convenience, and witness convenience would be best served by filing the § 146 action in the same court where ARS would have to sue TKT on the same patent. At the time it filed the § 146 action against CGI, ARS knew it would have to sue TKT in Boston because that is the only District in which ARS could be sure TKT would be subject to personal jurisdiction (for example, ARS is currently unaware of any basis upon which this Court could assert personal jurisdiction over TKT).

Consequently, this factor weighs in favor of transfer.

### 3.    Judicial economy favors transfer

As courts in this District have clearly stated, "The interests of justice are better served when a case is transferred to the district where related actions are pending." *Martin-Trigona v. Meister*, 668 F. Supp. 1, 3 (D. D.C. 1987); *see also Reiffin*, 104 F. Supp. 2d at 56; *Trout Unlimited*, 944 F. Supp. at 19; *Professional Ass'n Travel Service v. Arrow Air, Inc.*, 597 F. Supp. 475, 477 (D. D.C. 1984 (transferring to New York, where pending action raised "quite similar claims"); *Iran v. Boeing Co.*, 477 F. Supp. 142 (D. D.C. 1979); and *Celanese Corp. v. Federal Energy Admin.*, 410 F. Supp. 571 (D. D.C. 1985).

This principle is particularly well-applied to patent cases. As Judge Pratt stated, "Piecemeal litigation in the complex and technical area of patent and trademark law is especially undesirable. Rather, all of the parties' related patent and trademark infringement claims should be decided in the same court." *Reiffin*, 104 F. Supp. 2d at 56, citing *Smiths Indus. Med. Sys., Inc. v. Ballard Med. Prods., Inc.*, 728 F. Supp. 6, 6 (D. D.C. 1989). *See also Froessl v. Expervision*,

17

1994 U.S. Dist. Lexis 4791 at *11-12 (D. D.C. April 14, 1994) (Richey, J.) ("Transferring this action is an efficient and economic use of judicial resources. First and foremost, this would permit consolidation of this [patent infringement] case with the Northern California action [seeking a declaration of invalidity, unenforceability, and/or non-infringement of the same patent], or at the very least allow coordinated case management of the two."); *cf. Adv. Semiconductor Materials v. Applied Materials, Inc.* 1993 U.S. Dist. Lexis 20045, 30 U.S.P.Q. 2d 1553 (D. Ariz. 1993) (transferring patent-infringement action to California, which was home to two other patent cases involving same parties, even though those cases concerned different patents and plaintiff was resident of chosen forum); *Sweetheart Plastics v. Illinois Tool Works*, 267 F. Supp. 938 (S.D.N.Y. 1967) (fact that judge in transferee court was already familiar with complex details of patent case was a factor favoring transfer).

ARS has an action pending in Boston in which it seeks (i) reversal of the Board's determination that some of the claims in the '071 patent are unpatentable and (ii) a finding that CGI's exclusive licensee TKT infringes the claims of the '071 patent that survived the Interference. In the instant action, CGI seeks reversal of the Board's finding that those surviving claims are patentable, arguing that the Board erred in failing to apply or misapplying certain prior-art references to ARS's claims. (*See* CGI's Complaint at ¶¶ 12-15 and 21-22.) These are certainly related cases involving the same patent and identical and/or closely related parties. *See Biochem Pharma, Inc. v. Emory Univ.*, 148 F. Supp. 2d 11, 13 (D. D.C. 2001) (actions brought under 35 U.S.C. § 146 and infringement action asserting same patent are related cases).

Undoubtedly, CGI will raise the same prior-art and non-enablement arguments against ARS's patent claims in its counterclaim in the Boston action that it has raised in its complaint here. And it is beyond reasonable dispute that TKT, CGI's exclusive licensee under the

application at issue here, will assert very similar if not identical arguments, based on much the same evidence, as defenses to those same ARS claims asserted against it in the Boston action.

It is certainly true that CGI or TKT may present some evidence and arguments in one action that may not be presented in the other action, and those parties may present some arguments differently. But it simply does not make sense to force this Court to educate itself on the complex homologous recombination-mediated gene activation technologies underlying the claimed inventions in this case, and to deal with the many arcane and sundry aspects of patent law applicable to the issues inevitably raised herein, when Judge Wolf will already be dealing with those same technologies, patent-law principles, and issues based on what is very likely to be the same underlying evidence in the Boston action. *See Williams v. Purdue Pharma Co.*, 2004 U.S. Dist. Lexis 10395 (D. D.C. June 3, 2004) at *2 ("Requiring a second federal judge to attempt to master the scientific and technical requirements of the Oxycontin patent prosecution would be a poor use of scarce judicial resources.").

