## CERTIFICATE OF CONFERENCE

I hereby certify that (1) the undersigned counsel for defendant Applied Research Systems ARS Holding N.V. ("ARS") attempted to reach opposing counsel in a good faith attempt to resolve this matter without court intervention, but was unable to do so, (2) that ARS's counsel left a voice message for opposing counsel and (2) that it is ARS's counsel's expectation that this motion is opposed.

Dated: September 17, 2004

_Erich Q. West_
On behalf of Defendant
Applied Research Systems ARS Holding N.V.

771407v1

# EXHIBIT D



OBLON SPIVAK McCLELLAND MAIER & NEUSTADT P.C.

HOME       NEWS       ARTICLES & PUBS       NEWSLETTER

*Oblon Spivak*

# The Decisions of the Board in An Interference Are Entitled to Issue-Preclusive Effect in a Parallel Patent Infringement Action But Not Vice Versa



by Charles L. Gholz *

Since the 1984 amendment to 35 USC 135, many if not most interferences have involved issues of patentability and validity. Furthermore, roughly 75 percent of all interferences involve at least one patent,[1] and the applicant interferent or interferents involved in such interferences are frequently making, selling, offering to sell, selling, or importing into the United States subject matter that at least arguably infringes at least one claim of a patent involved in the interference. It follows that, in a substantial percentage of patent-application interferences, there is a parallel patent infringement action in which the assignee of the patentee interferent charges the assignee of the applicant interferent with patent infringement. In many of those patent infringement actions, the assignee of the applicant interferent defends, at least in part, by contending that the asserted claim or claims in the patent is or are invalid on grounds that are identical to those that the applicant interferent raises in the interference by way of 37 CFR 1.633(a) motions. The question accordingly arises as to whether the court's decision in the patent infringement action is binding on the board, whether the board's decision on those issues in the interference is binding on the court, whether neither is binding on the other, or whether which decision is binding on the other forum is dependent on the rather fortuitous happenstance of which decision is rendered first.

It is quite clear that the board's decision on patent validity issues does have issue-preclusive effect in a parallel infringement litigation. See *Coakwell v. United States*, 292 F.2d 918, 920-21, 130 USPQ 231, 234 (Ct. Cl. 1961) ("Where the losing party fails to effectively review the Patent Office action in one of the courts [i.e., by appeal under 35 USC 141 or by a civil action under 35 USC 146] and it becomes final, it is....binding on the parties.").[2] However, does a court's decision in a patent infringement action have issue-preclusive effect in a parallel patent interference?

The answer is no. In *Rosenthal v. Mowrey-McKee*, 50 USPQ 2nd 1863 (PTOBPAI 1999) (non- precedential),[3] Administrative Patent Judge Schafer vacated a previously entered stay of an application-patent interference despite the facts (1) that the applicant's assignee was raising the same invalidity arguments in a parallel infringement action and (2) that the patentee's assignee argued that the interference should remain stayed because the court's holdings on the validity issues would be binding on the board. However, Judge Schafer ruled that the court's resolution of those issue would not be binding on the board. That holding followed from § 28 of the *Restatement (Second) of Judgments*, which reads in relevant part as follows:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> ***
>
> (4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action....[4]

Of course, the burden of persuasion on a party challenging the validity of a claim in an infringement action (clear and convincing evidence[5]) is ordinarily significantly heavier than the burden of persuasion on a party challenging the validity of a claim in an interference (preponderance of the evidence[6]).[7] It follows that the decision of a district court in a patent infringement action that a claim is not invalid (on either priority or conventional patentability grounds) is not entitled to issue-preclusion effect in a parallel interference. On the other hand, the decision of a district court in a patent infringement action that a claim is invalid (on either priority or conventional patentability grounds) is entitled to issue-preclusion effect in the parallel interference under *Blonder-Tongue Laboratories*, Inc. v. *University of Illinois Foundation*, 402 U.S. 313, 169 USPQ 513 (1971).

