FILED
IN CLERKS OFFICE
2004 OCT 14 P 3:29
U.S. DISTRICT COURT
DISTRICT OF MASS.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.,

Plaintiff,

v.

CELL GENESYS, INC. AND TRANSKARYOTIC THERAPIES, INC.,

Defendants.

C.A. NO. 04 11810 MLW

ORAL ARGUMENT REQUESTED

**MEMORANDUM IN SUPPORT OF PLAINTIFF ARS'S MOTION FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY, AND FOR AN EXTENSION OF TIME TO RESPOND TO DEFENDANTS' MOTIONS TO DISMISS**

## I. INTRODUCTION

In Count I of its Amended Complaint herein, Plaintiff ARS asks this Court to review certain aspects of a decision by the U.S. Patent and Trademark Office ("PTO") in an "interference"[1] between ARS and Defendant Cell Genesys, Inc. ("CGI") involving an issued patent owned by ARS and a pending patent application owned by CGI. In Count II, ARS asks this Court to find that the exclusive licensee under CGI's pending patent application, Transkaryotic Therapies, Inc. ("TKT"), infringes ARS's issued patent.

CGI and TKT have moved separately to dismiss or sever the actions against each of them (CGI arguing lack of personal jurisdiction and TKT arguing misjoinder). ARS will oppose each of those motions. However, ARS first seeks leave to take limited preliminary discovery concerning CGI's contacts with Massachusetts and the relationship between CGI and TKT regarding the subject matter of this action, and requests an extension of time to file its oppositions to the Defendants' motions (currently due on October 18) until seven (7) days after the requested discovery has been completed. Both Defendants have agreed that if the Court denies the instant motion, ARS will have until seven (7) days after the entry of such denial to file its opposition(s) to Defendants' motions to dismiss.

## II. FACTUAL BACKGROUND

ARS owns U.S. Patent No. 5,272,071 ("the '071 patent"), which issued in 1993. The '071 patent discloses and claims certain methods, DNA constructs, and cell lines that for the first time

---

[1] As this Court may be aware, pursuant to 35 U.S.C. § 135 the PTO may declare and conduct an "interference" to determine which of two or more inventive entities was the first to invent patentable subject matter claimed in a pending patent application and another pending application or issued patent.

allowed scientists to produce recombinant proteins in cells without first having to insert the genes that encode those proteins into those cells.

CGI owns pending U.S. Patent Application No. 08/102,390 ("the '390 application") containing claims directed to the same methods.

**A. The Interference**

On March 22, 1996, at CGI's request, the PTO declared an "interference" under 35 U.S.C. § 135 between ARS's '071 patent and CGI's pending '390 patent application to determine whether the parties' respective claims were patentable, and if so, which party was the first to have invented the subject matter of those claims. On February 7, 2003, the interference was "redeclared" by the PTO, *i.e.*, started anew, so as to be subject to new PTO procedures governing interferences. On March 28, 2003, at the request of both parties, the interference was again "redeclared."

In the first phase of the redeclared interference, each party filed a number of "preliminary motions" seeking to show, *inter alia*, that the other party's claims were unpatentable. In its June 22, 2004 decision on those motions, the PTO determined that twenty-four of the fifty-eight claims in ARS's issued patent and one of the eight claims in CGI's pending patent application were patentable. The PTO then terminated the interference without reaching the question of who was the first to have invented the subject matter of the interference.

**B. The D.C. Action and this Action**

On August 18, 2004, CGI filed a complaint against ARS under 35 U.S.C. § 146 in the U.S. District Court for the District of Columbia ("the D.C. action"). In the D.C. action, CGI asks the court to reverse the PTO's decisions that (i) all but one of the claims in CGI's '390 application are not patentable and that (ii) twenty-four of the claims in ARS's '071 patent are

patentable. CGI served its complaint by hand delivery on ARS's local counsel in the District of Columbia the following day, August 19.

By the time ARS learned of the filing of CGI's complaint on August 19, its local counsel here in Boston was already in the process of filing the original complaint in this action, asking this Court to reverse the PTO's decision that some of ARS's issued patent claims are not patentable.

