UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| APPLIED RESEARCH HOLDING SYSTEMS ARS HOLDING, N.V., <br><br> Plaintiff, <br><br> CELL GENESYS, INC. AND TRANSKARYOTIC THERAPIES, INC., <br><br> Defendants. | C.A. No. 04 11810 MLW |

### DEFENDANT TRANSKARYOTIC THERAPIES, INC.'S MEMORANDUM OF REASONS IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY

Defendant Transkaryotic Therapies, Inc. ("TKT") submits this brief in opposition to the motion of Applied Research Holding Systems ("ARS") for leave to take discovery from TKT ("ARS Motion"). ARS's Motion was submitted in response to TKT's October 4, 2004, Motion to Dismiss. To avoid needless repetition, TKT will not reiterate in this brief the facts detailed in its Motion to Dismiss, and TKT refers the Court to that motion for additional background facts.

### I. Introduction

When ARS filed its first complaint against Cell Genesys in Massachusetts, TKT was not a party, and ARS's action was solely a § 146 appeal. In its Motion to Dismiss, TKT suggested that the *Amended* Complaint joined TKT as a new defendant to a new and unrelated Count II as part of ARS's strategy to get Cell Genesys's co-pending § 146 appeal transferred from Washington, D.C., to Massachusetts.

In fact, TKT's presence in the lawsuit is even more attenuated than TKT first realized. ARS's Motion confirms that ARS is not merely seeking to justify a transfer of *venue* to Massachusetts; rather, ARS is fishing for a basis to subject Cell Genesys to personal *jurisdiction*

1

in Massachusetts. Jurisdiction is an issue between ARS and Cell Genesys alone. This case remains a § 146 appeal that has nothing to do with TKT. TKT should be dismissed.

Since ARS served its Motion, the Court in § 146 appeal pending in Washington, D.C. (Judge Bates) has issued an order denying ARS's motion to transfer venue of the D.C. appeal to Massachusetts. *See* Exhibit A (Memorandum Opinion and Order dated January 18, 2005, hereafter "Bates Order").

Judge Bates ruled that ARS had failed to justify the transfer of the appeal to Massachusetts. (Bates Order, p. 11.) Judge Bates expressed a willingness to revisit the question "once the personal jurisdiction issue" regarding Cell Genesys in Massachusetts "has been resolved." (*Id.*, p. 13.)

Judge Bates's analysis and ruling confirm the absence of any ripe issue that concerns TKT. Fairness dictates that TKT be dismissed from the case.

## II. Argument

### A. TKT is not withholding any information from the Court.

In its Motion, ARS repeatedly suggests that important information is being withheld from the Court. (E.g., ARS Motion, p. 5, "not . . . entirely forthcoming"; p. 7, "barely acknowledges"; p. 10, "not . . . fully above-board.") This unsupported accusation is primarily directed at Cell Genesys, not at TKT. Regardless, as it pertains to TKT, this accusation is not only untrue, but also backwards: it was ARS that strategically omitted from its pleadings "publicly available" facts (ARS Motion, p. 8) which it now contends are important, namely facts about the TKT-Cell Genesys license (hereafter, the "License").

In its motion to dismiss, TKT explicitly stated that it was relying only on the pleadings of the Amended Complaint and Cell Genesys's related § 146 complaint pending in Washington, D.C. (TKT Motion to Dismiss, p. 2.) Had TKT done otherwise, ARS would presumably be

2

complaining now that TKT had based its motion to dismiss on disputed facts outside the record. Yet having followed the rules—i.e., having limited its motion to dismiss to facts alleged in the pleadings—TKT is now accused by ARS of hiding facts from the Court. ARS's accusation is unfounded. ARS was free to plead specific facts in the Amended Complaint about the License. It was *ARS* that chose not to do so.

### B. ARS' Motion confirms that TKT is merely a means by which ARS hopes to obtain Massachusetts jurisdiction over Cell Genesys.

ARS directs its Motion for Discovery primarily to the issue of whether Cell Genesys is subject to personal jurisdiction in Massachusetts. That issue has nothing to do with TKT, with Count II of the Amended Complaint, nor with whether TKT has been misjoined. The sequence of events is telling:

1. ARS sued Cell Genesys in Massachusetts in a single count, a § 146 appeal.

2. *After* learning that Cell Genesys was "first to file" a separate § 146 appeal in Washington D.C., ARS filed an *Amended* Complaint. The Amended Complaint added an unrelated Count II infringement claim against TKT. No fact pleaded in the Amended Complaint even purported to allege a relevant connection between Count I and Count II.

