

EXHIBIT
A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CELL GENESYS, INC.,

      Plaintiff,

      v.

APPLIED RESEARCH SYSTEMS
ARS HOLDING N.V.,

      Defendant.

Civil Action No.  04-1407 (JDB)

## MEMORANDUM OPINION AND ORDER

This case involves a patent dispute between plaintiff Cell Genesys, Inc. ("CGI") and

defendant Applied Research Systems ARS Holding, N.V. ("ARS").  A parallel proceeding

between these same parties has been filed by ARS in the United States District Court for the

District of Massachusetts.  In part based on that proceeding, ARS has now moved this Court

pursuant to 28 U.S.C. § 1404(a) to transfer this action to the District of Massachusetts for the

convenience of the parties and witnesses and in the interests of justice.  Although the issue is

close, and the assessment could change based on a pending ruling by the District of

Massachusetts, the Court will at this time deny ARS's motion without prejudice to renewal.

## BACKGROUND

CGI is a Delaware corporation with its primary place of business in South San Francisco,

California.  See Compl. ¶ 1.  ARS is a company organized and existing under the laws of the

Netherlands Antilles, with its only place of business in Curacao, Netherlands Antilles.  See

Compl. at 2.  According to ARS, it has no facilities or personnel in the United States and is a

-1-

wholly-owned subsidiary of a global biopharmacuetical company with headquarters in Geneva, Switzerland.

This is an action brought pursuant to 35 U.S.C. § 146 that seeks to reverse the decision of the United States Patent and Trademark Office ("PTO") on an "interference" under 35 U.S.C. § 135 between CGI and ARS to determine whether their respective claims were patentable and, if so, which was the first to invent the claimed subject matter. ARS and CGI claim methods that allow scientists to produce recombinant proteins in cells without first inserting the genes that encode those proteins into the cells, ARS under a patent issued in 1993 and CGI under a pending patent application. In its decision, the PTO's Board of Patent Appeals and Interferences found that thirty-four of the fifty-eight claims in ARS's patent, and one of the eight claims in CGI's pending patent application, were patentable over the prior art, and then terminated the interference. The proceedings before the Board included submission of sworn declarations from eleven witnesses, two of whom reside in Massachusetts and none of whom reside in the District of Columbia. The Board's "final judgment" was issued on June 24, 2004.

Pursuant to 35 U.S.C. § 146, the parties had sixty days (until August 23, 2004) to file a civil action in federal court seeking to reverse all or any part of the Board's decision. CGI filed this action against ARS on August 18, 2004, five days prior to the expiration of that appeal period. CGI seeks to reverse the Board's decision that seven of CGI's eight pending application claims are unpatentable and that thirty-four of ARS's claims are patentable. The next day, on August 19, 2004, ARS filed a similar action against CGI in the District of Massachusetts. See Applied Research Systems ARS Holding, N.V. v. Cell Genesys, Inc., Civil Action No. 04 11810 MLW (D. Mass.). There, ARS seeks to reverse the Board's decision that twenty-four of the fifty-eight

claims in its patent are unpatentable over certain prior-art references. ARS amended its complaint

in that action on August 30, 2004, to add a count for infringement of its patent against TKT, a

Massachusetts biotechnology company. TKT is an exclusive licensee of CGI, and ARS contends

that it has utilized the methods and DNA constructs claimed in ARS's patent to produce cell lines

covered by the claims of that patent. According to ARS, that license provides that if CGI

succeeds in obtaining issuance of the claims in its pending patent application and "knocking out"

the claims in ARS's patent, then TKT will be required to pay CGI in excess of $10 million.

Neither this case nor the action in the District of Massachusetts has advanced significantly. CGI

has filed in the District of Massachusetts a motion to dismiss for lack of personal jurisdiction. In

response to this Court's inquiry, the parties have advised that the motion remains pending at this

time and that the action in the District of Massachusetts has been stayed pending a decision on

ARS's motion to transfer this case.

