**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) ) |
| Plaintiff, | ) C.A. NO. 04 11810 MLW |
| v. | ) ) |
| CELL GENESYS, INC. AND TRANSKARYOTIC THERAPIES, INC., | ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT
TRANSKARYOTIC THERAPIES, INC.'S MOTION TO DISMISS**

**I.    INTRODUCTION**

On October 4, 2004, defendant Transkaryotic Therapies, Inc. ("TKT") moved to dismiss, citing misjoinder. On October 31, 2004, this Court granted the parties' joint request (docket entry 16) to, *inter alia*, extend the time for ARS to respond to TKT's motion until one week after this Court rules on ARS's October 14, 2004 motion for jurisdictional discovery (docket entries 14 and 15), or one week after ARS completes such discovery, whichever is later.

ARS is responding to TKT's motion to dismiss now, rather than waiting for the Court's order regarding jurisdictional discovery, because the present record is sufficient to show that TKT's arguments are meritless and its motion should be denied.

**II.    SUMMARY OF ARGUMENT**

The patent infringement action against TKT is properly joined with the 35 U.S.C. § 146 action against TKT and Cell Genesys, Inc. ("CGI") because: (i) TKT is a proper defendant in both actions; (ii) the same patent is at issue in both actions; (iii) TKT and CGI are contractually obligated to consult with and assist each other in both actions; (iv) resolution of each action involves common questions of law and fact; and (v) no party will be prejudiced by litigating these actions together. Dismissal is therefore unjustified, and TKT's motion to dismiss should be denied.

**III.    SUMMARY OF FACTS**

The relevant facts are summarized below. These facts and others were discussed in greater detail in ARS's motion for jurisdictional discovery (*see* pages 4-8 therein).

1. ARS owns U.S. Patent No. 5,272,071 ("the '071 patent"), which was filed in 1989 and issued in 1993. The '071 patent discloses and claims methods, DNA constructs, and cell lines that allow scientists to produce recombinant proteins in cells without first inserting the genes that encode those proteins into those cells.

1

2. CGI owns pending U.S. Patent Application No. 08/102,390 ("the '390 application"), which is the patent application involved in the interference with the '071 patent.

3. In 1996, the U.S. Patent Office declared an "interference" between ARS's '071 patent and the '390 application. The PTO's Board of Patent Appeals and Interferences ("the Board") resolved that dispute in a June 22, 2004 decision ("the Board's decision") (Ex. 1 to ARS's Complaint and First Amended Complaint) (docket entries 1 and 2).

4. In Count I of ARS's First Amended Complaint, ARS asks this Court to reverse those parts of the Board's decision in which the Board (i) determined that some of the claims in the '071 patent are not patentable and (ii) dismissed or denied several ARS motions seeking a finding that all of the claims of the '390 application are unpatentable to CGI. (*See* First Amended Complaint at 3-5, ¶¶ 11-12.)

5. In Count II of the First Amended Complaint, ARS asks this Court to find that TKT infringes, *inter alia*, those claims in the '071 patent that the Board found are patentable. (*See id*. at 5, ¶¶13-16.)

6. CGI has a related action pending in the U.S. District Court for the District of Columbia in which it asks that court to (i) reverse the Board's decision that the '071 patent claims that ARS seeks to enforce against TKT in this Court are patentable, and (ii) reverse the Board's decision that all but one of the claims in the '390 application are not patentable. (*See* Ex. A to TKT's Motion to Dismiss, at, *e.g.*, p. 8.)

