# **Exhibit A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| APPLIED RESEARCH HOLDING SYSTEMS ARS HOLDING, N.V., | ) ) ) ) | C.A. No. 04 11810 MLW |
| Plaintiff, | ) ) |  |
| CELL GENESYS, INC. AND TRANSKARYOTIC THERAPIES, INC., | ) ) ) |  |
| Defendants | ) ) |  |

**DEFENDANT TRANSKARYOTIC THERAPIES, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Transkaryotic Therapies, Inc. ("TKT") submits this Reply in further support of its motion to dismiss the Amended Complaint for misjoinder ("TKT Motion to Dismiss"). It is submitted to correct the inaccurate statements of fact and law contained in the most recent submission of plaintiff Applied Research Holding Systems ARS Holding NV ("ARS").

On August 19, 2004, ARS brought a single count Complaint in this Court ("Count I") against defendant Cell Genesys, Inc. In Count I, ARS sought review of a June 24, 2004, Decision of the Board of Patent Appeals and Interferences (the "Board" and the "Decision"). The Complaint did not mention TKT.

Next, after ARS learned that Cell Genesys was "first to file" a parallel § 146 proceeding before Judge Bates in Washington, D.C., ARS moved to transfer venue to Massachusetts. To bolster its transfer motion, ARS amended its Complaint in Massachusetts. Specifically, on August 30, 2004, ARS filed a First Amended Complaint ("Amended Complaint") that asserted a "Count II" patent infringement claim against TKT. ARS's fairly obvious goal was to use TKT to create a "local interest" to justify transfer to Massachusetts.

1

But the Amended Complaint was fatally flawed. It misjoined TKT, and it lacked a jurisdictional basis for suing Cell Genesys. TKT moved to dismiss Count II of the Amended Complaint on the ground of misjoinder. Cell Genesys separately moved to dismiss Count I for lack of personal jurisdiction.

With its Massachusetts cases potentially slipping away, ARS responded by making a counter-motion for *discovery* ("Discovery Motion"). In its Discovery Motion, ARS repeatedly admitted that it could *not* plead a basis for either Count I or Count II, but rather that discovery was "required" so that ARS could attempt to find a factual basis for joining TKT to the lawsuit, as well as for obtaining personal jurisdiction over Cell Genesys. (Discovery Motion, p. 2; *see also* Discovery Motion, p. 5 (acknowledging that there are "questions" as to whether Count I and Count II "arise from or relate to common transactions or occurrences"); and p. 6 (acknowledging that ARS does not know whether Count I and Count II are "sufficiently related to satisfy the requirements of Fed. R. Civ. P. 20 and 21").[1])

Things got worse for ARS when Judge Bates in D.C. denied ARS's motion to transfer venue of Cell Genesys's case to Massachusetts.

Having lost its motion to transfer venue, ARS changed tactics. Thus, on March 2, 2005, ARS filed an opposition to TKT's Motion to Dismiss ("Opposition"), an opposition it had previously conceded in its Discovery Motion would be futile on the present record. In its Opposition, ARS now argues the joinder question on the merits, and asserts that (despite its prior Discovery Motion) the "present record is sufficient" to satisfy the joinder requirements of the Federal Rules. (Opposition, p. 1.) In fact, for reasons stated in its previous papers and addressed below, TKT has been misjoined and should be dismissed from the case.

---

[1] The first citation is to ARS's Discovery Motion itself, rather than the supporting memorandum of law. Remaining citations are to the supporting memorandum of law.

2

### I.  TKT is not a party to the § 146 action.

In its original Complaint, Amended Complaint, and Discovery Motion, ARS never asserted that TKT was a party to Count I.  In its most recent Opposition, ARS now does so repeatedly.  (E.g., Opposition, p. 12.)  ARS's argument is incorrect, for at least three reasons.

First, ARS's new-found assertion that TKT is a party to Count I is wrong as a matter of procedural fact:  TKT is not named as a party to the Count I interference appeal and was not a party to the interference proceeding before the Board which is being appealed.  If ARS intended to make TKT a party to Count I, it could have so moved; it did not.

Second, it does not appear that TKT could become a party even if ARS were now to move for joinder.  The language of § 146 limits such action to a "party in interest" (*see* 35 U.S.C. § 146) and ARS has not pleaded nor shown that TKT is such a party.

Third, even assuming *arguendo* that TKT is a "party in interest" that could otherwise have been joined, it is too late, as a matter of law, to do so now.

