**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

APPLIED RESEARCH SYSTEMS ARS   )
HOLDING, N.V.,                             )
                                                        )
            Plaintiff,                      )   C.A. NO. 04 11810 MLW
        v.                                      )
                                                        )
CELL GENESYS, INC. AND                )
TRANSKARYOTIC THERAPIES, INC.,  )
                                                        )
            Defendants.                   )


**PLAINTIFF'S OPPOSITION TO CELL GENESYS, INC.'S MOTION TO DISMISS OR
TRANSFER**

## TABLE OF CONTENTS

I.     INTRODUCTION ..........................................................................................1

II.    THE LEGAL STANDARDS FOR PERSONAL JURISDICTION ...................................1

    **A.**    Amenability to service of process...........................................................2

    **B.**    Due Process.........................................................................................4

III.   CGI IS SUBJECT TO GENERAL PERSONAL JURISDICTION IN MASSACHUSETTS...........................................................................................5

    **A.**    CGI's motion fails to address the issue of general personal jurisdiction................5

    **B.**    Counsel for CGI accepted service of process ...........................................6

    **C.**    CGI is amenable to service of process under § 38....................................7

        1.    CGI regularly does business in Massachusetts ...............................7

        2.    CGI regularly tests products in Massachusetts. .............................8

        3.    CGI regularly solicits business in person in Massachusetts. ......................9

    **D.**    Exercise of jurisdiction over CGI satisfies Due Process .......................11

IV.   CGI IS SUBJECT TO SPECIFIC JURISDICTION HERE ...............................................12

    **A.**    CGI effectively concedes the Due Process issue ...................................12

    **B.**    CGI purposefully directs its activities at Massachusetts........................12

    **C.**    This action relates to CGI's activities in Massachusetts........................15

    **D.**    CGI has not shown that jurisdiction is neither reasonable nor fair......................16

V.    ARS'S MOTION FOR JURISDICTIONAL DISCOVERY ...............................................17

VI.   THIS COURT SHOULD DENY CGI'S MOTION TO TRANSFER...............................17

    **A.**    The legal standard for transfer ...........................................................17

    **B.**    CGI has failed to show that the § 1404 factors warrant transfer ...........................18

        1.    Judicial economy weighs strongly against transfer ...................................18

        2.    Massachusetts' interest in this action weighs against transfer..................19

        3.    ARS's choice of forum weighs against transfer ......................................19

i

4.      The convenience of the parties and witnesses does not favor transfer ......20

5.      The location of documents and proofs does not favor transfer.................20

6.      This Court's familiarity with the relevant law weighs against transfer.....20

VII.    CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*3D Sys., Inc. v. Aarotech Labs., Inc.*,
  160 F.3d 1373 (Fed. Cir. 1998) ..................................................................... 1, 5

*Akro Corp. v. Luker*,
  45 F.3d 1541 (Fed. Cir. 1995) ............................................................ 5, 12, 13, 15

*Biogen, Inc. v. Schering, Inc.*,
  954 F. Supp. 391 (D. Mass. 1996) ............................................................... 18

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ............................................................................... 5, 14

*Campbell v. Frontier Fishing & Hunting, Ltd.*,
  405 N.E.2d 989 (Mass. App. 1980) ........................................................ 6, 9, 10

*Cognex Corp. v. Lemelson Med., Educ. & Research Found.*, L.P.,
  67 F. Supp. 2d 5 (D. Mass. 1999) .............................................................. 12, 13

*Corbin v. Bastian Blessing Co.*,
  265 F. Supp. 338 (D. Mass. 1967) ................................................................. 11

*Davox Corp. v. Digital Sys., Int'l, Inc.*,
  846 F. Supp. 144 (D. Mass . 1993) ................................................................ 18

*Daynard v. Ness*,
  290 F.3d 42 (1st Cir. 2002) .......................................................................... 12

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innov. Found.*,
  297 F.3d 1343 (Fed. Cir. 2002) .................................................................. 2, 13

*Elecs. For Imaging, Inc. v. Coyle*,
  340 F.3d 1344 (Fed. Cir. 2003) ...................................................... 2, 12, 14, 16

*Freedom Wireless, Inc. v. Boston Commun. Grp., Inc.*,
  218 F. Supp. 2d 19 (D. Mass. 2002) .............................................................. 12

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
  466 U.S. 408 (1984) ...................................................................................... 5

*Hoffman-La Roche, Inc. v. Kwasnik*,
  2003 Tex. App. LEXIS 2561 (Tex. App. 2003) ................................................ 8

*Howse v. Zimmer Mfg. Co., Inc.*,
  757 F.2d 448 (1st Cir. 1985) ......................................................................... 10

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945) .................................................................................. 2, 4

*Jet Mfg. Co., Inc. v. Sanford Ink Co.*,
  112 N.E.2d 252 (Mass. 1953) ........................................................................ 11

*Kleinerman v. Luxtron, Corp.*,
  107 F. Supp. 2d 122 (D. Mass. 2000) ............................................................ 18

iii

*LSI Indus. Inc. v. Hubbell Lighting, Inc.,*
  232 F.3d 1369 (Fed. Cir. 2000) ................................................................ 2, 5, 12

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,*
  142 F.3d 26 (1st Cir. 1998) ................................................................................ 15

*Moldflow Corp. v. Simcon, Inc.,*
  296 F. Supp. 2d 34 (D. Mass. 2003) ................................................................... 12

*Nova Biomedical Corp. v. Moller,*
  629 F.2d 190 (1st Cir. 1980) .............................................................................. 13

*Olin Corp. v. Fisons PLC,*
  1998 U.S. Dist. LEXIS 21967 (D. Mass. 1998) ..................................................... 1

