IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., <br><br> Plaintiff, <br><br> v. <br><br> CELL GENESYS, INC. AND TRANSKARYOTIC THERAPIES, INC., <br><br> Defendants. | C.A. No. 04 11810 MLW |

**DEFENDANT CELL GENESYS, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

I.  **INTRODUCTION**

Defendant Cell Genesys, Inc. files this Reply Memorandum in further support of its motion to dismiss this action for lack of *in personam* jurisdiction, or in the alternative to sever ARS's Interference Appeal (Count I) and transfer that Count to the further advanced ongoing Interference Appeal filed by CGI in the United States District Court for the District of Columbia (the "DC Action").

The DC Action is well underway, will be trial-ready in early 2006, and deals exclusively with the identical question raised in the Interference Appeal here: who was the "first-to-invent" the technology at issue and present patentable claims thereto. The issues in either Interference Appeal are wholly different than those that will be raised by ARS's infringement claim, which is currently stayed. The Interference Appeal does not involve adjudication of the potentially dispositive infringement issue of claim

construction and scope. In the Interference Appeal, the Board has already construed the claims at issue, and the rules of interpretation are significantly different than those applicable in the infringement litigation. *In re Morris,* 127 F.3d 1088 (Fed. Cir. 1997).

For precisely this reason, this Court has already ordered that the patent infringement claim be stayed until the Interference Appeal is resolved. Depending on how the Interference Appeal is decided, there may be no infringement claim. If CGI prevails, there will be no patent claims to enforce.

The possibility that ARS must submit to the jurisdiction of the United States District Court in the District of Columbia should come as no surprise to ARS. *Every* entity that appears in an Interference at the PTO knows that it is subject to an appeal before the District of Columbia District Court. Allowing all the claims that relate to technology involved in the Interference Appeal to proceed in the same DC Action comports with the policy expressed in 35 U.S.C. § 146.

In its Opposition, ARS fails to meet its burden to establish that this Court can constitutionally assert *in personam* jurisdiction over CGI. ARS's heavy reliance upon the 1980 decision in *Campbell v. Frontier Fishing & Hunting, Ltd.*, 405 N.E. 2d 989, 990 (Mass. App. 1980) does not save it from this reality: Section 38, or amenability to service (on which ARS bases much of its Opposition), does not provide an exclusive basis for the exercise of general personal jurisdiction. Section 38 is not independent of the long-arm statute in Section 3, and any exercise of *in personam* jurisdiction by this Court must be based on a continuous and systematic set of contacts that satisfy the Massachusetts long-arm statute and principles of due process in the specific jurisdiction analysis. Because CGI's contacts with Massachusetts are insufficiently purposeful and

because CGI's contacts are not directed to Massachusetts in particular, there is no basis for a constitutional exercise of personal jurisdiction. CGI does not now, nor has it ever, engaged in conduct or activities that approximate that of a regular domestic corporation where it could be deemed to be physically "present" in Massachusetts. This action should be dismissed.

## II. ADDITIONAL RELEVANT BACKGROUND FACTS

The DC Action is significantly advanced and will be ready for dispositive motions or trial by early 2006. Under the Court's December 21, 2004 Scheduling Order initial disclosures were made, and deadline for joining additional parties and amending pleadings expired months ago. Fact discovery is nearly complete, and closes on November 16, 2005. Experts will be designated as of November 16, 2005, and expert discovery will close in early 2006. On September 15, 2005, the parties reported to District Judge Bates at a status hearing their expectation of completing the DC Action in a few months.

## III. ARGUMENT

### A. The Burden To Establish Facts That Support This Court's Exercise of Personal Jurisdiction Over CGI Lies With Plaintiff ARS.

As the plaintiff in this action, it is ARS's burden to establish that this federal district court can lawfully exercise personal jurisdiction over CGI. *Boston Scientific Corp. v. Bonzel*, 132 F. Supp. 2d 45, 49 (D. Mass. 2001); *W. Marine Prods. v. Dolphinite*, No. 04-10251, 2005 U.S. Dist. LEXIS 7489 (D. Mass. March 23, 2005). When there is a motion to dismiss for want of *in personam* jurisdiction, the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." *Massachusetts School of Law v. American Bar Assoc.*, 142 F.3d 26, 34 (1st Cir. 1998) (citing cases); *McNutt v. General*

3

*Motors Acceptance Corp.*, 298 U.S. 178 (1936); *Escude Cruz v. Ortho Pharms. Corp.*, 619 F.2d 902, 904 (1st Cir. 1980).

