IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CELL GENESYS, INC., ) | |
| ) | |
| Plaintiff/Counterdefendant, ) | |
| ) | |
| v. ) | C.A. No. 05-12448-MLW |
| ) | |
| APPLIED RESEARCH SYSTEMS ARS ) | |
| HOLDING, N.V. ) | |
| ) | |
| Defendant/Counterclaimant. ) | |
| ) | |
| APPLIED RESEARCH SYSTEMS ARS ) | |
| HOLDING, N.V., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04 11810 MLW |
| ) | |
| CELL GENESYS, INC. AND ) | |
| TRANSKARYOTIC THERAPIES, INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT CELL GENESYS, INC.'S ANSWER
TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND
CELL GENESYS'S COUNTERCLAIMS**

Defendant Cell Genesys, Inc. ("CGI") for its Answer and Counterclaims in Civil Action No. 04-11810 against plaintiff Applied Research Systems ARS Holding, N.V. states as follows:

**ANSWER**

CGI responds to the allegations of the Amended Complaint, by corresponding numbered paragraphs, as follows:

1. Denied in part. CGI admits that Applied Research Systems ARS Holding, N.V. has represented it is the owner of the entire right, title and interest in and to U.S. Patent No.

2

5,272,071 ("the '071 patent"), but submits that its parent company Serono S.A. has supported, funded and directed the prosecution of the '071 patent, the work conducted by the inventor and those of his laboratory having a bearing on the '071 patent, the conduct of this litigation and the parallel litigation in the District of Columbia (now transferred) and the negotiations seeking to settle this litigation. In short, ARS appears to be an alter ego of Serono, S.A. a global biotechnology company with over 4,900 employees and worldwide revenues of USD 2.46 billion and a net income of USD 494 million in the year 2004, headquartered in Geneva, Switzerland. As used herein, the term "ARS" refers to Applied Research Systems Holding, N.V. and Serono, S.A.

     2.    Admitted.

     3.    Admitted.

     4.    Admitted.

     5.    Denied to the extent that this Court does not possess personal jurisdiction over CGI in this judicial district.

     6.    Admitted.

     7.    CGI is without knowledge or information sufficient to form a belief as to the truth of the assertion, and so denies the same.

     8.    Admitted.

     9.    Admitted that CGI and TKT entered into a license agreement in June 2002; the rest of the averments of this paragraph are denied.

     10.    Defendant CGI repeats the responses contained in paragraphs 1-9 as if fully set forth herein.

11.  Admitted that ARS is dissatisfied with the June 22, 2004 Decision on Preliminary Motions ("the Decision") of the U.S. Patent and Trademark Office Board of Patent Appeals and Interferences ("the Board") in Interference 105,114 ("the '114 Interference") declared between U.S. Patent Application Serial No. 08/102,390 ("the '390 application"), assigned to CGI, and the '071 patent, assigned to ARS. Admitted that ARS seeks reversal of certain aspects of the Decision; denied with respect to the implication that ARS's position has merit and particularly with respect to ARS's characterization of the nature of the Board's proceedings as determining claim invalidity, rather than unpatentability, over the prior art. In an interference, no patent is entitled to a presumption of validity. Accordingly, questions of validity are not before the Board, and not presented to this Court. Plaintiff has the burden of demonstrating patentability.

12.  Admitted that ARS seeks reversal of the Decision on the grounds indicated; denied with respect to the implication that those grounds have merit.

13.  CGI is without knowledge or information sufficient to form a belief as to the truth of the assertion, and so denies the same.

14.  CGI is without knowledge or information sufficient to form a belief as to the truth of the assertion, and so denies the same.

15.  CGI is without knowledge or information sufficient to form a belief as to the truth of the assertion, and so denies the same.

16.  CGI is without knowledge or information sufficient to form a belief as to the truth of the assertion, and so denies the same.

## COUNTERCLAIMS

CGI, as counterclaim plaintiff, brings against ARS the counterclaims described more fully below.

