**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CELL GENESYS, INC., )<br>)<br>Plaintiff/Counterdefendant, )<br>)<br>v. )<br>)<br>APPLIED RESEARCH SYSTEMS ARS )<br>HOLDING, N.V. )<br>)<br>Defendant/Counterclaimant. )<br>)<br>APPLIED RESEARCH SYSTEMS ARS )<br>HOLDING, N.V., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CELL GENESYS, INC. and )<br>TRANSKARYOTIC THERAPIES, INC. )<br>)<br>Defendants. ) | C.A. No. 05-12448-MLW<br><br><br><br><br><br><br><br><br><br>C.A. No. 04-11810-MLW |

**ARS'S REPLY TO COUNTS I AND IV OF CELL GENESYS, INC.'S
COUNTERCLAIMS**

Applied Research Systems ARS Holding, N.V. ("ARS") hereby replies to Counts I and IV of defendant Cell Genesys, Inc.'s ("CGI") counterclaims. ARS is concurrently moving to dismiss Counts II and III of CGI's counterclaims and to strike ¶ 43 of Count IV.

ARS replies to Counts I and IV of CGI's counterclaims as follows:

## COUNTERCLAIM COUNT I

1. CGI, assignee of the '390 application and a party dissatisfied with the result of the '114 Interference, seeks review and modification of the Decision and in particular the Final Judgment issued June 24, 2002 based on that decision.

**ANSWER:**

Admitted that CGI seeks review of the Decision and the Final Judgment issued June 24, 2002. All other allegations in this paragraph are denied.

2. The Board committed clear error in denying CGI Preliminary Motion 2 as to Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of the '071 patent, which are unpatentable over the prior art, particularly U.S. Patent No. 6,588,313 ("the '313 patent").

**ANSWER:**

Denied.

3. CGI's Preliminary Motion 2 sought entry of judgment on the grounds that all claims of the '071 patent were unpatentable over prior art, including the '313 patent. With respect to the '313 patent, the Board correctly observed in its Decision that "U.S. Patent 6,588,313 would be prior art under 35 U.S.C. §102(e), if Claims 1-58 of ARS's '071 patent were not entitled to benefit under 35 U.S.C. § 120 of the December 22, 1989, filing date of its patent U.S. Application 07,454,783." Decision, page 38.

**ANSWER:**

Admitted that CGI's Preliminary Motion 2 sought entry of judgment on the grounds that all claims of the '071 patent were unpatentable over several references. All other allegations in this paragraph are denied, at least because CGI has misquoted the Board's statement in the Decision.

4.   Accordingly, the Board concluded that it would "consider that the patentability of Claims 1-58 of ARS '071 patent. . . over, if necessary, Mouellic's U.S. Patent 6,588,313." Decision, page 40.

**ANSWER:**

Denied. Once again, CGI has misquoted the Board's statement in the Decision. At page 40 of its Decision, the Board actually stated:

> Finally, we will consider the patentability of the subject matter defined by Claims 1-58 of ARS '071 patent and claims 105-112 of Genesys's involved application over the teachings of Japanese Patent Publication 1-215,280, published August 29, 1989, commonly cited by Genesys and ARS against each other's claims designated as corresponding to the count, and if necessary, over Mouellic's U.S. Patent 6,528,313.

5.   The Board correctly observed that Claims 1-58 of the '071 patent were entitled to benefit under 35 U.S.C. § 120 of only the *December 21, 1990* filing date; therefore, the '313 patent, according to the Board's reasoning, was prior art to the '071 patent.

**ANSWER:**

Denied.

6.   The Board *at no time considered the patentability of the '071 patent claims over the '313 patent*, notwithstanding its commitment at page 40 of the Decision to do so. As ARS offered no patentable distinction of its claims over the '313 patent than priority, the Board's failure constituted clear error.

**ANSWER:**

Denied.

7.   The Board committed clear error in deciding that CGI did not demonstrate a date of invention of the '390 application before August 29, 1989, the date at which Japanese Published Application JP-A-1215280 ("the '280 publication") became available as prior art with respect to the '390 application. Based on its erroneous holding on prior invention, the Board decided that CGI was not entitled to Claims 105, 110-112 and subsequently Claims 107-109 of the '390 application in view of the '280 publication in combination with other prior art.

**ANSWER:**

Admitted that the Board decided that Claims 105 and 107-112 of the '390 application are unpatentable in view of the prior art. All other allegations in this paragraph are denied.

