IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CELL GENESYS, INC., | ) |
| Plaintiff/Counterdefendant, | ) |
| v. | ) C.A. No. 05-12448-MLW |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V. | ) |
| Defendant/Counterclaimant. | ) |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 04 11810 MLW |
| CELL GENESYS, INC. AND TRANSKARYOTIC THERAPIES, INC. | ) |
| Defendants. | ) |

**OPPOSITION OF CELL GENESYS, INC. TO THE
MOTION OF APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.
TO DISMISS CGI COUNTERCLAIM COUNTS II AND III**

The motion of Applied Research Systems ARS Holding, N.V. ("ARS") to dismiss Counts II and III of the Counterclaim of Cell Genesys, Inc. ("CGI") contends those claims are "waived and untimely." As shown below, the motion must be denied because the recently-obtained evidence of ARS's inequitable conduct – the foundation of Counts II and III – was not available to CGI during the pendency of Interference 105,114, the Judgment in which is the subject of these related actions.

1

This opposition focuses on the errant assertion by ARS that CGI (1) knew, or should have known of the evidence it now relies on support of Counterclaim Counts II and III and (2) the evidence in support of it was available to CGI during the pendency of Interference 105,114, or evidence which CGI could have secured through compulsory process during that period. The presence of adequate evidence to support the Counterclaims is addressed thereafter.

It is unclear what Rule Plaintiff's Motion to Dismiss springs from. It is clear that the Court has jurisdiction, generally, to hear CGI's Counterclaims, Counts II and III. No Motion to dismiss for lack of subject matter jurisdiction is appropriate. ARS's Motion more nearly resembles a Motion to Strike under Fed. R. Civil Proc. 12(f), but in general, where the Court has jurisdiction over an action, but not a specific claim, a proper foundation is a Motion to Dismiss for Failure to State a Claim. *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F3rd 1318, 1320, 47 USPQ2d 1769, 1774 (Fed. Cir. 1998). Where the Motion to Dismiss or Strike relies on evidence beyond the pleadings, as is the case with the Motion to Dismiss of ARS, it is best treated as a Motion for Partial Summary Judgment under Fed. R. Civil Proc. 56. *General Dynamics v. United States*, 558 F2d 985 (Ct. Cl. 1977), *Marco Holdings Co. v. Lear Siegler, Inc.*, 606 F. Supp. 204, 213 (DC Ill 1985). Regardless of the specific provision on which ARS relies, under such circumstances, the moving party bears the burden of establishing the absence of any dispute over genuine material facts necessary to the relief sought. ARS simply has not sustained that burden.

### I. EVIDENCE OF THE INVENTOR'S INTENT IS REQUIRED FOR COUNTS II AND III

ARS's motion overlooks the fundamental principle that CGI could not allege inequitable conduct or failure to disclose best mode until it had grounds to satisfy its burden of proving ARS's intent. To bring a charge of inequitable conduct, and make out a *prima facie* case, or to

2

bring a charge of withholding of the best mode, and make out a *prima facie* case, evidence of the intent of the actor, in this case the sole inventor, Scott Chappel, was first required. Without such evidence, the *prima facie* case required by the Patent Office procedures, and in particular, the Standing Order governing this case, could not be satisfied. To obtain that evidence, Chappel's testimony was required. Although Chappel did testify in the European opposition, ARS scrupulously avoided having Chappel testify in the Interference. Thereafter ARS made it difficult to secure Chappel's testimony in this proceeding, for one reason, and one reason only – ARS wanted to avoid generation of the evidence of an intent to withhold the best mode of practicing the invention, and an intent to deceive the Patent Office, so as to secure issuance of the '071 patent. CGI begins with that intent prerequisite.

