**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CELL GENESYS, INC., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-12448-MLW |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-11810-MLW |
| | ) | |
| CELL GENESYS, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant, and | ) | |
| | ) | |
| TRANSKARYOTIC THERAPIES, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

**ARS OPPOSITION TO CGI'S MOTION FOR ADDITIONAL DISCOVERY**

## I.    Introduction

CGI's motion for additional fact discovery should be denied. The additional discovery requested by CGI is potentially relevant only to CGI's counterclaim counts II and III alleging inequitable conduct. As explained in ARS's motion to dismiss (filed on February 23, 2006), those counterclaim counts are without basis and should be dismissed. Consequently, CGI has no need for the additional discovery it is requesting.

CGI has not explained why the additional discovery it now seeks is relevant to any other claim or defense in this action. CGI's only stated need for the additional discovery is that it is "essential" because ARS moved to dismiss CGI's counterclaim counts. But CGI has already filed its opposition to ARS's motion to dismiss; that motion does not provide a basis for CGI to ask for additional discovery now.

Even if the Court allows CGI to go forward on its counterclaim counts II and III, the Court should still deny three out of four of CGI's specific requests for additional discovery, because CGI did not comply with this Court's January 19, 2006 Order regarding those requests. The January 19 Order required CGI to notify ARS of the additional discovery it would be requesting and to meet-and-confer with ARS regarding any such discovery by March 9, 2006. CGI did not do so for three of its four requests. Its failure to comply with the Court's Order, without any justification, is a separate basis for denying CGI's motion as to those requests.

For these reasons, and as explained more fully below, the Court should deny CGI's motion for additional discovery.

## II.     Argument

### A.     The additional discovery requested by CGI is only potentially relevant to CGI's counterclaim counts II and III, which should be dismissed

The only claims or defenses to which the additional discovery now requested by CGI might be relevant (and to which CGI points in its Motion for Additional Discovery, *e.g.*, at pp. 1, 2, and 5) are CGI's counterclaim counts II and III, in which CGI alleges that ARS committed inequitable conduct during the prosecution of the '071 patent. As explained in ARS's motion to dismiss (filed on February 23, 2006), CGI waived its right to bring those counterclaim counts because CGI should have (but failed to) raise the issue of inequitable conduct in the underlying '114 Interference. Those counts are also without any substantive basis because they are based on CGI's misrepresentations of Dr. Chappel's testimony in his deposition in this case. Because the Court should grant ARS's pending motion to dismiss those counterclaim counts, CGI's requests for additional discovery are moot and should be denied.

CGI concedes that two of its four requests (*i.e.*, the depositions of Mr. Giampiero De Luca and Ms. Christie Kelton) will be moot if the Court grants ARS's motion to dismiss the counterclaims ("The remaining discovery [the requested depositions of Ms. Kelton and Mr. De Luca] would be moot.") (CGI Motion for Additional Discovery at p. 4.) But CGI says that even if the Court dismisses the counterclaims, CGI should still be allowed to seek (i) documents purportedly held by ARS and a third party, "Serono S.A.," relating to "the mutant DHFR gene described by Scott Chappel ('Chappel') in his deposition as having been used in the experiments reflected in the '071 patent" and (ii) Fed. R. Civ. P. 30(b)(6) depositions of ARS and "Serono S.A." regarding "the mutant DHFR gene." (CGI Motion for Additional Discovery at pp. 2 and 4.)

- 2 -

First, as explained in ARS's Memorandum in Support of its Motion to Dismiss CGI's Counterclaim Counts II and III (at pp. 8-10), Dr. Chappel never said that he used a "mutant" DHFR gene in the experiments reported in the '071 patent. CGI cites to page 90 of Dr. Chappel's deposition transcript as supposed support for its assertion otherwise. (CGI Motion for Additional Discovery at p. 2.) But nowhere in that testimony does Dr. Chappel ever say anything about using a mutant DHFR gene in the experiments reported in the '071 patent. Rather, in that same portion of the transcript, Dr. Chappel testified very clearly that he never tried to use a mutant DHFR gene in any experiments involving "TSH" ("TSH" stands for "Thyroid Stimulating Hormone" or "Thyrotropin"):

