IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CELL GENESYS, INC.,<br><br>    Plaintiff/Counterdefendant,<br><br>v.<br><br>APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.<br><br>    Defendant/Counterclaimant.<br><br>APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.,<br><br>    Plaintiff,<br><br>v.<br><br>CELL GENESYS, INC. AND TRANSKARYOTIC THERAPIES, INC.<br><br>    Defendants. | C.A. No. 05-12448-MLW<br><br><br><br><br><br><br><br><br><br>C.A. No. 04 11810 MLW |

**DECLARATION OF STEVEN B. KELBER IN SUPPORT OF
MOTION TO EXTEND DATE FOR EXPERT REPORTS**

Steven Kelber, being first duly sworn upon oath, deposes and states:

1. I am a licensed attorney and lead counsel for Cell Genesys, Inc. I submit this Declaration in support of CGI's motion to extend the deadline for submission of expert reports. I hereby certify that I in good faith attempted to confer with ARS's counsel in an effort to secure agreement to the requested extension of time. These efforts are detailed immediately below.

2. The current due date for expert reports set by this Court during a hearing on January 18, 2006 is April 7, 2006. At the time the Court established the current schedule, CGI had not had the opportunity to depose Scott Chappel, the sole inventor of the ARS patent

1

involved in this matter ('071 patent). CGI had tried to take this deposition repeatedly, understanding it was central to the issues to be carried forward. CGI originally served Notice of Chappel's deposition on counsel for ARS on August 15, 2005, seeking a deposition in September, 2005. ARS did not comply. During the hearing on January 18, 2006, the Court imposed sanctions on ARS for failing to produce Chappel for his deposition. Chappel's deposition was scheduled for the next day, January 19, 2006.

3. In between the hearing on January 18, 2006 and the Chappel deposition of January 19, 2006, ARS served roughly 100 pages of highly relevant documents concerning the efforts of Chappel and his team to develop the subject matter claimed in the '071 patent. The documents were originally prepared in the 1989 - 1991 time frame. ARS offered no explanation as to why these documents were not earlier produced, although they are responsive to Requests for Production served on ARS by CGI on August 15, 2005.

4. The late produced documents, and the deposition of Chappel, revealed evidence and facts not previously known. Among the most pertinent of these was Chappel believed that a patent application he had filed with a co-inventor, Kelton, prior to filing the '071 patent, disclosed all the genetic tools necessary to practice the subject matter of the '071 patent as reflected by its single example other than the practice of Homologous Recombination per se. The '071 patent acknowledges that the practice of Homologous Recombination per se was known more than a year prior to the filing date of the '071 patent, Column 6, l. 64 - Col. 7, l.7.

5. The deposition of Chappel also revealed for the first time that Chappel and his coworkers, at the time the '071 patent was first applied for, used in their laboratory dihydrofolate reductase (DHFR) as an amplifiable and expressible gene that had been mutated to improve the

2

properties of the gene and make its use easier. Chappel testified that the use of DHFR was required for the practice of Claim 3 of his '071 patent.

6. CGI filed its Answer to the Amended Complaint of ARS, and based on the testimony of Chappel and late-produced documents, added claims that the '071 patent was invalid for failure to disclose the best mode of practicing the invention known to the inventor at the time of filing, based on Chappel's concealment of the mutated, proprietary DHFR gene used by him, and for inequitable conduct, based on that withholding, as well as withholding from the patent office his own prior patent application.

7. At the same time, and in accordance with the Court's established schedule, CGI sought limited discovery to follow up on the issues of best mode and inequitable conduct.

8. Subsequently, ARS moved to dismiss CGI's claims, and opposed CGI's requested discovery. CGI has responded. Given that the additional discovery, when taken, will materially impact the expert reports, on March 24, 2006, I proposed by voice mail and email to counsel for ARS a one month extension of time for expert reports, to give this Court time to resolve the outstanding motions, complete discovery, and advance expert reports based thereon. A copy of my email is attached hereto as Exhibit A.

9. No response to the request to stipulate to an extension was received. On March 27 and March 28 I left follow-up voice mail messages with Kevin Flowers and Matt Nielsen. On March 28, ARS's local counsel Fred Kelly was contacted by counsel for CGI and asked to see if he could secure a response from ARS's lead counsel. On March 29, 2006, ARS's counsel indicated it had no answer, but hoped to have one later in the day. *See* Exhibit B hereto.

10. At 5:49 p.m. on March 29, 2006, the response from ARS' counsel was received, refusing to agree to an extension, but proposing to supplement reports as appropriate. Four

3

minutes later, I responded by email, declining the suggestion, and asking if there was a shorter agreeable extension. The email and response are attached hereto as Exhibit C.

11. On March 29 and March 30, 2006 I exchanged five phone calls with Matt Nielsen, counsel for ARS, in which Mr. Nielsen continually asked what issues each of our experts would testify on, apparently in an effort to elect one report or another to defer, but move forward with the rest. Mr. Nielsen indicated in a phone call that occurred at approximately 4:30 p.m. on March 30 that he had all the information he needed, but lacked the authority to agree or not, and would get back to me.

12. When I arrived in the office at 6:00 a.m. on March 31, 2006 I had a voice mail left the night before by Mr. Nielsen asking for additional information as to which expert reports might impact the issue of inequitable conduct. As I had previously responded, and Mr. Nielsen's phone did not answer at that hour, I replied by email, noting that the expert reports of Tlsty and Thomas would impact each of the issues CGI has a burden with respect to (enablement, prior art, best mode, inequitable conduct), and that Peterson's report would impact inequitable conduct. A copy of my email is attached as Exhibit D.

13. During the same time frame, ARS, through Mr. Nielsen, asked CGI to waive an opposition to a Motion to File a Reply to CGI's Opposition to the Motion to Dismiss, and CGI similarly requested a waiver with respect to a Reply to the ARS Opposition to CGI's Motion to Compel. I specifically suggested to Mr. Nielsen that the parties withdraw their opposition to all outstanding requests to avoid unnecessarily complicating this case with process that does not go to the specific issues presented. That proposal is in Exhibit D.

14. Ultimately, ARS declined to agree to stipulate to the extension, although such an extension would not have altered this Court's other scheduled dates for this case. In fact, in an

email of 2:15 p.m. Friday, March 31, 2006, attached hereto as Exhibit E, ARS's counsel refused to agree to any extension of any length, to give this Court an opportunity to resolve the Motion to Dismiss and Motion for Additional Testimony, and take the necessary testimony. Thus, ARS's refusal compelled the filing of CGI's motion to extend, supported by this Declaration.

I declare under penalty that the foregoing is true and correct.
Executed on April 3, 2006 in Washington, District of Columbia

/s/ Steven B. Kelber
Steven B. Kelber

**CERTIFICATE OF SERVICE**

I hereby certify that this DECLARATION OF STEVEN B. KELBER IN SUPPORT OF MOTION TO EXTEND DATE FOR EXPERT REPORTS was filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 3, 2006.

/s/   T. Christopher Donnelly
T. Christopher Donnelly

5