**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CELL GENESYS, INC., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-12448-MLW |
| | ) | |
| APPLIED RESEARCH SYSTEMS | ) | |
| ARS HOLDING, N.V., | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| APPLIED RESEARCH SYSTEMS | ) | |
| ARS HOLDING, N.V., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-11810-MLW |
| | ) | |
| CELL GENESYS, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant, and | ) | |
| | ) | |
| TRANSKARYOTIC THERAPIES, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF ARS MOTION TO DISMISS**
**CGI COUNTERCLAIM COUNTS II AND III**

I.    **Introduction**

Pursuant to the Court's Order dated April 6, 2006, ARS submits this reply brief to correct the misstatements of fact and law in CGI's Opposition to ARS's Motion to Dismiss CGI's Counterclaim Counts II and III.

First, CGI says that ARS's motion to dismiss should be treated as a motion for summary judgment under Fed. R. Civ. P. 56 because in that motion ARS referred to documents other than the pleadings themselves. That is not correct. Controlling case law from the First Circuit confirms that because CGI referred to those documents in its Answer and Counterclaims, and did not dispute the authenticity of those documents, this Court may properly consider them on a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Those same documents disprove the "facts" which CGI alleges in Counts II and III, and CGI has therefore failed to state a claim.

Second, CGI has misstated the standard for compliance with the requirement in 35 U.S.C. § 112, ¶1 that a patent applicant must disclose his "best mode." CGI says that it needed evidence of Dr. Chappel's intent in order to challenge the patentability of the '071 patent during the '114 Interference for failure to disclose Dr. Chappel's best mode. That is not correct. The Federal Circuit has made it very clear that a patent applicant's intent is irrelevant in determining whether the best-mode requirement has been satisfied. Therefore, CGI could have challenged the '071 patent on this basis during the '114 Interference. It did not, thereby waiving the argument, and it is therefore estopped to raise it in this action.

Third, CGI says that it could not have taken a deposition of Dr. Chappel in the '114 Interference because he was not a party and not under the control of a party. That is not correct. The applicable Patent Office rules and the case law interpreting those rules allowed CGI to seek and obtain a deposition of Dr. Chappel during the '114 Interference regardless of whether he was a third party or under the control of ARS. This confirms that CGI had the opportunity to pursue

the issues of best mode and inequitable conduct in the '114 Interference. Because CGI failed to

do so, it is too late to raise those issues for the first time in this action.

Finally, in its opposition brief CGI has continued to misrepresent the deposition

testimony of Dr. Chappel.

## II.    Argument

### A.    ARS's motion should be treated as a motion to dismiss

In CGI's opening comments in its opposition brief, it says that "[i]t is unclear what Rule

Plaintiff's Motion to Dismiss springs from," and suggests that because that motion relies on

evidence which CGI did not attach to its Answer and Counterclaims, "it is best treated as a

Motion for Partial Summary Judgment Under Fed. R. Civil Proc. 56." (CGI Opp. Br., at p. 2.)

First, the basis for ARS's motion to dismiss is not "unclear"; it is stated in the very first

sentence: "[p]laintiff Applied Research Systems ARS Holding, N.V. ('ARS') hereby moves

under Fed. R. Civ. P. 12(b)(6) and 35 U.S.C. § 146 to dismiss Counts II and III and strike

paragraph 43" in CGI's Answer and Counterclaims. (*See* p. 1.)

Second, CGI is wrong in saying that ARS's motion to dismiss should be treated as a

summary judgment motion under Fed. R. Civ. P. 56 because it refers to documents that were not

appended to CGI's Answer and Counterclaims. (CGI Opp. Br., at p. 2.) ARS's motion should be

treated as a motion to dismiss because CGI expressly referred to those documents in its Answer

and Counterclaims, and has not disputed the authenticity of those documents. "When, as now, a

complaint's factual allegations are expressly linked to - and admittedly dependent upon - a

document (the authenticity of which is not challenged), that document effectively merges into the

pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."

*Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (affirming this Court's

decision to consider a trust agreement not appended to a complaint on a Fed. R. Civ. P. 12(b)(6)

motion to dismiss); *see also Perry v. New England Bus. Serv., Inc.*, 347 F.3d 343, 345 n.2 (1st Cir. 2003) (quoting *Beddall* and approving district court's consideration of a long-term disability plan that was apparently not appended to the plaintiff's complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss).

The same logic applied by this Court and the First Circuit in *Beddall* (and by the First Circuit in *Perry*) should apply here. In its Answer and Counterclaims, CGI specifically referred to the transcript of Dr. Chappel's deposition in this case, the '832 patent on which Dr. Chappel is a co-inventor, and the prosecution history of the '071 patent.[1] ARS submitted copies of those documents with its Motion to Dismiss.[2] CGI did not challenge any of these documents in its opposition brief. Consequently, under *Beddall* and *Perry*, those documents should be considered part of CGI's Answer and Counterclaims and this Court can consider them in ruling on ARS's Motion to Dismiss.

Neither this Court nor ARS should be prevented from assessing the veracity of CGI's allegations simply because CGI chose not to provide this Court with copies of the documents on which it relied in its Answer and Counterclaims. As the First Circuit stated in *Beddall*:

> While a plaintiff only is obliged to make provable allegations, the court's inquiry into the viability of those allegations should not be hamstrung simply because the plaintiff fails to append to the complaint the very document upon which by her own admission the allegations rest. Any other approach would seriously hinder recourse to Rule 12 motions, as a plaintiff could thwart the consideration of a critical document merely by omitting it from the complaint. We doubt that the

---

[1] CGI referred to Dr. Chappel's deposition testimony at, *e.g.*, ¶20 ("Chappel testified that the use of the genetically altered mutant DHFR gene . . . . Chappel testified that the genetically altered DHFR gene was used . . . .") and ¶28 ("Chappel testified that claim 3 of the '071 patent . . . ."), referred to the '832 patent at ¶¶24 and 26, and referred to the prosecution history of the '071 patent at ¶¶27 and 29-31.

[2] The other documents submitted by ARS with its motion are all of the type of which this Court can take judicial notice (pertinent sections of Title 37 of the Code of Federal Regulations, and the PTO Notice Redeclaring Interference No. 103,737 as the '114 Interference).

> drafters of the Civil Rules, who envisioned Rule 12(b)(6) motions as a swift,
> uncomplicated way to weed out plainly unmeritorious cases, would have
> countenanced such a result.

*Beddall*, 137 F.3d at 17.

Here, as ARS points out in its Motion to Dismiss, much of what CGI alleges that "Chappel testified" to was never said by Dr. Chappel in his deposition. This Court should be able to confirm that by evaluating the corresponding deposition transcript (and the other documents to which CGI obliquely refers in its Counterclaims), even if CGI purposely neglected to provide this Court with copies of those documents. Consequently, this Court should treat ARS's motion under Fed. R. Civ. P. 12(b)(6), not under Fed. R. Civ. P. 56.

The standard the Court should apply to CGI's Counterclaim Counts II and III is thus whether "it appears beyond doubt that [the claimant] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Beddall v. State Street Bank & Trust*, No. Civ. A. 95-10029-MLW, 1996 WL 74218, at *1 (D. Mass. Feb. 14, 1996) (Wolf, J.), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Here, CGI's only "set of facts in support of [its] claim" are its misrepresentations of Dr. Chappel's deposition testimony. Those "facts" are disproved beyond doubt by reading the actual transcript of Dr. Chappel's deposition. CGI is therefore unable to prove those facts, cannot be entitled to the requested relief, and should not be permitted to maintain Counterclaim Counts II and III in this case.

