**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CELL GENESYS, INC., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-12448-MLW |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-11810-MLW |
| | ) | |
| CELL GENESYS, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant, | ) | |
| and | ) | |
| | ) | |
| TRANSKARYOTIC THERAPIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ARS SUMMARY OF POINTS AND AUTHORITIES
REGARDING PROPOSALS IN THE JULY 14, 2006 JOINT STATUS REPORT**

Applied Research Systems ARS Holding, N.V. ("ARS") respectfully submits the following summary of points and authorities regarding the parties' proposals in the parties' Joint Status Report filed on July 14, 2006 (Docket No. 120). In the Joint Status Report, ARS did not present any response to the proposal by Cell Genesys, Inc. ("CGI") regarding possible bifurcation, i.e., which issue(s) the parties and the Court should address first in this action. ARS accordingly submits the following summary of points and authorities to facilitate discussion of the parties' respective proposals for bifurcation at the hearing scheduled for August 8, 2006.

### A.    Summary of the parties' proposals in the Joint Status Report

In the parties' Joint Status Report (Docket No. 120), CGI said that it "is unable to identify any issue or combination of issues whose resolution might advance the possibility of settlement, short of full resolution of Count I." Docket No. 120 at 3. CGI then proposed that, rather than addressing any of the patentability issues that were the subject of the '114 Interference below (and were decided by the Board in its Decision on Preliminary Motions that forms the sole basis for this 35 U.S.C. § 146 action) (Docket No. 1, Exhibit 1), the Court should instead conduct a "priority" contest between ARS and CGI. *See id.* at 10. In essence, CGI proposes that instead of addressing the issues decided below and appealed by the parties in this action, the parties and the Court should take on brand-new issues: whether ARS (*i.e.*, Dr. Chappel) or CGI (Dr. Skoultchi) was the first to conceive the subject matter of their claims, whether they reduced that subject matter to practice (*e.g.*, whether each party described and enabled that subject matter in their respective patent applications), and if so, whether they exercised the required diligence through the date on which they reduced that subject matter to practice.

In contrast, while acknowledging that there is no single case-dispositive issue, ARS proposed that it will be most efficient and will best put the case in a posture favoring settlement if the parties and the Court first focus on a few specific aspects of the Board's decision for which

1

the parties have actually sought a determination in this action, most of which are "threshold" issues regarding the patentability of the parties' respective claims. *Id*. at 5.

In the '114 Interference, the Board held that CGI currently has only one patentable claim, and that CGI's single claim does not interfere with any of ARS's claims. Thus, as the case stands now, there is no "interference-in-fact" between the parties. Consequently, before moving on to any other potential issue, ARS proposes that the parties and the Court should focus first on whether the Board erred in holding that CGI's single claim does not interfere with any of ARS's claims, and whether CGI can resuscitate any of its other claims that the Board found to be unpatentable. *Id*. at 6-10. If CGI cannot establish that the Board erred in rendering these decisions, there can be no "interference-in fact," and that should move CGI (and TKT) toward settlement. In the alternative, if the Court finds that the Board did err in rendering these decisions, that could move ARS toward settlement.

**B.    Points and authorities regarding CGI's proposal**

ARS submits the following points and authorities regarding CGI's proposal that the parties and Court should first conduct a "priority contest" between ARS and CGI.

**1.    The Board did not conduct a priority contest below**

In the '114 Interference, the parties never briefed, and the Board therefore never addressed, the issue of which party was the first to invent the subject matter of the parties' claims. Rather, each party filed a series of preliminary motions either attacking the patentability of its opponent's claims under 35 U.S.C. §§ 102, 103 and/or 112 or seeking to support its entitlement to its earliest filing date. Consequently, the Board's decision on preliminary motions, which forms the sole jurisdictional basis for this § 146 action, does not deal with any issue regarding priority of invention.

2

### 2. Neither party requested a priority determination in this action

Neither CGI nor ARS sought a determination of priority of invention in any of its pleadings in this action. *See* Docket Nos. 1 (ARS Complaint), 2 (ARS First Amended Complaint), and 91 (CGI's Answer and Counterclaims).

### 3. The Board does not conduct a priority contest unless there is an "interference in fact"

The existence of an "interference-in-fact" between the parties' claims is a prerequisite for an interference proceeding to move from the preliminary motions phase (where the parties and the Board address the patentability of the parties' respective claims over the prior art and/or whether the parties' respective disclosures satisfy the enablement, written description, and definiteness requirements of 35 U.S.C. § 112) to the "priority" phase (where the parties can present evidence on, and the Board can decide, which party invented first, as discussed further below). *See Nitz v. Ehrenreich*, 537 F.2d 539, 543 (C.C.P.A. 1976) (Markey, C.J.) ("The existence of common subject matter defined by the interference count is a prerequisite for an award of priority, *i.e.*, the existence or nonexistence of interfering subject matter goes to the very foundation on which an interference rests. Determination of the presence or absence of interfering subject matter is logically related to the jurisdiction-conferring issue of priority because that determination necessarily precedes a priority award.") (citation and internal quotation omitted).[1]

In its decision on preliminary motions, the Board found that all but one of CGI's pending or proposed claims are not patentable, and found that CGI's one patentable claim does not

---

[1] The United States Court of Customs and Patent Appeals was a predecessor to the United States Court of Appeals for the Federal Circuit, and its decisions are treated as binding precedent of the Federal Circuit. *See South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc).

