The opinion in support of the decision being
entered today is <u>not</u> binding precedent of the Board.

Paper 89

Filed by:   Interference Trial Section Merits Panel
            Box Interference                           Filed
            Washington, D.C.  20231               15 May 2003

UNITED STATES PATENT AND TRADEMARK OFFICE

————————————

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

————————————

RANDOLPH **NOELLE**

Junior Party,
(Application 08/742,480),

v.

RICHARD J. **ARMITAGE**,
WILLIAM C. FANSLOW, and MELANIE K. SPRIGGS

Senior Party,
(Application 09/322,021).

————————————

Patent Interference No. 104,724

————————————

Before: TORCZON, LANE, and NAGUMO, <u>Administrative Patent Judges</u>.

NAGUMO, <u>Administrative Patent Judge</u>.


**ORDER ENTERING FINAL JUDGMENT AGAINST NOELLE**

The question before the merits panel is, must this
interference proceed to a determination of priority after it has
been determined that the junior party applicant is not entitled
to any claims, now or in the future, to subject matter within the
scope of the count in the interference?  Given the procedural
posture and the particular facts of this case, we answer the
question in the negative.

Interference No. 104,724                              Paper No. 89
Noelle v. Armitage

### Part A.    Background

The following findings are supported by the preponderance of evidence in the record.

1.    During Time Period 1 of this interference, Armitage filed Preliminary Motion 1 under 37 CFR § 1.633(a) for judgment, moving *inter alia* that all of Noelle's claims corresponding to the count lacked an enabling disclosure under 35 U.S.C. § 112, first paragraph.  (Paper 25.)

2.    Noelle opposed this motion on the merits.  (Paper 37.)

3.    During Time Period 2 of this interference, Noelle did not file any contingent motion under 37 CFR § 1.633(i) to redefine the interfering subject matter, e.g., by submitting amended claims that would avoid any of the rejections proposed by Armitage's Preliminary Motion 1.

4.    On October 28, 2002, a paper styled "JUDGMENT (PURSUANT TO 37 CFR § 1.640)" was mailed in this proceeding.  (Paper 63, "Judgment.")

5.    In the Judgment, Armitage's preliminary motion 1 was granted in part, in that Noelle's claims 42, 43, 46-48, 50, 54, and 57, all the claims designated as corresponding to the count in this interference, were held unpatentable for lack of an enabling disclosure regarding chimeric monoclonal antibodies to the antigen CD40CR.  The remainder of Armitage's preliminary

- 2 -

Interference No. 104,724                                    Paper No. 89
Noelle v. Armitage

motion 1 was dismissed, as were Armitage's preliminary motions 2
and 3, and Noelle's miscellaneous motion 1.  (Paper 63 at 19.)

   6.   The Judgment contained the further order that Noelle is
not entitled to a patent containing claims 42, 43, 46–48, 50, 54,
and 57, and that the Judgment be entered into the file of
Noelle's involved application.  (Paper 63 at 19–20.)

   7.   On November 18, 2002, Noelle filed a timely request for
reconsideration.  (Paper 65.)

   8.   Noelle argued in its Request for Reconsideration that
the Board had erred in its holding of nonenablement.  (*Id.*)

      a.   Noelle did not contest the finality of judgment,
nor did it request a schedule to put on a priority case.

   9.   A paper denying Noelle's request was mailed on
February 21, 2003.  (Paper 74, hereafter, "Decision on
Reconsideration.")

   10.  On March 26, 2003, Noelle filed a paper directed to
interference 104,724 styled "Request to Set Testimony Period for
Priority Phase" (hereafter, "Request for Testimony," Paper 75).

      a.   Prior to filing its Request for Testimony, Noelle
did not request or initiate a conference call requesting
authorization to file a motion.

      b.   Noelle's Request for Testimony was filed more than
five months after Judgment was issued in this case, and more than

- 3 -

Interference No. 104,724                                    Paper No. 89
Noelle v. Armitage

five weeks after the decision on reconsideration was issued in
this case.

