## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CELL GENESYS, INC., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-12448-MLW |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V. | ) ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04 11810 MLW |
| | ) | |
| CELL GENESYS, INC. AND TRANSKARYOTIC THERAPIES, INC. | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPLY OF CELL GENESYS, INC. TO THE ARS SUMMARY
## OF POINTS AND AUTHORITIES

On August 1, 2006, ARS filed a document entitled "Summary of Points and Authorities Regarding Proposals in the July 14, 2006 Joint Status Report." Although such a briefing was not invited by the Order of June 28, 2006, to which that Status Report was responsive, a reply is appropriate, as the ARS "Summary" appears to advise this Court that it not only should not, but may not, consider the issue of priority of invention between ARS and CGI, as suggested by CGI in the Joint Status Report. CGI explained in its Report that was invited by the Court's Order that the issue of priority may be resolved on a case stated basis. ARS does not disagree that the

1

priority issue is case dispositive. ARS does not disagree that all evidence necessary for the Court to consider and resolve the issue of priority of inventorship is already of record, either taken below, during Interference 105,114 or during discovery in this proceeding. ARS does not disagree that this is an issue that the Court will eventually have to address, in any event. Rather, ARS simply submits that the Court lacks either jurisdiction, or the necessary predicate, to resolve the question of priority of the invention now.

The position of ARS is particularly ironic, given that ARS has pursued, over the last two years, extensive discovery on the priority of invention issue, including the depositions of Arthur Skoultchi, Raju Kucherlapati, Mark Levin, George Savage and Andrew Thompson in locations across the country, including New Rochelle, Boston (twice) and San Francisco (twice), and issued subpoenas for three additional witnesses whose testimony was not necessary only because they could not provide additional information on the CGI date of invention (Finer, Smithies and Wheeler). ARS advances its argument after defending the Court-ordered deposition of its own inventor on issues directed to date of invention. ARS now throws up its hands and says priority of invention is not an issue in this proceeding.

Indeed, even if there had not been an interference below, ARS has made priority of invention an issue in this proceeding, by asserting its claims against TKT. Invalid claims cannot be infringed. One basis for invalidity is 35 U.S.C. § 102(g). Thus, even without the extensive treatment of the interference, and this Court's jurisdiction under 35 U.S.C. § 146, the issue is clearly before the Court. As demonstrated below, ARS is mistaken on the law, and wrong in the limited factual assertions it advances.

I.   **STATUTE AND CASE LAW CLEARLY INDICATES THIS COURT MAY RESOLVE PRIORITY OF INVENTION**

At pages 3-5 of its Summary, ARS suggests that because the Board found there was "No Interference-in-Fact" and did not make a finding on priority of invention in the Interference below, this is "therefore not an issue for this Court to review." Summary, p. 6. ARS ignores precedent of both the Board and the Court of Appeals for the Federal Circuit, which repeatedly demonstrate that where appropriate, the Board and the Courts can resolve issues of priority, notwithstanding the absence of a continuing interference contest. In particular, where one party cannot present a claim patentable to it that interferes with a patentable claim of the opposing party, there is technically no basis for an interference. Where an interference has been declared, however, priority of invention will be determined, even where there is no longer basis for continuing the interference.

Interferences are declared and conducted pursuant to the jurisdictional authority of 35 U.S.C. § 135(a). The statute specifically provides that where an interference is declared, such as Interference 105,114, "The Board of Patent Appeals and Interferences shall determine questions of priority of the inventions and may determine questions of patentability." (Emphasis supplied). This Court has jurisdiction pursuant to 35 U.S.C. § 146. Both parties sought review of the Board's Decision on Preliminary Motions because both parties were, in the words of the statute, a "party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences." While the statute does not limit the scope of this Court's review, it does specifically note that "judgment of the Court in favor of the right of an applicant to a patent shall authorize the Director to issue such patent on the filing in the Patent and Trademark Office of a certified copy of the judgment and on compliance with the requirements of law." In its complaint, CGI specifically sought this relief.

As a final relevant statute, this Court's attention is drawn to, but the Court is not bound by, 35 U.S.C. § 6. This statute authorizes and directs the Board of Patent Appeals and Interferences to take specific actions. This statute compels the Board to determine priority. It provides that:

> The Board of Patent Appeals and Interferences shall . . .
> determine priority and patentability of invention in
> interferences declared under § 135(a).

