IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CELL GENESYS, INC., ) | |
| ) | |
| Plaintiff/Counterdefendant, ) | |
| ) | |
| v. ) | C.A. No. 05-12448-MLW |
| ) | |
| APPLIED RESEARCH SYSTEMS ARS ) | |
| HOLDING, N.V. ) | |
| ) | |
| Defendant/Counterclaimant. ) | |
| ) | |
| APPLIED RESEARCH SYSTEMS ARS ) | |
| HOLDING, N.V., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04 11810 MLW |
| ) | |
| CELL GENESYS, INC. AND ) | |
| TRANSKARYOTIC THERAPIES, INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF CELL GENESYS, INC. -
THERE IS INTERFERENCE-IN-FACT BETWEEN CLAIM 106 OF
CELL GENESYS AND ARS CLAIM 24**

In its Order of August 9, 2006, the Court directed that Cell Genesys present "its memorandum and supporting evidence" on the issue of whether the Board correctly held that there is no interference-in-fact between CGI claim 106 and any of the twenty-one claims of ARS the Board found patentable. The Court specifically indicated that CGI should address what testimony it would like to present relating to the second question to supplement the existing record and why that testimony is necessary.

CGI presents this Memorandum in satisfaction of the Court's Order. CGI respectfully submits that there is an interference-in-fact between its claim 106 and ARS

1

claim 24, and that accordingly, the Board erred in its Decision. The Board reached a determination of no interference-in-fact *sua sponte*. See Decision on motions in Interference 105,114, Exhibit A to ARS complaint, pages 126 – 132 ("Decision"). Neither party moved, at any time, for judgment that there was no interference-in-fact between the claims of the two parties. Indeed, the interference was declared in 1997, as Interference 103,737 and at no time in the seven years of the pendency of the Interference before the Board, did either party, or the Board, ever suggest there could be a finding of no interference-in-fact, until the Board's Decision in June, 2004. It is, therefore, hardly surprising that the Board observed:

> There being no persuasive evidence or argument to the contrary, we conclude that there is no interference-in-fact between the subject matter claimed in ARS's '071 patent which stands patentable to ARS over prior art teachings of record and the subject matter claimed in Genesys's application 08/102,390 which stands patentable to Genesys over prior art teachings of record. Decision, page 132.

How could there be, when neither party, nor the Board, previously, had briefed, or so much as whispered, a finding of no interference-in-fact could be arrived at?

Accordingly, there are no findings of fact, no conclusions of law and indeed no briefing, on the basis of which one might evaluate the Board's conclusion. In particular, the Board did not, as it should have, compare CGI claim 106 with ARS claim 24. As these claims clearly interfere-in-fact, the Board's Decision was in error.

I. **THE ISSUE IS MOOT, AND DOES NOT RESOLVE ANY OTHER ISSUES BEFORE THIS COURT**

CGI has, contemporaneous with the filing of this Memorandum, filed a memorandum demonstrating that CGI's claims 107 – 109 are not unpatentable over Japan, as was found, erroneously, by the Board. Relying on new evidence not presented

2

to the Board, evidence procured only through subpoenas not available in an interference, CGI has demonstrated conception of the subject matter of its claims 107 – 109 prior to the effective date of the reference "Japan," August 29, 1989, coupled with diligence to a constructive reduction to practice, or application filing, three months later, on November 6, 1989. Accordingly, Japan is not "prior art" to CGI (it is with respect to ARS, whose application is a year later in time) and cannot be otherwise applied to render CGI claims 107 - 109 unpatentable. As the Board identifies no other grounds for unpatentability of claims 107 – 109, they are patentable to CGI. The Board specifically found that these claims 107 -109 are directed to the "same patentable invention as claims 3, 37 and 46 of ARS's '071 patent." Decision, page 132. Accordingly, the issue of interference-in-fact with between Claim 24 and Claim 106 is moot.

Besides being moot, it is not apparent that the Court's determination on this subject, which is reviewed on a completely *de novo* basis, has any bearing on any other issue advanced. The interference, as originally declared, was properly declared –i.e., there was an interference-in-fact. Both parties seek review, and modification, of the decisions of the Board as to other aspects, on claims that admittedly interfere-in-fact. This Court does not require a continued presence of interference-in-fact between claim 106 of CGI and claim 24 of ARS, where there was originally a proper interference-in-fact. Resolution of the issues mistakenly decided by the Board proceeds in this court, whether or not those few claims the Board adjudged to survive do, in fact, interfere.

