**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CELL GENESYS, INC., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-12448-MLW |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V. | ) ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04 11810 MLW |
| | ) | |
| CELL GENESYS, INC. AND TRANSKARYOTIC THERAPIES, INC. | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF CELL GENESYS, INC. -
CGI'S CLAIMS 107 – 109 ARE NOT UNPATENTABLE
OVER THE "JAPAN" REFERENCE**

Responsive to the Order of August 9, 2006, Cell Genesys, Inc. ("CGI") submits herewith

its Memorandum addressing the issue of whether the Board "correctly found that CGI's claims

107 – 109 are unpatentable over the 'Japan' reference." The Japan reference--Japanese Patent

Publication (Kokai) 1-215280--was considered by the Board in its Decision on Motions, from

which both parties appeal and seek review.  Both parties assign as error the Board's application

of Japan to their respective claims.  The Board's discussion of Japan appears at pages 74 -78 of

the Decision, Exhibit A to the Complaint of ARS.  The Board found CGI's claims 107 – 109 to

be obvious over Japan, in view of secondary references.  *See* Decision, page 88.  During the

interference, CGI attempted to "antedate" Japan by demonstrating possession of the invention by CGI and its inventor Arthur Skoultchi ("Skoultchi") prior to the effective date of Japan, which is August 29, 1989. Decision, p. 74. The Board specifically noted, Decision, pages 90 – 92, that given its benefit date of November 6, 1989, the filing date of parent application 07/432,069, CGI could "remove" Japan as a prior art reference by demonstrating prior invention. The Board specifically noted, pages 92 – 93, that this is established pursuant to the provisions of 37 C.F.R. § 1.131.

Although CGI had presented evidence of prior possession of the invention, relying on minutes of a meeting held at CGI in July of 1989, discussed *infra*, the Board specifically concluded that the evidence presented by CGI was sufficient to describe a method requiring insertion of "a foreign DNA amplification or expression enhancer sequence into the genome of CHO cell line in operable vicinity of the target gene," but was insufficient, taken alone, to depict the insertion by, specifically, homologous recombination. Decision, pages 100-103. Additionally, in reviewing the evidence submitted by CGI during the interference, the Board was critical of the testimony of CGI's patent attorney, Rowland, because he could not recall various circumstances of the meeting of July 24 – 25, 1989 but did have specific recollection of the technology involved in Skoultchi's invention. *See* Decision, pages 109 – 112.

Accordingly, CGI submits herewith, and relies on, the sworn testimony of Skoultchi, as well as those present at CGI and familiar with the work of Skoultchi, prior to the effective date of Japan of August 29, 1989, and continuing to the November 6, 1989 filing. None of the witnesses are, or were, at the time of the interference, employees of CGI. The documents produced by these witnesses, and relied on herein, together with their testimony, were secured by subpoena. The presentation of such testimony, on an issue raised during the proceeding and the

-2-

Board's Decision, is proper pursuant to 35 U.S.C. § 146. *Conservolite, Inc. v. Widmeyer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994) *citing*, *Case v. CPC International, Inc.*, 730 F.2d 745, 752 (Fed. Cir. 1984) *cert. denied*, 469 US 872 (1984). The additional evidence submitted herewith unquestionably establishes that the drawing, originally submitted to the Board and discussed at pages 100-103 of the Decision, indeed, calls for homologous recombination as the manner in which specified sequences are introduced into a cell's genome, and also establishes Rowland's original testimony as accurate and reliable. Moreover, the evidence herewith supplies additional, independent examples of the invention which establish a date of invention prior to August 29, 1989.

