**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CELL GENESYS, INC., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-12448-MLW |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS | ) | |
| HOLDING, N.V., | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS | ) | |
| HOLDING, N.V., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-11810-MLW |
| | ) | |
| CELL GENESYS, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant, and | ) | |
| | ) | |
| TRANSKARYOTIC THERAPIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ARS OPPOSITION TO CGI'S MOTION TO REVERSE THE BOARD'S DECISION
THAT CGI CLAIMS 107-109 ARE UNPATENTABLE OVER "JAPAN"**

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  ARGUMENT ........................................................................................................2

   A.  "Japan" is a statutory bar to patentability of claims 107-109 ........................................2

   B.  Skoultchi's November 1989 application did not constitute a constructive
       reduction to practice of claims 107-109.........................................................5

   C.  Skoultchi was not diligent between August 28 and November 6, 1989 ........................6

       1.  CGI points to only *four* days during the critical period on which
           anyone might have worked on Skoultchi's patent application .........................7

       2.  No other activity provided the missing diligence .............................................10

   D.  Skoultchi did not conceive the specific methods recited in claims 107-
       109.................................................................................................................11

       1.  CGI had to prove that Skoultchi conceived at least as much of his
           claimed methods as "Japan" disclosed ............................................................12

       2.  Skoultchi did not conceive a method of expressing a gene in a
           primary cell .......................................................................................................13

           a.  The documents dated February 15 and April 26, 1989 are
               not evidence of conception .................................................................14

           b.  The July 10, 1989 document is not evidence of conception ...............14

           c.  The July 24, 1989 document is not evidence of conception ...............14

           d.  The July 24-25, 1989 document is not evidence of
               conception ............................................................................................16

           e.  The August 26, 1989 document is not evidence of
               conception ............................................................................................16

           f.  The August 29, 1989 document is not evidence of
               conception ............................................................................................17

       3.  Skoultchi did not conceive a method involving insertion of only a
           regulatory sequence ..........................................................................................17

       4.  CGI admitted to the Patent Office that Skoultchi's "invention"
           excluded gene expression in a primary cell, and that it required an
           amplifiable gene..................................................................................................20

III.  CONCLUSION......................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Augustine Med., Inc. v. Gaymar Indus., Inc.*,
181 F.3d 1291 (Fed. Cir. 1999) ........................................................................................... 3

*Bigham v. Godtfredsen*,
857 F.2d 1415 (Fed. Cir. 1988) ........................................................................................... 5

*Brown v. Barton*,
102 F.2d 193 (C.C.P.A. 1939) ............................................................................................. 8

*Ex Parte Huetter*,
62 U.S.P.Q.2d 1553 (Bd. Pat. App. & Interf. 2001) .......................................................... 8

*Fitzgerald v. Arbib*,
268 F.2d 763 (C.C.P.A. 1959) ........................................................................................... 11

*Gould v. Schawlow*,
363 F.2d 908 (C.C.P.A. 1966) ........................................................................................... 10

*Griffith v. Kanamaru*,
816 F.2d 624 (Fed. Cir. 1987) ...................................................................................... 7, 11

*Hull v. Davenport*,
90 F.2d 103 (C.C.P.A. 1937) ............................................................................................... 8

*In re Borkowski*,
505 F.2d 713 (C.C.P.A. 1974) ........................................................................................... 19

*In re Chu*,
66 F.3d 292 (Fed. Cir. 1995) ............................................................................................... 4

*In re DeBaun*,
687 F.2d 459 (C.C. P.A. 1982) ........................................................................................... 9

*In re Eickmeyer*,
602 F.2d 974 (C.C.P.A. 1979) ............................................................................................. 7

*In re Folkers*,
344 F.2d 967 (C.C.P.A. 1965) ............................................................................................. 3

*In re Harry*,
333 F.2d 290 (C.C.P.A. 1964) ............................................................................................. 9

*In re Moore*,
444 F.2d 572 (C.C.P.A. 1971) ................................................................. 7

*In re Mulder*,
716 F.2d 1542 (Fed. Cir. 1983) ............................................................... 8

*In re Nelson*,
420 F.2d 1079 (C.C.P.A. 1970) ............................................................ 8, 9

*In re Noxon*,
210 F.2d 835 (C.C.P.A. 1954) ................................................................. 19

*In re Schaub*,
537 F.2d 509 (C.C.P.A. 1976) ................................................................. 18

*In re Smith*,
458 F.2d 1389 (C.C.P.A. 1972) ............................................................... 5

*In re Spiller*,
500 F.2d 1170 (C.C.P.A. 1974) ............................................................... 12

*In re Tanczyn*,
347 F.2d 830 (C.C.P.A. 1965) ................................................................. 12

*In re Wakefield*,
422 F.2d 897 (C.C.P.A. 1970) ........................................................... 12, 13

*Invitrogen Corp. v. Clontech Labs., Inc* ,
429 F.3d 1052 (Fed. Cir. 2005) ............................................................... 15

*Ireland v. Smith*,
97 F.2d 95 (C.C.P.A. 1938) ..................................................................... 8

*Kawai v. Metlesics*,
480 F.2d 880 (C.C.P.A. 1973) ................................................................. 5

*Rines v. Morgan*,
250 F.2d 365 (C.C.P.A. 1957) ................................................................. 8

*Scott v. Koyama*,
281 F.3d 1243 (Fed. Cir. 2002) ............................................................... 11

*Shindelar v. Holdeman*,
628 F.2d 1337 (C.C.P.A. 1980) ............................................................... 8

*South Corp. v. United States,*
  690 F.2d 1368 (Fed. Cir. 1982) (en banc)............................................................... 3

**Statutes**

35 U.S.C. § 102(b) ............................................................... 1, 2, 3, 4, 5, 11

35 U.S.C. § 103 ............................................................................................. 5

35 U.S.C. § 112 ............................................................... 1, 2, 4, 5, 6

35 U.S.C. § 120 ............................................................................. 1, 4, 5

**Rules**

37 C.F.R. § 1.115 ............................................................................... 3

37 C.F.R. § 1.116 ............................................................................. 20

37 C.F.R. § 1.131 ............................................................... 2, 3, 5, 6, 7, 9, 17, 19

37 C.F.R. § 1.131(b) ....................................................................... 7

# I.    INTRODUCTION

This Court can deny CGI's request to reverse the Board's decision that CGI's pending application claims 107-109 are unpatentable over the "Japan" reference for a few simple reasons – none of which require combing through the "thousands of pages of documents and sworn testimony" that make up CGI's so-called "Record."

