**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CELL GENESYS, INC., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-12448-MLW |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-11810-MLW |
| | ) | |
| CELL GENESYS, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant, and | ) | |
| | ) | |
| TRANSKARYOTIC THERAPIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ARS OPPOSITION TO CGI'S MOTION TO REVERSE THE BOARD'S DECISION**
**THAT THERE IS NO INTERFERENCE-IN-FACT**

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT ........................................................................................................ 2

    A.  The applicable legal standards ................................................................... 2

        1.  How does the Patent Office determine whether claims "interfere"? ......................... 2

        2.  Not all claims involved in an interference necessarily interfere ................................ 4

        3.  How should this Court review the Board's decision? ................................................. 4

    B.  The Board's decision finding no interference-in-fact ....................................... 5

    C.  CGI's request to reverse the Board's determination of no interference-in-fact ............... 5

    D.  The claims at issue ..................................................................................... 6

        1.  Claim 24 in ARS's '071 patent .................................................................. 6

            a.  CGI misrepresents Claim 24 ............................................................. 8

        2.  Claim 106 ............................................................................................. 9

    E.  Claim 106 and Claim 24 do not anticipate one another ................................... 10

        1.  Claim 106 does not anticipate Claim 24 ................................................... 10

        2.  Claim 24 does not anticipate Claim 106 ................................................... 10

    F.  Claims 24 and 106 do not render each other obvious ..................................... 11

        1.  The law governing obviousness ............................................................... 11

        2.  The Board's decision was supported by findings ....................................... 12

        3.  CGI failed to establish that Claim 24 renders Claim 106 obvious ............... 13

        4.  CGI failed to establish that the combination of Claim 106 with the prior art renders Claim 24 obvious ................................................................. 13

            a.  Scope and content of the prior art ..................................................... 14

            b.  Differences between Claim 106 treated as prior art and the invention of Claim 24 ............................................................... 15

     c.   CGI did not establish that one of ordinary skill would have been motivated to combine Claim 106 with the prior art to produce the cell line of Claim 24 ................................................................ 15

         (i)  CGI's reliance on Dr. Tlsty's testimony is misplaced ................................ 17

     d.   Objective indicia of non-obviousness ................................................ 18

  5.  CGI failed to address the claimed inventions as a whole ........................................ 18

  6.  Reasonable expectation of success .......................................................... 19

III.   CONCLUSION ...................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Eli Lilly & Co. v. Board of Regents of Univ. of Washington*,
334 F.3d 1264 (Fed. Cir. 2003).............................................................................................3

*Graham v. John Deere Co.*,
383 U.S. 1 (1966)...............................................................................................................11

*In re Dembiczak*,
175 F.3d 994 (Fed. Cir. 1999)............................................................................................11

*In re Deuel*,
51 F.3d 1552 (Fed. Cir. 1995)......................................................................................12, 16

*In re Fridolph*,
30 C.C.P.A. 939 (1943) .....................................................................................................11

*In re Gartside*,
203 F.3d 1305 (Fed. Cir. 2000)......................................................................................4, 12

*In re Kahn*,
441 F.3d 977 (Fed. Cir. 2006).......................................................................................11, 12

*In re Petering*,
301 F.2d 676 (C.C.P.A. 1962) ...........................................................................................11

*In re Rouffet*,
149 F.3d 1350 (Fed. Cir. 1998).....................................................................................11, 16

*Mazzari v. Rogan*,
323 F.3d 1000 (Fed. Cir. 2003)...........................................................................................4

*Medichem, S.A. v. Rolabo, S.L.*,
437 F.3d 1157 (Fed. Cir. 2006).......................................................................................3, 12

*Minn. Mining & Mfg. Co v Johnson & Johnson Orthopaedics, Inc.*,
976 F.2d 1559 (Fed. Cir. 1992)..........................................................................................10

*Ruiz v. A.B. Chance Co.*,
234 F.3d 654 (Fed. Cir. 2000)............................................................................................11

*Winner International Royalty Corp. v. Wang*,
202 F.3d 1340 (Fed. Cir. 2000).......................................................................................4, 12

*Winter v. Fujita*,
    53 U.S.P.Q.2d 1234 (Bd. Pat. App. & Interf. 1999) ..............................................3, 13, 14

## Statutes

5 U.S.C. § 706 ........................................................................................................................4

35 U.S.C. § 102 ......................................................................................................................3

35 U.S.C. § 103 ......................................................................................................................3

35 U.S.C. § 146 ......................................................................................................................4

## Rules

Fed. R. Civ. P. 26 ..................................................................................................................2

Fed. R. Civ. P. 37 ..................................................................................................................2

37 C.F.R. § 1.601 ...............................................................................................................2, 3

## I.    INTRODUCTION

In its Complaint in Case No. 05-12448,[1] CGI asked this Court to reverse that part of the Decision[2] in which the Board held that CGI's sole patentable claim, Claim 106, did not interfere with any of the twenty-one patentable claims in the '071 patent. Consistent with its Complaint, CGI now moves this Court to vacate the Board's determination that CGI's claim 106 does not interfere with ARS's patentable claim 24.

