**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CELL GENESYS, INC., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-12448-MLW |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-11810-MLW |
| | ) | |
| CELL GENESYS, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant, and | ) | |
| | ) | |
| TRANSKARYOTIC THERAPIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF ARS MOTION *IN LIMINE*
TO EXCLUDE NEW EVIDENCE OFFERED BY CGI
IN SUPPORT OF ITS "JAPAN" MEMORANDUM**

**I.      INTRODUCTION**

In the '114 Interference below, the Board found that CGI's claims 107-109 were unpatentable over the "Japan" reference. In the interference, the Board noted that regarding "Japan," CGI had the option of either (1) deferring the issue until the priority phase of the interference or (2) antedating the reference under 37 C.F.R. § 1.131 ("Rule 131"). CGI chose the latter course,[1] relying on the "not particularly credible"[2] declaration, testimony, and exhibits of its patent attorney, Bertram Rowland, rather than the declaration from the asserted inventor, Dr. Skoultchi, required by Rule 131.

Having lost on the issue of the patentability of its claims 107-109 over "Japan" before the Board (based on its inadequate evidentiary showing), CGI now seeks for the first time to offer testimony and documents from Dr. Skoultchi and other CGI witnesses as "new evidence" in support of its arguments that Skoultchi invented his claimed methods prior to "Japan." The evidence CGI relies upon, however, consists of documents that have either been in CGI's possession, custody or control for years or which could have been obtained and presented to the Board had CGI merely exercised due diligence.

Although the Court may accept new evidence offered on issues argued to the Board below, it need not accept evidence that a party negligently withheld from the Board. This is such a case. At best, CGI negligently withheld and/or failed to exercise due diligence in obtaining the evidence that it now relies upon to argue that this Court should reverse the Board's decision.

---

[1] Decision on Preliminary Motions ("Decision") at 92–93 (pertinent pages submitted herewith as Exhibit B to the Declaration of Matthew C. Nielsen).

[2] *Id*. at 94. The Board concluded its evaluation of CGI's showing with a scathing critique of Rowland's testimony. *Id*. at 109–112.

1

Because CGI's conduct was unjustifiable and wasteful of scarce administrative and judicial resources, the Court should not accept CGI's "extensive new evidence."

## II. ARGUMENT

### A. CGI failed to provide the declaration and evidence required by Rule 131

Rule 131's requirements are clear. It states, in pertinent part:

Affidavit or Declaration of Prior Invention.

(a) When any claim of an application . . . is rejected, *the inventor of the subject matter of the rejected claim*[3] . . . may submit an appropriate oath or declaration to establish invention of the subject matter of the rejected claim prior to the effective date of the reference or activity on which the rejection is based . . . .

(b) The showing of fact shall be such, in character and weight, as to establish . . . conception of the invention prior to the effective date of the reference coupled with due diligence from prior to said date to . . . the filing of the application. Original exhibits of drawings or records . . . must accompany and form part of the affidavit or declaration or their absence satisfactorily explained.

37 C.F.R. § 1.131 (emphasis added).

Thus, to antedate "Japan," Rule 131(a) and (b) required CGI to submit to the Board a declaration from Dr. Skoultchi, along with "original exhibits" supporting his testimony.

CGI did not submit evidence sufficient to satisfy either prong of Rule 131. First, CGI never submitted the required declaration by Skoultchi to the Board. Second, CGI did not submit a single document or word of testimony from Skoultchi as part of the "showing of facts" required by Rule 131(b). Third, CGI did not submit any testimony from Mssrs. Levin, Savage, Kucherlapati, or Thompson, or any documents held by CGI or by those individuals. Instead, as

---

[3] The rule allows persons other than the inventor to submit a declaration in special cases, none of which have been shown to apply here. *See* 37 C.F.R. §§ 1.42, 1.43, & 1.47. CGI also misrepresents that it is the "applicant for patent" for purposes of Rule 131. CGI Memo (Docket No. 128) at 4 ("Where an applicant, for patent, *such as CGI* . . . .") (emphasis added). In fact, Dr. Skoultchi, not CGI, was the applicant here. *See* Skoultchi's U.S. Patent Application Serial No. 08/102,390 prosecution history (pertinent pages submitted herewith as Exhibit K to Nielsen Decl.) (showing "Applicant" as "Arthur I. Skoultchi").

2

noted above, CGI chose to rely on the "not particularly credible" testimony, declaration, and documents from Mr. Rowland.

