# EXHIBIT C

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:    )   Art Unit: 184
   A. Skoultchi          )
                         )   Examiner: S. Ziska
Serial No. 07/432,069    )
                         )   Attorney's Docket No. A-55129
Filed: November 6, 1989  )                        CELL-003
                         )
For: PRODUCTION OF PROTEINS )
    USING HOMOLOGOUS     )   San Francisco, California
    RECOMBINATION        )
                         )   Date: September 18, 1991



CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the United States Postal Service as First Class Mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, DC 20231 on September 18, 1991.

Signed: _____
       Roberta Morehead

RESPONSE UNDER 37 C.F.R. §1.116

The Commissioner of
Patents and Trademarks
Washington, D.C. 20231

Sir:

In response to the FINAL REJECTION of July 15, 1991, the Examiner is respectfully requested to withdraw the rejections in view of the following remarks.

It is noted that the rejection of Claims 1, 8 and 20 under 35 U.S.C. §112, first paragraph has been withdrawn.

The rejection of Claims 12 and 24 on the same statutory basis is maintained. The Examiner is of course correct in stating that the higher $K_m$, the less tightly is the substrate bound. The fact is that it would appear that with a higher $K_m$ of the introduced DHFR gene, higher amplification is achieved. In effect, Applicant's observation is that the higher the level of methotrexate required for inhibition, the greater the amplification. The Examiner has not indicated why this

A-55129
CELL-003
        - 1 -

observation is incorrect, nor why proof should be proffered to establish it. The Examiner is therefore respectfully requested to withdraw the rejection.

All of the claims are rejected on the prior art under 35 U.S.C. §103. Before considering the individual references again, some comment concerning the subject invention is deemed warranted. First, there is a goal to the subject invention. The goal is to provide a method for expression of a target mammalian gene. As part of this goal, isolation of the gene and establishing that one has the complete gene with the appropriate transcriptional regulatory region is avoided. All that is required for the subject invention is knowing a sequence at the target locus.

The method has a number of steps that are required. In a first step, one uses homologous recombination to provide for the integration of an amplifiable gene at the target locus. One then must select for the integration of the amplifiable gene at the target locus, either by means of the amplifiable gene as a marker or by an additional marker included in the original construct. One then fragments the genome to relatively large fragments, to ensure that there will be fragments which carry the amplifiable gene and an intact gene. One then transforms an expression host with the fragments, where the fragments will include the target locus and the amplifiable gene. One then selects for clones which have the fragment containing the target locus and the amplifiable gene integrated into the genome. Finally, one amplifies the target locus by means of an amplifying agent for the amplifiable gene.

The rejection in no way suggests that this process is not novel. Rather, the rejection specifically provides that there is some antecedent basis for each of the steps. Applicant is not stating that each of the steps as an individual step is a

A-55129
CELL-003

- 2 -

91

patentable invention. Rather, it is the composite of using homologous recombination to provide a means whereby one may transfer a target gene without isolating the target gene to an expression host and obtain efficient expression of the target gene in the expression host, by means of amplification.

The rejection states that each of the steps are old. The primary reference, Kamark, is concerned with obtaining high levels of expression of a CEA-antigen. Kamark first transfects a mouse cell line with human genomic DNA and a cotransfectant as a marker. Using FACS, Kamark selects the brightest cell populations, expands and resorts. DNA from one of the mouse cell clones is used to repeat the transfection and selection procedures. A particular cell population is then repeatedly expanded and sorted and a stable "amplificant" is reported. Since enhanced expression can come from the site at which the DNA is integrated, for example downstream from an enhancer, and stabilization of the foreign DNA can occur under a variety of conditions for a variety of reasons, all we know from Kamark is that with CEA and using a first transfection of human DNA into a mouse line and then a second transfection of mouse DNA containing the human integrated sequence into the same mouse line, and then repeatedly selecting by FACS or enhanced expression, one can obtain a clone which provides enhanced expression. There is no amplifiable gene, there is no clear mechanism as to how the improved result occurred, and there is a methodology which may or may not be extrapolatable to other systems.

Kamark states that the procedure provides for increased copy number. This would suggest that there was more than one fragment integrated into the particular cell and that by uneven recombination, one obtained multiple copies. Assuming this is true, although the evidence for the proposition is scanty, it is not seen how this is relevant to the subject invention. The

A-55129
CELL-003
- 3 -
92

subject invention obtains multiple copies, not by providing for multiple integrations, followed by selecting for uneven exchanges, assuming this is the mechanism, but by homologous recombination by targeting an amplifiable gene to a target locus. While the results are allegedly the same, enhanced expression, the methods are totally different. Thus, it is not seen how Kamark suggests the subject invention.

