**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CELL GENESYS, INC., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-12448-MLW |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-11810-MLW |
| | ) | |
| CELL GENESYS, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant, and | ) | |
| | ) | |
| TRANSKARYOTIC THERAPIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF ARS MOTION *IN LIMINE* TO EXCLUDE
HEARSAY RELIED ON BY CGI IN ITS "JAPAN" MEMORANDUM**

## I.    INTRODUCTION

ARS respectfully submits this memorandum in support of its motion to exclude from evidence certain documents relied upon by CGI in support of its motion to reverse the Board's decision that claims 107-109 are unpatentable over the "Japan" reference.[1] As explained below, statements in those documents upon which CGI has relied are inadmissible hearsay that should be excluded from evidence in this "trial on the written record."

## II.    ARGUMENT

### A.    Hearsay is inadmissible unless the party relying on it proves that it falls within an exception

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).[2] "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed. R. Evid. 802. Hearsay is admissible only if it falls within one of the exceptions in Fed. R. Evid. 803, 804, or 807. The party seeking to rely on hearsay bears the burden of proving that one of the exceptions to the hearsay rule applies.[3]

---

[1] "Memorandum of Cell Genesys, Inc. – CGI's Claims 107 – 109 Are Not Unpatentable Over the 'Japan' Reference" (Court Docket No. 128) (referred to hereafter as "CGI's Memorandum" or "CGI Memo").

[2] Rule 801(a) provides that a "'statement' is (1) an oral *or written assertion* or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Fed. R. Evid. 801(a) (emphasis added).

[3] *United States v. Samaniego*, 187 F.3d 1222, 1224 (10th Cir. 1999) ("The obligation of establishing the applicability of the hearsay exception [under Rule 803(6)] for these records falls upon the . . . proponent of the evidence.").

**B.    The documents CGI submitted in support of its "Japan" memorandum contain inadmissible hearsay**

In its "Japan" memorandum, CGI points to a number of documents to support its assertions that Dr. Arthur Skoultchi (i) conceived the methods of claims 107-109 prior to the August 29, 1989 effective date of the "Japan" reference, and (ii) exercised continuous diligence between August 28 and November 6, 1989 in preparing his patent application for filing. The out-of-court statements in those documents on which CGI relies are hearsay, and are thus presumptively inadmissible under Fed. R. Evid. 802. Moreover, CGI gave no reason in either its memorandum or in its "appendices" why those documents or the hearsay within them should be admitted under any exception to the hearsay rule.

**1.    The documents dated February 15 and April 26, 1989**

CGI relies on two handwritten pages from a personal notebook purportedly kept by Dr. Skoultchi bearing dates of February 15, 1989 and "April 26" respectively.[4] CGI says that those documents show that "the 'specific and complete' idea of the subject matter of Claims 107-109 came to Skoultchi" on February 15 and that he communicated something about that idea to CGI's patent attorney, Dr. Bertram Rowland, on April 28, 1989.[5]

The statements in those documents are out-of-court statements which CGI has relied upon for the truth of the matter asserted, *i.e.*, that the documents were generated on the dates written on those pages, and that Skoultchi expressed the ideas set out on those pages by those dates. These statements are therefore hearsay.

---

[4] CGI "Record," Court Docket No. 129-2 (at CGI 4004, 4025).

[5] *See* CGI Memo at 15-16 and "Appendix" H at H-1 to H-4.

In CGI's "Japan" memorandum, it did not show that these statements fall within any exception to the hearsay rule, e.g., "records of regularly conducted activity" under Fed. R. Evid. 803(6) (*i.e.*, "business records"). Rule 803(6) provides an exception to the hearsay rule for:

> a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, **if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness**, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

(emphasis added).

