IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CELL GENESYS, INC., | ) |
| Plaintiff/Counterdefendant, | ) |
| v. | ) C.A. No. 05-12448-MLW |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V. | ) |
| Defendant/Counterclaimant. | ) |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 04 11810 MLW |
| CELL GENESYS, INC. AND TRANSKARYOTIC THERAPIES, INC. | ) |
| Defendants. | ) |

**REPLY OF CELL GENESYS, INC. TO THE OPPOSITION OF ARS TO CGI'S MEMORANDUM THAT THERE IS INTERFERENCE-IN-FACT**

The Court's Order of August 9, 2006 directed Cell Genesys, Inc. ("CGI") to brief the issue of whether there is an "Interference-in-Fact" between CGI Claim 106 and any claim of the ARS patent involved that was not found by the Board to be unpatentable. The Order notes that the issue is to be argued "on the record" as agreed to by both parties, with CGI indicating, with respect to the issue of Interference-in-Fact, what other testimony would be required.

CGI's Memorandum (Docket No. 126) ("Initial Memo") observed that CGI Claim 106 rendered the recitations of Claim 24 of the ARS '071 patent obvious, and that Claim 24 of ARS provided sufficient information that, if taken as prior art to Claim 106, it rendered Claim 106

obvious. At no time has CGI argued that one anticipated the other. By the same token, CGI continues to maintain that the prior art, absent ARS Claim 24, fails to render CGI Claim 106 obvious. That is not the test for obviousness. Title 37 C.F.R. 1.601, which is controlling for the purposes of this interference, makes it clear that there is Interference-in-Fact where one party's claim, *assumed to be prior art*, renders a corresponding claim of the other party obvious. The Courts have held Interference-in-Fact is determined under a two-way obviousness test--the first party's claims must render the second party's claims obvious, and vice versa. Where, as here, CGI's claim 106 renders ARS Claim 24 obvious, and ARS Claim 24 renders CGI's Claim 106 obvious, an Interference-in-Fact exists.

## I.   OVERVIEW

Much of the ARS Opposition is devoted to establishing what CGI observed at the outset. ARS devotes the first twelve pages of its Opposition to establishing that Interference-in-Fact is a two-way test, that CGI Claim 106 does not anticipate ARS Claim 24, and that ARS Claim 24 does not anticipate Claim 106. CGI agrees. ARS's consideration of obviousness begins at page 13 of its Opposition.

ARS essentially offers two arguments to support its position that Claim 106 does not render Claim 24 obvious. First, ARS argues at length that it would not have been obvious to modify Claim 106 to include a selectable, amplifiable gene like DHFR in the cell line of Claim 106, because there would have been no *motivation* to do so. ("The relevant question here is not whether the individual elements of Claim 24 were known in the art; the question is whether CGI has established in its Memorandum that one of ordinary skill in the art in 1989, looking at Claim 106, would have been motivated to combine the specific elements found in claim 24, in the manner recited in Claim 24, with a reasonable expectation of success.") *Opp.* at p. 14.

Second, ARS argues that the recitation of a selectable marker gene and an amplifiable gene in its Claim 24 cannot both be DHFR. In so arguing, ARS ignores the teaching of its own patent that the selectable marker gene and the amplifiable gene can and should be the same in some circumstances, like DHFR. Instead, ARS argues that the '071 patent indicates that where there is endogenous DHFR in the cell being manipulated, one should not rely on a single DHFR gene to satisfy both the marker gene and amplifiable gene roles.

CGI responds to both below. With respect to motivation, CGI observed:

> This particular step was commonplace in the art well prior to 1989 as a means for identifying successful transformation of genetic material. Evidence supporting this includes the expert report of Dr. Thea Tlsty, U.S. Patent 5,024,939 and the work of the very inventor involved, Arthur Skoultchi, who, together with Raju Kucherlapati disclosed the use of amplifiable selectable genes like DHFR for identification of successful transformants and amplification of the genetic material of interest in 1984 in CRC Crit Rev Biochem. 16(4):349-79 (1984), See, p. 358, Section D, "Amplifiable Vectors" and p. 359, Section A, "Selectable Genes" both identifying DHFR. Given the uniform high level of skill in the art, one familiar with this art would have followed the teachings of these sources without inventive effort, to add to the subject matter of CGI Claim 106 a selectable amplifiable gene like DHFR. These prior art sources are discussed below.

*Initial Memo.*, p. 9. ARS never addresses this argument, other than to complain that the '939 patent, one of four references relied upon for motivation, is "new." The '939 patent is not new-- it is simply reflective of that art available to the skilled researcher in 1989--the pertinent time frame as even ARS concedes.

