IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CELL GENESYS, INC., | ) |
|     Plaintiff/Counterdefendant, | ) |
| v. | ) C.A. No. 05-12448-MLW |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V. | ) |
|     Defendant/Counterclaimant. | ) |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) |
|     Plaintiff, | ) |
| v. | ) C.A. No. 04 11810 MLW |
| CELL GENESYS, INC. AND TRANSKARYOTIC THERAPIES, INC. | ) |
|     Defendants. | ) |

**OPPOSITION OF CELL GENESYS, INC. TO THE ARS MOTION TO EXCLUDE EVIDENCE RELIED ON IN CGI'S MEMORANDUM REGARDING INTERFERENCE IN FACT NOT PRESENTED TO THE BOARD BELOW**

Cell Genesys, Inc. ("CGI") respectfully submits that the "ARS Motion *In Limine* to Exclude Previously Undisclosed Evidence Relied on by CGI in its 'Interference-in-Fact' Memorandum" (Docket No. 140—"Motion") is meritless and interposed purely for the purposes of harassment. Contrary to ARS' irresponsible charges, CGI did not improperly withhold United States Patent No. 5,024,939 or a journal article (Kucherlapati et al., CRC Crit. Rev. Bioch. 16(4):349 – 379 (1984)) ("Journal Article"). ARS never requested those public record documents in discovery and both were outside the scope of CGI's initial disclosure obligations under Fed. R. Civ. P. 26(a)(1)(B). Similarly, the opinions of expert Thea Tlsty regarding

1

amplifiable genes were disclosed in her expert report. ARS' subsequent regret that it chose not to depose Dr. Tlsty does not support the extraordinary relief of striking her opinions, which were in any case disclosed.

## I. THE '939 PATENT AND JOURNAL ARTICLE SHOULD NOT BE EXCLUDED AS THEY WERE NEVER REQUESTED BY ARS AND WERE OUTSIDE CGI'S INITIAL DISCLOSURE OBLIGATIONS

ARS concedes by silence the fact that it never served on CGI a Rule 34 request for production of documents that encompassed the '939 Patent or Journal Article. ARS' failure to make such a request should be the end of the matter. Regrettably, however, ARS elected yet again to blow this matter far out of proportion, contending CGI intentionally withheld the two public documents. ARS' position is groundless.

The parties exchanged initial Rule 26(a)(1) information in 2005. The requirements of Rule 26(a)(1)(B) regarding documents are limited to those which, at the time, "the disclosing party may use to support its claims or defenses, unless solely for impeachment." Obviously, a party cannot disclose and is not obliged to disclose documents of which it is unaware at the time of initial disclosures.

From the outset, it has been CGI's position that the Board erred as a matter of law in finding no Interference-in-Fact. More particularly, CGI contends the Board erred as a matter of law by not reaching the many substantive issues fully raised in the Interference. Before and at the hearing on August 8, 2006, CGI argued that the issue of whether there was an Interference-in-Fact between CGI claim 106 and any ARS surviving claims was non-dispositve and, therefore, would have no impact on the ultimate disposition of the case. Thus, prior to the Court's Order of August 9, 2006 ("Order"), CGI had not intended to argue on the merits that ARS claim 24 interfered-in-fact with CGI claim 106. Accordingly, at the time of its initial

2

disclosures a year earlier, in 2005, CGI had no obligation to identify every possible patent, scientific reference and other document concerning Interference-in-Fact between those two claims.

In its August 9, 2006 Order, the Court made clear that it wanted to consider two questions: (1) whether the Board erred in concluding CGI claims 107-109 are unpatentable over the "Japan" reference and (2) whether there is an Interference-in-Fact between CGI claim 106 and ARS claim 24. The Court specifically ordered CGI to "file its memorandum and **supporting evidence** on these issues." *Order*, Docket No. 124, para. 2 (emphasis supplied). In accordance with the Order, CGI filed on October 2, 2006 its memorandum regarding Interference-in-Fact (Docket No. 126—"Initial Memorandum") along with supporting evidence, including the '939 Patent and Journal Article.

CGI complied with the Order. Prior to the Order, the Court had not directed the production of the '939 Patent or Journal Article. In response to the Order's directive to file "supporting evidence" on the Interference-in-Fact issue, CGI did so. (As the '939 Patent and Journal Article came to CGI's attention just a week before it made its October 2, 2006 filing, there can be no suggestion that CGI strategically withheld from ARS those two public-record documents—documents that were never the subject of an ARS document request.) Given CGI's compliance with the Court's Order, there is no basis to strike from consideration the '939 Patent or Journal Article.

Finally, even assuming *arguendo* CGI had some obligation to produce the '939 Patent and Journal Article prior to October 2, 2006—a preposterous position given the clear language of the Order and absence of prior document requests addressed to those sorts of documents—there would be no basis to impose the harsh sanction of preclusion. ARS has presented no showing

3

(never mind sworn testimony) that it was unaware of the two public-record documents prior to October 2, 2006 or, even assuming such lack of awareness, it has suffered any real prejudice from CGI's identification of the '939 patent and Journal Article on October 2, 2006 and not earlier. In these circumstances, preclusion is unwarranted and would be unprecedented.

## II. THE EXPERT TESTIMONY OF DR. TLSTY SHOULD NOT BE EXCLUDED AS IT IS BEING PROFFERED IN DIRECT RESPONSE TO THE COURT'S AUGUST 9, 2006 ORDER AND THE SUBSTANCE WAS PREVIOUSLY DISCLOSED

The August 9, 2006 Order, in addition to directing CGI to file a memorandum and supporting evidence, ordered: "CGI shall also address **what testimony it would like to present** relating to the second question [Interference-in-Fact between CGI claim 106 and ARS claim 24] and why that testimony is necessary." *Order*, Docket No. 124, para. 2 (emphasis supplied).

