**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CELL GENESYS, INC., | ) |
| | ) |
|     Plaintiff/Counterdefendant, | ) |
| | ) |
| v. | )   Civil Action No. 05-12448-MLW |
| | ) |
| APPLIED RESEARCH SYSTEMS ARS | ) |
| HOLDING, N.V., | ) |
| | ) |
|     Defendant/Counterclaimant. | ) |
| | ) |
| APPLIED RESEARCH SYSTEMS ARS | ) |
| HOLDING, N.V., | ) |
| | ) |
|     Plaintiff/Counterdefendant, | ) |
| | ) |
| v. | )   Civil Action No. 04-11810-MLW |
| | ) |
| CELL GENESYS, INC., | ) |
| | ) |
|     Defendant/Counterclaimant, and | ) |
| | ) |
| TRANSKARYOTIC THERAPIES, INC., | ) |
| | ) |
|     Defendant. | ) |

**ARS SUR-REPLY REGARDING CGI'S MOTION TO REVERSE THE BOARD'S
DECISION THAT CGI CLAIMS 107-109 ARE UNPATENTABLE OVER "JAPAN"**

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................................1

II.    ARGUMENT ..........................................................................................................2

       A.    CGI has made no attempt to prove that Skoultchi's November
             1989 application constituted a constructive reduction to practice of
             the methods recited in claims 107-109 ......................................................2

       B.    The Board never granted CGI the benefit of its November 6, 1989
             filing date, which leaves "Japan" as invalidating prior art under 35
             U.S.C. § 102(b) .........................................................................................3

       C.    CGI has still not shown that Skoultchi was diligent between
             August 28 and November 6, 1989 ..............................................................5

             1.    CGI concedes that Skoultchi's application sat idle for fifty-
                   five consecutive days, and is wrong as to the standard for
                   determining whether there has been reasonable diligence ...................5

             2.    CGI's purported "corporate diligence" is not supported by
                   evidence or law ...........................................................................10

       D.    CGI has still not shown that Skoultchi conceived the specific
             methods recited in claims 107-109 ...........................................................13

             1.    CGI has still not shown that Skoultchi conceived a method
                   of expressing a gene in a primary cell .............................................13

             2.    CGI has still not shown that Skoultchi conceived a method
                   in which only a regulatory sequence is inserted into the cell ..................16

III.   CONCLUSION......................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Ex parte McGuckian,*
   202 U.S.P.Q. 398 (Pat. & Trademark Bd. App. 1976) ............................................ 7

*Cybor Corp. v. FAS Techs., Inc.,*
   138 F.3d 1448 (Fed. Cir. 1998) (*en banc*) ............................................ 15

*Griffith v. Kanamaru,*
   816 F.2d 624 (Fed. Cir. 1987)............................................ 12

*In re Baird,*
   348 F.2d 974 (C.C.P.A. 1965) ............................................ 18

*In re Eickmeyer,*
   602 F.2d 974 (C.C.P.A. 1979) ............................................ 9

*In re Harry,*
   333 F.2d 920 (C.C.P.A. 1964) ............................................ 10

*In re Mulder,*
   716 F.2d 1542 (Fed. Cir. 1983)............................................ 8, 9, 10

*In re Nelson,*
   420 F.2d 1079 (C.C.P.A. 1970) ............................................ 10

*Litchfield v. Eigen,*
   535 F.2d 72 (C.C.P.A. 1976) ............................................ 11

*Rines v. Morgan,*
   250 F.2d 365 (C.C.P.A. 1957) ............................................ 6

*Scott v. Koyama,*
   281 F.3d 1243 (Fed. Cir. 2002)............................................ 12

**Statutes**

35 U.S.C.§ 102(a) ............................................ 4

35 U.S.C. § 102(b) ............................................ 1, 3, 4, 20

35 U.S.C. § 112 ............................................ 2, 3, 5

35 U.S.C. § 119 ............................................ 8

35 U.S.C. § 120 ............................................ 5

**Regulations**

37 C.F.R. § 1.131 ............................................................................... 1, 4, 8, 9, 10, 16

37 C.F.R. § 1.633(f) ......................................................................................... 4

## I.    INTRODUCTION

ARS submits this Sur-Reply pursuant to the Court's Order dated August 9, 2006 (Court Docket No. 124, at 2, ¶ 2) in order to correct errors of law and fact in CGI's "Japan" reply memorandum ("CGI's Reply").

After nearly sixty-pages of briefing by CGI in this "trial on the written record" (*id.*), gaping holes remain in CGI's case, any one of which is sufficient grounds for this Court to deny CGI's request to reverse the Board's decision that CGI claims 107-109 are unpatentable over "Japan." As it must, CGI acknowledges in its Reply that in order to antedate "Japan," it must prove Dr. Skoultchi reduced to practice the methods of claims 107-109. Yet CGI has not attempted in either its opening Memorandum or its Reply to prove up that issue. Nor has it shown that "Japan" is not invalidating prior art under 35 U.S.C. § 102(b) that cannot be antedated under Rule 131. CGI ignores, but cannot escape, the effect of the Board's dismissal of its preliminary motion that requested the benefit of Skoultchi's November 6, 1989 application. As a result of that dismissal, CGI was left with an effective filing date of November 1990, which is more than one year after "Japan" was published. And as a result of that, before it can remove "Japan" as a reference under Rule 131, CGI must prove that Skoultchi's current claims 107-109 (filed years later) are entitled to the benefit of his November 1989 application. CGI has not even attempted to do so.

