**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CELL GENESYS, INC., )<br>)<br>Plaintiff/Counterdefendant, )<br>)<br>v. )<br>)<br>APPLIED RESEARCH SYSTEMS ARS )<br>HOLDING, N.V., )<br>)<br>Defendant/Counterclaimant. )<br>)<br>APPLIED RESEARCH SYSTEMS ARS )<br>HOLDING, N.V., )<br>)<br>Plaintiff/Counterdefendant, )<br>)<br>v. )<br>)<br>CELL GENESYS, INC., )<br>)<br>Defendant/Counterclaimant, and )<br>)<br>TRANSKARYOTIC THERAPIES, INC., )<br>)<br>Defendant. ) | Civil Action No. 05-12448-MLW<br><br><br><br><br><br><br><br><br><br><br>Civil Action No. 04-11810-MLW |

**ARS SUR-REPLY REGARDING CGI'S MOTION TO REVERSE THE BOARD'S
DECISION THAT THERE IS NO INTERFERENCE-IN-FACT**

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................1

II. ARGUMENT.................................................................................................................1

    A. Points on which the parties appear to agree................................................1

    B. CGI's argument that claim 106 is obvious in light of claim 24 remains fundamentally flawed.....................................................................1

        1. CGI has failed to establish that one of ordinary skill looking at Claim 24 in 1989 would have considered the HEK 293 cell of Claim 106 to be obvious....................................2

        2. CGI has failed to establish that one of ordinary skill looking at Claim 24 in 1989 would have considered the human EPO gene of Claim 106 to be an obvious choice as a normally transcriptionally silent gene in an HEK 293 cell..........................3

        3. CGI's reliance on the '939 patent is unavailing..........................4

    C. CGI's argument that claim 24 is obvious in light of claim 106 remains fundamentally flawed.....................................................................5

        1. CGI's construction of claim 24 imports limitations from the specification of the '071 patent that do not exist in the claim.........................................................................................5

        2. CGI does not give claim 24 its broadest *reasonable* interpretation...............................................................................5

        3. CGI inappropriately relies on the '071 specification to support its interference-in-fact argument...................................7

        4. CGI fails to address key arguments raised in ARS's Opposition..................................................................................8

    D. CGI's argument about "additional evidence"...........................................9

III. CONCLUSION............................................................................................................11

ii

## TABLE OF AUTHORITIES

**Cases**

*In re Deuel*,
  151 F.3d 1552 (Fed. Cir. 1995) .................................................................................. 9

*In re Rouffet*,
  149 F.3d 1350 (Fed. Cir. 1998) .................................................................................. 9

*In re Vaeck*,
  947 F.2d 488 (Fed. Cir. 1991) .................................................................................... 8

*Unique Concepts, Inc. v. Brown*,
  939 F.2d 1558 (Fed. Cir. 1991) ............................................................................. 5, 6

*Noelle v. Lederman*,
  355 F.3d 1343 (Fed. Cir. 2004) .............................................................................. 7, 8

**Statutes**

35 U.S.C.§ 102 ................................................................................................................. 4

35 U.S.C.§ 103 ................................................................................................................. 4

**Regulations**

37 C.F.R. § 1.601(n) ........................................................................................................ 4

I.      **INTRODUCTION**

ARS submits this Sur-reply pursuant to the Court's August 9, 2006 Order (Court Docket No. 124 at 2, ¶ 2) in order to correct certain errors of fact and law in CGI's "interference-in-fact" reply memorandum.

II.     **ARGUMENT**

    A.    **Points on which the parties appear to agree**

The parties agree, as they must, that the Court's August 9, 2006 Order ("the August 9 Order") indicates that the issue of interference-in-fact is to be argued "on the record."[1] The parties agree that the "two-way" test is applicable to the interference-in-fact question.[2] The parties agree that ARS claim 24 and CGI claim 106 do not anticipate one another.[3] The parties therefore agree that, in order to prevail on this issue, CGI must prove that claims 24 and 106 render each other obvious.[4]

    B.    **CGI's argument that claim 106 is obvious in light of claim 24 remains fundamentally flawed**

In its Reply, CGI asserts that if one of ordinary skill in 1989 had considered claim 24 as prior art, they could have made three, and only three, "choices" based thereon: the use of human embryonal kidney 293 cells ("HEK 293 cells") as the "cell line" of claim 24; the use of the combination of the CMV promoter and enhancer elements as the "regulatory segment" of claim

---

[1] CGI Reply at 1.

