**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CELL GENESYS, INC., ) | |
| ) | |
| Plaintiff/Counterdefendant, ) | |
| ) | |
| v. ) | Civil Action No. 05-12448-MLW |
| ) | |
| APPLIED RESEARCH SYSTEMS ARS ) | |
| HOLDING, N.V., ) | |
| ) | |
| Defendant/Counterclaimant. ) | |
| ) | |
| APPLIED RESEARCH SYSTEMS ARS ) | |
| HOLDING, N.V., ) | |
| ) | |
| Plaintiff/Counterdefendant, ) | |
| ) | |
| v. ) | Civil Action No. 04-11810-MLW |
| ) | |
| CELL GENESYS, INC., ) | |
| ) | |
| Defendant/Counterclaimant, and ) | |
| ) | |
| TRANSKARYOTIC THERAPIES, INC., ) | |
| ) | |
| Defendant. ) | |

**ARS REPLY REGARDING ITS MOTION *IN LIMINE* TO EXCLUDE HEARSAY
RELIED ON BY CGI IN ITS "JAPAN" MEMORANDUM**

I.  **INTRODUCTION**

CGI's Opposition fails to provide the Court with any reason to deny ARS's motion *in limine* to exclude the hearsay evidence upon which CGI relies in its "Japan" memorandum. CGI's own statements, in its "Japan" memorandum and in its opposition to ARS's motion *in limine*, prove the documents in question constitute hearsay. These documents, whether they were first produced in this action or in the '114 Interference below, are inadmissible because their hearsay statements do not fall within any exception to the rule against hearsay (indeed, CGI did not even try to qualify any of the documents under any exception). The Court should grant ARS's motion and exclude the documents from evidence in this case.

II. **ARGUMENT**

CGI makes two primary arguments in its Opposition: 1) the documents in question are not hearsay because they are not offered for the truth of the matters asserted therein; and 2) ARS's objections are procedurally improper. Both arguments are contrary to fact and law.

   A.   **CGI admits that the documents contain hearsay**

In its Opposition, CGI admits that the documents in question are offered to prove that certain events, such as Skoultchi's alleged conception and activities said to demonstrate his diligence, occurred before certain dates. These admissions are fatal to CGI's Opposition.

CGI's argument fails because it focuses only on ***some of*** the statements in the documents at issue, while ignoring other statements. But ***any*** out-of-court statement in a document that is offered for its truth is inadmissible hearsay unless it falls within an exception. That CGI may not be offering a document for the truth of ***every*** statement in the document is irrelevant. In some cases, CGI says it relies on some of the documents in question only to show that certain ideas were written down or communicated by a particular date, regardless of whether those ideas were

1

true or not. CGI says this means that the statements in the document are not hearsay. That is simply wrong. The very date written or typed on the document is a hearsay statement: it is not only a matter asserted in the document, but one that CGI relies upon for its truth. Thus, even if the Court agrees that the documents in question are offered only to prove words were written down those documents on certain dates, those "date" statements constitute hearsay, and cannot be relied upon by CGI.[1]

Moreover, despite its assertions otherwise, CGI in fact is relying on the truth of the substantive statements in the documents in question. This is shown by CGI's characterizations of these documents in Appendices D-H attached to its "Japan" memorandum. For example, CGI relies on the statements in Skoultchi's "notebook," in an entry ostensibly dated February 15, 1989, which state "[t]hinking about shorter term projects for Cell Genysis [sic]" and "manufacturing of therapeutic proteins without using the patented nucleic acid sequences (cDNA or gene) of that protein."[2] CGI does not rely on this document merely to show that Dr. Skoultchi wrote these words down on February 15, but rather to show that Skoultchi was actually "thinking" about and "identifying" specific "approaches for manufacturing of therapeutic proteins" on this date.[3] In other words, CGI relies on the document for the truth of its assertions

---

[1] *See Total Containment, Inc. v. Environ Products, Inc.* 921 F. Supp. 1355, 1370 (E.D. Pa. 1995) and cases discussed therein ("Under the Federal Rules of Evidence, any written assertion offered to prove the truth of the matter asserted, other than one made by the declarant while testifying, is hearsay. Fed. R. Evid. 801(c). . . . As the proponents of this document, the defendants bear the burden of establishing its admissibility. Defendants have not offered any circumstantial guarantees of trustworthiness for the fax burn-in. . . . Absent any such circumstantial guarantees, I conclude that the fax burn-in is insufficiently trustworthy, in and of itself, to be admissible to establish the date of this document.").

