**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CELL GENESYS, INC., ) | |
| ) | |
| Plaintiff/Counterdefendant, ) | |
| ) | |
| v. ) | Civil Action No. 05-12448-MLW |
| ) | |
| APPLIED RESEARCH SYSTEMS ARS ) | |
| HOLDING, N.V., ) | |
| ) | |
| Defendant/Counterclaimant. ) | |
| ) | |
| APPLIED RESEARCH SYSTEMS ARS ) | |
| HOLDING, N.V., ) | |
| ) | |
| Plaintiff/Counterdefendant, ) | |
| ) | |
| v. ) | Civil Action No. 04-11810-MLW |
| ) | |
| CELL GENESYS, INC., ) | |
| ) | |
| Defendant/Counterclaimant, and ) | |
| ) | |
| TRANSKARYOTIC THERAPIES, INC., ) | |
| ) | |
| Defendant. ) | |

**ARS REPLY REGARDING ITS MOTION *IN LIMINE* TO EXCLUDE NEW EVIDENCE
OFFERED BY CGI IN SUPPORT OF ITS "JAPAN" MEMORANDUM**

**I.       INTRODUCTION**

A long line of well-reasoned precedent from the U.S. Circuit Courts of Appeals holds that a district court hearing a § 146 appeal from an interference can and should refuse to admit evidence that was withheld (or negligently not procured) and not presented to the Board in that interference. The Federal Circuit has expressly left open the question of whether a district court in a § 146 action may refuse to admit evidence offered on an issue raised before the Board.

The rule adopted by the regional Circuit Courts in the cases cited in ARS's motion *in limine* is a sound one: preventing a party that withheld evidence from the Board from relying on that evidence in a subsequent § 146 action protects the integrity of the PTO administrative decision-making process, conserves scarce judicial and administrative resources, and is fair to all parties. CGI's Opposition failed to address any of the cases cited by ARS or the reasoning supporting their adoption of this rule.

The Court should grant ARS's motion *in limine*[1] to exclude all of the "new" evidence now relied upon by CGI in support of its request to reverse the Board's decision that CGI's claims 107-109 are unpatentable over the "Japan" reference, because CGI either negligently failed to procure this readily available evidence, or simply withheld it from ARS and the Board, in the '114 Interference below.

---

[1] Memorandum in Support of ARS Motion *In Limine* to Exclude New Evidence Offered by CGI in Support of Its "Japan" Memorandum (Court Docket No. 136) ("ARS Motion").

## II.     ARGUMENT

### A.     The Court need not accept "new" evidence on issues raised before the Board

CGI's Opposition[2] misstates the law and fails to respond substantively to the legal analysis presented in ARS's motion *in limine*. The parties agree that 35 U.S.C. § 146 "***authorizes*** the district court to accept all proffered testimony on issues raised by the parties during the proceedings below or by the board's decision." *Case v. CPC Int'l*, 720 F.2d 745, 752 (Fed. Cir. 1984) (emphasis added). However, CGI incorrectly states that this holding is a "course laid out by the Federal Circuit" from which ARS purportedly asks this Court to "deviate." CGI Opposition at 3-4. That is not true. The Federal Circuit has stated only that the statute ***authorizes*** the admission of new evidence regarding issues raised below, not that a district court is ***required*** to admit such evidence.

CGI's argument that a court can only consider whether a party withheld evidence when that evidence relates to issues not raised before the Board is not supported by *Conservolite v. Widmayer*, 21 F.3d 1098 (Fed. Cir. 1994), or any other precedent. In fact, the Federal Circuit has explicitly left open the question of whether a district court may decline to admit evidence on an issue that was raised before the Board.[3]

CGI characterizes ARS's motion as "truly a frivolous exercise in looking at case decisions addressing whether evidence can be presented in a 146 action where the issue was **not**

---

[2] "Opposition of Cell Genesys, Inc. to the ARS Motion to Exclude Evidence Relied on in CGI's Motion regarding the "Japan" Reference Not Presented to the Board Below" (Court Docket No. 146) ("CGI 'New Evidence' Opposition").

