# EXHIBIT B



**UNITED** **TES DEPARTMENT OF COMMERCE**
Patent a.... Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|

| EXAMINER |
|---|

| ART UNIT | PAPER NUMBER |
|---|---|
| 1804 | 7 |

DATE MAILED:

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined    ☒ Responsive to communication filed on ~~March 23, 1995~~ *March 16, 1995 March 29, 1995 Mar 31, 1995*    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _three (3)_ month(s), _40 (0)_ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☒ _Telephone Interview Summary - paper no 19, 3/29/95_

**Part II    SUMMARY OF ACTION**

1. ☒ Claims _26, 27, 32-44, 46-66, 69, 70, 73-75, 77-82 84-88, 91, 92, 94-98 (ロウ) 102-104 & 105_ are pending in the application.
   Of the above, claims _____ are withdrawn from consideration.

2. ☒ Claims _1-25, 28-31, 45, 67, 71, 72, 76, 83, 89, 90, 93, 99 and 101_ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _26, 27, 32-44, 46-66, 69, 70, 73-75, 77-82, 84-88, 91, 92, 94-98, 102 & 105_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
   examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received
   ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
   accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 2/93)

Serial Number: 08/102,390                                      -21-

Art Unit: 1804

invention since the cited references provide both the motivation
and a reasonable expectation of success.

In conclusion, the declaration is not convincing of
unobviousness since declarant has not provided factual evidence
to support the numerous arguments asserted above regarding the
conclusions of non-obviousness and no reasonable expectation of
success.

The following new grounds of rejection are applicable to the
newly entered claim, claim no. 105.

The text of those sections of Title 35, U.S. Code not
included in this action can be found in a prior Office action.

The following is a quotation of the first paragraph of 35
U.S.C. § 112:

> The specification shall contain a written description of the
> invention, and of the manner and process of making and using
> it, in such full, clear, concise, and exact terms as to
> enable any person skilled in the art to which it pertains,
> or with which it is most nearly connected, to make and use
> the same and shall set forth the best mode contemplated by
> the inventor of carrying out his invention.

The specification is objected to under 35 U.S.C. § 112,
first paragraph, as failing to provide an adequate written
description and for failing to adequately teach how to make
and/or use the invention as claimed, i.e., failing to provide an
enabling disclosure. The specification fails to disclose how to
express a gene product encoded by a normally transcriptionally
silent target gene. Both embodiments in the specification deal
with cell lines which constitutively express the target gene. In
the first embodiment, the specification discloses integration of
the CMV enhancer/promoter via homologous recombination upstream
of, and in operable linkage to, the EPO gene in human embryonic
kidney cells which are known in the art to constitutively express
EPO. Therefore, this particular embodiment does not teach or
demonstrate how to express a gene product encoded by a normally

Serial Number: 08/102,390                                      -22-

Art Unit: 1804

transcriptionally silent target gene. The second embodiment deals
with a construct comprising the 1.45 kb of DNA flanking the
transcriptional start of human tPA in addition to the first exon
and part of the first intron, which is then put into the plasmid
pUCD to generate a plasmid pUCG which then contains the promoter
of the tPA fragment in opposite orientation to the DHFR cassette.
After linearization, the construct is transformed into primary
human diploid fibroblasts. Human primary diploid fibroblasts are
known in the art to constitutively express tPA.Therefore, this
particular embodiment does not teach or demonstrate how to
express a gene product encoded by a normally transcriptionally
silent target gene. In addition, this embodiment apparently
replaces part of the endogenous gene with a construct having 1.45
kb of DNA containing the wild-type tPA promoter, first exon and
part of the first intron, considerably more than a "heterologous
regulatory sequence" as claimed in claim 105. There is no
evidence in the specification that either embodiment is an
example of the situation wherein the "target gene is normally
transcriptionally silent". In this latter case wherein the gene
is normally transcriptionally silent, transcriptional silence of
genes is known in the art to be due to a wide variety of factors,
such as gene silencers, mutations in coding regions or regulatory
regions of genes or lack of transactivating factors needed to
induce transcription. The specification fails to identify those
particular genes wherein the "gene is normally transcriptionally
silent" and to teach one of ordinary skill methods to overcome
transcriptional silence in those instances. Case law teaches (Ex
parte Forman, 230 USPQ 546, 547 (PTO Bd. App. Int. 1986)that "the
disclosure of a patent application must enable practice of the
invention claimed without undue experimentation", wherein factors
involved in the determination of undue experimentation were
deemed to include "the quantity of experimentation necessary, the

Serial Number: 08/102,390                                      -23-
Art Unit: 1804

amount of direction or guidance presented, the presence or
absence of working examples, the nature of the invention, the
state of the prior art, the relative skill of those in that art,
the predictability or unpredictability of the art and the breadth
of the claims". In view of the lack of direction or guidance in
the specification regarding which genes are transcriptionally
silent and methods of overcoming the transcriptional silence, it
would require undue experimentation by one of ordinary skill to
determine why a particular gene is transcriptionally silent and
to determine the method to overcome the silence. One of ordinary
skill would be required to obtain the genomic nucleotide sequence
of the gene as well as the nucleotide sequence of large stretches
of 5' and 3' flanking sequences in order to determine, if
possible, the presence or absence of positive or negative
regulatory sequences, mutations such as point mutations,
insertions or deletions, influencing gene transcription. It is
known in the art of immunoglobulin gene structure, for example,
that the 3' enhancer for the kappa chain occurs approximately 9kb
downstream of the last exon and further that the 3' enhancer is
required for gene expression. The state of the art at the time
the claimed invention was made was that regulatory elements
influencing gene transcription were known to exist upstream,
downstream, within introns, close to or far removed from the
actual coding sequence. It would require undue experimentation by
one of ordinary skill to determine the nucleotide sequence of
literally tens of thousands of base pairs upstream and downstream
of the gene of interest in order to determine the presence or
absence of silencer elements or enhancers, if known, for example,
or to identify unknown elements based on nucleotide sequence
identity with known analogous counterparts. Thus, the basis for a
normally transcriptionally silent target gene was unpredictable
and the specification provides no guidance for determining which