The reasons above "strongly favor transfer of venue, because 'the interest-of-justice factor encompasses the desire to avoid multiple litigation from a single transaction [and] *to try related litigation together* . . . .'" *Reiffin*, 104 F. Supp. 2d at 54 (emphasis in original); *see also Hawksbill Sea Turtle v. FEMA*, 939 F. Supp. 1, 3 (D. D.C. 1996). "A court considering transfer of venue 'may consider the interest of conserving judicial resources and practical considerations which will facilitate a final resolution of the litigation in an expeditious and inexpensive manner.'" *Reiffin*, 104 F. Supp. 2d at 54, quoting *Harris v. Republic Airlines*, 699 F. Supp. 961, 962 (D. D.C. 1988).

Consequently, the public interest in promoting judicial economy strongly favors transfer of this action to Massachusetts.

4.    **Convenience of the parties and witnesses favors transfer**

As discussed above, transfer of this action to Massachusetts, where Judge Wolf will already be dealing with much of the same evidence and many of the issues that will be presented in this action, will promote judicial economy by avoiding duplication of effort by the courts. For that same reason, transfer of this case to Judge Wolf's court will be more convenient for the parties, who will avoid having to present the same evidence and arguments before two different courts, and for the witnesses, who will avoid the possibility of having to appear in two different courts to present their evidence. *See Reiffin*, 104 F. Supp. 2d at 58 fn. 21 ("The fact that proceedings in this court would be largely duplicative of the California action means that transfer would increase the net convenience to the parties and to witnesses – who could otherwise be called upon to appear in this district and testify again on issues already addressed in California."); *see also Cambridge Filter Corp. v. Int'l Filter Co.*, 548 F. Supp. 1308, 1310 (D. Hawaii 1996) ("Litigation of related claims in the same tribunal is favored in order to avoid duplicative litigation, attendant unnecessary expense, loss of time to courts, witnesses and litigants, and inconsistent results").

Consequently, this factor weighs strongly in favor of transfer. *See Baird v. Calif. Faculty Ass'n*, 2000 U.S. Dist. Lexis 6145 (N.D. Cal. 2000) ("Related litigation pending in the proposed transferee forum is a factor that weighs heavily in favor of transfer."); *Upjohn Co. v. General Accident Ins. Co.*, 581 F. Supp. 432, 435 (D. D.C. 1984) ("To permit a situation in which two cases involving . . . the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."); *Princeton Electronics Prods., Inc. v. Bell Tele. Labs., Inc.*, 1979 U.S. Dist. Lexis 10042 (S.D.N.Y. 1979) at *4-5 ("Indeed it would be an extravagantly wasteful and useless duplication

of the time and effort of the federal courts [to permit] the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues.").

### 5. The familiarity of the Massachusetts court with the relevant law favors transfer

The familiarity of the transferee court with the relevant law is a public-interest factor to consider in deciding whether to transfer. *Southern Utah Wilderness Alliance, supra*, 315 F.2d at 85 ("transferee's competence"); *Reiffin, supra*, 104 F. Supp. 2d at 52; *Shapiro, Lifschitz & Schram v. Hazard*, 24 F. Supp. 2d 66, 71 (D. D.C. 1998); *Trout Unlimited, supra*, 944 F. Supp. at 16.

This action, as well as the Boston action, will involve many complex patent law and technology issues. The judge presiding over ARS's pending § 146 action against CGI and infringement action against TKT in Boston, Judge Mark L. Wolf, is very familiar with patent cases, particularly those involving biotechnology. *See, e.g., In re Columbia Univ. Patent Litigation*, 2004 U.S. Dist. Lexis 16409 (D. Mass. 2004); 2004 U.S. Dist. Lexis 16410 (D. Mass. 2004); *Biogen Idec MA, Inc. v. Trs. Of Columbia Univ.* 2004 U.S. Dist. Lexis 16315 (D. Mass. 2004); and *Biogen, Inc. v. Berlex Labs., Inc.*, 113 F. Supp. 2d 77 (D. Mass. 2000), *aff'd in part, vacated in part and remanded*, 318 F.3d 1132 (Fed. Cir. 2003); *Biogen, Inc. v. Schering AG, et al.*, 954 F. Supp. 391 (D. Mass. 1996) (complex multi-party patent cases involving recombinant interferon inventions and many complex patent validity and infringement issues).

Consequently, this factor weighs in favor of transfer.

### 6. The relative congestion of the calendars of the potential transferee and transferor courts slightly favors transfer

In deciding whether to transfer, it is also appropriate for the court to consider the relative docket congestion and potential speed of resolution by the transferor and transferee courts. *Southern Utah Wilderness Alliance, supra*, 315 F.2d at 85 ("congestion of both courts"); *Reiffin,*

21

*supra*, 104 F. Supp. 2d at 57; *SEC v. Savoy Indus.*, 587 F. 2d 1149, 1156 (D.C. Cir. 1978), *cert.*

*den.*, 99 S. Ct. 1227 (1979); *Trout Unlimited, supra*, 944 F. Supp. at 19.