While at first blush it might be thought that there is a public policy interest in having validity issues determined "at the highest level" (i.e., by an Article III judge or a jury), that consideration is over-balanced by the specialized expertise of the board. As the Commissioner said in *Lin v. Fritsch*, 14 USPQ2d 1795 (Comm'r 1989), "Congress has determined [35 USC • 135(a)] that the Commissioner in the first instance should resolve interferences...."[8] The reason that Congress has so decided, obviously, is that the Commissioner and his delegees (i.e., the members of the Board of Patent Appeals and Interferences) have special expertise in these matters[9] and have developed specialized rules for conducting interferences. Thus, it is much more efficient for the validity and enforceability issues[10] to be decided in the first instance by an administrative patent judge and, ultimately, by a panel of the board then it is for them to be decided in the first instance by a district court judge or by a jury.

Judge Schaefer's holding in *Rosenthal* obviously raises the ancillary question of whether it makes sense for a parallel district court infringement action to go forward at all while the board is deciding patentability and priority issues which are also at issue in the parallel district court infringement action. Since that is an issue still being litigated in the district court action that parallels *Rosenthal v. Mowrey-McKee*, I won't comment on it here — except to say that I doubt that the Article III judge handling that action will want to serve as a "tryout" venue for patent validity issues that, ultimately, may be decided differently by Article I judges.

Published in *Intellectual Property Today*, Vol. 6, No. 8, August 1999, page 8.

[*] Mr. Gholz is a partner in and head of the interference section of Oblon, Spivak, McClelland, Maier & Neustadt, P.C. of Arlington, VA and a past chair of the interference committee of the American Intellectual Property Law Association. His E-mail address is GHOLZ@OBLON.COM.

---

ENDNOTES

---

1. According to Calvert and Sofocleous Interference Statistics for Fiscal Years 1992 to 1994, 77 JPTOS 417 (1995), which contains the latest publicly available statistics on such things,

511 of the 673 two party interferences terminated during that triennium involved at least one patent.

2. See generally Gholz, Collateral Estoppel Effect of Decisions by the Board of Patent Interferences, 65 JPOS 67 (1983), which reviews what was then a split in authority among the circuits. However, Coakwell is binding on the Federal Circuit under South Corp. v. United States, 690 F.2d 1368, 215 USPQ 657 (Fed. Cir. 1982) (in banc), so the former split in authority among the circuits is presumably now of purely historical interest.

3. In the interest of complete candor, I note that I represented the party Rosenthal et al.

4. See also Childers Foods, Inc. v. Rockingham Poultry Marketing Co-op, Inc., 203 F.Supp. 794, 796-97, 133 USPQ 648, 650 (W.D.Va. 1962) ("It is conceded by counsel that, if this action proceed[s] to its conclusion, before a final decision in the Interference Proceeding, the finding of this court on the question of who was the first inventor, will have little, if any, influence upon the conclusion to be reached in the Interference Proceeding."); and Sinko Tool & Mfg. Co. v. Automatic Devices Corp., 136 F.2d 186, 188-90, 57 USPQ 356, 358-60 (2d Cir. 1943) (L. Hand, J.) ("It has... apparently for many years been the practice of the Patent Office to refuse to recognize... findings [of courts in infringement litigation] as conclusive upon the issue of priority between inventors in interference proceedings."). Of course, if the board enters judgment against a patentee as to any count, that results in the cancellation of the claims in the patent that are designated as corresponding to that count — which is the ultimate in issue-preclusion effect!

5. See generally Harmon, Patents and the Federal Circuit (3d. ed. 1994) • 1.5, "Presumption of Validity."

6. Bruning v. Hirose, 161 F.3d 681, 48 USPQ2d 1934 (Fed. Cir. 1988). See also Kubota v. Shibuya, 999 F.2d 517, 27 USPQ2d 1418 (Fed. Cir. 1993); Schrag v. Strosser, 21 USPQ2d 1025, 1027 (PTOBPAI 1991); and Behr v. Talbott, 27 USPQ2d 1401, 1406-07 (PTOBAI 1992) (expanded panel).