On August 30, 2004, ARS amended its complaint in this Court to include an additional count against TKT, a biotechnology company located in Cambridge, Massachusetts. TKT is the exclusive licensee under CGI's '390 application. ARS brought Count II against TKT for infringement of the '071 patent because ARS believes that TKT has utilized the methods, DNA constructs, and cell lines claimed in the '071 patent.

ARS filed its actions against CGI and TKT in this Court because the issues regarding the '071 patent that will be raised by CGI will be very similar, and in some cases effectively identical, to the issues regarding the '071 patent that will be raised by TKT. Thus, litigation of all issues related to the validity and infringement of ARS's '071 patent in this Court will conserve judicial resources (because two courts will not have to address the same issues in parallel, concurrent proceedings) and will be most convenient for all parties and witnesses (because the parties and witnesses will only have to appear in one proceeding rather than in two parallel proceedings). Moreover, ARS is not aware that TKT would be subject to personal jurisdiction in the District of Columbia (*i.e.*, it is unlikely that TKT could be joined in the D.C. action), and TKT has not indicated otherwise in its motion to dismiss.

### C. CGI's and TKT's Motions to Dismiss

CGI moves to dismiss Count I for lack of personal jurisdiction (and in the alternative for severance and transfer to the District of Columbia). TKT moves to dismiss Count II for misjoinder (and in the alternative for severance). Both of these motions raise questions of fact regarding the nature and extent of CGI's contacts with Massachusetts (*i.e.*, whether those contacts give rise to general or specific personal jurisdiction over CGI), and whether ARS's claims against CGI and TKT arise from or relate to common transactions or occurrences (*i.e.*, whether the two Counts are sufficiently related to support proper joinder or consolidation).[2]

These questions of fact are raised but not answered by the Defendants' motions because CGI and TKT have not been entirely forthcoming in disclosing the nature and full scope of either CGI's contacts with Massachusetts or the relationship between CGI and TKT. Although some of the facts regarding these issues are available in the public domain, others are known only to CGI and TKT and can only be uncovered through discovery.

Consequently, ARS respectfully requests that this Court grant ARS leave to take limited discovery from the Defendants regarding facts related to personal jurisdiction and proper joinder, and to extend the time for ARS to respond to Defendants' motions until seven (7) days after the completion of such discovery. ARS proposes that this limited discovery take the form of a small number of discovery requests to each party (described below), followed, if necessary by short, focused depositions under Fed. R. Civ. P. 30(b)(6) on the same issues.

---

[2] Common issues of law and fact exist between ARS's infringement action against TKT and the § 146 action against CGI (for example, the purely legal question of the proper legal construction of the claims of the '071 patent, and the mixed factual and legal questions of the validity of those claims). This satisfies the first prong of the test for permissive joinder under Fed. R. Civ. P. 20, and the entire test for consolidation under Fed. R. Civ. P. 42(a).

## III. FACTS PERTINENT TO THE REQUESTED DISCOVERY

The issues of fact in dispute relating to Defendants' motions to dismiss center on CGI's contacts with Massachusetts (*i.e.*, whether such contacts are sufficient to support either general or specific jurisdiction over CGI) and TKT's dealings with CGI in regard to the subject matter of both the § 146 and infringement actions (*i.e.*, whether ARS's claims against each defendant are sufficiently related to satisfy the requirements of Fed. R. Civ. P. 20 and 21).

### A. Facts admitted by CGI and TKT

It is undisputed that CGI is a Delaware corporation with its primary place of business in South San Francisco, California (*see* Memorandum in Support of CGI's Motion to Dismiss ("CGI Memo") at 2) that owns the '390 application, the pending patent application that was involved in the interference with ARS's '071 patent and is at issue in ARS's action against CGI here. (*Id.* at 3.) TKT is also a Delaware corporation with its primary place of business in Cambridge, Massachusetts. (*See* Defendant TKT's Memorandum of Reasons in Support of its Motion to Dismiss ("TKT Memo") at 3.)