3. Having gratuitously added TKT in the Massachusetts action, ARS then moved to transfer venue of Cell Genesys's § 146 appeal from Washington, D.C. to Massachusetts.

4. TKT moved to dismiss Count II for misjoinder. Cell Genesys separately moved to dismiss Count I for lack of personal jurisdiction.

5. Rather than address the merits to TKT's motion, ARS responded by moving for *discovery* ("ARS Motion"). In its Motion, ARS candidly admits that it does not possess a factual justification for joining TKT. *See, e.g.*, ARS Motion, p. 5 (acknowledging that there are "questions" as to whether Count I and Count II "arise from or relate to common transactions or

3

occurrences"); and p. 6 (acknowledging that it does not know whether Count I and Count II are "sufficiently related to satisfy the requirements of Fed. R. Civ. P. 20 and 21").

6. The bulk of the ARS Motion is addressed to whether Cell Genesys is subject to personal jurisdiction in Massachusetts, a fact ARS also admits it cannot allege in good faith.

7. The thread purportedly holding all of these disparate parts together is the 2002 License between TKT and Cell Genesys. ARS speculates about the License to suggest that Cell Genesys is subject to personal jurisdiction in Massachusetts.

This procedural history confirms that ARS belatedly sued TKT only because ARS wanted to sue Cell Genesys *in Massachusetts*. ARS needs TKT as a prop to justify doing so. Now stuck without a factual basis for jurisdiction, ARS wants to take party discovery *from TKT* to support its speculation that *Cell Genesys* is subject to suit in Massachusetts.

ARS's purported need for jurisdictional discovery *about Cell Genesys* is not a proper reason to join TKT as a party: the fact that a third-party (here, TKT) allegedly has information relevant to a case is not a sufficient reason for joining that entity as a defendant. *See, e.g., Klecher v. Metro. Life Ins. Co.*, 331 F.Supp.2d 279, 288 (S.D.N.Y. 2004) ("A movant may not add a party simply on the ground that the party has information relevant to the case.").

If ARS wants to join TKT as a party, then ARS needs to plead sufficient facts *in the Amended Complaint. See, e.g., Beaulieu v. The Concord Group Ins. Co.*, 208 F.R.D. 478, 479 (D.N.H. 2002) (plaintiff must plead facts in the complaint to overcome Rule 21 misjoinder); *Gavenda v. Orleans County*, 1997 WL 662353, at *3 (W.D.N.Y. Oct. 24, 1997) (plaintiff must allege its basis for joinder in its complaint ). As noted, ARS admits that it cannot plead these facts.

Obviously, had ARS sued TKT outright for patent infringement in a separate action, ARS would be entitled to seek party discovery from TKT in that separate case. Similarly, ARS could have served a Rule 45 subpoena on TKT as a third-party witness to the § 146 action against Cell Genesys. But ARS did neither. This shows ARS's true agenda: to use TKT as a pretext for "bootstrapping" Cell Genesys, and the § 146 appeal, into Massachusetts.

Judge Bates's analysis supports TKT's position. In weighing the various venue issues, Judge Bates noted that there was "some minimal connection of the ARS patent to Massachusetts" (Bates Order, p. 7), but that TKT's presence in Massachusetts made the state a "reasonable choice of forum" (*id.*) by ARS. Judge Bates also analyzed the purported "local interest" allegedly created by TKT being in Massachusetts. (*Id.*, p. 10.) This reasoning confirms ARS's true strategy and goal: to use TKT to create a "local interest" that (allegedly) allows it to sue Cell Genesys in Massachusetts.[1] ARS's continued focus on TKT serves that end, but is fundamentally unfair to TKT. TKT should not be a party to what is actually a § 146 appeal, and should not be subject to discovery so that ARS can search for a basis to sue Cell Genesys in Massachusetts.

Finally, even treated solely as a discovery motion, ARS's Motion does not explain how or why it needs discovery *from TKT* to prove that Cell Genesys is subject to jurisdiction in Massachusetts. ARS has not identified any relevant information in TKT's possession that ARS could not equally get from Cell Genesys, the only proper party to the § 146 appeal. Therefore, even if the Court permits ARS to take jurisdictional discovery from Cell Genesys, it should not permit discovery to be taken from TKT, at least until such additional discovery proves necessary.