## **LEGAL STANDARD**

The relevant statutory provision, 28 U.S.C. § 1404(a), provides that "[f]or the convenience

of the parties and witnesses, in the interest of justice, a district court may transfer any civil action

to any other district or division where it might have been brought." The parties agree that the

purpose of this provision is to prevent the waste of time and money, and to protect the parties,

witnesses and the public against unnecessary prejudice, inconvenience or expense, see, e.g., Van

Dusen v. Barrack, 376 U.S. 612, 616 (1964), and that the district court retains broad discretion in

deciding whether to transfer an action, see, e.g., Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955).

There is likewise no disagreement that the burden is on the moving party, here ARS, to establish

that transfer is warranted. See Pain v. United Tech. Corp., 637 F.2d 775, 784 (D.C. Cir. 1980);

-3-

Armoco Steel Co. v. CSX Corp., 790 F. Supp. 311, 323 (D.D.C. 1991). Finally, the parties agree

that this Court's decision in Thayer/Patricof Educ. Funding, LLC v. Pryor Resources, Inc., 196 F.

Supp. 2d 21 (D.D.C. 2002), sets out the proper analytical framework. Under Thayer, the initial

inquiry is whether, in the language of section 1404(a), CGI could have brought this action in the

District of Massachusetts. If so, the Court must then consider several private and public interests

at stake in determining whether to transfer this action. The private interests include: (1) the

plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the

convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to

sources of proof. See Thayer, 196 F. Supp. at 31. The public interest considerations to be

assessed include: (1) the relative familiarity with the governing law by the transferee and

transferor courts; (2) the relative congestion of the calendars of each court; and (3) any local

interest in deciding local controversies. Id.

## DISCUSSION

An assessment of these considerations does not present a strong case for transfer to the

District of Massachusetts. However, the vital interest in judicial economy and avoiding

duplicative actions warrants particular consideration here, and, although not dispositive at this

time, could ultimately determine the appropriate outcome of a transfer motion. The Court will

address the relevant considerations seriatim below.

## I.    CGI Could Have Filed in the District of Massachusetts

The threshold consideration under section 1404(a) is whether the plaintiff could have

brought the action in the potential transferee court. See Van Dusen, 376 U.S. at 622; Thayer, 196

F. Supp. 2d at 32. ARS has made a persuasive argument that it is subject to personal jurisdiction

in Massachusetts, and hence could have been sued there. CGI has no effective response to that argument.

ARS solicited and entered into a contract with the inventor of its patent, a Massachusetts resident, in which he assigned his interest in the patent to ARS. Ultimately, then, as ARS contends, the present dispute with CGI "relates to" ARS's activity in Massachusetts concerning the original acquisition of its patent, and the assertion of personal jurisdiction over ARS by a Massachusetts court would be "reasonable and fair." The acquisition of the patent in Massachusetts from a Massachusetts resident created a reasonable expectation by ARS that it might be subject to jurisdiction in Massachusetts courts on a dispute relating to that patent. Moreover, ARS has actively engaged in the acquisition of patents from many other Massachusetts residents and has itself asserted patent rights against parties in the District of Massachusetts. Finally, ARS has subjected itself to the jurisdiction of the District of Massachusetts in filing its parallel action there, and it has expressly consented to and waived any objection to this action being transferred to the District of Massachusetts, all of which, although not determinative, supports the conclusion that ARS is subject to personal jurisdiction in Massachusetts. See Reiffin v. Microsoft, 104 F. Supp. 2d 48, 51 & n.6 (D.D.C. 2000).

Therefore, CGI could have brought this case against ARS in the District of Massachusetts, and an assessment of transfer pursuant to section 1404(a) and the relevant private and public interest factors is necessary.

## II.    CGI's Choice of Forum

Normally, deference is given to a plaintiff's choice of forum. See Thayer, 196 F. Supp. 2d at 31; Trout Unlimited v. United States Dep't of Agriculture, 944 F. Supp. 13, 17 (D.D.C. 1996).

"That deference, however, is lessened when plaintiff's forum choice 'lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter.'" <u>Southern Utah Wilderness Alliance v. Norton</u>, 315 F. Supp. 2d 82, 86 (D.D.C. 2004); <u>see also</u> <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 255-256 (1981).