7. On September 17, 2004, ARS moved to transfer the D.C. action to this Court on the basis that trying both actions in this Court would best conserve judicial resources. (*See* Ex. C to TKT's Motion to Dismiss.) On January 18, 2005, Judge Bates denied the motion to transfer without prejudice to renewal, and suggested that if this Court retains jurisdiction

2

over this action, he will likely transfer the D.C. action to this Court. (*See* Ex. A to ARS's January 21, 2005 letter to this Court, docket entry 28, at 12-13) ("[I]f Judge Wolf were to decide that there is personal jurisdiction over CGI in the District of Massachusetts, no apparent impediment to transfer of this case to the District of Massachusetts remains. Indeed, this case <u>could</u> be transferred now. . . . Although assessment of the relevant factors independent of the public interest in judicial economy does not, in this Court's view, warrant transfer at this time, that assessment may change once the personal jurisdiction issue in the District of Massachusetts has been resolved and considerations of judicial economy are properly factored into the analysis. In the end, duplicative parallel proceedings in the two courts should be avoided if at all possible.")

8. TKT and CGI are parties to a license agreement that involves both the '390 application and the '071 patent ("the Agreement") (Ex. F to ARS's motion for jurisdictional discovery). TKT contracted to pay CGI at least $11 million dollars and 366,928 shares of TKT stock in consideration for the license. (*See id.* at 5, ¶ 4.1.)

9. Pursuant to the Agreement, TKT is the "exclusive," "worldwide" licensee under the '390 application, with full rights to "make, have made, use, sell, offer for sale and import" products covered by the '390 application (which would necessarily apply to the TKT products that ARS is accusing of infringing the '071 patent), and to enforce any patent that might issue from the '390 application against third-party infringers. TKT and CGI are also obligated to notify each other of third-party infringers. (*See id.* at 3, ¶ 2.1, and at 10, ¶ 6.3(a).)

10. The Agreement reveals that TKT played a significant role in the prosecution of CGI's '390 application, and that CGI was and is contractually obligated to consult with TKT

3

before filing any "official" papers regarding the '390 application. (*See id.* at 8-9, ¶ 6.1 ("CELL GENESYS shall give TKT an opportunity to comment on any official communication related to the Patent Rights before filing, shall consider TKT's comments in good faith, and shall consult with TKT thereon.").)

11. TKT and CGI are also contractually obligated to "fully cooperate and provide assistance to each other" with respect to "gene activation patents" asserted against either party. (*See id*. at 10-11, ¶ 6.3.) Thus, TKT and CGI are obligated to assist each other in defending against this action brought by ARS to enforce the '071 patent (a "gene activation patent") against TKT.

12. The Agreement gave TKT the right to participate "behind the scenes" in the interference between ARS and CGI:

    In connection with any interference, opposition, reissue, or reexamination proceeding (or the foreign equivalent of any of the foregoing) involving the Patent Rights, CELL GENESYS agrees to give TKT an opportunity to provide comments on any official communication related to such interference, opposition, reissue, or reexamination proceeding (or the foreign equivalent of any of the foregoing) before filing, shall consider TKT's comments in good faith, and shall consult with TKT thereon.

    (*Id*. at 9-10, ¶ 6.2(b).)

13. TKT did participate in the interference, as confirmed by, among other things, the fact that Dr. Michael Heartlein, a Vice-President at TKT, served as one of CGI's principal witnesses in the interference. (*See* TKT Motion to Dismiss at p. 3, fn. 3, and Ex. G to ARS's motion for jurisdictional discovery.)

IV.  **ARGUMENT**

TKT's motion to dismiss should be denied for at least four reasons: (i) the actions against CGI and TKT are sufficiently related to justify joinder; (ii) TKT is properly joined as a co-defendant in the § 146 action of Count I; (iii) misjoinder is not grounds for dismissal; and (iv)

4

TKT's other stated reasons for seeking dismissal ("unfair prejudice" and "prematurity") are meritless.

    A.    **The § 146 and patent infringement actions are properly joined in this case**

           1.    **Logically related actions may be joined**

Actions against different defendants are properly joined if the requirements for permissive joinder under Rule 20(a) are satisfied. Rule 20(a) provides that:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

The primary purpose of Rule 20(a) is to promote judicial economy through the convenient and speedy determination of disputes and the prevention of multiple lawsuits. *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966); *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332-3 (8th Cir. 1974); *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000).