A "party in interest" within the meaning of § 146 is "a party whose interest is of such a nature that it would be improper or impossible to adjudicate the matter without his presence, viz., an indispensable party."  *Minnesota Min. & Mfg. Co. v. Chavannes Indus. Synthetics*, 128 F. Supp. 659, 661 (D. Del. 1955).

A non-exclusive licensee generally does not meet this definition.  *See Turchan v. Bailey Meter Co.*, 19 F.R.D. 201, 207 (D. Del. 1956).  The Amended Complaint alleges that TKT merely possesses a "license" and has a "business relationship" with Cell Genesys.  (*See* Amended Complaint ¶ 9.)  Accordingly, even if the facts alleged in the Amended Complaint are all true, TKT is not a "party in interest" to the § 146 action.

3

ARS asserts in its Opposition (but not in the Amended Complaint) that TKT is a party in interest because it is *"the 'exclusive'"* licensee to the '390 Application. (Opposition, p. 3 ¶ 9 and p. 12, emphasis added.) ARS is incorrect on both the facts and the law.

On the facts, TKT is not an exclusive licensee to the '390 Application in any relevant respect. The License is in fact "exclusive" as to certain products, but "non-exclusive" as to others. Indeed, TKT has "no license or other rights" as to certain specified applications. (*See* Discovery Motion, Ex. F ¶ 2.1.) ARS utterly fails to explain how this licensing language renders TKT an "exclusive licensee" for the purposes of the interference. ARS's contention that TKT is "the" exclusive licensee is incorrect on its face.

Furthermore, the License expressly vests the right to initiate and prosecute the interferences with Cell Genesys alone. TKT's rights in an interference are limited to the "opportunity to provide comments" to Cell Genesys concerning "official communications related to such interference." (*See* Discovery Motion, Ex. F ¶ 6.2.) As noted, an "indispensable" party for § 146 purposes is one whose absence would make it "improper or impossible" to resolve the dispute. The very terms of the License disqualify TKT from such status; ARS simply cannot be subject to an additional interference initiated by TKT on the '390 Application. Put another way, there is no issue in the interference whose final resolution depends on TKT's presence. TKT is thus not a "party in interest." *Cf. DuPont Co. v. Celanese Corp.*, 285 F. Supp. 819, 823 (S.D.N.Y. 1968) (purpose of joining indispensable parties to a § 146 action is to ensure that "all issues relating to the questions of priority and entitlement to a patent may be . . . finally resolved") (internal quotation omitted); *Parker Rust-Proof Co. v. W. Union Tel. Co.*, 105 F.2d 976, 980 (2d Cir. 1939) (indispensable parties must be joined in a interference action "to accomplish justice between all the parties in interest"); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222

4

F.3d 1372, 1381 (Fed. Cir. 2000) (generally, patent holders and their exclusive licensees are joined in patent litigation to avoid the possibility of duplicative litigation brought by each independently).

As to ARS's legal argument, TKT is aware of no authority holding that status as an "exclusive licensee" is *by itself* enough to render a licensee an indispensable party under § 146. Thus, even if TKT were an "exclusive licensee" for relevant purposes, it would still not be an indispensable party.

The *Robinson* case cited by ARS contains some imprecise language on which ARS relies, but does not contain useful details and does not hold that "exclusive licensee" status alone is sufficient to render the licensee a "party in interest."[2] The recent case of *Incyte Pharm., Inc. v. Affymetrix, Inc.* suggests that exclusive licensee status is *not* itself enough, although such status "support[s]" a finding of party status. 131 F. Supp. 2d 1154, 1157-58 (N.D. Cal. 2000) (relying on a number of factors including (a) ownership of "exclusive rights"; (b) that Incyte had requested the interference before the Board; (c) that Incyte was listed as a party of interest in the notice filed with the Board; and, (d) that during the interference, the Board "implicitly acknowledged" Incyte as the "real party in interest.").