*Reiffin v. Microsoft,*
  104 F. Supp. 2d 48 (D. D.C. 2000) ...................................................................... 18

*Reynolds v. Missouri, K & T Ry. Co.,*
  113 N.E. 413 (Mass. 1916) ................................................................................... 6

*Ticketmaster-New York, Inc. v. Alioto,*
  26 F.3d 201 (1st Cir. 1994) ................................................................................. 15

*Trintec Industries, Inc. v. Pedre Promotional Products, Inc.,*
  395 F.3d 1275 (Fed. Cir. 2005) ........................................................................... 12

*Van Dusen v. Barrack,*
  376 U.S. 612 (1964) ............................................................................................ 17

*Veryfine Prods., Inc., v. Phlo Corp.,*
  124 F. Supp. 2d 16 (D. Mass. 2000) .................................................................... 17

*Walsh v. National Seating Co., Inc.,*
  411 F. Supp. 564 (D. Mass. 1976) ........................................................... 3, 10, 11

*Williams v. Purdue Pharma Co.,*
  2004 U.S. Dist. Lexis 10395 (D. D.C. 2004) ....................................................... 19

**Statutes**

28 U.S.C. § 1404 .............................................................................................. 17, 18

35 U.S.C. § 146 ...................................................................................................... 19

Mass. Gen. Laws. Ann., ch. 223, § 37 .................................................................. 3, 6

Mass. Gen. Laws Ann., ch. 223, § 38 ............................................................. passim

Mass. Gen. Laws Ann., ch. 223A, § 3 .................................................................. 2, 4

Mass. Gen. Laws. Ann., ch. 156D, § 15.10 .......................................................... 3, 6

Mass. Gen. Laws. Ann., ch. 156D, § 15.10(b) .......................................................... 3

**Rules**

Fed. R. Civ. P. 4 .................................................................................................................... 2

**Treatises**

16 James W. Moore, *Moore's Federal Practice* § 108.61 (3d ed. 2005) ...................................... 4

## I.    INTRODUCTION

CGI's motion to dismiss should be denied. Massachusetts law provides this Court with general personal jurisdiction over corporations that are "doing business" in Massachusetts. CGI has been "doing business" in Massachusetts for years: it tests products in Massachusetts on Massachusetts residents, it has sought out and entered into several business deals in Massachusetts with Massachusetts companies, and it continues to solicit business in Massachusetts. Consequently, CGI is subject to general personal jurisdiction here. CGI's licensing agreement with Massachusetts-based TKT regarding CGI's patent application and ARS's patent at issue in this action, and its continuing obligations under that agreement (including working with TKT in this action) also subject it to specific personal jurisdiction here.

CGI's motion to transfer this action to the District of Columbia should also be denied. Once the current § 146 action against CGI is resolved, the stay of the infringement action against TKT will be lifted. If this Court were to transfer the case against CGI to the District of Columbia it would result in two federal courts having to learn the same technology and adjudicate the same issues of claim construction and patentability of ARS's patent claims.

Because CGI is subject to personal jurisdiction in this Court and because transfer of the action to D.C. would likely waste judicial resources, CGI's motion should be denied.

## II.    THE LEGAL STANDARDS FOR PERSONAL JURISDICTION

ARS bears the burden of proving that CGI is subject to personal jurisdiction here. *Olin Corp. v. Fisons PLC*, 1998 U.S. Dist. LEXIS 21967, at *10 (D. Mass. 1998) (Wolf, J.). The law of the Federal Circuit applies to issues of personal jurisdiction in patent cases. *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998). The Federal Circuit applies a "*prima facie*" test to Rule 12(b)(2) motions, whereby "a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. For Imaging, Inc. v. Coyle*,

340 F.3d 1344, 1349 (Fed. Cir. 2003). In deciding CGI's motion to dismiss, this Court is to "constru[e] the pleadings and affidavits in the light most favorable to" ARS. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innov. Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002).

A two-prong inquiry governs the determination of whether this Court may properly exercise personal jurisdiction over an out-of-state defendant like CGI. First, CGI must be amenable to process in Massachusetts. Second, the Court's exercise of personal jurisdiction over CGI must comply with the requirements of federal Due Process as delineated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny. *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000).

### A.    Amenability to service of process

Service of process in a federal action is governed generally by Fed. R. Civ. P. 4. CGI is amenable to service if it "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district is located." Fed. R. Civ. P. 4(k)(1)(A). As the Federal Circuit has explained, "[s]atisfaction of this standard may be attained in a variety of ways." *LSI Indus.*, 232 F.3d at 1371.

Massachusetts has at least two different statutes under which an out-of-state defendant like CGI may be amenable to service of process: a "doing business" statute (Mass. Gen. Laws Ann., ch. 223, § 38), and the "long arm" statute (Mass. Gen. Laws Ann., ch. 223A, § 3).

Section 38, the "doing business" statute, allows service of process on out-of-state defendants who engage in or solicit business in Massachusetts:

> In an action against **a foreign corporation**, except an insurance company, which has a usual place of business in the commonwealth, or with or without such usual place of business**, is engaged in or soliciting business in the commonwealth,** permanently or temporarily, service may be made in accordance with **the preceding section** relative to service on domestic

2

> corporations in general, instead of upon the state secretary under
> section 15.10 of subdivision A of Part 15 of chapter 156D.

Mass. Gen. Laws. Ann., ch. 223, § 38 (emphases added).

The "preceding section," § 37 provides:

> In an action against a domestic corporation other than one
> mentioned in the preceding paragraph, service shall be made upon
> the president, treasurer, clerk, resident agent appointed pursuant to
> section 49 of chapter 156D, cashier, secretary, agent or other
> officer in charge of its business, or, if no such officer is found
> within the county, upon any member of the corporation.