ARS bears the burden to establish that the exercise of either general or specific personal jurisdiction is appropriate.

### B. There Are No Grounds Upon Which This Court Can Validly Base The Exercise of Either General or Specific Personal Jurisdiction Over CGI.

General personal jurisdiction and specific personal jurisdiction are not always connected. That is, the exercise of specific personal jurisdiction may be proper in a given case even though a party is not subject to the exercise of general personal jurisdiction. *See, e.g., Pritzker v. Yari*, 42 F.3d 53, 59-60 (1st Cir. 1994) (describing the contrast between the general personal jurisdiction and specific personal jurisdiction). Under a complete analysis, factoring in the appropriate burdens, CGI's contacts and activities are insufficiently directed at Massachusetts to allow for the exercise of *in personam* jurisdiction.

### 1. The Exercise Of General Personal Jurisdiction Based On The Fact Of Service Effected Under Mass. Gen. Laws, ch.223A, § 38 Alone Is Not Proper.

Effectuating service under Section 38 does not mean that an exercise of *in personam* jurisdiction is proper. Section 38 addresses service of process; it provides for the manner by which a foreign corporation can be effectively served. Mass. Gen. Laws ch. 223A, § 3. The statute itself says that in order for any service under Section 38 to be proper, the service must be on a business "engaged in or soliciting business in the commonwealth." Mass. Gen. Laws Ann. ch. 223, § 38. *Buckeye Assocs., Ltd. v. Fila Sports, Inc.*, 616 F. Supp.1484, 1491 n.9 (D. Mass. 1985) (observing that "this statute

4

may be invoked 'only if a foreign Corporation's activities affected Massachusetts commerce substantially or so affected the transaction at issue as to make Massachusetts an appropriate forum'")(internal citation omitted). It has already been settled that Section 38 does not provide an independent basis for the exercise of personal jurisdiction. *Howse v. Zimmer Mfg. Co.*, 757 F.2d 448, 451 (1st Cir. 1985) (discussing *Campbell v. Frontier Fishing & Hunting, Ltd.*, 405 N.E.2d 989, 990 (Mass. App. 1980) and applying Section 38 in conjunction with the Massachusetts long-arm statute); *Miller v. Honda Motor Co.*, 779 F.2d 769 (1st Cir. 1985) (declining to "expand the reach of the recent decision in" *Howse v. Zimmer Mfg. Co.*, 757 F.2d 448, 451 (1st Cir. 1985) regarding Section 38).

Instead, Section 38 only enables courts in Massachusetts to exercise jurisdiction over foreign corporations whose conduct in Massachusetts approximates that of regular domestic corporations and thus can be deemed to be physically "present" in Massachusetts. *LTX Corp. v. Daewoo Corp.*, 979 F. Supp. 51, 57 (D. Mass. 1997). In the cases where § 38 jurisdiction has been upheld, some human representative of the defendant was served in-hand within Massachusetts. *Id.* (citing cases). Notably, in *Campbell*, 405 N.E. 2d at 990, the defendant was served by hand in Massachusetts.

Here, no human representative was served by hand in Massachusetts. CGI does not have a presence or engage in conduct that approximates that of regular domestic corporations. As the analysis below demonstrates, the "contacts" on which that ARS wishes to rely are not sufficient to support the exercise of general personal jurisdiction.

        a.     **A Licensing Arrangement Is Not A Contact That Gives Rise To The Exercise of *In Personam* Jurisdiction.**

A licensor's contact with a forum by virtue of licensing activities does not justify the exercise of personal jurisdiction. *Boston Scientific Corp. v. Bonzel*, 132 F. Supp. 2d

5

45, 50 (D. Mass. 2001) (holding that no personal jurisdiction existed stating: "It is doubtful, however, that the sales activities of a licensee in the forum can operate to create jurisdiction over the licensor."); *Highmark, Inc. Allcare Health Management Sys.*, 304 F. Supp. 2d 663 (W.D. Pa. 2003) (refusing to exercise personal jurisdiction over defendant in patent dispute in part because "the mere fact that a single non-exclusive licensee of Allcare's patent is located in Pennsylvania does not give rise to specific jurisdiction"); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,* 36 Fed. R. Serv. 3d (Callaghan) 648 (N.D. Cal. 1996) ("The forum activities of a licensee cannot support the assertion of jurisdiction over a non-resident patentee, even if the patentee receives royalty payments."); *Hydraulics Unlimited Mfg. Co. v. B/J Mfg. Co.*, 323 F. Supp. 996 (D. Colo. 1971) ("we do not think the mere existence of a contract executed by a Colorado resident, which plaintiff relies upon in essence, is sufficient to confer personal jurisdiction over an absent nonresident defendant.").