### COUNT I: MODIFICATION OF THE BOARD'S FINAL DECISION AND FINAL JUDGMENT

1.      CGI, assignee of the '390 application and a party dissatisfied with the result of the '114 Interference, seeks review and modification of the Decision and in particular the Final Judgment issued June 24, 2002 based on that decision.

### CGI Preliminary Motion 2: U.S. Patent No. 6,588,313

2.      The Board committed clear error in denying CGI Preliminary Motion 2 as to Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of the '071 patent, which are unpatentable over the prior art, particularly U.S. Patent No. 6,588,313 ("the '313 patent").

3.      CGI's Preliminary Motion 2 sought entry of judgment on the grounds that all claims of the '071 patent were unpatentable over prior art, including the '313 patent. With respect to the '313 patent, the Board correctly observed in its Decision that "U.S. Patent 6,588,313 would be prior art under 35 U.S.C. §102(e), if Claims 1-58 of ARS's '071 patent were not entitled to benefit under 35 U.S.C. §120 of the December 22, 1989, filing date of its patent U.S. Application 07,454,783." Decision, page 38.

4.      Accordingly, the Board concluded that it would "consider that the patentability of Claims 1-58 of ARS '071 patent . . . over, if necessary, Mouellic's U.S. Patent 6,588,313." Decision, page 40.

5.      The Board correctly observed that Claims 1-58 of the '071 patent were entitled to benefit under 35 U.S.C. § 120 of only the *December 21, 1990* filing date; therefore, the '313 patent, according to the Board's reasoning, was prior art to the '071 patent.

4

6.      The Board *at no time considered the patentability of the '071 patent claims over the '313 patent*, notwithstanding its commitment at page 40 of the Decision to do so.  As ARS offered no patentable distinction of its claims over the '313 patent than priority, the Board's failure constituted clear error.

### CGI Preliminary Motion 2:
### Japanese Published Application JP-A-1215280

7.      The Board committed clear error in deciding that CGI did not demonstrate a date of invention of the '390 application before August 29, 1989, the date at which Japanese Published Application JP-A-1215280 ("the '280 publication") became available as prior art with respect to the '390 application.  Based on its erroneous holding on prior invention, the Board decided that CGI was not entitled to Claims 105, 110-112 and subsequently Claims 107-109 of the '390 application in view of the '280 publication in combination with other prior art.

8.      CGI relied in its Preliminary Motion 2 *inter alia* on the '280 publication, which was available to the public as of August 29, 1989, a little more than two months in advance of CGI's effective filing date; therefore, the '280 publication was available as art under 35 U.S.C. §102(a) as to the CGI claims, unless CGI could establish a date of invention in advance of August 29, 1989.  To that end, CGI relied on the Declaration of Bert Rowland and other contemporaneous documents supporting a date of invention no later than July 26, 1989.

9.      Although Rowland's testimony was not controverted by any testimony from any source, and although the Board relied throughout its decision on Rowland's testimony to draw conclusions with respect to the art, *e.g.*, Decision at pages 24-25, the Board nevertheless disregarded Rowland's testimony, finding it not credible.  The Board erroneously required the testimony to provide "inherent disclosure" of the claimed invention, *e.g.*, Decision at page 100,

rather than the appropriate—and less strict—requirement that the testimony must provide a preponderance of evidence of earlier invention.

10.     Thus, the Board clearly erred in concluding that a preponderance of the evidence did not demonstrate a date of invention by Arthur Skoultchi, the inventor of the '390 application, in advance of August 29, 1989, which removes the '280 publication as prior art. Because the '280 publication is not properly prior art, the Board further erred in deciding that CGI is not entitled to Claims 105, 110-112 and subsequently Claims 107-109 of the '390 application in view of the '280 publication or any combination of prior art that includes the '280 publication.