8. CGI relied in its Preliminary Motion 2 *inter alia* on the '280 publication, which was available to the public as of August 29, 1989, a little more than two months in advance of CGI's effective filing date; therefore, the '280 publication was available as art under 35 U.S.C. § 102(a) as to the CGI claims, unless CGI could establish a date of invention in advance of August 29, 1989. To that end, CGI relied on the Declaration of Bert Rowland and other contemporaneous documents supporting a date of invention no later than July 26, 1989.

**ANSWER:**

Admitted that CGI relied in its Preliminary Motion 2 on, *inter alia*, the '280 publication, that the '280 publication was available as prior art under 35 U.S.C. § 102(a) against all of the claims in the '390 application, and that CGI relied on the Declaration of Bert Rowland and other documents in a failed attempt to antedate the '280 publication. Denied that the Declaration of Bert Rowland or any "contemporaneous documents" relied upon by CGI support "a date of invention no later than July 26, 1989." All other allegations in this paragraph are denied.

9. Although Rowland's testimony was not controverted by any testimony from any source, and although the Board relied throughout its decision on Rowland's testimony to draw conclusions with respect to the art, *e.g.,* Decision at pages 24-25, the Board nevertheless disregarded Rowland's testimony, finding it not credible. The Board erroneously required the testimony to provide "inherent disclosure" of the claimed invention, *e.g.,* Decision at page 100, rather than the appropriate—and less strict—requirement that the testimony must provide a preponderance of evidence of earlier invention.

**ANSWER:**

Admitted that at page 138 of the Decision, the Board stated "While we have found Rowland's testimony generally not credible, we cannot help but notice that his testimony, 'I believe that once you had the idea, all the enabling technology was available' (Exh. 2055, p. 36), is inconsistent with the argument now made by [Cell] Genesys." Admitted that at page 94 of the Decision, the Board found Rowland's testimony "not particularly credible." Admitted that at page 109 of the Decision, the Board stated "We are as impressed, if not more impressed, by Rowland's lapses of memory as we are impressed by Rowland's memory." All other allegations in this paragraph are denied.

10. Thus, the Board clearly erred in concluding that a preponderance of the evidence did not demonstrate a date of invention by Arthur Skoultchi, the inventor of the '390 application, in advance of August 29, 1989, which removes the '280 publication as prior art. Because the '280 publication is not properly prior art, the Board further erred in deciding that CGI is not entitled to Claims 105, 110-112 and subsequently Claims 107-109 of the '390 application in view of the '280 publication or any combination of prior art that includes the '280 publication.

**ANSWER:**

Denied.

11. Through Preliminary Motions 4 and 5, CGI timely moved to add Claims 113-147 to its application. The Board treated those Motions exclusively at pages 135 and 136 of its Decision, where—without making any findings of fact or conclusions of law on which to base its conclusion—the Board denied the two Motions with the bare assertion that "Genesys has not shown that the subject matter is patentable to Genesys as required by 37 C.F.R. § 1.637(c) (ii)." Decision at page 136. The Board's failure to support this denial with any findings whatsoever is itself legal error, and the conclusion is not sustainable on that basis.

**ANSWER:**

Admitted that Cell Genesys failed to show that its proposed claims are patentable, and that the Board found that the motion failed to comply with the requirements of the rule. All other allegations in this paragraph are denied.

12. In the absence of any findings or explanation, one must comb the Decision itself to find the Board's reasoning. In the 145 pages of the Decision, the Board never discussed CGI Preliminary Motions 4 and 5, or more importantly, the claims thereof. One is left with the irresistible impression that the Board was relying on some unnamed prior art for its conclusion, since the Decision discussed preclusion of patentability solely on the basis of prior art. This is clear error.

**ANSWER:**

Denied. The Board clearly stated that it was relying on CGI's failure to comply with the applicable rules.

13. The requirement of 37 C.F.R. § 1.637(c) (ii) to "show the patentability to the applicant of each claim proposed to be... added and apply the terms of the claim proposed to be added to the disclosure of the application" has been interpreted *by the Board itself* to require only a showing that the claim has support in the application as originally filed in the form required by 35 U.S.C. § 112, first paragraph, *not* that the claim is free of the prior art. The Board is not free to depart from this public notice of requirements, which were specifically noted and satisfied in

CGI Preliminary Motions 4 and 5. The Board's decision in contravention of its own standard of proof was clear error.

**ANSWER:**

Admitted that 37 C.F.R. § 1.637(c)(ii) requires that the applicant show the patentability of each proposed claim and apply each term of the claim to the disclosure of its specification. All other allegations in this paragraph are denied.