### A.    Violation of the Best Mode Requirement Calls for Evidence of Intent

The requirement that an Applicant disclose the best mode known of practicing the claimed invention before his application can properly issue as a United States patent, is imbedded in 35 U.S.C. § 112, first paragraph. Decision after decision of the Federal Circuit has made it clear that a violation of best mode, as opposed to a violation of the two other provisions of the first paragraph of 35 U.S.C. § 112, enablement and written description, requires a specific finding that the Inventor intended to conceal or withhold the best mode of practicing the invention. Indeed, contrary to the suggestion in the ARS Motion that one looks to what those of skill in the art knew at the time, the issue of best mode is based solely on the knowledge of what the Inventor knew at the time the Application was filed, and what the Inventor intended to provide the public by way of disclosure. *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1582, 42 USPQ2d 1760, 1769 (Fed. Cir. 1997). The Federal Circuit has specifically held that the question of best mode, and violation of that requirement of the law, is based on <u>subjective</u>

3

awareness, not the objective test ARS offers. The Court has specifically held that a finding that the best mode requirement has been violated requires evidence of the Inventor's deliberate concealment or intent to withhold or suppress the known best mode. *Burning v. Hirose*, 161 F.3d 681, 686-87, 48 USPQ2d 1934, 1939 (Fed. Cir. 1998).

Thus, a determination that the best mode was withheld requires more than inspection of the patent application or issued patent, and an inspection of the prior art, which ARS maintains is all that was required, Memo, pp. 10-11.[1] Rather, before alleging that ARS withheld the best mode known to the inventor, CGI required evidence of Chappel's use of a mode undisclosed that he preferred because it was of value in practice. At his recent deposition on January 19, 2006, Chappel testified that in fact he did use a specific mutant amplifiable gene, that that mutant was used in-house at ARS because it provided specific advantages in isolation of successful results. Chappel Depo. at 90:1-11.[2] A comparison of that testimony with the patent that does not identify the mutant that was necessary to support the Motion. Indeed, ARS seems to concede the point that Chappel knew about it, and used it, but it cannot be found in the '071 patent. Memo, p. 9, middle paragraph. Clearly, an allegation that the '071 patent is invalid and unenforceable due to a failure to disclose the best mode required specific evidence of intent, on the part of the Inventor, to withhold that from the patent application. It was not until Chappel testified that the evidence demonstrated the requisite intent.

### B.   Inequitable Conduct Requires Evidence of Specific Intention

There are few things more clearly established in Patent Law today than the proposition that a finding of inequitable conduct requires evidence of both materiality and intent. Intent presumes the Applicant's awareness of the materiality of the evidence, the fact that the evidence

---

[1] "Memo" refers to ARS's Memorandum In Support of Its Motion to Dismiss CGI's Counterclaim Counts II and III.
[2] Chappel's deposition transcript is attached hereto as Exhibit A.

4

was not before the Patent Office, and a deliberate failure to provide the same. *Micro Chemical, Inc. v. Great Plains Chemical Company*, 103 F.3d 1538, 1549, 41 USPQ2d 1238, 1247 (Fed. Cir. 1997). Indeed, even when material art and/or misrepresentations have been made to the United States Patent and Trademark Office, absence of an active intent to deceive will defeat a claim for inequitable conduct. *Kolmes v. World Fibers Corp.*, 107 F.3d 1534, 1542, 41 USPQ2d 1829, 1834 (Fed. Cir. 1997).

It is equally important to note that the evidence of intent must be established separate from the evidence of materiality. Thus, it is not enough as ARS insists, that counsel for CGI could have reviewed the disclosure of the '628 patent application (now USP 5,240,832) together with the claims of the '071 patent, and concluded that the earlier-filed application was material to the '071 patent claims. CGI, and its counsel did that.

The presence of a material reference not considered, however, standing alone, does not support a claim of inequitable conduct. One <u>cannot</u> infer, from the existence of the withheld material reference, that there was a specific intent to deceive the Patent Office. *Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456, 1465, 43 USPQ2d 1887, 1894 (Fed. Cir. 1997) *citing, Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872, 9 USPQ2d. 1384, 1392 (Fed. Cir. 1988) (*en banc*) and *Modine Manufacturing Co. v. Allen Group, Inc.*, 917 F.2d 538, 541, 16 USPQ2d 1622, 1625 (Fed. Cir. 1990). This has caused the Federal Circuit to observe that a dispute over inequitable conduct turns on the assessment of witness testimony with regard to the issue of intent. *LNP Engineering Plastics, Inc. v. Miller Waste Mills, Inc., t/a RTP Co.*, 275 F.3d 1347, 1361, 61 USPQ2d 1193, 1203 (Fed. Cir. 2000).