> Q.  Could you use the mutated form [of the DHFR gene] to be amplified -- amplifiable, sorry?
>
> A.  That's what we were doing.
>
> Q.  Yes.  Was it successful?
>
> A.  Were we successful in demonstrating that you could amplify the transgene version of DHFR in the presence of wild type endogenous DHFR?  Yes.
>
> Q.  Were you able to amplify the gene of interest through that technique?
>
> A.  Yes.
>
> Q.  And were you able to obtain an increase in protein expression through that amplification?
>
> A.  Yes.
>
> Q.  What was the protein that you expressed in that way?
>
> A.  FSH.
>
> **Q.  Did you try the same thing with TSH?**
>
> **A.  No.**

Exhibit A to Kelber Decl. at p. 90, line 23 to p. 91, line 16 (emphasis added).

As CGI is well-aware, "the experiments reflected in the '071 patent" all involved TSH. *See*, *e.g.*, '071 patent at col. 13, lines 22-25 ("The present invention may be illustrated by reference to the activation of the rat thyrotropin beta subunit (TSHβ) . . . .") and col. 14, line 34 to col. 22, line 30.

Indeed, the '071 patent expressly states that no such DHFR gene was used in the experiments reported in the patent. *See*, *e.g.*, '071 patent at col. 13, lines 58-61 ("In this example, no amplifiable marker need be used and thus there need be no region D in order to optimize the efficiency of the homologous recombination."). CGI's assertion, both in its counterclaims and in its instant motion, that Dr. Chappel testified that the "mutant DHFR gene" was used in the experiments reported in the '071 patent, is simply not true. Consequently, the counterclaims do not justify permitting CGI to take the additional discovery it seeks.

Moreover, CGI does not explain why the requested discovery is relevant to any other claim or defense in this action, such that its requests could survive the grant of the motion to dismiss. As a seeming afterthought, CGI says only that "[i]n the alternative, should the Court elect to grant the ARS Motion to Dismiss Counts II and III, the requested production of documents relevant to the mutant DHFR gene, to consider the issue of enablement, and the 30(b)(6) deposition with respect to the mutant gene, would be required." (CGI Motion for Additional Discovery, at p. 4.) This sentence is completely incomprehensible; it certainly does not explain why the requested documents are relevant to any issue in this case. The Court should grant ARS's motion to dismiss counterclaim counts II and III, and it should deny CGI's motion for additional discovery.

### B.    ARS's motion to dismiss cannot justify the additional discovery

CGI's only stated justification for seeking additional discovery is "because ARS, rather than replying to Counts II and III of CGI's Counterclaims, elected to move to dismiss the same,"

and "[i]ssues of fact with respect to these matters [inequitable conduct] have been raised by the ARS Motion to Dismiss Counts II and III" (CGI Motion for Additional Discovery, pp. 1, 5).

It is too late for CGI to seek discovery in order to support its opposition to ARS's motion to dismiss CGI's counterclaims. CGI has already filed its opposition to ARS's motion. If CGI believed that additional discovery was necessary to respond to ARS's motion, CGI should have made that request when it filed its opposition to ARS's motion (on March 13, 2006), rather than in its Motion for Additional Discovery filed on March 16. Consequently, CGI's stated justification for the additional discovery it seeks is moot. This is another reason to deny the motion.

### C. CGI failed to comply with the Court's January 19, 2006 Order governing requests for additional discovery

Regarding three of its four specific requests for additional discovery, CGI failed to comply with this Court's January 19, 2006 Order governing such requests. Consequently, even if the Court were to deny ARS's motion to dismiss, the Court should deny CGI's motion for additional discovery as to three of the requested topics.