### B.    CGI has misstated the standard for assessing whether a "best mode" violation has occurred

CGI says that it could not "bring a charge of withholding of the best mode" during the '114 Interference because it needed evidence of Dr. Chappel's "intent to withhold the best mode of practicing the invention." (CGI Opp. Br., at pp. 2-3.) In support of this argument, CGI says that "[d]ecision after decision of the Federal Circuit has made it clear that a violation of best

mode . . . requires a specific finding that the Inventor intended to conceal or withhold the best mode of practicing the invention," and "[t]he Court has specifically held that a finding that the best mode requirement has been violated requires evidence of the Inventor's deliberate concealment or intent to withhold or suppress the known best mode." (*Id*. at pp. 3-4.)

That is not correct. Although intentional concealment can <u>support</u> a finding of failure to disclose the best mode, the Federal Circuit has made it very clear that intentional concealment is <u>not</u> required. The true test is simply whether the patent "set forth the best mode contemplated by the inventor of carrying out his invention" (35 U.S.C. § 112, ¶1), regardless of whether an omission is intentional or accidental. *See Minco, Inc. v. Combustion Eng'g, Inc*., 95 F.3d 1109, 1116 n.* (Fed. Cir. 1996) ("If the inventor appreciates a best mode for carrying out the invention, invalidity may result from the failure to disclose, regardless of whether the inventor specifically intended to conceal his or her best mode."); *In re Hayes Microcomputer Prods., Inc. Patent Litigation*, 982 F.2d 1527, 1546 (Fed. Cir. 1992) ("[F]ailure to disclose the best mode may occur without the intent to deceive required for a finding of inequitable conduct.").

Tellingly, CGI says that "[d]ecision after decision of the Federal Circuit" has held otherwise, but CGI cites only one case to support this assertion. (CGI Opp. Br., at pp. 3-4.) Contrary to CGI's citation, that case, *Bruning v. Hirose*, 161 F.3d 681 (Fed. Cir. 1998), did not say that evidence of intent was required for a showing of a best-mode violation. *See id.* at 686-87.

Why do CGI's misstatements of the law regarding best mode matter? They matter first because they show that CGI is not being above-board with the Court. Second, they matter because the actual law shows that, based on the evidence that was undisputedly available to CGI in the '114 Interference (the '832 patent, which CGI was made aware of during the '114

Interference), CGI could have challenged the patentability of the '071 patent based on its best-mode argument during the '114 Interference. While such a motion would have ultimately failed (because, as explained in ARS's Memorandum in Support of its Motion to Dismiss at pp. 8-10, there is no basis to believe that Dr. Chappel considered the so-called "mutant" DHFR gene to be his preferred selectable or amplifiable marker in the inventions claimed in the '071 patent), CGI's argument that it needed evidence of Dr. Chappel's intent in order to pursue such an argument in the interference is simply not true. And to the extent CGI needed evidence of Dr. Chappel's intent in order to pursue an allegation of inequitable conduct during the interference, CGI could have sought a deposition of Dr. Chappel during the interference, as ARS explained in its Motion to Dismiss and further below.

> **C.    CGI could have obtained the testimony of Dr. Chappel, regardless of whether he was a third party or under the control of ARS**

CGI spends a significant portion of its opposition brief arguing that, because Dr. Chappel was a "third party," the rules governing the '114 Interference prevented CGI from seeking to depose Dr. Chappel, and that even if CGI had sought that deposition, the Board would have inevitably denied such a request. (*See* CGI Opp. Br., at pp. 7-13.)

That is not correct. Regardless of whether Dr. Chappel was a third party or under the control of ARS, CGI could still have sought his deposition via a motion under 37 C.F.R. § 1.639(c). A motion under that rule was not limited to obtaining testimony from a party, or persons under the control of a party:

> If a party believes that additional evidence in the form of testimony that is unavailable to the party is necessary to support or oppose a preliminary motion under § 1.633 or a motion to correct inventorship under § 1.634, the party shall describe the nature of any proposed testimony as specified in paragraphs (d) through (g) of this section. If the administrative patent judge finds that testimony is needed to decide the motion, the administrative patent judge may grant appropriate interlocutory relief and enter an order authorizing the taking of testimony and deferring a decision on the motion to final hearing.