3

interfere with the twenty-one ARS patent claims that the Board confirmed were patentable. Yet instead of seeking reversal of the Board's decision finding its claims unpatentable, or of the Board's decision finding no interference-in-fact between the parties' remaining claims, CGI asks this Court to conduct a priority contest. CGI's proposal would require the Court to decide priority where there is no interference-in-fact. This would be improper.

Just as the existence of a "case or controversy" is a prerequisite to federal court jurisdiction (to avoid rendering advisory opinions), the existence of an interference-in-fact between the parties' claims is a prerequisite to a determination of priority of invention. "Upon a determination that there is no interference in fact, the interference – at least as to the count and the claims corresponding to the count – is over. No judgment of priority can be entered, because the Director cannot be of the opinion that claims of different parties 'interfere.'" *Han v. Livak*, 63 U.S.P.Q.2d 1364, 1370 (Bd. Pat. App. & Interf. 2002) (non-precedential) (discussing *Nitz v. Ehrenreich*, *supra*).

Without interfering claims, the Board will not declare an interference. "[T]he absence of patentable claims corresponding to the count bars the declaration of an interference." *Noelle v. Armitage*, Interference No. 104,724, Paper No. 89, at 13 (Bd. Pat. App. & Interf. May 15, 2003) (non-precedential) (attached as Exhibit A) (discussed in Jerome Rosenstock, *Patent Interference Practice Handbook*, at 1-20.19-30 (Aspen Pub. 2006)). And if, during an interference, the Board finds that no interfering claims remain, the Board will terminate the interference. *See Han v. Livak*, 63 U.S.P.Q.2d at 1370 (declining to address patentability issues after finding that there was no interference-in-fact). This is precisely what happened in the '114 Interference. *See* Docket Nos. 1 and 2, Exhibit 1, at 128-32.

Consequently, CGI's proposal that this Court should conduct a priority contest before CGI establishes that at least one of its claims interferes with ARS's twenty-one claims cannot be reconciled with the rules of interference practice, and is tantamount to asking this Court to render an advisory opinion.

### 4. Actions under 35 U.S.C. § 146 are essentially appeals to review specific findings of the Board with which a party is dissatisfied

As CGI is well-aware, this § 146 action is essentially an appeal proceeding. *See Conservolite, Inc. v. Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994) ("[A]n action under § 146 is essentially a proceeding to review the action of the Board."). The sole purpose of this action is for the Court to determine whether those aspects of the Board's Decision on Preliminary Motions in the '114 Interference for which the parties have requested reversal were or were not erroneous. *See id.* at 1102-03 (reversing district court's decision in a § 146 action that rested on an issue not properly before the district court, stating "[a] proceeding under § 146 is not a chance for a party to reconstruct its case, based on a new litigation strategy, leapfrogging the administrative process in the PTO.").

The parties did not engage in a "priority" contest in the '114 Interference below. There is no record or decision regarding priority for this Court to review. The parties filed, and the Board resolved, the parties' respective preliminary motions. *See* Docket No. 1 and 2, Exhibit 1, at 133-40. None of those motions dealt with the parties' priority of invention. Nor did the parties, in supporting their preliminary motions, generate an evidentiary record on which the Board could have resolved priority of invention. If, after resolving the preliminary motions, the Board had found that the parties still had interfering claims, the Board could have ordered the parties to conduct such a "priority" contest, in which the parties could have submitted documentary evidence and testimony on the issues of conception, diligence, and reduction to practice.

5

Because the Board found there was no interference-in-fact after resolving the preliminary motions, the parties and the Board never addressed priority of invention in the '114 Interference, and it is therefore not an issue for this Court to review.

### C. Points and authorities regarding ARS's proposal

It will be most efficient and will best put the case in a posture favoring settlement if the Court focuses first on a few specific aspects of the Board's decision regarding whether CGI has any patentable interfering claims, as well as a few aspects of the Board's decision concerning the patentability of ARS's claims.

#### 1. The Board's treatment of "threshold" issues

ARS's proposed approach concerning early resolution of "threshold" issues should not only move the parties toward settlement, but is also consistent with how the Board deals with such issues in interferences. "Threshold" issues are defined in the Board's Rules of Practice:

> *Threshold issue* means an issue that, if resolved in favor of the movant, would deprive the opponent of standing in the interference. Threshold issues may include:
>
> (1) No interference-in-fact, and
>
> (2) In the case of an involved application claim first made after the publication of the movant's application or issuance of the movant's patent:
>
> * * *
>
> (ii) Unpatentability for lack of written description under 35 U.S.C. 112(1) of an involved application claim . . . .