11.  On March 31, 2003, Armitage filed an Opposition to
Noelle's Request for Testimony.  (Paper 76.)

12.  On April 2, 2003, a paper styled "ORDER TO SHOW CAUSE
WHY NOELLE'S REQUEST TO SET TESTIMONY PERIOD FOR PRIORITY PHASE
WAS NOT TIMELY FILED" was mailed.  (Paper 78.)

13.  On April 10, 2003, Noelle responded to the Order to
Show Cause, urging that it had not recognized either the Judgment
or the Decision on Reconsideration as a "Final Decision" in this
proceeding, and that it was entitled to a priority phase to
resolve the patentability of Armitage's involved claims under 35
U.S.C. § 102(g).  (Paper 79 at 8.)

14.  On April 16, 2003, a paper styled "ORDER FOR TELEPHONE
CONFERENCE TO SET TIMES FOR PRIORITY PHASE" was mailed.
(Paper 81.)

a.  The Order provided Armitage with an opportunity to
file further objections prior to the conference call.  (Paper 81
at 7-8.)

15.  Armitage filed further objections on April 18, 2003.
(Paper 83.)

16.  A telephone conference call was held on April 23, 2003,
to discuss issues relating to whether a priority phase should be
established in this interference.  A date was set for junior

- 4 -

Interference No. 104,724                              Paper No. 89
Noelle v. Armitage

party Noelle to file its case-in-chief on priority, and the
parties were advised that a determination whether to proceed or
whether to terminate this interference would be mailed shortly.

### Noelle's arguments

Noelle's fundamental argument in favor of setting a schedule
for a priority phase in this interference is that 35 U.S.C.
§ 135(a) mandates that the Board decide the issue of priority in
this interference.  (Paper 79 at 11.)  According to Noelle, the
declaration of the interference, the accorded benefit of its
priority date of February 14, 1992, and its preliminary
statement, alleging an actual reduction to practice prior to
Armitage's benefit date, fairly raise the issue of priority.
Noelle maintains that the statute and controlling precedent
"require administrative resolution of the issue [of priority]."
(Paper 79 at 1.)  Noelle argues further, in effect, that it was
not given adequate notice that the "Judgment" (Paper 63) or the
"Reconsideration" (Paper 74) were Final Judgments terminating the
interference.  (Paper 79 at 7-10.)

### Armitage's arguments

Armitage responds that: the Judgment and the Reconsideration
were, by style and content, final judgments, and that Noelle
lacks standing to contest priority vis-à-vis Armitage (Paper 83
at 7-10); the issue of priority has not been fully developed or
fully raised (*id.* at 10-11); that public interest is consistent

- 5 -

Interference No. 104,724                                      Paper No. 89
Noelle v. Armitage

with the prompt issuance of a patent to Armitage (*id.* at 11–13);
and Noelle's preliminary statement is defective, so Noelle is not
permitted to take testimony on the issue of priority of invention
(*id.* at 13–16).


### Part B.    Discussion

The particular facts of this case, in the context of current
procedures in interferences before the Board of Patent Appeals
and Interferences, present a situation for which precedent
provides no clear answers.  All of Noelle's involved claims
(i.e., those claims that have been designated as corresponding to
the count) have been held unpatentable under 35 U.S.C. § 112,
first paragraph, for lack of enablement.  Judgment was entered
against Noelle (Paper 63), which, on reconsideration requested by
Noelle (Paper 65), was maintained.  (Paper 74.)

Noelle contends that the Board is compelled by 35 U.S.C.
§ 135(a) and Federal Circuit precedent to determine the question
of priority in this case.  Armitage, in contrast, contends that
having determined that all of Noelle's involved claims are
unpatentable for lack of an enabling disclosure, the Board
correctly entered judgment against Noelle.  Moreover, Armitage
urges that the Board should follow the logical extension of its
precedent regarding threshold issues, and halt the proceedings.
For the reasons set out *post*, on the facts of this case, we agree

- 6 -

Interference No. 104,724                                    Paper No. 89
Noelle v. Armitage

with the outcome urged by Armitage, but we do not subscribe to
its rationale.