The statutory authority is uniform and consistent. Where an interference is declared, and evidence is presented, the Board, and this Court, should make a determination on priority.

The case law is consistent with the statutory instruction. In *Perkins v. Kwon*, 886 F.2d 325, 12 USPQ2d 1308 (Fed. Cir. 1989) the Court specifically found that the Board's determination on priority adverse to Perkins, and the determination of unpatentability of the claims of Kwon, were an appropriate exercise of jurisdiction. The Court specifically rejected, 12 USPQ2d at 1310, the position that if the requirement for an interference to continue (interfering claims patentable to both parties) is not satisfied, the issue of priority cannot be resolved. The Court first noted that where priority is resolved, the Board should nonetheless consider patentability. 12 USPQ2d at 1311. The Court then observed:

> It would similarly contradict the legislative purpose if the
> Board were to refrain from deciding priority, when the result
> of such restraint would be the issuance or preservation of a
> facially invalid patent. The Board, by resolving both priority
> and patentability, when these questions are fully presented,
> settles not only the rights between the parties, but also rights
> of concern to the public.

12 USPQ2d at 1311.

The Federal Circuit specifically affirmed, in *Perkins v. Kwon*, that where the evidence concerning priority is fully developed, as is the case herein, priority must be determined,

notwithstanding determinations on patentability. The ARS "Summary" flies directly in the face of the Federal Circuit's holding in *Perkins*.

The Court of Appeals for the Federal Circuit faced a similar issue in *Schulze v Green*, 136 F.3d 786, 45 USPQ2d 1769 (Fed. Cir. 1998). There, citing *Wu v. Wang*, 129 F.3d 1237, 1280, 44 USPQ2d 1641, 1643 (Fed. Cir. 1997), the Court specifically held that all issues of patentability and priority, where the evidence is fully developed, should be resolved. 45 USPQ2d at 1774. Like the appellants in *Schulze v. Green*, ARS should have realized that in order to prevail in this matter, "all issues fairly raised and which were or could be fully developed had to be resolved in their favor by or at the final hearing." Specifically, the Court noted that a party's interest in seeing that the opposing party is not entitled to a patent on the subject matter of the interference count persists, even if the party seeking that decision is not entitled to a patent, and therefore, there can be in no interference-in-fact. In *Schulze*, like in *Kwon*, even though the parties could not present interfering claims, priority was resolved.

The case law of the Board is to the same effect. In *Gustavsson v. Valentini*, 25 USPQ2d 1401 (BPAI 1991), just as in *Schulze* and *Kwon*, the Board found that Valentini's involved claims were unpatentable (under 35 U.S.C. § 135(b)). Gustavsson argued that because there could not be interfering claims between the parties, the interference should terminate. The Board nevertheless went on to consider the patentability of Gustavsson's claims, the Board specifically noting that there is a great public interest in having the PTO "resolve administratively questions effecting patent validity that arise before it." 25 USPQ2d at 1412. To the same effect is a decision involving a no interference-in-fact finding, *Fiddes v. Baird*, 30 USPQ2d 1481 (BPAI 1993). In that case, the Board expressly found no interference-in-fact between Fiddes and Baird. The Board nonetheless went on to find Baird's claims to be unpatentable, rejecting the argument

that it could not exercise discretion to consider patentability, given the absence of an

interference-in-fact. 30 USPQ2d at 1485.

## II. THE BOARD, AND THIS COURT, HAVE DISCRETION TO CONSIDER PRIORITY OF INVENTION

What is clear from the cases is that the Board, and necessarily, this Court, have the

discretion to consider and resolve priority of invention where it is appropriate, and where proper

jurisprudence supports that consideration. Even the precedent relied upon by ARS, the Decision

in Interference 104,724, *Noelle v. Armitage*, Paper No. 89, supports this view. Although ARS

submits this decision to support the proposition that a finding where there can be no interference-

in-fact (in *Noelle*, because the junior party is not entitled to any claims to subject matter within

the scope of the count) priority may not be determined, the Board's Decision in *Noelle* did not

hold this at all. Specifically, the Board refused to lay down any general rule of decision, noting

that each case must be decided on its particular facts. See the copy submitted, page 19. While

by its own terms, the decision in *Noelle* is not precedential, the Board made it clear that it had the

discretion to consider priority, notwithstanding the absence of an interference-in-fact between the

parties. In *Noelle*, relied upon by ARS, the Board specifically noted "at least the following three

factors appear to provide guidance on answering the question of whether or not to continue (to

priority)." Submission by ARS, page 16. The three factors to consider are:

1. Which party has been accorded for priority the benefit of the earliest application?

2. What efforts has the party without patentable claims made to preserve patentable claims corresponding to the count?

3. How strong is the evidence that the party has presented supporting its case of a prior invention of an embodiment within the scope of the count?

Each of those factors supports a conclusion that in <u>this</u> case, priority of invention should be resolved.

With respect to benefit of priority, the Board specifically found that ARS was <u>not</u> entitled to benefit of its priority application (USSN 07/454,783). Accordingly, the Board found that ARS was entitled to no earlier date than December 21, 1990. See, the Board Decision, Exhibit 1 to the Complaint, pages 112-125. In contrast, the Board resolved the Interference assuming CGI was entitled to benefit of its 1989 filing date. Had the Board proceeded to a Decision on Priority, CGI would have been senior party. The significance of the Board's reliance on this factor *Noelle*, and the difference between that decision and this case, should not be overlooked. Had the Board resolved priority in accordance with Statute and case law, the burden would have been on ARS, as the junior party, to present evidence of a date of invention prior to the CGI benefit date of November 6, 1998. 37 C.F.R. 1.657(a). [1] In the nearly ten years this contest has been ongoing, ARS has at no time advanced any such evidence. For the Court to defer resolution of the priority issue to a later date, as ARS proposes, ignores the distribution of the "burden of proof" that is properly assigned.

Considering the second factor advanced, CGI specifically filed motions "to preserve patentable claims corresponding to the count." One of those motions introduced claims 107-112, which were considered by the Board. Additionally, CGI filed two motions to add patentable claims corresponding to the count of interference, CGI Preliminary Motions 4 and 5, see page 9 of the Decision below. The Board's failure to treat those motions on the merits is specifically

---

[1] This interference was conducted pursuant to, and continues to be subject to, the provisions of 37 C.F.R. 1.601 et. seq. In its summary, ARS makes reference to the rules that replaced Rule 601 et. seq. in September of 2004, 37 C.F.R. 201 et. seq, Those Rules did not come into effect until well after Interference 105,114 was concluded, and have no applicability to this interference.

noted in CGI's Complaint as a basis for vacating the Board's Decision below. In contrast, ARS did not try to advance additional claims.

Finally, the third factor—the strength of the evidence that the party has presented supporting its case of prior invention of an embodiment within the scope of the count—strongly favors CGI. *Noelle v. Armitage*, page 16. As shown in CGI's Report On Issues Whose Bifurcation is Desirable, filed August 1, 2006, the evidence in support of CGI's case on priority is so strong that it is ripe for decision on a case stated basis. Unlike the situation in *Noelle v. Armitage*, this is not based simply on an assertion of an earlier date of invention, but on a large number of documents and sworn testimony, that together weave a compelling case for a date of invention for CGI as early as February 15, 1989.

Thus, while consideration of each of the factors considered in *Noelle v. Armitage* led the Board to conclude that it was not in a good position to support a resolution of priority, the same factors, considered here, strongly support the conclusion that this Court resolve priority. This is a matter within the discretion of this Court. The facts of this case strongly compel resolution of priority of invention as a first inquiry.

## III. THE BOARD'S FAILURE TO RESOLVE PRIORITY IS NOT AN OBSTACLE TO THIS COURT CONSIDERING DATES OF INVENTION

At pages 2-3 of its "Summary," ARS advances the proposition that because the Board did not resolve priority, and this proceeding is in the nature of an Appeal from the Board's determination, this Court may not resolve priority either. Quite simply, ARS is mistaken on the law. This is not simply an Appeal. Were it, it would be before the Court of Appeals for the Federal Circuit. This is a quasi-de novo proceeding, where the Court has latitude to admit testimony on issues, and consider issues, not treated or resolved by the Board. In the leading decision on the question of the scope of the review under 35 U.S.C. § 146, the Court of Appeals

for the Federal Circuit specifically noted that "under appropriate circumstances, the District Court may exercise its discretion and admit testimony on issues even though they were not raised by the Board." *Conservolite, Inc. v. Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994).