## II. APPLICABLE STANDARD

In an action pursuant to 35 U.S.C. § 146, the Court reviews the Board's conclusions of law *de novo*, but gives deference to findings of fact of the Board based on

the evidence before it during the Interference. *Allied-Signal v. Allegheny Ludlum Corp.*, 29 USPQ2d 1039, 1042 (D. Conn. 1993). As noted above, the Board's Decision held that there was no evidence before it directed to the question of interference-in-fact, because neither the Board nor either party had ever considered the possibility of no interference-in-fact, before the Board's Decision on motions in June, 2004. This is so notwithstanding the seven year pendency of the Interference. In particular, the Board did not consider whether the modification of CGI Claim 106 to include a selectable, amplifiable gene would have been obvious. With respect to new evidence presented to the District Court on a disputed fact question, a *de novo* finding will be necessary to take such evidence into account. *Fregeau v. Mossinghoff*, 776 F.2d 1034, 1038 (Fed. Cir. 1985). With respect to the evidence advanced herewith, and the evidence identified by CGI as a proffer for the resolution of the question of interference-in-fact, this Court's findings are exclusively and completely *de novo*. With regard to the central and, to the issue of interference-in-fact, critical question and the specific question of the obviousness of including a selectable amplifiable gene in the cell modified by homologous recombination according to CGI Claim 106, this Court's findings are exclusively and completely *de novo*. Other findings by the Board, which bear on the question of <u>interference-in-fact,</u> are entitled to deference.

The Board's Decision (pp. 126-27) correctly notes that, under the rules governing this dispute, an interference-in-fact exists when at least one claim (CGI claim 106) that is designated to correspond to a count and at least one claim of an opponent (ARS claim 24) that is designated to correspond to the count define the same patentable invention. The Board then refers to 37 C.F.R. § 1.601(n) for the definition of "same patentable invention." Pursuant to that regulation, invention A (ARS claim 24) is the same

4

patentable invention as invention B (CGI claim 106) when claim 24 is the same as (35 U.S.C. § 102a) or is obvious (35 U.S.C. § 103) in view of CGI claim 106, assuming claim 106 is prior art with respect to invention A. *See* Decision, page 127. Although not expressly recited in the Board's expression of the test, this is a two-way test for obviousness. *Eli Lilly & Co. v. Board of Regents of the University of Washington*, 334 F.3d 1264, 1267-68 (Fed. Cir. 2003). The Board's error in failing to request or consider evidence and arguments directed to this fundamental test is highlighted by its conclusion at pages 127 - 128 indicating its basis for concluding there is no interference-in-fact. The Board's conclusion rests on the absence of recitation in claim 106 that the "DNA construct comprise an expressible amplifiable gene." In the Board's words:

> It is sufficient to note that the genome of the human 293 embryonal kidney cell of claim 106 of Genesys's application 08/102,390 need not have inserted therein any expressible, amplifiable gene capable of amplifying the silent human erythropoietin gene in a human 293 embryonal kidney cell when inserted in sufficiently close proximity thereto.

The Board failed to consider whether or not the insertion of an amplifiable gene into the 293 cell line of CGI claim 106, which the Board concedes comprises a silent erythropoietin (EPO) gene, would have been obvious, as of November 6, 1989. This is the fundamental question presented to this Court. Neither CGI nor ARS took evidence on this issue. Nonetheless, in response to the Court's Order, CGI identifies, below, the evidence it would present should the Court elect to pursue this question.

### III. THE CLAIMS RECITE MANY OF THE SAME ELEMENTS

CGI Claim 106 is an independent claim. It does not depend on, or incorporate the limitations of, any other claim. In contrast, ARS Claim 24 depends from a claim that depends from another claim that depends from an independent claim. Such claims are

5

interpreted as including all the limitations of the claims from which they depend. 35 U.S.C. § 112, ¶ 4; *Bloom Eng'g. Co. v. North American Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997). It is convenient to compare the two claims side by side, including all the recitations of the claims from which Claim 24 depends, to determine what elements overlap, and where there are differences. This can be presented as follows:

| ARS Claim 24 | CGI Claim 106 |
|---|---|
| 24. A cell line capable of expressing a gene product by a predetermined normally transcriptionally silent gene within the genome of said cell line, | 106. A human 293 embryonal kidney cell, |
| said genome having inserted therein a DNA regulatory segment operatively linked with said normally transcriptionally silent gene, said DNA regulatory segment being capable of promoting the expression of a gene product by said cell line, wherein the inserted DNA regulatory segment is part of a DNA construct comprising said DNA regulatory segment and at least one selectable marker gene, wherein said DNA construct comprises an amplifiable gene. | Wherein the genome of the cell has inserted therein an enhancer and promoter of cytomegalovirus operatively linked with the human erythropoietin gene, So that the cell expresses human erythropoietin. |