## I.    **OVERVIEW**

Pursuant to regulation, and the Decision of the Board, CGI demonstrates herein that it had possession of the invention of claims 107 – 109 prior to the effective date of Japan. The burden of proof in an interference is preponderance of the evidence. *Bruning v. Hirose*, 161 F.3d 681, 685 (Fed. Cir. 1998). The Board made certain findings below. On review pursuant to 35 U.S.C. § 146, this Court reviews the Board's conclusions of law *de novo*, but gives deference to findings of fact of the Board based on the evidence before it during the interference. *Allied-Signal v. Allegheny Ludlum Corp.*, 29 USPQ2d 1039, 1042 (D. Conn. 1993). With respect to new evidence "presented to the District Court on a disputed fact question, a *de novo* finding will be necessary to take such evidence into account together with the evidence before the Board." *Fregeau v. Mosssinghoff*, 776 F.2d 1034, 1035 (Fed. Cir. 1985) (treating actions under 35 USC § 145 and 146 together). CGI presents extensive new evidence herewith, evidence not available to it during the Interference, and asks this Court make *de novo* findings and, as discussed below, respectfully submits that the evidence is so overwhelming that it leads to a thorough conviction

that CGI did have possession of the invention of CGI's claims 107 – 109 prior to the August 29, 1989 date of Japan. (As detailed below, CGI's evidence is included in the Record filed herewith, which supports the Summary of Documents & Testimony Establishing CGI's Date of Invention, filed August 1, 2006 (Docket No. 51)). On this basis, the Decision of the Board should be set aside. *Morgan v. Daniels*, 153 U.S. 120, 124 (1894).

## II.     THE REQUIREMENTS OF RULE 131

Where an applicant for patent, such as CGI, has its claims rejected as unpatentable over a prior art reference that has an effective date, as a publicly available reference, less than a year prior to the effective filing date, in this case, November 6, 1989, that party may proceed according to 37 C.F.R. § 1.131 to demonstrate possession of the invention prior to the date of the reference. *See*, Decision, 93 - 95. To do so, the party submits sworn testimony (in *ex parte* practice, an oath or declaration, herein, deposition transcript) to establish invention of the subject matter of the rejected claim prior to the effective date of the reference. 37 C.F.R. § 1.131(a). Pursuant to subsection (b), the applicant for patent may demonstrate possession of the invention by a showing of facts sufficient to establish "conception of the invention prior to the effective date of the reference coupled with due diligence prior to said date . . . to the filing of the application." 37 C.F.R. § 1.131(b). The regulation specifies and emphasizes the importance of "original exhibits or drawings or records, or photocopies thereof," and indicates that they must either be submitted "or their absence satisfactorily explained."

CGI submits herewith, and relies on, photocopies of original documents demonstrating possession of the invention prior to August 29, 1989, together with the sworn testimony of Skoultchi, a founder of CGI, together with the testimony of co-founder Raju Kucherlapati, and the sworn testimony of CGI's acting CEO in 1989, Mark Levin of the Mayfield Fund. CGI also

relies on the sworn testimony of Andrew Thompson and George Savage, Levin's assistants at the Mayfield Fund, consultants brought in to help convert CGI from a start-up concept (January 1989) to an actual company (by December 1989). The documents and referenced testimony are included in the Record filed contemporaneously herewith. The documents and testimony support each fact included in the Summary of Documents & Testimony Establishing CGI's Date of Invention, filed August 1, 2006 (Docket No. 51).

The burden is also on CGI to demonstrate diligence in moving from that conception to the filing of a patent application directed to the invention on Nov. 6, 1989, starting from a date just prior than the date of the reference, August 29, 1989. CGI relies on the evidence demonstrating a continual effort to prepare and file that patent application from a time prior to August 29, 1989, until the filing date, sometimes referred to as "attorney diligence" as well as continued diligent efforts by CGI to develop, promote and exploit the Skoultchi invention.

## III.    THE STANDARD OF PROOF

Rule 131(a) requires demonstration of conception prior to the effective date of the reference. *In re Moore*, 444 F.2d 572, 578 – 579 (C.C.P.A. 1971). To demonstrate possession of the invention in the form of a conception, the evidence must show possession of either the whole invention, or a species or embodiment within the invention such that the claim as a whole reads on it. *In re Tanczyn*, 347 F.2d 830, 1634 (C.C.P.A. 1965). What must be shown is possession of the basic inventive concept. *In re Spiller*, 500 F.2d 1170, 1178 (C.C.P.A. 1974). The law also provides that in the situation, where a genus is claimed, such as claims 107 – 109 of CGI, the Rule 131 showing may be sufficient upon the demonstration of possession of a single species within that genus. *Ex parte Biesecker*, 144 USPQ 129, 130 (POBA 1964). Testimony adduced

in an interference may be used in lieu of the declarations called for by Rule 131 (Manual of Patent Examining Procedure 715.07(b))).