To establish that claims 107-109 are patentable over "Japan," CGI had to first prove that Dr. Skoultchi filed a patent application sufficiently describing and enabling the methods of claims 107-109 (as required under 35 U.S.C. § 112, ¶ 1) within one year after the August 29, 1989 effective date of "Japan" (*i.e.*, that "Japan" is not a statutory bar to the patentability of those claims under 35 U.S.C. § 102(b)). If CGI could overcome this first hurdle, it then had to prove that Skoultchi conceived those specific methods before August 29, 1989, and that he worked continuously on his patent application between August 28 and November 6, 1989.

In its Memorandum, CGI failed to prove that Skoultchi and his patent application satisfied any of those requirements.

First, "Japan" is a statutory bar to the patentability of CGI's claims under § 102(b). To avoid that bar, CGI had to prove that its current claims (which it did not submit to the Patent Office until 1995) are entitled under 35 U.S.C. §§ 112 and 120 to the benefit of the patent application that Skoultchi filed on November 6, 1989. In its Memorandum, CGI failed to even mention whether its November 6, 1989 application satisfied § 112, and, therefore, failed to prove that its claims are entitled to the benefit of that filing date under § 120. Because CGI did not file any other application within one year after the publication of "Japan" (*i.e.*, by August 29, 1990), "Japan" is a statutory bar to patentability under § 102(b). That is fatal to CGI's motion.

Second, the evidence does not show that Skoultchi conceived the specific methods of claims 107-109 prior to August 29, 1989. While Skoultchi may have had an idea regarding

protein production at that time, CGI did not prove, as it was required to do, that he had intellectual possession of the specific methods recited in claims 107-109. Indeed, CGI admitted to the Patent Office that Skoultchi's "invention" did not cover those methods. This too is fatal to CGI's motion.

Third, the evidence shows that Skoultchi was not continuously diligent in attempting to reduce his idea to practice from just before August 29 until he filed his first application on November 6, 1989. Not only did CGI fail to prove that Skoultchi was continuously diligent during this critical period, it could point to only *four* days of any activity related to preparation of the application, and it failed to point to *any* evidence of activity toward a reduction to practice for a period of *fifty-five* days during the critical period. And while CGI argues that so-called "corporate diligence" took place, its mere arguments cannot substitute for actual evidence of such diligence, which it does not have. This too is fatal to CGI's motion.

Finally, Skoultchi did not reduce the specific methods of claims 107-109 to practice. A constructive reduction to practice (which CGI alleges took place) required Skoultchi to file a patent application that satisfied the requirements of § 112, ¶ 1. Because, as noted above, Skoultchi's November 6, 1989 patent application did not adequately describe or enable the specific methods of claims 107-109, CGI did not and cannot prove that Skoultchi ever filed an application that constituted a constructive reduction to practice for those methods.

For any one and all of these reasons, the Court should deny CGI's motion.

## II.   ARGUMENT

### A.   "Japan" is a statutory bar to patentability of claims 107-109

For CGI to prove under 37 C.F.R. § 1.131 ("Rule 131") that Dr. Skoultchi invented his claimed methods prior to the publication of "Japan," it first bore the burden to prove that "Japan" is not a statutory bar to the patentability of claims 107-109 under 35 U.S.C. § 102(b). CGI did

not even address this issue in its Memorandum, so its request for judgment that its claims are patentable should be denied.

The express language of Rule 131(a)(2) placed this burden squarely on CGI: "Prior invention may not be established under this section if . . . [t]he rejection is based upon a statutory bar." One such statutory bar to patentability is 35 U.S.C. § 102(b), which provides

> A person shall be entitled to a patent unless . . . the invention was . . . *described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States* . . . . (emphasis added).[1]

Thus, for CGI to prove prior invention under Rule 131, it bore the burden to prove that "Japan" (published on August 29, 1989) was not a § 102(b) statutory bar to its claims. Skoultchi did not file the application in which claims 107-109 are pending until 1993 (more than one year after the publication of "Japan").[2] That 1993 application claimed priority to a "continuation-in-part" application[3] filed on November 6, 1990, which claimed priority to the 1989 application. Because Skoultchi filed this "CIP" application more than one year after August 29, 1989, it had to prove that claims 107-109 are entitled to the "benefit" of its 1989 filing date, or those claims

---

[1] *See also In re Folkers*, 344 F.2d 967, 968 (C.C.P.A. 1965) ("Whatever right to a patent appellant may have had at the time the invention was made, it has been lost within the meaning of section 102(b) if, indeed, the claimed invention became obvious to one of ordinary skill in this art through the publication of the reference more than one year before appellant filed his application."). The United States Court of Customs and Patent Appeals (the "C.C.P.A.") was a predecessor to the United States Court of Appeals for the Federal Circuit, and its decisions are treated as binding precedent by the Federal Circuit. *See South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (*en banc*).

[2] *See* U.S. Patent Application Serial No. 08/102,390, "Amendment under 37 C.F.R. § 1.115," dated June 1, 1994, at 1-2 (relevant pages submitted herewith as Exhibit A to Declaration of Matthew C. Nielsen).

[3] *Augustine Med., Inc. v. Gaymar Indus., Inc*., 181 F.3d 1291, 1302-03 (Fed. Cir. 1999) ("A CIP [continuation-in-part] application contains subject matter from a prior application and may also contain additional matter not disclosed in the prior application. Different claims of such an application may therefore receive different effective filing dates. Subject matter that arises for the first time in the CIP application does not receive the benefit of the filing date of the parent application.") (internal citations omitted).

are unpatentable under § 102(b) (because "Japan" was a "printed publication" that described the invention "more than one year prior to the date of the [November 6, 1990] application for patent.").