CGI admits that to find that Claim 106 interferes with Claim 24, this Court must apply a "two-way" test to those claims. Under that test, CGI bore the burden of proving that Claim 106 anticipates or renders Claim 24 obvious in view of the prior art, **and** that Claim 24 anticipates or renders Claim 106 obvious. It was not sufficient for CGI to show that "one way" is satisfied; to meet its burden of proving the existence of an interference-in-fact, CGI had to satisfy the test **both** ways.

CGI failed to satisfy either part of the two-way test. The most obvious (and dispositive) shortcoming is that CGI barely discusses, and therefore fails to prove, that Claim 24 either anticipates or renders Claim 106 obvious. Instead, CGI devotes nearly all of its discussion only to whether Claim 106 renders Claim 24 obvious. The Court can deny CGI's motion on this basis alone.

Moreover, CGI's "one way" analysis failed, because CGI misrepresented the limitations of Claim 24 to exclude an expressly recited element (namely, that the required DNA construct "additionally comprises" at least one "selectable marker gene" in addition to the "amplifiable

---

[1] Docket No. 1, Complaint, at p. 8, subheading "E."

[2] A copy of the complete Decision was attached to CGI's Complaint (Docket No. 1, Exhibit A). The relevant pages of the Decision, including the Board's discussion of interference-in-fact, is submitted herewith as Exhibit B to Declaration of Matthew C. Nielsen.

gene" required by the claim). As a result, CGI never fully addressed, and thus did not carry its burden to prove, that Claim 106 anticipates or renders Claim 24 obvious.

The new documents and potential new testimony of Dr. Tlsty on which CGI seeks to rely cannot save its motion. CGI did not put those documents before the Board in the '114 Interference, and never produced or gave notice of them to ARS during discovery in this case. Consequently, the Court should disregard those documents pursuant to Fed. R. Civ. P. 37(c)(1). And the testimony which CGI suggests it would elicit from Dr. Tlsty would violate Fed. R. Civ. P. 26(a)(2), because it would be beyond the scope of her Rule 26(a)(2) expert report (which limits any testimony she can give in this case). In that Rule 26(a)(2) report, Dr. Tlsty did not say *one word* about the issue of whether Claim 106 interferes with Claim 24 (or any of ARS's other claims). Indeed, her Rule 26(a)(2) report indicates that she never reviewed the Board's Decision, never discussed Claim 24, never reviewed Claim 106 (or any other CGI claim), never reviewed any part of CGI's '390 application, and never reviewed any of the documents about which CGI now asks that she be allowed to provide expert testimony.

For all of these reasons, this Court should deny CGI's motion.

## II.    ARGUMENT

### A.    The applicable legal standards

#### 1.    How does the Patent Office determine whether claims "interfere"?

In order for an interference to be declared (or maintained), the Patent Office requires the presence of an "interference-in-fact" between claims in two competing patent applications (or in a pending application and an issued patent, as here). Under 37 C.F.R. § 1.601(j), "[a]n interference-in-fact exists when at least one claim of a party that is designated to correspond to a count and at least one claim of an opponent that is designated to correspond to the count define the *same patentable invention*." (emphasis added).

2

The Board interprets § 1.601(j) to require application of the so-called "two-way test" of § 1.601(n) to determine whether two parties have claimed "the same patentable invention." *Winter v. Fujita*, 53 U.S.P.Q.2d 1234, 1243 (Bd. Pat. App. & Interf. 1999).[3] The applicability of this "two-way" test has been affirmed by the Federal Circuit. *See Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1161 (Fed. Cir. 2006); *Eli Lilly & Co. v. Board of Regents of Univ. of Washington*, 334 F.3d 1264, 1267-70 (Fed. Cir. 2003).

Under the two-way test, assuming the parties have claims "A" and "B," respectively, the following two conditions must ***both*** be satisfied for the claims to define the same patentable invention: (i) Claim "A" must be anticipated by, or obvious over, the disclosure of claim "B" in light of the prior art; ***and*** (ii) claim "B" must be anticipated by, or obvious over, the disclosure of claim "A" in light of the prior art.

If ***either*** of the foregoing two conditions are not satisfied, then claims "A" and "B" do ***not*** define the same patentable invention. If the claims do not define the same patentable invention, there is no interfering subject matter, and no interference-in-fact. *Id.*

Once the Patent Office identifies interfering claims, it drafts a "count" that describes and encompasses the interfering subject matter of those claims. *See* 37 C.F.R. § 41.201 (defining a "count"). The claims of each party that "correspond to" that count are then the subject of the parties' preliminary motions regarding patentability.

---

[3]  37 C.F.R. § 1.601(n) states that "[a]n invention 'A' is the same patentable invention as an invention 'B' when invention 'A' is the same as (35 U.S.C. 102) or is obvious (35 U.S.C. 103) in view of invention 'B' assuming invention 'B' is prior art with respect to invention "A". Invention "A" is a separate patentable invention with respect to invention "B" when invention "A" is new (35 U.S.C. 102) and non-obvious (35 U.S.C. 103) in view of invention "B" assuming invention "B" is prior art with respect to invention 'A'."