The Board charitably "presumed" that CGI's submission was offered in satisfaction of Rule 131,[4] but its obvious deficiencies did not go unnoticed. The Board observed that:

> There is no testimony by Dr. Skoultchi of record. Nor is there any explanation why Dr. Skoultchi could not have testified. In this respect, Rule 131 indicates that inventor testimony is necessary.[5]

The Board concluded that the evidence CGI offered was not sufficient to establish Dr. Skoultchi's conception and diligence.[6]

### B. The "extensive new evidence" offered by CGI was either in its possession or obtainable by the exercise of due diligence during the '114 Interference

In the '114 Interference, CGI relied on five documents totaling a handful of pages[7] to support its argument that Skoultchi could antedate "Japan." Now, in its "Japan" memorandum, CGI relies on "extensive new evidence" buried within a "Record" that it boasts "includes *thousands of pages* of documents and transcripts of sworn testimony."[8] However, the "extensive new evidence" upon which CGI now relies is not "new": CGI either had this evidence in its possession, or could have obtained it using only normal diligence, during the '114 Interference.

---

[4] Decision at 93 (submitted herewith as Exh. B to Nielsen Decl.) See also *id*. at 95 ("While we assume that the [Rowland] Declaration . . . and attached exhibits constitute 'an appropriate oath or declaration' . . . ."

[5] *Id*. at 95.

[6] *Id*. at 108.

[7] *Id*. at 92–112 (submitted herewith as Exh. B. to Nielsen Decl.) (discussing Rowland's submissions in detail).

[8] CGI Memo at 6 (emphasis added).

3

### 1. CGI was in possession of Skoultchi's notebook during the interference

Although CGI trumpets the contents of Skoultchi's notebook,[9] it notably fails to mention that it had this notebook during the '114 Interference but withheld it from the Board.

CGI's outside counsel has had Skoultchi's notebook for many years. Skoultchi testified that he could not remember when he had found the notebook and sent it to CGI's counsel, only that it was more than a year prior to his deposition.[10] However, Skoultchi also testified that he sent the notebook to either Samuel Abrams or Laura Coruzzi, lawyers who represented CGI in the '737 Interference,[11] which was conducted between 1996 and early 2003 (when it was redeclared as the '114 Interference and current counsel took over representation of CGI).[12] Because Skoultchi never received the notebook back,[13] CGI's current counsel must have received the notebook from former counsel since they brought it to Skoultchi's deposition.[14] The fact that Skoultchi sent his notebook to CGI's *former* counsel means that CGI had this notebook before the '114 Interference ever began, yet CGI never submitted this notebook during the '114 Interference.

---

[9] *See* CGI Memo at H-1 to H-2.

[10] CGI "Record," Docket No. 129-31 (Transcript of Nov. 13, 2005, Deposition of Arthur I. Skoultchi ("Skoultchi Trans.") at 166:5–168:11.

[11] *Id*. at 167:13–168:3.

[12] *See* Notice Redeclaring Interference No. 103,737 (pertinent pages submitted herewith as Exh. L to Nielsen Decl.) at 12–13.

[13] CGI "Record," Docket No. 129-31 (Skoultchi Trans.) at 171:24–172:2 (stating he had studied "a copy of the notebook" in preparation for his deposition).

[14] *Id*. at 166:17-21. Current counsel's cryptic statement that "we came across the original notebook," *id*. at 171:17, while not specifying who did so, or when or where, is consistent with this conclusion.

CGI characterizes evidence such as this notebook as "evidence not available to it during the Interference."[15] Dr. Skoultchi's testimony shows that this is not true.

### 2. During the '114 Interference, CGI was in possession of the other documents on which it now relies

CGI offers a number of additional documents, such as various purported business plans, presentations, faxes, and memos, as "new" evidence, despite the fact that it had these documents during the '114 Interference. CGI says that "[t]he documents produced by these witnesses, and relied on herein, together with their testimony, were secured by subpoena."[16] This is simply not true. The documents that CGI now relies upon were produced by CGI in this case. They were not produced by any witness in response to any subpoena. There is simply no evidence or reason to believe that CGI did not have these documents or could not have obtained them by reasonably diligent effort during the '114 Interference.[17]

### 3. CGI could have secured the testimony of its "new" witnesses by exercising due diligence

CGI relies on portions of the transcripts of the depositions of Mssrs. Skoultchi, Levin, Savage, Kucherlapati, and Thompson. There is no evidence or reason to believe that CGI could not have procured the testimony of these witnesses during the '114 Interference.