The Examiner states that Applicant has not provided evidence that the choice of the cell host is material. If the choice of cell host was not material, there would be little need for the subject invention. The fact is that many mammalian cells are not convenient to growing in culture. If they were, one would only have to take the cells of the host and use those cells for expression. Only the first part of the subject invention would be necessary, namely targeting a locus with an amplifiable gene. However, the fact is that there are many cell lines which have been established which are good expression hosts and will allow for the efficient stable expression of genes from other hosts. Therefore, in accordance with the subject invention, one provides for the transfer from the natural host, which is not likely to be a convenient expression host, to an expression host of known characteristics, which allows for efficient expression of the desired product. Thus, it follows naturally from the subject invention, that one would not use the native host for expression.

Furthermore, Kamark transfects his human DNA into a mouse host, contrary to the subject invention, where the first transfection is into the source of the gene to provide for the amplifiable marker. Again, the Kamark invention and the subject invention diverge, because of their different purposes and different methodology.

While Applicant has not claimed a human cell, it is not seen why that is not a significant aspect of the subject invention.

A-55129
CELL-003

- 4 -

93

The subject invention is going to be used with the cells having target genes of interest, where the cells are not convenient expression hosts. One of the worst cell species to deal with in large scale culture is human cells. Particularly, where one wishes to maintain a stable culture, neoplastic cells will often be used, which raise serious problems for purification. Thus, as a practical matter, the subject invention has particular application to human cells, but need not be restricted to human cells.

As the Examiner is well aware, there are two considerations when applying combinations of references. First, the secondary reference must conveniently fit into the primary reference. It is not appropriate that the primary reference or the secondary reference should require significant changes in the manner in which they perform their procedures in order for the references to mesh. Secondly, either one or both of the primary and secondary references must have some indication or suggestion as to the combination. The basis for the combination must not come solely from the application.

To recapitulate, Kamark transfects mouse cells with human DNA and selects for expression of a particular antigen. Kamark then fragments the mouse genome with the integrated human DNA and it is not clear at this point whether cells which had been previously transfected were transfected a second time or totally new cells were transfected. Based on the amplification and an explanation for the amplification, it would suggest that the same cells were transfected a second time. However, this is uncertain, since the same selection procedure is used, where all of the primary transfectants would be expected to be selectable.

Compare this directly with the subject process, where Applicant transfects human cells with a construct comprising a amplifiable gene and then selects for transfectants. After this

A-55129
CELL-003

- 5 -

transfection, the human genome is fragmented and transformed into an expression host, where is it integrated. Clones containing the integrant are selected, the target gene amplified by means of the amplifiable gene, and cells providing for a high level expression selected. Quite clearly, the approaches are very different.

Ringold is cited for teaching that DHFR can be used for amplification. Applicant need not discuss this issue, since it is admitted.

Song is concerned with correcting a lesion in a foreign gene introduced into a human cell. These same cells are then transfected with a second defective neo gene, where the defect is different from the first neo gene. When homologous recombination occurs, a functional neo gene is achieved.

The Examiner indicates that Song uses first and second transfections. This is true. However, the purpose, the materials and the results are quite different from the subject invention. Kamark uses two transfections. However, again the procedures are quite different, as well as the purpose, although the result is somewhat analogous to the subject invention.

Applicant need not argue Rubnitz, since the subject invention is not dependent upon the amount of homologous DNA which is employed.

The rejection is no more than the statement that none of the steps are original. However, the Examiner has not shown how or where the various references suggest the combination, nor how one reference would be merged with another reference to suggest the subject invention. It is not clear why one would introduce Ringold into either Kamark or Song. It is not seen how the method of Kamark amplification would be applicable to the subject invention or why one would substitute a technique used by Kamark with the technique taught by Ringold, except in light of the subject invention. Nor is it obvious where the literature teaches

A-55129
CELL-003                              - 6 -            95

that one should use homologous recombination to introduce an amplifiable gene at a target locus for expression of the gene at the target locus, followed by fragmentation of the genome to obtain a fragment comprising both the amplifiable gene and the target gene and use these fragments to transfect into an expression host for efficient expression of the target gene.

Once the concept is taught, there is no difficulty in finding references which show individual steps. Much like in a mechanical invention, almost invariably all the parts are known. It is the bringing together of known parts in a novel way to produce a desirable result that makes for a patentable invention. That is the situation here.

For all of the above reasons, the subject application is considered in good and proper form for allowance, and the Examiner is respectfully requested to withdraw the rejections and pass this application to issue.

If in the opinion of the Examiner, a telephone conference would expedite the prosecution of the subject application, the Examiner is invited to call the undersigned at (415) 494-8700.

Respectfully submitted,

FLEHR, HOHBACH, TEST,
ALBRITTON & HERBERT

By /s/ Bertram I. Rowland
Bertram I. Rowland, Ph.D.
Reg. No. 20,015

FLEHR, HOHBACH, TEST, ALBRITTON & HERBERT
4 Embarcadero Center, Suite 3400
San Francisco, CA 94111-4187
Telephone: (415) 494-8700

A-55129
CELL-003

- 7 -

96