In similar circumstances, the Federal Circuit has affirmed the exclusion of notebooks offered as a "business record" when there was (i) a "lack of evidence of . . . policies regarding maintenance of laboratory notebooks" and (ii) a lack of evidence that the "notebooks were 'records of regularly conducted activity,' [other than the purported inventor's] uncorroborated testimony . . . ."[6] Similarly, the Federal Circuit has affirmed a trial court's exclusion of internal invention disclosure documents because, *inter alia*, the party offering them failed to offer testimony from a witness about "the record-keeping process related to them, *a requirement for admissibility of documents under the business records exception*."[7]

As in those cases, CGI has failed to point to any evidence suggesting that these documents were "kept in the course of a regularly conducted business activity" or that it "was the

---

[6] *Chen v. Bouchard*, 347 F.3d 1299, 1307–1308 & n.2 (Fed. Cir. 2003). In *Chen*, the court also affirmed the Board's rejection of the same notebooks under the "catch-all" exception found in Rule 807 because the appellant "offered no evidence of the 'circumstantial guarantees of trustworthiness" other than the very documents [offered] . . . ." *Id*. at 1308 n.3.

[7] *Kolmes v. World Fibers Corp.*, 107 F.3d 1534, 1543 (Fed. Cir. 1997) (emphasis added).

regular practice of that business activity to make the . . . record."[8] There is simply no evidence that the entries in this notebook were in any way records of regularly conducted business activities.[9]

Nor has CGI made any other showing that demonstrates the trustworthiness of those documents; rather, CGI's "Record" indicates that those pages are of questionable reliability. Skoultchi admitted that he never showed this notebook to anyone in 1989, and that the entries were not witnessed at any time.[10] Skoultchi never submitted the notebook to CGI or his academic employer. Instead, he kept it in his personal files for an unknown number of years, and then handed it over to former outside counsel for CGI on some unknown date. That counsel apparently delivered it to CGI's current outside counsel on some unknown date, then it was inexplicably produced years later in this action. CGI has never explained why after so many years of litigation, this notebook came to light only recently.

Consequently, the notebook pages dated February 15 and April 26, 1989 are inadmissible hearsay and should be excluded from evidence.

---

[8] Even if CGI later argues that this document or others were its own business records, that would seem inconsistent with its statements that the documents it relies on "were secured by subpoena." *See* CGI Memo at 2.

[9] For example, it does not appear that it was routine for Skoultchi to record events relating to his invention or his patent application in this notebook. It certainly does not appear that it was routine for Skoultchi to make entries such as the entry he supposedly made on February 15, or even the entry he supposedly made on April 26. Moreover, the April 26 entry that CGI relies on as evidence of a conversation between Rowland and Skoultchi (*see* " Appendix" H to CGI Memo at H-3) is inconsistent with the testimony of Rowland himself, who said that he learned of Skoultchi's invention at a July 1989 meeting, not during a telephone conversation in April. *See* CGI "Record," Court Docket No. 129-35 (Transcript of Deposition of Bertram Rowland at pp. 34-35).

[10] CGI "Record," Court Docket No. 129-30 (Transcript of Deposition of Arthur Skoultchi, at pp. 98–104). *See also Stern v. Trustees of Columbia Univ*., 434 F.3d 1375, 1378 (Fed. Cir. 2006) ("Regardless of the contents of the notebooks, unwitnessed laboratory notebooks on their own are insufficient to support [a] claim of []inventorship.").

### 2.    The document dated July 24, 1989

CGI relies on a document bearing a handwritten date of July 24, 1989, which it says is a fax from Mr. Levin to Mr. Rowland that "reflects each of the elements of claims 107-109."[11] The statements in that document are out-of-court statements which CGI has offered for the truth of the matters asserted (that as of July 24, 1989, Skoultchi expressed a method reflecting those "elements"). The document contains only hearsay statements, and CGI did not point to any evidence that qualifies this document to be admitted under any exception to the hearsay rule.

For example, CGI has not pointed to any testimony demonstrating that this document was kept in the course of a regularly conducted business activity, or that it was the regular practice of CGI to make such a record. Indeed, CGI's own witnesses contradicted one another concerning the origin and transmission of this document, which casts doubt on the trustworthiness of the document.[12] And, like Skoultchi's purported notebook pages, CGI has not explained why this document never surfaced during the eight years in which the interferences below were pending. For these reasons, this document has not been shown to be trustworthy, and it should therefore be excluded from evidence.

---

[11] *See* CGI "Record," Court Docket No. 129-5 (at CGI 3650-53); CGI Memo at 12-13 and "Appendix D" at D-1, and D-5 to D-7.