With respect to the question of selectable marker gene vs. amplifiable gene, ARS points to no evidence whatsoever to support its contention that one of skill in the art would not consider DHFR, a well known and widely used selectable, amplifiable gene, to satisfy both requirements. Instead, it relies on a cautionary recitation in the '071 specification that in certain circumstances, it may be better to have two different genes. As detailed below, cautionary notes in a specification do not form limitations of the claims. Claims in an interference are given their

3

broadest reasonable scope given the specification they derive from. The specification in question clearly indicates that DHFR may satisfy both the selectable marker requirement and the amplifiable gene requirement. As ARS Claim 24 embraces this possibility, Claim 106, together with the teaching of the art to employ DHFR when modifying the genome of a cell to detect successful modifications, clearly teaches subject matter embraced by Claim 24--it renders Claim 24 obvious.

## II.   AMPLE MOTIVATION EXISTS TO ADD DHFR TO THE CONSTRUCT USED TO MODIFY CGI CLAIM 106

ARS does not disagree that the use of an amplifiable, selectable marker gene like DHFR was well known in the art. Thus, it is clear that the sole difference between CGI Claim 106, treated as prior art, and Claim 24 of ARS, is the addition of one feature, DHFR. The heart of the ARS argument appears at the top of page 16 of its Opposition.

> CGI never addresses whether one would have been motivated to add both the selectable marker gene and the amplifiable gene required in Claim 24 to the cell of Claim 106.

In fact, as noted above, CGI clearly addressed the motivation. As reflected in the prior art documents cited above, and at page 9 of CGI's Initial Memo, one would have been motivated to add DHFR to the cell genome of Claim 106 for the same reason it had been introduced more than five years before--to aid in selection of successful recombinant cells. When one seeks to modify cells by recombinant DNA technology, including homologous recombination, the process is not undertaken one cell at a time. A multiplicity of cells is treated at once, in the hopes that at least some will be successfully transformed. How then does one identify those cells that have successfully incorporated the new DNA in their genome? A selectable marker gene is employed. This is hardly a new concept.

4

As shown in CGI's Initial Memo, the most persuasive evidence that use of an amplifiable selectable marker like DHFR was an obvious addition to a cell modified by the insertion of DNA, like the cell of Claim 106, comes out of the very art to which the ARS '071 patent is directed, the expression of the THSß gene. It is in fact Scott Chappel's ("Chappel") own prior art. Christie Kelton and co-patentees taught the conventional use of an amplifiable selectable marker such as DHFR in an expression construct to modify a cell line to express THSß. U.S. Patent 5,240,832 recites: "The expression vector also contained the mouse dihydrofolate reductase (DHFR) gene for a selectable and amplifiable marker." Col. 4, ll. 16-19. This particular piece of prior art lists as a co-inventor, Chappel, the inventor of the involved '071 patent of ARS. Chappel and ARS can hardly deny his own prior teachings. This art is neither new to ARS, nor is it new to the interference.

During Chappel's deposition, Chappel was asked specifically about this piece of prior art. He agreed that the use of various DNA sequences, including the selectable amplifiable gene, DHFR, were all available and used by those of ordinary skill in the context of transforming cell lines to express target genes, well before the '071 patent was ever made the subject of a patent application. Chappel Transcript, pages 116-118. One can look through the ARS Opposition from one end to the other, and ARS does not so much as mention the Chappel prior art reflected in the '832 patent. Those of ordinary skill in the art would naturally turn to the inventor's own reference, directed to expression of the very same protein as that addressed in the ARS '071 patent, THSβ, for information on how to select the successfully modified cells. No additional motivation is required.

### III. DHFR SATISFIES BOTH THE SELECTABLE MARKER GENE AND AMPLIFIABLE GENE RECITATIONS OF CLAIM 24

As noted above, the principal argument offered by ARS is that modification of Claim 106 by adding DHFR to the construct inserted into the cell does not satisfy Claim 24 of ARS. ARS argues that the difference between Claim 106 and Claim 24 is twofold--a selectable marker gene and an amplifiable gene. Yet, the '071 patent, the ARS patent involved in the interference itself, specifically teaches that DHFR, among other amplifiable genes, can also be the selectable marker gene called for by the claim.

> Region C is a positive *selectable marker gene* which is capable of rendering the transfected cell line resistant to a normally toxic environment. Examples of such genes are adenosine deaminase (ADA), aminoglycoside phosphotransferase (neo), ***dihydrofolate reductase*....**
> U.S. Patent 5,272,071 Col. 10, lines 56 – 61 (emphasis supplied).

There can be no question that the '071 patent itself contemplated DHFR as a candidate to satisfy the requirement of Claim 24 that a selectable marker gene be present. Immediately after the discussion of candidate selectable marker genes, the '071 patent turns to a discussion of amplifiable genes.