CGI complied with the Order. CGI's Initial Memorandum (Docket No. 126) summarized the anticipated expert testimony of Dr. Tlsty, and referred to Dr. Tlsty's expert report dated April 7, 2006 (Docket No. 127, Ex. A). CGI made it clear in its Initial Memorandum, and repeats here, that it would be sufficient to accept Dr. Tlsty's expert report as her testimony. ARS was offered the chance to depose her, and declined. Thus, the ARS concern that Dr. Tlsty might testify beyond the scope of her expert report is groundless. CGI again proffers her expert report as sufficient.

ARS' present motion is ambiguous regarding what exactly it seeks to strike. In footnote 2 of its Motion, ARS seems to suggest that Dr. Tlsty's entire expert report should be disregarded. But the ARS objection there is procedural in nature, based on the contention that the expert witness must present live testimony. Tellingly, nowhere does ARS challenge the substance of Dr. Tlsty's anticipated testimony or report. ARS does not assign error to any of Dr. Tlsty's expert report or analysis.

4

Whether live testimony will be taken on the Interference-in-Fact issue remains an open issue. Again, the Court's Order is clear: "As agreed by the parties, the court will conduct a trial on the written record to decide the first question [patentability over the Japan reference], and will decide after briefing is complete whether to address the second question [Interference-in-Fact] simultaneously." *Order*, Docket No. 124, para. 2. The Court expressly invited briefing on the issue of "what testimony [CGI] would like to present relating to the second question and why that testimony is necessary." *Id.*

There is no basis to strike the entirety of Dr. Tlsty's report. The Court may decide to conduct a trial on the written record, in which case Dr. Tlsty's report would be part of the record. Alternatively, the Court may decide to take oral testimony on the second question, in which case the Tlsty report will be offered and admitted in accordance with usual practice. Particularly where ARS has failed to offer any substantive challenge to the substance of the Tlsty report, ARS' request to strike the anticipated testimony and report is nonsensical.

Insofar as ARS takes aim only at portions of two sentences in CGI's Initial Memorandum filed in compliance with the Order—sentences which summarize certain testimony Dr. Tlsty would provide if permitted to testify (see Motion at p. 5)—ARS is again misguided. Dr. Tlsty's report is dated April 7, 2006—four months before the Court directed briefing and submission of evidence on the Interference-in-Fact question. As summarized in section I above, prior to the Court's August 9, 2006 Order, CGI had taken the position that Interference-in-Fact involved legal questions and CGI did not believe the fact issues would or needed to be reached. Once the Court made clear that it wished to possibly consider the Interference-in-Fact question contemporaneously with or following the "Japan reference" question, CGI complied fully with the Court's directive to address "what testimony [CGI] would like to present relating to the

second question and why that testimony is necessary." Self-evidently, CGI and Dr. Tlsty could not have addressed that question in April 2006, four months before the Court's directive. Simply stated, CGI and Dr. Tlsty presented in April 2006 a full report, compliant with Rule 26(a)(2).

While Dr. Tlsty's report did not—because the issue had not yet been framed and ordered by the Court—use the *precise words* included in the summary of anticipated testimony included in CGI's post-Order submission (Docket No. 126), the Report did in fact cover amplifiable genes, and DHFR used as a selectable marker and amplifiable gene, in the prior art and in the ARS '071 patent itself, and disclosed the substance of Dr. Tlsty's opinions on those topics. Dr. Tlsty's expert report, as discussed in CGI's Initial Memorandum (Docket No. 126) goes directly to the heart of what those of skill in the art knew about selectable, amplifiable genes like DHFR at the time the invention at issue was made. The fact that Dr. Tlsty's report did not expressly recite the ultimate legal conclusion of no Interference-in-Fact does not mean the anticipated testimony summarized in CGI's Initial Memorandum must be excluded. Interference-in-Fact is a legal question resolved by an analysis of what is obvious, given the state of the art. Dr. Tlsty's testimony is directed precisely to that question: Was it obvious and, if so, in what way, to use DHFR as a selectable, amplifiable gene. Clearly, ARS is simply wrong in its bald assertion that "Dr. Tlsty's expert report did not disclose anything about these issues." *Motion*, p. 5.

As with the Journal Article and '939 patent, there is no basis for ARS' demand to exclude Dr. Tlsty's anticipated testimony. Notably, just like ARS failed to request the Journal Article or '939 patent in any document request, ARS declined to depose Dr. Tlsty, notwithstanding CGI's offer to make her available for examination. In addition, as was the case with the two documents, ARS has not offered any sworn proof of actual prejudice caused by CGI's compliance with the August 9, 2006 Order. The absence of such prejudice is confirmed by ARS'

6

failure to offer any substantive challenge to the irrefutable testimony summarized in CGI's Initial Memorandum.

## Conclusion

For the above reasons, CGI respectfully requests the Court to deny ARS' Motion.

Respectfully submitted,

CELL GENESYS, INC.

By its attorneys,

/s/ Steven B. Kelber
Steven B. Kelber
c/o Arnold & Porter, LLP
555 Twelfth Street, NW
Room 900A
Washington, DC 20004-1206
Telephone: 202-942-5747

T. Christopher Donnelly (BBO #129930)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
Telephone: (617) 720-2880

Dated: November 22, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this OPPOSITION OF CELL GENESYS, INC. TO THE ARS MOTION TO EXLCUDE EVIDENCE RELIED ON IN CGI's MEMORANDUM REGARDING INTERFERENCE IN FACT NOT PRESENTED TO THE BOARD BELOW was filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 22, 2006.

/s/ Steven B. Kelber
Steven B. Kelber