Neither of these two issues depend at all on CGI's "Record." But to the extent CGI's "Record" merits consideration, that record reveals the following inescapable truths for CGI. After his patent attorney sent him a draft application, Skoultchi let it sit idle and unattended for a period of ***fifty-five consecutive days***. CGI does not attempt to rebut this fact, because it has no evidence with which to do so. Instead, CGI argues that under patent law, there is diligence "*per se*" if one takes three months to prepare and file an application, and that a "less rigorous"

1

standard of diligence applies to this case. The case law shows that CGI is wrong on both points

of law, and that it has no legally cognizable excuse for the fifty-five consecutive days of

unexplained inactivity.

The other inescapable truth for CGI is that if Skoultchi conceived any invention before

the effective date of "Japan," it was not the methods recited in claims 107-109. CGI admitted this

to the Patent Office during prosecution of Skoultchi's 1989 application (a point to which it has

not responded whatsoever).

The final inescapable truths for CGI are that, despite its arguments otherwise in this case,

the plain language of claims 107-109 requires that gene expression occur in a primary cell (CGI

admitted as much in the '114 Interference), and CGI's documents do not show that Skoultchi

conceived such a method, and although the plain language of claims 107-109 encompass the

insertion of a regulatory sequence alone into the genome of a cell, CGI's documents do not show

that Skoultchi conceived that method either.

To antedate "Japan," CGI had to make these showings. It has not. For any one and all of

these reasons, the Court should deny CGI's request to reverse the Board's decision.

## II.    ARGUMENT

### A.    CGI has made no attempt to prove that Skoultchi's November 1989 application constituted a constructive reduction to practice of the methods recited in claims 107-109

As ARS explained in its Opposition (at pages 5-6), CGI bore the burden of proving that

Skoultchi's November 1989 application (or another application, *e.g.*, his 1990 application)

satisfied the requirements of 35 U.S.C. § 112, ¶ 1 in order to constitute a constructive reduction

to practice of the methods of claims 107-109, or that Skoultchi reduced those claimed methods to

actual practice (*i.e.*, he actually performed the claimed methods).

2

CGI acknowledges that the Board decided that CGI had failed to prove a reduction to practice, and that it bears the burden here to prove that the Board's decision should be reversed. CGI Memorandum at 15; CGI Reply at 2 ("*It is this determination, that Genesys ('CGI') had not presented sufficient evidence that CGI conceived of the invention of Claim 107-109 prior to August 29, 1989 and reduced it to practice by filing its patent application on November 6, 1989, that CGI challenges.*") (emphasis added). Yet nowhere in its opening Memorandum or Reply did CGI ever attempt to prove constructive or actual reduction to practice.

CGI has failed to even attempt to show how any of Skoultchi's patent applications satisfied the requirements of § 112, ¶ 1 (*i.e.*, by describing and enabling the methods of claims 107-109), or how Skoultchi or someone acting on his behalf successfully performed the methods of claims 107-109. Without proof of an adequate reduction to practice, CGI cannot antedate the "Japan" reference. Consequently, the Court should deny CGI's motion.

**B.    The Board never granted CGI the benefit of its November 6, 1989 filing date, which leaves "Japan" as invalidating prior art under 35 U.S.C. § 102(b)**

CGI says that "the Board did conclude that CGI was entitled to an effective filing date less than a year after the August 29, 1989 publication of Japan (CGI's date is November 6, 1989)," and that ARS, by arguing otherwise, is "taking issue with the Board's decision" and "has the burden of proof" on this issue. CGI Reply at 2-3 and 6.

CGI is wrong on all points. First, the Board never held that claims 107-109 were entitled to the benefit of the filing date of Skoultchi's November 6, 1989 application. CGI simply ignores the fact that in the '114 Interference, the Board dismissed (and therefore did not grant) CGI's Preliminary Motion No. 1 in which it requested that the Board find CGI's claims (including claims 107-109) entitled to the benefit of Skoultchi's November 1989 application filing date:

> Genesys's Preliminary Motion 1 (Paper No. 62) under 37 C.F.R. § 1.633(f) to be accorded the benefit of the November 6, 1989, filing date of parent U.S. Application 07/432,069 (Exh. 2028) is dismissed as moot. <u>Dismissed</u>.[1]

The Board's decision left CGI with an effective filing date of November 6, 1990. CGI thus bears the burden to prove that claims 107-109 are entitled to the benefit of Skoultchi's earlier application if it is to have any chance of antedating the "Japan" reference and reversing the Board's decision that claims 107-109 are unpatentable over "Japan" (because the effective filing date of November 6, 1990 is more than one year after the August 29, 1989 publication of "Japan." If it cannot do so, "Japan" is a statutory bar to patentability under 35 U.S.C. § 102(b)).[2]