[2] *Id*. at 2.

[3] *Id*.

[4] *Id*.

24; and the selection of the human erythropoietin ("EPO") gene as the "normally transcriptionally silent gene" of claim 24.[5]

As in its opening Memorandum, CGI only addresses these three "choices" separately; it never points to evidence demonstrating, nor does it even discuss, why the *combination* of these three specific elements would have been obvious to one of ordinary skill looking at claim 24 in 1989. The only thing CGI says is that there is no evidence that these individual choices would *not* have been obvious.[6] But that argument turns the law of obviousness on its head and should be rejected.[7]

### 1. CGI has failed to establish that one of ordinary skill looking at Claim 24 in 1989 would have considered the HEK 293 cell of Claim 106 to be obvious

CGI asserts that HEK 293 cells were a widely used cell line in 1989. But CGI does not and cannot dispute that HEK 293 cells were only one of the hundreds of cell lines from different

---

[5] *Id*. at 8-9.

[6] *Id*. at 9.

[7] Incongruously, CGI continues to insist that the Board was correct when it found that claim 106 "recites specific provisions that are found nowhere in the prior art." CGI Reply at 8. This is at best a curious position, given CGI's argument (which lacks any discussion of what is added to the prior art by claim 24) that these three choices, alone and in combination, would have been obvious in 1989. CGI Reply at 9. This becomes an extremely curious position in light of CGI's attempt to rely on the previously undisclosed '939 patent. If one accepts CGI's arguments about the '939 patent, that prior art patent negates the only reason that the Board found claim 106 to be patentable to CGI (*i.e.*, that claim 106 recites specific provisions that are found nowhere in the prior art). Consequently, if the '939 patent is considered as prior art to CGI's claims (and CGI cannot deny that it would be), then claim 106 is not the same patentable invention as claim 24, because CGI has amply demonstrated that claim 106 is not patentable. CGI cannot have it both ways.

species, both animals and plants, that were encompassed by the term "cell line" in 1989.[8] CGI has not presented any evidence from the record (particularly any expert testimony) to indicate why the choice of an HEK 293 cell would have been obvious to one of ordinary skill looking at claim 24 in 1989.

> 2. **CGI has failed to establish that one of ordinary skill looking at Claim 24 in 1989 would have considered the human EPO gene of Claim 106 to be an obvious choice as a normally transcriptionally silent gene in an HEK 293 cell**

Claim 24 requires "a normally transcriptionally silent gene within the genome of said cell line," whereas Claim 106 requires the human EPO gene in an HEK 293 cell. In its Reply, CGI yet again fails to point to any evidence of record (particularly any expert testimony) that one of ordinary skill looking at Claim 24 in 1989 would have considered the human EPO gene to have been an obvious choice as a "normally transcriptionally silent gene" within the genome of an HEK 293 cell. Instead, CGI relies only on the Board's statement that the EPO gene is a normally transcriptionally silent gene.[9] But that cannot substitute for actual evidence that one of ordinary skill in 1989 would have considered the EPO gene to have been an obvious choice as the "normally transcriptionally silent gene" required by claim 24.

Moreover, the prosecution history of CGI's '390 application shows that one of ordinary skill in 1989 would *not* have considered the human EPO gene in an HEK 293 cell line to be a "normally transcriptionally silent gene." While CGI was prosecuting its application, the Examiner pointed out that one of ordinary skill in 1989 "knew" that human erythropoietin was

---

[8] This is evident from catalogs *circa* 1989 that list hundreds of different cell lines distributed by the American Type Culture Collection ("ATCC"), the leading U.S. repository for such cell lines (pertinent pages from one such catalog are submitted herewith as Exhibit A to the Declaration of Matthew C. Nielsen).

[9] CGI Reply at 9.

3

expressed in HEK 293 cells and therefore would not have considered the EPO gene to be a "normally transcriptionally silent gene" in those cells.[10] CGI never argued otherwise.[11] Thus, the evidence of record in this case indicates that one of ordinary skill in 1989, even if they were to have chosen an HEK 293 cell as a starting point, would not have chosen the human EPO gene to be the "normally transcriptionally silent gene" of claim 24.