[2] Memorandum of Cell Genesys, Inc. – CGI's Claims 107-109 are not Unpatentable over the "Japan" Reference (Docket No. 128) ("CGI Japan Memorandum") at H-5.

[3] *Id*. at H-1 and H-2.

regarding Skoultchi's conception of specific subject-matter, not just for the dates written on the document.[4]

Another example: in Skoultchi's "notebook," on the page dated "April 26," the entry states "talked to Burt on Fri April 28" regarding his alleged invention.[5] How does CGI characterize this document? It asserts that the "notebook reflects that Skoultchi spoke with patent attorney [Bert] Rowland" regarding the method on April 28.[6] By its own admission, CGI is offering the document to show the "truth" of the matter asserted; *i.e.*, that Skoultchi actually spoke with Rowland on April 28. CGI's repeated refrain, variously stated, that "the date of the document [is] the only purpose for which it is introduced."[7] is plainly incorrect. The statements in the documents relied upon by CGI are inadmissible hearsay and render the documents inadmissible.

As for the document dated July 24, CGI has not rebutted ARS's arguments that this document is hearsay and lacks trustworthiness. Without citing to any testimony or other document, CGI simply alleges "Skoultchi did not prepare the document in question, but rather it was prepared for him by Levin's office. But the witness testified that it was his thoughts in his

---

[4] *See Grossman v. Waste Management, Inc.* 589 F.Supp. 395, 414 n.8 (N.D. Ill. 1984) ("Defendants have highlighted a portion of the article stating that Waste Management first announced in December 1981 that it wanted to expand the site, and that 'citizen opposition ha[d] grown' since that time. When defendants submit an article not to show the truth of the matters stated therein but rather to show that the information was available to the market, that is a non-hearsay use of the article. Fed. R. Evid. 801(c). However, use of a statement in an article to show that there was public opposition to a site at an earlier **date** *is* a **hearsay** use. The article is not admissible for that purpose . . . .") (emphasis in original).

[5] *Id*. at H-6

[6] *Id*. at H-3.

[7] Opposition of Cell Genesys, Inc. to the ARS Motion to Exclude Evidence Relied on in CGI's Motion Regarding the "Japan" Reference as Hearsay (Docket No. 148) ("CGI Opposition to Hearsay Motion *in Limine*") at 4.

3

words."[8] But that is inconsistent with the testimony of CGI's witnesses, who themselves could not agree on and were unsure of the origin of this document (which ARS explained in the Memorandum in support of its Motion *in Limine* at 6 & n. 12). Thus, CGI has failed to qualify the inadmissible hearsay contained in this document.

    **B.    ARS's objections to the hearsay documents are proper and timely**

CGI makes two arguments that ARS's motion *in limine* is procedurally improper: 1) ARS cannot object to the July 24-25, 1989 "meeting minutes" or other documents[9] that were produced by CGI during the '114 Interference, because the '114 Interference "record" has already been "admitted" by motion in this case; and 2) ARS's motion *in limine* was untimely. Both arguments are incorrect.

    **1.    ARS can object to the admissibility of evidence produced by CGI in the '114 Interference**

Contrary to CGI's assertion, 35 U.S.C. § 146 does not render the '114 Interference "record" completely unchallengeable. Rather, it simply permits the papers produced during the '114 Interference to be considered as if they had been produced in this case. ARS is perfectly within its rights to object to any hearsay document or testimony, whether offered for the first time in this action or produced by CGI during the '114 Interference below.

---

[8] *Id*.

[9] In addition to the "meeting minutes," CGI misrepresents that "[t]he draft patent application of April [*sic*: August] 29, 1989, and the cover letter of November 1, 1989, were both attachments to the Declaration of Bert Rowland, introduced in Interference 105,114." CGI Opposition to Hearsay Motion *in Limine* at 5. Although the "draft patent application" was attached as Exhibit B to the Rowland Declaration submitted by CGI in the '114 Interference (as CGI Exhibit 2054) (Court Docket No. 129, Exhibit 7A, at 10 through Court Docket No. 129, Exhibit 7B, at 11), there was no cover letter, of any date, provided with the Rowland Declaration or at any other time during the '114 Interference.