[3] *Case*, 720 F.2d at 752 ("Whether under some circumstances a district court may properly restrict the admission of testimony on an issue raised before the board is not before us."); *General Instruments v. Scientific-Atlanta*, 995 F.2d 209, 214 (Fed. Cir. 1993) ("[W]e again have no occasion to decide whether 'a district court may properly restrict the admission of testimony on an issue raised before the board.'") (quoting *Case*). *See also* ARS Motion at 8.

raised before the Board, all the while acknowledging that this issue was so raised." CGI Opposition at 4. That could not be further from the truth. In fact, every single case relied upon by ARS involved new evidence relied upon regarding an issue that was raised before the Board.[4]

In its motion, ARS discussed in detail the sound legal reasoning underlying the rule, first articulated by the 3rd Circuit in *Barrett* almost 80 years ago, that by withholding or negligently failing to procure evidence during an interference, a party waives the right to rely upon that evidence in a subsequent § 146 action. This rule has never been overruled or superseded. Instead, the *Barrett* rule was adopted and expanded by the 7th and 8th Circuits in lengthy and well-reasoned opinions, which later served as the bases for other courts to apply the rule, including the D.C. Circuit Court of Appeals and district courts in the 5th, 6th, and D.C. Circuits. ARS Motion at 14, n.29. There are many additional reported cases adopting the rule that ARS did not cite in its motion. That CGI chose to ignore the cases cited by ARS, and their reasoning, does not diminish their persuasive force.

By refusing to admit evidence that CGI deliberately or negligently withheld or failed to procure during the '114 Interference below, this Court's decision will join the long-standing and well-reasoned line of cases beginning with *Barrett*, and will not run afoul of any decision from the Federal Circuit.

---

[4] *See* ARS Motion at 9–14 and n.29. Every case discussed in the motion involved evidence offered on issues raised before the Board. *Barrett Co. v. Koppers Co.*, 22 F.2d 395 (3d Cir. 1927) (affirming rejection of evidence offered to show conception and actual reduction to practice, both issues raised before the Board); *Kirschke v. Lamar*, 426 F.2d 870 (8th Cir. 1970) (affirming rejection of evidence offered to show actual reduction to practice, an issue raised before the Board); *Velsicol Chemical Corp. v. Monsanto*, 579 F.2d 1038 (7th Cir. 1978) (affirming rejection of evidence offered to corroborate conception, an issue raised before the Board); *Piher, S.A. v. CTS Corp.*, 664 F.2d 122 (7th Cir. 1981) (affirming rejection of evidence offered to show diligence and actual reduction to practice, both issues raised before the Board).

The only questions here are factual: 1) whether the evidence now offered by CGI was within its possession or readily available to it below; and 2) if so, whether CGI offered a sufficient excuse for failing to present that evidence to the Board. These questions were answered in ARS's motion and that answer was confirmed by CGI's Opposition: the evidence in question here was available to CGI and CGI failed to adequately justify its non-production below. Consequently, CGI has waived its right to rely upon that evidence here.

**B.      CGI had possession of, or could have easily obtained, the evidence upon which it now relies**

Whether the evidence in question was elicited in depositions taken of CGI witnesses by ARS in this case is absolutely irrelevant to the pertinent issue: whether this evidence was available to CGI below. As the proponent of the evidence, CGI bears the burden of proving it was not available below.[5] CGI has not carried its burden. A review of CGI's Opposition and other filings demonstrates that this "extensive new evidence" has always been either within CGI's possession or easily within its grasp.

**1.      CGI had possession of Skoultchi's "notebook," yet deliberately or negligently withheld it from the Board**

CGI's statements in its Opposition prove that the Skoultchi "notebook" has been in CGI's possession for many years, and that there is no conceivable excuse why CGI withheld it from the Board. In his declaration, CGI's counsel states that the notebook was "discovered" at CGI in response to ARS's document requests. Specifically, he admits that "requests were given to CGI's in-house counsel and executives . . . [and it] was only then that Skoultchi's notebook was discovered, in and among other documents and files." CGI Opposition at 4. However, Dr. Skoultchi admitted during his deposition that he gave his notebook to CGI's previous outside

---

[5] *Velsicol*, 579 F.2d at 1046, n.10.

4

counsel during the interference.[6] This admission, combined with the admission by CGI that the notebook was in the files of its in-house counsel and/or executives during the interference, show that CGI had possession and control over this document during the interference.