Exhibit J, taken from the Statistical Tables for the Federal Judiciary (available at

http://www.uscourts.gov/judiciary2003/deccontents.html), shows that the median time from

filing to disposition for civil actions in the District of Massachusetts in 2003 was slightly faster

(10.0 months) than in this District (10.1 months). As noted above, both the instant action and the

Boston action are in the earliest possible stages (answers not having been filed in either action).

Consequently, this factor slightly favors transfer (or at the very least does not weigh

against transfer).

### 7.    Massachusetts's interest in the subject matter favors transfer

Massachusetts has more of a local interest in the underlying subject matter of this

controversy than does this District. TKT, a company located in Cambridge, Massachusetts, has

practiced and now practices the technology to which the '071 patent and CGI's pending patent

application are directed, and it has taken a license under CGI's pending application. ARS has

accused TKT of infringing the claims of the '071 patent that will be at issue in this action. The

people of Massachusetts have an interest in determining whether those claims are patentable, as

the Board found in the Decision, and whether they are applicable against TKT's activities. The

people in this District have no such particularized interest. Such "local interest" in the subject

matter of the instant controversy in Massachusetts favors transfer there. *Southern Utah*

*Wilderness Alliance, supra*, 315 F. Supp. 2d at 86 ("local interest in deciding local controversies

at home").

Consequently, this factor weighs in favor of transfer.

22

### 8.    Ease of access to proof does not weigh for or against transfer

The location of documents or other evidence is a factor to consider in deciding whether to

transfer. *Southern Utah Wilderness Alliance, supra*, 315 F.2d at 85 ("ease of access to the

proof"). In this case, all of the evidence needed to try this case is equally accessible in Boston or

the District of Columbia. This § 146 action, as noted above, seeks review of the Decision

rendered by the Board in the Interference, and will be decided primarily based on that fixed

record. Both parties have copies of that record (indeed, they were submitted to the Board on CD-

ROM), and if a certified copy of that record is necessary, it can be shipped to Boston just as

easily as to this Court. As this court has stated, "the location of documents, given modern

technology, is less important in determining the convenience of the parties." *Thayer, supra*, 196

F. Supp. 2d at 36, citing *Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F. Supp. 525, 527 (D.

D.C. 1987) ("No matter where the litigation proceeds, these materials will have to be

photocopied and shipped to Eastern's lawyers who live and work in the District area and to

ALPA's lawyers who likewise live and work in D.C."); *Coker v. Bank of America*, 984 F. Supp.

757, 766 (S.D.N.Y. 1997) ("The location of documents factor is neutral" because "in today's era

of photocopying, fax machines and Federal Express, [the] documents could easily be sent to New

York"); *Continental Airlines v. American Airlines*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992)

("documents can be produced and examined anywhere for discovery purposes"); *see also*

*Southern Utah Wilderness Alliance, supra*, 315 F.2d at 88 ("Although the record is in BLM's

Utah state offices, its location should be afforded little weight.").

Section 146 does permit the parties to take additional testimony and submit additional

documentary evidence on issues raised in the interference being appealed. However, as noted

above, none of the potential additional witnesses resides in this District, and ARS is not aware of

and does not foresee any documents that would be relevant to the issues raised in the Interference

that would be located in this District. Of course, as discussed above in regard to the record of the Interference itself, any such documents can be produced just as easily in Boston as in this District.

Consequently, the ease of access to proof does not weigh for or against transfer.

## IV.    CONCLUSION

Consideration of the relevant factors establishes that this action could have been brought in Massachusetts, that trying this case in Massachusetts in conjunction with ARS's pending case against CGI and TKT would strongly promote judicial economy, that trial in Massachusetts would be more convenient for the parties and witnesses, and that the other § 1404(a) factors do not weigh against transfer to Massachusetts. For these reasons, ARS respectfully submits that this Court should transfer this action to the United States District Court for the District of Massachusetts, where it can be dismissed or consolidated with the *Applied Research Systems ARS Holding, N.V. v. Cell Genesys, Inc. and Transkaryotic Therapies, Inc.* action currently pending there.

Respectfully submitted,

Dated: September 17, 2004

OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
Charles L. Gholz
D.C. Bar No. 58396
1940 Duke Street
Alexandria, Virginia 22314
Tel: (703) 412-6485
Fax: (703) 413-2220


MARSHALL, GERSTEIN & BORUN LLP
Michael F. Borun
Kevin M. Flowers, Ph.D.
6300 Sears Tower
233 S. Wacker Drive
Chicago, Illinois 60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448

25

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of **DEFENDANT'S § 1404(A) MOTION**

**TO TRANSFER** and **PROPOSED ORDER** have been served on September *17*, 2004, via

next business day delivery mail service, upon:

Steven B. Kelber, Esq.
PIPER RUDNICK, LLP
1200 19th Street, N.W.
Washington, D.C. 20036
Telephone: (202) 861-3900
Fax: (202) 223-2085

COUNSEL FOR PLAINTIFF
CELL GENESYS, INC.


*Frank J. West*
On behalf of Defendant
Applied Research Systems ARS Holding N.V.

27