7. One caveat should be mentioned. The burden of persuasion on a party challenging the enforceability of a claim in an interference on the ground of inequitable conduct is clear and convincing evidence. Hence, a district court's decision on that issue may be binding on the board in a parallel interference.

8. 14 USPQ2d at 1801; interpolation in the original.

9. See generally R.M.&G. Products Inc. v. R.E.F. Golf Co., 32 USPQ2d 1220, 1223 (N.D. Ohio 1994) (referring to "the expert view of the Patent and Trademark Office"); Childers Foods, Inc.v. Rockingham Poultry Marketing. Co-Op., Inc., 203 F.Supp. 794, 797, 133 USPQ 648, 650 (W.D. Va. 1962) ("The determination of priority of invention, would seem to be a matter peculiarly within the expertise of the Patent Office."); and McBride v. Kemp, 1904 C.D. 89, 90 (Comm'r 1904) (excellent general discussion). Moreover, the case is even stronger now than it was at the time that Childers and McBride were decided, since Congress gave the board authority in 1984 to determine all issues of priority and patentability in an interference proceeding.

10. The careful reader will note that I am in doubt as to the proposition advanced in footnote 7, supra.

[top]

| Back Home | News | Articles & Pubs | Newsletter | Patent Pubs | Patent Pubs Archive | Trademark/Copyright Pubs | Trademark/Copyright Pubs Archive | General IP Pubs | General IP Pubs Archive | Conference Presentations | Conference Presentations Archive | News & Articles |

© 2000-2004 Oblon, Spivak, McClelland, Maier & Neustadt, P.C.

Legal Disclaimer

Site designed and developed by Jaffe Associates

# EXHIBIT E




HOME        NEWS        ARTICLES & PUBS        NEWSLETTER

*Oblon Spivak*

# MULTI-PATENT INTERFERENCE

THE BOARD OF PATENT APPEALS AND INTERFERENCES DECLARES A SINGLE INTERFERENCE BETWEEN ONE APPLICATION AND ELEVEN PATENTS OWNED BY THE SAME COMPANY



by Charles L. Gholz [1]

**Factual Background**

Company X (my client) and company Y (its major competitor) have been involved in patent litigation and incipient patent litigation for some time. (Regrettably, company X has refused to authorize me to disclose the identity of either party to this story.) Company Y is the owner by assignment of twelve patents obtained by company Z. Those twelve patents all stem from four applications filed on the same day, and company Z continues to own five patents that stem from the same four original applications — plus, presumably, a plurality of pending applications that stem from those same four applications.

In anticipation that company Y and/or company Z would some day sue company X on one or more of those seventeen patents, we requested an interference between an application owned by company X and sixteen of the seventeen patents owned by companies Y and Z. In addition, we suggested that, instead of declaring separate interferences, the Board of Patent Appeals and Interferences should declare a single interference between the application owned by company X and all sixteen of those patents. (In our estimation, company Z patented the same basic invention sixteen times using slightly different language each time. Counsel for company Y and company Z disagree.)

While the requests for interferences were pending, company Y sued company X for infringement of eight of the twelve patents that company Z had assigned to it. Shortly thereafter, APJ Jameson Lee declared an interference between the application owned by company X and eleven of the patents stemming from the original four applications — six owned by company Y and five owned by company Z.

We then moved for a stay of the patent infringement litigation until after conclusion of the interference. Counsel for company Y agreed to a stipulated stay of the infringement action for a term of months, and we anticipate that that stipulated stay will be extended periodically. Apparently counsel for company Y is also content to litigate the validity and enforceability issues in the PTO rather than in the court.

In addition, we are filing 37 CFR 1.642 requests to bring five of the remaining six patents stemming from the original four applications into the interference.