In CGI's motion to dismiss, it purports to have had little contact with Massachusetts. This is rather disingenuous, given its close relationship with TKT. For example, while CGI acknowledges that it licensed the '390 application to TKT, it goes to great lengths to distance its license-related activities from Massachusetts, while never admitting just what contacts it has had with Massachusetts in regard to that license. (*See* CGI Memo at 4) ("CGI and TKT negotiated and executed the TKT License primarily by telephone and meetings outside of Massachusetts at CGI, although one initial meeting took place in Massachusetts" and "[t]he majority of CGI's performance under the TKT License has occurred, and continues to occur, outside of Massachusetts.") CGI further represents that it "has communicated with TKT about the TKT

License since June 2002" and that "the majority of those communications have been by mail, telephone, email or facsimile" (*id.*), but again it does not say just what those communications entailed or what other communications took place in Massachusetts. CGI also does not explain how often these communications have taken place, or if they are in regard to the subject matter of this action, the interference between CGI and ARS. CGI also admits that Massachusetts resident Dr. John Potts is a member of CGI's Board of Directors, Scientific Advisory Board, and Medical Advisory Board (*id.* at 3), but is silent as to whether Dr. Potts or any of those boards conducts any activities for CGI (other than their regular meetings) in Massachusetts.

In a similar fashion, TKT's motion barely acknowledges its relationship with CGI. It only makes passing reference, in a footnote no less, to the fact that "TKT is a licensee of Cell Genesys." (*See* TKT Memo at 3 fn. 2.)

**B. Questions not answered in CGI's or TKT's motions**

What CGI does not tell this Court about the "TKT License" is (i) that TKT has already paid CGI at least $15 million dollars for the License (Exhibit A); (ii) just what patent applications and/or patents the License covers, (iii) what obligations CGI or TKT has under the License, (iv) whether CGI or TKT initiated the negotiations that led to the License, (v) what form that initiation took and where it occurred, (vi) what occurred at the "one initial meeting in Massachusetts" admitted to by CGI, (vii) what and where other negotiations relating to the License occurred (*i.e.*, other than those that occurred "primarily . . . outside of Massachusetts"), (viii) the nature and extent of "CGI's performance" under the License, and (ix) just what aspects of that performance occurred and are occurring in Massachusetts. ARS cannot determine the answers to any of these questions without the requested discovery.

Moreover, CGI is remarkably silent about what other contacts it has or has had with Massachusetts. For example, ARS is aware that CGI has a web-site that is available to Massachusetts residents, on which CGI solicits investment and recruits employees (*see* Exhibit B). However, ARS cannot determine, without the requested discovery, the nature and extent of the contacts that occur between CGI and citizens of Massachusetts as a result of those solicitations. ARS is also aware that CGI has been and is conducting nationwide clinical trials for its various products, including at least one trial at the Dana-Farber Cancer Institute in Boston (*see* Exhibit C.) ARS cannot determine, without the requested discovery, whether CGI is involved in other trials in conjunction with physicians, hospitals, and/or research institutions in Massachusetts. ARS is also aware of several business and research collaborations that CGI has or has had with Massachusetts businesses, hospitals and/or research institutions, including with Mitotix, Inc., a Cambridge, Massachusetts biotech company (*see* Exhibit D.) ARS cannot determine, without the requested discovery, the extent of this CGI collaboration with a Massachusetts resident and whether other such collaborations exist or have existed. ARS is also aware that officers and representatives of CGI commonly make presentations in Massachusetts (*see* Exhibit E.) ARS cannot determine, without the requested discovery, what other such contacts CGI has or has had with Massachusetts residents.

**C. Facts Apparent from the License Agreement between CGI and TKT**

In support of its assertion that it has only "sporadic" contacts with Massachusetts (CGI Memo at 3), CGI attached a heavily-redacted copy of the TKT License Agreement. (*See* Exhibit 1 of Tidwell Affidavit to CGI Memo.) However, CGI filed a publicly available, less-redacted version of this License Agreement with the SEC (*see* Exhibit F attached hereto) which suggests a different story from that which Defendants tell in their motions to dismiss.

The less-redacted version of the License Agreement suggests that CGI has had much more significant and continuous contacts with TKT in Massachusetts, contacts directly related to the subject matter of ARS's action against CGI, than it has represented to this Court. This version of the License Agreement also suggests that TKT may have exerted control over CGI's actions in the interference proceedings against ARS, contrary to TKT's suggestions that it has not had any involvement in the interference.