---

[1] ARS had argued to Judge Bates that TKT's location in Cambridge gave the § 146 appeal a "local interest" in Massachusetts. *See* TKT Motion to Dismiss, Ex. C, p. 22. ARS also argued that its choice of forum (Massachusetts) should be given deference due to the "Boston action against TKT." (*Id.*, pp. 16-17.)

*Cf. Funai Elec. Co. v. Orion Elec. Co.*, 2002 WL 31413681, at *1 (S.D.N.Y. Oct. 25, 2002) ("It is certainly true that it is often preferable to take party discovery before burdening third-parties").

### C. Discovery will not cure the misjoinder of TKT.

ARS also fails to explain how the discovery it requests will allow it to satisfy the Rule 20 and Rule 21 standards necessary to join TKT. In fact, there is no prospect that discovery will "cure" the misjoinder of TKT.

As explained in TKT's Motion to Dismiss (pp. 10-11), the first question as to proper joinder of defendants is whether the complaint alleges a right to relief that arises out of the same events. *See Carroll v. Brotherhood of R.R. Trainmen*, 417 F.2d 1025, 1027 (1st Cir. 1969). ARS now admits that its Amended Complaint does not so allege. ARS asks for discovery to fill in the missing facts and thereby attempt to retroactively justify suing TKT in the same action as the § 146 appeal. But nothing in ARS's Motion explains how its alleged right to relief against Cell Genesys (Count I of the Amended Complaint) might even conceivably be found to arise out of the same transaction or occurrence as the alleged right to relief against TKT (Count II). Facts and discovery aside, ARS does not even have a *theory* that would permit it to join TKT.

In its Motion, ARS speculates that TKT might "control" Cell Genesys with respect to the interference and § 146 appeal. Yet the main "fact" that ARS cites in favor of the alleged "control" is a provision from the License that was signed more than six years *after* the Board declared the interference. Specifically, ARS cites to a licensing provision that states that Cell Genesys "shall not initiate any . . . interference" without TKT's consent. (*See* ARS Motion, Ex. F, p. 9 ¶ 6.2(b).) But the License was not signed until more than six years *after* the interference

was initiated, rendering this entire section of the License moot for present purposes.[2] Timing aside, the same provision also states that consent to initiate the interference "shall not be unreasonably withheld," thereby proving that TKT has no unilateral power to obstruct Cell Genesys in any case. (*Id.*)

Next, ARS cites to a licensing provision that permits TKT to "provide comments" to Cell Genesys regarding the interference. (*See* ARS Motion, Ex. F, p. 10 ¶ 6.2(b).) This term creates a procedural right, not a substantive one: Cell Genesys's duty is merely to "consider" TKT's comments and "consult" with TKT "in good faith" about them. (*Id.*) If anything, this provision thus establishes that TKT does *not* control the conduct of the interference.

ARS also notes that the License requires TKT and Cell Genesys to "cooperate" in patent litigation. (*See* ARS Motion, Ex. F, pp. 10-11 ¶ 6.2(d).) This, again, is a procedural provision not a substantive one. ARS does not assert (nor could it) that this provision could be invoked to make TKT a party Count I, or Cell Genesys a party to Count II.

Finally, ARS notes that the License makes TKT an exclusive licensee. (*See* ARS Motion, Ex. F, p. 3 ¶ 2.1.) Again, however, ARS fails to explain how this allegation amounts to "control" over Cell Genesys.

Moreover, the "control" issue has nothing to do with joinder. Indeed, even if discovery were somehow to reveal that TKT did "control" the interference (and TKT concedes no such thing), such fact would not bear on the ultimate question of joinder. ARS flatly admits that "CGI owns pending U.S. Patent Application No. 08/102,390." (ARS Motion, p. 3.) TKT was not, and is not, a party to that interference proceeding, either before the PTO or now on appeal. *See* 37

---

[2] As ARS acknowledges, the interference was first declared on March 22, 1996, more than six years before the effective date of the License. The interference was "redeclared" by the PTO on March 28, 2003. (ARS Motion, p. 3.)