The Court concludes that under these principles little deference is due CGI's choice of the District of Columbia as a forum in this matter. There is no meaningful connection between the District of Columbia and the parties or subject matter of this controversy. Neither CGI nor ARS has any real connection to the District of Columbia in terms of residence or business activity. As is discussed further below, the claim did not arise here and no potential witnesses reside here.

Although CGI places some weight on the fact that its case was the "first-filed," that is not a strong argument against transfer in the instant setting. The first-filed rule should not be rigidly or mechanically applied, <u>see</u> <u>Thayer</u>, 196 F. Supp. 2d at 29-30, and is especially disfavored when there is no evidence of a preemptive strike and the two suits were filed virtually simultaneously. <u>See</u> <u>Ontel Prods., Inc. v. Project Strategies Corp.</u>, 899 F. Supp. 1144, 1153 (S.D. N.Y. 1995) ("the [first-filed] rule is usually disregarded where the competing suits were filed merely days apart"). The one-day difference in filing between this Court and the District of Massachusetts is insignificant under the circumstances presented here.

Nonetheless, there is a strong reason supporting CGI's choice of this forum. The jurisdictional provision in 35 U.S.C. § 146 makes this an appropriate forum because ARS is a foreign entity. Hence, CGI's choice of forum is supported by relevant statutory authority, and cannot be legitimately questioned here. Still, section 146 does not <u>require</u> that this action be filed in the District of Columbia, but rather simply ensures that <u>a forum</u> is available for a civil action

-6-

relating to an interference where one party is a resident of a foreign country.

Accordingly, the Court concludes that CGI's choice of forum was reasonable and is entitled to some consideration even though the District of Columbia has no meaningful ties to the parties or the controversy.  In light of 35 U.S.C. § 146, the Court therefore determines that CGI's choice of forum disfavors transfer.

**III.    ARS's Choice of Forum**

On the other hand, ARS's choice of the District of Massachusetts as an appropriate forum must also be considered.  There is some minimal connection of the ARS patent to Massachusetts, particularly in the initial acquisition of the patent by ARS from a Massachusetts resident. Moreover, ARS desires to combine the interference dispute involving CGI with an infringement action against TKT, which is a Massachusetts company only subject to personal jurisdiction in Massachusetts, not the District of Columbia.  Those factors make the District of Massachusetts a reasonable choice of forum for this action by ARS.

Therefore, the choice of the District of Massachusetts as a forum by ARS is a factor that modestly favors transfer to the District of Massachusetts.  Alone, however, the Court concludes that it is not as strong a factor as CGI's choice of the District of Columbia as an appropriate forum pursuant to 35 U.S.C. § 146.

**IV.    Where the Claim Arose**

The interference claim has a minimal connection to Massachusetts through the original acquisition of the patent by ARS from a Massachusetts inventor.  That connection, however, is offset somewhat by the proximity of the District of Columbia forum to the PTO and the Board locations in the metropolitan Washington area, even though the Court concludes that the claim did

-7-

not in reality arise in the District of Columbia. The Court therefore concludes that the factor relating to where the claim arose is neutral in this case, and hence does not favor transfer.

## V.     Convenience of the Parties

Neither CGI nor ARS is located in the District of Columbia or Massachusetts for purposes of residence or business activities. Moreover, neither party has argued that it would be appreciably more convenient to try this case in one forum over the other. Hence, the factor relating to convenience of the parties is itself also neutral, and does not favor transfer. However, the ultimate consideration of judicial economy, discussed further below, must include the potential inconvenience to the parties from having parallel proceedings in two jurisdictions.

## VI.     Convenience of the Witnesses

An important factor in the analysis under section 1404(a) is the convenience of the witnesses. Here, no witnesses in the District of Columbia have been identified by either side, and two potential witnesses located in Massachusetts have provided testimony in the past and are anticipated to do so again. On the surface, then, this factor appears somewhat to favor transfer to the District of Massachusetts.