As TKT admits, "joinder exists to promote 'judicial efficiency' and 'fairness' by resolving <u>related</u> issues in a single lawsuit." (TKT's Motion to Dismiss at p. 8) (emphasis added). The Rule 20(a) test is "flexible," hinging on whether joinder is "sensible" and "fair" and whether there is a "logical relationship" between the actions. *See* 7 Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 1653 at 409-417 (3d ed. 2001). The test is to be applied on "a case-by-case basis." *Mosley*, *supra*, 497 F.2d at 1333. If the requirements of Rule 20(a) are satisfied, joinder is "strongly encouraged." *United Mine Workers*, 383 U.S. at 724 ("[U]nder the rule, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

### 2. Interference-related actions and patent infringement actions are not "fundamentally incompatible"

TKT's assertion (Motion to Dismiss at p. 9) that it is "procedurally improper" to join a § 146 action and a patent infringement action in the same case due to the "fundamentally different" nature of the two actions finds no support in logic or law. TKT does not (and cannot) direct this Court to any on-point authority for this proposition.

Instead, TKT attempts to support its proposition based on three cases which are inapposite. Two of TKT's cases, *Conservolite, Inc. v. Widmayer*, 21 F.3d 1098 (Fed. Cir. 1994), and *Velsicol Chem. Corp. v. Monsanto Co.*, 579 F.2d 1038 (7th Cir. 1978), involved only § 146 actions. Neither makes any mention of any purported incompatibility between such actions and an action for patent infringement.

TKT's third case, *McFarlane v. Resinite Corp.*, 273 F. Supp. 224 (N.D. Ill. 1967), involved both a § 146 action and a patent infringement action (as well as an action for unfair competition), but is also readily distinguishable. First, *McFarlane* involved a motion for a separate trial under Fed. R. Civ. P. 42(b), <u>not</u> a motion to dismiss under Rule 21. *Id*. at 225. Although the *McFarlane* court granted the motion for a separate trial, it did so only for "considerations of convenience and expedition" in accordance with the Rule 42(b) standard, not because of any "incompatibility" between a § 146 action and a patent infringement action.

Second, the *McFarlane* plaintiff was asserting patent claims as to which it had <u>already lost</u> a priority determination to the defendant. *Id*. That is essentially the opposite of what is occurring here. ARS did not lose a priority contest to CGI. The issue of priority was not addressed in the interference. The Board found that the claims ARS is now asserting against TKT are patentable to ARS. Those claims enjoy a presumption of validity under 35 U.S.C. § 282, and TKT bears the burden to establish otherwise by clear and convincing evidence. Unlike

6

in *McFarlane*, the § 146 action in this case is not such that a "separate trial [on it] . . . would decide a threshold issue basic to the [infringement] trial." *Id.*

Contrary to TKT's unsupported assertions, a § 146 action and a patent infringement action are not fundamentally incompatible. *See, e.g., Biochem Pharma, Inc. v. Emory University*, 148 F. Supp. 2d 11 (D.D.C. 2001) (consolidating and transferring § 146 actions to court in which patent infringement action between parties involving same patent was pending), and *Minnesota Mining and Manufacturing v. Norton Co.*, 929 F.2d 670 (Fed. Cir. 1991) ("*3M*").

The Federal Circuit's decision in the *3M* case is particularly instructive. There, the district court had granted the defendant's motion to dismiss the plaintiff's declaratory judgment action because of an ongoing interference between the two parties. The Federal Circuit found that such dismissal was improper and reversed.