Some case law uses the term "exclusive licensee" loosely, including in instances in which the licensee is essentially an *assignee.* Accordingly, sound bites like those in *Robinson* should

---

[2] Notably, in *Robinson v. Wayne*, 136 F.2d 767, 769 (D.C. Cir. 1943), the appellants had actually made a motion to join the licensee. ARS has not done so here.
   In the other case that ARS cites—*Parker Rust Proof Co.*—the Court went into significant detail in analyzing the terms of the patent license before determining that the licensee (Mr. Curtin) was an indispensable party. More importantly, the Court ultimately held that it was Curtin's option to intervene if he wished, or otherwise that the case could proceed without him. As a practical matter, Curtin was thus deemed *not* to be indispensable to the suit. *See Parker Rust-Proof Co.*, 105 F.2d at 978-80.
   It also bears noting that both cases cited by ARS involved predecessor statutes to 35 U.S.C. § 146. Based on presently identified issues, TKT is unaware of any relevant substantive change brought about by the enactment of § 146, and agrees with ARS that citation to, and reliance on, these predecessor cases is appropriate for the issues now being discussed. TKT thus cites to such cases interchangeably with the later cases brought specifically under § 146.

5

not be relied upon for the expansive proposition that any license that has any aspect of "exclusivity" always creates an indispensable party to an interference. *Cf., e.g.*, *Dooley Improvements, Inc. v. Motor Improvements, Inc.*, 1 F. Supp. 641, 642 (D. Del. 1932) (exclusive licensee was an "owner" under the particular terms of the license), *aff'd* 66 F.2d 553 (3d Cir. 1933); *Nachod & U. S. Signal Co. v. Automatic Signal Co.*, 105 F.2d 981, 984 (2d Cir. 1939) (holding that exclusive licensee was an indispensable party, but not providing details of the license grant).

In application, the label "exclusive" is not particularly helpful, and whether an "exclusive" licensee has an interest sufficient to make it a "party in interest" will vary from case to case. *Nachod*, for example, appears to define "exclusive licensee" for these purposes as one who "posses[es] complete rights against any person under his license." *Nachod*, 105 F.2d at 983. ARS does not (and cannot) allege that TKT possesses any such license. *See also, e.g., Radio Corp. of Am. v. Int'l Standard Elec. Corp.*, 232 F.2d 726, 729 (3d Cir. 1956) (whether an assignee is a party in interest depends on "the true intent of the parties" as manifested in the language of the assignment); *Intellectual Prop. Dev. v. TCI Cablevision*, 248 F.3d 1333, 1342-45 (Fed. Cir. 2001) (distinguishing between bare licenses, exclusive licenses, and exclusive licenses that transfer all substantial rights).

Moreover, even assuming that TKT is both an "exclusive licensee" and a "party in interest," there are nevertheless at least two bars to joining TKT to Count I. First, TKT was not joined within 60 days of the Board's Decision. *See* 35 U.S.C. § 146 (action must be commenced "not less than sixty days" after "the decision of the Board"). Assuming TKT is a "party in interest," failure to join TKT within 60 days is a jurisdictional bar that cannot be cured retroactively:

> The filing of a suit within the statutory period against all indispensable parties is a condition to the substantive right of review created by Section 146, and a condition upon which the court's jurisdiction depends. *The jurisdictional defect cannot be cured by bringing in an additional party after the statutory period has elapsed.*

*Union Carbide Corp. v. Traver Inv., Inc.*, 201 F. Supp. 763, 767 (S.D. Ill. 1962) (emphasis added) *following Klumb v. Roach*, 151 F.2d 374, 375, 380 (7th Cir. 1945) (failure to join "indispensable part[y] known to the plaintiff" within statutory time limit constitutes an incurable jurisdictional defect); *see Shell Development Co. v. Universal Oil Products Co.*, 157 F.2d 421, 425 (3d Cir. 1946) (court is without jurisdiction if indispensable parties are not joined within statutory time limit) *aff'g* 61 F. Supp. 925 (D. Del. 1945).[3]

Second, it is generally improper to join *any* party to an appellate proceeding if that party was not a party to the underlying trial. Appellate joinder is inherently prejudicial and is hence used sparingly. *See Prima Tek II*, 222 F.3d at 1381 (denying motion to join indispensable party to appeal; noting prejudice due to that party's absence from the proceedings below and emphasizing, "Our authority to join or dismiss a party on appeal should be exercised sparingly") (internal quotation omitted). ARS has neither made nor supported any argument that would justify adding TKT to what is in essence an appellate review of an original proceeding to which TKT was not a party. Indeed, ARS's election not to attempt to join TKT at the "trial" level constitutes a forfeiture of any right it would otherwise have had to join TKT now. *Cf. Mills v. State of Maine*, 118 F.3d 37, 53-54 (1st Cir. 1997) (denying motion to add a new defendant to an appeal for the purpose of overcoming a jurisdictional bar; noting that plaintiffs had foregone the opportunity to amend at the trial level); *Microsystems Software, Inc. v. Scandinavia Online AB*,

---

[3] *Shell* provides a useful illustration that labels such a "exclusive licensee" are not themselves dispositive of whether a party is indispensable to an interference action. In *Shell*, the absent defendant received a non-exclusive license, yet was deemed "indispensable" due to the *other* rights granted by the license, including the right to grant releases for past infringement and to grant non-exclusive licenses to others. *See Shell*, 61 F. Supp. at 927-928.