Mass. Gen. Laws. Ann., ch. 223, § 37.

Under ch. 156D, § 15.10, out-of-state corporations doing business in Massachusetts can

also be served through the secretary of state:

> Every foreign corporation doing business in the commonwealth
> which has not [registered with the secretary of state] . . . shall be
> deemed to have appointed the secretary of state and his successor
> in office to be its true and lawful attorney upon whom lawful
> process in any action or proceeding may be served so long as any
> liability incurred in the commonwealth while it was doing business
> shall remain outstanding.

Mass. Gen. Laws. Ann., ch. 156D, § 15.10(b).

For service to be proper under section 38, CGI's business activities must "affect the

commerce of Massachusetts substantially." *Walsh v. National Seating Co., Inc*., 411 F. Supp.

564, 574 (D. Mass. 1976). The cause of action need not relate to CGI's contacts with

Massachusetts. *Id*. at 575 ("where the activities of the corporation had a sufficiently substantial

impact on the Commonwealth, the connection between the cause of action and the activities need

not be present"); *Campbell v. Frontier Fishing & Hunting, Ltd*., 405 N.E.2d 989, 991 (Mass.

App. 1980) ("The fact that the cause of action arose in Canada does not defeat Massachusetts'

claim to personal jurisdiction of Frontier under § 38, because this statute 'does not restrict

service on resident agents of foreign corporations to causes of action arising within the

Commonwealth.'" (quoting *Trojan Eng'g Corp. v. Green Mountain Power Corp.*, 200 N.E. 117, 120 (Mass. 1936)).

CGI may also be subject to specific personal jurisdiction under the Massachusetts "long-arm" statute, which allows service of process on out-of-state defendants for causes of action arising from in-state activity:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> (a) transacting any business in this commonwealth; . . . .

Mass. Gen. Laws Ann., ch. 223A, § 3.

However, "[s]ection 38 is independently viable and has not been supplanted by [the long-arm statute]." *Campbell,* 405 N.E.2d at 990. *See also* 16 James W. Moore, *Moore's Federal Practice* § 108.61 (3d ed. 2005):

> Before *International Shoe* and the enactment of the long-arm statutes, states exercised jurisdiction over foreign, nonqualifying corporations based on "doing business" statutes. Doing business statutes generally have remained in effect as an alternative to long-arm statutes for asserting jurisdiction over foreign corporations. While the "transacting business" provisions of enumerated-act type long arm statutes generally only provide the basis for specific jurisdiction over foreign corporations, many "doing business" statutes have been used to support general jurisdiction. Where this is true, doing business statutes may be used to obtain jurisdiction over defendants for claims arising outside the state in those states where the general long-arm statute only applies to causes of action arising from specified types of conduct within the state. Even when not used for general jurisdiction cases, the term "doing business" means some systematic or ongoing activity – enough, usually to satisfy the constitutional test for general jurisdiction and more than is necessary to constitute "transacting business" under the enumerated act statutes.

**B.    Due Process**

Federal Due Process requires that CGI must have certain "minimum contacts" with Massachusetts such that litigating the suit here does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A

defendant is subject to general personal jurisdiction in a forum where it has "continuous and systematic general business contacts." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). In such a forum, a suit may be brought against a defendant "even when the cause of action has no relation to those contacts." *LSI Indus. Inc. v. Hubbell Lighting, Inc*., 232 F.3d 1369, 1375 (Fed. Cir. 2000). General personal jurisdiction rests on the facts of each particular case. *Id*. ("Neither the United States Supreme Court nor this court has outlined a specific test to follow when analyzing whether a defendant's activities within a state are 'continuous and systematic.' Instead, a court must look at the facts of each case to make such a determination.")

In contrast, the Federal Circuit's test for specific personal jurisdiction requires that (1) the defendant purposefully directed activities at the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is not unreasonable and unfair. *3D Systems, Inc. v. Aarotech Labs., Inc*., 160 F.3d 1373, 1378 (Fed. Cir. 1998). A defendant has "purposefully directed" its activities to a forum state when it "deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

Where ARS has made a *prima facie* showing of minimum contacts under the first two prongs, the burden switches to CGI to "present a compelling case that that the presence of some other considerations would render jurisdiction unreasonable." *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995), quoting *Burger King*, 471 U.S. at 477.

## III.    CGI IS SUBJECT TO GENERAL PERSONAL JURISDICTION IN MASSACHUSETTS

### A.    CGI's motion fails to address the issue of general personal jurisdiction

By resting its entire motion to dismiss on the long-arm statute, CGI simply ignores that it

is subject to general personal jurisdiction under § 38. CGI does not dispute that its contacts are

sufficient under the Due Process Clause. Consequently, this Court need only find that CGI is

amenable to service of process under § 38 to find that CGI is subject to general jurisdiction here.[1]

### B.    Counsel for CGI accepted service of process

Although § 37 speaks of serving officers, agents and members of an out-of-state

defendant, this requirement was effectively mooted here because counsel for CGI

unconditionally accepted service on behalf of CGI. (*See* Affidavit of Fred A. Kelly, Jr., Tab 1.)[2]

Consequently, CGI waived any objection to service under §§ 37 or 38.

If CGI's counsel had not unconditionally accepted service, ARS could have served

process in Massachusetts on Dr. John Potts, who is a member of CGI's Board of Directors and a

resident of Massachusetts. (Tab 2, at A.) Service on a director of a corporation satisfies § 37.

*Campbell v. Frontier Fishing & Hunting, Ltd*., 405 N.E.2d 989, 990 (Mass. App. 1980) (director

of defendant corporation residing in Massachusetts was properly served under § 37); *Reynolds v.