In this case, the mere fact that CGI licensed technology to a licensee located in Massachusetts does not mean that its contacts with Massachusetts are sufficient to permit the exercise of personal jurisdiction. As ARS acknowledges, the license with TKT itself was not entered until the inventive work by CGI had been completed, and the patent application so licensed was filed. TKT is a bystander, admittedly an interested one, to the Interference contest, but no more than that. CGI's contacts with TKT are not specific to, or relevant to, the Interference Appeal, nor are they of the nature that would give a basis for the exercise of general jurisdiction.

Moreover, ARS refers indiscriminately to two different licenses. The license between CGI and TKT, is an non-exclusive patent license. It does not involve or

contemplate active co-development by CGI and TKT, or anything other than an exchange of documents and money. The CGI license and cooperation regarding the GVAX technology is entirely different in term of technology and focus. Both—as admitted by ARS—are licenses that are worldwide. Neither the state of Massachusetts nor any of its residents have any particular relation to CGI's licenses.

        **b.    Four Presentations In The District Are Not Significant Contacts.**

ARS cites to no legal authority asserting that travel to a location for the purpose of giving a presentation subjects the presenter to the exercise of personal jurisdiction by that forum's courts. To even suggest that the act of giving a presentation in a forum would subject one to the exercise of personal jurisdiction is non-sensical. If it did, the result would be unreasonable and unfair. Under that rationale, for example, any lawyer or judge that goes into the State of Arizona for example to give a presentation in connection with the Sonoma Conference would be subject to the exercise of personal jurisdiction by an Arizona court. That would be absurd. Any presentation involving CGI in the District of Massachusetts cannot be a contact that gives a basis for the assertion of *in personam* jurisdiction.

        **c.    The Alleged Testing of Products and GVAX Research Collaboration Are Not Sufficient Contacts.**

ARS mistakenly relies on a Texas state court decision, *Hoffman-LaRoche v. Kwasnik*, 2003 Tex. App. LEXIS 2561 at *8, to support its contention that the GVAX clinical trials warrant this Court's exercise of personal jurisdiction. That case, however, involved a defendant with substantially different contacts than CGI's contacts here. There, Hoffman-LaRoche had conducted business in, and availed itself to the benefits of,

7

Texas since the 1950's, when it first applied for authority to conduct business in Texas. Here, CGI has never applied for authority to conduct business in Massachusetts. There, Hoffmann-LaRoche was licensed to do business in Texas at the time of the suit and maintained a registered agent for service of process in Texas. Here, CGI has no registered agent to accept service in Massachusetts. Finally, "shortly before the underlying suit was filed, Hoffmann-La Roche filed its Texas Franchise Tax Report." *Id.* at \*8. Here, CGI has never filed such a report. It was against this backdrop that the Texas court noted "Hoffmann-La Roche continues to conduct multiple clinical trials in Texas" and found contacts to support the exercise of personal jurisdiction. Hoffmann-La Roche's multiple-decade, substantial business activity in Texas is vastly different than any of CGI's alleged contacts with Massachusetts. As a result, the Texas decision has no bearing here.

### d. Obtaining a Bank Loan Is Not A Sufficient Contact.

Obtaining a loan from a bank does not subject a loan recipient to the exercise of personal jurisdiction in the district where the bank is headquartered. *See e.g., Recycling Sciences Int'l Inc. v. Soil Restoration and Recycling*, No. 00-C-0311, 2001 U.S. Dist. LEXIS 3406, \*21-22 (N.D. Ill. March 15, 2001) (refusing to find the obtaining of a loan from a Chicago bank a sufficient contact to warrant the exercise of personal jurisdiction by a Chicago court). Indeed, ARS cites to no legal authority to support its contention that it does.

In sum, ARS has failed to satisfy its burden. Plainly, CGI has not engaged in the sort of forum activity that will permit the exercise of general personal jurisdiction over it. CGI's counsel's acceptance of service does not equate to the submission of personal

8

jurisdiction, and the mere fact that ARS could have effected service on a member of CGI's Board of Directors in Massachusetts has no impact on the analysis. Settled Massachusetts precedent confirms this. CGI has not transacted business in the District so as to support the exercise of general personal jurisdiction.