### CGI Preliminary Motions 4 and 5

11.     Through Preliminary Motions 4 and 5, CGI timely moved to add Claims 113-147 to its application. The Board treated those Motions exclusively at pages 135 and 136 of its Decision, where—without making any findings of fact or conclusions of law on which to base its conclusion—the Board denied the two Motions with the bare assertion that "Genesys has not shown that the subject matter is patentable to Genesys as required by 37 C.F.R. §1.637(c) (ii)." Decision at page 136. The Board's failure to support this denial with any findings whatsoever is itself legal error, and the conclusion is not sustainable on that basis.

12.     In the absence of any findings or explanation, one must comb the Decision itself to find the Board's reasoning. In the 145 pages of the Decision, the Board never discussed CGI Preliminary Motions 4 and 5, or more importantly, the claims thereof. One is left with the irresistible impression that the Board was relying on some unnamed prior art for its conclusion, since the Decision discussed preclusion of patentability solely on the basis of prior art. This is clear error.

6

13.     The requirement of 37 C.F.R. §1.637(c) (ii) to "show the patentability to the applicant of each claim proposed to be . . . added and apply the terms of the claim proposed to be . . . added to the disclosure of the application" has been interpreted *by the Board itself* to require only a showing that the claim has support in the application as originally filed in the form required by 35 U.S.C. §112, first paragraph, *not* that the claim is free of the prior art. The Board is not free to depart from this public notice of requirements, which were specifically noted and satisfied in CGI Preliminary Motions 4 and 5. The Board's decision in contravention of its own standard of proof was clear error.

### CGI Preliminary Motion 3

14.     CGI Preliminary Motion 3 sought entry of judgment that Claims 1-58 of the '071 patent were unpatentable for lack of enabling disclosure under 35 U.S.C. §112, first paragraph. For reasons that are unclear, the Board, having found certain claims of both parties were unpatentable over prior art, dismissed those portions of CGI Preliminary Motion 3. Decision, page 136. As to the remaining claims, the Board denied the Motion.

15.     The Board reasoned erroneously that because CGI relied upon specific examples within the cited prior art to show that certain claims (that the Board found were directed to a patentably distinct invention) would have been obvious to those of skill in the art, those same teachings would have enabled the entire scope of the claims of the '071 patent found patentable over that art. Decision, page 137. If the prior art were insufficient to render the invention of Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of the '071 obvious, it necessarily would be insufficient to enable the same. This is legal error by the Board.

7

## No Interference-in-Fact

16.  The Final Judgment held in part that ARS was not entitled to Claims 1, 2, 5-7, 9-20, 22, 23, 25, 26, 32-39, 52-54, 56 and 57, and that CGI was not entitled to Claims 105, 110-112 and subsequently, Claims 107-109. The apparent basis for this judgment, leaving patentable the remaining claims of ARS and Claim 106 of CGI, was that the lost claims were unpatentable over prior art. The Board then held that the surviving claims, all originally designated as corresponding to the Count, were not in interference-in-fact—relief neither party had requested—and terminated the '114 Interference on that ground.

17.  For the reasons set forth above, the Board erred when it decided that CGI was not entitled to Claims 105, 110-112 and subsequently, Claims 107-109. The Board likewise committed clear error, when it determined no interference-in-fact solely on the basis of CGI's Claim 106. Surviving ARS claims, including Claim 3, and surviving CGI Claim 106 were properly designated as corresponding to the sole Count of the '114 Interference and continue to be directed to the same patentable invention.

## COUNT II: DECLARATION THAT THE '071 PATENT IS VOID AND UNENFORCEABLE DUE TO ARS' FAILURE TO DISCLOSE BEST MODE

### Withheld Disclosure of Best Mode

18.  Scott Chappel is named as the sole inventor of the '071 patent. His testimony was not offered in the course of Interference 105,114. CGI had no opportunity to compel a deposition of Chappel during the '114 Interference as the rules do not provide for wide ranging discovery. Accordingly, Scott Chappel's deposition was taken for the first time in connection with this case on January 19, 2006.