14. CGI Preliminary Motion 3 sought entry of judgment that Claims 1-58 of the '071 patent were unpatentable for lack of enabling disclosure under 35 U.S.C. §112, first paragraph. For reasons that are unclear, the Board, having found certain claims of both parties were unpatentable over prior art, dismissed those portions of CGI Preliminary Motion 3. Decision, page 136. As to the remaining claims, the Board denied the Motion.

**ANSWER:**

Admitted that "CGI Preliminary Motion 3 sought entry of judgment that Claims 1-58 of the '071 patent were unpatentable for lack of enabling disclosure under 35 U.S.C. § 112, first paragraph." Admitted that the Board dismissed CGI's Preliminary Motion 3 as moot regarding certain ARS claims and denied that motion as to other ARS claims. All other allegations in this paragraph are denied.

15. The Board reasoned erroneously that because CGI relied upon specific examples within the cited prior art to show that certain claims (that the Board found were directed to a patentably distinct invention) would have been obvious to those of skill in the art, those same teachings would have enabled the entire scope of the claims of the '071 patent found patentable over that art. Decision, page 137. If the prior art were insufficient to render the invention of Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of the '071 obvious, it necessarily would be insufficient to enable the same. This is legal error by the Board.

**ANSWER:**

Denied.

16. The Final Judgment held in part that ARS was not entitled to Claims 1, 2, 5-7, 9-20, 22, 23, 25, 26, 32-39, 52-54, 56 and 57, and that CGI was not entitled to Claims 105, 110-112 and subsequently, Claims 107-109. The apparent basis for this judgment, leaving patentable the remaining claims of ARS and Claim 106 of CGI, was that the lost claims were unpatentable over prior art. The Board then held that the surviving claims, all originally designated as

corresponding to the Count, were not in interference-in-fact—relief neither party had requested—and terminated the '114 Interference on that ground.

**ANSWER:**

Admitted that the Board held that claims 1, 2, 5-7, 9- 20, 22, 23, 25, 26, 32-39, 52-54, 56 and 57 of U.S. Patent No. 5,272,071 and claims 105 and 107-112 in U.S. Patent Application No. 08/102,390 are unpatentable, that claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of U.S. Patent No. 5,272,071 and claim 106 in U.S. Patent Application No. 08/102,390 do not interfere-in-fact, and that the '114 Interference is terminated. All other allegations in this paragraph are denied.

17. For the reasons set forth above, the Board erred when it decided that CGI was not entitled to Claims 105, 110-112 and subsequently, Claims 107-109. The Board likewise committed clear error, when it determined no interference-in-fact solely on the basis of CGI's Claim 106. Surviving ARS claims, including Claim 3, and surviving CGI Claim 106 were properly designated as corresponding to the sole Count of the '114 Interference and continue to be directed to the same patentable invention.

**ANSWER:**

Denied.

## COUNT IV

34. The averments of paragraphs 18-33 are repeated as if fully set forth herein.

**ANSWER:**

Denied.

35. In addition to the inequitable conduct committed by ARS in the prosecution of the '071 patent, ARS has engaged in conduct intended to frustrate the ability of CGI to conduct the litigation pursuant to the Federal Rules of Civil Procedure.

**ANSWER:**

Denied.

36. After twice delaying the deposition of Scott Chappel, ARS agreed, through counsel, to conduct the deposition in the city of his residence, Boston, on December 1, 2005. Although at all times leading up to December 1, 2005 and on December 1, 2005 it was known to counsel for ARS that both Chappel and counsel would be available for that properly noticed deposition, nether counsel nor witness appeared on that day. The Court subsequently imposed sanctions against ARS in the form of a monetary award as a result of that conduct.

**ANSWER:**

Admitted that the deposition of Scott Chappel was postponed several times, that CGI requested and ARS agreed to conduct the deposition in Boston, that the deposition eventually occurred by agreement of the parties on January 19, 2006, and that prior to that deposition, the Court granted in part CGI's motion for sanctions and imposed a monetary sanction on ARS in the amount of $7000. All other allegations in this paragraph are denied.

37.     Immediately after leaving the Court on January 18, 2006, and on the eve of the deposition of Scott Chappel, at approximately 3:50 p.m. counsel for ARS handed counsel for CGI numerous documents whose production had been requested months previously, documents that include records of Scott Chappel with respect to the development of the subject matter addressed in the '071 patent. Counsel at no time provided any explanation of why this production was so tardy, nor indicated why the production could not have been made earlier.