Less than a month ago, the Federal Circuit again addressed the requirement for proof of inequitable conduct. *Ferring B.V. v. Barr Laboratories, Inc.*, 2006 U.S. App. LEXIS 3554 (Fed.

Cir. Feb. 2006). The Court first considered materiality. Then, the Court considered intent. The Court's very first observation on the topic confirms materiality does not compel intent:

> Even if an omission is found to be material, the omission must also be found to have been made with the intent to deceive. '[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct.' (*quoting, GFI Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274, 60 USPQ2d 1141 (Fed. Cir. 2001) which was in turn *quoting Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 542, 552, 16 USPQ2d 1587 (Fed. Cir. 1990)).

*Id.* at 26.

CGI respectfully submits that a fundamental element of the law on both failure to comply with the best mode requirement of 35 U.S.C. § 112, and the commission of inequitable conduct, requires compelling evidence of intent, on the part of the actor, in this case, Chappel, to withhold that which he knew, or should have known, to be essential. CGI learned on Chappel's deposition, for the first time, of the mutant DHFR gene employed by Chappel, of its unusual characteristics, and why Chappel preferred it for use in an invention involving a selectable marker, such as the subject matter of the claims of the '071 patent. Chappel Depo. at 89:13 – 90:11. CGI learned, for the first time, on the deposition of Chappel, that Chappel was aware of the earlier-filed '832 patent, was aware it had not been brought to the attention of the Patent Office, and was aware that it included disclosure of everything needed to practice the invention, other than that which the '071 patent specifically recognizes as part of the prior art, the method of homologous recombination, per se. Chappel Depo. at 112:12 – 113:7. See the '071 patent, column 6, lines 64-68.

Respectfully, CGI submits that it could not have brought, either at the Patent Office, or this Court, claims that the patent was invalid, void and unenforceable by reason of the commission of inequitable conduct during prosecution, and due to withholding of the best mode

6

known to the Inventor, until such time as Chappel's deposition was taken. Indeed, as ARS is well aware, ARS deliberately delayed the deposition of Chappel for months after it was noticed by CGI. As CGI discusses below, CGI simply could not have obtained that deposition during the proceeding below, Interference 105,114.

## II.   CHAPPEL'S TESTIMONY WAS UNAVAILABLE TO CGI

Having established that Chappel's testimony was essential before bringing claims of inequitable conduct and withholding the best mode, CGI now turns to ARS's baseless accusation that somehow CGI could have, and should have, obtained this testimony from Chappel during the course of Interference 105,114. Quite simply, ARS has read the Interference Rules incorrectly - CGI had no opportunity to take the deposition of Chappel during the Interference. A party should not be penalized for not presenting evidence not available to it.

### A.   Scott Chappel Could Not Have Been Compelled to Testify - He Was Not a Party to Interference 105,114

ARS erroneously argues that CGI should have somehow known that Chappel would testify that he used a mutant amplifiable gene to conduct experiments intended to present evidence of the effectiveness of his invention, and withheld material information from the Patent Office, and that CGI should have secured that testimony in the course of Interference 105,114. Memo, at p. 6. ARS points to the provisions of 37 C.F.R. §§1.639 and 1.687(c) as provisions by which CGI could have taken Chappel's deposition. Yet those provisions are confined to obtaining discovery of a party.

Chappel was **not** a party to the interference. The interference names ARS and CGI as the parties to the interference, and those parties confirmed they were the sole interference parties. Indeed, even in this proceeding, ARS has represented that Chappel is an independent third party witness whom they had to sign to a contract paying him $300 per hour just to testify as to facts.

7

Transcript of the Chappel Depo. (submitted herewith in its entirety) 40:7 - 42:7. Chappel testified that this is the rate he ordinarily gets for scientific consulting, so it is clear that ARS could not have produced him during the Interference. Indeed, Chappel testified that he was **never** an employee of ARS. Chappel Depo. at 4 – 13 and Ex. 2079.

In contrast, the provisions of 37 C.F.R. §1.687(c) on which ARS principally relies, Memo, p. 6, are confined to obtaining discovery of subject matter under the control of the opposing party in an interference:

> Upon a motion (§635) brought by a party. . . and upon a showing that the interest of justice so requires, an administrative patent judge may order additional discovery, as to **matters under the control of a party within the scope of the Federal Rules of Civil Procedure**, specifying the terms and conditions of such additional discovery. (emphasis supplied). 37 C.F.R. §1.687(c).