In the January 19 Order, the parties were required to follow a specific procedure in order to seek additional fact discovery beyond that to which the parties had already agreed. By March 2, 2006, a party had to inform the other party if it was going to seek additional fact discovery, and if so, what discovery it would be seeking. (January 19, 2006 Order, Docket No. 89, at p. 2, ¶8.) The Order further required that "[t]he parties shall, by March 9, 2006, confer to determine whether they can agree on any issues regarding possible additional fact discovery," and "shall file any motions regarding discovery by March 16, 2006." (*Id*.)

CGI ignored those requirements for three of its four requests for additional fact discovery. Specifically, as of March 2, the deadline set by this Court for CGI to notify ARS that

it would seek additional discovery, ARS had only been told that CGI wanted to depose Mr. De

Luca. CGI had not mentioned any other potential additional discovery. Likewise, as of March 9,

the deadline set by this Court for CGI to meet-and-confer with ARS regarding such additional

discovery, CGI had not mentioned that it might seek any other additional discovery. (*See*

Declaration of Matthew C. Nielsen, submitted herewith, at ¶¶ 3, 4).

It was not until the next week, on March 13 (after the March 9 meet-and-confer deadline,

and therefore in direct contravention of the January 19 Order), that CGI gave any indication

whatsoever to ARS that CGI might seek additional discovery other than the proposed deposition

of Mr. De Luca. (*See id*. at ¶5.) This is confirmed by a telephone message which counsel for CGI

(Mr. Kelber) left for counsel for ARS (Mr. Flowers) on the afternoon of March 13:

> Kevin, this is Steve Kelber. One of the things we still need to do, and it's kind of
> off-step with the schedule given your motion to dismiss, is to talk about further
> discovery that we would like responsive to your reply and I think if you need any,
> this is the time to resolve that too. Can you give me a call (202) 326-0333? I think
> that the discovery we're seeking you're gonna suggest is within the scope of
> Counterclaims 2 or 3, Counts 2 or 3 of our counterclaims, which I understand
> you'll be deferring but nonetheless we need to get it before Judge Wolf.
> Appreciate it. (202) 326-0333. Thanks. Bye now.

(*Id*. at ¶5.) Mr. Kelber's message confirms that as of March 13, CGI had not yet notified ARS

that CGI might seek any additional discovery.[1]

Because CGI failed to comply with the January 19 Order regarding three of its four

additional discovery requests, the Court should deny the motion for additional discovery at least

as to those requests.

---

[1] Mr. Flowers (and Mr. Nielsen) were traveling abroad that day and the following day and were
unable to immediately return Mr. Kelber's call (*see* Nielsen Decl. at ¶7), but in response to a
later e-mail from Mr. Kelber, Mr. Flowers notified him that ARS objected to any additional
discovery sought by CGI, both on the merits and because CGI failed to comply with the Court's
January 19 Order. (Exhibit A to Nielsen Decl.; *see also* Exhibit C to Declaration of Steven
Kelber in Support of CGI Motion to Compel and for Discovery Sanctions.)

**D.     CGI has not shown that a third party, Serono S.A., should be subject to discovery in this case**

In addition to requesting discovery from ARS, CGI now also requests documents from, and a Fed. R. Civ. P. 30(b)(6) deposition of, "Serono S.A." regarding the "mutant DHFR gene." (*See* CGI Motion for Additional Discovery, at p. 2.) The Court should deny CGI's request with respect to discovery from Serono S.A. because Serono S.A. is not a party to this action. CGI cannot obtain discovery from a foreign company that is not a party to this action simply because CGI asks for it. CGI has not even attempted to explain why the Court can or should impose discovery burdens on Serono S.A. Nor has CGI made any attempt to explain why the Court should believe that Serono S.A. would have any documents regarding the "mutant DHFR gene," or why anyone at Serono S.A. is likely to have discoverable information regarding that topic. ARS and Serono should not have to bear the burden of CGI's fishing expedition.

Consequently, CGI's request for discovery of both documents and deposition testimony from Serono S.A. should be denied.