-6-

37 C.F.R. § 1.639(c) (attached as Exhibit A to the Nielsen Declaration submitted in support of ARS's Motion to Dismiss).

37 C.F.R. § 1.639(e), which was expressly subsumed in the scope of § 1.639(c), was also not limited to obtaining discovery from parties or persons under the control of parties:

> When additional evidence in the form of fact-witness testimony is necessary, state the facts to which the witness is expected to testify.

Exhibit A to Nielsen Decl. submitted in support of ARS's Motion to Dismiss.

Thus, nothing in Rules 37 C.F.R. §§ 1.639(c) or (e) prevented CGI from seeking a deposition of a "third party" such as Dr. Chappel. CGI could have obtained the Board's permission to depose Dr. Chappel if it had filed a motion under those rules. The only other rule with which CGI would have had to comply in order to take that deposition was 37 C.F.R. § 1.671(g), which provided:

> A party must file a motion (§ 1.635) seeking permission from an administrative patent judge prior to compelling testimony or production of documents or things under 35 U.S.C. 24[3] or from an opposing party. The motion shall describe the general nature and the relevance of the testimony, document, or thing. If permission is granted, the party shall notice a deposition under § 1.673 and may proceed to take testimony.

CGI, having complied with the requirement in § 1.639(c) to "describe the nature of any proposed testimony," would have faced little if any extra burden in order to "describe the general

---

[3] 35 U.S.C. § 24 provides:

> The clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent and Trademark Office, shall, upon the application of any party thereto, issue a subpoena for any witness residing or being within such district, commanding him to appear and testify before an officer in such district authorized to take depositions and affidavits, at the time and place stated in the subpoena. The provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent and Trademark Office.

nature and the relevance of the testimony" so as to satisfy § 1.671(g).[4] Once the Board granted

CGI's motion, CGI could have (and automatically would have) obtained, pursuant to 35 U.S.C. §

24, a subpoena for Dr. Chappel from the appropriate United States District Court with subpoena

power over Dr. Chappel (here, the District of Massachusetts).

      In other interferences, parties have utilized this same procedure to obtain depositions of

third parties. *See, e.g., Therriault v. Garbe*, 53 U.S.P.Q.2d 1179, 1181 (Bd. Pat. App. & Interf.

1999) (granting motion for leave to obtain a subpoena of a third party, and stating "When the

third party will not voluntarily provide an affidavit, the law (35 U.S.C. § 24) authorizes the

issuance of a subpoena by a U.S. District Court to compel testimony by the third-party.");

*Sheehan v. Doyle*, 513 F.2d 895, 898-99 (1st Cir. 1975) (permitting a district court to compel

testimony of a third party pursuant to a subpoena under 35 U.S.C. § 24 in aid of discovery during

an interference as authorized by the Board); *see also Khanna v. Kimura*, 74 U.S.P.Q.2d 1797,

1798-99 (Bd. Patent App. & Interf. 2004) (granting motion for leave to obtain subpoenas under

35 U.S.C. § 24 to compel testimony and documents from third-party inventors).[5]

      Moreover, the cases which CGI cites (*see* CGI Opp. Br., at pp. 10-13) do not support its

argument that the Board would have invariably denied any request to depose Dr. Chappel.

Rather, in those cases the Board denied requests for discovery as being too broad or untimely,

---

[4] *See* Notice of Final Rule, Patent Interference Proceedings, 49 Fed. Reg. 48,416-17 (Dec. 12, 1984) ("In the event a party needs testimony from a third-party who will not appear unless a subpoena is issued, including a hostile witness, direct and cross-examination testimony may be taken on oral deposition. The rules provide that prior authorization of an examiner-in-chief is required before a party can take testimony by issuance of a subpoena under 35 U.S.C. 24. The rule thus adopts the policy of *Sheehan v. Doyle*, 513 F.2d 895, 898 (1st Cir. 1975), *cert. denied*, 423 U.S. 874 (1975) . . . .").