37 C.F.R. § 41.201 (2004) (emphasis in original). *See also Berman v. Housey*, 291 F.3d 1345, 1351 (Fed. Cir. 2002) (a "threshold issue" is one "that should be addressed by the Board at the preliminary stage of an interference before proceeding to the merits"); *Regents of the Univ. of California v. University of Iowa Research Found.*, No. 05-1374, slip. op. at 3 (Fed. Cir. July 17, 2006) (affirming Board's judgment on threshold issue that resulted in termination of

6

interference); *McMullin v. Carroll*, 153 Fed. Appx. 738, 745-46 (Fed. Cir. Oct. 31, 2005) (non-precedential) (affirming the Board's dissolution of interference following its decision of threshold issue that patent application lacked sufficient written description to support the claims on which the interference was based).

### 2. ARS's proposal

ARS proposes that the parties and Court first resolve the threshold issues of (1) whether the Board correctly held that there is no interference-in-fact between claim 106 in CGI's '390 application (the only CGI claim that the Board found patentable) and the twenty-one claims in ARS's '071 patent that the Board found patentable; and (2) whether CGI's '390 application contains an adequate written description of the subject matter in CGI's claims 105-112 under 35 U.S.C. § 112, ¶1. At the same time, the parties and the Court should also resolve (3) whether the Board correctly found that CGI's claims 107-109 are unpatentable over the "Japan" reference (if CGI is unable to persuade the Court to reverse this aspect of the Board's decision, CGI would be left with no patentable interfering claims).

ARS's proposal allows the parties and the Court to resolve each of these "threshold" issues before proceeding to other issues raised in the parties' pleadings. If CGI fails to secure a patentable claim that interferes with any ARS claim, it (and TKT) should look to settle this case. It is therefore least burdensome on the Court and most likely to facilitate settlement to focus first on whether CGI can resurrect any such claim, rather than having the Court expend considerable resources to address every disputed aspect of the Board's decision.

As part of dealing first with issues that could move the parties toward settlement, ARS also proposes that the parties and the Court resolve two issues regarding the patentability of the claims in ARS's '071 patent. The first issue is whether the Board erred in construing the term "cell line" in each of the claims in ARS's '071 patent to encompass prior art "microorganisms,"

7

*i.e.*, bacterial and yeast cells. The second issue is whether the Board erred in finding that ARS is not entitled to the benefit of its earliest-filed application. Early resolution of these issues would likely simplify and streamline any subsequent consideration by the Court regarding the patentability of the '071 patent claims that the Board found unpatentable. Resolution of these issues could also move the parties closer to settlement.

Each party should move for summary judgment regarding the issues on which it bears the burden of persuasion (*i.e.*, those issues on which the party seeks to reverse the Board's decision). *See* Joint Status Report, Docket No. 120, at 11-12. If the Court denies CGI's motions, and grants ARS's motions, ARS might be willing to settle with CGI by walking away from this case with the twenty-one claims that it has right now, rather than pursuing reversal of the Board's decision on its other thirty-seven claims. Even if CGI refuses to settle under that scenario, ARS believes that the Court's resolution of the "threshold" issues regarding CGI's claims will likely facilitate settlement of Count II between ARS and TKT (which in turn could lead to a settlement of the § 146 action between CGI and ARS).

### D. Conclusion

ARS respectfully submits that the Court should reject CGI's proposed bifurcation of issues because (i) the parties did not develop or present issues of priority to the Board, (ii) the Board did not determine the issue of priority of invention, so there is no decision for this Court to review; (iii) neither party sought a determination on priority of invention in this action; and (iv) CGI currently has no patentable claim that interferes with any of ARS's claims.

Instead, the Court should adopt ARS's proposal for the parties to file summary judgment motions on the issues identified above regarding whether CGI has any patentable, interfering claims (i.e., whether CGI claim 106 interferes with any ARS claim, whether CGI's claims 107-109 are unpatentable over the Japan reference under 35 U.S.C. § 102, and whether CGI's '390

8

application contains an adequate written description of the subject matter of claims 105-112 under 35 U.S.C. § 112, ¶1). The Court should also consider summary judgment motions on the construction of "cell line" in ARS's claims and whether ARS's claims are entitled to the benefit of its earliest-filed application. As between the two parties' proposals, ARS's is the most logical, legally grounded, and likely to steer the parties toward settlement.

Dated: August 1, 2006                                             Respectfully submitted,


By: ___/s/ Kevin M. Flowers____
Fred A. Kelly, Jr. (BBO # 544046)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Tel: 617-345-1000
Fax: 617-345-1300

Kevin M. Flowers (*pro hac vice*)
Matthew C. Nielsen (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 S. Wacker Drive
Chicago, IL  60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448

COUNSEL FOR PLAINTIFF APPLIED
RESEARCH SYSTEMS ARS HOLDING,
N.V.

CERTIFICATE OF SERVICE

      I hereby certify that the foregoing **ARS SUMMARY OF POINTS AND AUTHORITIES REGARDING PROPOSALS IN THE JULY 14, 2006 JOINT STATUS REPORT** filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 1, 2006.

                                                  /s/ Kevin M. Flowers

920671v4