    We emphasize that we do not regard this case as a vehicle to
pronounce broad interpretations of the law or our procedures.  We
have found it useful, however, to review the cases to emphasize
that they are not 'on all fours' with this case, and that it is
not clear that their holdings apply, nor that their holdings
should be applied, to the facts of this case.

    <u>Threshold issues</u>

    We begin by observing that the term "threshold issue" is
best limited to questions involving whether there is an
interference to be resolved.  Such questions include whether the
claims of the parties are drawn to common inventions, i.e.,
whether or not an interference-in-fact exists, *Case v. CPC Int'l,
Inc.*, 730 F.2d 745, 750, 221 USPQ 196, 200 (Fed. Cir. 1984)
("[n]o interference in fact means that there is no interfering
subject matter, that Case's patent is no impediment to granting
CPC the claims of its application"), or whether an applicant's
claim was timely filed under 35 U.S.C. § 135(b).  *Berman v.
Housey*, 291 F.3d 1345, 1351, 63 USPQ2d 1023, 1027 (Fed. Cir.
2002) (§ 135(b) is "intended to be a statute of repose, limiting
the time during which an interference may be declared 'so that
the patentee may be more secure in his property right.'")
(Citation omitted.)  The court distinguished Housey's motion

                            - 7 -

Interference No. 104,724                              Paper No. 89
Noelle v. Armitage

under § 135(b) as involving a threshold issue, while "Berman's
motions [for unpatentability of Housey's claims over the prior
art], on the other hand, involved a 'mere' patentability issue."
*Id.* at 1352, 63 USPQ2d at 1028.  Armitage's motion, as discussed
*post*, has more the character of a "mere" patentability motion,
albeit one that we considered first.  37 CFR § 1.640(b),
expressly approved by *Berman*.  *Id.*

    The Board's authority under §§ 6 and 135(a) as amended in
1984

    The formation of the Board of Patent Appeals and
Interferences removed a major jurisdictional roadblock from
interference practice.  Prior to the revisions to 35 U.S.C. §§ 6
and 135(a), enacted in 1984, issues of patentability were raised
before and decided by a primary examiner.  37 CFR §§ 1.231, 1.237
(1984).  If the examiner determined that no involved claims were
patentable, the interference was "dissolved," and prosecution of
the application might continue.  If interfering claims remained,
the examiner would return the case to the Board of Interferences.
Under the 1984 statute, issues of patentability and priority
could be resolved in a single proceeding before the Board rather
than in a series of complicated *inter partes* and *ex partes*
proceedings.

    The Federal Circuit analyzed the import of 35 U.S.C. §§ 6
and 135(a) as follows:

- 8 -

Interference No. 104,724                              Paper No. 89
Noelle v. Armitage

> the legislative history of §§ 6 and 135(a) makes clear
> that these provisions address only what issues the
> Board is empowered to consider, and thus does not
> establish any affirmative obligations that it must
> perform.  The legislative history of the Patent Law
> Amendments of 1984, Pub. L. No. 98-622, 98 Stat. 3383
> . . . states that §§ 6 and 135(a) were amended in 1984
> 'to permit the Board of Patent Appeals and
> Interferences to consider all patentability issues on
> [sic] interferences.'  130 Cong. Rec. H10525, H10528
> (1984), reprinted in 1984 U.S.C.C.A.N. 5827, 5836
> (emphasis added).  The use of the word 'permit,' as
> opposed to terms such as 'compel,' 'require,' or the
> like, strongly suggests that Congress was not placing
> any affirmative obligations on the Board, but rather
> setting forth the scope of its authority in
> interferences.  Section 6 therefore does not require
> the result sought by Berman.