The Federal Circuit specifically noted that a compelling factor to consider in whether to so exercise discretion is whether the evidence was then reasonably available and whether the issue is more conveniently raised before the Court. All of the testimony relied upon by CGI was compelled testimony, taken pursuant to subpoena, or the Order of this Court. There is no power to compel testimony in an interference. This evidence quite simply could not have been presented, in this fashion, to the Board.

Moreover, this Court will have to deal with the issue of priority sooner or later. ARS's own split Complaint compels that conclusion. If, in fact, this Court disposes of Count 1 of the Complaint of ARS, and Count I of the Complaint of CGI without resolving priority, and ARS retains claims, this Court must then move on to Count II. Count II seeks a determination of infringement of the ARS claims by TKT. Invalid claims cannot be infringed. If in fact CGI's inventor Skoultchi invented the subject matter of the Count, and therefore the claims of ARS, prior to its invention by Chappel, the claims of ARS are invalid, 35 U.S.C. § 102(g)(2). This is a defense that would be available to TKT. Accordingly, if not in connection with Count I, then in connection with Count II, this issue must be addressed.

Moreover, following the ARS logic, this Court would first determine whether CGI's claims 107-109 are patentable to CGI over the "Japan" reference. CGI acknowledged below, and acknowledges here, that if the Japan reference is available prior art, it is sufficient alone, or combined with other art, to render all of CGI's claims unpatentable. It is not prior art, however - CGI will demonstrate by evidence taken in this proceeding, that in fact CGI's date of invention is

in advance of the effective date of the reference, which is August 29, 1989. Thus, even to follow the route offered by ARS, this Court will have to consider the CGI evidence of priority. When it finds that the Japan reference is NOT prior art, the necessary conclusion is that CGI is entitled to its claims 107 - 109, a finding specifically sought in CGI's Complaint.  As claims 107-109 do interfere with the claims of ARS, the Court would also have to arrive at the date of invention of ARS to determine whether any of the claims of ARS are patentable over Japan and  U.S. Patent 6,528,313 (which the Board held is prior art to ARS (but not CGI)) and U.S. Patent 5,464,764 and U.S. Patent 5,501,967 each of which anticipates one or more claims of the ARS '071 patent under 35 USC 102(e), unless ARS can show a date of invention in advance of the relative filing dates of these patents. Thus, the Court would separately look at the date of invention of CGI, and the date of invention of ARS, just to resolve patentability according to the ARS proposal. (The Court would also have to resolve whether any ARS claims are patentable under 35 U.S.C. § 112, first paragraph, on enablement.)  Assuming, at the end of these decisions, <u>none of which are amenable to summary judgment</u>, both parties retained claims, the Court would then proceed to a determination of priority.  Where the exercise of judicial discretion promotes decision of a single issue, which the Court must address in any event, which issue is dispositive of the case, discretion to decide this issue should be exercised.  CGI and ARS agree on one thing – priority of invention is dispositive of Count I. If CGI is the prior inventor-- and CGI has submitted an extensive proffer of evidence supporting its conviction that it can establish a date of invention as early as February 15, 1989--then all of the ARS claims are invalid, and Counts I and II, as well as CGI Counts II-IV, disappear.  The CGI application would be remanded to the Patent Office for further proceedings.  If, in the alternative, ARS is first to invent, then all claims of CGI

except claim 106 are unpatentable. If ARS is truly first to invent, CGI would not be entitled to a patent on claims other than Claim 106 , and CGI will not pursue Counts II-IV.