Compared in this fashion, the similarities in the two claims are abundant. ARS claim 24 calls for a cell line, which includes mammalian cells such as human embryonal kidney cells. The Board so held, noting that the term "cell line" in the ARS claims "means nothing more than a cell culture derived from a single cell." Decision, p. 21. Claim 24 further requires that the cell expresses a gene product encoded "by a predetermined normally transcriptionally silent gene" in the genome of the cell line. As noted above, the Board's Decision specifically observes that the erythropoietin gene of

6

the cell line of Claim 106 is normally silent in human 293 embryonal kidney cells. So, as to this first and second requirement of ARS Claim 24, CGI claim 106 recites the same feature or patentable aspects: **A cell with a transcriptionally silent gene.**

The third requirement of Claim 24 is also reflected in Claim 106. That is that the cell have inserted in its genome a regulatory segment operatively connected with the silent gene, such as erythropoietin. Claim 106 again satisfies this requirement, noting that cytomegalovirus ("CMV") enhancer and promoter are operatively linked with the silent erythropoietin gene. The CMV promoter and enhancer are a regulatory segment. The ARS involved patent, USP 5,272,071 defines enhancer/promoter sequences as regulatory elements. Col., 5, ll. 56 - 57. Thus, both CGI and ARS claims recite this third element in the same terms: **Insertion of a regulatory segment operatively linked to the silent gene.**

We have, accordingly, looked at three limitations common to both ARS Claim 24, and CGI Claim 106: **(1)** cell line, **(2)** normally transcriptionally silent gene, and **(3)** insertion of a regulatory segment operatively connected with the silent gene. Claim 106 anticipates, or is the same as, Claim 24 of ARS, with respect to the cell line specified, the expression of a transcriptionally silent gene, and the provision of a regulatory segment operatively associated with the normally silent gene. As to these limitations, CGI Claim 106 anticipates ARS Claim 24, and so there is interference-in-fact there between.

### IV. CLAIM 106 RENDERS CLAIM 24 OBVIOUS, AND VICE VERSA

ARS Claim 24 recites an additional limitation - that the inserted sequence (the construct that has the regulatory sequence on it) also includes a selectable marker, wherein the inserted DNA comprises an amplifiable gene. As noted above, the awkward

7

construction is due to the fact that ARS Claim 24 depends from a claim which depends from a claim which depends from a claim. (Claim 24 depends from Claim 23 which depends from Claim 22 which depends from Claim 18). The claim requires the presence of a selectable marker and requires that the inserted sequence have an amplifiable gene. The '071 patent specifically notes that the amplifiable gene and the selectable marker may be the same, Col. 11, ll. 5 -9.

Claim 106 does not specifically recite the presence of an amplifiable gene or selectable marker. It cannot, accordingly, anticipate Claim 24. Anticipation is not required for interference-in-fact, however; it is enough that Claim 106 renders Claim 24 <u>obvious</u>, when taken as prior art to Claim 24. The question that must be asked then, is whether it would be an obvious modification of Claim 106 to supply a selectable amplifiable gene to the material inserted along with the regulatory segment?

The determination of whether ARS Claim 24 is obvious, given CGI Claim 106, is made according to well established principles. A court must ask "whether a person of ordinary skill in the art, possessed with the understandings and knowledge reflected in the prior art, and motivated by the general problem facing the inventor, would have been led to make the combination recited in the claims." *Alza v. Mylan Labs, Inc.*, __ F.3d __, 2006 WL 2556356, 2006 U.S. App. LEXIS 22616, *7 (Fed. Cir. 2006) citing *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006). In the context of the inquiry addressed herein, taking Claim 106 as the principal piece of prior art, the inquiry undertaken is straightforward. One considers (1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4)

objective evidence of nonobviousness." *In re Dembiczak*, 175 F.3d 994, 998 (Fed. Cir. 1999).