Where one proceeds under Rule 131, corroboration is not required. *Leveen v. Edwards*, 57 USPQ2d 1416 (B.P.A.I. 2000) (*"Rule 131 showings do not need corroboration. In this respect, a showing under Rule 131 may be viewed as easier than a showing for priority."* 57 USPQ2d at 1421). This distinction was discussed at length in *Loral Fairchild Corp. v. Matsushita Electrical Industrial Company, Ltd.*, 266 F.3d 1358, 1366 (Fed. Cir. 2001). (Concurrence: *The evidentiary standard for antedating a reference is not the same as the PTO requirement for establishing priority in an interference contest. Inventor's affidavits have always been admissible to antedate a reference*) Accordingly, no showing of corroboration is required. Nonetheless, as discussed below, extensive corroboration, which was not before the Board during the Interference is provided.

**On the Record**

The Order of the Court directs that this memo be done "on the record" developed. Accordingly, this is not a summary judgment motion. The Record includes thousands of pages of documents and transcripts of sworn testimony, which were referenced in CGI's Summary of Documents and Testimony filed August 1, 2006 (Docket No. 51)("Summary"). In the sections of this Memorandum, the legal significance of Record documents of specific importance are identified and discussed, together with the testimony submitted thereon. Each section of the argument below devoted to Conception of the Invention is accompanied by a corresponding Appendix in which the factual substance of the Record is tied to the legal significance discussed herein. Thus, the facts related to the argument in Section IV. A. herein are set forth and described in Appendix A, that of IV. B in Appendix B, etc. Due to space constraints, many of

the documents addressed in the Summary (Docket No. 51) and included in the Record submitted

herewith are not discussed below.  The Summary provides information as to the importance of

those documents.

## IV.    SKOULTCHI CONCEIVED OF THE INVENTION OF CLAIMS 107 – 109 PRIOR TO AUGUST 29, 1989

CGI submits that Skoultchi conceived of the invention assigned to CGI and addressed in

Claims 107 – 109 prior to August 29, 1989.  The definition of conception remains much the

same as set forth in *Mergenthaler v. Schudder*, 11 App. D.C. 264, 1897 CD 724, quoted with

approval in *Kridl v. McCormick*, 105 F.3d 1446, 1447 (Fed. Cir. 1997).  The conception is "the

formation in the mind of the inventor of a definite and permanent idea of the complete and

operative invention as it is thereafter to be applied in practice."  A conception is "a specific,

settled idea, a particular solution to a problem at hand."  *Hitzeman v. Rutter*, 243 F.3d 1345,

1356, 58 USPQ2d 1161, 1168 (Fed. Cir. 2001).  To be complete, the conception must include a

specific utility.  *Bey v. Kollonitsch*, 215 USPQ 454 (B.P.A.I. 1981).

### A.    Construction of Claims 107 – 109

The Board construed claims 107 – 109 in its Decision on Motions.  That determination is

entitled to deference on review, and CGI does not challenge it herein.  The Board specifically

found that these claims require the following elements:

> 1)  Insertion of a DNA construct by homologous recombination into
> the genome of a mammalian cell in proximity to a target gene within
> that genome.  The purpose of insertion is "to stimulate or enhance
> expression of the target gene."
>
> 2)  The target gene is either a protein not normally expressed in the
> cell (claims 107 and 109) or a protein normally expressed in the cell
> (claim 108).
>
> 3)  The DNA construct comprises either an amplifiable gene, a
> regulatory sequence, or both.

> 4) The DNA construct also includes DNA homologous with DNA
> in a region of the genome in proximity to the target gene (referred to
> as a targeting sequence or region).

For the convenience of the Court, Claims 107-109 are reproduced in Appendix A hereto. It is

worth noting that the Board below specifically found these claims to be directed to the same

invention as the principal Claim 3 of ARS, and notwithstanding the challenge of ARS that the

claims were neither described nor enabled, the Board did not adopt these arguments.