To prove that its claims are entitled to the benefit of its 1989 filing date, CGI had to prove that its 1989 application satisfied all of the requirements of 35 U.S.C. § 112, ¶ 1 for those claims, *i.e.*, that its 1989 application (i) adequately described the specific methods recited in those claims such that one of ordinary skill in the art in 1989 reading that application would have understood that Skoultchi was in intellectual possession of those methods, and (ii) enabled one of ordinary skill in 1989 to practice those methods without undue experimentation.[4]

In its Memorandum, CGI did not even mention whether its November 1989 application satisfied § 112. Instead, CGI expected the Court to simply assume that it is entitled to the "effective filing date, in this case, November 6, 1989."[5] But CGI cannot ask this Court to simply assume that CGI's claims are entitled to that filing date. CGI had to prove it, and it did not.[6]

CGI's failure to prove that its November 6, 1989 application adequately described and enabled claims 107-109 means that the effective filing date for those claims is no earlier than November 6, 1990. Claims 107-109 are therefore unpatentable under § 102(b) because the

---

[4] *In re Chu*, 66 F.3d 292, 297 (Fed. Cir. 1995) ("It is elementary patent law that a patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112.") (citing 35 U.S.C. § 120) (citations to cases omitted).

[5] CGI Memo at 4.

[6] CGI implied that the Board found that it was entitled to the benefit of its 1989 filing date. *See* CGI Memo at 2. It did not; rather, the Board dismissed CGI's Preliminary Motion 1 (in which CGI requested the benefit of that 1989 filing date) as moot. *See* Decision on Preliminary Motions at 133 (submitted herewith as Exh. B to Nielsen Decl.). CGI failed to appeal that dismissal in this action, so this Court would also be justified in finding that CGI waived any right to seek entitlement to that date.

effective date of "Japan" was August 29, 1989, which was "more than one year prior to the [November 6, 1990] date of the application for patent." CGI therefore cannot establish prior invention under any set of facts, and its motion should be denied.

### B. Skoultchi's November 1989 application did not constitute a constructive reduction to practice of claims 107-109

As CGI acknowledged in its memorandum, Rule 131 placed the burden on it to prove that Skoultchi reduced the subject matter of claims 107-109 to practice, either actually or constructively.[7] CGI suggested that the mere "preparation" of an application constitutes a reduction to practice.[8] It does not. The process of *preparing* the application relates only to diligence; it is irrelevant to the question of reduction to practice. Rather, CGI bore the burden of proving that it *filed* an application with the Patent Office that *described and enabled* the methods recited in claims 107-109 in compliance with § 112, ¶ 1.[9] It did not do so.

In its Memorandum, CGI did not allege (and thus did not prove) that Skoultchi's 1989 application satisfied the requirements of § 112, ¶ 1, that any other application (*e.g.*, the 1990

---

[7] CGI Memo at 15. *See also In re Smith*, 458 F.2d 1389, 1393-96 (C.C.P.A. 1972) ("Since the [applicant's first-filed] application does not describe the claimed subject matter in the contemplation of § 112, first paragraph, appellant is not entitled to the § 120 benefit of the filing date of that earlier application. Accordingly, [the prior art reference] stands as a § 102(b) statutory bar available for consideration along with other prior art in the determination of obviousness under 35 U.S.C. § 103, and appellant may not, by Rule 131 affidavit, overcome it.").

[8] CGI Memo at 15.

[9] *Bigham v. Godtfredsen*, 857 F.2d 1415, 1417 (Fed. Cir. 1988) ("To serve as constructive reduction to practice, the disclosure of the subject matter of count 2 must meet the requirements of 35 U.S.C. § 112, first paragraph"); *Kawai v. Metlesics*, 480 F.2d 880, 886 (C.C.P.A. 1973) ("It is well understood that the act of filing a United States patent application can be regarded as being a constructive reduction to practice of an invention described therein as of the filing date. It follows naturally from this that the written specification in the application is the evidence proving the invention of that which is reduced to practice, *i.e.*, the subject matter to which properly supported claims can be drawn.").

application) constituted a constructive reduction to practice, or that Skoultchi ever reduced his

claimed methods to actual practice (*i.e.*, actually performed the methods). This is a second reason

for this Court to hold that claims 107-109 are unpatentable and to deny CGI's motion.[10]

**C.    Skoultchi was not diligent between August 28 and November 6, 1989**

The Court does not have to wade through CGI's so-called "Record" to find that Skoultchi

did not invent the methods recited in claims 107-109 before the August 29, 1989 date of "Japan."

The few documents that CGI actually relied upon in its Memorandum show that Skoultchi did

not work continuously on his patent application between August 28 and November 6, 1989.

Consequently, CGI did not and cannot prove that Skoultchi exercised the required reasonable

diligence during the critical period.

CGI simply does not have sufficient evidence to meet its burden. CGI pointed to only

four days of activity (in a span of three months) to support its argument for diligence. CGI

suggests that this is sufficient because "[t]he standards for finding conception and diligence are

less rigorous in a Rule 131 setting [than in a priority contest in an interference]," and "[w]here

one proceeds under Rule 131, corroboration is not required."[11] The first statement is false, and

the second is a red herring. To prove diligence, Rule 131 required CGI to do more than simply

---

[10] CGI says that "notwithstanding the challenge of ARS that the claims were neither described nor enabled, the Board did not adopt these arguments." CGI Memo at 8. That statement requires clarification, and in any event is irrelevant to the question of whether Skoultchi's 1989 application constituted a constructive reduction to practice of claims 107-109. In the '114 Interference, the Board dismissed (but did not deny) ARS's Preliminary Motions 1 and 2 for judgment that, *inter alia*, claims 107-109 are unpatentable for lack of written descriptive support and enablement, respectively, under 35 U.S.C. § 112, ¶ 1. As the Board explained, it dismissed those motions because those claims had already "been determined to be unpatentable over alternative and/or collective prior art teachings." Decision at 136 (submitted herewith as Exh. B to Nielsen Decl).

[11] CGI Memo at 6 and 16-17. Notably, in the '114 Interference, CGI never submitted a Rule 131 oath or declaration (as Rule 131(a) requires), and never argued that corroboration was not required.

*argue* diligence; CGI had to prove *what* was done, *when* it was done, and why whatever was done was evidence of ***continuous*** diligence.[12] CGI had to prove Skoultchi was diligent for the ***entire*** period from August 28 through November 6, 1989.[13] The cases CGI cited to support a "less rigorous" standard for diligence (*i.e.*, that an invention need only "remain[] a goal of the company") say no such thing; *they do not even discuss diligence*.[14] And "corroboration" is not the issue here; the issue is that CGI cannot substitute argument for actual *evidence*.