## 2.    Not all claims involved in an interference necessarily interfere

Two competing claims that would not satisfy the "two-way" test necessary to provoke an interference may still be included in the interference because they "correspond to" the count. This is because, unlike the rigorous "two-way" analysis required to initially identify interfering claims, only a "one-way" analysis is applied to determine if the claim "corresponds to" the count.[4] Thus, "[a] claim corresponds to a count if the subject matter of the count, treated as prior art to the claim, would have anticipated or rendered obvious the subject matter of the claim." 37 C.F.R. § 41.207(b)(2).

## 3.    How should this Court review the Board's decision?

In this action under 35 U.S.C. § 146, this Court reviews the Board's conclusions of law *de novo*. 5 U.S.C. § 706. For factual findings, where the parties have not presented the Court with any testimony beyond that presented to the Board during the '114 Interference, the Court only determines whether the Board's findings are supported by "substantial evidence." *Mazzari v. Rogan*, 323 F.3d 1000, 1005 (Fed. Cir. 2003) ("substantial evidence" standard applies in §145 proceeding where no additional evidence is provided); *see also In re Gartside*, 203 F.3d 1305, 1313-14 (Fed. Cir. 2000). Where the parties have presented new live testimony on an issue, the Court becomes a fact finder, and reviews the totality of evidence on the issue *de novo. Winner International Royalty Corp. v. Wang*, 202 F.3d 1340, 1347-48 (Fed. Cir. 2000).[5]

---

[4] For example, the species "an orange" would anticipate the genus "round objects." In the reverse direction, however, the genus "round objects" is broad enough (including planets, buttons and bowling balls) that the individual species of "an orange" would not be obvious. As a result, such claims would not interfere.

[5] In *Winner*, live testimony was presented on all issues. *Winner* at 1346. The Court expressly declined to address the issue of how to parse out the issues and corresponding standards of review where live testimony is presented on less than all issues. *Winner* at 1347 n. 4. The Court's rationale focused on the fact finder's unique ability to assess credibility of live witnesses. *Id.*

**B.     The Board's decision finding no interference-in-fact**

In its June 22, 2004 Decision on Preliminary Motions, the Board concluded that twenty-one of the claims in the '071 patent were patentable to ARS, but that only one claim in CGI's '390 application, Claim 106, was patentable to CGI. Having concluded that only one narrow claim remained for CGI, the Board properly revisited the question of whether an interference-in-fact remained between that lone claim and the remaining twenty-one claims in the '071 patent. It found that there was not, because the claims failed the required two-way test.[6]

**C.     CGI's request to reverse the Board's determination of no interference-in-fact**

On August 18, 2004, CGI filed a complaint in the District of Columbia seeking review of the Board's decision. In its Complaint, CGI specifically requested "a decision vacating the Board's finding of no interference-in-fact."[7]

On August 9, 2006, this Court ordered CGI to file, by September 30, 2006,[8] its memorandum and supporting evidence as to "whether the Board correctly held that there is no interference-in-fact between claim 106 in CGI's '390 application and the twenty-one claims of ARS's '071 patent that the Board found patentable." The Court also directed CGI to identify the

---

[6] Exhibit B to Nielsen Decl. at p. 2 ("Since no party's claims which remain patentable to it are directed to the same patentable invention as a claim patentable to the other party, there is no interference-in-fact, and this judgment of no interference-in-fact will be entered.").

[7] Docket 1 (Complaint) at p. 7, ¶ 23 and at p. 8 ("Prayer for Relief: WHEREFOR [*sic*], plaintiff CGI prays for a judgment: . . . E. Vacating the Board's determination of no interference-in-fact.").

[8] CGI filed its Memorandum and supporting evidence on October 2, 2006 -- two days after the September 30 deadline in the August 9 Order -- without seeking leave from this Court.

testimony that it would like to rely upon and to explain to the Court why such testimony was necessary.[9]

In its Memorandum, CGI contests the Board's finding of no interference-in-fact by arguing that its sole surviving Claim 106 interferes with ARS's Claim 24.

### D.    The claims at issue

#### 1.    Claim 24 in ARS's '071 patent

Claim 24 depends from Claim 23, which depends from Claim 22, which depends from Claim 18. Claim 18 is thus the independent claim from which Claim 24 ultimately depends.[10]

As the Board found,[11] Claim 18 is directed to "[a] cell line capable of expressing anew the expression product of a gene transcriptionally silent within the genome of the cell line, said cell line having inserted in its genome, a DNA regulatory segment operatively linked with said transcriptionally silent gene which promotes its expression." Claim 22 adds the further limitation that the "regulatory element" must be "capable of promoting the expression of a gene product normally expressed by the cell line." Claim 23 adds the further limitation that the inserted

---

[9] Although fact and expert discovery closed many months ago in Case No. 05-12448 (in which CGI is the plaintiff), CGI appears to contend that it is still somehow entitled to supplement its discovery in that case on an issue it raised in its own Complaint in August 2004 and on which it bears the burden of proof. Fact discovery in that action (*i.e.*, fact discovery relating to all of the issues raised in CGI's Complaint) commenced in the Summer of 2005 and continued into Spring 2006. During fact discovery, the action was transferred to this Court and given Case No. 05-12448. *See* Docket No. 82. CGI did not explain why it was unable to produce the documents and expert testimony from Dr. Tlsty which it now seeks to introduce during fact discovery in this case, or why it should be permitted to offer any additional documents and testimony at this late point in the case.