First, there is no evidence that CGI sought the testimony of these witnesses in the '114 Interference. CGI says that the testimony of these witnesses was "secured by subpoena" in this case. This is both misleading and irrelevant. CGI identified these witnesses as individuals having information on which it would rely at trial in its Rule 26(a) disclosures. Of these witnesses, ARS

---

[15] CGI Memo at 3.

[16] CGI Memo at 2.

[17] For example, CGI obviously either had or obtained the July 24-25, 1989 "meeting minutes" during the '114 Interference, because Mr. Rowland attached that document to his declaration submitted to the Board. *See* Decision (submitted herewith as Exh. B. to Nielsen Decl.)at 95.

only served a subpoena on Dr. Kucherlapati. The other witnesses were identified, procured, prepared and defended by counsel for CGI.

More importantly, however, whether the testimony *in this case* was "secured by subpoena" is irrelevant to whether *CGI could have procured the testimony of these witnesses during the '114 Interference.* The need for a subpoena is no excuse for lack of diligence. If CGI needed to serve these witnesses with subpoenas to obtain their testimony or documents during the '114 Interference, it could and should have diligently done so.[18]

Moreover, there is reason to believe that these witnesses were readily available to CGI during the '114 Interference. For example, Skoultchi and Kucherlapati were founders of, and are still under contract to, CGI.[19] Levin was the former CEO and a long-time member of the Board of Directors of CGI.[20] These witnesses are not, and were not, hostile to CGI. It certainly did not take much in the way of diligence for CGI to "find" these witnesses and make them available for deposition here.

### C. Federal Circuit precedent does not require this Court to accept "new" evidence CGI failed to submit before the Board

The evidence shows that CGI deliberately withheld or was grossly negligent in failing to acquire and submit its current "new" evidence to the Board. CGI maintains that simply because the issues of CGI's alleged conception and diligence were raised before the Board, the presentation of all of the evidence on which it now relies "is proper pursuant to 35 U.S.C. §

---

[18] Subpoenas are available in interference practice. 35 U.S.C. § 24.

[19] *See* CGI "Record," Docket No. 129-33 (Transcript of Oct. 5, 2005, Deposition of Raju Kucherlapati) at 32–34; CGI "Record," Docket No. 129-30 (Skoultchi Trans.) at 52–53.

[20] See CGI "Record," Docket No. 129-28 (Transcript of Nov. 15, 2005, Deposition of Mark Levin) at 22–23.

146,"[21] citing *Conservolite v. Widmeyer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994) and *Case v. CPC Int'l Inc.*, 730 F.2d 745, 752 (Fed. Cir. 1984), *cert. denied*, 468 U.S. 972 (1984). This is not the case. Both the Federal Circuit and several regional circuits have interpreted § 146 to permit exclusion of evidence in certain circumstances. The circumstances here merit such exclusion.

The cases CGI cites address how to treat evidence offered on an issue *not* raised before the Board: evidence directed to a "new issue" should usually be excluded. However, they do not address the issue before this Court—how to treat evidence that was deliberately or negligently withheld from the Board.

For example, CGI cites *Conservolite v. Widmeyer*, in which the Federal Circuit reversed a district court's grant of priority to the appellant, holding that the court abused its discretion by accepting testimony on a "new issue," absent extraordinary circumstances. 21 F.3d at 1102-1103. This restriction exists because a § 146 action "is essentially a proceeding to review the action of the Board." *Id*. at 1102. The court concluded:

> Section 146 *authorizes* the district court on review to accept new testimony, but normally only as to issues raised by the parties during the proceedings below or by the Board's decision. Thus, the parties to an interference must make a complete presentation of the issues at the Board level so that the interference is efficient and not wasteful of administrative and judicial resources.

*Id*. (emphasis added; citations omitted). The scope of and the rationale for this rule against raising new issues do not support CGI's arguments.

First, the scope of the rule announced in *Conservolite* does not *require* a court to accept all proffered evidence on an issue raised before the Board, regardless of its provenance. To the contrary, § 146 only "authorizes" a court to accept new evidence. The Federal Circuit has expressly left open the question of whether a district court *must* accept new evidence on an issue

---

[21] CGI Memo at 2–3.

raised before the Board. In the other case cited by CGI, *Case v. CPC Int'l*, the Federal Circuit found no error in a district court's admission of testimony, despite the appellant's objection that it had been withheld or suppressed by the appellee, but also noted that "[w]hether under some circumstances a district court may properly restrict the admission of testimony on an issue raised before the board is not before us." 730 F.2d at 752.