[12] Although CGI says that Levin asked Skoultchi to prepare this document, and then sent the document to Mr. Rowland (CGI Memo at D-1), the provenance of this document is unclear. Levin testified that he believed Skoultchi prepared it. *See* CGI "Record," Court Docket No. 129-28 (Transcript of Deposition of Mark Levin at pp. 110-111). Skoultchi, on the other hand, said that while some of the ideas in the document looked like his, he did not believe he was the author, and did not know who was the author. *See* CGI "Record," Court Docket No. 129-31 (Transcript of Deposition of Arthur Skoultchi at pp. 193-194). Levin was not sure if the document was ever sent to Rowland (*see* CGI "Record," Court Docket No. 129-28 (Levin Transcript at pp. 111–112)), and Rowland said nothing about having received such a document (*see* CGI "Record" at Court Docket No. 129-35 (Rowland Transcript at pp. 34–35).

### 3. The document dated July 24-25, 1989

CGI relies on a document that it says reflects the minutes of a CGI scientific advisory board meeting held on July 24-25, 1989, in Menlo Park, California, at which Skoultchi described his invention.[13] CGI offered this document to prove the truth of the matter asserted (*i.e.*, that Skoultchi made the statements reflected in those minutes in a presentation on July 24-25, 1989).

This document contains only hearsay, and CGI has not shown that this document falls within any exceptions to the rule against hearsay. For example, CGI has not offered any testimony that this was a record kept in the course of a regularly conducted business activity, or that it was a regular practice of the business activity to keep such a record. Moreover, several questions linger concerning the trustworthiness of this document. For example, CGI says that Dr. George Savage was "the author of the document,"[14] but Mr. Levin testified that he was "almost certainly" the author.[15] CGI also says that Savage "has a vivid recollection of the actual meeting," and that "[h]is drawing was intended to reflect [how]. . . the presentation was drawn on a white board in front of the Scientific Advisory Board and others."[16] Yet when asked whether Skoultchi made such a drawing, Savage testified that he could not remember.[17] Nor has CGI pointed to any evidence showing that if Savage actually did create the document, that he did so contemporaneously with (or even shortly after) the meeting.

---

[13] *See* CGI "Record," Court Docket No. 129-6 (at CGI 3231); CGI Memo at 8, 13-14 and at "Appendix" E at E-6.

[14] "Appendix" E to CGI Memo at E-2.

[15] CGI "Record," Court Docket No. 129-28 (Levin Transcript at pp. 99-100).

[16] "Appendix" E to CGI Memo at E-2.

[17] *See* CGI "Record," Court Docket No. 129-32 (Transcript of Deposition of George Savage at pp. 54-55).

For these reasons, the Court should exclude this document as containing inadmissible hearsay.

### 4.    The documents dated August 26 and September 20, 1989

CGI relies on two purported iterations of a "business plan," dated August 26, 1989, and September 20, 1989, respectively, as evidence of Skoultchi's conception and diligence.[18] CGI points to several out-of-court statements in the document dated August 26 and a few such statements in the document dated September 20, all of which it relies on for the truth of the matters asserted.[19]

These documents contain only hearsay, and CGI has not pointed to any evidence establishing that the hearsay on which it relies in these documents falls within any exception. Although Dr. Savage claimed that he and Mr. Thompson authored the document dated August 26, CGI has not demonstrated that the Court can trust that Dr. Savage and Mr. Thompson made the statements in that document on August 26 (as opposed to later). The document says "Cell Genesys *has applied* for a patent for its technique of producing human proteins using engineered mammalian cell lines, created using Homologous Recombination."[20] If that refers to the filing of Skoultchi's patent application, this document must have been created *after* November 6, 1989 (the filing date of that application), not in August, 1989. And none of Savage, Thompson or Levin testified about the document dated September 20 or the statements made in that document (none of those witnesses even confirmed that the document is authentic). Consequently, there is no reason to trust the out-of-court statements therein.

---

[18] *See* CGI "Record" at Court Docket No. 129-9 (at CGI 3260-3313) and No. 129-14 (CGI 4430-64).