> In addition to the positive selectable marker gene, a amplifiable gene is also optionally included in the constructs at region D. Amplifiable genes are genes that lead to an increase in copy number when under selective pressure. The copy number of a gene positioned adjacent to the amplifiable gene will also increase. ***Amplifiable genes that can be utilized include DHFR....***
> U.S. Patent 5,272,071, Col. 10, l. 68 – Col. 11, l. 4 (emphasis supplied).

Again, clearly, without ambiguity, the '071 patent specification acknowledges that the presence of DHFR in the construct, an obvious selection for the cell of Claim 106, satisfies the requirement of both the selectable marker gene and the amplifiable gene. The '071 patent confirms this:

> [I]nstead of using two genes, one for positive selection and one for amplification, one gene could be used for both purposes. U.S. Patent 5,272,071, Col. 11, l. 8 – 10.

6

While it is true that the '071 patent includes a caution that under some circumstances, the use of one gene may not be advisable, Claim 24 is not so limited. Claims in an interference are read as broadly as reasonably possible. Board Decision, p. 33, *Bamberger v. Cheruvu*, 55 USPQ2d 1523, 1527 (BPAI 1998) (*A patent claim in an interference is given is broadest reasonable interpretation consistent with the specification*). Clearly, Claim 24, read broadly, and consistently with the specification of the '071 patent as set forth above, should be read to include the embodiment where DHFR serves as both the selectable gene and the amplifiable gene.

Nor is this a new concept. No lesser authority than ARS's own expert witness, David I.K. Martin, testified that DHFR was well known for use as a selectable marker gene when being used to amplify the copy number of genes adjacent it.

> Dihydrofolate reductase ("DHFR") was known and widely used by 1989 as an amplifiable gene, not only for phenotype permitting selection (*i.e.*, resistance to methotrexate) but ***to increase the copy number of an adjacent gene when used as a selectable amplifiable gene.***
> Rebuttal Expert Report of David Martin, ¶ 15 (parenthetical in original, emphasis supplied).

Clearly, when it was convenient to do so in this Interference, ARS conceded that DHFR can serve as an amplifiable gene when used as a selectable marker gene. Modifying Claim 106, for the reasons those of skill would have done in 1989, by adding a DHFR gene, falls within ARS Claim 24. Indeed, Dr. Martin testified that those of skill in the art in 1989 were well familiar with methods of using DHFR as a marker gene to increase expression (commonly used selectable amplifiable gene by 1989). *Id.* at ¶ 16. Dr. Martin also noted that those of skill in the art would have approached the use of methotrexate to employ DHFR as a positive selection marker used for amplification, *Id.* at ¶¶ 18, 23, and that those of skill in the art, armed with Claim 106, would have approached the problem of increasing expression with the knowledge of

7

DHFR described above, and would use it "to design a construct to accomplish the desired goal." *Id.* at ¶ 29. Having already staked out the position that those of skill in the art knew how to use DHFR simultaneously as a selectable marker and an amplifiable gene, having confirmed in the specification of the '071 patent that this is in fact the case, ARS cannot now retreat, and insist that two different genes must be employed to satisfy the requirement that the cell be modified by a construct including a selectable marker gene and an amplifiable gene where the construct includes DHFR.

Claim 24 is obvious over Claim 106, in view of the prior art.

## IV.   CLAIM 106 IS OBVIOUS GIVEN CLAIM 24

In order for an Interference-in-Fact to exist, not only is it necessary that Claim 24 be obvious over Claim 106, but it is also necessary for Claim 106 to be obvious over Claim 24. The entirety of the ARS discussion of this issue appears at page 13 of the Opposition. The fundamental argument offered is that the Board found, and CGI agrees, that Claim 106 "recites specific provisions that are nowhere found in the prior art." Decision, p. 88. What ARS misses, of course, is that the "prior art" referred to does not include ARS Claim 24. For the purposes of an Interference-in-Fact analysis, however, we assume Claim 24 is part of the prior art. As discussed in CGI's Initial Memo, the choices selected for Claim 106 are obvious, given Claim 24. There are only three choices:

- Claim 24 recites a cell line. Claim 106 specifies a very well known and widely used cell line, 293 embryonal kidney cells.
- Claim 24 recites a DNA regulatory segment. Claim 106 specifies the very well known and widely used CMV promoter/enhancer regulatory segment.

8

- Claim 24 recites as a target gene one which encodes a protein not normally transcribed by that cell line. Claim 106 specifies EPO, which the board found to be a protein not normally expressed by 293 embryonal kidney cells.

Is any one of the selections made, given the teaching of Claim 24, unobvious? No. That they were obvious selections is confirmed, *inter alia*, by the teaching of U.S. Patent 5,024,939. ARS protests that there is no indication that one of skill in the art would turn to the '939 patent to combine with the teachings of Claim 24. The fact that both are directed to the manipulation of cell genomes for altering patterns of expression should be enough.