CGI's take on the Board's treatment of claims 107-109 in view of "Japan" simply cannot be reconciled with the fact that the Board dismissed as moot CGI's Preliminary Motion No. 1 requesting benefit of Skoultchi's November 1989 application. In addressing the issue of whether CGI could possibly prove that Skoultchi invented the methods of claims 107-109 before the "Japan" reference was published, the Board acknowledged that it was "***presuming*** Japan to be prior art under 35 U.S.C. § 102(a) with respect to the subject matter of Claims 105-112 of Genesys's Application 08/102,390 . . . ."[3] But the Board ***never held*** that "Japan" was actually a § 102(a) reference (which would have required determining that the 1989 application described

---

[1] Decision on Preliminary Motions at 133 (emphasis in original) (submitted as Exh. B to Declaration Of Matthew C. Nielsen; Docket No. 137-3). CGI argues that ARS makes this point "without reliance on any evidence" (CGI Reply at 2), but the "evidence" on this issue is the Board's dismissal of CGI's preliminary motion that requested the benefit of the filing date of Skoultchi's 1989 application.

[2] As explained in ARS's Opposition (at 3 & n. 1), prior art under 35 U.S.C. § 102(b) is a statutory bar to patentability that CGI cannot antedate under Rule 131.

[3] Decision on Preliminary Motions at 88 (emphasis added) (Exh. B to Nielsen Decl.; Court Docket No. 137-3).

and enabled claims 107-109, as required by 35 U.S.C. § 112, ¶ 1 and § 120).[4] The Board undertook no such analysis and held no such thing. It simply dismissed CGI's related preliminary motion as moot. Thus, ARS is not "taking issue" with the Board's decision; rather, CGI has failed to prove that which it must in order to antedate "Japan."

Nor can CGI shift to ARS the burden of persuasion as to the entitlement of claims 107-109 to the earlier effective date. Because the Board dismissed CGI's preliminary motion seeking the earlier effective date, that burden remains squarely on CGI because it is the party seeking to antedate "Japan."

CGI goes on at length about the Board's denial of ARS's own preliminary motion that requested benefit of ARS's earliest-filed application.[5] But that issue is irrelevant to the question raised by CGI's "Japan" Memorandum. Whether ARS is entitled to the benefit of its earliest filing date is irrelevant to CGI's failure to obtain the benefit of its own earlier filing date.

Because CGI has not shown that claims 107-109 are entitled to the benefit of Skoultchi's November 1989 filing date – as it had to do to antedate "Japan" – the Court should deny CGI's motion.

> ### C.    CGI has still not shown that Skoultchi was diligent between August 28 and November 6, 1989
>
> #### 1.    CGI concedes that Skoultchi's application sat idle for fifty-five consecutive days, and is wrong as to the standard for determining whether there has been reasonable diligence

If there is one thing on which the parties seem to agree concerning the question of diligence, it is that Skoultchi's draft application sat idle for a period of ***fifty-five consecutive***

---

[4] *See* discussion in ARS Opposition, at 4 & n. 4.

[5] *See* CGI Reply at 3 and 5-6.

*days*. During that time, no one took steps to prepare, revise, or finalize the application – it simply went unattended. CGI points to nothing in its "Record" to rebut this point.[6]

Instead, CGI continues to argue that "[w]here an application is prepared from disclosure to filing in three months, as it was in this case, it is per se reasonable and timely."[7] That is simply not true; there is no such *per se* rule of diligence. Nor did Skoultchi or anyone else spend three months preparing the application – *nobody worked on it for fifty-five consecutive days*. A plain reading of the cases that CGI cites for its *per se* rule shows that they held no such thing, and that their facts are not analogous to the facts here.[8] For instance, in one of those cases the court acknowledged that "[t]he question as to whether an inventor has exercised reasonable diligence is one which must be determined by the particular facts and circumstances of each individual case."[9] This law has not changed.

Similarly, it is irrelevant to the question of diligence as to whether "Skoultchi disclosed the invention to the patent attorney on July 25, 1989, and one month later, a draft was prepared –

---

[6] CGI simply says – without pointing to anything in its "Record" – that "Not only the inventor, but co-founder Kucherlapati, and CEO Mark Levin, testified they reviewed and commented on the draft. The law establishes that this is reasonable diligence, without more." CGI Reply, at 16. However, Skoultchi testified that he probably spent about ten hours working on the draft application (*see* CGI "Record," Court Docket No. 129-30 (Transcript of Deposition of Arthur Skoultchi at pp. 157-58)), Kucherlapati testified he revised the draft application only once (*see* CGI "Record," Court Docket No. 129-33 (Transcript of Deposition of Raju Kucherlapati at pp. 145-46)), and Levin did not testify that he remembered reviewing the draft application.

Nor has CGI presented any evidence that its "founders" "were not employed by the company at the time but busy with their own unrelated endeavors . . . ." CGI Reply, at 3.

[7] CGI Reply at 15-16.