### 3.    CGI's reliance on the '939 patent is unavailing

CGI's reliance on the '939 patent to argue the obviousness of the combination of elements in claim 106 is an exercise in misdirection. To satisfy the two-way obviousness test, it is ***claim 24*** in light of the prior art, not the prior art alone, that has to render claim 106 obvious.[12] Claim 24 recites a cell line capable of expressing a "normally transcriptionally silent gene" (*i.e.*, an "endogenous" gene that is native to the cell line being used). The '939 patent, in contrast, only discloses a transient expression system for expressing ***exogenous*** (foreign) genes (one of which is an exogenous EPO gene). The '939 patent therefore does not support CGI's argument, nor has

---

[10] *See* U.S. Patent Application Serial No. 08/102,390, "Office Action" dated April 24, 1995, at 21 (although this should be contained in the copy of the '114 Interference record which CGI submitted to the Court, ARS is submitting herewith for the convenience of the Court a copy of pertinent pages designated as Exhibit B to the Nielsen Decl.).

[11] Instead of arguing that the Examiner's statement about the belief of one of ordinary skill was incorrect, CGI attempted to demonstrate that, regardless of what one of ordinary skill believed in 1989, HEK 293 cells do not normally express human erythropoietin. *See* U.S. Patent Application Serial No. 08/102,390, "Declaration of Mitchell Finer Under C.F.R. § 1.132," dated October 20, 1995 (submitted herewith as Exhibit C to the Nielsen Decl.).

[12] *See* 37 C.F.R. § 1.601(n). "Invention 'A' is the same patentable invention as an invention 'B' when invention 'A' is the same as (35 U.S.C. 102) or is obvious (35 U.S.C. 103) in view of invention 'B' assuming invention "B" is prior art with respect to invention 'A'. Invention 'A' is a separate patentable invention with respect to invention 'B' when invention "A" is new (35 U.S.C. 102) and non-obvious (35 U.S.C. 103) in view of invention 'B' assuming invention 'B' is prior art with respect to invention 'A.'"

4

CGI presented any *evidence* whatsoever that one of ordinary skill in 1989 would have been motivated to combine claim 24 and the '939 patent.

### C. CGI's argument that claim 24 is obvious in light of claim 106 remains fundamentally flawed

#### 1. CGI's construction of claim 24 imports limitations from the specification of the '071 patent that do not exist in the claim

The fact that the specification of the '071 patent suggests that a selectable marker gene can sometimes be used as an amplifiable gene is irrelevant to the question at hand. CGI must demonstrate that there is an interference-in-fact between what is *claimed* in claim 24 and what is *claimed* in claim 106. In its Reply, as in its original Memorandum, CGI's argument never deals with the actual language of claim 24. It is the claim language that controls, and claim 24 clearly recites that the DNA construct "*additionally* comprises an amplifiable gene" (emphasis added). In both its opening Memorandum and its Reply, CGI simply ignores this fact.

#### 2. CGI does not give claim 24 its broadest *reasonable* interpretation

CGI relies on the principle that in an interference, claims are to be given their broadest reasonable interpretation. But CGI asks the Court to ignore the word *reasonable*, and thereby to ignore the other fundamental rules of claim interpretation. Claim 24 does *not* recite the "cell line" of claim 23 (wherein the "amplifiable" gene may also be the "selectable marker" gene). Rather, claim 24 says that the construct "*additionally* comprises" an amplifiable gene. Thus, claim 24 very specifically requires that the amplifiable gene be a *second gene*; a gene *in addition to* the selectable marker gene.[13]

---

[13] CGI suggests that ARS is attempting to limit claim 24 based on a "cautionary note" in the specification. That is incorrect. ARS's discussion about this issue in its Opposition was merely to show that the embodiment claimed in claim 24 (having a separate selectable marker and amplifiable gene) was expressly set forth and contemplated in the specification.

5

The situation here is very like that in *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558 (Fed. Cir. 1991). In *Unique Concepts*, the plaintiff's patent claimed various apparatus and methods for attaching fabric to a wall. Claim 1 of the patent recited an "assembly comprising linear border pieces *and* right angle corner border pieces . . . ."[14] The specification of the patent repeatedly described, and the drawings depicted, the two pieces as separate elements.[15] However, one passage in the patent said that linear border pieces and right angle corner border pieces could be the same border piece.[16]

The Federal Circuit held that this discussion in the specification did not negate the claim's express use of "and," which required the inclusion of the two different types of border pieces. The fact that the specification described that a mitered linear border piece could in some instances also be a right-angle corner piece did not mean that the linear border piece *in the claim* could be a right-angle corner piece, when the claim itself separately recited both linear border pieces *and* right angle corner pieces.[17]