First, given that CGI cites no authority and offers no reason to accept its argument other than a naked assertion, the Court can reject it on that basis alone.

Second, the plain language of 35 U.S.C. § 146 contradicts CGI's argument. Regarding interference records, 35 U.S.C. § 146 states (with emphasis added): "The testimony and exhibits of the record in the Patent and Trademark Office when admitted *shall have the same effect as if originally taken and produced in the suit*." Thus, section 146 allows the interference record to be "admitted" on motion of either party merely as a time- and cost-saving provision, eliminating the need to regenerate an extensive record in the district court. There is no support for CGI's argument that every document in that record, including documents that would be inadmissible if "originally taken and produced in the suit," magically become immune to the bar against hearsay under the Federal Rules of Evidence. Rather, as the statute states, the testimony and exhibits from the interference record are treated just like testimony and exhibits produced in the suit, all of which are potentially subject to objections under the Federal Rules of Evidence.

Third, CGI's argument is illogical. In a § 146 action, this Court reviews the Board's decisions for error, both evidentiary and otherwise. While the Court has access to all the evidence that was before the Board (as well as "new" evidence, in certain circumstances), it is not bound to treat the evidence in the same way that the Board did, any more than an appellate court is bound by the evidentiary rulings of a district court.[10] Under the rule CGI posits, this Court would be powerless to refuse to consider any evidence that the Board below decided to admit, even if it were unauthenticated, consisted of rank hearsay, or were otherwise inadmissible. That is not and cannot be the law.

---

[10] *See, e.g., Standard Oil Co. v. Montedison, S.p.A.*, 664 F.2d 356, 376 (3d Cir. 1981) ("[T]he district court correctly overruled the Board on the question of the admissibility of evidence . . . .")

5

Finally, the issue of the hearsay status of the "meeting minutes" that CGI produced during the '114 Interference below was already properly raised before this Court in ARS's First Amended Complaint. When CGI relied on this document in the '114 Interference, ARS moved to suppress it (*i.e.*, objected to its admission) on the basis that it contained inadmissible hearsay.[11] Because the Board found that, even considering the "meeting minutes," CGI's evidence failed to show that it conceived the subject matter of its claims 107-109 prior to the publication of the "Japan" reference, the Board dismissed ARS's motion to suppress as moot.[12] ARS expressly sought reversal of that dismissal of ARS's Motion to Suppress in its First Amended Complaint in this case.[13] ARS's objection is thus still valid and is properly before this Court.

### 2.  ARS's Objections to the Hearsay Evidence are Timely

CGI asserts, without support in case law, reason, or reference to any Order of this Court, that ARS's motions *in limine* are untimely because they were not filed prior to the filing of CGI's Memorandum addressing the "Japan" issue. This Court's August 9, 2006 Order set no deadline for ARS to file motions *in limine*. Moreover, ARS could not have been obligated to file a motion *in limine* regarding evidence that CGI had not yet relied upon in any motion. CGI's unauthorized submission of a "Summary of Documents and Testimony" on August 1, 2006 was irrelevant. If the Court accepted CGI's argument on this point, it would mean that ARS was obligated to submit motions *in limine* seeking to exclude all of the objectionable documents

---

[11] *See* "ARS's 37 CFR 1.635/1.656(h) Motion to Suppress (CGI's Exhibit 2040 and Portions of Exhibit 2054)" (although this should be contained in the copy of the '114 Interference Record which CGI submitted to the Court, for the convenience of the Court, a copy is submitted herewith as Exhibit D to the Declaration of Matthew C. Nielsen).

[12] *See* Decision on Preliminary Motions (filed as Exhibit 1 to First Amended Complaint (Court Docket No. 2)) at 141.