CGI's statements in its Opposition prove that its failure to produce the notebook during the interference was, at best, the result of gross negligence on the behalf of CGI and its counsel. As CGI admits, Rule 131 required that CGI submit a declaration from Skoultchi, along with his necessary written records, such as any contemporaneous notebooks, in order to antedate the "Japan" reference. And as CGI admits (indeed, as it trumpets) in its Opposition to a different ARS motion *in limine*, "Rule 131 provides in pertinent part that whenever a showing is made pursuant to this rule, 'original exhibits or drawing [*sic*: drawings] and records or photocopies *must* be submitted."[7]

Exactly. Though it was **required** to provide the Board with a declaration from Skoultchi, accompanied by his "notebook" and any other supporting documents, and though these documents were admittedly in CGI's possession, custody or control, CGI instead chose to rely on the "not particularly credible"[8] testimony of its patent attorney, Mr. Rowland, together with a handful of his documents. Having been able to produce and rely upon the notebook below, and having chosen not to do so, CGI has waived the right to rely upon this "new" evidence here.

---

[6] *See* ARS Motion at 4.

[7] "Opposition of Cell Genesys, Inc. to the ARS Motion to Exclude Evidence Relied on in CGI's Motion Regarding the "Japan" Reference As Hearsay" (Court Docket No. 148) at 7 ("CGI Hearsay Opposition") (CGI's emphasis).

[8] Decision on Preliminary Motions (filed as Exhibit 1 to First Amended Complaint (Court Docket No. 2)) at 92–93 (also submitted as Exhibit B to the Declaration of Matthew C. Nielsen (Court Docket No. 137)).

### 2. All of CGI's witnesses and their documents were available to CGI below, and were deliberately or negligently withheld from the Board

As to the testimony of its own consultants and former employees, CGI's Opposition focuses on irrelevancies, namely, the conduct of discovery during this litigation, rather than on the only issue relevant to this motion *in limine*, which is the conduct of CGI during the interference proceeding below. Counsel for CGI says that he contacted Skoultchi and Kucherlapati "prior to filing the 146 action . . . and neither witness had documents or memory pertinent to the issue."[9] While the subsequent recovery of these witnesses' memory and documents is near-miraculous, the only relevant issue is whether CGI was diligent in attempting to procure the testimony and documents of Skoultchi and its other witnesses during the '114 Interference.

It was not. As CGI admits in its Opposition and supporting declaration, CGI's counsel made absolutely no attempt during the interference below to contact the witnesses upon whose testimony it now relies, except for two purported phone calls to Mr. Levin. In fact, CGI's counsel states under penalty of perjury that "I met, as counsel for CGI, with Drs. Skoultchi and Kucherlapati and Mr. Levin[10] only after they were served with subpoenas in this matter."[11] The failure of CGI and its counsel to procure the testimony of these witnesses in the interference below alone constitutes gross negligence before the Board and waives CGI's right to rely upon

---

[9] CGI "New Evidence" Opposition at 4; Kelber Decl. at ¶ 2.

[10] The two purported attempts to call Mr. Levin in March 2003 surely do not constitute diligence.

[11] "Declaration of Steven B. Kelber in Support of Opposition to Cell Genesys, Inc. to the ARS Motion to Exclude Evidence Relied on in CGI's Motion regarding the "Japan" Reference Not Presented to the Board Below" at ¶ 6. (Court Docket No. 147) ("Kelber Decl."). ARS notes that counsel's statement is false, given that of Skoultchi, Levin and Kucherlapati, only Kucherlapati was actually served with a subpoena in this matter.

6

their testimony here.[12] CGI failed to use diligent efforts to contact key witnesses upon whose testimony it now relies. It should not be permitted to rely on that testimony.

### 3. CGI's current representations regarding the obligations of its witnesses to testify directly contradict its earlier representations

Counsel for CGI states, under penalty of perjury, that:

> Although Skoultchi and Kucherlapati were consultants to CGI on various issues pertaining to surviving matters of interest to them, ***their consulting contracts did not oblige them, in any way, to provide testimony or evidence to or for CGI***, and they did not do so.[13]

This sworn assertion is directly contrary to earlier sworn representations made by CGI's counsel to this Court. On October 4, 2004, CGI's counsel submitted a sworn affidavit in support of CGI's motion to dismiss this case, in which he stated:

> Dr. Skoultchi, and the corroborators, are under contract to CGI, ***and will appear to testify at CGI's request wherever CGI requests***.[14]

In its memorandum in support of its motion to dismiss, CGI stated both that: "[t]he inventor and his corroborators are under contract to CGI, ***and will appear to testify wherever CGI requests***" and that its "witnesses ***are contractually obligated to***, and likely will, ***appear wherever this case proceeds.***"[15] This Court is left to determine which sworn statement to this Court was false.