**Why This is Important**

The reason that all of this is important to you, gentle reader, is that it offers the possibility of saving big bucks in patent litigation. The board will decide any question of validity and enforceability that could be decided in the patent infringement litigation, and, if it decides one of those issues in favor of company X, its decision will result in cancellation of the relevant claims from the patents owned by company Y and company Z pursuant to 35 USC 135(a). That will, of course, moot the patent infringement litigation pro tanto. On the other hand, if the board decides any of those issues against company X, that decision will have an issue preclusion effect against company X in the district court litigation.[2]

Of course, the fact that decisions are made by one decisional authority rather than another does not ipso facto mean that that the decisions will be better, more expeditious, or less costly to the litigants. However, in this case I think that that will be the result.

First, the fact that the decisions will be made by the board rather than by the court means that the decisions will be made by APJs (all of whom have technical training and most of whom have years of experience as patent examiners) in a jury-free environment. In my opinion, that means that the board's decision is more likely to accurately apply the law.

Second, as a rule of thumb, the cost of a patent interference is approximately one tenth the cost of a patent infringement action.

Third, even though the interference was declared before October 05, 1998, Judge Lee has entered an order bringing the interference under the new procedures which are to govern all interferences declared on or after that date. Hence, there is a realistic possibility that this interference will be decided by the board before the infringement action would have been decided by the district court.

Finally, and perhaps most importantly, the contrary possibility needs to be considered. If the court were to go ahead and decide the validity questions (including priority!) before the board did, its decision would not bind the board, because of the lower standard of proof imposed on the patent challenger in the interference.[3] That is, because the burden of proof imposed on a patent challenger in a district court is clear and convincing evidence,[4] whereas the burden of proof imposed on a patent challenger in an interference is only the preponderance of the evidence,[5] a decision by the district court that company X had not carried its burden in the district court would not be binding on the board. Hence, it makes sense to litigate the validity issues before the board. That way the district court will not have to determine the validity issues at all, and it will have to determine damages if and only if company X loses on the validity issues before the board.

To the best of my knowledge, the PTO has never declared a multi-patent interference like this one before. However, what it has done once, it could do again. If this becomes a regular practice, it could be very good news indeed for all patent-sensitive industries.

Published in *Intellectual Property Today*, Vol. 5, December 1998, page 6.

---

Endnotes

---

1. Mr. Gholz is a partner in and head of the interference section of Oblon, Spivak, McClelland, Maier & Neustadt, P.C. of Arlington, VA. His E-mail address is cgholz@oblon.com.

2. *Coakwell v. United States*, 292 F.2d 918, 130 USPQ 231 (Cl. Ct. 1961), made applicable to the Federal Circuit by *South Corp. v. United States*, 690 F.2d 1368, 215 USPQ 657 (Fed. Cir. 1982) (in banc). See generally Gholz, *Collateral Estoppel Effect of Decisions by the Board of Patent Interferences*, 65 JPOS 67 (1983).

3. *Restatement (Second) of Judgments* §28(4); and *Ethicon v. Quigg*, 849 F.2d 1422, 1429, 7 USPQ2d 1152, 1157 (Fed. Cir. 1988) (recognizing that the PTO and the courts can reach different results on validity questions because "the two forums have different standards of proof for determining invalidity" and stating that "The doctrine of collateral estoppel does not prevent the PTO from completing the reexamination in this situation [i.e., despite ongoing district court litigation involving the same validity issues].").

4. Harmon, *Patents and the Federal Circuit* (3d ed. 1994) § 1.5.

5. *Bruning v. Hirose*, ___ F.3d ___, ___ USPQ2d ___ (Fed. Cir. September 29, 1998) (non-precedential); and *Schrag v. Strosser*, 21 USPQ2d 1025, 1027 (PTOPBAI 1991).

[top]

| Back Home | News | Articles & Pubs | Newsletter | Patent Pubs | Patent Pubs Archive | Trademark/Copyright Pubs | Trademark/Copyright Pubs Archive | General IP Pubs | General IP Pubs Archive | Conference Presentations | Conference Presentations Archive | News & Articles |

© 2000-2004 Oblon, Spivak, McClelland, Maier & Neustadt, P.C.

Legal Disclaimer

Site designed and developed by Jaffe Associates