For example, the License Agreement indicates:

- TKT played a significant role in the prosecution of CGI's '390 patent application, and CGI was and is contractually obligated to consult with TKT in Massachusetts before filing any papers with the PTO. (Exhibit F at 8-9, ¶ 6.1) ("CELL GENESYS shall give TKT an opportunity to comment on any official communication related to the Patent rights before filing, shall consider TKT's comments in good faith, and shall consult with TKT thereon.")

- TKT is not a "garden-variety" licensee under CGI's '390 patent application; instead, TKT has much broader rights as the "exclusive," "worldwide" licensee with full rights to "make, have made, use, sell, offer for sale and import" products covered by CGI's application, and to enforce any resulting patent against third-party infringers. Moreover, both TKT and CGI are obligated to notify each other of third-party infringers. (*Id.* at 3, ¶ 2.1; 10, ¶ 6.3(a).)

- TKT contracted to pay CGI at least $11 million dollars and 366,928 shares of TKT stock in consideration for the license. (*Id.* at 5, ¶ 4.1.)

- TKT and CGI are contractually obligated to "fully cooperate and provide assistance to each other" with respect to "gene activation patents" asserted against either party (*i.e.*, TKT and CGI are obligated to assist each other in this action brought by ARS). (*Id.* at 10-11, ¶ 6.3.)

Perhaps most revealing, the License Agreement also suggests that TKT essentially "calls the shots" on CGI's participation in PTO interferences, and that CGI correspondingly has significant contacts with TKT in Massachusetts in this regard:

> CELL GENESYS shall not initiate any reexamination, interference or reissue proceeding involving Patent Rights without the prior written consent of TKT, which consent shall not be unreasonably withheld.

> In connection with any interference, opposition, reissue, or reexamination proceeding (or the foreign equivalent of any of the foregoing) involving the Patent Rights, CELL GENESYS agrees to give TKT an opportunity to provide comments on any official communication related to such interference, opposition, reissue, or reexamination proceeding (or the foreign equivalent of any of the foregoing) before filing, shall consider TKT's comments in good faith, and shall consult with TKT thereon.

(*Id.* at 9-10, ¶ 6.2(b).)[3]

In sum, the License Agreement raises several significant factual questions about CGI's contacts with Massachusetts and its dealings with TKT regarding the subject matter of this action, and suggests that the Defendants have not been fully above-board with this Court in requesting dismissal. ARS cannot fully determine the answers to these questions without the requested discovery.

## IV. THE REQUESTED DISCOVERY

In view of the above questions of fact, ARS submits that Defendants' compliance with the following requests for documents and things and interrogatories should provide adequate discovery to resolve the above questions of fact, and for ARS to respond to both of the motions to dismiss:

> **Request No .1:**
> All documents and things referring, concerning, relating or pertaining to any contact by CGI with a person or entity residing in Massachusetts, including but not limited to contact with TKT.
>
> **Request No. 2:**
> All documents and things referring, concerning, relating or pertaining to any activity in Massachusetts by Dr. John T. Potts, Jr. or any other member of CGI's Scientific Advisory Board and/or Medical Advisory Board, that is on behalf of, at the behest of, or funded by CGI.

---

[3] TKT's control of CGI's participation in the interference with ARS is consistent with the fact that Dr. Michael Heartlein, a Vice-President in charge of Molecular Biology research at TKT, served as one of CGI's primary witnesses in the interference (Exhibit G.).

> **Request No. 3:**
> All communications between CGI and TKT regarding CGI's '390 patent application, ARS's '071 patent, and/or Interference No. 105,114.
>
> **Request No. 4:**
> All documents and things referring, concerning, relating or pertaining to the License Agreement between CGI and TKT.

(Exhibit H.)

> **Interrogatory No. 1:**
> Describe all facts and circumstances relating to each contact and communication between CGI and TKT regarding the License Agreement between CGI and TKT.
>
> **Interrogatory No. 2:**
> Describe all facts and circumstances relating to each contact and communication between CGI and TKT concerning the '390 application or the '114 Interference.
>
> **Interrogatory No. 3:**
> Describe all facts and circumstances relating to each contact or communication that CGI has had with a resident of Massachusetts.