7

C.F.R. §1.601(l)[3] ("A 'party' is an applicant or patentee involved in the interference or a legal representative or an assignee of record in the Patent and Trademark Office of an applicant or patentee involved in an interference"); 37 C.F.R. §3.73(b) (requiring any party taking action affecting patent rights to certify that it is the owner or assignee of the patent and including a copy of the assignment or where it is recorded at the PTO); 35 U.S.C. § 146 (appeal is for a "party to an interference"); *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled").

In sum, ARS's speculation that TKT "controls" the interference is affirmatively contradicted by the facts that ARS cites, and is, ultimately, irrelevant to the joinder issue. Even if TKT "controls" the interference (and it does not), ARS's Amended Complaint still fails to allege a right to relief against both defendants that arises out of the same events.

ARS's Motion also fails to meaningfully address the *second* question as to proper joinder, namely whether there is a common question of law or fact between Count I and Count II. TKT addressed this issue in its Motion to Dismiss. (TKT Motion to Dismiss, pp. 11-13.) ARS's Motion responds half-heartedly in a footnote. (ARS Motion, p. 5 n.2.) However, ARS simply fails to contest TKT's observation that (a) the patent claims at issue on Count I and Count II may or may not end up being the same claims, and (b) even if the patent claims at issue are the same, different standards of proof, different standards of review, and (probably) different factual evidence will be at issue. (TKT Motion to Dismiss, pp. 11-13.) Indeed, in denying ARS's motion to transfer venue, Judge Bates noted that "only limited live testimony will be received" (Bates Order, p. 8) on the § 146 appeal. Judge Bates also noted that the dispositive law for the § 146 appeal may well concern "'first to invent' issues relating to an interference." (*Id.*, p. 9).

---

[3] New rules took effect on September 13, 2004. *See* Federal Register, Vol. 169, No. 155, 49960-50020. These changes do not change the analysis here.

These correct statements support TKT's point that the facts and law at issue in Count I and Count II do not overlap. There can be no well-founded rebuttal from ARS. Rather, ARS appears to concede that the '071 patent claims asserted against TKT in Count II are *not* at issue in Count I, hence eliminating any possible overlap between Count I and Count II. (*See, e.g.,* TKT Motion to Dismiss, p. 11.) For example, ARS admitted to Judge Bates that the claims asserted against TKT are only those "that survived the Interference," i.e., the claims *not* at issue on Count I. (*See* TKT Motion to Dismiss, Ex. C, p. 18.)

Nor does ARS even bother to address the larger issue that a § 146 appeal is fundamentally different from, and incompatible with, an infringement action. (TKT Motion to Dismiss, pp. 9-10; *see also* Bates Order, p. 8, recognizing "hybrid nature" of a § 146 appeal.) ARS's only real counterargument is that claim construction will be at issue in both Count I and Count II. This indisputable argument ignores the fact that (a) the claims being construed are different, and (b) any common constructions will occur under different standards and evidence. All the discovery in the world will not bridge these differences.

### D. Conclusion

Discovery *from TKT* on personal jurisdiction issues will not advance the case. The issues on personal jurisdiction, if any, concern Cell Genesys, not TKT. Further, ARS still has not provided a justification for joining TKT in this action, and ARS fails to explain how discovery could supply a justification. As it pertains to TKT, ARS's request for discovery should be denied and TKT should be dismissed from this action.

TRANSKARYOTIC THERAPIES, INC.,

By their attorneys,

/s/ Alison R. Aubry
David B. Bassett (BBO # 551148)
Shann Kerner (BBO # 564537)
Donna M. Meuth (BBO # 645598)
Stephen M. Muller (BBO # 646699)
Alison R. Aubry (BBO # 657298)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000

Dated: January 25, 2005

## CERTIFICATE OF SERVICE

I, Alison R. Aubry, hereby certify that a true copy of the above document has been delivered by hand upon Fred A. Kelly, Esq., Nixon Peabody LLP, 100 Summer St., Boston, Massachusetts, 02110, and by first class mail upon each of the following:

Michael F. Borun, Esq.
Marshall, Gerstein, & Borun LLP
6300 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606-6357

Charles L. Gholz, Esq.
Oblon, Spivak, McClelland, Maier & Neustadt, P.C.
1940 Duke Street
Alexandria, Virginia 22314

Steven B. Kelber Esq.
Piper Rudnick LLP
1200 Nineteenth Street, NW
Washington, DC 20036-2430

/s/   Alison R. Aubry

Dated: January 25, 2005          Alison R. Aubry

US1DOCS 4938763v1