However, two considerations cut against that analysis. First, the hybrid nature of an action under 35 U.S.C. § 146, which involves "quasi-de novo review" of the PTO decision, means that only limited live testimony will be received. Neither side has been able to represent that the two potential witnesses from Massachusetts will definitely appear at any trial involving review of the interference decision. Second, ARS has not demonstrated, by affidavit or otherwise, that any witness would actually be unavailable for trial here but available in Massachusetts. The convenience of the witnesses factor turns on such demonstrated unavailability. See Thayer, 196 F.

Supp. 2d at 31.

At most, then, the convenience of the witnesses factor only slightly favors transfer to Massachusetts, if at all. This factor is, however, extremely relevant in the context of assessing judicial economy, and the inconvenience of having two parallel proceedings in different courts, and hence will be addressed further below.

**VII.    Ease of Access to Proof**

The parties agree that the evidence necessary to present this case is equally available whether the forum is in the District of Columbia or in Massachusetts. Hence, this factor is neutral with respect to transfer.

**VIII.    Familiarity with the Governing Law**

ARS goes to great lengths to establish that Judge Mark Wolf, to whom the District of Massachusetts case is assigned, is extremely experienced with patent cases involving biotechnology. On that basis, ARS asserts that the familiarity of the transferee court with the relevant law is a public interest factor that strongly favors transfer.

This Court has no doubt that Judge Wolf, who has twenty years of experience on the federal bench, is more experienced generally with patent issues relating to biotechnology than is this Court. Of course, the precise relevant law here, at least as asserted by CGI, may be "first to invent" issues relating to an interference, an area with which neither court may have a demonstrated past experience. Moreover, this factor in its original design had more to do with familiarity with the governing body of law, particularly state law, than with specific applications of federal law, with which all district judges are generally familiar. Nonetheless, this Court agrees that the body of cases involving biotechnology patent issues handled by Judge Wolf over his

judicial career far exceeds that which has been before this Court. Accordingly, this factor weighs somewhat in favor of transfer.

## IX.    Congestion of Court Calendars

ARS makes the questionable argument that a statistical difference of three days in the median time from filing to disposition for civil actions in the District of Massachusetts compared with the District of Columbia "slightly favors transfer." This Court disagrees, and concludes that no meaningful difference in calendar congestion between the two courts has been shown. Therefore, this factor is neutral.

## X.    Local Interest in the Dispute

Relying mainly on the impact of the resolution of both the interference and the infringement issues, ARS argues that TKT, a Massachusetts company, will be significantly impacted and hence Massachusetts has more of a local interest in the underlying subject matter than does the District of Columbia. It is true that such Massachusetts "local interest" in the subject matter of this case favors transfer. See Southern Utah Wilderness Alliance, 315 F. Supp. at 86. However, because TKT apparently is not subject to personal jurisdiction in this Court, it is likely that the infringement claims would be resolved in the District of Massachusetts in any event. The Massachusetts interest in the resolution of the interference issues that are the subject matter of this case is less direct and somewhat marginal. Although Massachusetts may have a greater interest in the outcome of the interference issues than does the District of Columbia, the Court concludes that this factor only slightly favors transfer given the indirect nature of that local interest.

-10-

**XI.    Judicial Economy**

When viewed collectively, these factors do not <u>strongly</u> favor litigation in either the District of Columbia or the District of Massachusetts. Several of the private and public interests slightly favor transfer to Massachusetts. But the burden is squarely on ARS to demonstrate that the balance of factors relating to the convenience of the parties and witnesses and the interest of justice favors transfer. <u>See</u> <u>Thayer</u>, 196 F. Supp. 2d at 31; <u>Armoco Steel Co.</u>, 790 F. Supp. at 323. The moving party "bear[s] a heavy burden of establishing that plaintiffs' choice of forum is inappropriate." <u>Pain v. United Tech. Corp.</u>, 637 F. 2d at 784. Absent consideration of the strong public interest in judicial economy, specifically as it relates to the potential of parallel proceedings in two federal courts, the Court concludes that an appropriate assessment of the relevant factors does not warrant transfer of this case to the District of Massachusetts. Although Massachusetts may be somewhat more appropriate, ARS simply has not satisfied its heavy burden, particularly given Congress' identification of this Court as an appropriate forum under 35 U.S.C. § 146.