The district court had "stated that the pending interference proceeding 'may' have the effect of resolving the infringement controversy, and that it is 'possible' that the interference might render the infringement determination moot." *Id.* at 674.[1] While acknowledging that such an outcome was possible, the Federal Circuit nevertheless held that the district court had abused its discretion in dismissing the declaratory judgment action, because "the mere chance of the action becoming moot is not reason enough to dismiss this suit." *Id.* The Federal Circuit, which applies its own law to questions involving the interrelationship of ongoing interferences and infringement suits, *id.* at 672, explained that the resolution of the interference might not resolve the infringement issues in the case and that 3M was entitled "to have a decision on the

---

[1] This position is strikingly similar to that advanced by TKT: "ARS' infringement claim against TKT is premature [because] . . . resolution of the § 146 appeal could well dispose of the infringement claim against TKT. Indeed, after the appeals [sic], the '071 patent may cease to exist." (Motion to Dismiss at p. 14) (emphasis added).

7

infringement question and not to have to wait until the interference is finally resolved." *Id.* at 674.

The *3M* case, although certainly not identical to the present case, nevertheless shows that the Federal Circuit does not consider a patent infringement action to be fundamentally incompatible with a concurrent interference (much less with a § 146 action where the interference has already been decided in favor of the patentability of the patentee's claims, as is the case here). It also shows that a court should exercise its discretion in favor of resolving an infringement issue despite the pendency of interference-related issues. *Id.* at 674 ("For the court to fail to hear 3M's case and forego the opportunity to resolve a matter well within its capability . . . is an abuse of discretion.")

Based on *3M*, if TKT were a declaratory judgment plaintiff asserting non-infringement and invalidity of the '071 patent (as opposed to an accused infringer arguing the exact same points), it could insist on the speedy resolution of its action despite the existence of the § 146 action. There is simply no reason why ARS should be denied a similar opportunity.

### 3. Purported differences in "procedure" and burden-of-proof do not justify dismissal

TKT argues that ARS's Amended Complaint fails to meet the standard for permissive joinder under Rule 20(a) because ARS must prove different things to prevail in the § 146 action and the infringement action. (*See* Motion to Dismiss at pp. 9–10) (concluding the "two Counts . . . cannot logically co-exist in the same case.") TKT emphasizes purported differences in the "procedural rules, evidentiary rules, and burdens of proof" between the actions (Motion to Dismiss at p. 9). But Rule 20(a) does not require that such rules or burdens must be the same in properly joined actions.

8

Rule 20(a) specifically allows joinder where the plaintiff's right to relief arises out of the "same transaction, occurrence, or series of transactions or occurrences." The fatal flaw in TKT's argument is that it begins and ends its analysis by looking only at whether the infringement action arises "out of the 'same transaction'" as the § 146 action. (Motion to Dismiss at p. 10) ("the claims against TKT do not arise out of the 'same transaction' as ARS' interference dispute with Cell Genesys").

What TKT fails to acknowledge is that the § 146 and patent infringement actions here seek relief "in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences" in accordance with Rule 20(a). When analyzing joinder, "transaction" is to be given a broad meaning. In Rule 20(a), "transaction" is interpreted in light of its use in Fed. R. Civ. P. 13(a), where it has a "flexible meaning, which may include a series of many occurrences, related not so much by their immediate connection as by their logical relationship. Thus, all 'logically related events' that give rise to a cause of action are usually considered to constitute a transaction or occurrence." *Direct TV v. Delaney*, 2003 U.S. Dist. LEXIS 24262, *15 (N.D. Ill. 2003) (*citing* 7 Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 1952 (3d ed. 2001).)

There can be no serious question that the subject matter of the two actions here is "logically related," as Rule 20(a) requires:

- TKT is a defendant in both the § 146 action and the patent infringement action;
- The same patent is at issue in both actions;
- CGI and TKT worked together in the interference that is to be reviewed in the § 146 action;
- CGI and TKT are obligated to assist each other in the patent infringement action; and

9

- CGI and TKT's relationship under the Agreement, and their dispute with ARS regarding the '071 patent and the '390 application, all relate to the same "gene-activation" technology.