226 F.3d 35, 41(1st Cir. 2000) (strategic choice not to intervene at trial level "works a forfeiture of any claim to appellate standing. Those who aspire to litigate issues cannot have it both ways[.]").

In sum, ARS needs to make a motion to amend its Complaint to allege facts sufficient to show that TKT is a "party in interest" such that it could be joined in the § 146 action; the current Amended Complaint does not purport to bring such action against TKT and, in any event, does not allege facts that state a claim against TKT. It appears that such motion would be futile—both because TKT is not a "party in interest" and because ARS has forfeited any rights it would otherwise have had to bring TKT into the interference.

## II.  ARS still has no legitimate argument for joinder.

None of the key "facts" that ARS relies on in its Opposition to justify joinder are actually alleged by ARS in its Amended Complaint. But even ignoring that procedural defect, ARS still has proffered no basis for joining Count II, and TKT, to this suit.

First, ARS does not even attempt to meet the "same transaction" prong of the relevant test under First Circuit law, namely that the complaint allege "some right to relief" as to the joined party (TKT) that "grow[s] out of the events in question" with respect to the original party (Cell Genesys). *See Carroll v. Bhd. of R.R. Trainmen*, 417 F.2d 1025, 1027 (1st Cir. 1969).

Instead, ARS invents a new standard—"logical relationship"—that is contrary to law. Indeed, in the (only) case that ARS cites in favor of its fabricated "logical relationship" test, the trial court found that the parties at issue *were misjoined*. *See DirectTV v. Delaney*, 2003 U.S. Dist. LEXIS 24262, *13-18 (N.D. Ill. 2003). *Delaney* concerned alleged piracy of satellite services. The plaintiff argued that the case against the multiple defendants arose out of the "same transaction" because the evidence in the case was obtained by a single writ of seizure

from a single warehouse against defendants who had purchased illegal devices "within a narrow time frame." These facts readily establish a "logical relationship" as ARS would define it, yet the court in *Delaney* found that the cause of action with respect to the defendants did *not* arise out of the same transaction, and hence that the defendants were misjoined. *Id*. ("[T]here is nothing fundamentally unfair about DirectTV litigating what are really separate claims in separate lawsuits").

As to the second prong of the joinder test, ARS asserts in essence that there is a common question of fact and law because some of the proceedings for Count I and Count II would be of the same *type*, i.e., that both counts will involve claim construction and validity determinations. But the same *type* of proceeding does not mean there will be a common question of law or fact. ARS does not meaningfully dispute (nor could it) that Count I and Count II involve: (i) different patent claims, (ii) different evidence, (iii) different burdens of proof, and (iv) different standards of review.[4]

In its Opposition, ARS continues to focus on the License between Cell Genesys and TKT. But the License is not particularly relevant to the joinder question. ARS points to boilerplate license provisions and tries to spin them into some kind of improper scheme between Cell Genesys and TKT. But ARS never explains how innocuous provisions such as the duty to "cooperate" in litigation translates into a "relationship" that is pertinent to the joinder inquiry. ARS cites no case law and presents no meaningful argument why the licensing relationship—be it sinister as ARS surmises, or run-of-the-mill as the actual License language indicates—satisfies

---

[4] ARS's assertion that "CGI and TKT have essentially the same burden of proof" on validity questions (Opposition p. 14) is simply incorrect, for reasons explained in TKT's previous submissions.

9

Rule 20 joinder requirements.[5]  Count I involves a patenting dispute.  Count II involves an infringement dispute.  The fact that the same patent is involved in both counts and that the defendants to Count I and Count II have a "business relationship" is not enough to satisfy the joinder requirements of the Federal Rules.  Having now filed two complaints and two sets of motion papers, ARS has still failed to make a coherent argument to the contrary, let alone to support such argument with case law.