Missouri, K & T Ry. Co*., 113 N.E. 413, 416 (Mass. 1916) (service on director of defendant

corporation proper under predecessor statute to § 37). And because CGI is doing business in

Massachusetts, ARS could also have served CGI through the secretary of state. *See* Mass. Gen.

Laws Ann., ch. 156D, § 15.10.

---

[1] At the scheduling conference on August 29, 2005, CGI asserted that ARS had not previously
argued that CGI was subject to general (as opposed to specific) personal jurisdiction in
Massachusetts. That is incorrect. In its motion for leave to take jurisdictional discovery filed in
response to CGI's motion to dismiss, ARS expressly indicated that CGI's contacts with
Massachusetts give rise to both general and specific personal jurisdiction. *See* Docket No. 15, pp.
5, 6, 14.

[2] All exhibits supporting this Opposition are attached to the Affidavit of Fred A. Kelly, Jr., filed
herewith. References to those exhibits appear herein as "Tab ___, at ___."

### C.    CGI is amenable to service of process under § 38

CGI asserts that it "owns no facilities" in Massachusetts, "is not registered to do business

in Massachusetts," and "has paid no taxes to the Commonwealth." (CGI Mem., p. 3.)[3] None of

these allegations insulates CGI from amenability to service under § 38. More importantly, CGI

conspicuously omits any mention of what it has done, and continues to do, in Massachusetts.

Based on CGI's business deals in Massachusetts, its research collaborations with Massachusetts

entities, its clinical trials involving Massachusetts residents, and its solicitation of business in

Massachusetts, CGI's contacts have been sufficiently "continuous and systematic" to bring it

within the scope of § 38.

### 1.    CGI regularly does business in Massachusetts

Since 1998, CGI has done business with Cambridge-based Mitotix, Inc. as part of "a

worldwide license and research collaboration for cardiovascular gene therapy." (Tab 3.) CGI's

business with Mitotix also includes "preclinical studies of gene therapy" in Massachusetts, and

CGI has obtained "exclusive rights" in certain Mitotix intellectual property. (*Id.*)

Since at least 2002, CGI has also done regular business with Cambridge-based TKT. CGI

entered into an exclusive licensing agreement with TKT covering the gene-activation technology

at issue in this action ("the Agreement") (Tab 4, at B). In return for this license, CGI has

received $26 million from TKT. (Tab 4, at A, C, and D.) The Agreement required CGI to work

with TKT against ARS in the '114 Interference at issue in this action, and requires CGI and TKT

to work together against ARS in this action. (*Id.*, at B.) CGI's agreement with TKT has led to its

employees traveling to do business in Massachusetts, and regular communications with TKT

---

[3] References to CGI's "Motion to Dismiss for Lack of Personal Jurisdiction or, in the
Alternative, for Severance and Transfer of Count I of Plaintiff's First Amended Complaint"
appear throughout as "CGI Mot., p. ___." References to the related Memorandum in Support
appear throughout as "CGI Mem., p. ___."

regarding this action and the underlying interference. (CGI Mem., pp. 4-5.)

CGI also entered into an arrangement with Cambridge-based Genzyme Corporation whereby Genzyme was to acquire CGI. (Tab 5.) Although CGI eventually backed out of that deal, CGI experienced an increase in the value of its stock as a result of that arrangement, paid Genzyme $15 million to get out of the arrangement, and the negotiations with Genzyme undoubtedly involved CGI representatives traveling to Massachusetts to conduct business here.

CGI also utilizes Massachusetts companies for products and services. For example, Decision Resources, a Waltham-based company, lists CGI as one of its customers. (Tab 6, at A.)

CGI also seeks out financing for its operations in Massachusetts. For example, in 2002, CGI sought out and obtained $60 million from Fleet Bank here in Boston. (Tab 6, at B.)

### 2.    CGI regularly tests products in Massachusetts.

As part of CGI's "development and commercialization of biological therapies for cancer" (CGI Mem., p. 2), it actively solicits Massachusetts residents to both conduct and participate in clinical trials and tests. For example, CGI has actively solicited Massachusetts residents to participate in a clinical trial of its "Leukemia Bystander GVAX®" cancer vaccine at the Dana Farber Cancer Institute, Massachusetts General Hospital, and Brigham and Women's Hospital here in Boston. (Tab 7, at A-P.) Although the details are not publicly available, CGI's clinical trials in Massachusetts undoubtedly involve Massachusetts residents. Such trials have been found to constitute "regular and systematic" contacts. *See Hoffman-La Roche, Inc. v. Kwasnik,* 2003 Tex. App. LEXIS 2561, at *8 (Tex. App. 2003) (finding defendant subject to general jurisdiction based on, *inter alia*, conducting clinical trials).

CGI solicited Massachusetts residents for this trial through a Massachusetts telephone number (listed on its web site, where it also actively solicits investment and recruits potential employees). (Tab 7, at N.) Using such an in-state telephone listing supports a finding of general

personal jurisdiction. *See Campbell v. Frontier Fishing & Hunting, Ltd*., 405 N.E.2d 989, 990

(Mass. App. 1980) (out-of-state defendant was subject to general personal jurisdiction under § 38

where contacts included a Massachusetts telephone number for residents to call).

CGI has also conducted tests at Harvard Medical School and Mass General for other gene

therapy products. (Tab 7, at E) ("The laboratory work . . . was done in collaboration with Bruce

D. Walker, M.D. . . . at Massachusetts General Hospital and Harvard Medical School . . . .").

CGI also admits that Massachusetts resident Dr. John Potts is a member of the CGI Board

of Directors, CGI Scientific Advisory Board, and CGI Medical Advisory Board. (CGI Mem., p.