### 2. None of CGI's Contacts Are Sufficient To Provide A Basis For The Exercise of Specific Jurisdiction.

Specific jurisdiction exists when "there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." *Boston Scientific v. Bonzel*, 132 F. Supp. 2d 45, 49 (D. Mass. 2001), citing *Massachusetts School of Law v. American Bar Assoc.*, 142 F.3d 26, 34 (1st Cir. 1998). To find specific jurisdiction over a licensor, this Court must conclude that the licensor "purposefully avail[ed] himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*, citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

### a. CGI Does Not Purposefully Direct Its Activities at Massachusetts so as to Give Rise to the Exercise of Specific Personal Jurisdiction.

Although ARS would have it otherwise, the mere fact that CGI entered into a license with a Massachusetts resident does not mean that CGI purposefully directed activity at Massachusetts for purposes of this analysis. *See, e.g., Boston Scientific Corp. v. Bonzel,* 132 F. Supp. 2d 45, 50 (D. Mass. 2001) (holding that no personal jurisdiction existed and requiring a contract to sell goods or services in Massachusetts).

ARS points to CGI's "worldwide license and research collaboration" with Cambridge-based Mitotix as a purposeful contact with Massachusetts. This contention ignores the global nature of the activity. It is *worldwide* work; there is nothing

9

particularly directed at Massachusetts. Massachusetts happens to have research facilities and institutions working in the same studies of gene therapy, but Massachusetts is not CGI's destination for work in connection with gene therapy study.

The connection between the State of Massachusetts and CGI is even more tenuous, if possible, with respect to the license to TKT. The license is non-exclusive, and does not entail any continuing research obligations. While TKT does have a place of business in Massachusetts, that is irrelevant to the action, and to CGI. The work involved in the invention at issue was conducted long prior to the license execution, in a state other than Massachusetts. It was not until later that TKT even expressed a desire to license the patent rights. CGI's patent application was first filed on November 6, 1989, as U.S. Patent Application 07/437,069. (See the Decision below, Exhibit 1 to ARS' Amended Complaint, page 10.) The TKT/CGI license did not occur until June, 2002. ARS Amended Complaint, ¶9.

        **b.    Neither The Interference Appeal Nor Any Infringement Claims Relate to CGI's Activities In Massachusetts.**

Significantly, the GVAX research does not even involve the technology at issue. The business that ARS references CGI as having conducted with Cambridge-based Mitotix does not even relate to the patents at issue in either the Interference Appeal or ARS's infringement claim. The GVAX research collaboration involves recombinant gene therapy, Affidavit of Fred Kelly in support of the ARS Opposition to CGI's Motion to Dismiss, ¶5 and the materials at Tab 3 cited therein. In contrast, the patents at issue in the Interference Appeal and the infringement matters deal with gene activation Exhibit 1 to ARS' Amended Complaint, pp. 11 - 36. The technology is wholly different.

### c. Any Exercise of Specific Jurisdiction Would Be Unreasonable and Unfair.

None of the cases ARS cites involve a defendant like CGI. ARS speculates that CGI's contacts with Massachusetts "have generated millions of dollars in revenue for CGI and involve the testing of products "on Massachusetts residents," but provides no solid evidence. Neither specific nor general *in personam* jurisdiction can be asserted over CGI. There is no reasonable or fair basis to justify it. Constitutional concerns cannot be satisfied. This action should be dismissed.

### C. Under The First-Filed Rule Principles, All The Interference Issues Should Proceed In The DC Action.

Where two identical actions are pending concurrently in two federal courts, the first-filed action is generally preferred. *See Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *overruled on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 132 L. Ed. 2d 214, 115 S. Ct. 2137 (1995). This reflects a "strong presumption in favor of a plaintiff's forum choice." *See The Holmes Group, Inc. v. Hamilton Bearch/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 15 (D. Mass. 2002) quoting *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996). Moreover, when an action is already proceeding with the same issues, principles of judicial economy dictate that only one action proceed. *See, e.g., DuPont Pharmaceuticals Co. v. Sonus Pharmaceuticals*, 122 F. Supp. 2d 230, 231 (D. Mass. 2000) (transferring patent litigation).

While the two actions were initiated one day apart, they are no longer temporal equals. The DC Action is much further along and proceeding rapidly. It has progressed, with at least a year of litigation already complete. All parties are joined and the time to amend the pleadings has closed. Fact discovery is on the verge of completion. The entire

case should be trial-ready by early 2006. In contrast, in this action, given the lack of personal jurisdiction, there is not even an Answer or Counterclaim to ARS' Complaint on file. The goal of judicial economy and preference for first-filed cases would be ill served by deferring to the case here, a second case on an identical Complaint and Counterclaim, especially where ARS has already conceded that jurisdiction and venue properly lie in DC.