19.  Prior to arriving at the invention claimed in the '071 patent, and independent of the patentability of its claims, Chappel had made use of an "in-house" genetically modified

dihydrofolate reductase (DHFR) gene as an expressible, amplifiable gene, which is also a selectable gene, in experiments involving modification of a cell's genome. When Chappel began to conduct experiments directed to allegedly demonstrating the feasibility of the practice of the subject matter claimed in the '071 patent, Chappel used this in-house mutated DHFR gene as both a selectable marker gene and an expressible, amplifiable gene.

20. Chappel testified that the use of the genetically altered mutant DHFR gene in his laboratory in connection with the work done with respect to the subject matter claimed in the '071 patent offered an advantage over the use of other commercially available non-mutated DHFR genes. Chappel testified that the genetically altered DHFR gene was used in the work performed that is reported as an example in the '071 patent, because it was advantageous. This testimony was not previously offered in Interference 105,114 nor would CGI have had reason to suspect that Chappel made use of an in-house mutated DHFR that conferred a commercial advantage on its user during the pendency of Interference 105,114.

21. The mutant DHFR gene used by Chappel is nowhere described or identified in the '071 patent. The example as described in the '071 patent does not mention the use of a mutated or proprietary (in-house) DHFR gene, although it does specifically mention the use of a DHFR gene. The DHFR gene used by Chappel corresponds to the expressible, amplifiable gene expressly recited in the claims of the '071 patent, as well as the selectable marker gene expressly referred to in the claims of the '071 patent.

22. Chappel and ARS withheld, deliberately and with knowledge, the information that the best mode of practicing the method claimed in the '071 patent involved the use of a genetically altered DHFR gene which use conferred a commercial advantage on the user.

9

## COUNT III: DECLARATION THAT '071 PATENT IS VOID AND UNENFORCEABLE DUE TO ARS' INEQUITABLE CONDUCT

23.  The withholding of the best mode of practicing the invention claimed in the '071 patent (see paragraphs 18-22 above) constitutes a violation of the requirements of disclosure embraced by and set forth in 37 C.F.R. §56, and constitutes inequitable conduct.

### Other Withheld Material Information

24.  ARS inventor Scott Chappel further withheld material information in the form of a pending patent application naming Chappel and Christie Kelton as co-inventors filed six months prior to the filing date of the '071 patent, U.S. Serial Application 07,368,628 (*see*, U.S. Patent 5,240,832 and related cases 5,602,006, 5,658,760, and 5,674,711). That patent application, which was not public at the time the '071 patent was filed and thus was not available in any form to the examiner of the '071 patent, disclosed all the information necessary to practice the example of the '071 patent, and therefore the subject matter claimed therein, except that the earlier filing did not teach the use of a targeting vector that would integrate with a cell's genome employing homologous recombination.

25.  The use of a targeting vector that would integrate with a cell's genome employing homologous recombination was well known by the time the '071 patent was the subject of an initial filing in December of 1989. Indeed, the '071 patent itself recognizes that such targeting vectors were useful in the modification of cell line genomes.

26.  Had the examiner been advised of the existence of the prior filing by Kelton and Chappel, which constituted prior art with respect to the '071 patent, the combination of that prior filing with the knowledge of the use of homologous recombination targeting vectors would have constituted prior art closer to the subject matter claimed in the '071 patent than any art made of

record in the prosecution of the '071 patent. The deliberate withholding of the prior art filing by Chappel and Kelton constituted inequitable conduct.

### Misrepresentation Regarding Basis for Allowance of CIP Application

27.    During the prosecution of the '071 patent, the claims of the initial filing of December, 1989, were indicated to be allowable. This initial filing did not disclose the subject matter of claim 3 of the '071 patent.

28.    Chappel testified that claim 3 of the '071 patent, which requires only the insertion of an amplifiable gene by homologous recombination was not likely to work, and was not his invention. He did not intend to claim this invention. The disclosure filed by Chappel always indicated that the use of an expressible, amplifiable gene as recited in claim 3 was an additional option to the insertion of a regulatory sequence using homologous recombination, not an alternative to the use of a regulatory gene.