**ANSWER:**

Admitted that ARS produced documents to CGI on January 18, 2006. Denied that "Counsel at no time provided any explanation of why this production was so tardy, nor indicated why the production could not have been made earlier"; as counsel for ARS explained to counsel for CGI in subsequent correspondence, ARS had not obtained the documents in question until shortly before January 18, 2006. Denied that the documents produced on January 18 contained "records of Scott Chappel with respect to the development of the subject matter addressed in the '071 patent." Rather, as Dr. Chappel explained during his deposition, he was not the author of any of the documents in question. All other allegations in this paragraph are denied.

38.     In the absence of an explanation, these corporate documents should have been produced much earlier. Their production by ARS immediately after having been sanctioned for discovery abuse is extraordinary. It could only have been intended to frustrate the efforts of counsel for CGI in deposing Scott Chappel, something that CGI and its counsel had not previously had the opportunity to engage in.

**ANSWER:**

Denied. The documents in question were not "corporate documents" of ARS, and ARS had not been able to locate or produce the documents in question until shortly before January 18, 2006.

39.   The law firm representing ARS herein, Mitchell, Gerstein et al., entered into a consulting agreement with Scott Chappel shortly after this litigation was commenced. That agreement provides that Chappel is to be compensated for his services as a fact witness in this proceeding at a rate of three hundred dollars per hour. Scott Chappel does not receive remuneration from his job at a value close to three hundred dollars per hour. Chappel did not forego any business opportunities in connection with his work as a fact witness in this case.

**ANSWER:**

Denied that any law firm called "Mitchell, Gerstein et al." represents ARS herein. Denied that Dr. Chappel and counsel for ARS, Marshall, Gerstein & Borun LLP, entered into a consulting agreement "shortly after this litigation was commenced"; as Dr. Chappel testified in his deposition, that agreement was not entered into until last year. Admitted that Marshall, Gerstein's consulting agreement with Dr. Chappel provides for Dr. Chappel to be compensated for consulting with and providing services to Marshall, Gerstein in connection with this litigation. Admitted that Dr. Chappel is to be compensated at the hourly rate of $300 under this consulting agreement. Denied that Dr. Chappel "does not receive remuneration from his job at a value close to three hundred dollars per hour." Denied that Dr. Chappel did not forego any business opportunities in connection with his consultation or other participation in connection with this case. All other allegations in this paragraph are denied.

40.   While the agreement between Chappel and the law firm representing ARS is clearly material to Chappel's testimony, it has not been produced. The income provided to Chappel constitutes an unreasonable windfall and unnecessarily raises questions as to his testimony. Chappel at no time indicated he would not have appeared had he been offered compensation corresponding to lost wages and expenses.

**ANSWER:**

Admitted that the consulting agreement entered into between counsel for ARS and Dr. Chappel has not been produced in this case. The agreement in question is not relevant or responsive to any request for discovery that has been properly served by CGI in this case. The compensation received by Dr. Chappel under the agreement in question is entirely reasonable; as Dr. Chappel testified in his deposition, his hourly rate under that agreement is his normal hourly rate by which he is compensated in his consulting agreements with other companies. This compensation does not "constitute[] an unreasonable windfall" and does not "unnecessarily raise[] questions as to his testimony." Dr. Chappel never testified as indicated in this paragraph because during his deposition he was <u>never asked a question seeking that information</u> by counsel for CGI.

41.    On December 20, 2005, counsel for CGI served on counsel for ARS a request for production of documents focused very specifically on documents prepared and signed by Scott Chappel in connection with an action in Europe involving the European counterpart of the '071 patent. In that action, the European patent was revoked - in part, over the prior invention of Skoultchi. During that European action (an Opposition) Chappel provided sworn documents, and may have provided additional written materials. The request for production of documents dated December 20, 2005 was timed to secure those documents no later than the deposition of Chappel, under the 30 day production requirement of Federal Rule of Civil Procedure 34.

**ANSWER:**

Denied. The "request for production of documents" referred to in this paragraph was wholly improper, as no discovery was yet available in the *ARS v. CGI* action in this Court (under which the request was captioned) in December 2005, pursuant to Fed. R. Civ. P. 26(d). Moreover, even if fact discovery had been available to CGI on December 20, 2005, the request in question was not served on counsel for ARS on December 20, 2005, and was not "timed to secure those documents no later than the deposition of [Dr.] Chappel, under the 30 day production requirement of Federal Rule of Civil Procedure 34." Rather, as indicated in the

certificate attached to the request, it was apparently placed in the mail on December 20, 2005, such that even if a response to the improper request had been necessary, it would have been due on January 23, 2006 under Fed. R. Civ. P. 6(e) and 34.