Clearly, Chappel, neither an employee of ARS nor a party to interference 105,114, could not have been made the subject of discovery pursuant to Rule 687(c).

ARS also offers, without analysis, the preposterous notion that CGI could have filed a motion for judgment that ARS had committed inequitable conduct, making out a *prima facie* case *without* Chappel's testimony, then securing his deposition through 37 C.F.R. §1.639. While the decisional case law relied on by ARS shows this is not permitted by the Board (*infra*), as a threshold issue, Rule 639, like Rule 687 is, in pertinent part, confined to securing the discovery of an opposing party.

Rule 639(c) authorizes the taking of additional testimony only in select situations. It is also confined to authorizing testimony of the type set forth in subsections d, e, f and g (*the party shall describe the nature of any proposed testimony as specified in paragraphs (d) through (g)*). Testimony in sections d, e and g pertain to testimony the party can voluntarily advance. Section

8

(d) refers to expert-witness testimony the party seeking relief under Rule 639(c) can present. This does not describe Chappel, whose interests are opposed to CGI. (At least he is being paid $300/hour to present fact testimony by ARS). Section (e) is similar to section (d) and provides an opportunity to present additional testimony through a fact witness the party seeking to present testimony has control over. Section (g) is confined to the presentation of additional testimony resulting from *inter partes* test not relevant here.

The only remotely applicable section of Rule 639 that would have provided CGI the opportunity to take a deposition of someone not under CGI's control is 639(f). Again, this provision, like Rule 687(c) discussed above, is confined to discovery of opposing Parties.

> If the **opponent** is to be called, or evidence in the possession of the **opponent** is necessary, state the facts to which the witness is expected to testify. (emphasis supplied). 37 C.F.R. §1.639(f).

Chappel's deposition could not have been obtained by CGI during the interference, as Chappel was neither a party, nor the employee of a party, nor under the control of a party. As discussed below, ARS' notion of the discovery available to a party in interference is incorrect, but what is clear is that absent resort to the Federal Rules of Civil Procedure, no deposition of Chappel could have been had during the Interference. The Federal Rules of Civil Procedure are simply not applicable to interferences. *Tropix, Inc. v. Lumigen, Inc.*, 53 USPQ2d 2018, 2021, (BPAI 2000).

The very premise of the ARS Motion, that CGI could have raised the subject matter of Counterclaim Counts II and III because it was available to CGI during Interference 105,114, simply mistakes the type of discovery available in an interference. Chappel was neither a party to the Interference below, nor subject to the control of ARS. Chappel Depo. at p. 172, ll. 1 - 4. As such, discovery of any sort of Chappel, much less the wide ranging deposition taken in this case under the Federal Rules of Civil Procedure, could not have happened during Interference

105,114. Without evidence of intent on Chappel's part to (1) withhold the nature of the amplifiable, selectable marker used to test the subject matter of the ARS '071 patent, (2) withhold prior art known to him that he recognized provided all the information necessary to practice the example of the '071 patent other than the well known method of homologous recombination per se, and (3) the fact that Chappel did not believe the subject matter of Claim 3 would work or was his invention, issues corresponding to Counts II and III addressed herein could not have been advanced in the Interference.

### III. EVEN IF CHAPPEL'S DEPOSITION COULD HAVE BEEN COMPELLED, CGI COULD NOT HAVE RAISED THE ISSUES INVOLVING INTENT

The ARS Motion, as noted above, ignores that specific evidence of intent is required to make a *prima facie* showing of the issues addressed in Counts II and III. Submitting a host of rules, and citing to the very case which proves it wrong, *Tropix, Inc. v. Lumigen, Inc.*, 53 USPQ2d 2018, 2021 (BPAI 2000), ARS asserts that CGI could have raised the question of inequitable conduct, and sought discovery with respect thereto, during the '114 Interference, even assuming Chappel was somehow subject to discovery provided. Quite simply, this is not the case.

Discovery is not granted as of right in an interference. Rather, one must specifically move for it. Discovery will only be granted during cross-examination by agreement, or on motion demonstrating that the interest of justice requires the discovery sought. See, 37 C.F.R. §1.687, which specifically provides:

> A party is not entitled to discovery except as authorized in this subpart.