**E.     CGI has not been diligent in seeking discovery regarding Ms. Kelton**

CGI's request to depose Christie Kelton (CGI Motion for Additional Discovery, at p. 2) comes far too late in this action. CGI knew about Ms. Kelton and her role in the experiments reported in the '071 patent during the '114 Interference, at least as early as November 2003. ARS again disclosed that Ms. Kelton had information relevant to the experiments reported in the '071 patent in its Fed. R. Civ. P. 26(a)(1) disclosures in this action on April 29, 2005 (she was identified as having information relating to "conception, diligence, reduction-to-practice" and "enablement" of "the subject matter described and claimed in the '071 patent") (Exhibit B to Nielsen Decl., at p. 2). And on October 10, 2005, in response to CGI's discovery requests in this action, ARS produced copies of the relevant pages from the laboratory notebooks kept by Ms.

Kelton during the time those experiments were conducted. (*See* Exhibit C to Nielsen Decl.) In light of these disclosures by ARS, it is disingenuous for CGI to say that ARS disclosed Ms. Kelton as only "possessing information regarding date of invention" (CGI Motion for Additional Discovery, at p. 2). CGI has known all along that Ms. Kelton had discoverable information relating to the inventions claimed and the experiments reported in the '071 patent.

It is also disingenuous for CGI to imply that it only recently learned of U.S. Patent No. 5,240,832 ("the '832 patent") or of Ms. Kelton's co-inventorship of subject matter claimed in that patent. CGI says that Ms. Kelton was "identified by Chappel" as a co-inventor of the subject matter claimed in the '832 patent during Dr. Chappel's deposition, implying that CGI first learned of Ms. Kelton's role in that work at the deposition. But CGI knew those facts long before Dr. Chappel's deposition. The '832 patent, listing Ms. Kelton as an inventor on its cover page, issued on August 31, 1993; it has been available to CGI for the last 12 years. Moreover, on October 31, 2003, during the '114 Interference, ARS produced Ms. Kelton's *curriculum vitae* (and a declaration of Ms. Kelton) to CGI, which stated that she was a named co-inventor on the '832 patent. (Exhibit D to Nielsen Decl.) And CGI, not ARS, introduced the '832 patent as an exhibit and relied upon that patent in questioning Dr. Chappel during his deposition. CGI was clearly aware of its content prior to that deposition.

For all of these reasons, CGI's request to depose Ms. Kelton comes far too late in this case and should be denied.

## III.    Conclusion

The additional discovery now being requested by CGI is potentially relevant only to counterclaims that should not be in this case and which are based on CGI's misrepresentations about Dr. Chappel's deposition testimony; CGI failed to comply with this Court's January 19 Order regarding its request for such discovery; CGI has not established that it should be

permitted to take such discovery from a non-party; and CGI has not been diligent in seeking

discovery regarding Ms. Kelton. For all of these reasons, CGI's motion for additional discovery

should be denied.

Respectfully submitted,


Dated: March 23, 2006                     /s/ Matthew C. Nielsen_____
                                          NIXON PEABODY LLP
                                          Fred A. Kelly, Jr.
                                          BBO No. 544046
                                          100 Summer Street
                                          Boston, MA 02110
                                          Tel: (617) 345-1000
                                          Fax: (617) 345-1300

                                          MARSHALL, GERSTEIN & BORUN LLP
                                          Kevin M. Flowers (*pro hac vice*)
                                          Matthew C. Nielsen (*pro hac vice*)
                                          6300 Sears Tower
                                          233 S. Wacker Drive
                                          Chicago, IL 60606-6357
                                          Tel: (312) 474-6300
                                          Fax: (312) 474-0448

                                          Attorneys for Applied Research Systems
                                          ARS Holding, N.V

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing ARS OPPOSITION TO CGI's MOTION FOR

ADDITIONAL DISCOVERY, and DECLARATION OF MATTHEW C. NIELSEN IN

SUPPORT OF ARS OPPOSITION TO CGI's MOTION FOR  ADDITIONAL DISCOVERY

and all exhibits referred to therein filed through the ECF system will be sent electronically to the

registered participants as identified on the Notice of Electronic Filing (NEF) on March 23, 2006.


/s/  Matthew C. Nielsen