[5] Although the Board in *Khanna* indicated that its opinion is not binding precedent in the Patent Office (*see* 74 U.S.P.Q.2d at 1797), the Board's opinion nonetheless demonstrates that it interprets 35 U.S.C. § 24 and the relevant interference rules to compel the appearance of third parties.

and in most instances suggested that the requested discovery might ripen and become available later. *See Tropix, Inc. v. Lumigen, Inc.*, 53 U.S.P.Q.2d 2018, 2020-21 (Bd. Pat. App. & Interf. 2000) (denying requests for documents in order to cross-examine any potential witness, and stating "[i]f and when Tropix indicates that it will rely on the testimony of witnesses, Lumigen will be entitled to obtain discovery under 37 CFR § 1.687(b)."); *Shiokawa v. Maienfisch*, 56 U.S.P.Q.2d 1970, 1973-74 (Bd. Pat. App. & Interf. 2000) (denying requests for documents because "[a]t this time, however, Shiokawa's request is premature because cross-examination has not taken place."); *Gregor v. Horn*, 187 U.S.P.Q. 672, 672-73 (Bd. Pat. Interf. 1973) (dismissing some discovery requests "as being premature," but granting request for other discovery); *Parks v. Fine*, 223 U.S.P.Q. 686, 687 (Comm'r of Patents & Trademarks 1983) ("If petitioners felt that respondent had documents which would support petitioners' position at final hearing, petitioners should have timely moved for additional discovery of those documents under 37 CFR § 1.287(c). If petitioners had succeeded in obtaining documents, a motion for a testimony period could then have been more properly based on the documents.").

CGI could have sought the deposition of Dr. Chappel in order to support its current allegation of inequitable conduct during the '114 Interference. Because CGI slept on its rights, it waived them, and it cannot raise those arguments for the first time in this appeal of the '114 Interference. The Court accordingly should dismiss CGI's Counterclaim Counts II and III.

> **D.**     **CGI's continued misrepresentations of Dr. Chappel's testimony cannot salvage its Counterclaim Counts II and III**

In its opposition brief, CGI again repeatedly misrepresents what Dr. Chappel said in his deposition. The relevant portions of the transcript of that deposition confirm that Dr. Chappel did not say what CGI says he did. CGI therefore has no "set of facts" to support its allegations of inequitable conduct in Counterclaim Counts II and III.

Specifically, at page 6 of CGI's opposition brief, CGI says "Chappel preferred [a mutant DHFR gene] for use in an invention involving a selectable marker, such as the subject matter of the claims of the '071 patent. Chappel Depo. at 89:13-90:11." Dr. Chappel never said that. (*See* ARS's Memorandum In Support Of Its Motion To Dismiss, at pp. 9-10.) The portion of the deposition transcript which CGI cites reflects only Dr. Chappel's testimony that in some circumstances, a mutant DHFR gene could be useful. And on the very next page of the transcript, Dr. Chappel testified that he never tried to use the mutant DHFR gene in any experiments involving "TSH" (*Q: Did you try the same thing with TSH? Dr. Chappel: No.*") (Transcript of Deposition of Scott C. Chappel, Ph.D., Exhibit C to Nielsen Decl. submitted in support of ARS's Motion To Dismiss, at p. 91, lines 15-16.) As CGI is well-aware, "TSH" stands for "Thyroid Stimulating Hormone" or "Thyrotropin," and all of the experiments reported in the '071 patent involved the activation of a "TSH" gene. *See, e.g.*, '071 patent at col. 13, lines 22-25 ("The present invention may be illustrated by reference to the activation of the rat thyrotropin beta subunit (TSHβ) . . . .") and col. 14, line 34 to col. 22, line 30.