*Berman*, 291 F.3d at 1353-54, 63 USPQ2d at 1029.  While the court

was addressing principally Berman's contention that § 6 requires

the Board to determine all questions of priority and

patentability, the court's remarks confirm that Congress accorded

the Board significant discretion in its consideration of issues

within its newly expanded jurisdiction under § 135(a).

     Pursuant to the 1984 act, the PTO implemented regulations

that permitted involved parties, *inter alia*, to raise issues of

no interference-in-fact and patentability before the Board.  *See*

49 Fed. Reg. 48416, 48461 (1984); 37 CFR § 1.633(a), (b) (1985)

("Preliminary Motions").  It came to be the practice, codified in

1995, that most decisions on preliminary motions were deferred to

final hearing.  60 Fed. Reg. 14488, 14525 (1995); 37 CFR

§ 1.640(b) (1995) ("[u]nless an administrative patent judge or

the Board is of the opinion that an earlier decision on a

preliminary motion would materially advance the resolution of the

interference, decision on a preliminary motion shall be deferred

to final hearing.").  The PTO explained that this procedure would

advance resolution of interferences where settlement was not

likely, while parties could still inform the administrative

patent judge that a decision on a particular motion would assist

the settlement process in a given case.  *Id.* at 14509.  Under

these procedures, the parties would conduct and present their

priority cases prior to decisions on the patentability of

involved claims, and, indeed, often prior to final decisions on

the definition of the count and the identity of the corresponding

claims.

    It was in this procedural context that the Federal Circuit

analyzed the Board's discretion to consider issues of priority

and patentability in interferences, reasoning that deciding all

the issues "fully and fairly raised during the interference

proceeding whether related to patentability or priority, is in

full accord with congressional intent that PTO procedures be

simplified as well as improved."  *Perkins v. Kwon*, 886 F.2d 325,

328, 12 USPQ2d 1308, 1310 (Fed. Cir. 1989); *see also Rexam Indus.

Corp. v. Eastman Kodak Co.*, 182 F.3d 1366, 1369, 51 USPQ2d 1457,

1459 (Fed. Cir. 1999) ("We have consistently applied the

rationale of *Perkins* to conclude that priority issues that have

Interference No. 104,724                          Paper No. 89
Noelle v. Armitage

been <u>fully developed and presented to the Board</u> for decision in

interference proceedings should be decided by the Board even if a

count is deemed unpatentable to one party.") (citations omitted,

underscore added.)

    *Berman* clarified the holding of *Perkins* and other cases

often cited as requiring that the Board reach a given issue in an

interference, stating:

> Those cases . . . do not hold that *all* issues relating
> to patentability that are fairly raised in an
> interference *must* be addressed by the Board.  Rather,
> those cases stand for the proposition that if, in a
> properly declared interference, an issue of priority or
> patentability is fairly raised and fully developed on
> the record, then the Board has the *authority* to
> consider that issue even after the Board determines
> that one party was not entitled to its claims.

*Berman*, 291 F.3d at 1352, 63 USPQ2d at 1028 (emphasis original).

Regarding *Perkins*, the court explained that

> *Perkins* therefore held only that the Board had the
> authority to decide the priority issue even after it
> determined that Kwon's interfering claims were
> unpatentable, and thus was not presented with the
> question whether the Board is compelled to address all
> fairly raised issue of priority and patentability in
> every instance.  [*Id.*]

Thus, *Perkins* authorizes but does not compel the Board to address

priority, even if patentability is dispositive, and vice-versa.