Even the ARS theory of proceeding is flawed. At page 8, ARS offers that each party should move for summary judgment (although the parties agree that there is no issue amenable to summary judgment) regarding the issues "on which it bears the burden of persuasion." ARS offers "if the Court denies CGI's motions, and grants ARS's motions, ARS might be willing to settle with CGI by walking away from this case with the 21 claims that it has right now, rather then pursuing reversal of the Board's Decision on its other 37 claims." It is unclear why ARS thinks that would lead to settlement. Settlement requires two parties. CGI was clear in the status report, and will be clear here as well. That scenario will not lead to settlement, and the Court must resolve priority. ARS is also mistaken on page 8 where it suggests that settlement between ARS and TKT as to Count II could lead to a settlement of the § 146 action between CGI and ARS.

## IV.    CONSERVATION OF JUDICIAL RESOURCES SUPPORTS EARLY RESOLUTION OF PRIORITY OF INVENTION

Even ARS concedes that, other than priority of invention, there is not one, two, or even three issues whose resolution will terminate the proceedings in Count I. If there is no settlement, and under the ARS scenario there will be no settlement, this Court must necessarily proceed to trial. Indeed, the ARS scenario presumes that summary judgment can be entered on matters which the parties agree are not amenable to summary judgment, there being material facts in dispute. This will be a bench trial. The parties have retained, between them, five experts. There are five expert reports reflecting testimony to be offered, and a rebuttal expert report. There are at least seven fact witnesses to be presented. While this is not undue in terms of the cases

previously heard by this Court, it represents a substantial consumption of judicial resources, and costs to the Court and the parties.

In contrast, CGI offers a single issue, suitable for decision on a case stated basis, that when decided, will be dispositive of Count I of both parties, and if decided adversely to ARS, will be dispositive of the entire litigation. This is a considerable reduction in the resources the Court and the parties would have to devote to this matter, and includes resolution of an issue that this Court will ultimately face. It will conserve substantial resources to resolve it first.

Nor should its resolution come as a surprise to the parties. CGI knew that it would have to advance evidence concerning date of invention. Indeed, the Board wondered why there was not more evidence of the date of invention presented. *See, e.g.,* the Decision on Preliminary Motions, page 95. That is why CGI identified, in its submission pursuant to Rule 26 six different individuals, each of which was believed to be "in possession of information tending to show the events surrounding conception of the subject matter at issue, and diligence toward a reduction to practice, as well as constructive and actual reduction to practice of the same." That is why, in addition to those individuals, CGI identified, as soon as it became aware of them, George Savage and Andrew Thompson as individuals in possession of information pertaining to conception and reduction to practice. That is why ARS issued subpoenas for each of these individuals, or otherwise took their deposition.

ARS did the same thing. In its initial disclosures under Rule 26, ARS identified four individuals. The inventor, Scott Chappel, was said to be in possession of relevant and discoverable information pertaining to "conception, diligence, reduction to practice of the subject matter described and claimed in U.S. Patent 5,272,071." Christie Kelton was indicated to be in possession of discoverable information pertaining to "conception, diligence, reduction to practice

12

of the subject matter described and claimed in the '071 patent." Roger Browdy was indicated to be in possession of discoverable information pertaining to "conception, diligence and reduction to practice of the subject matter described and claimed in the '071 patent." Moreover, the ARS Rule 26 Statement identified, in addition to the '071 patent and its prosecution history, and the records in the Interference below, only "documents relating to and/or evidence relating to the conception, diligence in reducing to practice, and actual reduction-to-practice of the subject matter described and claimed in the '071 patent." If, in fact, ARS did not perceive that resolution of dates of conception and reduction to practice were not essential to this Court's resolution of the dispute between ARS and CGI, it would not have designated these witnesses and documents.

The issue of priority of invention is clearly within this Court's discretion to decide. It is the one issue that the parties have identified and agreed is dispositive of at least Count I and potentially all Counts in this litigation. It is the one issue the parties have identified that is susceptible of resolution on motion (case stated). This Court may, and should, first consider priority of invention.

Respectfully submitted,

CELL GENESYS, INC.

By its attorneys,


 /s/ Steven B. Kelber
Steven B. Kelber
Merchant & Gould PC
901 Fifteenth Street, N.W.
Suite 850
Washington, DC  20005
Telephone:  (202) 326-0300

T. Christopher Donnelly (BBO #129930)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts  02108
Telephone:  (617) 720-2880

Dated:  August 3, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 3, 2006.


/s/T. Christopher Donnelly
T. Christopher Donnelly