Applying these rules of inquiry to the case at hand, the sole difference between ARS Claim 24 and CGI Claim 106 is the requirement, in Claim 24, to provide a selectable, amplifiable gene, such as DHFR, together with the regulatory segment inserted to cause expression of the silent (e.g., erythropoietin) gene. This particular step was commonplace in the art well prior to 1989 as a means for identifying successful transformation of genetic material. As detailed below, evidence supporting this includes the expert report of Dr. Thea Tlsty (Ex. A to Declaration of Steven Kelber, filed herewith), U.S. Patent 5,024,939 (Kelber Dec., Ex. B) and the work of the very inventor involved, Arthur Skoultchi, who, together with Raju Kucherlapati disclosed the use of amplifiable selectable genes like DHFR for identification of successful transformants and amplification of the genetic material of interest in 1984 in <u>CRC Crit Rev Biochem.</u> 16(4):349-79 (1984), See, p. 358, Section D, "Amplifiable Vectors" and p. 359, Section A, "Selectable Genes" both identifying DHFR (Kelber Dec., Ex. D). Given the uniform high level of skill in the art, one familiar with this art would have followed the teachings of these sources without inventive effort, to add to the subject matter of CGI Claim 106 a selectable amplifiable gene like DHFR. These prior art sources are discussed below.

Although no sworn testimony is offered on this subject, as it was not part of the issues considered below, there is strong evidence that the use of a selectable amplifiable gene like dihydrofolate reductase (DHFR) was well known to those of skill in the art in 1989, the earliest filing dates of the parties, and would have been obvious for selection to incorporate in the subject matter of Claim 106.

9

Initially, CGI notes that the '390 application involved in the interference clearly teaches the use of selectable amplifiable genes like DHFR in the invention, for the same reason selected in the '071 patent. Both seek to use well known marker genes like DHFR to identify successfully transformed cells (transformed through homologous recombination). Moreover, CGI has submitted the expert report of Dr. Thea Tlsty, one of the world's foremost experts on selectable amplifiable genes like DHFR. (Ex. A to Kelber Dec.). In fact, that report is so soundly framed and exact that ARS elected NOT to depose Dr. Tlsty. CGI submits that the Court can accordingly look to her expert report as authoritative.

Tlsty reports that DHFR gene amplification was a well known and widely studied phenomenon well prior to the parties filing dates, at least as early as the mid 1980's. Tlsty offered that DHFR had become widely used in "molecular biology research as a selectable, amplifiable gene." ¶10 of the Tlsty Expert Report. At ¶ 13, Tlsty reports that "this use of DHFR genes with a promoter to express that gene to act as a selectable, amplifiable gene (*i.e.*, a positive selection marker) was known several years prior to 1989 and widely employed." (Citing to Kaufman, et al. 1985, relied on by the Board). Tlsty also reports that the ability of DHFR to amplify portions of the genome in proximity to the DHFR gene, to increase expression level, was widely used several years before 1989. Tlsty, ¶15. Thus, the testimony that Tlsty would offer, as reflected in her expert report, is that it would have been obvious, prior to 1989, to modify the cell of CGI claim 106 to include a selectable amplifiable gene like DHFR. Thus, Claim 106 DOES render Claim 24 obvious, and they are in interference-in-fact.

10

The Court need not consider Tlsty's testimony in a vacuum, however. Other art from the same time frame discloses the exact same thing. U. S. Patent 5,024,939 (Ex. B to Kelber Dec.) was filed in 1987, and thus is available as prior art to both Claim 106 and Claim 24. It specifically focuses on the use of human embryonal kidney 293 cells. *See*, Column 13, l. 8. Indeed, the experiments reported are done on 293 cells. Column 15, l. 50. *See* also, the table at Col. 20, l. 50 - 60, which reflects transformation of 293 cells with a construct that includes the cytomegalovirus regulatory sequences (CMV) (promoter and enhancer) see Col. 14, lines 41 - 68. This same reference extensively discusses DHFR and its use as a selectable amplifiable gene, Col. 8, ll. 5 - 28 and specifically teaches its inclusion in a transforming construct, Col. 7, l. 24 - 52. Specific constructs reflecting this combination of units (CMV regulatory segment and DHFR amplifiable gene to transform a 293 cell) are specifically taught in the '939 patent. *See*, Col. 12, line 64 - Col. 13, l. 19. Unquestionably, it would have been obvious to one of skill in the art, before 1989, to modify the 293 cell of Claim 106 to include DHFR as a selectable, amplifiable gene, and thus arrive at precisely what is embraced in ARS Claim 24. The '939 patent expressly teaches the use of DHFR as a selectable amplifiable gene for constructs being used to modify a 293 cell.