### B.    Evidence Relied Upon

As noted above, Rule 131 stresses the importance of documentation. Accordingly, the

discussion of evidence of conception by CGI prior to August 29, 1989 of the subject matter of

claims 107 – 109 is focused around central documents. These documents include: the entry in

Skoultchi's notebook of February 15, 1989, reflecting his recognition of the invention;

Skoultchi's notebook of April 26, 1989, reflecting Skoultchi's discussion with CGI's patent

attorney; in an attempt to move forward with a constructive reduction to practice of Skoultchi's

conception, a memo dated July 10, 1989, stressing that one of the issues to be resolved at a

company meeting on July 24 – 25, 1989 was to move forward with a patent application based on

Skoultchi's idea; and the minutes of that meeting of the Scientific Advisory Board held July 24-

25, 1989. In order to move forward with a patent application, on July 24, 1989, the details of

Skoultchi's invention were faxed to CGI's patent attorney, Rowland, by its CEO, Mark Levin.

The following day, July 25th, Rowland attended the SAB meeting along with more than four

other witnesses, including Levin's assistants Savage and Thompson, where Skoultchi gave a

formal presentation of his invention to the company. On August 26, 1989, a draft of CGI's

Business Plan was prepared which again reflects conception of Skoultchi's invention by

Skoultchi and CGI. Finally, on August 29, 1989, a first draft of the patent application directed to

Skoultchi's invention was completed. These central documents are identified in the timeline of documents-invention. As these documents have independent significance, they are each discussed separately below, together with the testimony of the witnesses knowledgeable with respect to those documents. The discussion of the factual content of the documents, together with the relevant testimony, in the form of deposition transcripts, are submitted as Appendices to this Memorandum, each discussed in turn.

To aid the Court in identifying key documents, in addition to the Summary and Record, certain demonstratives have been prepared. Submitted herewith as Appendix B are three timelines, which are commonly employed in demonstrating the sufficiency of acts that have occurred over a period of time. One is a timeline of documents reflecting the conception of the invention prior to the end of August, 1989 and featuring the key documents discussed above. The second is a timeline of significant events detailing the inventive conception, which relies on the testimony described above, and captured in the transcripts. The third is a diligence timeline, which pictorially reflects work by Rowland and Skoultchi on the patent application filed on November 6, 1989, which is sufficient for diligence, as well as CGI's continued work to move the project forward.

Successive Appendices D - H address a specific document, its content, and the testimony concerning it. At the end of each Appendix is a "graphic" or demonstrative which guides the reader to the date and "headline" significance of the document. In each of these graphics, portions of the document have been highlighted to capture in a "snapshot" for the Court's convenience those aspects of the documents that underlie the evidence of conception. Documents reflecting diligence are also included, including the patent application draft of August 29, and the invoice pertaining to it of September 25, 1989. The CGI presentation of

September 8, 1989 continuing to reflect the emphasis on homologous recombination to produce therapeutic proteins, the Business Plan of September 20, 1989, reflecting the centrality of this idea for CGI's business plans, and the November 1, 1989 cover letter enclosing the final patent application to Skoultchi are similarly provided in demonstrative form, as key documents reflecting ongoing diligence from a time prior to the effective date of Japan, to the filing date of Skoultchi's application.

### C. The Events of July 24 – 25, 1989

On July 24 – 25, 1989, the founders of CGI, who also comprised the Scientific Advisory Board, met in a fundamental meeting, together with the management team of Levin, Savage and Thompson, and on July 25, 1989, Burt Rowland, CGI's patent attorney. This meeting was identified, and drawn to the attendees' attention, in a memo dated July 10, 1989, from CEO Levin, to founders Kucherlapati, Skoultchi, Smithies and Tepper, as well as management consultants Andy Thompson and George Savage. That Memo is Bates Numbers CGI 1852 – 1855 (documents are referred to, herein, by their production numbers to avoid confusion between various exhibits submitted). At 1853, the Memo specifically notes that Thompson and Savage have joined the start-up team. *See,* section A, item 8. The meeting to be held on July 24 – 25 in San Francisco is referenced in section B. Item 3 of that Memo refers to the "Scientific Plan for Art's idea – Art [Skoultchi] to meet with Rowland." Specifically, the meeting was convened, in part, to have Rowland hear from Art Skoultchi, his "idea" for expressing mammalian proteins using homologous recombination.