1. **CGI points to only *four* days during the critical period on which anyone might have worked on Skoultchi's patent application**

CGI says that "over a period of three months" leading up to the November 6, 1989 filing date, "CGI was diligent in pursuing the constructive reduction to practice, the filing of the application . . . ."[15] But during that entire period, CGI could point to only ***four*** days (August 25,

---

[12] *See* cases discussed *infra* at pp. 9-10; 37 C.F.R. § 1.131(b) ("*The showing of facts shall be such, in character and weight, as to establish* reduction to practice prior to the effective date of the reference, or conception of the invention prior to the effective date of the reference *coupled with due diligence from prior to said date to a subsequent reduction to practice* or to the filing of the application.") (emphasis added).

[13] *Griffith v. Kanamaru*, 816 F.2d 624, 626 (Fed. Cir. 1987) ("Griffith must account for the ***entire*** period from just before Kanamaru's filing date until his reduction to practice. As one of our predecessor courts has noted: 'Public policy favors the early disclosure of inventions. This underlies the requirement for 'reasonable diligence' in reducing an invention to practice, not unlike the requirement that, to avoid a holding of suppression or concealment, there be no unreasonable delay in filing an application once there has been a reduction to practice.'") (citations omitted) (emphasis added).

[14] CGI Memo at 16-17. The cases CGI cites only stand for the proposition that the standards of proof for *conception* and *reduction to practice* are not the same in a Rule 131 context (where the focus is on the claims and a prior-art reference) and a "priority contest" in an interference (where the focus is on a "count"). *See In re Eickmeyer*, 602 F.2d 974, 978-980 (C.C.P.A. 1979) ("[T]he conception and reduction to practice which must be established under the rule need not be the same as what is required in the interference sense of those terms.") (internal quotations and citations omitted); *In re Moore*, 444 F.2d 572, 578-80 (C.C.P.A. 1971) ("[I]t should be clear that . . . the conception and reduction to practice which must be established under the rule need not be the same as what is required in the interference sense of those terms.").

[15] CGI Memo at 17, 19.

August 29, September 6, and November 1) on which there is **any** evidence that **any** work was done on Skoultchi's application. This leaves **fifty-five** days (from September 6 to November 1) during which there is absolutely **no** evidence that Skoultchi or anyone else did **anything** related to the preparation or filing of his application. One need only look at CGI's diagram entitled "Timeline of Significant Events: Diligence: August to November, 1989" in Appendix B attached to CGI's Memorandum to confirm this.

What CGI fails to include in its Timeline, and fails to disclose to this Court, is that after Mr. Rowland prepared the first draft the application and sent it to Skoultchi on September 6, Skoultchi (along with another CGI co-founder, Dr. Kucherlapati) made changes to the draft, but, other than that, let it sit idle for **seven weeks** (until November 1).[16] The lack of any evidence of diligence during this fifty-five day period is fatal to CGI's motion.[17]

---

[16] *See* CGI "Record," Court Docket No. 129-30 (Transcript of Deposition of Arthur Skoultchi at pp. 140-148) and Court Docket No. 129-33 (Transcript of Deposition of Raju Kucherlapati at pp. 129 and 144). CGI failed to point to any specific activities that Skoultchi or Rowland were otherwise engaged in that might excuse this delay. CGI simply argues that Rowland "received those comments back from Skoultchi by November 1, 1989, and rapidly amended and prepared the final version." CGI Memo at 18. Such conclusory assertions of diligence are insufficient to meet CGI's burden as a matter of law.

[17] CGI says that taking three months to prepare and file a patent application is "per se, diligent." CGI Memo at 17-18. CGI is dead wrong; courts have held that applicants failed to exercise diligence where there were periods of unexplained delay as brief as **two days**. *See, e.g., In re Mulder*, 716 F.2d 1542, 1545 (Fed. Cir. 1983) ("two-day period"); *Ireland v. Smith*, 97 F.2d 95, 99-100 (C.C.P.A. 1938) ("from immediately prior to May 6, 1930 . . . until May 31, 1930"); *Ex parte Huetter*, 62 U.S.P.Q.2d 1553, 1563-64 (Bd. Pat. App. & Interf. 2001) ("from a date prior to 2 September 1993 until . . . 4 October 1993"); *Hull v. Davenport*, 90 F.2d 103, 104-06 (C.C.P.A. 1937) (five weeks); *Brown v. Barton*, 102 F.2d 193, 196-99 (C.C.P.A. 1939) ("a little over five weeks"); *In re Nelson*, 420 F.2d 1079, 1080-81 (C.C.P.A. 1970) (a "two-month period"). Nor did the cases that CGI cites acknowledge or apply such a *per se* rule. In *Rines v. Morgan*, 250 F.2d 365, 366-69 (C.C.P.A. 1957), the applicant presented extensive evidence of specific acts of diligence on specific dates during the critical period (which CGI failed to do), and the court noted that "[t]he question as to whether an inventor has exercised reasonable diligence is one which must be determined by the particular circumstances of each individual case." And in *Shindelar v. Holdeman*, 628 F.2d 1337, 1341-42 (C.C.P.A. 1980), diligence was not even at issue (the issue was whether the purported inventor "suppressed" his invention), and the court

In similar circumstances, where patent applicants have relied on allegations of diligence without pointing to sufficient supporting evidence, the courts have held that the applicants have not met their burden under Rule 131. For example, in *In re Harry*, the applicant summarized the types of activity on which it relied, but failed to point to specific acts showing diligence. The court affirmed the Board's finding that the applicant's showing was inadequate:

> [Applicant's] affidavit says 'steps were taken to reduce the invention to practice in a commercial size unit by engineering preparation of drawings, cost estimates and both construction and installation of apparatus embodying the invention was done as promptly as possible in all the circumstances.' This is not proof or 'showing of facts' but mere pleading. It asserts that facts exist but does not tell what they are or when they occurred. The Patent Office must have such facts as will enable it and its reviewing courts to judge whether there was construction and when it occurred, or whether there was diligence. The affidavits were properly rejected for non-compliance with the rule and all of the references are available. [18]