[10] Although CGI characterizes the dependent format of claim 24 as "awkward" (CGI Memorandum at pp. 7-8), it is entirely normal for claims to depend from one another *in seriatim*. "Awkward" or not, this does not excuse CGI's misrepresentation of the language of claim 24, discussed *infra.*

[11] Exhibit B to Nielsen Decl. at p. 27.

"regulatory element" must be "part of a DNA construct comprising" the regulatory element "and at least one selectable marker gene." Finally, claim 24 adds the further limitation that the inserted DNA construct "additionally comprises an amplifiable gene."[12]

Written out long-hand, incorporating *verbatim* all of the limitations of the three claims from which it depends, Claim 24 requires:

> A cell line capable of expressing a gene product by a predetermined normally transcriptionally silent gene within the genome of said cell line,
>
> said genome having inserted therein:
>
> a DNA regulatory segment operatively linked with said normally transcriptionally silent gene,
>
>> said DNA regulatory segment is one which is capable of promoting the expression of a gene product normally expressed by said cell line,
>
> wherein the inserted DNA regulatory segment is part of a DNA construct comprising:
>
>> [1] said DNA regulatory segment; and
>>
>> [2] at least one selectable marker gene; and
>
> wherein said DNA construct additionally comprises
>
>> [3] an amplifiable gene

Thus, Claim 24 is directed to a genus of cell lines that can express the product of a "predetermined" gene normally found in the cell but not normally transcribed.[13] The genome of the claimed cell line must contain a DNA construct that itself must contain three things: (1) "at least one" selectable marker gene, (2) an "amplifiable" gene, and (3) a DNA regulatory segment

---

[12] Claims 18, 22, 23 and 24 are reproduced herewith as Exhibit E to Nielsen Decl., where the limitations added by each dependent claim are emphasized in bold print.

[13] The Board recognized that the phrase "normally transcriptionally silent gene within the genome of a cell line" refers to an "endogenous" gene, *i.e.*, a gene that is normally found within the cell line. *See* Exhibit B to Nielsen Decl. at p. 51.

that is (i) capable of promoting the expression of a gene product normally expressed by the cell line and (ii) "operatively linked to" the "predetermined" gene.

### a.    CGI misrepresents Claim 24

CGI misrepresents the language and limitations of Claim 24 by asserting that the claim does not contain the limitations expressly recited in Claim 24 ("additionally" comprising an amplifiable gene) and in Claim 22 from which it depends ("normally expressed").

Contrary to CGI's assertions, Claim 24 does <u>not</u> recite a cell line where the "at least one selectable marker" of Claim 23 is the "amplifiable gene" of Claim 24.[14] The language of these claims makes it clear that the "selectable marker" and the "amplifiable gene" are separate elements. Nor did CGI show that a "selectable marker gene" is an "amplifiable gene." The specification of the '071 patent shows that it is not: it teaches that a "selectable marker" gene is one "which is capable of rendering the transfected cell line resistant to a normally toxic environment" (Exhibit F to Nielsen Decl. at column 10, lines 56-68), whereas an "amplifiable gene" is a gene that "leads to an increase in copy number when under selective pressure." *Id.* at col. 10, line 68 to col. 11, line 1.

As the '071 patent states, there is some overlap between selectable marker genes and amplifiable genes.[15] However, in attempting to equate a "selectable marker gene" and an "amplifiable gene" in Claim 24, CGI disingenuously takes a portion of this passage in the '071 patent out of context. The full passage actually teaches that when an amplifiable gene is used, it

---

[14] *See* CGI Memorandum at p. 8.

[15] '071 patent (submitted herewith as Exhibit F to Nielsen Decl.) at col. 11, lines 5-18 ("The members of the positive selectable marker gene group and those of the amplifiable gene group overlap so that, ***in theory***, instead of using two genes, one for positive selection and one for amplification, one gene could be used for both purposes.") (emphasis added).

is desirable to *additionally* include a positive selectable marker gene, precisely as claimed in

Claim 24:

> However, since most cell lines contain endogenous copies of these amplifiable
> genes, the cells will already be somewhat resistant to the selection conditions and
> distinguishing the cells which have transfected DNA from those which do not
> receive transfected DNA can be difficult. **Thus, in instances where an
> amplifiable gene is desired, a positive selection gene which is dominant, such
> as HPH, gpt, neo and tk (in tk-cells), should** *also* **be included in the construct**.

Exhibit F to Nielsen Decl. ('071 patent) at col. 11, lines 5-18 (emphasis added).