Since *Case* was decided in 1984, the question of when a district court may properly exclude "new" evidence offered on an "old" issue has apparently arisen infrequently, though it remains an open one before the Federal Circuit. Most recently, in *General Instruments v. Scientific-Atlanta*, 995 F.2d 209, 214 (Fed. Cir. 1993), the court stated "we again have no occasion to decide whether 'the District Court may properly restrict the admission of testimony on an issue raised before the board,'" citing *Case*.

Second, the *Conservolite* rule generally prohibits raising new issues in the interest of the efficient administration of justice, both before the Board and the courts. This principle, however, is equally well-served, under the appropriate circumstances, by preventing parties from offering new evidence on issues previously raised before the Board. Efficiency demands that the Board be supplied with all relevant, available evidence on issues raised before it in the first instance so that its determinations are fully informed. Likewise, efficiency demands that district courts not be burdened with reviewing Board decisions on the basis of evidence withheld from the Board. The efficient administration of justice before an administrative agency, such as the Board, is not served if a party is permitted to withhold or fail to marshal evidence and then, if it loses, present that evidence for the first time in a district court.

A rule against evidence that was negligently or deliberately withheld from the Board is not inconsistent with the language of 35 U.S.C. § 146 as interpreted by the Federal Circuit in the

8

cases cited by CGI. To the contrary, prior to the creation of the Federal Circuit, long-standing and well-reasoned precedents of several regional circuits allowed district courts in § 146 cases to exclude such evidence and testimony. While these decisions are not binding precedent on either this Court or the Federal Circuit, they have never been overturned and so remain persuasive authority. Although the Federal Circuit has expressed no opinion on the issue thus far, it is likely to agree with the other Circuits that have addressed this issue.

### D. Precedent supports exclusion of evidence that was suppressed, withheld, or not presented due to negligence

#### 1. *Barrett Co. v. Koppers Co.*

In *Barrett Co. v. Koppers Co.*, 22 F.2d 395 (3d Cir. 1927), the appellant challenged a district court's decision to exclude certain testimony in a suit to obtain a patent under the "bill in equity," R.S. § 4915.[22] The testimony, offered to show priority and actual reduction to practice, had been deliberately withheld in an interference proceeding; the plaintiff's loss in the interference was confirmed on appeal and was followed by the suit to obtain a patent. *Id*. at 396. The Third Circuit held that the dispositive issue was "whether the plaintiffs by withholding evidence at the interference proceeding which was then in their possession and control are estopped to present that evidence in this action to overcome the decision of the Court of Appeals and thereafter obtain a patent."[23]

Finding the question to be one of first impression, the Third Circuit reasoned that, having provoked the interference:

---

[22] R.S. § 4915 is the predecessor to 35 U.S.C. §§ 145 & 146. Furthermore, the same reasoning with regard to admissibility of evidence applies in both § 145 and § 146 actions. *Montecatini Edison, S.P.A. v. Ziegler*, 486 F.2d 1279, 1283 n.12 (D.C. Cir. 1973).

[23] *Barrett*, 22 F.2d at 396.

> [The plaintiff] is expected to produce all the testimony he has on that issue so that the Patent Office tribunals and the courts may make right decisions. If for some reason of his own a party withhold [*sic*] evidence which is available to him and which he can produce at will but does not produce, that he must be regarded as having abandoned that evidence in its bearing on the issue under trial. . . . The law gave the plaintiffs a day in court on the issue of priority. That was the day the interference was heard, and if they chose not to avail themselves of their full rights but to gamble on the decision by giving only a part, and the weaker part, of the evidence they had in hand, they did it at their own risk. After losing on such evidence . . . they cannot come into a District Court and say, now for the first time we shall tell the true story of a reduction to practice and demand a patent.

*Id*. at 397. Based on this waiver principle, the appeals court affirmed the district court's exclusion of the evidence. Over the decades since, the principle announced in *Barrett Co.* has retained its vitality while being adapted and expanded in many appeals and district court decisions, as discussed below.

      2.    ***Kirschke v. Lamar***

In *Kirschke v. Lamar*, 426 F.2d 870 (1970), the Eighth Circuit reviewed a district court's adoption of the rule and exclusion of evidence offered by the appellant in a § 146 action. The issue before the district court was whether the Board had erred in not awarding the appellant priority based upon an alleged actual reduction to practice. *Id*. at 871–872. The appellant tried to offer evidence on this issue that it had not placed before the Board, and the appellee objected, "pointing out it was available to appellants at the time of the interference proceeding and should have been presented at that time." *Id*. at 872.