[19] *See* CGI Memo at 14, 19, and "Appendix" F at F-1 to F-2.

[20] *See* CGI "Record," Court Docket No. 129-10 (at CGI 3289) (emphasis added)

For these reasons, the documents dated September 8 and September 20, 1989 contain inadmissible hearsay, and should be excluded from evidence.

### 5.    The document dated August 29, 1989

CGI relies upon several out-of-court statements made in a draft patent application dated August 29, 1989.[21] Because CGI has relied on those statements for the truth of the matters asserted (i.e., that on August 29, 1989, Skoultchi had intellectual possession of the methods discussed in the application), that document contains hearsay.

Although CGI refers to Rowland's testimony that he prepared the draft application, it has pointed to no evidence that the document falls within any exception to the rule against hearsay.

There simply is no evidence to allow the Court to trust that the statements in that document were actually made on or before August 29, 1989. Indeed, there is no evidence establishing whether the August 29 date on this document was a starting date, a completion date, or a date later applied to the document. On closer inspection of CGI's "Record," it appears that this document was not completed by August 29, because (i) Rowland never said a draft application was completed on August 29[22], (ii) Rowland's September 6 billing entry states "Review and revise"[23] and a cover letter he apparently prepared suggests that he sent the draft application to Skoultchi on September 6[24], (iii) there is no evidence that Rowland sent an earlier draft to Skoultchi, and (iv) Skoultchi said he marked up the August 29 document (which must

---

[21] See CGI "Record" at Court Docket No. 129-11 (page 10 of 17) to No. 129-12 (page 12 of 18); CGI Memo at 14-15 and "Appendix" G at G-1 to G-3.

[22] See CGI "Record," Court Docket No. 129-35 (Transcript of Deposition of Bertram Rowland).

[23] See CGI "Record," Court Docket No. 129-17 (page 34).

[24] See CGI "Record," Court Docket No. 129-12 (at CGI 3659-60).

therefore have been sent to him on September 6).[25] One simply cannot trust that the document was generated on August 29 (as opposed to September 6), and it should therefore be excluded from evidence as containing inadmissible hearsay.

### 6.    The document dated November 1, 1989

CGI relies on a document dated November 1, 1989[26] that is said to be a cover letter from Rowland to Skoultchi enclosing a draft of Skoultchi's patent application. CGI relies on this document to show that Rowland prepared a patent application disclosing the subject matter of CGI's current claims 107-109 by November 1, 1989.[27] CGI relies on the out-of-court statements in this document for the truth of the matter asserted (*e.g.*, that the document existed on this date and the draft application was transmitted to Skoultchi on that date). These statements are thus hearsay. Because CGI did not offer evidence showing that the statements are subject to any exception to the hearsay rule (*e.g.*, no evidence, even from Rowland, that it was his regular practice to create documents like that, or that he created that document) the document should be excluded from evidence.

## III.    CONCLUSION

For the foregoing reasons, ARS respectfully submits that the Court should exclude from evidence or disregard the aforementioned documents in this "trial on the written record."

---

[25] *See* CGI "Record," Court Docket No. 129-30 (Skoultchi Transcript at p. 141).

[26] *See* CGI "Record," Court Docket No. 129-26 (at CGI 3656-57).

[27] *See* CGI Memo at 18-19 and "Appendix" G.

Dated: October 31, 2006                    Respectfully submitted,


                                           By: /s/ Kevin M. Flowers
                                           Fred A. Kelly, Jr. (BBO # 544046)
                                           NIXON PEABODY LLP
                                           100 Summer Street
                                           Boston, MA 02110
                                           Tel: 617-345-1000
                                           Fax: 617-345-1300


                                           Kevin M. Flowers (*pro hac vice*)
                                           Matthew C. Nielsen (*pro hac vice*)
                                           MARSHALL, GERSTEIN & BORUN LLP
                                           6300 Sears Tower
                                           233 S. Wacker Drive
                                           Chicago, IL  60606-6357
                                           Tel: (312) 474-6300
                                           Fax: (312) 474-0448


                                           Counsel For Plaintiff APPLIED RESEARCH
                                           SYSTEMS ARS HOLDING, N.V.