But ARS mistakes the nature of the reliance on the '939 patent. The parallels between Claim 24 and Claim 106 are so strong that no additional teaching is necessary. Nothing from the '939 patent need be "combined" with Claim 24 to arrive at Claim 106. One simply needs to make specific choices for each genus recited in Claim 24. That the choices made in Claim 106 are obvious, given Claim 24, is made clear from the fact that the '939 patent specifically teaches to modify the genome of a 293 embryonal kidney cell line with the CMV regulatory sequence for the purposes of expressing EPO. All the selections necessary in a single, complete example. Truly, there is nothing unobvious about the selections made in Claim 106, given the teaching of Claim 24.

## V.     ADDITIONAL EVIDENCE

The Court's Order of August 9, 2006 directed CGI to identify what additional evidence, besides the "record" the parties agreed would be relied upon (the original interference filings plus those documents referenced in the Summary provided with CGI's submission on bifurcation on August 1, 2006) would be necessary to demonstrate the existence of an

Interference-in-Fact. The identity of additional evidence could be necessary since this was not an issue briefed below, and not advanced by CGI in its August 1, 2006 submission.

CGI did just that--identifying testimony that Thea Tlsty, Ph.D., would provide with respect to the selectable amplifiable gene DHFR, U.S. Patent 5,024,939, and if necessary, the testimony of Chappel. CGI also noted that it was not actually necessary to take new evidence. Chappel's transcript is available to the Court and both parties, and was taken pursuant to the Order of this Court of January 18, 2006. Thea Tlsty, Ph.D. did in fact proffer an expert report identifying specifically how she would testify if called. ARS was in such complete agreement with that report that it elected not to take her deposition. The '939 patent is a public record and admissible notwithstanding the hearsay rules of evidence. So the new testimony need not be advanced – the Court can consider this Motion completely on the record. While ARS takes CGI to task for this, *see, e.g.,* footnotes 29 and 31, ARS does not seem prepared to embrace the opportunity to present new evidence, either. *See* the ARS Motion *in Limine*. ARS cannot have it both ways. CGI proposes this Court accept the expert report of Thea Tlsty, Ph.D., and U.S. Patent 5,024,939 as part of the record, together with Scott Chappel's admissions against interest.

## VI.     CONCLUSION

In twenty pages of opposition, ARS expresses only three points of disagreement over the question of law of whether Claim 24 of the ARS '071 patent renders CGI Claim 106 of the '390 application obvious, and vice versa. ARS argues that there is no motivation to combine the teaching of the art with respect to DHFR with the teaching of Claim 106. Fundamentally, even ARS's own expert witness, Martin, agreed with this. It is not a supportable position. One would have been motivated to select DHFR for the construct used to modify the cell of Claim

106 for the same reason it had been used in the prior art--to identify successfully transformed cells.

Second, ARS argues that the recitation in Claim 24 that one must have a selectable gene and an amplifiable gene requires two genes be added to the cell line of Claim 106. Yet, the prior art, experts Tlsty and Martin, and Chappel himself, acknowledge that DHFR satisfies the role of the selectable marker gene and the amplifiable gene. This one gene, notorious in the art of genetic recombination, is the only difference between Claim 106 and Claim 24.

Finally, ARS argues that it would not have been obvious to select a 293 kidney cell line for modification with CMV regulatory elements to express EPO, given the teaching of claim 24 to modify a cell line with regulatory elements to express a gene not normally expressed, like EPO. These are conventional choices made for conventional reasons, and they are choices that were made together in the prior art. Given Claim 24, it would be obvious to make them again, and arrive at Claim 106.

Claim 24 of ARS and Claim 106 of CGI are obvious, one over the other. There is an Interference-in-Fact. Given interfering claims, be they Claims 107 – 109 of CGI and Claim 3 of ARS, or Claim 106 of CGI and Claim 24 of ARS, it is time this matter was resolved on the one basis common to all interferences, priority.

Respectfully submitted,

CELL GENESYS, INC.

By its attorneys,

/s/ Steven B. Kelber
Steven B. Kelber
c/o Arnold & Porter, LLP
555 Twelfth Street, NW
Room 900A
Washington, DC 20004-1206
Telephone: 202-942-5747

T. Christopher Donnelly (BBO #129930)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
Telephone: (617) 720-2880

Dated: November 22, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this REPLY OF CELL GENESYS, INC.TO THE OPPOSITION OF ARS TO CGI'S MEMORANDUM THAT THERE IS INTERFERENCE-IN-FACT was filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 22, 2006.

/s/ Steven B. Kelber
Steven B. Kelber