[8] *See* ARS Opposition at 8-9, n. 17.

[9] *Rines v. Morgan*, 250 F.2d 365, 369 (C.C.P.A. 1957).

not a completed application, but one requiring attention from the inventor."[10] The critical period

for diligence here is from August 28 through November 6, 1989 – in particular the fifty-five

consecutive days following September 6 in which there is no evidence that anybody worked on

Skoultchi's application. The month preceding August 28 is simply not at issue.[11]

Along the same lines, CGI says that "ARS cannot point to a single case where the timely

preparation of a patent application, without more, was held to be insufficient to establish

diligence."[12] This is flatly wrong. First, ARS has cited several instances where a party failed to

prove diligence when the critical period was less than three months.[13] Second, the preparation

and filing of Skoultchi's application was ***not*** *"timely"* – *fifty-five consecutive days* went by in

which there is no evidence that Skoultchi or anyone else took steps to revise it. CGI has not and

cannot point to any case in which an applicant was found to have been reasonably diligent after

letting a draft application sit for fifty-five consecutive days.

CGI's misinterpretation of the pertinent case law does not end there. CGI tries to turn the

standard for measuring diligence on its head when it says "[a]t no time did CGI exhibit any

intent not to pursue this invention. This is the measure of diligence, in a showing under 37 C.F.R.

---

[10] CGI Reply at 16.

[11] Even in the non-binding opinion of the Board upon which CGI now relies, *Ex parte McGuckian*, 202 U.S.P.Q. 398, 400 (Pat. & Trademark Bd. App. 1976), the critical period in which the applicant had to show diligence was only from April 1 to May 2, 1969 (*i.e.*, one month), and in that case there was evidence of activity on April 2 and April 28, and "the particular application was in active preparation under counsel's direction between April 17 and 24, 1969 . . . ." (not separately *on* "April 17 and April 24," as CGI says). This one-month period for showing diligence in *McGuckian* (in which there was evidence of activity on ten days, not on just four days, as CGI says) does not support CGI's *per se* rule of three months of preparation equating to diligence.

[12] CGI Reply at 15.

[13] *See* ARS Opposition at 8, n. 17.

1.131."[14] That is absolutely not the legal standard for diligence. Not surprisingly, CGI has not

and cannot point to a single case that applies or even suggests such a standard.

To prove that Skoultchi was diligent, CGI had to do more than argue that Skoultchi did

not intend to abandon his invention. CGI had to prove that Skoultchi took affirmative steps

throughout the entire period from August 28 to November 26, 1989 to reduce to practice the

methods recited in claims 107-109.[15] Although CGI may not have to offer documentary evidence

of diligence on each and every day during that period, it must have evidence of Dr. Skoultchi's

reasonable, continuous diligence throughout the entire period from August 28 to November 6,

1989. If there is no evidence of diligence on any given day, CGI has to offer evidence as to

precisely what other activity Skoultchi was engaged in on that day that can serve as a legally

cognizable excuse for lack of diligence on that day.[16] CGI has not satisfied this standard.

CGI continues to argue that there is a Rule 131 standard for diligence that is "less

rigorous" or "construed more liberally" than in an interference priority contest.[17] This is not true,

and the cases on which CGI relies do not support the "less rigorous" approach that it advocates.

---

[14] CGI Reply at 4. *See also id*. at 18 ("[I]t did not surrender the invention or abandon progress on it").

[15] *See* discussion of cases in ARS Opposition at 9 & n. 19.

[16] *See id*.

[17] *See* CGI Reply at 13-14. CGI also says, without citing any authority, that Rule 131 is a "patent saving provision." CGI Reply at 14. As the Federal Circuit explained in *In re Mulder*, 716 F.2d 1542 (Fed. Cir. 1983), "Section 119 is 'patent saving' provision for the benefit of applicants, and an applicant is entitled to rely on it as a constructive reduction to practice to overcome the date of a reference under Rule 131." *Id*. at 1545 (citation omitted). It is not at issue in this case, but 35 U.S.C. § 119 provides patent applicants the benefit of the filing date of an earlier-filed foreign patent application for the same invention, subject to satisfaction of other statutory requirements. In any event, the *Mulder* court explained that Section 119, not Rule 131, is the "patent saving provision."

ARS has already addressed one of the cases (*In re Eickmeyer*[18]) that CGI continues to rely on for this point.[19] In its Reply, CGI also cites *In re Mulder*,[20] but misrepresents its holding. In *Mulder*, the applicant requested the court to treat the case as an interference, in which the applicant argued (under the particular facts of the case) that it "would not have to prove diligence."[21] The Federal Circuit rejected that approach, explaining that "Rule 131 requires proof of diligence coupling conception to the filing of an application," and held the applicant's diligence argument was defeated by a "**two-day** period" in which there was "a total lack of evidence of diligence."[22] The *Mulder* court explained that a "liberal construction of the rule" was permitted to the extent that the critical period in which an applicant must show diligence (beginning prior to the date of the prior-art reference) is shorter than in an interference priority context (beginning from the applicant's conception date),[23] "but liberality cannot be extended to the point of eliminating all proof of diligence, no matter how short the period to be covered."[24]

---

[18] *In re Eickmeyer*, 602 F.2d 974 (C.C.P.A. 1979)

[19] *See* ARS Opposition at 7 and n. 14.