Here, as in *Unique Concepts*, the majority of the specification of the '071 patent describes the "selectable marker gene" as an element distinct from the "amplifiable gene," and the drawings depict the "selectable marker gene" as an element distinct from the "amplifiable gene." And, like the claim in *Unique Concepts*, claim 24 recites the "selectable marker gene" as an element distinct from the "amplifiable gene." As in *Unique Concepts*, the fact that a single sentence in the '071 patent specification says that in certain embodiments the selectable marker

---

[14] *Unique Concepts*, 939 F.2d at 1560 (emphasis added).

[15] *Id*. at 1562.

[16] *Id*.

[17] *Id.*

6

gene could also be an amplifiable gene does not negate the express language of the claim itself; both elements are separately required by the claim. CGI's continued refusal to acknowledge this fact is fatal to its argument.

### 3. CGI inappropriately relies on the '071 specification to support its interference-in-fact argument

Two-way obviousness must be shown between two *claims*, not between what has been described in two specifications.[18] Consequently, CGI's continued reference to "the very art to which the ARS '071 patent is directed"[19] is, in addition to being factually incorrect, entirely irrelevant to the issue of interference-in-fact, as a matter of law.

CGI tries to misdirect the Court when it asserts that the '071 patent is "directed" to the art of expressing the "THSβ [*sic*: TSHβ] gene." The '071 patent is "directed" to what has been claimed. The TSHβ gene does not appear in any claim. The TSHβ gene is only ever referred to in the '071 patent in a working example in the specification. Thus, any discussion of the TSHβ gene has no relevance to the existence or non-existence of an interference-in-fact between what the parties *claimed* in claims 24 and 106.

CGI similarly tries to misdirect the Court when it suggests that one of ordinary skill in 1989, looking at claim 24, would have been motivated to turn to the '832 patent because Dr. Chappel is named as an inventor on that patent. The fact that Dr. Chappel is the named inventor on the '071 patent and one of the named inventors on the '832 patent is wholly irrelevant to the issue of interference-in-fact. CGI has not and cannot show that one of ordinary skill in 1989

---

[18] *See Noelle v. Lederman*, 355 F.3d 1343, 1352 (Fed. Cir. 2004) ("A patentee's invention is only found in a patentee's claims. . . Thus, if the Board is to compare two inventions, the Board must only compare the parties' claims.").

[19] CGI Reply at 5.

would "naturally turn to the inventor's own reference."[20] It is only the language of claim 24 that is to be considered as prior art in determining whether there is an interference-in-fact, not the specification of the '071 patent, and certainly not the front cover of the '071 patent where Dr. Chappel's name appears.[21] There is simply no basis for CGI to argue that one of ordinary skill in 1989 would have looked to the '832 patent, and thus no basis to use anything in that patent in this interference-in-fact obviousness analysis.[22]

### 4.  CGI fails to address key arguments raised in ARS's Opposition

Even if both the "selectable marker gene" and the "amplifiable gene" elements of claim 24 could be met by the presence of a single gene having the characteristics of both, CGI's argument that it would be obvious to use a selectable marker gene in the construct of claim 106 fails as a matter of law.

The parties agree, and the record in this case reflects, that only a subset of selectable marker genes can also be used as amplifiable genes – and that DHFR is one such selectable marker gene. In its opening Memorandum and in its Reply, CGI argues nothing more than that DHFR was known and used as a selectable marker in 1989.[23] This is not in dispute. But CGI's

---

[20] *Id.*

[21] *Noelle*, 355 F.3d at 1352. ("First, the Board was correct in not considering Noelle's methods of isolation of human CD40CR antigen using CD40-Ig found in his '799 specification because the methods were neither part of the parties' inventions nor "prior art.").

[22] *See, e.g., Id.* at 1347 (Fed. Cir. 2004) ("[T]he specifications underlying the respective claims cannot be considered "prior art" and an interference-in-fact analysis requires the comparison between the parties' claims, not their specifications"), citing *In re Vaeck*, 947 F.2d 488, 493 (Fed. Cir. 1991).

[23] Incredibly, CGI alleges that ARS's expert, Dr. Martin, opined that one of skill in the art armed with claim 106 would have approached the problem of increasing expression by adding DHFR. This is a complete fabrication. The cited passage in Dr. Martin's report makes no reference to claim 106 (or any other claim); it only generically states that a person of ordinary skill in the art would know how to design a construct to accomplish the desired goal.