[13] *See* First Amended Complaint (Court Docket No. 2) at 4–5, ¶ 12.

referred to in that "Summary," including the many documents and portions of deposition transcripts which CGI referred to but ultimately chose not to rely upon or even cite in its two memoranda submitted on October 2. That obviously makes no sense. ARS's motions *in limine*, filed on the same day as its Oppositions to CGI's Memoranda and well in advance of the hearing scheduled for January 16, 2007, are timely.[14]

> C. **CGI's Opposition misstates the law**
>
>> 1. **The opportunity to cross-examine witnesses does not render hearsay admissible**

CGI says that the opportunity to cross-examine a witness eliminates any possible hearsay objection regarding the challenged documents. CGI cites *Cox v. Treadway*, 75 F.3d 230, 238 (6th Cir. 1996), for the proposition that "where a party has the opportunity to cross-examine the out-of-court declarant, the document becomes admissible,"[15] and concludes that because ARS had the opportunity to depose Skoultchi, Savage, and Thompson, none of their documents are hearsay.[16] CGI's position is incorrect.

First, *Cox* provides absolutely no support for CGI's proposition. *Cox* concerned the admissibility of a prior consistent statement under Fed. R. Evid. 801(d)(1)(B), which was given during the in-court cross-examination of the witness. Such statements are not hearsay. *Cox* does not hold that the opportunity to cross-examine a witness results in a universal waiver of hearsay objections. Because CGI does not and cannot seek to admit the Skoultchi "notebook" as a prior consistent statement, *Cox* is inapposite.

---

[14] *See, e.g.*, *Skillsky v. Lucky Stores*, 893 F.2d 1088, 1096 (9th Cir. 1990) (finding no abuse of discretion where district court granted a motion *in limine* filed only eleven days before trial).

[15] CGI Opposition to Hearsay Motion *in Limine* at 3.

[16] *Id*. at 3, 5. For example, CGI states that Savage and Thomson "were in fact available and 'cross examined'" and thus "any potential hearsay . . . is eliminated."

7

Second, CGI's Opposition consistently confuses the concepts of "authentication" and "admissibility." For example, CGI argues that Skoultchi's alleged "authentication" of his "notebook," and ARS's opportunity to question Skoultchi about that "notebook," means that the document is not hearsay.[17] Wrong; authentication is only a predicate to admissibility, it does not convert inadmissible hearsay to admissible evidence.[18] A document may be authentic yet ultimately inadmissible.

### 2. How hearsay is treated during an interference is irrelevant

CGI is apparently confused as to the procedural status of this dispute, as evidenced by statements such as "in an interference context such as this . . .," "restrictions imposed on the admission of hearsay are relaxed in an interference . . . ," and "in an interference these documents are admissible."[19] This Court is not conducting an interference here; the interference was over years ago. The pertinent issue is how hearsay is treated in a district court action.

Of course, even if the interference rules applied here, CGI grossly mischaracterizes each and every case it cites in its discussion of interference law.

CGI suggests that *Hurwitz v. Poon*, 364 F.2d 878 (C.C.P.A. 1966), supports relaxed restrictions on admitting hearsay evidence during an interference. It does not. Contrary to CGI's representation, the holding in *Hurwitz* was simply that a party need not exhaustively corroborate each and every step in a routine chain of events leading to the manufacture of a product.[20] CGI blurs the distinction between the weight given to evidence and its admissibility. The hearsay

---

[17] *Id*. at 3.

[18] *See* Fed. R. Evid. 901.

[19] CGI Opposition to Hearsay Motion *in Limine* at 6–7.

[20] *Hurwitz*, 364 F.2d at 887.

rules govern the admissibility of evidence, while corroboration governs how much weight the court should give to evidence already determined to be admissible. Even if *Hurwitz* were applicable here, its ruling involved "technical operations involving numerous people necessarily separated from each other in time and distance" where there was "not one hint in the testimony that the reports, labels, transportation and other procedures were not routine and accepted as fully reliable . . . ."[21] That is nothing like the situation here; Dr. Skoultchi was not carrying out any "routine procedure" while allegedly conceiving his claimed method, so his activities described in the documents in question cannot similarly be assumed to be reliable or corroborated.

CGI also misrepresents the holding in *Anderson v. Peiper*, 169 USPQ 788 (C.C.P.A. 1971), a case involving notebook entries offered to corroborate reduction to practice, for the proposition that the "rule of reason permits introduction of hearsay where appropriate."[22] In fact, the notebook entries in *Anderson* were admitted only because they were "thoroughly authenticated, a complete foundation for admissibility was laid, and the declarant was unavailable to testify."[23] None of these factors are present regarding the documents in question here; the documents here are not authenticated, no foundation was laid to make them subject to any exception to the hearsay rules, and all of their purported authors are available to testify.