In any event, whether these witnesses were or were not actually contractually obliged to testify for CGI, that fact is irrelevant to the pending motion *in limine*, because a lack of

---

[12] *Velsicol*, 579 F.2d at 1047 (failure to contact known witnesses during an interference constituted gross negligence justifying waiver of their testimony in subsequent § 146 action).

[13] Kelber Decl. at ¶ 5. *See also* CGI "New Evidence" Opposition at 5.

[14] Affidavit of Steven B. Kelber at ¶8 (Court Docket No. 8).

[15] "Memorandum in Support of Cell Genesys, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, for Severance and Transfer of Count I of Plaintiff's First Amended Complaint" (Court Docket No. 6) at 5 & 14.

7

obligation on the part of the witnesses cannot justify CGI's failure to contact them at all during the '114 Interference.

Finally, regardless of his contractual obligations to CGI, Skoultchi is the named inventor on the patent. CGI admits that it was obligated under Rule 131 to present his testimony and documents to the Board in the '114 Interference. CGI's counsel has sworn to this Court that Skoultchi was obligated to appear whenever and wherever CGI asked, and even if he wasn't, CGI could have satisfied the "in the interests of justice" standard required by PTO practice under 37 C.F.R. § 1.687(c) to procure his testimony by subpoena.[16] Indeed, the Board wondered why "[t]here is no testimony by Dr. Skoultchi of record. Nor is there any explanation why Dr. Skoultchi could not have testified."[17] It is too late for CGI to rely on Dr. Skoultchi's testimony now.

### C. CGI has no excuse for its failure to produce the evidence in question to the Board

To deflect inquiry away from its failure to produce the evidence on which it now relies, CGI frantically points its finger at ARS, arguing "[h]ad ARS never taken the depositions of witnesses it now says should not be considered, the evidence would not be at issue."[18] But unless CGI is representing that it would have offered no additional testimony or documents from any of

---

[16] Regarding the availability of subpoenas for the other witnesses, even assuming they were necessary, CGI has neither addressed nor met its burden. To overcome the pending motion *in limine*, CGI bore the burden of demonstrating to this Court that it *actually* exercised due diligence in attempting to procure evidence below; for example, by actually seeking subpoenas. Yet CGI's Opposition makes only vague reference to the showing it would have had to make had it actually chosen to be diligent. That does not meet CGI's burden.

[17] Decision on Preliminary Motions (filed as Exhibit 1 to First Amended Complaint (Court Docket No. 2)) at 95 (also submitted as Exhibit B to the Declaration of Matthew C. Nielsen (Court Docket No. 137)).

[18] CGI Opposition at 5.

8

these witnesses (for example, at trial), including Dr. Skoultchi, that statement cannot be true. CGI then states that ARS could have sought a motion *in limine*.[19] That is incorrect; ARS bore no burden to move to exclude documents or testimony which CGI had not yet sought to introduce into evidence or rely upon in any motion.

CGI cites an unpublished Board decision[20] for the proposition that "evidence, once taken by either side, is available to both."[21] Even if this treatise about interference practice in the PTO were relevant here (it is not), it does not stand for the proposition asserted by CGI. Rather, it stands only for the proposition that "[i]f a party obtains ***documents*** from an opponent's witness ***during cross-examination***, and uses them with the witness during cross-examination, it cannot argue that such documents are inadmissible."[22] Whether or not that is the rule in interference practice in the PTO, that is obviously not what happened here.

CGI simply ignores the well-established legal principle that witnesses and evidence may be available to one party without being available to the other – for instance, when one party has waived its right to present the evidence, as here. The point of the pending motion is that **CGI** has waived *its* right to rely on the testimony and documents from *its* witnesses that *it* withheld or negligently failed to procure during the '114 Interference. ARS is not under the same disabilities

---

[19] *Id*.

[20] CGI attempts to bootstrap this questionable citation with another to a treatise on interference practice, without noting that the treatise cites only the unpublished decision itself. Unpublished Board decisions are not even binding precedent on the Board (except perhaps to the extent that they are the "law of the case"), much less on this Court.

[21] CGI Opposition at 5.