(Exhibit I.)

ARS also requests that it should be permitted to take short, focused Fed. R. Civ. P. 30(b)(6) depositions of each of the Defendants regarding these same topics.

## V. ARGUMENT

### A. Discovery is Routinely Allowed on Jurisdictional Issues

It is well-recognized that that the Federal Rules of Civil Procedure are to be construed liberally in favor of discovery. *See Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001). In keeping with this principle, where a defendant raises a defense based on jurisdiction or venue, limited discovery is generally available to ascertain the facts bearing on these issues. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978); *Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 255-56 (1st Cir. 1966) (vacating and remanding district court's dismissal where plaintiff was not permitted discovery on question of personal jurisdiction) ("A plaintiff who is a total stranger to a corporation should not be required,

unless he has been undiligent, to try such an issue on affidavits without the benefit of full discovery."); *U.S. v. Swiss American Bank, Ltd.*, 191 F.3d 30, 45-46 (1st Cir. 1999) ("A timely and properly supported request for jurisdictional discovery merits solicitous attention."); *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 680-81 (1st Cir. 1992) ("The Boits underestimate their own ability and burden to create a record that supports their jurisdictional allegations. The Boits could have requested that the court allow discovery on the limited issue of personal jurisdiction. . . . it might have been an abuse of discretion to deny the request."); *Whittaker v. United Aircraft Corp.*, 482 F.2d 1079, 1086 (1st Cir. 1973) ("[W]e have recognized that discovery concerning jurisdictional issues is appropriate where complex factual matters are in dispute and where a party has been diligent and is somewhat unfamiliar with his adversary."); *Commonwealth of Puerto Rico v. SS Zoe Colocotroni*, 61 F.R.D. 653, (D. P.R. 1974) ("Wide latitude must be accorded to the plaintiff to establish the requisite minimum contacts . . . and . . . a defendant, thus challenging the court's jurisdiction, has no right to keep its records, personnel and sources of information free from any access by the plaintiff through such reasonable discovery measures as are provided by the F.R.C.P.") (quotation omitted); *cf. Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 395 (D. Mass. 1996) (Wolf, J.) ("The court has great latitude to direct limited discovery and to make such factual findings as are necessary to determine its subject matter jurisdiction.") (quotation omitted).[4]

---

[4] Many courts have held that jurisdictional discovery is appropriate in similar circumstances. *See, e.g., Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135-36 (9th Cir. 2003) (holding that the district court abused its discretion in denying plaintiff's motion for jurisdictional discovery, and remanding for discovery to make *prima facie* showing of jurisdictional facts); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3rd Cir. 2003) (same) ("If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained.") (internal quotation and citation omitted); *Diamond Chem. Co., Inc. v. Atofina Chem., Inc.*, 268 F. Supp. 2d 1, 15 (D. D.C. 2003)

While permitting a plaintiff to take jurisdictional discovery is within the court's discretion, *Swiss American*, 274 F.3d at 625-26, where "the plaintiff is reasonably attentive to the preservation of its rights" jurisdictional discovery should be permitted. *Sunview*, 116 F.3d at 964.

In this instance, ARS has presented more than a "colorable case for the existence of *in personam* jurisdiction" (*id.*) over CGI. In its Complaint, ARS pointed to the TKT License Agreement as evidence of CGI's contacts with Massachusetts and as evidence that the actions against CGI and TKT are related. In this Motion, ARS has presented evidence from the redacted TKT License Agreement showing that CGI has had extensive contacts with TKT in relation to the subject matter of this action. ARS has also provided evidence from the public record showing that CGI has had more contacts with Massachusetts than it admits in its Motion to Dismiss. This is more than a "colorable case" that CGI is subject to personal jurisdiction in this Court. ARS is thus entitled to at least the "modicum of jurisdictional discovery" (*id.*) requested, *i.e.*, the four document requests and three interrogatories to each Defendant set out above.