However, judicial economy remains a very important consideration here. There are strong reasons not to permit parallel actions. "The interests of justice are better served when a case is transferred to the district where related actions are pending." <u>Martin-Trigona v. Meister</u>, 668 F. Supp. 1, 3 (D.D.C. 1987). As Judge Urbina of this Court has stated: "Piecemeal litigation in the complex and technical area of patent and trademark law is especially undesirable. Rather, all of the parties' related patent and trademark infringement claims should be decided in the same court." <u>Reiffin</u>, 104 F. Supp. at 56; <u>see also</u> <u>Froessl v. Expervision</u>, 1994 U.S. Dist. Lexis 4791, at * 11-12 (D.D.C. April 14, 1994); <u>Smith Indus. Med. Sys., Inc. v. Ballard Med. Prods., Inc.</u>, 728 F. Supp. 6 (D.D.C. 1989). The burdens on the parties, witnesses, and the judicial system from

having two cases involving the same interference issues proceed through litigation in separate federal courts is obvious. Such burdensome duplication should be avoided wherever possible. Therefore, transfer of one of the actions would appear preferable.

The self-evident burdens resulting from parallel proceedings in two federal courts does not, however, necessarily answer the question whether this case should be transferred to the District of Massachusetts. Indeed, whether there is a risk of two parallel <u>interference</u> actions involving CGI and ARS over the same patents depends to some extent on whether there is personal jurisdiction over CGI in the District of Massachusetts -- if not, presumably that interference action would be dismissed. That is an issue currently pending before Judge Wolf.[1] Based on the representations made to this Court regarding the absence of personal jurisdiction over TKT in this Court, the entire case now pending in the District of Massachusetts may not be subject to transfer here because ARS could not have brought its infringement claim against TKT here originally. On the other hand, if Judge Wolf were to decide that there is personal jurisdiction over CGI in the District of Massachusetts, no apparent impediment to transfer of this case to the District of Massachusetts remains. Indeed, this case <u>could</u> be transferred now.

The Court concludes that considerations of judicial economy constitute the governing factor relating to transfer under the circumstances of this case. However, until there is greater clarity as to whether the pending action in the District of Massachusetts by ARS against CGI may proceed there, the proper resolution of ARS's motion to transfer this case remains less than certain. Although assessment of the relevant factors independent of the public interest in judicial

---

[1] Pursuant to this Court's inquiry, the parties have indicated that CGI's motion to dismiss for lack of personal jurisdiction remains pending before Judge Wolf at this time.

economy does not, in this Court's view, warrant transfer at this time, that assessment may change once the personal jurisdiction issue in the District of Massachusetts has been resolved and considerations of judicial economy are properly factored into the analysis. In the end, duplicative parallel proceedings in the two courts should be avoided if at all possible.

## CONCLUSION

Accordingly, based on the analysis explained above, the Court denies defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) at this time. That denial is without prejudice to reconsideration once the issue of personal jurisdiction over CGI in the District of Massachusetts is resolved by that court. In the meantime, the proceedings in this action will resume with a status call scheduled for March 4, 2005, at 9:15 a.m. The parties are directed to notify this Court on February 25, 2005, as to the up-to-date status of the related proceeding in the United States District Court for the District of Massachusetts.

SO ORDERED.


_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge

Dated:  ___January 18, 2005_____

Copies to:

Steven B. Kelber
Piper Marbury Rudnick & Wolfe, LLP
1200 Nineteenth Street, Northwest
Washington, D.C.  20036
202-861-3900  (telephone)
202-223-2085  (fax)
E-mail:  Steven.Kelber@piperrudnik.com

-13-

Jerold I. Schneider
Piper Marbury Rudnick & Wolfe, LLP
1200 Nineteenth Street, Northwest
Washington, D.C.  20036
202-861-3900  (telephone)
E-mail:  jerold.schneider@piperrudnik.com
     *Counsel for Plaintiff*

Charles L. Gholz
Oblon, Spivak, McClelland, Maier & Neustadt, P.C.
1940 Duke Street
Alexandria, Virginia  22314
703-413-3000  (telephone)
703-413-2200  (fax)
E-mail:  cgholz@oblon.com
     *Counsel for Defendant*