Because both actions seek relief arising out of these logically related transactions and occurrences, joinder is proper under Rule 20(a).

TKT's arguments to the contrary are a bit disingenuous. The Agreement shows that TKT and CGI view all proceedings involving the '390 application and the '071 patent as "logically related." CGI and TKT have explicit, intertwining, and ongoing rights and obligations under the Agreement with regard to each eventuality. Yet now (even after having been caught soft-pedaling its ongoing relationship with CGI under the Agreement regarding the interference, the § 146 action, and the infringement action), TKT apparently perceives that its advantage lies in using CGI as a "cat's-paw" in an attempt to knock out ARS's patent claims and/or delay its accountability for its infringement of the '071 patent, all the while retaining its ability to direct the § 146 action from behind the scenes. Given this state of affairs, it strains credulity for TKT to argue that the two actions are not logically related.

### 4. The two actions involve common questions of law and fact

The second requirement for permissive joinder under Rule 20(a) is extremely broad. It requires only that the right to relief in each action involve at least one common issue of law or fact. Because there are multiple issues of law and fact in common between the two actions here, this requirement is satisfied.

TKT asserts that the "the only possible common question between Count I and Count II concerns the validity of claims of the '071 patent that the Board found invalid." (Motion to Dismiss at p. 11.) That assertion simply ignores reality. If the action against CGI goes forward, both TKT and CGI will undoubtedly argue that <u>all</u> of the claims of the '071 patent are invalid for one or more reasons, regardless of which claims the Board held patentable. The two actions will

10

therefore involve many common questions of law and fact. An obvious example is the issue of claim construction. This is an issue of key importance in both the § 146 action and the patent infringement action, and the same facts and law will apply in both actions.

In addition, TKT will almost certainly raise certain of the same arguments against the validity of the claims in the '071 patent that CGI raised during the interference (and that CGI will undoubtedly raise again here as part of its counterclaim, as indicated by the allegations in its complaint in the D.C. action) (Ex. A to TKT's Motion to Dismiss at pp. 4-7, ¶¶ 12-17 and 21-22). To the extent that each defendant argues that a given claim of the '071 patent is invalid as anticipated or rendered obvious by the prior art, such arguments will present common questions of fact and law (*e.g.*, regarding what those prior-art references disclose). The same is true for their arguments relating to written description and enablement under 35 U.S.C. § 112. Simply put, there are as many common questions of law and fact in the two actions as there are invalidity defenses or arguments that CGI and TKT will put forward. This Court should not have to deal with those same issues, arguments, and evidence twice, in separate but concurrently litigated cases.

The actions against CGI and TKT are logically related and will involve many common questions of law and fact. Moreover, joining these actions will not unduly prejudice TKT, because it will participate in the § 146 action whether or not that action is joined with the patent infringement action. TKT's motion to dismiss should be denied.

**B.    Misjoinder is not grounds for dismissal**

In its motion, TKT requests dismissal based on misjoinder. But as Fed. R. Civ. P. 21 expressly states, "misjoinder of parties is not ground for dismissal of an action."

## C. TKT is a proper defendant in the § 146 action of Count I

Parties are properly joined as defendants in an action where they "not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Shields v. Barrow*, 58 U.S. 130, 139 (1854); *Minnesota v. Northern Securities Co.*, 184 U.S. 199, 236 (1902); *Hazeltine Corp. v. White*, 68 F.2d 715, 717 (2nd Cir. 1934).