ARS also erroneously contends that TKT will not be prejudiced by the misjoinder.  (Opposition, pp. 13-15.)  In fact, TKT has already been prejudiced by ARS's conduct.  For example, TKT has already been forced to oppose a discovery motion that ARS first said was "required" but now contends is unnecessary.  If the case proceeds with Count II, TKT will have to participate in discovery and other proceedings that have nothing to do with ARS's infringement claims.  ARS repeatedly assures the Court that there is nothing "confusing" about having Count I and Count II together, and rhetorically asks "who will be confused?" (Opposition, p. 14.)  Yet ARS has already managed to confuse at least itself, in that it brought a discovery motion against TKT that it now admits was baseless.  If the case proceeds, this type of confusion will only repeat, resulting in a waste of party and judicial resources.

Finally, ARS's attempt to distinguish *McFarlane v. Resinite Corp.*, 273 F. Supp. 224 (N.D. Ill. 1967) is misplaced.  (Opposition, pp. 6-7.)  The allegedly distinguishable points raised by ARS are not significant.  *McFarlane* involved a motion to sever rather than dismiss; however, the power to dismiss lies in the Court's discretion and this is not a categorically different remedy.  The fact that priority was determined by the Board in *McFarlane* is meaningless.

---

[5] The same point applies with respect to the fact that a TKT employee testified as a third-party witness before the Board.  Such testimony does not, and cannot, render TKT a "party" to the interference, either before the Board or now on appeal.  Nor does such testimony help satisfy the joinder requirements of the Federal Rules.  Witnesses cannot be "joined" to a lawsuit.  *See, e.g.*, *Klecher v. Metro. Life Ins. Co.*, 331 F. Supp. 2d 279, 288 (S.D.N.Y. 2004) ("A movant may not add a party simply on the ground that the party has information relevant to the case.").

### III. ARS's Opposition contains numerous statements that are incorrect and self-contradictory.

ARS's Opposition is not only internally inconsistent, but also contradicts representations that ARS has previously made to this Court and to Judge Bates in the D.C. § 146 action. The Opposition also contains many statements that are facially wrong, some as a matter of fact and some as a matter of law. ARS's inability to be consistent underscores the weakness of its position, and weighs in favor of dismissing TKT from this action. Examples of ARS's misstatements include:

**1.** "ARS's motives [in adding Count II] are irrelevant." (Opposition, p. 16.) **Fact:** The facts indicate that ARS added Count II to bolster its argument that Cell Genesys was subject to jurisdiction in Massachusetts, and to convince Judge Bates that there was a "local interest" here (i.e., TKT) that warranted transferring Cell Genesys's appeal to Massachusetts. This Court has the discretion to dismiss Count II. TKT respectfully submits that ARS's evident motive for adding Count II to the pre-existing § 146 action is relevant to how this Court should exercise its discretion.

**2.** "ARS did not bring the infringement action earlier because the '071 patent was involved in the interference." (Opposition, p. 16.) **Fact**: ARS's contention does not explain why TKT was omitted from the original Complaint, which ARS filed *after* the Decision of the Board.

**3.** ARS's infringement claim against TKT is *not* premature because the '071 patent "has already been through, and survived, the interference." (Opposition, p. 16; *see also* p. 8 ("the interference has already been decided" in ARS's favor).) **Fact**: The interference is not over, but rather is in the middle of separate appeals filed by *both* parties, namely ARS and Cell Genesys. If Cell Genesys prevails on its appeal, i.e., its § 146 action, ARS will have no claim of infringement against TKT.

11

**4.** "The claims in the two actions [i.e., Count I and Count II] will thus completely 'overlap.'" (Opposition, p. 13.) **Fact:** In moving to transfer venue, ARS unequivocally confirmed to Judge Bates that the only patent claims it was asserting against TKT were "the claims of the '071 patent that survived the Interference," i.e., those *not* at issue in Count I of the Massachusetts complaint. (TKT Motion to Dismiss, Ex. C, p. 18.)[6]

**5.** "ARS need not show that TKT 'controlled' any aspect of the underlying interference." (ARS Opposition, p. 15.) **Fact**: In its Discovery Motion, ARS raised only one ground to supposedly justify joining TKT, namely that TKT allegedly had "control" over Cell Genesys with respect to the interference. (ARS Discovery Motion, p. 9.) ARS now essentially concedes TKT's point that TKT did not and does not control the interference; with its one and only argument for joinder now admittedly disproved, ARS pretends that such argument was essentially irrelevant all along.