3.) CGI neglected to mention that Dr. Potts owns more than 10% of CGI's stock, and that Dr.

Bruce Chabner, another Massachusetts resident, is also a member of the CGI Medical Advisory

Board and a stockholder. (Tab 2.)

### 3.    CGI regularly solicits business in person in Massachusetts.

CGI routinely makes presentations at Massachusetts biotechnology trade seminars:

- September 11-14, 2000: CGI presented and marketed its cancer vaccine products in Framingham. (*See* Tab 8, at A.)

- June 6, 2002: CGI reported and marketed tests results of one of its gene therapy products in Boston. (*Id*., at B.)

- June 11, 2002: CGI presented its gene therapy technology in Boston. (*Id*., at C.)

- September 20-21, 2004: CGI, along with other commercial biotechnology enterprises, presented and marketed at Fairmont Copley Plaza in Boston. (*Id*., at D.)

In sum, CGI's business dealings in Massachusetts, with companies like Mitotix, TKT,

and Genzyme, have generated millions of dollars in revenues for CGI and have involved travel

by CGI employees to Massachusetts, testing of CGI's products by and on Massachusetts

residents, and regular solicitation of Massachusetts business. These all suffice to establish CGI's

"continuous and systematic" contacts with Massachusetts such that the exercise of general personal jurisdiction is reasonable, fair, and should come as no surprise to CGI.

In similar situations, Massachusetts courts have found out-of-state defendants subject to general personal jurisdiction under § 38 and the Due Process Clause. For example, in *Campbell v. Frontier Fishing & Hunting, Ltd.*, 405 N.E.2d 989 (Mass. App. 1980), the court held that a Canadian defendant that actively marketed its fishing tours to Massachusetts residents was subject to general personal jurisdiction. The defendant's contacts included a director residing in-state, a Massachusetts telephone number where residents could call to make arrangements for fishing trips, distribution of brochures in Massachusetts sporting-goods stores, and sales of fishing trips to at least 19 Massachusetts residents. *Id*. at 990. The court found general personal jurisdiction under § 38 because "[t]here was a regular and systematic effort to acquire business by solicitation . . . which led to the acquisition of a substantial number of customers." *Id*. at 991 (*quoting Jet. Mfg. Co. v. Sanford Ink. Co*., 112 N.E.2d 252, 254 (Mass. 1953)).

In *Howse v. Zimmer Mfg. Co., Inc*., 757 F.2d 448 (1st Cir. 1985), the out-of-state defendant's contacts with Massachusetts included several million dollars in business, having an independent sales representative in Massachusetts who carried a stock of the defendant's parts, and sending representatives to Massachusetts to confer with surgeons about product development. On these facts, the First Circuit reversed and remanded the district court's dismissal of the case based on general personal jurisdiction. *Id*. at 452-53.

In *Walsh v. National Seating Co., Inc*., 411 F. Supp. 564 (D. Mass. 1976), the out-of-state defendant's contacts included employees regularly traveling to and working in Massachusetts, the listing of a Massachusetts telephone number, directly soliciting business from and selling parts to Massachusetts companies, and doing approximately $3 million in business in

10

Massachusetts. *Id*. at 572-73. The court found general personal jurisdiction under § 38 because "the quality and regularity of [defendant's] connections approximate those of a local corporation, and 'affect the commerce of Massachusetts substantially.'" *Id*. at 574 (*quoting Trojan Eng'g Corp. v. Green Mountain Power Corp*., 200 N.E. 117 (Mass. 1936)).

In *Corbin v. Bastian Blessing Co*., 265 F. Supp. 338 (D. Mass. 1967), the out-of-state defendant's contacts with Massachusetts included a resident district sales manager who regularly called on a list of customers, and the transaction of about $200,000 of business in the state. *Id*. at 339. The court held that the out-of-state defendant was subject to general personal jurisdiction under § 38. *Id*.

In *Jet Mfg. Co., Inc. v. Sanford Ink Co*., 112 N.E.2d 252 (Mass. 1953), the out-of-state defendant's contacts included advertising in Massachusetts newspapers, holding an annual sales convention in Boston, and employing a sales representative in Massachusetts to solicit business in-state. *Id*. at 253-54. The court held that the defendant was subject to general personal jurisdiction under § 38. *Id*.

Here, as in the cases just discussed, CGI is doing a substantial amount of business in Massachusetts: it does business with both commercial enterprises and research institutions; its representatives are regularly traveling to Massachusetts to make presentations, solicit business and attend to ongoing business; it is testing products on Massachusetts residents; it has solicited Massachusetts residents for its clinical trials through a Massachusetts telephone number; and two of its board members reside in Massachusetts and are likely doing CGI business in Massachusetts. These activities are sufficient to bring CGI within the scope of § 38.

### D.    Exercise of jurisdiction over CGI satisfies Due Process

For the same reasons that CGI is amenable to service here under § 38, jurisdiction over CGI also satisfies Due Process. CGI's regular business activities here, including its dealings with

companies like Mitotix, TKT, and Genzyme that have generated millions of dollars in revenue for CGI, its testing of products by and on Massachusetts residents, and its regular solicitation of Massachusetts business, constitute "continuous and systematic" contacts that render general personal jurisdiction reasonable, fair, and no surprise. *See LSI Indus*., 232 F.3d at 1375.