Applying the first-filed rule to permit all the Interference issues to proceed in the DC Action comports with the policy behind the first-to-file rule, in that the DC Action was not filed as a preemptive declaratory judgment action but instead was filed properly as an appeal of right in the preferred forum under 35 U.S.C. Section 146. If this case is not dismissed in its entirety for want of *in personam* jurisdiction, there is no reason to justify any decision other than one to sever the Interference Count from this suit and transfer it to the United States District Court for the District of Columbia. In that instance, CGI respectfully requests that this Court transfer the present action to the D.C. Action.

**D.    If this Court Can Exercise Personal Jurisdiction over CGI, Transfer of Count I to the District Court for the District of Columbia is Warranted**

Count I (the Interference Appeal) and Count II (the infringement claim) have already been severed, and the infringement claim stayed pending resolution of the Interference issues. As counsel for ARS expressed during the hearing on the ARS Motion for Limited Discovery, and the TKT Motion to Dismiss, it is the desire of ARS to proceed to seek relief under its infringement claim as rapidly as possible. Transcript, Hearing of August 29, 2005, p. 10, l. 22 - p. 11, l. 11. This means bringing the

Interference issues to a conclusion as rapidly as possible. As noted, the Interference Appeal, which presents issues identical to those that might be contested here, will be trial ready by spring 2006. Further, both parties represented to Judge Bates at a Status Conference on September 15, 2005 that they expected that all issues would be the subjects of dispositive motions. Under these conditions, even if the Court can exercise personal jurisdiction, a transfer to the far more developed case jurisdiction, particularly as that is most likely to serve the interests of not only CGI but the expressed desire of ARS as well, should be favored.

The ARS Opposition reassesses the various factors that weigh in favor of or against a transfer of Count I, should this Court find it can exercise personal jurisdiction over CGI. The District Court for the District of Columbia looked at those exact same arguments a year ago, and denied the ARS Motion to Transfer. While Judge Bates did leave open the possibility of revisiting transfer following this Court's decision on personal jurisdiction, none of the transfer factors have changed in the interim - <u>save one</u>. While the cases were filed only a couple of weeks apart originally, this case is in the same state as it was when it was filed. In the meantime, the DC Action has moved forward substantially. The factor of favoring the first filed case, and the underlying policies, while perhaps marginal a year ago, are now compelling. Principles of judicial economy, and the importance of a uniform resolution, compel the conclusion that only one Appeal from Interference 105,114 should go forward. Given the fact that the case in DC was <u>effectively filed</u> and pursued more than a year in advance of the same Count here, all policies favor consolidating the cases in DC.

## IV.   CONCLUSION

There are not two routes to secure jurisdiction over non-resident defendants, as ARS would have this Court accept. Either a non-consenting defendant is present and thus amenable to suit for all purposes, or the non-consenting defendant is not a resident of Massachusetts, and in that case the only basis for the exercise of jurisdiction is the long arm statute, Section 3. The theory that simple service on a non-resident non-consenting defendant, like CGI, somehow permits the exercise of personal jurisdiction over such a defendant is offensive to the notions of due process, and runs against the case law of this state.

Even if this Court were to find a basis for the exercise of jurisdiction over CGI, maintenance of the Interference Appeal here rather than in the DC Action would be counter to the policies embedded in the law and cases dealing with issues of transfer. The DC Action is a year ahead of this one. If it is indeed the desire of ARS to proceed as rapidly as possible to its claim against TKT, then a transfer not only satisfies judicial economy and notions of fair play, it meets the expressed desire of both parties.

It is worth noting that the District of Columbia is the ONLY jurisdiction where CGI could have brought its claim. ARS is an alien corporation with no clear presence in the United States. 35 USC 146 provides clear and exclusive jurisdiction under that circumstance. ARS agrees that venue and jurisdiction properly lie in DC. That suit is running a year ahead of this one. Retaining the claim in Massachusetts, even if it was consistent with jurisdictional law, would simply not be consistent with the case law, the rule, or the parties' expressed desires.

        CELL GENESYS, INC.,

        By its attorneys,

        /s/ T. Christopher Donnelly
        T. Christopher Donnelly (BBO# 129930)
        Donnelly, Conroy & Gelhaar, LLP
        One Beacon Street, 33rd Floor
        Boston, Massachusetts 02108
        (617) 720-2880

        Steven B. Kelber
        Merchant & Gould
        901 Fifteenth St.
        Suite 850
        Washington, DC 20005

Dated: September 16, 2005