29.    The allowed initial filing of the Chappel application was withdrawn in 1992, in favor of a continuation-in-part application ("CIP"). The CIP application included certain modifications not present in the 1989 application. One was the insertion of the example. Chappel did not provide that information, and was not responsible for its inclusion. It also indicated for the first time that the use of an amplifiable gene, alone, was an alternative (and/or) to the use of a regulatory gene as recited in claims 1 and 2 of the '071 patent. Chappel did not provide that modification, was unaware of it and did not improve it.

30.    The CIP filing also provided, for the first time, a claim corresponding to Claim 3 of the '071 patent asserted by ARS herein, that is, a claim reciting solely the insertion of an expressible, amplifiable gene by homologous recombination as a means for modifying the expression of a protein by a cell, without inserting a regulatory sequence.

11

31.     Notwithstanding the many changes between the 1989 filing, and the CIP filed in 1992, ARS repeatedly urged the PTO to allow the claims of the CIP on the basis of the allowance of the different, earlier and more limited claims. ARS deliberately misled the Examiner into believing the CIP application did not introduce new matter, or new claims, as a method of securing an allowance of the CIP application without substantive examination.

32.     Had in fact ARS advised the Examiner and the U.S. Patent Office of the many differences between the 1989 filing and the 1992 CIP, and the fact that these changes were not made by the sole inventor, Scott Chappel, the U.S. Patent Office and the Examiner would have considered the 1992 CIP filing differently. ARS deliberately misled the Examiner to promote quick issuance of the '071 patent.

### Summary of Inequitable Conduct

33.     In withholding the best mode, in withholding the closest and therefore material prior art, and in misrepresenting to the examiner that the earlier indication of allowability of the 1989 case was a basis for allowing the CIP application, ARS committed inequitable conduct.

### COUNT IV: EXCEPTIONAL CASE PURSUANT TO 35 U.S.C. § 285

34.     The averments of paragraphs 18-33 are repeated as if fully set forth herein.

35.     In addition to the inequitable conduct committed by ARS in the prosecution of the '071 patent, ARS has engaged in conduct intended to frustrate the ability of CGI to conduct the litigation pursuant to the Federal Rules of Civil Procedure.

36.     After twice delaying the deposition of Scott Chappel, ARS agreed, through counsel, to conduct the deposition in the city of his residence, Boston, on December 1, 2005. Although at all times leading up to December 1, 2005 and on December 1, 2005 it was known to counsel for ARS that both Chappel and counsel would be available for that properly noticed

12

deposition, nether counsel nor witness appeared on that day. The Court subsequently imposed sanctions against ARS in the form of a monetary award as a result of that conduct.

37. Immediately after leaving the Court on January 18, 2006, and on the eve of the deposition of Scott Chappel, at approximately 3:50 p.m. counsel for ARS handed counsel for CGI numerous documents whose production had been requested months previously, documents that include records of Scott Chappel with respect to the development of the subject matter addressed in the '071 patent. Counsel at no time provided any explanation of why this production was so tardy, nor indicated why the production could not have been made earlier.

38. In the absence of an explanation, these corporate documents should have been produced much earlier. Their production by ARS immediately after having been sanctioned for discovery abuse is extraordinary. It could only have been intended to frustrate the efforts of counsel for CGI in deposing Scott Chappel, something that CGI and its counsel had not previously had the opportunity to engage in.

39. The law firm representing ARS herein, Mitchell, Gerstein et al., entered into a consulting agreement with Scott Chappel shortly after this litigation was commenced. That agreement provides that Chappel is to be compensated for his services as a fact witness in this proceeding at a rate of three hundred dollars per hour. Scott Chappel does not receive remuneration from his job at a value close to three hundred dollars per hour. Chappel did not forego any business opportunities in connection with his work as a fact witness in this case.

40. While the agreement between Chappel and the law firm representing ARS is clearly material to Chappel's testimony, it has not been produced. The income provided to Chappel constitutes an unreasonable windfall and unnecessarily raises questions as to his

testimony. Chappel at no time indicated he would not have appeared had he been offered compensation corresponding to lost wages and expenses.