      42.    Counsel for ARS did not respond to the request for production of documents. Counsel for ARS was reminded of the outstanding production by email on January 9, 2006 at 9:24 am (Eastern Standard Time). During the deposition of Chappel, counsel for CGI reminded counsel for ARS of the outstanding request for production of documents, and the fact that production was due. Counsel for ARS professed to have no knowledge of the request, but did state on the record that CGI would receive an answer on the request. The date of that exchange was January 19, 2006. ARS did not reply to the document requests until January 31, 2006-- nearly two weeks late. In its tardy response, ARS refused to produce the requested documents.

**ANSWER:**

Admitted that ARS did not produce documents in response to the improper request for production of documents referred to in this paragraph. Denied that "counsel for ARS professed to have no knowledge of the request, but did state on the record that CGI would receive an answer on the request." Admitted that, during the deposition in question, the following exchange occurred between counsel:

"MR. KELBER:  Actually, Counsel, today is the date for production of that. Can we look forward to that document?

MR. FLOWERS:  Today is the date for production of?

MR. KELBER:  We served a request for production of that specific document in its various forms 30 days ago.

MR. FLOWERS:  I don't know that that's correct.

MR. KELBER:  And I drew it to your attention about two weeks ago in an e-mail.

MR. FLOWERS:  I don't think any response to anything that was served on us would be due today.  I don't think that's correct.

MR. KELBER:  Can we expect a response to it?

- 11 -

MR. FLOWERS: Today?

MR. KELBER: No. Obviously, you're not going to produce it today. I was just wondering if you are going to produce it.

MR. FLOWERS: You'll get a response, yes."

Denied that "ARS did not reply to the document requests until January 31, 2006--nearly two weeks late." In fact, although the "document requests" were wholly improper as explained in the response to paragraph 41 above, and thus did not require a response, ARS nevertheless served a response to the requests on January 23, 2006. Denied that the response to the improper requests was, or even could have been, "tardy," for the reasons explained above. Admitted that in its January 23, 2006 response to the requests, ARS stated that documents would not be produced in response to the requests, because the requests were improper.

43. Rather than seek review of the decision of the Board of Patent Appeals and Interferences, ARS has knowingly and deliberately prolonged and expanded this litigation by asserting claims of patent infringement, specifically asserting infringement of Claim 3 and other claims of the '071 patent secured by inequitable conduct. In so doing, ARS has damaged CGI, and delayed and inflated the cost of seeking review of the decision of the Board in Interference 105,114 the right to which review is secured to CGI by statute. The attempted enforcement of a patent secured by inequitable conduct is recognized as an anti-trust violation the measure of which is the litigation costs and expenses incurred by CGI, multiplied up to three times as permitted by statute.

**ANSWER:**

Denied.

44. The totality of behavior by ARS, and its counsel, in the prosecution of the '071 patent, and the conduct of this litigation, renders this case exceptional pursuant to 35 U.S.C. §285.

**ANSWER:**

Denied.

**AFFIRMATIVE DEFENSES**

ARS asserts the following defenses to CGI's counterclaims. Assertion of a matter denominated as a defense is not a concession that ARS has the burden of proving the matter asserted.

**FIRST AFFIRMATIVE DEFENSE**

The counterclaims, in whole or in part, fail to state a claim on which relief can or should be granted.

**SECOND AFFIRMATIVE DEFENSE**

CGI lacks standing to bring or maintain the counterclaims.

**THIRD AFFIRMATIVE DEFENSE**

CGI has waived and is estopped to bring the counterclaims against ARS.

**FOURTH AFFIRMATIVE DEFENSE**

CGI's counterclaims are barred by laches, estoppel, and/or acquiescence.

**REQUEST FOR RELIEF**

ARS respectfully requests that:

1. the Court dismiss all of CGI's counterclaims with prejudice;

2. ARS be awarded its costs of suit;

3. ARS be awarded its attorneys' fees pursuant to 35 U.S.C. § 285; and

4. ARS be awarded such other and further appropriate relief as the Court may deem just and proper.

                                      Respectfully submitted,

                                        /s/Kevin M. Flowers.
                                      NIXON PEABODY LLP
                                      Fred A. Kelly, Jr.

Dated: February 23, 2006

BBO No. 544046
100 Summer Street
Boston, MA 02110
Tel: (617) 345-1000
Fax: (617) 345-1300

MARSHALL, GERSTEIN & BORUN LLP
Kevin M. Flowers (*pro hac vice*)
Matthew C. Nielsen (*pro hac vice*)
6300 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448

Attorneys for Plaintiff
Applied Research Systems ARS Holding, N.V