Clearly, the only mechanism that existed for CGI to obtain the testimony of Chappel was to seek discovery pursuant to 37 C.F.R. § 1.687(c).[3]

The very case that ARS relies on *Tropix, Inc. v. Lumigen, Inc.*, 53 USPQ2d 2018, 2021, (BPAI 2000) demonstrates that neither the discovery sought and obtained by CGI herein, nor the issue of inequitable conduct, could have been reasonably raised during Interference 105,114. Contrary to the suggestion of ARS, in fact, the Board in *Tropix v. Lumigen* took special pains to point out that the deposition noticed in this proceeding would not have been available in the Interference.

> The Lumigen requests for documents are typical of requests under the Federal Rules of Civil Procedure. Recently, we have observed an increased number of what we would characterize as routine additional discovery requests which seem to be patterned after discovery which may be available under the Federal Rules of Civil Procedure. We perceive that there is a recently developed assumption on the part of the Patent Bar that Federal Rules of Civil Procedure discovery somehow are in vogue in interference cases before the Board.
>
> We believe it worthwhile to re-emphasize that additional discovery under Rule 687(c) is not discovery under the Federal Rules of Civil Procedure. . . . The CCPA best said it when it noted that the additional discovery rule does not bestow the right to discovery of unlimited scope. Cook v. Dann, 522 F.2d 1276, 188 USPQ 175, 176 (CCPA 1975).

53 USPQ2d at 2020-2021.

A similar result was reached in *Shiokawa v. Mienfisch*, 56 USPQ2d 1970 (BPAI 2000). In *Shiokawa*, the Board again denied motions seeking additional discovery. The Board specifically and emphatically rejected the request and denied the motion; even though the party filing the motion was seeking data it knew to be in possession of the opposing party. ARS urges

---

[3] Interference 105,114 was conducted pursuant to the provisions of 37 C.F.R. § 1.601 *et seq.*, and the then governing Standing Order. Both the Rules and the Standing Order have changed, but this issue is governed by the Rules then-controlling.

11

that CGI should have been able to rely on the earlier Chappel patent, and activity, and additional discovery to arrive at Counts II and III. This very theory was rejected in *Shiokawa*, 56 USPQ2d at 1973-1974. Whether it is for purposes of cross-examination or to generate evidence for a motion already filed, or not yet filed, discovery is not authorized under Rule 687(c). The Board observed:

> To perhaps beat a dead horse, we again remind counsel that additional discovery under the Interference Rules is not commensurate in scope with discovery under the Federal Rules of Civil Procedure.
>
> Apart from being a fishing expedition, there is further fundamental flaw in *Shiokawa's* miscellaneous motions for additional discovery. The evidence necessary to support a miscellaneous motion is to accompany the motion. 37 C.F.R. § 1.639(a).

Again and again, the Board has rejected the notion that a party can seek discovery of the opposing party, or employees thereof, to support a motion. Discovery is confined to rare situations, such as derivation, where the evidence is exclusively in the hand of the opposing party. It is of particular note that in general, the Board declines to authorize discovery depositions, even where it will authorize discovery in other forms. *Parks v. Fine*, 223 USPQ 686, 687 (Commissioner of Patents 1983), *Gregor v. Horn*, 187 USPQ 672 (BPAI 1973). (Insofar as Horn seeks an Order requiring Gregor *et al.* to permit Horn to take the depositions of certain persons, this Board will not issue such an order).

What is clear is that CGI could not have done precisely what ARS asserts could have been done. ARS argues that CGI:

> [C]ould file a motion for judgment based on inequitable conduct, provided that the movant presented a prima facie case of inequitable conduct in the motion. The Standing Order further provided that the party could move for additional discovery, including deposition testimony, in

12

> order to supplement the *prima facie* case presented in the motion.

This is quite simply incorrect. As noted above, depositions are rarely ordered. In both *Tropix* and *Shiokawa*, the Board expressly rejected the notion of filing a motion and then supplementing it with additional evidence.

> If Lumigen has made out a *prima facie* case of derivation, as it asserts in its motion, then it is somewhat difficult to understand why additional discovery is needed at this time to 'supplement' *Lumigen's* proofs in hand. Accordingly, it would not be in the interest of justice to require *Tropix* at this time to produce the documents requested.