Similarly, CGI says that Dr. Chappel testified "that he used a mutant amplifiable gene to conduct experiments intended to present evidence of the effectiveness of his invention . . . ." (CGI's Opp. Br. at p. 7.) Once again, Dr. Chappel did not say that. Instead, Dr. Chappel testified that he did not remember observing that the use of a mutant DHFR gene would amplify DNA in GH3 cells (the cell line utilized in the experiments reported in the '071 patent) ("*Q: Was it effective in amplifying DNA in the GH3 cells? Dr. Chappel: I don't know. Q: You don't remember seeing that? Dr. Chappel: No.*") (Chappel Dep. Transcript, at p. 89, lines 1-5), and that he never tried to use the mutant DHFR gene in any experiments involving TSH (*Q: Did you try the same thing with TSH? Dr. Chappel: No.*") (*Id*. at p. 91, lines 15-16).

-10-

CGI is now conspicuously silent about its accusation in its Counterclaims that ARS somehow tried to convince the Examiner into believing that Dr. Chappel's continuation-in-part application did not add any information to his original application. Instead, CGI says that "Chappel testified at length" that the invention of claim 3 was not his invention, and that he did not intend to claim that as his invention. (CGI Opp. Br. at p. 15.) That is not what Dr. Chappel said, as confirmed by the actual transcript of Dr. Chappel's deposition. (*See id*. at p. 131, lines 16-21) ("*Q. When you originally filed your patent application in 1989, you didn't intend to claim that [i.e., claim 3], did you? A. I think I did intend to claim that. Q. I'm sorry. A. I think I did intend to claim that.*").

Finally, CGI says that Dr. Chappel testified that the '832 patent "described the same genetic tools that were used in experiments reflected in the '071 patent," and that "[t]he only thing not set forth in the '832 patent necessary to achieve the same results described in the later-filed '071 patent were the concept of homologous recombination (specifically, the targeting vectors necessary for homologous recombination.)." (CGI Opp. Br. at p. 16.) That is not what Dr. Chappel said. Dr. Chappel testified that the experiments reported in the '832 patent used different cells and DNA sequences from a different species than those used in the experiments reported in the '071 patent. (*See id*. at p. 112, line 5 – page 116, line 9.) Dr. Chappel made it clear that the '832 patent has ***nothing*** to do with the inventions claimed in the '071 patent: "This ['832] patent has nothing to do with homologous recombination or endogenous gene activation. This is explaining -- in fact, what this is explaining is taking cDNA vectors and improving expression following random integration. It's got nothing to do with homologous recombination.") (*Id*. at p. 115, lines 17-23.)

## III.    Conclusion

For the foregoing reasons, and for the reasons set forth in *ARS's Memorandum in Support of its Motion to Dismiss CGI's Counterclaim Counts II And III*, ARS respectfully requests that the Court dismiss with prejudice CGI's Counterclaim Counts II and III. In those counterclaim counts, CGI attempts to raise issues in this § 146 action that it could have raised, but did not raise, in the '114 Interference from which this appeal is taken, based on evidence that CGI concedes was available during that interference. Under controlling Federal Circuit law, that is not permitted, and CGI's Counterclaim Counts II and III should therefore be dismissed. Additionally, CGI's allegation of antitrust liability in ¶ 43 of its counterclaim count IV (and its corresponding request for trebled costs and attorneys' fees in section H of its Requests for Relief) should be stricken from CGI's Answer and Counterclaims.

Respectfully submitted,

Dated: April 6, 2006

/s/ Matthew C. Nielsen
NIXON PEABODY LLP
Fred A. Kelly, Jr.
BBO No. 544046
100 Summer Street
Boston, MA 02110
Tel: (617) 345-1000
Fax: (617) 345-1300

MARSHALL, GERSTEIN & BORUN LLP
Kevin M. Flowers (*pro hac vice*)
Matthew C. Nielsen (*pro hac vice*)
6300 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448

Attorneys for Applied Research Systems
ARS Holding, N.V

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing REPLY IN SUPPORT OF ARS MOTION TO DISMISS CGI COUNTERCLAIM COUNTS II AND III filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 6, 2006.

/s/ Matthew C. Nielsen