    <u>Current procedures</u>

    In the current practice of the Board in interferences, which

was followed in this case, preliminary motions are decided before

setting the schedule for taking testimony and briefing for the

parties' priority cases.  The earlier practice had the effect of
leaving so many issues underlying the priority case unresolved
that the parties had to present multiple priority cases in the
alternative, accounting for many contingencies.  In too many
cases, that practice resulted in unnecessarily increased costs to
the parties and lengthened proceedings, exactly the opposite of
the goals of the legislative reform of 1984.  The current
practice does increase costs early in the proceeding because
preliminary matters are usually fully developed and resolved
before proceeding to priority.  However, the resulting greater
clarity of the issues in the priority phase usually reduces the
overall cost and duration of the interference.  A by-product of
the current process is that a dispositive patentability issue is
often reached before priority has been developed beyond a
rudimentary pleading (that is, the filing of the preliminary
statement alleging a date of earliest proof of invention).  The
parties have not yet expended time and resources preparing and
briefing their cases on priority.  In this posture, the question
is not whether to decide an already-briefed issue, but whether
there is sufficient justification to subject the party with
patentable claims to the expenses of time and resources required
for a priority case.

        We begin with a consideration of the effect of having no
patentable claims at this juncture.  Other considerations include

Interference No. 104,724                                    Paper No. 89
Noelle v. Armitage

the status and relative positions of the parties, whether the

interference was provoked, and if so, in what way, and the

actions of the parties in the interference, and to what extent

they were constrained by the proceedings in the particular case.

Prior to the declaration of an interference, the absence of

patentable claims corresponding to the count bars the declaration

of an interference.  37 CFR § 1.603 ("Before an interference is

declared between two or more applications, the examiner must be

of the opinion that there is interfering subject matter claimed

in the applications which is patentable to each applicant subject

to a judgment in the interference.").  This practice is

essentially unchanged from the practice cited with approval by

the Supreme Court:

> there is no basis for the proposition that even where
> an applicant for an interference presents a claim which
> on its face is unpatentable, a complicated and
> frequently lengthy factual inquiry into priority of
> invention must inexorably take place.  On the contrary,
> Rule 201(a), 37 CFR § 1.201(a), defines an interference
> proceeding as one involving "two or more parties
> claiming substantially the same patentable invention
> and may be instituted as soon as it is determined that
> common patentable subject matter is claimed * * *."
> (Emphasis supplied.)  See *Application of Rogoff*, 46
> CCPA 733, 739, 261 F.2d 601, 606, 120 USPQ 185, 188:
> "The question as to patentability of claims to an
> applicant must be determined before any question of
> interference arises and claims otherwise unpatentable
> to an applicant cannot be allowed merely in order to
> set up an interference."

*Brenner v. Manson*, 383 U.S. 519, 528 n.12, 148 USPQ 689, 693 n.12

(1966).

- 13 -

Interference No. 104,724                                          Paper No. 89
Noelle v. Armitage

After an interference has been declared, a party may move

for judgment that an opponent's claims are unpatentable on issues

other than derivation or priority:

> [a] motion for judgment against an opponent's claim
> designated to correspond to a count on the ground that
> the claim is not patentable to the opponent . . .

37 CFR § 1.633(a).  This rule effectively provides a party with

the opportunity to request consideration of patentability issues

that, had they been raised during *ex parte* prosecution, would

have barred declaration of an interference involving its

opponent's claims prior to a positive determination of

patentability.  In addition to providing the opportunity to

oppose the motion for unpatentability on the merits, the rules

provide a party the opportunity to redefine the count by, e.g.,

amending its claims, in response to a motion under 37 CFR

§ 1.633(a), (b), or (g).  *See* 37 CFR § 1.633(i)[1].  This rule

provides a party with the opportunity to preserve patentable

claims to subject matter corresponding to the count, even if the

claims present at the declaration of the interference are

determined to be unpatentable.

---

[1] 37 CFR § 1.633(i) reads in relevant part:

When a motion is filed under paragraph (a), (b), or (g) of this
section, an opponent, in addition to opposing the motion, may file a
motion to redefine the interfering subject matter under paragraph
(c) of this section

- 14 -

Interference No. 104,724                                      Paper No. 89
Noelle v. Armitage

The scope of a judgment in an interference, and the
resulting estoppel, require a party to act to preserve its right
to make claims to subject matter related to the count.  *See*
37 CFR § 1.658(c), which reads in relevant part:

> A judgment in an interference settles all issues which
> (1) were raised and decided in the interference, (2)
> could have been properly raised and decided in the
> interference by a motion under Section 1.633 (a)
> through (d) and (f) through (j) or Section 1.634, and
> (3) could have been properly raised and decided in an
> additional interference with a motion under Section
> 1.633(e).  A losing party who could have properly
> moved, but failed to move, under Section  1.633 or
> 1.634, shall be estopped to take *ex parte* or *inter
> partes* action in the Patent and Trademark Office after
> the interference which is inconsistent with that
> party's failure to properly move . . . .