Perhaps the most compelling piece of evidence that use of an amplifiable selectable marker like DHFR was obvious in the very art to which the ARS '071 patent is directed, the expression of the THSß gene, comes from Chappel's own prior art. Christie Kelton and co-patentees taught the conventional use of an amplifiable selectable marker such as DHFR in an expression construct to modify a cell line to express THSß. U.S. Patent 5,240,832 (Ex. C to Kelber Dec.) recites "The expression vector also contained the

11

mouse dihydrofolate reductase (DHFR) gene for a selectable and amplifiable marker." Col. 4, ll. 16 - 19. This particular piece of prior art lists as a coinventor, Scott Chappel, the inventor of the involved '071 patent of ARS. Chappel and ARS can hardly deny his own prior teachings. During Chappel's deposition, Chappel was asked specifically about this piece of prior art. He agreed that the use of various DNA sequences, including the selectable amplifiable gene, DHFR, were all available and used by those of ordinary skill in the context of transforming cell lines to express target genes, well before the '071 patent was ever made the subject of a patent application. Chappel Tr., pages 116-118, attached as Ex. E to Kelber Dec. The use of an amplifiable and selectable marker, the ONLY difference between ARS claim 24 and CGI claim 106, was taught and conventional in the prior art, for the very purpose to which it is put in the '071 patent. Claim 24 is obvious, given Claim 106 as prior art. There is interference-in-fact.

CGI notes that Claim 106 may be considered a type of species of the genus claimed in ARS Claim 24. Occasionally, where the specific elements of the species are NOT obvious given the genus, two way obviousness may not occur. See, *Eli Lilly, supra*.

In this case, however, as noted, the 293 cell line, the CMV regulatory segment, and DHFR were all well known examples of human cell lines, constitutive regulatory sequences and selectable amplifiable genes. Their selection, given the genus of Claim 24, would have been obvious. There is no evidence or suggestion there is anything unusual or specific to these selections, given Claim 24. The '939 patent underscores this by specifically indicating that these selections are used to promote expression of, among others, erythropoietin. Col. 5, ll. 15 - 33, and line 30 in particular. The specific combination of target cell, target gene, and target regulatory sequence, are shown in the

'939 patent to work with a selectable amplifiable gene such as DHFR, and each is shown by the '939 patent to be representative, useful, obvious selections for the cell line, silent gene, regulatory segment and selectable amplifiable gene of Claim 24. Two way obviousness, and therefore Interference-In-Fact, is made out.

V.   **ADDITIONAL TESTIMONY NOT OF RECORD**

The Court's Order of August 9, 2006 directing the submission of this Memorandum specifically indicates that it should be made "on the record" developed to date, meaning the produced documents and testimony taken. In the alternative, the Court invites CGI to identify the additional testimony that would be required. Dr. Thea Tlsty's expert report is not, per se, testimony. Her testimony was not taken, because ARS had no disagreement with her expert report. CGI submits that the Court may accept that expert report as testimony, or its equivalent. If not, the testimony of Dr. Tlsty, or the equivalent (a Declaration adopting the expert report), would be required.

CGI also relies herein on the teachings of U.S. Patent 5,024,939, as representative of the understanding of those of skill in art, to whom the question of obviousness is directed, prior to 1989. The '939 patent is, however, admissible as a self-authenticating document, Fed. R. Evid. 901, and is admissible under Fed. R. Evid. 807. To the extent this Court accepts the teachings of the '939 patent as reflective of the understanding of those of skill in the art as of its effective date of 1987, it may not be necessary to have a skilled expert review the same to confirm it teaches that which is noted above. CGI does note, however, that because the question of whether CGI Claim 106 and ARS Claim 24 is not a prerequisite to the exercise of jurisdiction by this Court over the parties' requests to review and change the decision below, neither party has presented evidence with respect

thereto. Given that the issue had not been previously raised, CGI did not previously produce or identify the '939 patent as a document it would rely on. In this respect, at least, CGI submits that ARS has adequate notice of this document.

Finally, CGI relies on U.S. Patent 5,240,832 and Scott Chappel's testimony with respect to the same. This patent, like the '939 patent, is self-authenticating. More importantly, perhaps, Scott Chappel, the ARS inventor, offered testimony on this patent in this proceeding. His compelled deposition was taken January 19, 2006 after this Court imposed sanctions on ARS for not making him available in a timely fashion. He acknowledged that he is a co-inventor on that patent. ARS had ample notice of this patent, its teachings, and the relevance to the question of interference-in-fact.