Levin, Savage and Kucherlapati all testified with respect to this Memo. Mark Levin authenticated it, noting that the document was prepared as a corporate record, and that he dated it all such documents on the date that they were prepared. Levin confirmed that the reference on

CGI 1853 is Skoultchi's idea to modify cells to express significant amounts of therapeutic proteins by inserting, through homologous recombination, regulatory sequences and/or amplifiable genes in a construct targeted to the gene encoding the therapeutic protein.  Levin testified that this idea of Skoultchi's was the only idea that Skoultchi had for CGI, where he was requested to work with Rowland on a patent application.  Levin's transcript, pages 87 – 95, 99 and 220 – 221.

The meeting of July 24 - 25, 1989 was to be a critical meeting for the start-up company. The company had no true employees.  Levin, Savage and Thompson of the Mayfield Fund were charged with moving CGI from a mere concept to a bona fide company, with sales of product, a laboratory facility and a full complement of skilled technical workers.  They were the only individuals working full time to transition the company from concept to a true company.  The founders all had other full-time jobs and obligations to attend to.  The founders were all working on their own time, in University facilities on the East coast (Skoultchi and Kucherlapati in New York, Smithies in North Carolina) while the company itself, its facilities (those of the Mayfield Fund) and its management group was on the West coast, near San Francisco.  This team had not previously assembled.  It was to be devoted exclusively to the development of technology using Homologous Recombination, then a relatively new science as applied to commercial practice. And the company was running out of money.  Levin's memo made it clear that seed money would be gone by September, CGI 1853 at Section B, and a project that offered short term sales, and provided a basis to attract investor funds, such as that previously arrived at by Skoultchi to produce therapeutic proteins without infringing third party patents, was a critical commodity.  It needed to be protected as intellectual property as well as developed.

Savage testified that he remembered, as reflected in this Memo, that there was a perceived need at CGI to have Skoultchi and Rowland meet to prepare a patent application, and accordingly, a scientific plan was needed. Savage transcript, pages 91 – 92. Kucherlapati also testified with respect to this Memo, noting that the Memo confirmed his memory that it was important to the company, and to Levin, to get the intellectual property straight. CGI had selected Burt Rowland for this purpose, and that it was now important (in July, 1989) to get Rowland and Skoultchi together "to get the application going." Kucherlapati, pages 82 -85.

Attached hereto as Appendix C is a graphic that reflects this central two day event in the development of CGI, and the documentation of the conception of Skoultchi's invention, that identifies each of the central actors and figures in the development of CGI, including the Founders and Members of the Scientific Advisory Board (Skoultchi, Kucherlapati, Smithies and Tepper), the management that directed and focused the Founders in developing the company (Levin, Savage and Thompson) and their patent attorney (Rowland). Rowland was central to the effort to develop Skoultchi's conceived of invention, both because protecting it was a priority of the company, and because its central aspect was avoiding the patents of third parties on specific gene sequences.

### D.     The Legal Significance of the Facsimile of July 24, 1989

The content and detail of the facsimile from Levin to Rowland on July 24, 1989 is discussed in Appendix D. This detailed and remarkable document sets forth, in word-for-word precision, the subject matter of Claims 107 – 109, including the express teaching sought by the Board for the method to require using homologous recombination ("HR") to insert sequences into a cell's genome. The document comprised of CGI 3650-3654 is a dated and corroborating document, testified to by those other than Skoultchi as well as the inventor himself that

inarguably sets forth each element of the subject matter of Claims 107 - 109. The law does not require such a specific disclosure to antedate a reference. Identity between the claimed invention and the showing of prior possession is not required. A showing of the conception commensurate with the extent of the invention as claimed is sufficient. *In re Wakefield*, 422 F.2d 897, 901 (C.C.P.A. 1970). In the case of the Facsimile of July 24, 1989, such a showing appears, both as a generic concept, and in the form of specific application of the concept to a species of the invention, activating and enhancing the expression of TPA. The document, even standing alone, demonstrates conception before August 29, 1989. Supported by the testimony which confirms this document was prepared on the basis of Skoultchi's own notes, for the purpose of educating the patent attorney who was to prepare and file a patent application directed thereto, there can be no doubt that Skoultchi had "a specific, settled idea, a particular solution to a problem at hand" *Hitzeman v. Rutter*, *supra* and thus conception of the invention by July 24, 1989.