Similarly, in *In re Nelson*, where the applicant alleged that he "never abandoned [the invention] during the period [in which he needed to show diligence] and that the invention was diligently pursued by him all that time," and the "exhibits show[ed] a steady interest on the part of various officers of applicant's employer and assignee" in the invention, the court affirmed the Board's finding that an unexplained two-month delay defeated the applicant's claim of diligence:

> Neither the affidavits nor the supporting exhibits indicate what was happening with respect to perphenazine during this period from December to February. While constant effort is not required, the record before us does not give any reason whatever to explain the delay, and we will not speculate on possible explanations. The evidence is insufficient to show even a tentative consideration of perphenazine during the two-month period. For these reasons, we cannot say that the board erred in finding an insufficient showing of reasonable diligence. [19]

---

merely noted in passing that, hypothetically, "a period of approximately three months could *possibly* be excused during the twenty-nine month delay . . . ." (emphasis added).

[18] *In re Harry*, 333 F.2d 920, 922 (C.C.P.A. 1964) (Rich, J.).

[19] *In re Nelson*, 420 F.2d at 1080-81. *See also In re DeBaun*, 687 F.2d 459, 462 (C.C. P.A. 1982) ("We also agree that the declarations herein are insufficient under Rule 131 as they fail to allege facts showing the necessary diligence and/or reduction to practice of the invention now

## 2. No other activity provided the missing diligence

CGI says that while Rowland was diligent, CGI employees were simultaneously "exercising corporate diligence as well."[20] CGI's argument that it exercised "corporate diligence" fails because it did not prove *what* was done, *when* it was done, or that whatever was done was related to Skoultchi's reduction to practice.

In support of "corporate diligence," CGI cites only two documents (dated September 8, 1989 and September 20, 1989, respectively) and three pages of Mr. Levin's testimony. None of these support CGI's argument. CGI *says* that in the September 8 document, the "importance of Skoultchi's invention, and the patent application directed thereto, were stressed."[21] This document, however, nowhere mentions anything resembling Skoultchi's claimed methods or his "invention." Under the heading "Filed two patents and three more in progress," it simply lists "universal donor," "monoclonal," and "protein" as "being filed." It does not describe any acts of "corporate diligence."[22] CGI *says* the September 20 document "reflected the company's refocusing on Skoultchi's invention as the *first* of three major projects to lead the company."[23] But CGI failed to explain how this document shows any such "refocusing," what events constituted that "refocusing," or when any such events occurred. And Levin's testimony does not

---

claimed."); *Gould v. Schawlow*, 363 F.2d 908, 918 (C.C.P.A. 1966) ("In our view, Gould's testimony taken as a whole does not set forth adequate facts to support a finding of that continuity of activity which constitutes reasonable diligence. Merely stating that there were no weeks or months that he 'did not work on the laser' is not enough, absent supporting facts showing specifically what that 'work' consisted of and when it was performed.").

[20] CGI Memo at 19-20.

[21] CGI Memo at 19.

[22] *See* CGI "Record," Court Docket No. 129-3 (at CGI 15906-25).

[23] CGI Memo at 19 (emphasis in original).

provide the missing facts. CGI pointed to Levin's testimony that there was a "continuum" of activity related to "Skoultchi's invention," but such conclusory statements do not suffice.[24]

Even if CGI had pointed to evidence of specific acts of "corporate diligence" on specific dates, it still had to prove that such acts were done in support of Skoultchi's reduction to practice (as opposed to merely raising corporate funds or investigating marketable applications of the technology).[25] But CGI failed to show that its purported "corporate diligence" was in any way related to Skoultchi's reduction to practice.[26]

In sum, CGI failed to meet its burden of proving that Skoultchi was continuously diligent between August 28 and November 6, 1989. This Court should therefore deny CGI's request for judgment that claims 107-109 are patentable over "Japan."

### D.    Skoultchi did not conceive the specific methods recited in claims 107-109

Because CGI cannot prove that "Japan" is not a statutory bar under § 102(b), or that

---

[24] CGI Memo at 20. And contrary to what CGI says, Levin did not testify that "the Company was looking for lab space in 1989 – 1990." *See* CGI "Record," Court Docket No. 129-28 (Transcript of Deposition of Mark Levin at pp. 147, 150).

[25] *See Griffith*, 816 F.2d at 627 (affirming Board's finding that party failed to show reasonable diligence in a priority contest) ("Delays in reduction to practice caused by an inventor's efforts to refine an invention to the most marketable and profitable form have not been accepted as sufficient excuses for inactivity."); *Fitzgerald v. Arbib*, 268 F.2d 763, 766 (C.C.P.A. 1959) (testimony by inventor that "during [the critical] period he made an investigation as to how the design might be manufactured for commercial use" "cannot establish reasonable diligence during the critical period.").

[26] CGI cites *Scott v. Koyama*, 281 F.3d 1243, 1247-48 (Fed. Cir. 2002) for the proposition that "[a] company's activities in preparing to practice the inventive process in the United States (facilities and workers) serve as evidence of diligence." CGI Memo at 19. *Scott* does not support CGI's argument. In the priority contest before the Board in *Scott*, a party "presented evidence of daily activity during [a] seventeen-day period, all activity for the purpose of building a manufacturing plant to practice the process of the count." *Scott*, 281 F.3d at 1247. CGI, on the other hand, did not offer any evidence of *what* or *when* any possible acts of "corporate diligence" might have occurred, or that its "corporate diligence" was anything other than "pure money-raising activity that is entirely unrelated to the practice of the process." *See id.* at 1248.

Skoultchi's November 6, 1989 patent application constituted a constructive reduction to practice, or that Skoultchi was diligent during the critical period, this Court need not even consider CGI's arguments regarding conception. However, if the Court reaches that issue, the documents upon which CGI relies show that while Skoultchi may have had some idea regarding protein production by August 29, 1989, Skoultchi did not conceive the specific methods of claims 107-109 prior to that date.