It is the claim language, not CGI's misrepresentations of that language, that controls, and

Claim 24 expressly recites a cell line not only containing a selectable marker gene, but

*additionally* containing an amplifiable gene. Due to its misrepresentation of Claim 24, CGI's

Memorandum never addressed the subject matter of Claim 24 as a whole, thereby invalidating its

analysis.

### 2.    Claim 106

Claim 106 is considerably narrower than Claim 24. Claim 106 simply recites:

> A human 293 embryonal kidney cell, wherein the genome of the cell has inserted
> therein an enhancer and promoter of cytomegalovirus operatively associated with
> the human erythropoietin gene, so that the cell expresses human erythropoietin.

Claim 106 thus recites a cell expressing human erythropoietin having five (5) distinct

characteristics:  (1) the recited cell is a human 293 embryonal kidney cell (an "HEK 293" cell);

(2) the cell's genome contains an "enhancer" from the "cytomegalovirus" virus ("CMV"); (3) the

cell's genome contains a CMV "promoter";[16] (4) the CMV promoter and enhancer are

"operatively associated" with the human erythropoietin gene; and (5) the cell expresses human

erythropoietin.

---

[16] Enhancers and promoters are examples of two types of regulatory elements. *See, e.g.*, Exhibit
F to Nielsen Decl. at Col. 24, lines 34-36 ("The DNA regulatory segment may be a promoter,
terminator, operator, enhancer, silencer, attenuator, or the like, or any combination thereof.").

### E.    Claim 106 and Claim 24 do not anticipate one another

In any context, anticipation of a claim requires that the prior-art reference (here, either Claim 106 or Claim 24, each treated as if it were prior art to the other) describes each and every element of the claimed invention, either expressly or inherently. *Minn. Mining & Mfg. Co. v Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir. 1992). Here, the Board found that the DNA construct recited in Claim 106 is patentably distinct from the construct recited in ARS's claims (including Claim 24), and *vice-versa*.[17]

### 1.    Claim 106 does not anticipate Claim 24

CGI admits that claim 106 does not recite each and every element of claim 24, and therefore does not anticipate claim 24 (CGI admits this even though it ignores express limitations of claim 24).[18] Indeed, Claim 106 does not recite either a selectable marker gene or an amplifiable gene.[19] Claim 106 merely describes a cell containing CMV sequences linked to the erythropoietin gene that also expresses human erythropoietin.

### 2.    Claim 24 does not anticipate Claim 106

Claim 24 does not anticipate Claim 106 because Claim 24 does not mention any of the specific elements recited in Claim 106 (*e.g.*, an HEK 293 cell, a CMV promoter or enhancer, or a

---

[17] Exhibit B to Nielsen Decl. (Decision) at p. 128 ("Not only is the specific DNA construct inserted into the genome of a human 293 cell of Genesys's Claim 106 patentably distinct in structure and function from any specific DNA construct described in ARS's patentable claims, but the DNA inserts in ARS's disclosure do not suggest enhancers and promoters of cytomegalovirus."). The Board specifically found that Claim 106 does not disclose the amplifiable gene of ARS's claims ("[T]he enhancers and promoters of cytomegalovirus comprising the human 293 cell genome insert of Genesys's claim 106 do not collectively or severably [*sic*] constitute an amplifiable gene capable of amplifying a gene silent in the genome of any other mammalian cell.").

[18] CGI Memorandum at p. 8.

[19] *Id.*

human erythropoietin gene). For Claim 24 to anticipate Claim 106, a person of ordinary skill in the art would have to "at once envisage" the specific HEK 293 cell recited in Claim 106 (including all of its limitations) from the myriad permutations and combinations encompassed by the genus of cell lines recited in Claim 24. *In re Petering,* 301 F.2d 676, 681-82 (C.C.P.A. 1962). CGI did not even suggest that Claim 24 anticipates Claim 106 and consequently failed to present any evidence to support such an argument.

### F.    Claims 24 and 106 do not render each other obvious

#### 1.    The law governing obviousness

A claimed invention is not obvious unless "the subject matter ***as a whole*** would have been obvious at the time the invention was made to a person having ordinary skill in the art." *In re Kahn*, 441 F.3d 977, 985 (Fed. Cir. 2006) (emphasis added).

To address the legal question of obviousness, a court first examines the following factual matters: (1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of non-obviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-3 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998 (Fed. Cir. 1999).

Most inventions are new combinations of old elements that were separately known in the art. *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998). Thus, merely establishing that each element in a claim was disclosed in the prior art does not establish obviousness of the claimed combination as a whole. *Id.* Rather, the prior art must have motivated one of skill in the art to combine the known elements in the manner claimed. *In re Kahn*, 441 F.3d at 986 ("[T]he 'motivation-suggesting-teaching' requirement protects against the entry of hindsight into the obviousness analysis."); *In re Fridolph*, 30 C.C.P.A. 939, 942 (1943) ("[I]n considering more

11

than one reference, the question always is: does such art suggest doing the thing the [inventor] did.").