The district court provisionally allowed the testimony, pending a decision on the evidentiary challenge, but later decided to exclude it—despite its critical importance to the appellee's case—in a well-reasoned holding, citing *Barrett Co*. and subsequent cases, which the *Kirschke* decision quotes at length. *Id*. at 872–873.[24]

---

[24] The district court's decision is reported at *Kirschke v. Lamar*, 300 F. Supp. 146 (W.D. Mo. 1969).

Finding that the district "court's resolution of the evidentiary issue is dispositive," *id*. at 873, and acknowledging that the statute allows new evidence, the Eighth Circuit explained that:

> The provision for further testimony in § 146 must not, however, be read in a vacuum. The viability of the administrative process presupposes that pertinent and available testimony will be presented before the appropriate administrative body. . . . The remedy provided by that section is not, strictly speaking, a full trial *de novo*; rather, allowance of evidence in addition to the Patent Office record must be tempered and circumscribed to some degree to effectuate the policy favoring full disclosure to administrative tribunals. The extent of that limitation is the fine point of law at issue here.

*Id*. at 874. The court, after reviewing the decisions following *Barrett*, summarized those decisions as supporting the principle that:

> a deliberate, intentional, or willful withholding or suppression of pertinent and available evidence from the Patent Office, whether attended by reprehensible motives or not, whether it be for tactical or other reasons, justifies exclusion of such evidence in a § 146 proceeding.

*Id*. The Eighth Circuit agreed with the district court that the failure to produce available[25] witnesses amounted to "intentional withholding" and was "tantamount to suppression," notwithstanding the lack of fraud, bad faith, or deceptive intent, and despite appellant's statement that the testimony had only been withheld because it was believed to be unnecessary. *Id*. at 875.

### 3.  *Velsicol Chemical Corp. v. Monsanto* and *Piher, S.A. v. CTS Corp.*

The Seventh Circuit first addressed this issue in *Velsicol Chemical Corp. v. Monsanto*, 579 F.2d 1038 (7th Cir. 1978), an appeal of a § 146 action, in which the appellant sought review of the district court's grant of "Monsanto's motion to preclude Velsicol from calling two new witnesses,[26] on the ground that Velsicol had waived the testimony by not offering their depositions in the proceedings before the Board." 579 F.2d at 1042. As in the *Krischke* case, the

---

[25] The fact that one of the proffered witnesses was no longer an employee of the appellant was irrelevant to his "availability," given that he had left a forwarding address. *Id*. at 874–875.

[26] The testimony pertained to the patentability of Monsanto's claims under 35 U.S.C. § 112.

11

ruling on this excluded testimony was of "great importance" to the appellant's case and the testimony pertained to an issue that had previously been raised before the Board. *Id*. at 1043.

The Seventh Circuit, reviewing the district court's decision under an abuse of discretion standard, first sought to determine the "proper standard for waiver in these circumstances, as well as the allocation of the burden of proof and the actual facts before the trial court." *Id*. at 1043. The court reviewed the *Barrett* and *Krischke* cases and also closely considered the text and legislative history of 35 U.S.C. § 146, which it found did *not* evidence a clear Congressional bias in favor of admitting evidence not presented to the Board. *Id*. at 1044–1045. The *Velsicol* court agreed with both the "strong policy considerations underlying the *Barrett* . . . doctrine" and the restatement of those considerations found in *Krischke* and quoted above, finding them in accordance with the limited standard of review applicable to § 146 actions. *Id*. at 1045. The court concluded:

> [A]bsent special circumstances,[27] the proper question for the District Court was whether the failure of the proponent of the additional evidence to uncover its existence or later or to procure it for the interference proceeding occurred in spite of the proponents diligence in preparing his case before the Board.

*Id*. at 1046.

Noting that it was a seldom-considered issue, the *Velsicol* court also assigned the burden of proof with respect to the waiver issue to the proponents of the new evidence, stating that "[t]he policy of encouraging full disclosure supports this allocation," because the proponent's knowledge of its plans and when it became aware of evidence puts it in the best position to either justify its lack of production before the Board or explain how its non-production was not due to a failure of diligence. *Id*.

---

[27] "Examples of special circumstances might include an intervening change in the law, the presence of a new issue, or the admission of other new evidence deserving of a response . . . ." 579 F.2d at 1046 n.10.