[20] *In re Mulder*, 716 F.2d 1542 (Fed. Cir. 1983)

[21] *Id*. at 1545.

[22] *Id*. (emphasis added).

[23] *Id*.

[24] *Id*.

CGI tries to distinguish the facts here from those in *In re Nelson*[25] and *In re Harry,*[26] but offers only more conclusory attorney argument, rather than evidence, to support this effort.[27]

In sum, neither the *Mulder* decision nor any of the other decisions CGI cites even suggested that the standard for diligence is less rigorous under Rule 131 than in an interference.

### 2. CGI's purported "corporate diligence" is not supported by evidence or law

Having failed to show that Skoultchi was diligent during the fifty-five consecutive day period, CGI suddenly relies heavily on its alleged and so-called "corporate diligence."[28] CGI says that it "developed and pursued a business plan, and presented that business plan to investors, which emphasized as CGI's first project the subject matter of Claims 107-109, and pursued and secured laboratory space and instruments, employees and officers and funding to pursue the subject matter of Claims 107-109.[29]

CGI's theory of "corporate diligence" is unsupported by evidence or law. CGI still fails to point to evidence of what or when any acts took place that support its "corporate diligence" theory. Indeed, CGI's entire "corporate diligence" theory boils down to two documents dated

---

[25] *In re Nelson*, 420 F.2d 1079, 1080-81 (C.C.P.A. 1970) (affirming Board's rejection of applicant's Rule 131 showing based on two-month period of inactivity, even though the applicant alleged that he "never abandoned [the invention] during the period [in which he needed to show diligence] and that the invention was diligently pursued by him all that time," and the "exhibits show[ed] a steady interest on the part of various officers of applicant's employer and assignee" in the invention).

[26] *In re Harry*, 333 F.2d 920, 922 (C.C.P.A. 1964) (Rich, J.) (affirming Board's rejection of applicant's Rule 131 showing, stating "[Applicant's affidavit] is not proof or 'showing of facts' but mere pleading. It asserts that facts exist but does not tell what they are or when they occurred.").

[27] *See* CGI Reply at 14-15. *See* discussion of these cases in ARS Opposition at 9.

[28] CGI Reply at 3-4 and 17-18.

[29] *Id*. at 4.

September 8 and 20, 1989, and Levin's vague, conclusory and unsubstantiated testimony that there was a "continuum" of activity.[30] However, it is well-established that conclusory allegations of diligence (which is all that even Levin had to offer) are not sufficient; to prove diligence, one must point to *specific acts* that took place on *specific dates*.[31]

As for "pursu[ing] and secur[ing] laboratory space and instruments, employees and officers," CGI has still not pointed to evidence of any acts carried out on any specific dates. To the contrary, CGI's own documents indicate that some of this activity had already taken place (for example, the document dated September 8 indicates that a "Facility" had been "Leased").[32] Nor has CGI explained or pointed to evidence that shows why the facilities, equipment, and scientific staff that it already had were inadequate to reduce Skoultchi's idea to practice.

As for "funding to pursue the subject matter of Claims 107-109," CGI has "an affirmative duty to show what 'budgetary limits' they were operating under . . . in order for any tribunal to have the opportunity to determine whether the delay was reasonable in light of th[at] factor[]."[33] CGI has not pointed to any evidence of funding or a lack of funding to reduce Skoultchi's claimed methods to practice. Instead, it simply alleges that its general fund-raising efforts demonstrate diligence. That is not evidence of diligence.

As the party seeking to rely on acts of "corporate diligence," CGI also had to show how any such acts were related to a reduction to practice of Skoultchi's claimed methods.[34] CGI has

---

[30] *See* CGI Reply at 17-18; CGI "Record," Docket No. 129-20 (Transcript of Deposition of Mark Levin at pp. 188-89).

[31] *See* discussion of case law regarding this issue in ARS Opposition at 9-10.

[32] CGI "Record" (Docket No. 129-13) at CGI 15909.

[33] *Litchfield v. Eigen*, 535 F.2d 72, 76 (C.C.P.A. 1976).

[34] *See* cases discussed in ARS Opposition at 11 and nn. 25 & 26.

11

failed to do so; instead, it says in its Reply that "[t]he ARS suggestion, (p.11) that this activity was unrelated to the invention, and that what was being done was related to optimization or market investigation, is unsupported by any reference to any document or testimony."[35] But the burden to show the relationship of corporate acts to Skoultchi's diligence is on CGI, not ARS. And in any event, CGI's assertion is contradicted by the testimony of Dr. Savage (the purported author of CGI's purported "business plan") and CGI co-founder Dr. Kucherlapati. Savage said that the purpose of the "business planning" was to "try to look at the entire universe of what that technology could be applied to and work out in some detail what the most -- or more attractive applications were and why . . . " and that this process "resulted in a formal business plan."[36] Kucherlapati confirmed that the CGI business plan "was presented to potential investors" and that it was a "selling document."[37] Whether it took a single day to prepare the documents dated September 8 and September 20, or "more than a single day of activity,"[38] CGI has failed to show that those documents reflect anything more than "efforts to refine an invention to the most marketable and profitable form," which "have not been accepted as sufficient excuses for inactivity,"[39] or "pure money-raising activity that is entirely unrelated to the practice of the process," which is likewise not an excuse for diligence by the applicant.[40]

---

[35] CGI Reply at 17.