"argument" is equally applicable to each and every selectable marker gene known in 1989, whether or not that gene is DHFR, and whether or not it is also an amplifiable gene.[24] In its Opposition, ARS explained why obviousness is not demonstrated by such generalized motivations.[25]

To demonstrate obviousness of a combination, CGI must demonstrate why one of ordinary skill in 1989 would have selected the *specific* elements of the combination in claim 106.[26] Both in its opening Memorandum and in its Reply, CGI failed to provide any *evidence* that one of ordinary skill in 1989 would have been motivated to select the specific selectable marker gene it relies upon, the DHFR gene, over the plethora of selectable marker genes available in 1989. Once again, even if CGI were to be allowed to rewrite claim 24 as it tries to do, CGI has still failed as a matter of law to demonstrate that one of ordinary skill would have been motivated to add a DHFR gene to the HEK 293 cell and human EPO gene of claim 106.

### D. CGI's argument about "additional evidence"

CGI mischaracterizes the Court's August 9 Order yet again in this section of its Reply. The Court has not "directed CGI to identify what additional evidence, besides the 'record' . . . would be necessary to demonstrate the existence of an Interference-in-Fact."[27] Rather, based on the parties' colloquy with the Court at the August 8 hearing, the Court directed CGI to "address what testimony it would like to present relating to the second question and why that testimony is

---

[24] CGI further compounds its error, by continuing to insist on relying on documents not part of the record.

[25] ARS Opposition at 13, 16.

[26] ARS Opposition at 16 (citing *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998) and *In re Deuel*, 51 F.3d 1552, 1558 (Fed. Cir. 1995).

[27] CGI Reply at 9-10.

9

necessary."[28] In its Reply, CGI admits that "new testimony need not be advanced – the Court can consider this Motion completely on the record."[29] ARS agrees; this motion should be decided on the record generated during fact and expert discovery in this case, and no new testimony should be permitted at the January 16 hearing.

      CGI, however, apparently misapprehends what is part of the "record" available to it in this case. Fact and expert discovery in this case closed months ago, and the August 9 Order did not permit CGI to put in new documentary evidence in support of its arguments regarding interference-in-fact. The '939 patent was not produced during fact or expert discovery in this case, and consequently is not part of the record in this case. Nor should CGI be permitted to supplement Dr. Tlsty's Rule 26 expert statement to include opinions about the interference-in-fact issue. As explained in ARS's corresponding Motion *In Limine* (Court Docket No. 124), if CGI expected to be able to rely on the '939 patent as evidence to support its interference-in-fact arguments, it was obligated to produce that evidence under Rules 26(a) and 26(e)(1) and in response to ARS's requests for production of documents, which specifically requested such documents (as explained in ARS's reply in support of its Motion *In Limine*, filed concurrently herewith) during fact or expert discovery in this case. And if CGI wanted to rely on Dr. Tlsty to provide testimony on this issue, it should have disclosed her opinions regarding this issue in her expert statement submitted during expert discovery in this case. It did not. Consequently, CGI does not have any additional testimony to offer on this issue.

---

[28] August 9 Order, Court Docket No. 124, at 2, ¶ 2.

[29] CGI Reply at 10.

### III.    CONCLUSION

For the reasons set forth above and in ARS's Opposition, this Court should deny CGI's motion to reverse the Board's determination that there is no interference-in-fact between claim 106 and claim 24.

Dated: December 11, 2006                    Respectfully submitted,

                                                   By: /s/ Kevin M. Flowers
Fred A. Kelly, Jr. (BBO # 544046)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Tel: 617-345-1000
Fax: 617-345-1300

Kevin M. Flowers (*pro hac vice*)
Matthew C. Nielsen (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448

Counsel For Plaintiff APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.

## CERTIFICATE OF SERVICE

      I hereby certify that **ARS SUR-REPLY REGARDING CGI'S MOTION TO REVERSE THE BOARD'S DECISION THAT THERE IS NO INTERFERENCE-IN-FACT; DECLARATION OF MATTHEW C. NIELSEN** in support thereof, and all exhibits referred to therein are being filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 11, 2006. Additionally, two courtesy copies are being dispatched via UPS for next-business-day delivery to the Court's chambers.

                                                /s/ Kevin M. Flowers