CGI cites a concurring opinion in *Reese v. Hurst*, 661 F.2d 1222 (C.C.P.A. 1981), as support for the proposition that notebooks, as "contemporaneous documents," are automatically admissible.[24] In relying on *Reese*, CGI once again blurs the distinction between corroboration

---

[21] *Id*. at 887-878.

[22] CGI Opposition to Hearsay Motion *in Limine* at 6.

[23] *Anderson*, 169 USPQ at 790.

[24] CGI Opposition to Hearsay Motion *in Limine* at 6, citing *Reese,* 661 F.2d at 1238.

9

and admissibility. *Reese* does not stand for the proposition that notebooks are generally admissible; rather, it discusses the corroborative effect that laboratory notebooks kept in the ordinary course of business can afford to a party's statements regarding reduction to practice. The page in the concurrence that CGI cites states that an inventor's testimony "might be corroborated by facts and circumstances other than by an independent witness," but that such proof should not consist of self-serving documents.[25] Thus, CGI cannot meet even the inapposite burden it cites, since Skoultchi admitted that no one saw his notebook before he gave it to counsel many years later.

More importantly, however, regardless of what the **concurrence** in *Reese* stated, the **opinion** states that the "inventors' notebooks are accorded no more weight than the inventors' testimony in this instance, since they were not witnessed or signed and were unseen by any witness until after [the] interference was declared."[26] The *Reese* majority thus found that a notebook whose authenticity was supported only by the testimony of its owner is not corroborated under the "rule of reason."[27] That is exactly the situation here. Because CGI cannot offer independent corroboration of Skoultchi's "notebook," it should likewise be afforded no weight.

### 3. Rule 131 is not germane to the admissibility of CGI's hearsay evidence

CGI asserts that all of the challenged evidence must be admissible because Rule 131 requires a declaration from the inventor, along with supporting exhibits and records. CGI's argument is both self-defeating and incorrect.

---

[25] *Id*. at 1240.

[26] *Id*. at 1231.

[27] *Id* at 1233.

First, CGI's argument is self-defeating. CGI should have complied with the requirements of Rule 131 in the '114 Interference below, instead of withholding this evidence for years, as it has done. CGI's belated recognition that Rule 131 required it to submit a declaration from Dr. Skoultchi along with his supporting evidence actually supports ARS's arguments in its pending motion *in limine* regarding evidence withheld from the Board (Docket No. 136), not CGI's arguments here. Rule 131 required Skoultchi and CGI to submit this evidence **to the Board during the interference**. Given its failure to do so, CGI cannot ask this Court to overturn the Board's findings on the basis of this same withheld evidence.

Second, CGI's unsupported assertion is simply incorrect. Rule 131 says nothing about the admissibility of evidence; it addresses what evidence is required to be submitted by the purported inventor: a declaration and original copies of all supporting evidence. That such evidence may be inadmissible hearsay is simply not addressed by the Rule.

### III.   CONCLUSION

In its Opposition, CGI fails to rebut the arguments made in ARS's motion *in limine* because CGI does not and cannot show that the documents on which it now relies are not hearsay, and makes no attempt whatsoever to show that the documents should be admitted under an exception to the hearsay rule. CGI's legal analysis consists entirely of gross mischaracterizations of case holdings and *non sequiturs*. The Court should grant ARS's motion to exclude this hearsay evidence.

Dated: December 11, 2006          Respectfully submitted,

By: /s/ Kevin M. Flowers
Fred A. Kelly, Jr. (BBO # 544046)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Tel: 617-345-1000
Fax: 617-345-1300

Kevin M. Flowers (*pro hac vice*)
Matthew C. Nielsen (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448

Counsel For Plaintiff APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.

## CERTIFICATE OF SERVICE

 I hereby certify that the foregoing **ARS REPLY REGARDING ITS MOTION *IN LIMINE* TO EXCLUDE HEARSAY RELIED ON BY CGI IN ITS "JAPAN" MEMORANDUM, DECLARATION OF MATTHEW C. NIELSEN** in support and all exhibits referred to therein are being filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 11, 2006. Additionally, two courtesy copies are being dispatched via UPS for next business day delivery to the Court.

                /s/ Kevin M. Flowers