[22] Barbara McCurdy & Susan Christenberry, *Discovery in Interferences*, in PATENT INTERFERENCE PRACTICE UNDER NAFTA AND GATT 7-1, 7-22 (Patent Resources Group, Inc. 1998) (emphases added) (pertinent pages submitted herewith as Exhibit G to the Declaration of Matthew C. Nielsen).

with regard to these witnesses and their documents. ARS is perfectly within its rights to use this evidence, as it has in the pending motion. For example, the testimony of Skoultchi, made available to ARS by CGI during discovery in this action, clearly establishes that his notebook has been in possession of CGI and its counsel for many years, yet CGI withheld it from the Board.

### D.     ARS's motions *in limine* are timely

In its Opposition, CGI asserts, without support in case law, reason, or reference to any Order of this Court, that ARS's motions *in limine* are untimely because they were not filed prior to the filing of CGI's own Memoranda. That is not correct. This Court's August 9, 2006 Order set no deadline for ARS to file motions *in limine*, much less any such deadline before CGI itself even identified which specific documents it would actually rely upon, out of the disorganized pile of papers it submitted on August 1, 2006. If CGI's assertion were correct, ARS would have been required to submit motions *in limine* seeking to exclude the hundreds of documents in the CGI "record" that CGI subsequently never chose to rely upon or even cited in its Memoranda. That is obviously absurd. ARS's motions *in limine*, filed on the same day as its Oppositions to the CGI Memoranda in which CGI relies on the evidence that is the subject of the motions *in limine*, and well in advance of the hearing scheduled for January 16, 2007, are timely.[23]

In fact, the only "untimely" filing was CGI's filing of its Memoranda. CGI asserts that "the date for submission of CGI's Memorandum on the record was October 2, 2006."[24] In fact, the August 9 Order required CGI to file its Memoranda on September 30, 2006,[25] a date

---

[23] *See, e.g.*, *Skillsky v. Lucky Stores*, 893 F.2d 1088, 1096 (9th Cir. 1990) (finding no abuse of discretion where district court granted a motion *in limine* filed only eleven days before trial).

[24] CGI Opposition at 7.

[25] Aug. 9, 2006 Scheduling Order (Docket No. 124) at 2 ("Cell Genesis, Inc., ("CGI") shall, by September 30, 2006, file its memorandum and supporting evidence on these issues.").

specifically selected by counsel for CGI at the August 8 hearing. CGI submitted its memorandum two days after this deadline, without seeking or obtaining leave of this Court to do so.[26]

Finally, all of CGI's Oppositions to ARS's motions *in limine* argue that ARS "agreed," presumably to CGI's record, with citation to this Court's August 9, 2006 Order. A review of the Order confirms that the only thing ARS agreed to was that this Court should conduct a trial on the written record; any suggestion by CGI that this agreement waived any potential objection by ARS is completely unsupported.

### III.  CONCLUSION

Although 35 U.S.C. § 146 authorizes the Court to accept "new" evidence on issues raised before the Board, it does not require the Court to overlook gross negligence or bad faith. In the '114 Interference, CGI deliberately withheld, or negligently failed to procure or present, the evidence on which it now wants to rely. The case law is very clear that having done so, CGI has waived its right to rely on that evidence in this § 146 action. This Court should grant ARS's motion *in limine* to exclude all evidence that it finds was within CGI's possession, custody or control during the '114 Interference, including the testimony of Drs. Skoultchi, Kucherlapati, and Savage, and Mssrs. Levin and Thompson, as well as their documents.

---

[26] Fed. R. Civ. P. 6(a) does not apply to the September 30 date certain in the August 9 Order. *See Violette v. P.A. Days, Inc.*, 427 F.3d 1015, 1019–20 (6th Cir. 2005).

Dated: December 11, 2006	Respectfully submitted,


By: /s/ Kevin M. Flowers
Fred A. Kelly, Jr. (BBO # 544046)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Tel: 617-345-1000
Fax: 617-345-1300

Kevin M. Flowers (*pro hac vice*)
Matthew C. Nielsen (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448

Counsel For Plaintiff APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing **ARS REPLY REGARDING ITS MOTION IN LIMINE TO EXCLUDE NEW EVIDENCE OFFERED BY CGI IN SUPPORT OF ITS "JAPAN" MEMORANDUM**, **DECLARATION OF MATTHEW C. NIELSEN** in support and all exhibits referred to therein are being filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 11, 2006. Additionally, two courtesy copies are being dispatched via UPS for next business day delivery to the Court.

                                                                      /s/ Kevin M. Flowers