Should adequate information not be discovered through the interrogatory responses and documents produced by the Defendants in response to these requests, ARS would take a short, focused deposition of each defendant on the same topics under Fed. R. Civ. P. 30(b)(6). *See Surpitski*, 362 F.2d at 255 ("If the court did not choose to hear witnesses, this may well have been within its province, but in such event plaintiff was certainly entitled to file such further interrogatories as were reasonably necessary and, if he wished, to take depositions."); *Boit*, 967

---

(denying without prejudice motion to dismiss for lack of personal jurisdiction, and granting motion for jurisdictional discovery) ("A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum.") (quotation omitted); *PST Services, Inc. v. Larson*, 221 F.R.D. 33, 37 (N.D.N.Y. 2004) (same).

F.2d at 681 ("For example, they could have deposed Gar-Tec – or even Brookstone – to discover if Gar-Tec sold the hot air gun to Brookstone.")

    **B.    The requested discovery is probative of CGI's contacts with Massachusetts, and consequently, whether there is personal jurisdiction over CGI in Massachusetts.**

CGI's motion to dismiss for lack of personal jurisdiction rests on its assertions that "CGI has no continuous or systematic presence in Massachusetts," that "[t]his Court also lacks 'specific' personal jurisdiction over CGI" (CGI Motion at 1), and that "CGI's contacts with Massachusetts have been sporadic." (CGI Memo at 2 and 3.) However, as demonstrated above, there are substantial questions of fact concerning these issues. ARS's proposed discovery requests are directed at discovering precisely what CGI's contacts have been with Massachusetts, including but not limited to its dealings with TKT. ARS also seeks discovery on CGI's contacts with Massachusetts regarding Dr. Potts's and others' work on behalf of CGI regarding any research or clinical trials conducted in Massachusetts, and regarding CGI's solicitation of business, employees, and patients in Massachusetts.

Because these facts all relate to whether this Court can assert general or specific personal jurisdiction over CGI and are peculiarly within the knowledge of CGI and TKT, ARS should be permitted such limited discovery from CGI and TKT before responding to CGI's motion to dismiss.

    **C.    The requested discovery is probative of whether ARS's claims against CGI and TKT share common questions of law or fact and are sufficiently related to support joinder or consolidation.**

TKT's motion to dismiss for misjoinder rests on its assertion that there is "no nexus in fact, transaction, or occurrence between TKT and the other defendant, Cell Genesys, Inc." (TKT Motion at 1.) As suggested by the TKT License Agreement, that does not appear to be the case.

ARS's proposed requests are directed at discovering to what extent TKT has controlled or assisted CGI's prosecution of its pending '390 patent application and CGI's actions in the interference which underlies ARS's action against CGI here. This includes information on how extensive and frequent the contacts were/are between TKT and CGI, whether TKT "calls the shots" on all prosecution and the interference, and whether TKT financed the interference with ARS and will finance the instant action against ARS. ARS's proposed discovery requests also seek information about the extent to which TKT's allegedly infringing activity has been related or tied to CGI's progress in the interference against ARS.

These facts are peculiarly within the knowledge of TKT and CGI, and ARS should have an opportunity to discover them before responding to TKT's motion to dismiss for misjoinder.

## VI.  CONCLUSION

As the First Circuit stated, "When the fish is identified, and the question is whether it is in the pond, we know no reason to deny a plaintiff the customary license." *Surpitski*, 362 F.2d at 255-256. For the foregoing reasons, Plaintiff ARS respectfully requests that this Court grant (1) leave for ARS to take limited discovery from CGI and TKT on issues relevant to the pending motions to dismiss, (2) an extension of time until seven (7) days after completion of the above discovery for ARS to respond to the pending motions to dismiss, and (3) any other relief that is just and appropriate.

Respectfully submitted,

Date: October 14, 2004

NIXON PEABODY LLP

By: [signature]

Fred A. Kelly, Jr.
BBO No. 544046
100 Summer Street
Boston, MA 02110
Tel: 617-345-1000
Fax: 617-345-1300

MARSHALL, GERSTEIN & BORUN LLP
Michael F. Borun
Kevin M. Flowers, Ph.D.
Matthew C. Nielsen
6300 Sears Tower
233 S. Wacker Drive
Chicago, Illinois 60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448

Attorneys for Plaintiff Applied Research Systems ARS Holding, N.V.

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail(by hand) on October 14, 2004

[signature]