The claims of the '390 application are at issue in Count I of this case (*see* First Amended Complaint at pp. 4-5, ¶ 12, subsection (vii), in which ARS asks this Court to reverse the Board's decision regarding the claims of the '390 application). TKT is the "exclusive, worldwide" licensee under those same claims. As the exclusive licensee under the claims of the patent application that is at issue in Count I, TKT has an interest in the outcome of that action such that TKT is properly joined in this case. *See*, *e.g.*, *Parker Rust Proof Co. v. Western Union Tel. Co.*, 105 F.2d 976, 978-9 (2nd Cir. 1939) (third party with financial interest in patent application is proper defendant in appeal of PTO decision regarding that application); *Robinson v. Wayne*, 136 F.2d 767, 769 (C.A. D.C. 1943) (same) ("When Wayne's appearance in the District Court revealed that Visco Productions Company is the exclusive licensee under Wayne's application, and that Visco is a resident of Delaware, appellants were entitled to join that company as a defendant. Their motion to amend should, therefore have been granted.")

TKT's role as a defendant in both the § 146 action and the patent infringement action justifies joinder.

## D. TKT's other arguments do not justify dismissal

TKT argues that "even if ARS has met the standard for permissive joinder," this Court should still dismiss the action against TKT because "TKT will be prejudiced if it is not

12

dismissed" and "Count II is premature." (Motion to Dismiss at pp. 13-14.) TKT fails to show that it would be "prejudiced," and has failed to show that ARS's patent infringement action against TKT, based on patent claims that have twice been found patentable by the Patent Office (once during prosecution and again during the interference), is in any way "premature." Consequently, TKT's alternative arguments for dismissal should be rejected.

### 1. TKT will not be "prejudiced" by joinder

TKT fails to show how it will be "prejudiced" by defending against ARS's infringement action in this case. TKT argues that "multiple and separate sets of evidence about different issues will have the tendency to be confusing and misleading." (Motion to Dismiss at p. 13.) Confusing and misleading to whom? This Court, not a jury, will deal with the issues raised in the § 146 action. Surely TKT is not suggesting that this Court will be confused or misled regarding these issues. As explained below, many of those issues (*e.g.*, claim construction and invalidity) in the two actions will involve identical or similar arguments and evidence. This Court will be able to resolve many of those issues before they would ever reach the jury in the action against TKT.

TKT argues that "if the patent claims do not overlap," this Court "will be forced to keep track of two entirely separate cases at once." (Motion to Dismiss at p. 13.) This argument makes no sense. First, TKT's suggestion that the claims at issue in each action might not "overlap" ignores reality. Of course the claims will "overlap." If the action against CGI goes forward, CGI will undoubtedly assert a counterclaim asking this Court to find that the '071 patent claims being asserted against TKT are invalid. The claims in the two actions will thus completely "overlap."

Second, given that this Court "keeps track of" dozens of cases at once on a regular basis, TKT fails to explain how the Court's effort in this case could possibly cause "prejudice" to TKT. Similarly, TKT argues that "[d]iscovery and pre-trial activity will be similarly burdensome to

13

TKT" (Motion to Dismiss at p. 13), but fails to explain how any of this activity could be at all "burdensome" for TKT, the other parties, or this Court.

TKT goes on to say that "if the patent claims do overlap, any invalidity analysis on Count II will likely concern different evidence than the invalidity analysis on Count I, and would involve a different standard of proof," and that "such a situation would invite confusion and unfair prejudice during both discovery and at trial." (Motion to Dismiss at p. 13.) Again, who will be confused? This Court will rule on the evidence and arguments presented in the § 146 action. The § 146-specific issues will not be presented to the jury in the patent infringement action against TKT. To the extent that this Court rules on the evidence and argument in both actions (*e.g.*, on summary judgment), how will this Court possibly be confused? TKT never says.

TKT also never explains how joinder could cause "unfair prejudice" to TKT. In reality, TKT's defenses against the '071 patent will not be prejudiced by CGI's efforts to invalidate the patent, because CGI and TKT have essentially the same burden of proof on those issues. In the patent infringement action against TKT, this Court will not invalidate any claim of the '071 patent unless TKT can establish invalidity by clear-and-convincing evidence. *Atlas Powder Co. v. E.I. Du Pont De Nemours & Co.*, 750 F.2d, 1569, 1573 (Fed. Cir. 1984) ("Under 35 U.S.C. § 282, a patent is presumed valid, and the one attacking validity has the burden of proving invalidity by clear and convincing evidence.") "Clear and convincing evidence" is evidence that produces in the mind of the trier of fact an "abiding conviction" that the truth of the factual contention is highly probable. *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461 (Fed. Cir. 1988).