**6.** "TKT. . . will undoubtedly argue that all of the claims of the '071 patent are invalid." (Opposition, p. 10). **Fact:** The Board has already ruled that 38 claims of the '071 patent are invalid, and those claims are not asserted against TKT.

**7.** "The Agreement reveals that TKT played a significant role in the prosecution of CGI's '390 application." (Opposition, p. 3.) **Fact**: Cell Genesys filed its patent application in August of 1993, nearly nine years *before* it entered the License with TKT (*See* Amended Compl., Ex. 2, Board Decision, p. 3.) The interference was initiated more than six years *before* the License. (*See* TKT's opposition to Discovery Motion, p. 7 & n.2.)

**8.** TKT has been "caught soft-pedaling its ongoing relationship" with Cell Genesys. (Opposition, p. 10.) **Fact:** TKT has based its motion to dismiss on the facts pleaded in the

---

[6] ARS attempts to cover-up its inconsistent representations by contending that CGI will *counterclaim* to invalidate claims that are not at issue against it in Count I. (Opposition, p. 13.) ARS's speculation is not a proper basis for denying TKT's motion to dismiss.

Amended Complaint and publicly available documents cited *by ARS* in its papers.  It was ARS that strategically chose to omit publicly available facts from its pleadings, and then litigate through motion practice "facts" that it evidently cannot allege in good faith in its pleadings.

    **9.**  "Misjoinder is not grounds for dismissal" of an action.  (Opposition, p. 11.)  **Fact:** This statement is technically true but misleading.  TKT is not seeking to dismiss the "action," but merely to dismiss a misjoined party, namely itself.

    **10.**  The *Minnesota Min. & Mfg. Co. v. Norton Co.*, 929 F.2d 670 (Fed. Cir. 1991) ("*3M*") case is "particularly instructive" to rebut TKT's point that patent infringement cases and interference actions are incompatible.  (Opposition, p. 7.)  **Fact:**  *3M* has little to do with this case.  In *3M*, it was the accused infringer (3M) who brought suit for a declaration of non-infringement in order to resolve accusations that the patent-holder had been making to 3M's customers.  The interference was a separately pending matter.  3M was a party to both the interference and the separate infringement case.  The Federal Circuit held that a declaratory judgment action brought by the accused infringer (3M) was not premature, and that the trial court erred in dismissing the case.  *See 3M*, 929 F.2d at 671, 674.  Here, TKT is not seeking dismissal because of the existence of a separately pending interference; TKT is seeking dismissal because it has been misjoined *into* the separately pending interference.  Indeed, the other case that ARS cites for the same proposition, *Biochem Pharma, Inc. v. Emory Univ.*, 148 F. Supp. 2d 11 (D.D.C. 2001) (Opposition, p. 7), affirmatively supports TKT's position.  In *Biochem* the D.C. trial court consolidated two § 146 actions relating to the same interference, and them transferred them to a Georgia trial court in which a *separate* patent infringement case was pending.  Notably, the infringement litigation in Georgia was a *separate* action from the § 146 actions and had been *stayed* pending resolution of the interference.  *Biochem*, 148 F. Supp. 2d at 14.  If the

same relief were to be granted here, Judge Bates would transfer Cell Genesys's § 146 action to this Court, this Court would consolidate the two § 146 actions, and the patent infringement claim against TKT would either be severed and stayed, or dismissed outright.

**IV. Conclusion.**

For the reasons stated here and in TKT's previous submissions, TKT's motion to dismiss should be granted and the Court should grant TKT whatever additional relief is just and appropriate under the circumstances.

                TRANSKARYOTIC THERAPIES, INC.,

                By their attorneys,

                /s/  David B. Bassett_____
                David B. Bassett (BBO # 551148)
                Shann Kerner (BBO # 564537)
                Donna M. Meuth (BBO # 645598)
                Stephen M. Muller (BBO # 646699)
                Gregory F. Noonan (BBO # 651035)
                Wilmer Cutler Pickering Hale and Dorr LLP
                60 State Street
                Boston, Massachusetts 02109
                (617) 526-6000

Dated: March 25, 2005

## CERTIFICATE OF SERVICE

I, Gregory F. Noonan, hereby certify that a true copy of the above document has been delivered by hand or first-class mail to counsel of record not otherwise served electronically.

/s/   Gregory F. Noonan_____

Dated:  March 25, 2005

US1DOCS 5020404v1