## IV.    CGI IS SUBJECT TO SPECIFIC JURISDICTION HERE

In states where the reach of the long-arm statute is to the limits of Due Process, the normal two-prong inquiry collapses into whether exercise of jurisdiction satisfies Due Process. *Trintec Industries, Inc. v. Pedre Promotional Products, Inc*., 395 F.3d 1275, 1279 (Fed. Cir. 2005); *Elecs. For Imaging*, 340 F.3d at 1349-50; *Akro Corp. v. Luker*, 45 F.3d 1541, 1544 (Fed. Cir. 1995). Massachusetts is one of those states:

> We may sidestep the statutory inquiry [under the long arm statute] and proceed directly to the constitutional analysis, however, because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute "as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States."

*Daynard v. Ness*, 290 F.3d 42, 52 (1st Cir. 2002), quoting *"Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 280 N.E.2d 423 (1972); *see also Moldflow Corp. v. Simcon, Inc.*, 296 F. Supp. 2d 34, 39 (D. Mass. 2003) (following *Daynard*); *Freedom Wireless, Inc. v. Boston Commun. Grp., Inc.*, 218 F. Supp. 2d 19, 23 (D. Mass. 2002) (same); *Cognex Corp. v. Lemelson Med., Educ. & Research Found.*, L.P., 67 F. Supp. 2d 5, 7 (D. Mass. 1999) (solely applying Due Process inquiry).

### A.    CGI effectively concedes the Due Process issue

By resting its entire motion to dismiss on an analysis under the long-arm statute, CGI effectively concedes that specific personal jurisdiction is appropriate under the Due Process Clause. (CGI Mem., p. 7.) Thus, this Court need go no further to deny CGI's motion. Nevertheless, ARS will proceed with the Due Process analysis below.

### B.    CGI purposefully directs its activities at Massachusetts

In its motion, CGI states "The '114 Interference had no relationship to Massachusetts."

(CGI Mem., p. 3.) The Agreement between CGI and TKT (the version filed with the SEC, not the heavily redacted version that CGI provided to this Court) tells a different story. (Tab 4, at D.) Among CGI's many ongoing obligations to TKT, CGI is obligated to obtain TKT's approval at all stages in patent prosecution, interference, and litigation involving the patent rights to the gene-activation technology at issue here, including CGI's actions in this case. (*Id.*) CGI's actions in the '114 Interference thus had a very real relationship to Massachusetts. CGI should not be surprised that it has been haled into Massachusetts in a matter relating to that relationship.

By reaching out to TKT and entering into the Agreement (and by performing its ongoing obligations relating to this litigation under that Agreement), CGI directs its activities at Massachusetts. It is well-settled that such activities satisfy the first prong of the test for specific jurisdiction.[4] *See Deprenyl*, 297 F.3d at 1352 (reversing dismissal for lack of personal jurisdiction, finding that minimum contacts existed where defendant "twice traveled to Kansas to negotiate, and amend, the resulting ongoing license agreement . . . [and] sent [the licensee], in Kansas, copies of correspondence with the patent office and kept [the licensee] apprised of the prosecution status . . . ."); *Akro*, 45 F.3d at 1546 (reversing dismissal for lack of personal jurisdiction, finding that where "exclusivity" of license created "continuing obligations" with non-resident forum, "it could scarcely be more clear that [the non-resident defendant] purposefully directed activities at residents of Ohio").

CGI claims that it "negotiated and executed the TKT License ***primarily*** by telephone and

---

[4] *See also Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 193 n.3 (1st Cir. 1980) ("By entering into the license agreement with Orion and visiting Massachusetts twice on related business, Moller has purposefully avail[ed] himself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws.") (internal quotation marks omitted); *Cognex Corp.*, 67 F. Supp. 2d at 9 ("In the instant case . . . it is clear that Lemelson's non-exclusive licensing agreements with Massachusetts companies constitute contacts with the forum.").

meetings outside of Massachusetts at CGI" and that "one initial meeting took place in Massachusetts," that "[t]he *majority* of CGI's performance under the TKT License has occurred, and continues to occur, outside of Massachusetts," and it "has communicated with TKT about the TKT License since June 2002," but "the *majority* of those communications have been by mail, telephone, email or facsimile." (CGI Mem., pp. 4-5) (emphases added.)

These statements reveal that CGI has more continuous contacts with Massachusetts than it will admit to this Court. CGI's carefully worded statements implicitly admit that CGI initially reached out to Massachusetts to enter into the Agreement and that some of CGI's performance under that Agreement has occurred in Massachusetts. The same type of implicit admission is evident from CGI's statement that its Board of Directors has not met in Massachusetts "during at least *the last four years*." (*Id*., p. 3.).

The fact is, CGI reached out to a Massachusetts company for a multimillion-dollar exclusive licensing agreement, and is performing its ongoing obligations under that agreement in Massachusetts. Such activities are "purposefully directed" at Massachusetts. *Elecs. For Imaging*, 340 F.3d at 1351 (reversing dismissal for lack of personal jurisdiction, stating "Coyle's communications are significant in the personal jurisdiction calculus even though Coyle was not physically present in California when he made these communications."), quoting *Burger King*, 471 U.S. at 476 ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted."). *See also Inamed*, 249 F.3d at 1361-62 (reversing dismissal for lack of personal jurisdiction, stating "Based on the clear principles set out in Supreme Court jurisprudence, we conclude that Dr. Kuzmak's negotiation efforts, although accomplished through telephone and mail from New

Jersey, can still be considered as activities 'purposefully directed' at residents of California."); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 36 (1st Cir. 1998) ("The transmission of facts or information into Massachusetts via telephone or mail would of course constitute evidence of a jurisdictional contact directed into the forum state.").

Consequently, CGI's regular contacts with TKT under the Agreement satisfy the first prong of the test for specific personal jurisdiction.