41.     On December 20, 2005, counsel for CGI served on counsel for ARS a request for production of documents focused very specifically on documents prepared and signed by Scott Chappel in connection with an action in Europe involving the European counterpart of the '071 patent. In that action, the European patent was revoked - in part, over the prior invention of Skoultchi. During that European action (an Opposition) Chappel provided sworn documents, and may have provided additional written materials. The request for production of documents dated December 20, 2005 was timed to secure those documents no later than the deposition of Chappel, under the 30 day production requirement of Federal Rule of Civil Procedure 34.

42.     Counsel for ARS did not respond to the request for production of documents. Counsel for ARS was reminded of the outstanding production by email on January 9, 2006 at 9:24 am (Eastern Standard Time). During the deposition of Chappel, counsel for CGI reminded counsel for ARS of the outstanding request for production of documents, and the fact that production was due. Counsel for ARS professed to have no knowledge of the request, but did state on the record that CGI would receive an answer on the request. The date of that exchange was January 19, 2006. ARS did not reply to the document requests until January 31, 2006-- nearly two weeks late. In its tardy response, ARS refused to produce the requested documents.

43.     Rather than seek review of the decision of the Board of Patent Appeals and Interferences, ARS has knowingly and deliberately prolonged and expanded this litigation by asserting claims of patent infringement, specifically asserting infringement of Claim 3 and other claims of the '071 patent secured by inequitable conduct. In so doing, ARS has damaged CGI, and delayed and inflated the cost of seeking review of the decision of the Board in Interference

105,114 the right to which review is secured to CGI by statute. The attempted enforcement of a patent secured by inequitable conduct is recognized as an anti-trust violation the measure of which is the litigation costs and expenses incurred by CGI, multiplied up to three times as permitted by statute.

44. The totality of behavior by ARS, and its counsel, in the prosecution of the '071 patent, and the conduct of this litigation, renders this case exceptional pursuant to 35 U.S.C. §285.

## REQUESTS FOR RELIEF

WHEREFORE, CGI requests the Court enter final judgment:

A. Reversing the Board's denial of CGI Preliminary Motion 2 as to Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of the '071 patent and finding those claims unpatentable over the '313 patent;

B. Reversing the Board's finding that a preponderance of the evidence demonstrates that inventor Skoultchi did not invent the subject matter of the '390 patent prior to August 29, 1989 and reversing the finding based thereon that certain CGI claims, including Claims 108-109 are unpatentable to CGI over the '280 publication and secondary references;

C. Reversing the Board's decision denying CGI's Preliminary Motions 4 and 5;

D. Reversing the Board's decision denying CGI's Preliminary Motion 3;

E. Vacating the Board's determination of No Interference-in-Fact;

F. Finding the '071 patent void and unenforceable by reason of the failure to disclose best mode and the commission of other inequitable conduct;

G. Finding this case to be exceptional pursuant to the provisions of 35 U.S.C. §285;

H. Awarding CGI its costs and attorneys' fees in this action, trebled;

I. Dismissing with prejudice all claims of ARS; and

J. Entering such other and further relief as this Court may deem appropriate.

        Respectfully submitted,

        CELL GENESYS, INC.

        By its attorneys,


        /s/ Steven B. Kelber
        Steven B. Kelber
        Merchant & Gould
        901 Fifteenth Street, N.W.
        Suite 850
        Washington, DC 20005
        Telephone: (202) 326-0300

        T. Christopher Donnelly (BBO #129930)
        Jill Brenner Meixel (BBO #652501)
        Donnelly, Conroy & Gelhaar, LLP
        One Beacon Street, 33rd Floor
        Boston, Massachusetts 02108
        Telephone: (617) 720-2880

Dated: February 3, 2006


### Certificate of Service

I hereby certify that this Answer and Counterclaims filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 3, 2006.

        /s/ Jill Brenner Meixel
        Jill Brenner Meixel (BBO# 652501)