53 USPQ2d at 2020.

Moreover, it is clear from the quoted portion of the *Tropix v. Lumigen* decision that appears at page 8 of the ARS Memorandum, that even if CGI had argued inequitable conduct, it would have been considered <u>if at all</u>, after a Decision on Preliminary Motions. As the Board disposed of the entire interference in its decision on preliminary motions, *i.e.*, there was no subsequent proceeding, the issue could not have been raised in any event.

### IV. <u>THERE IS SUFFICIENT EVIDENCE TO SUPPORT THE COUNTS</u>

In addition to arguing groundlessly – that Counts II and III are waived and untimely, ARS goes on to argue long before the close of discovery, that there is insufficient evidence even to support those counterclaims - akin to a Motion under FRCP 56. ARS contends that Chappel did not testify that he never regarded the subject matter of Claim 3 as his invention, and that he did not testify that the mutant gene he used, which ARS concedes is not disclosed in the '071 patent involved herein, provided him with an important advantage. Memo at pp. 8-9, 13-15. While CGI submits that a determination on the merits is premature, the position of ARS on the merits is also mistaken.

13

### A. Withheld Best Mode - the Mutant DHFR

With respect to the question of the nature and identity of the mutant DHFR gene that Chappel intentionally withheld from the Patent Office, ARS argues that Chappel did not testify that its use provided an advantage. Memo at p. 9. ARS also contends that the DHFR gene does not correspond to any element of the claims of the '071 patent. Memo at p. 9. Both positions fail to reflect Chappel's actual testimony.

Chappel testified that the mutant DHFR gene he used made it easier to find the cells successfully modified. "The endogenous DHFR is more sensitive to methotrexate that the engineered version of DHFR. Therefore, you don't have to find cells that are deficient in DHFR; you can select between those that have taken up your copy of DHFR in the presence of having an endogenous enzyme." Transcript, p. 90, l. 6 - 11. Chappel testified that use of the mutant DHFR that was not disclosed made it possible to work with cells that otherwise he could not use. *Id.* Chappel also testified that with the mutant DHFR, he was able to do things (amplify it) that he was uncertain he could do with non-mutant DHFR genes. 90:15 - 91:5. Clearly, it was the method he used, a method not disclosed in the '071 patent. Clearly, it was the best method known to him at the time.

The "amplifiable gene" of Claim 3 is in fact satisfied by DHFR. *Ibid.* Unquestionably, other than the targeting sequences, known in the art as part of homologous recombination, the DHFR gene Chappel withheld was the only other required element of the vector of Claim 3. Transcript, 140:20 - 141:2 (DHFR is "dihydrofolate reductase"). There seems to be little doubt that this central element of the Claims of the '071 patent could be a mutant DHFR gene, such as the mutant DHFR gene that Chappel used. There is also no doubt that it is not discussed in the '071 Chappel patent. Chappel said he wrote the original patent application. Transcript, 169:17 -

14

22. He was familiar then with the mutant DHFR gene. He could have disclosed it, as required by law. He elected to withhold it.

### B.   Modifying the Disclosure to Support Claim 3

Chappel testified at length that <u>his invention</u> involved the insertion of a promoter to increase expression of a target gene. The amplifiable gene was present as a positive selection marker. It, alone, would not achieve the change in expression levels required for his invention- that required the insertion of an active promoter to drive the target gene. Transcript, 140:9 - 141:2. That is in fact the way the original application was written - the use of a promoter to upregulate the target gene was required, the use of an amplifiable gene was optional. It was not an independent alternative. Transcript, 135:13 - 22, 136:10 - 23, 140:20 - 141:2.

Chappel was unaware that, notwithstanding allowance of his claims by the Patent Office, his application was abandoned in favor of another application with additional information. Transcript, 147:1 - 4. He was unaware that the application had been changed to indicate that the use of an amplifiable gene, without a regulatory segment, could be used to achieve the claimed goal of increasing expression. That was not his idea at all. Transcript, 148:22 - 150:2. Chappel testified that his invention <u>required</u> the use of a regulatory segment, something omitted from Claim 3 and the disclosure of the continuation-in-part it issued on. 150:14 - 151:17. In fact, Chappel testified he did not know if that method, the method of Claim 3 of the '071 patent, would work, and he would need to see the data resulting from an experiment trying it before he developed that expectation. 98:6 - 23.