Under this provision, a party cannot present, in a subsequent *ex
parte* proceeding, an amended claim that avoids the enablement
problem, thereby provoking another interference.  The rule
accomplishes this by requiring the party to amend its claims to
eliminate allegedly unenabled subject matter when the issue is
raised.  The opportunity to amend claims under 37 CFR § 1.633(i)
is limited in duration, and the consequences of failing to do so,
and losing the interference, are permanent.

In light of the opportunity to amend claims in response to
unpatentability motions, the failure to preserve any claims
corresponding to the count in the decision on preliminary motions
takes on greater significance, especially before any *inter partes*
actions other than a pleading have been taken to establish

- 15 -

Interference No. 104,724                              Paper No. 89
Noelle v. Armitage

priority.  The cases, as explained *supra*, confirm that the Board

has the authority, but is not compelled, to consider issues of

priority or patentability after a dispositive decision has been

made or a dispositive action taken.  When confronted with a

situation at the close of decisions on preliminary motions in

which one party has no patentable claims that correspond to the

count, at least the following three factors appear to provide

guidance on answering the question of whether or not to continue.

No one factor is necessarily dispositive in any given case.

Which party has been accorded for priority the benefit of the

earliest application?  What efforts has the party without

patentable claims made to preserve patentable claims

corresponding to the count? How strong is the evidence that that

party has presented supporting its case of prior invention of an

embodiment within the scope of the count?

     The present interference

     In the present case, Noelle, the junior party, and Armitage,

the senior party, are both applicants.  Armitage, as the senior

party, is presumed to have been the first to invent.  37 CFR

§ 1.657(a).  Noelle, as junior party, bears the burden of proving

that it was first to invent by a preponderance of the evidence.

37 CFR § 1.657(b), cited as authority in *Brown v. Barbacid*, 276

F.3d 1327, 1333, 61 USPQ2d 1236, 1239 (Fed. Cir. 2002) ("under 37

Interference No. 104,724                                    Paper No. 89
Noelle v. Armitage

CFR § 1.657(a) and (b), the ultimate burden of proof always
remained on the junior party").

     In this case, neither party has copied the claims of the
other.  This circumstance, in our practice, largely removes the
decision for lack of enablement as an equivalent to a "threshold"
issue, contrary to *dicta* by the Administrative Patent Judge in
the Order for the telephone conference described *supra*.
(Paper 81 at 6.)  When one party has the opportunity to copy
another's claims in order to provoke an interference, an early
determination that there is an inadequate basis in the provoking
party's specification for the interfering claims vitiates the
provoking party's standing to prosecute the interference.  This
early look removes the incentive to provoke an interference
spuriously.  That is not the case here.

     Regarding the second factor, we have found that Noelle made
no attempt during Time Period 2 of this interference, pursuant to
§ 1.633(i), to add claims that were supported by its application
and that interfered with Armitage's claims; nor did Noelle seek
to redefine the count.  Armitage raised multiple grounds of
unpatentability, and Noelle cannot be faulted for not responding
to each one with a contingent motion to amend.  However, Noelle
chose to seek only broad claims and therefore accepted the
correspondingly broad risk that those claims would be found
unpatentable.  In the conference call, Noelle noted that there

- 17 -

Interference No. 104,724                          Paper No. 89
Noelle v. Armitage

had been no challenge to the enablement of its core invention,
and urged that that fact gave strength to its argument that its
priority challenge under § 102(g) should go forward.  The short
answer is that, as long as one patentable interfering claim
remained, further issues, including priority, would have been
addressed.  The absence of efforts to present patentable claims
of more limited scope weighs against Noelle.