## VI. CONCLUSION

CGI Claim 106 interferes with ARS Claim 24 if it renders it obvious, taken as prior art. Claim 106 specifically satisfies or teaches every limitation of Claim 24 but one - the inclusion of a selectable amplifiable gene like DHFR. The use of DHFR in this context was notorious to those of skill in the art well prior to the dates of invention of the parties hereto. Dr. Thea Tlsty, one of the world's most foremost experts in DHFR technology, offered that observation in her expert report. ARS was in such deep agreement with the report of Tlsty that it did not take her deposition. A representative patent available prior to the filing dates of the parties involved, USP 5,024,939, clearly teaches that where one is using CMV regulatory segments, to modify a 293 cell, to express a silent gene, erythropoietin, the use of DHFR as a selectable amplifiable marker is an obvious choice. ARS's own inventor, Chappel, testified that his prior art teaching in U.S. Patent 5,240,832 reflects the fact that use of a selectable amplifiable gene was

customary in the modification of genes in a cell before the '071 patent was filed. Accordingly, the claims are in interference-in-fact. The Board erred, because it reached its decision *sua sponte,* without requesting or considering testimony or documents reflecting the level of skill in the art in 1989. Both testimony and U.S. Patent documents confirm that it would have been obvious to modify the cell of Claim 106 by adding a selectable, amplifiable gene like DHFR.

Accordingly, independent of the outcome of other pending issues, the one issue that is framed for this Court is the question of priority of invention. As shown herein, there is interference between claims patentable to CGI and claims the Board found patentable to ARS. Final judgment in this matter therefore requires this Court to resolve priority of invention as to Count 1 of Interference 105,114. CGI's Memorandum concerning the antedation of prior art reference "Japan," submitted herewith, demonstrates a date of conception of February 15, 1989, coupled with diligence to a filing on November 6, 1989. It is respectfully submitted that it is well past time to enter judgment against ARS on priority, as its earliest date of invention, as found by the Board, is not until 1990, absent a showing ARS has not yet made.

The alternative is to slog through each and every issue of mistake in law or fact assigned by both parties to the Board's long Decision, including the unpatentability of ARS's surviving claims over prior art, the unpatentability of the ARS claims for lack of enabling disclosure, and the challenge of ARS to CGI's claims as lacking enablement. When all that is resolved, if Count II of the ARS Complaint is ever considered, the Court will then have to determine priority between ARS and CGI, *i.e.*, independent of the fate of CGI's claims, whether Skoultchi's and CGI's activities prior to the 1990 filing date of

ARS are prior art under 35 USC §102(g). Given the clear presence of the need to address priority, in light of the demonstration herein that CGI Claim 106 does in fact interfere with ARS Claim 24, and CGI's case on priority having already been made "on the record" to the degree necessary to show a conception of the invention by Skoultchi prior to August 29, 1989 followed by diligence to a reduction to practice in the Memorandum addressing the Patentability of Claims 107 - 109 of CGI over "Japan", it is now time for ARS to advance its evidence of invention, and resolve this single case-dispositive issue. If ARS cannot show a date of invention prior to August 29, 1989, this contest is over, and there is no value in further pursuing side issues that are not case dispositive. If ARS can make such a showing, it is time to resolve the priority dispute - something implicit in the Declaration of Interference in Interference 103,737 issued nearly ten years ago.

CGI respectfully submits that ARS cannot make such a showing, however. Early in this matter, CGI requested ARS produce all documents and things relating to "a conception of the invention" and "an actual reduction to practice" of the Count of Interference 105,114. (Document Requests 13 and 14, served August 12, 2005.) ARS has not produced any document remotely capable of supporting either conception or reduction to practice prior to November 6, 1989. It may be appropriate to put ARS under an Order to Show Cause as to why judgment on priority should not be entered, given CGI's showing of a much earlier conception.

                        Respectfully submitted,

                        CELL GENESYS, INC.

                        By its attorneys,


                         /s/ Steven B. Kelber
                        Steven B. Kelber
                        Merchant & Gould
                        901 Fifteenth Street, N.W.
                        Suite 850
                        Washington, DC  20005
                        Telephone:  (202) 326-0300

                        T. Christopher Donnelly (BBO #129930)
                        Donnelly, Conroy & Gelhaar, LLP
                        One Beacon Street, 33rd Floor
                        Boston, Massachusetts  02108
                        Telephone:  (617) 720-2880

Dated:  October 2, 2006

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 2, 2006.

                                      /s/ T. Christopher Donnelly
                                      T. Christopher Donnelly