### E.   The Legal Significance of the Minutes from the Scientific Advisory Board Meeting of July 24 - 25, 1989

The minutes of the Scientific Advisory Board, and their content relative to Skoultchi's invention, are discussed in detail in Appendix E. This document, CGI 3224 – 3234, satisfies the legal requirements not only for demonstration of conception of the invention, for it reflects, as discussed in Appendix E, each and every element of the invention of Claims 107 - 109, but the CGI determination to proceed to the filing of a patent application directed to this invention. As discussed above, 37 CFR § 1.131 specifically provides that a reference may be antedated, that is, removed as prior art, by showing (1) conception of the invention at a time prior to the effective date of the prior art, and (2) diligence from a time prior to the effective date of the prior art, Japan, to a patent application filing directed to the invention. Not only does the document that is the minutes of the Scientific Advisory Board's meeting reflect possession of the invention, but it

demonstrates CGI's determination to move forward with a patent application directed thereto -
that is why Rowland, the patent attorney was there.  More is not required by Rule 131 - provided
that subsequently, CGI does not abandon or cease work on the invention, thereby interrupting
diligence.  In the three months that came between the directive to Rowland to prepare an
application based on the presentation by Skoultchi on July 25, 198 and the facsimile of July 24,
1989, CGI continuously moved forward with the invention.

F.    **The Legal Significance of CGI's Business Plan of August 26, 1989**

The CGI business plan went through several revisions.  The version prepared just prior to
the effective date of Japan, CGI 3260 – 3313 is discussed in detail in Appendix F.  By August
26, 1989, repeated confirmation of the conception, by Skoultchi and CGI, of the invention that is
the object of Claims 107 - 109 had been made.  A patent application was in preparation directed
to this invention, which was to become the first of the major projects of CGI.  The business plan
confirms two things - (1) CGI continued to regard the modification of cell lines by insertion of
an amplifiable gene, a regulatory segment or both in the vicinity of a target gene that encodes a
therapeutic protein, through a homologous recombination using construct with sequences
homologues to those of the genome of the target cell, for the purpose of achieving enhanced
expression of the therapeutic protein was a definite and practical solution and thus a conception
of the invention, and (2) that CGI was diligently pursuing both the practice of the invention, and
a patent application directed to the invention, and thus was diligent in pursuit of the invention
according to the requirements of Rule 131.  Clearly, Japan is not properly applied as a reference
against CGI claims 107 - 109.

G.    **The Legal Significance of the Draft Patent Application that was Completed
on August 29, 1989**

-14-

The draft patent application that is Exhibit B to the Rowland Declaration, Exhibit 2054, is discussed in detail, in terms of its disclosure and clear reflection of the invention of Claims 107 - 109, in Appendix G hereto. This application marks both a clear possession of the invention of Claims 107 - 109, and the determination of CGI to protect it through intellectual property. The case law recognizes the dichotomy of methods of satisfying the requirement, expressly set forth in the Rule, that one can demonstrate reduction to practice either by showing an actual working of the invention, a goal CGI was pursuing, OR by the preparation of a patent application directed to that invention. CGI demonstrates the latter, herein. The draft application was prepared in a month. It was forwarded to the inventor and the acting CEO and another founder, Kucherlapati, for comment and revision. These are the hallmarks of conception followed by diligent reduction to practice, the only requirements to antedating Japan as a reference. *Rines v. Morgan*, 250 F.2d 365, 369 (C.C.P.A. 1957).

**H.**     **The Legal Significance of Skoultchi's Thoughts of February 15, 1989**

Skoultchi captured his initial concept of the invention in classic American fashion - he wrote it down in his inventor's notebook! The clear disclosure of this singular document, CGI 4004, and the circumstances of its preparation, are discussed at length in Appendix H. This dated document is supported by the events preceding it - the trip to the Wilkerson Group meeting, the notes from which are reflected on page 4004, and the preceding page, and the exhortation by Mark Levin at that meeting, reflected on CGI 4004 itself, that the company look for a short term project, "something to put in a bottle." The elements of the invention, and its utility, were all captured by the inventor on February 15, 1989, in a flash of inspiration. Given the recognition that this could be done, using Homologous Recombination, the technical focal

point of the company, the other pieces fell into place. After February 15, 1989, all that remained was to put the plan into action.