1. **CGI had to prove that Skoultchi conceived at least as much of his claimed methods as "Japan" disclosed**

CGI says it can prove prior conception by showing Skoultchi's "possession of … a species or embodiment within the invention such that the claim as a whole reads on it," or by showing "possession of the basic inventive concept."[27] But contrary to CGI's arguments, it is not sufficient for CGI to show that Skoultchi conceived only *part* of what his claims encompass; rather, CGI had to prove that Skoultchi conceived as much of his claimed methods as "Japan" disclosed,[28] or that one of ordinary skill in 1989 would have viewed whatever method Skoultchi conceived as rendering the specific method disclosed in "Japan" obvious.[29]

---

[27] CGI Memo at 5. CGI cites *In re Spiller*, 500 F.2d 1170 (C.C.P.A. 1974), to support this proposition, but *Spiller* did not hold that one can antedate a reference merely by showing conception of an idea similar to that disclosed in the reference. Rather, "possession of what is shown carries with it possession of variations and adaptations which would, at the same time, be obvious to one skilled in the art." *Id*. at 1178. Thus, if one cannot show conception of exactly what the reference disclosed (and what is claimed) one must show conception of something that one of ordinary skill would recognize as rendering obvious that which the reference disclosed (and is claimed). As explained *infra*, CGI has failed to show either.

[28] *In re Tanczyn*, 347 F.2d 830, 833 (C.C.P.A. 1965) ("The primary consideration is whether, *in addition to showing what the reference shows*, the affidavit also establishes possession of either the whole invention claimed or something falling within the claims, in the sense that the claim as a whole reads on it.") (emphasis added).

[29] CGI cites *In re Wakefield*, 422 F.2d 897 (C.C.P.A. 1970) for the proposition that "[i]dentity between the claimed invention and the showing of prior possession is not required. A showing of the conception commensurate with the extent of the invention as claimed is sufficient." CGI

To answer these questions, the Court must first address the question of just what "Japan" disclosed, yet CGI failed to even mention this issue in its Memorandum. "Japan" discussed inserting a DNA "regulatory sequence" into the genome of bacteria in proximity to a gene that is already being "expressed" in that cell, so as to place the gene under the control of the regulatory sequence and thereby modify its expression in that cell.[30] Significantly, "Japan" did not discuss inserting an "amplifiable gene" into any cell, nor did it discuss putting any gene from a first cell into a second cell and expressing the gene in that second cell.[31]

### 2. Skoultchi did not conceive a method of expressing a gene in a primary cell

Dr. Skoultchi did not conceive the method of "causing a mammalian cell to express [or to "increase the level of expression of"] a gene *of that cell's genome* . . . whereby expression of said gene *in said cell* is caused to occur," as each of claims 107-109 require, prior to August 29, 1989.[32] CGI did not explain how the documents on which it relies to show conception[33] establish

---

Memo, at 13. That is not what *Wakefield* held. Rather, *Wakefield* said "antedating affidavits must contain facts showing a completion of the invention *commensurate with the extent the invention is shown in the reference*, whether or not it be a showing of the identical disclosure of the reference." *Id*. at 901 (emphasis added). On that basis, some claimed inventions were patentable ("With regard to the recited elements of these claims, we believe appellants have shown as much as [the prior art reference] shows."), and other claimed inventions were not ("[T]he examiner was correct in his view that [the prior art reference] discloses a substantially gel-free product. Since appellants' affidavits do not show their possession of such a product prior to [the date of the prior art reference], we must affirm the board's decision as to [unpatentability].". *Id*. at 902.

[30] *See* Decision at 74-79 (submitted herewith as Exh. B to Nielsen Decl.).

[31] *See id*. CGI implies that ARS's request to reverse the Board's decision regarding the application of "Japan" to ARS's claims somehow supports CGI's motion for judgment. *See* CGI Memo at 1 ("Both parties assign as error the Board's application of Japan to their respective claims."). It does not. ARS's disagreement with the Board's decision regarding its own claims is wholly unrelated to any issue in CGI's current motions.

[32] *See* "Appendix" A to CGI Memo at A-1 (emphases added).

[33] Because CGI relies on inadmissible hearsay in those documents, ARS is concurrently filing a

that Skoultchi conceived a method of inserting DNA into the genome of a first cell so as to cause expression *in that first cell* of a gene already in that first cell's genome (as opposed to transplanting such a gene into a second cell and expressing the gene in that second cell, which is a wholly different, and unclaimed, method). Because CGI failed to prove this, it failed to prove that Skoultchi conceived the specific methods recited in claims 107-109.

### a. The documents dated February 15 and April 26, 1989 are not evidence of conception

In support of its conception argument, CGI relied on two pages from Skoultchi's personal notebook, dated February 15 and April 26, 1989, respectively. But these pages say nothing about causing gene expression in a primary cell. Indeed, the February 15 page says the opposite: "After develop [*sic*] of human cell line transfer portion of chromosome to CHO etc."[34] Modifying the DNA in a first "human cell line," then transferring that DNA to a second cell (a "CHO" hamster cell) where it is to be expressed, is not the method recited in claims 107-109. Consequently, these pages do not support Skoultchi's conception of the methods recited in claims 107-109.

### b. The July 10, 1989 document is not evidence of conception

CGI attached significant weight to a document dated July 10, 1989.[35] This document, however, only says "Scientific plan for Art's idea," and "Art to meet with Rowland." This document is not evidence that Skoultchi conceived the methods recited in claims 107-109.

### c. The July 24, 1989 document is not evidence of conception

CGI *said* that a document dated July 24, 1989 "inarguably sets forth each element of the subject matter of claims 107-109," but CGI failed to explain where or how the document

---

motion *in limine* to exclude those documents.

[34] *See* CGI "Record," Court Docket No. 129-2 (at CGI 4004).

[35] *See* CGI Memo at 8 and 10-11; *see* CGI "Record," Court Docket No. 29-3 (at CGI 1852-53).

discloses each of those elements.[36] While the document mentions the possibility that genes might be expressed in a primary cell (*see* CGI 3651), it does so only in the context of pointing out that genes should be expressed in secondary cells. The document focuses on the "disadvantages" and "problems" associated with gene expression in a primary cell, and says that "all of these problems" would be solved by using a secondary cell for expression.[37] The section of the document entitled "Outline of Experimental Steps" also shows that Skoultchi's idea was to use a "secondary recipient" cell for gene expression; it describes "preparation of primary recipients" in which an amplifiable gene is introduced into the genome of human cells, followed by "preparation of secondary recipients," in which DNA "from a primary recipient cell strain which has appropriate integration of the amplification vector . . . is introduced into CHO [hamster] cells [a "secondary recipient" cell] . . . ."[38]

This document (along with other evidence) thus shows that whoever authored the document did not have a "settled" or "definite and permanent idea" of using a primary cell in the methods recited in claims 107-09, which is what CGI bore the burden to prove.[39] Moreover, the testimony of another CGI witness, Dr. Kucherlapati, confirms that Skoultchi could not have conceived a method of gene expression in primary cells; when asked about this document, Kucherlapati said that in 1989 one simply did not know whether gene expression would take

---

[36] *See* CGI Memo at 12-13.