Moreover, not only must a motivation have existed to combine the art in the manner claimed, one of skill must have had a reasonable expectation that the combination would be successful in achieving the desired objective. *In re Deuel*, 51 F.3d 1552, 1559 (Fed. Cir. 1995). Thus, the "motivation to combine" requirement "[e]ntails consideration of both the 'scope and content of the prior art' and 'level of ordinary skill in the pertinent art' aspects of the *Graham* test." *Kahn*, 441 F.3d at 986.

As with the *Graham* factors, "[t]he presence or absence of a motivation to combine references in an obviousness determination is a pure question of fact," *In re Gartside* at 1316; *Winner* at 1348, as is the presence or absence of a "reasonable expectation of success" in making the claimed combination. *Medichem* at 1165.

### 2. The Board's decision was supported by findings

In its Memorandum, CGI asserts that the Board's finding of no interference-in-fact was not accompanied by any findings of fact or conclusions of law. That is simply not true. The Decision contains extensive findings of fact and conclusions of law that support the Board's determination of no interference-in-fact between the surviving claims.[20]

---

[20] *Id*. at, *e.g.*, pp. 39 and 126-133. In particular, the Board expressly considered each of the *Graham* factors, including the scope and content of the prior art listed at pages 32 and 39 of the Decision. The Board discussed each of these references individually and in combination, and made extensive findings with respect to the parties' claims in light of this prior art. *See*, *e.g.*, Exhibit B to Nielsen Decl. (Decision) at pp. 42-47 (findings based on "Kaufman I"), pp. 49-54 (findings based on "Raibaud"), pp. 56-58 (findings based on "Nasmyth Nasmyth II/I"), pp. 61-65 (findings based on "Smithies"), pp. 66-68 (findings based on Cid), pp. 71-74 (findings based on Thomas), and pp. 79-*et seq.* (findings based on "Japan").

### 3.    CGI failed to establish that Claim 24 renders Claim 106 obvious

As noted above, CGI bore the burden to establish that Claim 24 renders Claim 106 obvious in light of the prior art, when claim 24 is treated as a prior art reference. *Winter*, 53 U.S.P.Q.2d at 1243.

CGI barely mentioned, and definitely did not satisfy its burden regarding, whether the Board was correct in finding that Claim 24 does not render Claim 106 obvious. The Board found that Claim 106 "recites specific provisions that are nowhere found in the prior art."[21] CGI relies on a newly-introduced document, the '939 patent, to suggest that Claim 106 would have been obvious in view of Claim 24. For the reasons explained in ARS's concurrently-filed motion in limine, the Court should disregard that document.[22] Therefore, the Court should review the Board's finding for whether substantial evidence supported it. Given the Board's thorough review of the scope and content of the prior art (at pages 36 *et seq.*) and its detailed analysis of the interference-in-fact question (at pages 126-133), this Court should uphold the Board's determination that Claim 24 does not render Claim 106 obvious as being supported by substantial evidence.

### 4.    CGI failed to establish that the combination of Claim 106 with the prior art renders Claim 24 obvious

CGI also bore the burden to establish in its Memorandum that the other part of the two-way test is satisfied, *i.e.*, that Claim 106 renders Claim 24 obvious in light of the prior art, when

---

[21] Exhibit B to Nielsen Decl. (Decision) at p. 88.

[22] Even if the Court considers the '939 patent, CGI has failed to show that one of ordinary skill in the art in 1989 would have been motivated to combine the teachings of the '939 patent with Claim 24. Instead, CGI simply says that "[t]here is no evidence or suggestion that there is anything unusual or specific to these selections [in the '939 patent], given Claim 24." CGI Memo, at 12. That is nothing more than CGI's attempt to avoid its burden; the absence of evidence regarding a previously undisclosed document is not evidence that one of ordinary skill in the art would have been motivated to combine Claim 24 with that document.

Claim 106 is treated as a prior art reference. *Winter*, 53 U.S.P.Q.2d at 1243. For the reasons

explained below, CGI has failed to carry its burden on this point.

### a.    Scope and content of the prior art

Treated as prior art, Claim 106 discloses a cell line (HEK 293) whose genome contains a

DNA regulatory element (the CMV promoter and enhancer) operatively associated with a

predetermined gene (human erythropoietin). Each of the remaining elements of Claim 24 not

found in Claim 106 (selectable marker genes and amplifiable genes) were also known in the

prior art of record and considered by the Board.[23] Although CGI expends considerable space

arguing that the art demonstrates that it would be obvious to add an amplifiable gene to the cell

of Claim 106, CGI fails to establish that the scope and content of the prior art is any different

from that already considered by the Board in finding ARS's claims non-obvious over Claim 106.

The relevant question here is not whether the individual elements of Claim 24 were

known in the art; the question is whether CGI has established in its Memorandum that one of

ordinary skill in 1989, looking at Claim 106, would have been motivated to combine the specific

elements found in Claim 24, in the manner recited in Claim 24, with a reasonable expectation of

success. CGI failed to carry this burden.