Turning to the facts, the court affirmed the district court's exclusion of the testimony, holding that the appellant had not carried its burden of justifying its failure to produce the "new" witnesses before the Board. Rejecting the appellant's claim to be "unaware of the evidence [because] neither [witness], both former employees, had been contacted by anyone associated with Velsicol" about the interference, *id*. at 1046–1047, the court concluded that, because the witnesses were easily procurable and the appellant should have known they might have to testify, the appellant was grossly negligent in not procuring their testimony, *id*. at 1047. In conclusion, it stated:

> [The appellant's] desire to avoid burdening the Board with cumulative evidence cannot justify its failure to produce evidence which later proved to be far from cumulative. The policy of ensuring that the decision of the Board will be an informed one requires that the risk of tactical errors be borne by the proponent, regardless of motive.

*Id*. at 1047.

The Seventh Circuit addressed these issues again in its decision in *Piher, S.A. v. CTS Corp*., 664 F.2d 122 (7th Cir. 1981), also an appeal from a § 146 action. The district court had refused to admit new testimony and court decisions offered by Piher, allegedly relating to matters raised by the Board's decision.[28]

Piher made several arguments to justify its failure to produce the witnesses and decisions during the interference below. *Id*. at 125. First, it argued that the intervening court decisions were unavailable during the interference. Second, it argued that the Board's determination that CTS

---

[28] *Id*. at 124. Piher sought to call appellee's former patent counsel, the sole witness for the appellee on diligence before the Board, for the purpose of impeaching his credibility with two intervening court decisions that found him "guilty of 'culpable nondisclosure' and 'lack of candor.'" *Id*. Piher also sought to call an independent patent attorney, who was to be offered to refute the patent counsel's testimony that the application required 400-500 hours of work to complete. *Id*. Piher also sought to introduce expert testimony refuting appellee's claims of actual reduction to practice. *Id*. at 124–125.

had actually reduced the invention to practice was "surprising," in light of other evidence presented in the interference. Finally, Piher argued that discovery had revealed new evidence regarding CTS's production and marketing practices that threw doubt on its claims of actual reduction to practice. *Id*.

Citing *Velsicol*, the Seventh Circuit held that Piher had not carried its burden of proving it had not waived its right to present the evidence. *Id*. Having first observed that counsel for Piher had admitted the evidence was not essential, it went on to reject Piher's argument that it should have been allowed to present new evidence on the issues of diligence and actual reduction to practice, both of which were argued before the Board, stating that "[a]n adverse decision after full opportunity to present evidence is not a special circumstance within the scope of *Velsicol Chemical* giving the party an absolute right to present additional evidence." *Id*. at 125–126.

Many other courts have acknowledged that failure to present readily available evidence to the Board produces a waiver. Given space constraints, it is impossible to review all of these decisions, but there can be no dispute that there is broad support for the waiver principle first announced in *Barrett*.[29]

## III.   CONCLUSION

Prior to the creation of the Federal Circuit, § 146 actions were appealed to the regional circuits. These courts consistently held that evidence that was available to a party during an interference but was withheld from the Board may not be presented by that party to the district

---

[29] *See, e.g.*, *Cody v. Aktiebolaget Flymo*, 452 F.2d 1274, 1279 n.8 (D.C. Cir. 1971) (in an appeal from a § 146 action, stating "we agree that the parties must not be permitted . . . to submit evidence omitted at the agency level out of a negligent disregard for the administrative process"); *Shaffer Tool Works v. Joy Manuf. Co.*, 388 F. Supp. 536, 538 (S.D. Texas 1974) (noting "evidence withheld from the Board is generally inadmissible in the district court" and placing burden of proof on proponent of evidence) (citations omitted); *accord*, *Eastman Kodak v. E.I. DuPont de Nemours & Co.*, 284 F. Supp. 389, 395 (E.D. Ten. 1968); *Monsanto Co. v. Kamp*, 269 F. Supp. 818, 822 (D.D.C. 1967).

court on appeal. Further, these decisions wisely place the burden on the proponent of such "new" evidence to establish that it has not waived its rights.

This rule should be applied here. ARS respectfully moves the Court to exclude the documents and testimony offered by CGI that were not presented to the Board below.

Dated: October 31, 2006                                         Respectfully submitted,


By: /s/ Kevin M. Flowers
Fred A. Kelly, Jr. (BBO # 544046)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Tel: 617-345-1000
Fax: 617-345-1300

Kevin M. Flowers (*pro hac vice*)
Matthew C. Nielsen (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448

COUNSEL FOR PLAINTIFF APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.