[36] CGI "Record," Court Docket No. 129-31 (Transcript of Deposition of George Savage, at pp. 34-35).

[37] CGI "Record," Court Docket No. 129-33 (Transcript of Deposition of Raju Kucherlapati, at p. 114).

[38] CGI Reply at 17.

[39] *Griffith v. Kanamaru*, 816 F.2d 624, 627 (Fed. Cir. 1987).

[40] *Scott v. Koyama*, 281 F.3d 1243, 1248 (Fed. Cir. 2002).

In sum, CGI has not shown that Skoultchi or anyone acting on his behalf was reasonably diligent in reducing his claimed methods to practice between August 28 and November 6, 1989, including the critical period of fifty-five consecutive days during which there is no evidence of any activity that might constitute diligence.

**D.    CGI has still not shown that Skoultchi conceived the specific methods recited in claims 107-109**

**1.    CGI has still not shown that Skoultchi conceived a method of expressing a gene in a primary cell**

CGI says claims 107-109 do not distinguish between causing expression in a "primary cell" (the actual cell modified by the methods of claims 107-109) and causing expression in a "secondary cell" (a different cell, to which one might add modified DNA from the primary cell).[41] CGI also says that the Board did not construe claims 107-109 to require causing expression in a primary cell, and characterizes ARS's position as a "challenge" to the Board's decision.[42]

CGI cannot legitimately dispute that the plain language of each of claims 107-109 requires gene expression in the primary cell. Each of claims 107 and 108 expressly requires "whereby expression of said gene in said cell is caused to occur."[43] "[S]aid cell" is the cell modified by the claimed methods; it cannot be another cell (such as a secondary cell). The same

---

[41] CGI's hyper-literal protest that "None of the CGI claims under consideration refer to primary or secondary cells" (CGI Reply, at 4) is belied by its own usage of same parlance for the same claims in the '114 Interference. *E.g.*, "Unquestionably, Claims 106, 107 and 112 are directed not only to the primary cells, but the secondary cells"; "Claim 108 embraces both primary cells and secondary cells." Cell Genesys '114 Interference Opposition 1, at 16-17 (a copy of this paper should be in the copy of the '114 Interference "record" which CGI submitted to the Court on January 25, 2006).

[42] CGI Reply at 4 and 7-9.

[43] "Appendix" A to CGI Memo at A-1.

is true of the express requirement in claim 109 "whereby expression of said gene in said cell is caused to occur in said cell in which said DNA construct is incorporated."[44] Indeed, CGI admitted in the '114 Interference that "[t]he claims in question [which included claims 107-109] have common requirements. Introduction of DNA, typically heterologous [*i.e.*, foreign] to the cell, to increase expression, which increase may include inducing the cell to express protein it does not normally express."[45] CGI also said "[u]nquestionably, Claims 106, 107 and 112 are directed not only to the primary cells, but the secondary cells" and "[c]laim 108 embraces both primary cells and secondary cells."[46] Claim 109 is no different than claims 107 and 108 in this regard. Thus, CGI has admitted that claims 107-109 require causing gene expression to occur in a primary cell.

Contrary to CGI's assertions, the Board's decision was not inconsistent with that requirement, and ARS is not seeking reversal or modification of the Board's construction. The Board prefaced its review of the scope of the parties' claims by noting that "[o]ur preliminary discussion and conclusions regarding the meaning of terms in, and the scope and content of, the parties' respective claims corresponding to the interference count shall be limited to those terms whose meaning the parties to this interference debate."[47] Because the parties did not dispute that CGI claims 107-109 encompassed primary cells, there was no need for the Board to construe the full scope of those claims in that regard. Moreover, CGI cannot escape its earlier representation

---

[44] *Id.*

[45] CGI '114 Interference Opposition 2 at 10 (a copy of this paper should be in the copy of the '114 Interference "record" that CGI submitted to the Court on January 25, 2006).

[46] Cell Genesys '114 Interference "Opposition 1" at 16-17 (a copy of this paper should be in the copy of the '114 Interference "record" that CGI submitted to the Court on January 25, 2006).