Similarly, in the § 146 action this Court can reverse the Board's decision that those claims of the '071 patent are valid only if CGI (or TKT) presents evidence that "in character and

amount" carries "thorough conviction." *Morgan v. Daniels*, 153 U.S. 120, 125 (1894); *Velsicol Chem. Corp. v. Monsanto Co.*, 579 F.2d 1038, 1042 (7th Cir. 1978); *Cody v Aktiebolaget Flymo*, 452 F.2d 1274, 1278 (D.C. Cir. 1971). Consequently, there is no reason to believe that CGI's efforts to invalidate the claims of the '071 patent will somehow "prejudice" TKT.

TKT's argument that it will be "prejudiced" by having the patent infringement action joined with the § 146 action is also contradicted by what we now know about TKT and CGI's relationship. CGI and TKT are obligated under the Agreement to consult and assist each other both with actions relating to interferences involving the '390 application (*i.e.*, the § 146 action here) and in patent infringement actions. (*See* Section III, ¶¶ 9-11, *supra*.) Unless CGI was in breach of the Agreement, TKT already participated in the prosecution of the '390 application and participated in the interference that is at issue in the § 146 action here. (*See id.* at ¶ 12.) The facts bear this out: for example, as noted above, TKT's Vice-President served as a primary witness for CGI in the interference. (*See id.* at ¶ 13.)

TKT argues that these provisions in the Agreement (which it never mentioned in its prior submissions and representations to this Court) do not give TKT "control" over the § 146 action. But ARS need not show that TKT "controlled" any aspect of the underlying interference or that it will "control" the § 146 action in order to establish that joinder is proper here. ARS merely needs to show that it has a right to relief against the defendants "in respect of or arising out of" logically related transactions or occurrences, and that there will be at least one common question of law or fact. ARS has done that. TKT's assertions of potential "prejudice" should be rejected.

### 2. TKT's accusations of improper motive are incorrect and irrelevant

TKT accuses ARS of suing TKT for patent infringement simply for the purpose of keeping the action against CGI here in Massachusetts, or to support transfer of the D.C. action to this Court. (Motion to Dismiss at pp. 2 and 14.) ARS did no such thing. ARS is suing TKT for

15

infringement of the '071 patent because TKT has been infringing that patent for several years. ARS did not bring the infringement action earlier because the '071 patent was involved in the interference. Now that the Patent Office has twice found ARS's claims to be patentable, ARS is asserting those claims against TKT. ARS filed the action against TKT in this Court because this is where TKT is located, and this is where TKT has made and/or used the methods, DNA constructs, and cell lines that infringe the claims in the '071 patent. There is nothing suspect about ARS's motives or conduct in filing these actions in this Court.

In any event, ARS's motives are irrelevant. Because the two actions are logically related and involve common questions of law and fact, they meet the standard for permissive joinder under Rule 20(a), and TKT's motion to dismiss should be denied.

### 3. The action against TKT is not "premature"

TKT argues that even if the actions are properly joined, the action against TKT should be dismissed as "premature." TKT speculates that resolution of the § 146 appeal "could well dispose of" the infringement claim against TKT, so there is "little, if any, justification in permitting Count II to be brought now against TKT." (Motion to Dismiss at p. 14.) In support of this speculation, TKT cites the *Bayer v. Novartis* and *Wireless Spectrum v. Motorola* cases. But the holdings in those cases do not apply here. As TKT's own descriptions of those cases reveal, they dealt with the situation where the patent being asserted in the patent infringement action was concurrently involved in an interference. That is certainly not the situation here. Far from it: the '071 patent has already been through, and survived, the interference. The Patent Office has already found (twice) that each of the claims ARS is asserting against TKT here is patentable. The action against TKT is in no way "premature."