### C.    This action relates to CGI's activities in Massachusetts

CGI focuses solely on whether this action "arises from" its activities in Massachusetts. (CGI Mem., p. 8-11.) However, because the long-arm statute is co-extensive with Due Process, the proper test here is whether this action "arises out of <u>or is related to</u>" CGI's activities. This requirement is recognized as "disjunctive in nature, indicating added flexibility and signal[ing] a relaxation of the applicable standard from a pure 'arise out of' standard." *Akro*, 45 F.3d at 1547, quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994).

As explained above under the long-arm analysis, CGI likely would not be litigating this action but for its Agreement with TKT and the "Milestone Payments" that will come to it if it obtains issued patent claims and invalidates ARS's '071 patent. CGI was also obligated under the Agreement to work with TKT in the '114 Interferences and in this litigation (indeed, TKT's Vice-President Michael Heartlein testified for CGI in the interference). Thus, this action "relates to" CGI's agreement with TKT. *See Akro*, 45 F.3d at 1548-49 (declaratory judgment action "undoubtedly relates to" defendant's licensing activities in forum because "the agreement obliges Luker 'to defend and pursue any infringement action against' the [patent-in-suit].").

CGI has already directed significant activities at Massachusetts in connection with patent prosecution and the '114 Interference at issue here. This action relates to those activities and should come as no surprise to CGI. *Cf.* D.C. Order, Tab 9 at 5 ("The acquisition of the patent in

Massachusetts from a Massachusetts resident created a reasonable expectation by ARS that it might be subject to jurisdiction in Massachusetts courts on a dispute relating to that patent.").

Consequently, the second prong of specific personal jurisdiction has been met in that this action relates to the activities CGI has purposefully directed at Massachusetts.

### D.    CGI has not shown that jurisdiction is neither reasonable nor fair

Because ARS has made a *prima facie* showing of minimum contacts, CGI has the burden to prove that the exercise of personal jurisdiction would be unreasonable and unfair. *Elecs. For Imaging.*, 340 F.3d at 1350. Because CGI rested its motion solely on the long-arm statute, it has failed to meet its burden, effectively conceding the issue.

This Court's exercise of personal jurisdiction over CGI is reasonable and fair. First, because CGI is a California company, the burden of defending the action here is no more than if the action were litigated in D.C. And because of CGI's continuing license obligations to TKT and its regular activities in Massachusetts, defending this action here may be less burdensome.

Second, Massachusetts has an interest in having this action tried here because TKT's use of the gene-activation technology covered by the Agreement, CGI's '390 patent application, and ARS's '071 patent hinges on the outcome.

Third, ARS's interest in obtaining relief in the same court regarding both the interference decision on ARS's '071 patent and TKT's infringement of that patent (which will be less burdensome to ARS) weighs in favor of exercising jurisdiction.

Fourth, litigating this action in Massachusetts where Count II against TKT will ultimately be tried – both actions relating to the same '071 patent and the same technology – advances the interstate judicial system's interest in obtaining the most efficient resolution of controversies.

In sum, the reasonableness factors either favor jurisdiction or are neutral. CGI cannot meet its burden to prove that personal jurisdiction is unreasonable and unfair, and its motion to

dismiss should be denied.

## V.    ARS'S MOTION FOR JURISDICTIONAL DISCOVERY

ARS believes it has made the necessary *prima facie* showing to defeat CGI's motion based solely on evidence gathered from the public domain, but in the event the Court disagrees, ARS respectfully renews its request that the Court grant it leave to take limited discovery from CGI regarding its contacts with Massachusetts.

## VI.    THIS COURT SHOULD DENY CGI'S MOTION TO TRANSFER

The Court should deny CGI's motion to transfer for the reasons set out in Judge Bates's decision on transfer in the District of Columbia. As Judge Bates found, the paramount transfer factor here is judicial economy. Consequently, if this Court finds it has personal jurisdiction over CGI, Judge Bates has indicated that he will almost certainly transfer the D.C. action here. (*See* D.C. Order, Tab 9, at pp. 11-12.) Even if the Court finds it necessary to reevaluate the same factors that Judge Bates evaluated, the unavoidable conclusion is that transfer should be denied.

### A.    The legal standard for transfer

The purpose of the transfer statute, 28 U.S.C. § 1404(a), is to prevent avoidable waste of time, energy and money, as well as to protect parties, witnesses and the public against prejudice, inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

"[T]here is a strong presumption in favor of a plaintiff's forum choice, [against which] the defendant must bear the burden of proving . . . that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." *Veryfine Prods., Inc., v. Phlo Corp.*, 124 F. Supp. 2d 16, 21 (D. Mass. 2000) (quotation omitted).

CGI attempts to shift its burden to ARS, but fails to cite any supporting authority, instead relying solely on the "first-filed" rule. (CGI Mem., pp. 12-14.) However, filing first elsewhere does not shift CGI's burden here. *Kleinerman v. Luxtron, Corp.*, 107 F. Supp. 2d 122, 125 (D.

Mass. 2000) (plaintiff in second-filed action enjoyed presumption, and defendant that filed first action elsewhere bore burden on transfer). [5]

Accordingly, CGI bears the burden to prove the following factors favor transfer: (1) ARS's choice of forum, (2) convenience of the parties and witnesses, (4) location of documents and proofs, (4) connection between the forum and the issues, (5) the courts' familiarity with the law to be applied, (6) state or public interests, and (7) judicial economy and trial efficiency. *Id*.