Clearly, the application that was the original application of Chappel was modified through the filing of a continuation-in-part application to attempt to describe subject matter that Chappel did not invent, did not believe would work, and was contrary to his intention. He was

15

unaware of it, did not contribute to it. The unknown authors of that change, the individuals who introduced Claim 3 into the case may include Gianpiero DeLuca and Roger Browdy -- the individuals Chappel testified help him write the application. Transcript, 172:18 - 173:2. Unquestionably, ARS represented to the Patent Office that it could rely on the original examination of the original disclosure, which had been significantly changed to claim subject matter Chappel did not describe and did not regard as his invention, to hide that fact from the Patent Office.

### C.   Withholding of Prior Art

Chappel acknowledged that he was a co-inventor of U.S. Patent 5,240,823, and aware of it, or the application that matured into it, during prosecution of the '071 patent in suit, and that it described the same genetic tools that were used in the experiment reflected in the '071 patent. Transcript, 112:5 - 114:2. The only thing not set forth in the '832 patent necessary to achieve the same results described in the later-filed '071 patent were was the concept of homologous recombination (specifically, the targeting vectors necessary for homologous recombination.) 115:24 - 116:13

Homologous recombination, and the use of targeting vectors, is acknowledged in the '071 patent as old in the art. Column 6, lines 64 - 68. Accordingly, given the level of skill in the art, specifically, a knowledge of homologous recombination which one of skill in the art had as of 1989, *the '832 patent taught everything necessary to replicate the very experiment set forth in the '071 patent.* It would be hard to come up with closer prior art - more material prior art. And yet, Chappel clearly testified he did not disclose it to the patent office. Transcript, 118:6 - 11. This is sufficient to support a pleading of the type advanced by CGI, evidence secured only on he deposition of Chappel, which CGI could not earlier compel, or have even been aware of.

16

## V. SUMMARY

The ARS Motion to Dismiss, and Supporting Memorandum would hold parties to a standard that requires CGI to have been both omniscient and omnipotent during the pendency of Interference 105,114. ARS asserts that CGI should have KNOWN that Chappel used a mutant gene to give him an advantage in practice that he withheld from the disclosure he provided. ARS asserts that CGI should have KNOWN that Chappel believed the '832 patent provided all the genetic tools necessary to practice his invention not already known to those of skill in the art, and deliberately withheld it. ARS asserts that CGI should have KNOWN that Chappel did not contribute to the changes from his original application to the continuation-in-part and did not in fact regard those changes as part of his invention - did not even suspect they would work. Beyond all this, ARS insists that CGI should have obtained the proof of these unknowable propositions without the kind of compulsory process that made Chappel available to CGI in this proceeding.

The discovery power conveyed by the Federal Rules of Civil Procedure is a principal reason for pursuing an action under 35 U.S.C. §146 - to augment the record by obtaining evidence not available during the interference. That is precisely what CGI did. ARS should not now be allowed to run away from the evidence of Chappel's intent first made available to CGI during the course of this interference. The burden of proof here rests on ARS. The allegations of the Counterclaims are to be taken adversely to ARS. Under any applicable standard the

subject matter of Counts II and III of CGI's counterclaims should be permitted. The ARS Motion should be denied.[4]

Respectfully submitted,

CELL GENESYS, INC.

By its attorneys,

/s/ Steven B. Kelber
Steven B. Kelber
Merchant & Gould
901 Fifteenth Street, N.W.
Suite 850
Washington, DC 20005
Telephone: (202) 326-0300
*Admitted pro hac vice*

T. Christopher Donnelly (BBO #129930)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
Telephone: (617) 720-2880

Dated: March 13, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this Motion filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 13, 2006.

/s/ Steven B. Kelber
Steven B. Kelber

---

[4] To the extent ARS addresses counterclaims for anti-trust violations - none are asserted. The Supreme Court addressed the way the patent laws and the antitrust laws interface when an improperly procured patent is enforced. When this has been more fully developed on remand and through study, an anti-trust counterclaim may then be ripe.