     As for the third factor, at this stage of the proceedings,
Noelle has only alleged that it was the prior inventor.  Noelle's
proffer, in its preliminary statement, consists of two sheets
said to be copies of pages from a research notebook.  The sheets
are neither signed nor witnessed.  Nothing on those two pages
identifies, by itself, the experiment, the materials, or the
results in such a way that, without much more, one could have any
basis to say that it shows that the inventor had made an
embodiment within the scope of the count.  If Noelle retained any
patentable claims corresponding to the count, this "notice
pleading" would suffice, either to proceed to priority normally,
or to provoke an Order to Show Cause why judgment should not be
entered against Noelle.  Noelle's insistence that the public
*might* be harmed by the issuance of a patent to one who was not
first to invent (Paper 79 at 13) must be weighed against the
unlikelihood, on the present record, that Noelle will prevail,
and that the public will gain the benefit of its disclosure.

- 18 -

Interference No. 104,724                               Paper No. 89
Noelle v. Armitage

While not dispositive, we find the scant and debatable evidence
supporting Noelle's prior invention developed thus far weighs
against a holding that priority has been fully and fairly raised.

    Finally, we note Armitage's argument that Noelle has failed
to comply with the Standing Order, § 32, which requires a
conference call prior to filing a Rule 635 miscellaneous motion.
We shall not dismiss Noelle's motion for failure to comply with
this order, given its stated understanding that the proceedings
were not complete.  However, the Board has found conference calls
to be extremely useful in the scheduling of actions when the
course to be followed is not clear, and particularly when, as
here, both parties are represented by experienced and well-
prepared counsel.  Accordingly, we remind Noelle that conference
calls before any action not scheduled are the norm in current
interference proceedings before the Board.

    In summary, the cumulative weight of the factors in this
proceeding favor terminating the interference at this juncture.
We emphasize that we do not mean to imply any general rule of
decision; each case must be decided on its particular facts.

                              ORDER

    In consideration of the foregoing facts and discussion, it
is:

    ORDERED that Final Judgment is entered against Noelle;

                             - 19 -

Interference No. 104,724                              Paper No. 89
Noelle v. Armitage

FURTHER ORDERED that Noelle's authorization to file its
principal brief on priority on **June 18, 2003,** is rescinded;

FURTHER ORDERED that judgment on priority as to Count 1, the
only count in this interference, is awarded against junior party
RANDOLPH NOELLE;

FURTHER ORDERED that Noelle is not entitled to a patent
containing claims 42, 43, 46-48, 50, 54, and 57;

FURTHER ORDERED that if there is a settlement agreement,
attention is directed to 35 U.S.C. § 135(c) and 37 CFR § 1.661;
and

FURTHER ORDERED that a copy of this decision be given a
paper number and be entered in the administrative records of
Noelle' application 08/742,480 and of Armitage's application
09/322,021.

```
             RICHARD TORCZON              )
             Administrative Patent Judge  )    BOARD OF PATENT
                                          )     APPEALS AND
             SALLY GARDNER LANE           )    INTERFERENCES
             Administrative Patent Judge  )
                                          )    INTERFERENCE
             MARK NAGUMO                   )    TRIAL SECTION
             Administrative Patent Judge  )
```

```
cc (via first class mail):

Counsel for Noelle
  (real parties-in-interest:
      The Trustees of Dartmouth College and
      IDEC Corp. (licensee)):

      E. Anthony Figg
      Robin L. Teskin (Pillsbury Winthrop)
      ROTHWELL FIGG ERNST & MANBECK, PC


Counsel for Armitage
  (real party-in-interest:
      Immunex Corp., a wholly owned subsidiary of Amgen):

      Gordon Kit
      Janis C. Henry (Immunex Corp.)
      Sughrue, Mion, Zinn, MacPeak & Seas, PLLC
```