In the succeeding months, CGI did just that, reviewing, discussing and expanding on the invention, describing it to a patent attorney for verification that it could be both patented and practiced without infringing the patents of others, making it the centerpiece of the CGI business plan and presentation to investors, acquiring facilities and employees to develop the technology, and filing a patent application directed to it. There can be no doubt that the "specific and complete" idea of the subject matter of Claims 107 - 109 came to Skoultchi on February 15, 1989. That is his date of conception.

## V.  CGI WAS DILIGENT IN MOVING FROM SKOULTCHI'S CONCEPTION TO A PATENT APPLICATION FILING FROM PRIOR TO AUGUST 29, 1989

The second element of proof under Rule 131 is a showing of "diligence" in moving from the conception of the invention to a filing of a patent application directed to that invention. Unlike conception, which is frequently reflected in a single document or exchange, diligence, as a matter for antedating under Rule 131, connotes action over time. The inquiry, on diligence, is whether CGI reasonably pursued the subject matter of Claims 107 - 109, initially conceived of on February 15, 1989, to the patent application filed on November 6, 1989. The diligence need not stretch back all the way to the first conception, but rather, must have been from a time just prior to the effective date of the reference, August 29, 1989. Although diligence is a concept common to Rule 131 and interference practice, adequate diligence is measured according to two different standards. *In re Eickmeyer*, 602 F.2d 974, 979 – 80 (C.C.P.A. 1979) where the Court specifically noted that the proof submitted pursuant to Rule 131 are not the same as proofs of priority in an interference. The standards for finding conception and diligence are less rigorous in a Rule 131 setting. *See, In re Moore*, 444 F.2d 572, 578 – 579 (C.C.P.A. 1971) where the

Court observed that the parallel of the terms of Rule 131 and the interference with respect to conception, reduction to practice and diligence, is one of convenience rather than necessity. In the context of a Rule 131 showing, diligence is demonstrated by evidence which supports the conclusion that the company at no time ceased to direct itself to the invention, that it remained a goal of the company. *Moore, supra.* Accordingly, the diligence of CGI over time is reviewed herein, rather than in separate appendices, as was appropriate for evidence of conception.

Where an applicant relies on prior conception, followed by diligence to a constructive reduction to practice – the filing of a United States patent application, it is common to demonstrate due diligence under Rule 131 by relying on the work of the patent attorney preparing that application. The activity involved in preparing the patent application accrues to the benefit of the inventor, and can be relied upon for showing of reasonable diligence. *Rey-Bellet v. Engelhardt v. Shindler*, 493 F.2d 1380, 1387 (C.C.P.A. 1974). Where the attorney takes up work and carries it out expeditiously, diligence will be found. Thus, even under the higher standard of an interference, in *Rines v. Morgan*, 250 F.2d 365, 369 (C.C.P.A. 1957) the Court specifically found that proceeding from a disclosure to the patent attorney, of the conception of the invention, to filing of the patent application, in three months time, was reasonable diligence. Where the decision was made to go forward with a patent application, the first draft was prepared and sent to the inventor for comment, that draft was returned, followed by a second rendering and filing, over a period of three months, diligence was made out. This three-month period during which preparation, revision and filing of an application is sufficient to constitute reasonable diligence, is echoed in the decision *Shindelar v. Holdeman*, 628 F.2d 1337, 1342, (C.C.P.A. 1980) The Court specifically found that a three-month period from disclosure to filing was reasonable, at 1342. This is exactly the same time period that elapsed from the

communication of Skoultchi's invention to Rowland at the very end of July, 1989 to the filing, 3 months later at the beginning of November.  As a legal proposition, CGI was, per se, diligent.