[37] *See* CGI "Record," Court Docket No. 129-3 (at CGI 3652).

[38] *See* CGI "Record," Court Docket No. 129-5 (at CGI 3653-54).

[39] *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1063 (Fed. Cir. 2005) ("An idea is sufficiently definite and permanent for conception if it provides one skilled in the art with enough guidance to understand the invention, that is, when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue.").

place in primary cells.[40]

**d.**     **The July 24-25, 1989 document is not evidence of conception**

CGI relied on a document dated July 24-25, 1989,[41] but failed to explain how this document proves that Skoultchi conceived any method of causing gene expression to occur in a primary cell. ARS does not dispute that CGI's scientific advisory board probably met in late July of 1989, or that Skoultchi probably had some idea relating to protein production at that time. However, CGI's argument that this document "discloses . . . each and every element of the invention of Claims 107-109" is simply that: attorney argument. It is not evidence. The Board found that this document is ambiguous regarding the method discussed, and in its Memorandum, CGI did not point to any testimony by any witness indicating what, if anything, this document would actually disclose to one of ordinary skill about the methods of claims 107-109. The diagram in this document says "transfer into CHO (Chinese Hamster Ovary) cells"; thus, it is not evidence that Skoultchi disclosed a method for causing gene expression to occur in a primary cell during the July 1989 meeting.

**e.**     **The August 26, 1989 document is not evidence of conception**

CGI relied on a document dated August 26, 1989, but failed to explain how it shows that Skoultchi conceived a method of causing gene expression to occur in a primary cell.[42] In fact, the document says nothing about a method for causing gene expression in a primary cell. Instead, it says "[c]ells demonstrating integration of the vector in sites flanking the target gene ***are then used as a source of genetic material for preparation of secondary recipients***" and the target

---

[40] *See* CGI "Record," Court Docket No. 129-33 (Transcript of Deposition of Raju Kucherlapati at p. 93).

[41] *See* CGI "Record," Court Docket No. 129-5 (at CGI 3224-34).

[42] *See* CGI Memo at 14; *see also* CGI "Record," Court Docket No. 129-10 (at CGI 3289).

gene and inserted amplifiable gene are then "introduced into CHO cells by calcium phosphate mediated gene transfer," then these secondary cells are "grown and selected for production of the human protein of interest."[43]

### f.      The August 29, 1989 document is not evidence of conception

CGI relied on a document bearing a date of August 29, 1989 that appears to be a draft of the patent application filed on November 6, 1989.[44] However, this document says nothing about expressing genes in a primary cell; it says expression takes place in an "expression host," *i.e.*, a secondary cell.[45]

### 3.      Skoultchi did not conceive a method involving insertion of only a regulatory sequence

Claims 107-109 specifically require inserting into the genome of a cell a "construct comprising **at least one of** an amplifiable gene, other regulatory sequence, **or** both . . . ."[46] As noted above, CGI bore the burden to prove that Skoultchi conceived so much of his claimed methods as "Japan" disclosed. "Japan" disclosed inserting a "regulatory sequence" into the genome of a cell (as opposed to inserting an "amplifiable gene" into the genome of a cell). CGI failed to prove that Skoultchi conceived at least as much as "Japan" disclosed, because the evidence indicates Skoultchi's only idea was to insert an amplifiable gene, not a regulatory sequence. That is not sufficient to antedate "Japan" under Rule 131.

---

[43] *See* CGI "Record," Court Docket No. 129-10 (at CGI 3291) (emphasis added).

[44] *See* CGI "Record," Court Docket No. 129-12 (at Court Docket page 12 of 18).

[45] *Id*. ("An amplifying gene is introduced by homologous recombination in juxtaposition to a target gene, the resulting combination of amplifying gene and target gene transferred to a convenient host and the target gene amplified by means of the amplifying gene. The resulting expression host may then be grown in culture with enhanced expression of the target gene.")

[46] "Appendix" A to CGI Memo at A-1 (emphases added).

CGI said "a genus is claimed" in claims 107-109, but failed to explain what that genus is, or what "species" are within that genus. *See* CGI Memo at 5. Even if the language in claims 107-109 reciting a "construct comprising at least one of an amplifiable gene, other regulatory sequence, or both . . ." refers to a genus, CGI still bore the burden of proving (i) conception of the ***same*** species disclosed in "Japan," *i.e.*, insertion of a "regulatory sequence," or (ii) conception of a ***different*** species (*i.e.*, an amplifiable gene"), combined with evidence proving that the species disclosed in "Japan" (insertion of a regulatory sequence) would have been obvious over the species Skoultchi allegedly conceived (insertion of an amplifiable gene).[47]

CGI never acknowledged or addressed this point in its Memorandum, and it certainly did not provide the Court with any evidence establishing that one of ordinary skill in 1989 would have recognized amplifiable genes and regulatory sequences as species of the same genus, or that one of ordinary skill in 1989 would have considered inserting a regulatory sequence to be obvious in view of inserting an amplifiable gene. Because it provided no such evidence, CGI instead had to prove that Skoultchi conceived what "Japan" disclosed – insertion of a regulatory sequence – before August 29, 1989.