---

[23]    *See*, *e.g.*, MOLECULAR CLONING: A LABORATORY MANUAL, J. Sambrook *et al.* (eds.),
2nd Ed., Cold Spring Harbor Press, Cold Spring Harbor, NY (1989) at p. 16.9-15, 16.28-29
(relevant pages submitted herewith as Exhibit G to Nielsen Decl.) and Kaufman, R.J., *High level
production of proteins in mammalian cells* (Kaufman II), In. Genetic Engineering Principals and
Methods, Setlow ed., Plenum Press, NY (1987) at p. 161-68, 170-74 (relevant pages submitted
herewith as Exhibit H to Nielsen Decl.).

### b.    Differences between Claim 106 treated as prior art and the invention of Claim 24

The Board expressly found that Claim 106 differs from Claim 24 (and the rest of ARS's patentable claims) at least because the cell recited in Claim 106 does not contain an amplifiable gene.

> It is sufficient to note that the genome of the human 293 embryonal kidney cell of claim 106 of Genesys's Application 08/102,390 need not have inserted therein any expressible amplifiable gene capable of amplifying the silent human erythropoietin gene in a human 293 embryonal kidney cell when inserted in sufficiently close proximity thereto.[24]

In its Memorandum, CGI did not dispute this finding.[25]

In addition to lacking an amplifiable gene, Claim 106 also lacks the additional selectable marker gene required by Claim 24. CGI barely acknowledges, and certainly fails to address, that a selectable marker gene is required in addition to the amplifiable gene in Claim 24, and that both such genes are not found in Claim 106. These omissions are fatal to its analysis.

### c.    CGI did not establish that one of ordinary skill would have been motivated to combine Claim 106 with the prior art to produce the cell line of Claim 24

In its Memorandum, CGI fails to carry its burden to prove that one of ordinary skill in the art in 1989 would have been motivated to combine Claim 106 with the prior art to produce the cell line of Claim 24 (a cell line having inserted into its genome a DNA construct containing a selectable marker gene, an amplifiable gene, and a DNA regulatory segment operatively associated with an endogenous normally transcriptionally silent gene). CGI's arguments fail for a

---

[24] Exhibit B to Nielsen Decl. (Decision) at pp. 127-28.

[25] During the Interference, CGI told the Board the same thing: "Nowhere does the prior art disclose or suggest a mammalian cell wherein an amplifiable gene is integrated into the genome such that a predetermined endogenous target gene is operatively associated with an amplifiable gene." Skoultchi Statement of Material Facts in Support of Motions at p. 22 (the relevant pages of which are submitted herewith as Exhibit I to Nielsen Decl.).

simple reason: CGI never addresses whether one would have been motivated to add both the selectable marker gene and the amplifiable gene required in Claim 24 to the cell of Claim 106. Rather, CGI disingenuously blurs the two elements into one, which CGI refers to as a "selectable amplifiable gene."

Instead of addressing the motivation to add both a selectable marker gene and an amplifiable gene, CGI instead argues that the use of selectable markers was "commonplace" in 1989 as a means to identify successfully transformed cells, and that DHFR, a "selectable amplifiable gene," is one such marker.[26] CGI's argument is at best that it might have been "obvious to try" selectable marker genes when modifying cells in 1989. That, of course, is not sufficient to prove obviousness. CGI does not even attempt to explain why one of ordinary skill in 1989 would have specifically selected a DHFR gene (let alone DHFR and a selectable marker gene) to create the cells recited in Claim 24, as is required to establish obviousness.[27]

Similarly, CGI focuses solely on an amplifiable gene when it asserts that "DHFR gene amplification was a well known and widely studied phenomenon well prior to the parties [*sic*] filing dates."[28] CGI argues that the use of an exogenous DHFR gene to co-amplify a transfected heterologous gene was known in the art, relying on the Kaufman I reference, the '832 patent, and the '939 patent. CGI's reliance on these references is misplaced.[29] The most these documents disclose is what both parties already admitted to the Board: that expressing foreign genes in cell lines by inserting and amplifying both an amplifiable gene and a foreign gene was known in the

---

[26] *See* CGI Memorandum at pp. 9-10.

[27] *In re Rouffet* at 1357; *In re Deuel* at 1558.

[28] CGI Memorandum at p. 10.

[29] And as explained in ARS's concurrently filed motion in limine, the Court should disregard the '939 patent.

prior art. CGI never addresses why one of ordinary skill in 1989 would have been motivated to add an amplifiable gene to a cell expressing an endogenous transcriptionally silent gene as required by Claim 24.

### (i)    CGI's reliance on Dr. Tlsty's testimony is misplaced

CGI says that Dr. Tlsty would be willing to testify that it would have been obvious to modify the cell of Claim 106 to include an amplifiable gene such as DHFR.[30] However, Dr. Tlsty never said one word about this (or about whether it would have been obvious to insert an amplifiable gene into a cell in order to co-amplify an endogenous transcriptionally silent gene) in her Rule 26(a)(2) report. So she should not be permitted to testify regarding this question. This is addressed in ARS's concurrently filed motion in limine.