[47] Decision at 11 (Exhibit B to Nielsen Decl.; Docket No. 137-3).

in the '114 Interference that claims 107-108 (and by virtue of sharing the same basic language, claim 109) "are directed" to "primary cells."[48]

In its Opposition,[49] ARS already addressed CGI's arguments that the document dated July 24 discloses a method of expressing a gene in a primary cell, and that Dr. Kucherlapati testified on that issue,[50] The additional testimony that CGI cites in its Reply (seventeen years later) regarding a purported "discussion [in 1989] of expression in secondary cells because of concern that the FDA would not accept protein from primary cells" is an out-of-court statement which CGI offers for the truth of the matter asserted, and is therefore inadmissible hearsay.[51] Thus, the document dated July 24 (the origin of which is unclear, as explained in the *Memorandum in Support of ARS's Motion In Limine*, Court Docket No. 138 at 6) and the testimony of Skoultchi do not show that Skoultchi had a settled or definite and permanent idea of using a primary cell in the methods recited in claims 107-109. Nor has CGI addressed the admission that it made to the Patent Office (during prosecution of Skoultchi's 1989 patent application) that Skoultchi's "invention" excludes use of a "native host" (*i.e.*, a primary cell).[52]

---

[48] CGI also says that the Board's "determination [of the meaning of terms in CGI's claims] is entitled to deference on review" (CGI Reply, at 4), but of course, claim construction is a question of law that it reviewed *de novo*. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (*en banc*).

[49] ARS Opposition at 14-16.

[50] CGI Reply at 8-9.

[51] Without citing any legal authority, CGI criticizes ARS as "look[ing] at each document advanced by CGI as demonstrating conception," "rather than deal[ing] with the evidence as a whole, which the law commands . . . .". CGI Reply at 4. That is not true. ARS addressed each document on which CGI relied in its opening Memorandum both individually and collectively. *See* ARS Opposition at 14-17 and 18-19.

[52] *See* ARS Opposition at 20.

15

## 2.    CGI has still not shown that Skoultchi conceived a method in which only a regulatory sequence is inserted into the cell

CGI says "ARS offers the novel but preposterous argument that to demonstrate conception of . . . introduction, through homologous recombination, [of] a 'DNA construct (that) must comprise either an amplifiable gene, a regulatory sequence (i.e., promoter or enhancer) or both,' CGI must demonstrate conception of insertion of a regulatory element only," that "[n]owhere did the Board hold, nor do the claims admit, of such a reading," and that "possession of the invention claimed would be shown by possession of the insertion of an amplifiable gene in a construct through homologous recombination, as the Board expressly held that [*sic*] would satisfy the claims." [53]

CGI's positions on all three points are wrong as a matter of fact and law, and are contradicted by its admissions elsewhere in its Reply. CGI admits the Board held that claims 107-109 require insertion of a "DNA construct [which] must comprise either an amplifiable gene, a regulatory sequence (i.e., enhancer or promoter) or both." [54] That is precisely ARS's contention. Although CGI did not explain this in its opening Memorandum, it finally acknowledges in its Reply that under Rule 131, "the applicant [is] required to show [] priority with respect to so much of the claimed invention as the references [*sic*: reference] happens to show." [55] That too is ARS's contention. And without dispute, CGI acknowledges "[t]he Board found that Japan taught 'expression regulatory sequences or expression controlling sequences

---

[53] CGI Reply at 10.

[54] CGI Reply at 7.

[55] CGI Reply at 13 (case citation omitted).

(promoters, enhancers, etc.) are inserted by homologous recombination."[56] That too is ARS's contention.

Thus, CGI agrees with all of the subsidiary questions, but stubbornly refuses to admit the only reasonable conclusion: in order to antedate "Japan," CGI had to prove that Skoultchi conceived as much of the methods of claims 107-109 as "Japan" disclosed, *i.e.*, the use of homologous recombination to insert only a regulatory sequence (*i.e.*, without also inserting an amplifiable gene) into the genome of a cell so as to cause expression of a gene in that cell. This is precisely what CGI has failed to show.

Notwithstanding the other shortcomings of the documents that CGI revisits in its Reply (*e.g.*, they contain no evidence that Skoultchi conceived a method of causing expression to occur in a primary cell), each document merely shows insertion of an amplifiable gene, or insertion of an amplifiable gene in tandem with a regulatory sequence. As ARS explained in its Opposition,[57] none of those documents show that Skoultchi thought to insert a regulatory sequence without an amplifiable gene. The document dated February 15 refers only to a "promoter-enhancer insertion (replacement) + DHFR of the human gene" gene (DHFR is an amplifiable gene).[58] The document dated April 26 says nothing about inserting a regulatory sequence,[59] and Dr. Rowland's testimony that he first heard of Skoultchi's idea at a meeting on July 25 squarely contradicts CGI's current position that Skoultchi disclosed that idea to Rowland on April 26.[60]

---

[56] CGI Reply at 13.

[57] ARS Opposition at 19, n. 48.

[58] *See* CGI "Record," Docket No. 129-2, at CGI 4004.

[59] See CGI "Record," Docket No. 129-2, at CGI 4025.

[60] *See* CGI "Record," Docket No. 129-34 (Transcript of Deposition of Bertram Rowland at pp. 34-36).