**E.    If ARS had filed these actions separately, they could be consolidated**

ARS brought the actions against CGI and TKT in a single case because that was the most efficient manner in which to ensure that only one judge would have to (i) learn the underlying science, (ii) review and analyze the '071 patent, the '390 application, and their prosecution histories; (iii) review the voluminous record in the interference; (iv) review and analyze the prior art, and (v) address and resolve the many identical issues of law and fact that will inevitably be at issue in both actions. Conducting pre-trial activities in the two actions together will also be more efficient for the parties, because they will be able to coordinate the overlapping documentary and deposition discovery relating to the '071 patent, the '390 application, and the interference proceeding.

Alternatively, ARS could have filed these actions separately, then moved to consolidate them under Fed. R. Civ. P. 42(a). That rule requires only that the actions be filed in the same district and involve common questions of fact or law. Those requirements are easily met here, as explained above. Where the same patent is at issue in two actions, where no defendant will be prejudiced by consolidation, where consolidation will prevent duplicative efforts by the Court and counsel during discovery and motion practice, consolidation is justified:

> There is no indication that any defendant will be prejudiced by pretrial consolidation. On the other hand, pretrial consolidation will prevent duplicative efforts by the Court and counsel. Since the same patent is at issue in each of the actions, it is probable that the same documents and technical drawings will be solicited from plaintiffs. It is also likely that defendants will want to depose the same persons. Thus, efficiency will be promoted by coordinating discovery. Common briefing and hearing schedules can be set which will facilitate the supervision of discovery, and eliminate the need to consider like arguments more than once.

*Magnavox Co. v. APF Electronics Inc.*, 496 F. Supp. 29, 32-33 (N.D. Ill. 1980).

Because the actions against CGI and TKT could have been consolidated if filed separately (and could yet be consolidated if TKT's motion to dismiss were to be granted), it does

17

not make sense to dismiss the action against TKT. Rather, it makes sense to keep these actions together for coordinated pre-trial activities, then conduct separate trials pursuant to Fed. R. Civ. P. 42(b).

## V.    CONCLUSION

The two actions in this case are properly joined because (i) the same '071 patent is at issue in each action and resolution of each action involves common questions of law and fact; (ii) TKT is a proper defendant in the § 146 action based on its status as an exclusive licensee under the involved '390 application; (iii) Fed. R. Civ. P. 21 expressly states that "misjoinder of parties is not ground for dismissal of an action"; and (iv) TKT's arguments regarding "unfair prejudice" and "prematurity" are meritless. This Court should therefore deny TKT's Motion to Dismiss.

                                                       Respectfully submitted,

Date: March 2, 2005                     NIXON PEABODY LLP

                                                       By: /s/ Fred A. Kelly, Jr.
                                                           Fred A. Kelly, Jr.
                                                           BBO No. 544046
                                                           100 Summer Street
                                                           Boston, MA 02110
                                                           Tel: 617-345-1000
                                                           Fax: 617-345-1300

                                        MARSHALL, GERSTEIN & BORUN LLP
                                           Michael F. Borun
                                           Kevin M. Flowers, Ph.D.
                                           Bradford P. Lyerla
                                           William K. Merkel, Ph.D.
                                           Matthew C. Nielsen
                                           Cullen N. Pendleton, Ph.D.
                                           6300 Sears Tower
                                           233 S. Wacker Drive
                                           Chicago, Illinois 60606-6357
                                           Tel: (312) 474-6300
                                           Fax: (312) 474-0448

                                      Attorneys for Plaintiff Applied Research Systems
                                      ARS Holding, N.V.

806063v1