### B.    CGI has failed to show that the § 1404 factors warrant transfer

#### 1.    Judicial economy weighs strongly against transfer

This Court and others have held that judicial economy is especially important in patent cases. *Davox Corp. v. Digital Sys., Int'l, Inc.*, 846 F. Supp. 144, 149 (D. Mass. 1993) (Wolf, J.) ("Since these cases, concerning similar technologies, will involve common discovery and witnesses, the cases should be heard in a single forum, to conserve judicial resources and to promote an efficient resolution of all the related matters pending between the parties."); *Kleinerman*, 107 F. Supp. 2d at 126 ("That principle [judicial economy] is particularly germane to a patent case."); *Reiffin v. Microsoft*, 104 F. Supp. 2d 48, 56 (D. D.C. 2000) ("Piecemeal litigation in the complex and technical area of patent and trademark law is especially undesirable.").

The "elephant in the room" in CGI's motion to transfer is judicial economy, *i.e.*, the inefficiency inherent in having two federal judges presiding over cases involving the same patent, the same technologies, and many similar issues of fact and law. CGI refuses to address

---

[5] CGI cites *Biogen, Inc. v. Schering, Inc.*, 954 F. Supp. 391 (D. Mass. 1996) (Wolf, J.), and without full explanation, argues that under the first-filed rule in that case, "[t]his Court placed the burden on those who brought the second-filed action . . . ." (CGI Mem., at p. 13.) However, in *Biogen* the party requesting transfer bore the burden because it was the movant, not because it filed a second action elsewhere. *Id*. at 397-98.

that issue.

It is beyond reasonable dispute that transfer of this action to D.C. will result in two federal judges devoting time and resources to learning the same technology and resolving overlapping issues of law and fact. Count I against CGI and Count II against TKT involve many of the same issues of claim construction and validity, all in the context of the same gene-activation technology. It simply does not make sense to transfer Count I to Judge Bates, who will have to educate himself on these legal and factual issues, then have this Court learn those issues anew when the stay is lifted on Count II against TKT. *See Williams v. Purdue Pharma Co.*, 2004 U.S. Dist. Lexis 10395, at *2 (D. D.C. 2004) ("Requiring a second federal judge to attempt to master the scientific and technical requirements of the Oxycontin patent prosecution would be a poor use of scarce judicial resources.").

### 2.    Massachusetts' interest in this action weighs against transfer

Massachusetts has a greater interest in this action than does the District of Columbia, which has none. A substantial part of TKT's business involves the technology claimed in both ARS's '071 patent and CGI's pending patent application. Accordingly, TKT's business in Massachusetts hinges in part on the outcome of this action. In contrast, ARS, CGI, and TKT do not reside or conduct any business in the District of Columbia. The proximity of the D.C. court to the Patent Office in Alexandria, VA is of no relevance. Nor is the venue provision in 35 U.S.C. § 146: venue in D.C. is simply a default venue for foreign defendants, which is not necessary here.

### 3.    ARS's choice of forum weighs against transfer

CGI does not point to any reason why this action should be resolved in D.C. Instead, CGI relies solely on the "first-filed" rule. But as Judge Bates found, that rule does not apply here:

> There is no meaningful connection between the District of Columbia and the parties or subject matter of this controversy. Neither CGI nor ARS has any real connection to the District of Columbia in terms of residence of business activity. . . . [and] the claims did not arise here and no potential witnesses reside here.
>
> Although CGI places some weight on the fact that its case was the "first-filed," that is not a strong argument against transfer in the instant setting. The first-filed rule should not be rigidly or mechanically applied [citation omitted], and is especially disfavored when there is no evidence of a preemptive strike and the two suits were filed virtually simultaneously. The one-day difference in filing between this Court and the District of Massachusetts is insignificant under the circumstances presented here.

D.C. Order, Tab 9, at 6; *see also Southern Utah Wilderness Alliance*, 315 F. Supp. 2d 82, 86 (D. D.C. 2004) ("[D]eference . . . is lessened when the plaintiff's forum choice lacks meaningful ties to the controversy and has no particular interest in the parties or subject matter.'").

### 4. The convenience of the parties and witnesses does not favor transfer

CGI admits that Massachusetts is a convenient forum (CGI Mem., p. 13; " What makes Massachusetts inconvenient for CGI is not the forum per se . . . ."), and its remaining arguments about potential *res judicata* or delay (CGI Mem., p. 6) are moot in view of the stay of Count II. Moreover, five of the ten witnesses identified in the parties' Rule 26(a)(1) disclosures (Drs. Kucherlapati, Levin, Chappel, Kelton, and Heartlein) reside in this District.

### 5. The location of documents and proofs does not favor transfer

CGI, by failing to address this factor, concedes that it does not favor transfer. As Judge Bates found, the evidence for Count I is equally accessible here or in D.C. (Tab 9, at 9).

### 6. This Court's familiarity with the relevant law weighs against transfer

As Judge Bates found, this Court's greater familiarity with patent law and biotechnology weighs in favor of trying this action here. (D.C. Order, Tab 9, at 9-10.)

## VII. CONCLUSION

For the foregoing reasons, ARS requests that the Court deny CGI's motion to dismiss or transfer. In the alternative, ARS renews its request to take limited jurisdictional discovery.

Respectfully submitted,

Dated: September 9, 2005                    NIXON PEABODY LLP


By: _____/s/ Fred A. Kelly, Jr._____
    Fred A. Kelly, Jr.
    BBO No. 544046
    100 Summer Street
    Boston, MA 02110
    Tel: 617-345-1000
    Fax: 617-345-1300

MARSHALL, GERSTEIN & BORUN LLP
    Kevin M. Flowers (*pro hac vice*)
    Matthew C. Nielsen (*pro hac vice*)
    6300 Sears Tower
    233 S. Wacker Drive
    Chicago, Illinois 60606-6357
    Tel: (312) 474-6300
    Fax: (312) 474-0448

Attorneys for Plaintiff Applied Research Systems
ARS Holding, N.V