The documents and activities CGI relies on to establish diligence are set forth in the diligence timeline in Appendix A.  They critically include the instruction to Rowland, on July 25, prior to the effective date of Japan, to prepare a patent application.  Rowland had the disclosure, both from Skoultchi's presentation to the meeting of the Scientific Advisory Board, and Skoultchi's conversation with Rowland on that day, coupled with the facsimile of July 24, 1989. Thus, the first draft was prepared by Skoultchi on the very date that Japan became available, and is evidence of diligence throughout the period prior to the effective date of Japan, to the filing date of November 6, 1989.  This is confirmed by Exhibit C to Exhibit 2054, which is an invoice which reflects Rowland's activities in drafting the patent application as early as August 25, and again on August 29, 1989.  Clearly, from a time prior to the effective date of Japan, CGI's patent attorney was drafting the patent application in question.

As noted above, in accordance with the case law, Skoultchi marked the draft and returned it to Rowland.  Additional activity and exchange between Rowland and Skoultchi is reflected in CGI 3659 – 3660, which is the cover letter forwarding the draft application.  Rowland testified that he received those comments back from Skoultchi by November 1, 1989, and rapidly amended and prepared the final version.  *See*, Exhibit 2054, Rowland's Declaration, paragraphs 4 and 5.

Confirming Rowland's testimony, Skoultchi testified he made the necessary revisions to the patent application and returned it.  Transcript, 140 -141.  Rowland promptly revised the application, and returned a final draft, as reflected by the cover letter, CGI 3656 – 3657.

Skoultchi received it, knew his signature was needed, and returned it to the patent attorney. Transcript 154 – 157.

Levin confirmed that a final draft had been prepared by Rowland and he would have received a copy. This item was a high priority for CGI. Levin Tr., 192 – 193. On November 6, 1989, just five days after sending out the final draft, the application, together with Skoultchi's executed formal documents, was filed in the United States Patent and Trademark Office.

It is clear, accordingly, that from a time prior to August 29, 1989, in a continuous and routine fashion extending through to the filing date of November 6, 1989, CGI was diligent in pursuing the constructive reduction to practice, the filing of the application, which is all that is required by Rule 131. The second, and final, requirement of 131 is satisfied by the testimony and exhibits relied on herein.

Meanwhile, CGI was exercising corporate diligence as well. In a presentation to investors on September 8, 1989, CGI 15906 - 15925, the importance of Skoultchi's invention, and the patent application directed thereto, were stressed. *See, e.g.*, CGI 15908. Skoultchi's invention is featured and explained at 15915 -16 which reflects a "patent application being filed." The final version of the business plan dated September 20, 1989 reflected the company's refocusing on Skoultchi's invention as the *first* of three major projects to lead the company, CGI 4433 , 4435 and 4447. At CGI 4450 - 4451, the continuing focus on patent protection for Skoultchi's invention is reflected. At pages 4452 - 4453, the Company projection and strategy for securing scientists and facilities are reflected. A company's activities in preparing to practice the inventive process in the Unites States (facilities and workers) serve as evidence of diligence. *Scott v. Koyama*, 281 F.3d 1243, 1247-48 (Fed. Cir. 2002).

Levin testified that the Company was looking for lab space for 1989 - 1990. Levin Tr., 147, 150. Levin testified as well that throughout this period (September - December) CGI was working on the Skoultchi invention "to work on it from a market standpoint, IP standpoint, regulatory, technology business development; and this is just a continuum as part of that," p. 189, ll. 3 - 6 referring to the agenda for patent meeting at the end of October, 1989. CGI was diligent throughout the time frame, and did not stop working on the project at any point after Skoultchi's conception.

## V.     CONCLUSION

In view of all the foregoing, judgment to the effect that CGI claims 107 – 109 are not rendered unpatentable by Japan is respectfully requested.

Respectfully submitted,

CELL GENESYS, INC.

By its attorneys,


  /s/ Steven B. Kelber
Steven B. Kelber
Merchant & Gould
901 Fifteenth Street, N.W.
Suite 850
Washington, DC  20005
Telephone:  (202) 326-0300

T. Christopher Donnelly (BBO #129930)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts  02108
Telephone:  (617) 720-2880

Dated:  October 2, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 2, 2006.

/s/ T. Christopher Donnelly
T. Christopher Donnelly