None of the documents or testimony on which CGI relied to support Skoultchi's conception show that he ever thought of inserting only a regulatory sequence to alter expression in a primary cell, or that one of ordinary skill in 1989 would have viewed inserting a regulatory sequence as obvious in view of inserting an amplifiable gene. All of the documents CGI relied on either say nothing at all about the nature of the inserted DNA, or refer only to inserting an

---

[47] *See In re Schaub*, 537 F.2d 509, 512 (C.C.P.A. 1976) ("When that species of the generic invention which has been completed prior to the effective date of the reference would make obvious to one of ordinary skill in the art the species disclosed in the reference, the reference may be said to have been 'indirectly antedated.'").

amplifiable gene.[48] That does not prove Skoultchi conceived inserting only a regulatory sequence

to alter expression in a primary cell, the method encompassed by his claims. [49]

---

[48] The document dated February 15 refers only to a "DHFR" gene (which is an amplifiable gene) (*see* CGI "Record," Court Docket No. 129-2, at CGI 4004), and the document dated July 10 says nothing about an amplifiable gene or a regulatory sequence (*see* CGI "Record," Court Docket No. 129-9, at CGI 1852-53). CGI incorrectly says that Levin testified that the July 10 document referred to "Skoultchi's idea to modify cells to express significant amounts of therapeutic proteins by inserting, through homologous recombination, regulatory sequences and/or amplifiable genes in a construct targeted to the gene encoding the therapeutic protein." CGI Memo at 11. However, in his deposition, Levin did not say that; he said only that the document referred to "Art's idea of expressing proteins; putting proteins in the bottle using homologous recombination." *See* CGI "Record," Court Docket No. 129-20 (Transcript of Deposition of Mark Levin at pp. 90-91). The document dated July 24 discusses only "amplification" of a "marker gene" or "amplifiable gene." *See also* CGI "Record," Court Docket No. 129-5, at CGI 3651-2. The document dated July 25 refers only to a "DHFR[mut]" gene (a mutant DHFR gene) and to "amplification of DHFR" in "CHO cells." *See* CGI "Record," Court Docket No. 129-6, at CGI 3231. CGI suggests that the Board found that the July 25 document described insertion of either a regulatory sequence or an amplifiable gene into the genome of a cell. *See* CGI Memo at 2. The Board found no such thing; rather, it observed that the document referred to inserting a "mutant DHFR sequence." *See* Decision at 103 (relevant pages submitted herewith as Exhibit B to Nielsen Decl.). The document dated August 26 refers only to an "amplification vector." *See* CGI "Record," Court Docket No. 129-10, at CGI 3291. Finally, the document dated August 29 discusses only the use of an "amplifying gene." *See* CGI "Record," Court Docket No. 129-11 (Court Docket page 10 of 17) to 129-12 (Court Docket page 12 of 18).

[49] *See, e.g., In re Borkowski*, 505 F.2d 713, 718 (C.C.P.A. 1974) ("We find ourselves in agreement with the board's decision to the extent that it held the proofs submitted under Rule 131 'taken as a whole' to be unconvincing. The original and supplemental affidavits together with the accompanying comments do not adequately explain what facts or data appellants are relying upon to show a completion of their invention prior to April 13, 1961. The affidavits for the most part consist of vague and general statements in the broadest terms as to what the exhibits show along with the assertion that the exhibits describe a reduction to practice. This amounts essentially to mere pleading, unsupported by proof or showing of facts."); *In re Noxon*, 210 F.2d 835, 840 (C.C.P.A. 1954) ("It is entirely clear that a proper showing of conception under Rule 131, supra, requires proof of the most convincing character. That proof cannot be supplied by speculative analysis tending to enlarge upon a normal and reasonable interpretation of the contents of the exhibits.").

### 4. CGI admitted to the Patent Office that Skoultchi's "invention" excluded gene expression in a primary cell, and that it required an amplifiable gene

CGI cannot reconcile its current arguments regarding the scope of "Skoultchi's invention" with its earlier admissions to the Patent Office. For example, in response to a rejection over prior art, CGI said that the "subject invention" excluded expression in a "native host" (*i.e.*, a primary cell):

> [I]n accordance with the subject invention, one provides for the transfer from the natural host, which is not likely to be a convenient expression host, to an expression host of known characteristics, which allows for efficient expression of the desired product. Thus, ***it follows naturally from the subject invention, that one would not use the native host for expression***.[50]

CGI also told the Patent Office that Skoultchi's "invention" comprised insertion of an "amplifiable gene," and again that the expression takes place in an "expression host" (secondary cell):

> ***In the present invention, a construct comprising the amplifiable gene*** and a portion of the target gene is used to transfect human cells. Therefore, in the first step of the subject invention, one is not transfecting the host with the gene for expression, but rather the human target host for targeting the desired gene. . . . ***[I]n the* [second step of the] *subject invention, the human genomic DNA is now transformed into the expression host***. Therefore, it is not merely a matter of using primary and secondary transfectants, but rather two different steps, where the steps are totally different as to manner and purpose.[51]

## III. CONCLUSION

For the foregoing reasons, ARS respectfully requests that the Court deny CGI's motion to reverse the Board's decision that claims 107-109 are unpatentable over "Japan."

---

[50] U.S. Patent Application Serial No. 07/432,069, "Response under 37 C.F.R. § 1.116" dated September 18, 1991, at 4 (emphasis added) (relevant pages submitted herewith as Exhibit C to Nielsen Decl.).

[51] U.S. Patent Application Serial No. 07/432,069, "Response" dated May 1, 1991, at 6 (emphasis added) (relevant pages submitted herewith as Exhibit D to Nielsen Decl.).

Dated: October 31, 2006     Respectfully submitted,


By: /s/ Kevin M. Flowers
Fred A. Kelly, Jr. (BBO # 544046)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Tel: 617-345-1000
Fax: 617-345-1300

Kevin M. Flowers (*pro hac vice*)
Matthew C. Nielsen (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 S. Wacker Drive
Chicago, IL  60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448

Counsel For Plaintiff APPLIED RESEARCH
SYSTEMS ARS HOLDING, N.V.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **ARS OPPOSITION TO CGI'S MOTION TO REVERSE THE BOARD'S DECISION THAT CGI CLAIMS 107-109 ARE UNPATENTABLE OVER "JAPAN," DECLARATION OF MATTHEW C. NIELSEN** in support and all exhibits cited therein are being filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 31, 2006. Additionally, two courtesy copies are being dispatched via UPS for next business day delivery to the Court.

/s/ Kevin M. Flowers
Counsel For Plaintiff APPLIED RESEARCH
SYSTEMS ARS HOLDING, N.V.