To the extent CGI points to opinions that Dr. Tlsty actually expressed in her report, those are irrelevant to the question of whether Claim 106 renders Claim 24 obvious (which she never addressed).[31] For example, in the portion of Dr. Tlsty's report on which CGI relies, Dr. Tlsty merely cites and discusses the same art that the Board referred to in the Decision,[32] *i.e.*, Kaufman I, showing that one could amplify a foreign gene that had been inserted into a cell. That, of course, is not the invention of Claim 24, which requires, *inter alia*, an amplifiable gene ***and*** the expression of a gene that is normally found in the cell and is normally transcriptionally silent.

---

[30] CGI Memorandum at p. 10.

[31] CGI repeatedly speculates that ARS did not depose Dr. Tlsty because ARS agreed with what Dr. Tlsty said in her expert statement. *See*, *e.g.*, CGI Memorandum at 10, 13, 14. This is completely untrue. In reality, ARS did not depose Dr. Tlsty because other than some basic scientific points, nearly every opinion Dr. Tlsty expressed in her expert statement was either irrelevant to any actual issue in this case, was merely conclusory, and/or was completely rebutted by one of ARS's expert witnesses, Dr. Martin, in his opening and/or rebuttal Rule 26 expert statements.

[32] Exhibit B to Nielsen Decl. (Decision) at pp. 42-43.

Dr. Tlsty actually had little to say in her expert report about "normally transcriptionally silent genes," other than to express doubt that an amplifiable gene could be used to activate the expression of a normally transcriptionally silent gene.[33] Dr. Tlsty did not say anything like the opinion that CGI attributes to her. Moreover, CGI conveniently ignores the fact that its other expert witness in this case, Dr. Thomas, expressed the opinion that one of ordinary skill in 1989 would *not* have selected DHFR for use as a selectable marker gene, because the selection agent, methotrexate, is a toxin that could impair cell growth and interfere with protein production.[34]

### d.    Objective indicia of non-obviousness

CGI did not mention, let alone set forth evidence on, the issue of whether there are objective indicia of non-obviousness regarding either Claim 24 or Claim 106.

### 5.    CGI failed to address the claimed inventions as a whole

CGI's arguments also fail because they do not address each of the claimed inventions as a whole. CGI's arguments focus on an individual element in Claim 24, the "amplifiable gene," to the exclusion of all else. CGI did not establish that the prior art motivated one of ordinary skill to modify the HEK 293 cell of Claim 106 to create the invention of Claim 24 as a whole: *i.e.*, to 1) include a selectable marker gene in the inserted DNA construct, 2) to include an amplifiable gene in the construct, and 3) instead of inserting the regulatory segment as part of a construct containing an exogenous human erythropoietin gene, as recited in Claim 106, to insert a construct containing the regulatory segment so that it becomes operatively associated with an *endogenous* erythropoietin gene, as required by Claim 24.

---

[33] CGI Exhibit A to Kelber Decl. (Expert Report of Thea D. Tlsty, Ph.D.) at ¶ 32.

[34] *See* Expert Report of Kirk Thomas, Ph.D. at ¶ 63 (the relevant pages of this Report are submitted herewith as Exhibit J  to Nielsen Decl..

**6.     Reasonable expectation of success**

Given CGI's failure to show that one of ordinary skill would have been motivated to combine the parties' respective claims with the prior art to arrive at the other party's claims, it is hardly necessary to address the issue of reasonable expectation of success. Nevertheless, it should be noted that Dr. Tlsty, in her Expert Statement, "expressed doubts" that one could make an expressible amplifiable gene work with a gene that is normally transcriptionally silent in the genome of the cell line, even today. CGI Exhibit A to Kelber Decl. (Tlsty Expert Report) at ¶32. Thus, Dr. Tlsty confirms that there would not have been a reasonable expectation of success in making the cell line of Claim 24.

## III.     CONCLUSION

For the reasons discussed herein, this Court should deny CGI's motion to reverse the Board's determination that there is no interference-in-fact between Claim 106 and any of ARS's claims, including claim 24.

Dated: October 31, 2006                    Respectfully submitted,


                                           By: /s/ Kevin M. Flowers
                                           Fred A. Kelly, Jr. (BBO # 544046)
                                           NIXON PEABODY LLP
                                           100 Summer Street
                                           Boston, MA 02110
                                           Tel: 617-345-1000
                                           Fax: 617-345-1300

                                           Kevin M. Flowers (*pro hac vice*)
                                           Matthew C. Nielsen (*pro hac vice*)
                                           MARSHALL, GERSTEIN & BORUN LLP
                                           6300 Sears Tower
                                           233 S. Wacker Drive
                                           Chicago, IL 60606-6357
                                           Tel: (312) 474-6300
                                           Fax: (312) 474-0448

                                           Counsel For Plaintiff
                                           APPLIED RESEARCH SYSTEMS ARS HOLDING,
                                           N.V.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **ARS OPPOSITION TO CGI'S MOTION TO REVERSE THE BOARD'S DECISION THAT THERE IS NO INTERFERENCE-IN-FACT**, **DECLARATION OF MATTHEW C. NIELSEN** and all exhibits cited to therein are being filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 31, 2006. Additionally, two courtesy copies are being dispatched via UPS for next business day delivery to the Court.

/s/ Kevin M. Flowers