The document dated July 24 says that "The vector may also include . . . one or more copies of the transcriptional enhancer sequence (e.g. SV40 enhancer) which may stimulate expression of the TPA gene after integration of the vector."[61] That simply means that in addition to the "DHFR [amplifiable] gene" included in the "amplification vector" discussed in that same paragraph, one could *also* include a regulatory element – it does not suggest insertion of a regulatory sequence alone. The same is true of the document dated July 25, which shows the same basic amplification vector containing the amplifiable gene "DHFR$^{mut}$" and says "can put enhancer here for ↑ expression" along with "methotrexate ↑ conc[entration] → amplification of DHFR (And nearby tPA gene)."[62] The same is true of the document dated August 29; it says nothing about inserting a regulatory element alone into the genome of a cell.[63]

CGI is also wrong that "possession of the invention claimed would be shown by possession of the insertion of an amplifiable gene in a construct through homologous recombination, as the Board expressly held that would satisfy the claims." CGI Reply, at 10. The Board held no such thing, which is confirmed by CGI's failure to cite any legal authority or a specific passage of the Board's decision in support of this proposition. Neither conception of a method of insertion of an amplifiable gene, nor conception of a method of insertion of an amplifiable gene and a regulatory sequence, constitute conception of a method of insertion of a regulatory sequence alone. In other words, conception of insertion of "A or A+B" does not constitute conception of insertion of B alone. *In re Baird*, 348 F.2d 974, 979 (C.C.P.A. 1965) ("It

---

[61] CGI "Record," Docket No. 129-5 at CGI 3653.

[62] CGI "Record," Docket No. 129-6 at CGI 3231.

[63] *See* CGI "Record," Docket No. 129-12 at Docket page 12 of 18.

cannot be said that the method of steps ABCD is the same method or invention as one consisting only of steps ACD or ABD.").[64]

CGI has also not attempted to address (and therefore has not proven) the real issue, which is whether one of ordinary skill in the art would have considered insertion of a regulatory sequence alone to be obvious over insertion of an amplifiable gene, or obvious over insertion of an amplifiable gene and a regulatory sequence.[65]

Nor has CGI addressed its admission to the Patent Office (during prosecution of Skoultchi's 1989 patent application) that the "present invention" of that application entailed the use of an "amplifiable gene."[66]

The inevitable conclusion to be drawn from all of this is that Skoultchi did not conceive a method wherein one inserted only a regulatory sequence into the genome of a cell (which "Japan" disclosed and claims 107-109 encompass). Therefore, Skoultchi cannot prove that he invented the methods recited in claims 107-109 prior to August 28, 1989, and those claims are unpatentable over "Japan."

## III.    CONCLUSION

ARS respectfully requests that the Court deny CGI's motion, based on any one or all of the following grounds:

---

[64] *See also* discussion in ARS Opposition at 18.

[65] *See* discussion of legal standard in ARS Opposition, at 18. CGI's characterization of ARS's position as "requiring more than what the claims require and more than what the reference teaches" (CGI Reply at 13) makes no sense because claims 107-109 encompass insertion of a regulatory segment alone, as does "Japan" (which discloses insertion of a regulatory sequence alone into the genome of a bacterial cell).

[66] *See* ARS Opposition at 20.

(1)     CGI has not proven (or even attempted to prove) that it reduced to practice the methods recited in claims 107-109;

(2)     CGI has not proven (or even attempted to prove) that claims 107-109 are entitled to the benefit of Skoultchi's November 6, 1989 application, leaving those claims with an effective filing date of November 6, 1990 (more than one year after the August 29, 1989 publication of "Japan"), and thereby creates a statutory bar to the patentability of claims 107-109 under 35 U.S.C. § 102(b);

(3)     CGI has not proven that Skoultchi was reasonably diligent in reducing to practice the methods recited in claims 107-109, or that the fifty-five consecutive days during which his application sat idle can be legally excused; and

(4)     CGI has not proven that Skoultchi conceived a method of causing gene expression to occur in a primary cell, or a method of insertion of a regulatory sequence alone into the genome of a cell, both of which are recited in the language of each of claims 107-109.

Dated: December 11, 2006                     Respectfully submitted,


                                             By: /s/ Kevin M. Flowers
                                             Fred A. Kelly, Jr. (BBO # 544046)
                                             NIXON PEABODY LLP
                                             100 Summer Street
                                             Boston, MA 02110
                                             Tel: 617-345-1000
                                             Fax: 617-345-1300

                                             Kevin M. Flowers (*pro hac vice*)
                                             Matthew C. Nielsen (*pro hac vice*)
                                             MARSHALL, GERSTEIN & BORUN LLP
                                             6300 Sears Tower
                                             233 S. Wacker Drive
                                             Chicago, IL 60606-6357
                                             Tel: (312) 474-6300
                                             Fax: (312) 474-0448

                                             Counsel For Plaintiff APPLIED RESEARCH
                                             SYSTEMS ARS HOLDING, N.V.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **ARS SUR-REPLY REGARDING CGI'S MOTION TO REVERSE THE BOARD'S DECISION THAT CGI CLAIMS 107-109 ARE UNPATENTABLE OVER "JAPAN"** is being filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 11, 2006. Additionally, two courtesy copies are being dispatched via UPS for next business day delivery to the Court's chambers.


/s/ Kevin M. Flowers