# EXHIBIT D

231018US25SD                                        BOX INTERFERENCE
Filed on behalf of: Junior Party Applied Research Systems ARS Holding
By:      Charles L. Gholz, Esq.
Registration No. 26,395
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, Virginia  22314
Direct:  (703) 412-6485
Tel:  (703) 413-3000
Fax:  (703) 413-2220
E-Mail:  CGHOLZ@OBLON.COM

                                                    Paper No._____


UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES
(Administrative Patent Judge Michael P. Tierney)

———————————


APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.
Junior Party,

(Patent 5,272,071)

v.

CELL GENESYS, INC.
Junior Party.

(Application 08/102,390)

———————————

Interference No. 105,114

ARS'S 37 CFR 1.635/1.656(h) MOTION TO SUPPRESS
(CG'S Exhibit 2040 and Portions of Exhibit 2054)

## Table of Contents

I.   Statement of the Precise Relief Requested ........................................................ 1

II.  Evidence Relied On in Support of This Motion .................................................. 1

III. Statement of the Material Facts in Support of This Motion ............................... 1

IV.  Statement of the Reasons Why the Motion Should Be Granted .......................... 4

    A.   CG's Exhibit 2040 (Exhibit A to Mr. Rowland's Declaration) Is
        Inadmissible for Lack of Authentication Under FRE Rule 901 and
        for Being Inadmissible Hearsay Under FRE Rule 802 .......................................... 4

        1.   Exhibit A (CG's Exhibit 2040) Has Not Been Authenticated ................... 4

        2.   Exhibit 2040 (Exhibit A) is Inadmissible Hearsay ...................................... 5

    B.   Paragraph 2 of the Rowland Declaration is Based on
        Inadmissible Hearsay Under FRE Rule 802 ......................................................... 5

## I.    Statement of the Precise Relief Requested

ARS requests that CG's Exhibit 2040 and paragraph 2 and Exhibit A of CG's Exhibit 2054, the declaration of Bertram Irwin Rowland, be suppressed as being inadmissible hearsay under FRE 802, and that Exhibit 2040 (Exhibit A) be suppressed for the additional reason that it has not been properly authenticated in accordance with FRE Rule 901.  Exhibit 2040 and Exhibit A to Exhibit 2054 purport to be, and appear to be, the same document.

## II.    Evidence Relied On in Support of This Motion

1.    CG's Exhibit 2040.

2.    CG's Exhibit 2054.

3.    ARS's Exhibit 3098: ARS's Objections to Admissibility of Portions of CG's Declaration of Bertram Irwin Rowland.

4.    ARS's Exhibit 3099: copy of the deposition testimony of Bertram Rowland dated October 1, 2003.

## III.    Statement of the Material Facts in Support of This Motion

1.    Exhibit A to the Rowland declaration purports to be minutes of a Cell Genesys meeting on July 24 and 25, 1989.

2.    Although most of the material in Exhibit A/2040 is printed, considerable handwriting appears on the first and eighth pages of the document.  There is no indication whether the handwritten material was originally present when the printed material was prepared or when and by whom the handwritten notations were made.

3.    Page eight of Exhibit A/2040 appears to be the only page that is relevant to the subject matter of the interference or either CG's parent '069 application or its involved '390 application.

4.      Mr. Rowland's declaration identifies Exhibit A as "Attached hereto as Exhibit A is a copy of notes of that meeting, which reflect three issues or areas of concern being addressed at CGI." Exhibit 2054 fact paragraph 2.

5.      Mr. Rowland testified on cross-examination (a) that he was not (to his knowledge) the author of Exhibit A (Exhibit 3099 15/9-16/3[1]); (b) that the document had not to his knowledge been in his possession prior to his being shown the document at the time of his declaration (Exhibit 3099 18/16-19/6); (c) that he did not know where the document came from (Exhibit 3099 19/7-9); and (d) that he could not specifically recall whether he took any notes at the meeting (Exhibit 3099 20/1-7).

6.      CGI filed no supplemental declaration of Mr. Rowland (or anyone else) in response to ARS's objections to Mr. Rowland's declaration.

7.      Mr. Rowland testified in paragraph 2 of his declaration that:

I have a current recollection of a meeting I attended at Cell

Gensys, Inc. on or about July 24, 1989. The meeting was attended

by Dr. Arthur Skoultchi and other of Cell Genesys, Inc. ("CGI"

herein). Attached hereto as Exhibit A is a copy of notes of that

meeting, which reflect three issues or areas of concern being

addressed at CGI. Among the issues discussed at the meeting,

later identified as issue or matter 3, was the problem that CGI, then

in a start-up phase, wanted to work with a variety of proteins the

recombinant forms of which and the isolated nucleic acids

encoding them, were already patented. There were discussions of

---

[1] The notation refers to page 15 line 9 through 16 line 2 of Exhibit 3099.

various proteins of interest, together with a discussion of how the patents of third parties might be avoided. Arthur Skoultchi ("Skoultchi" herein) suggested that the third party patents might be avoided if homologous recombination were used to alter cells to enhance expression of wild-type proteins encoded by the cells or to express genes that were not normally expressed. I observed that most of the patents I was familiar with would not cover such a process, or the product of the resulting gene expression. Skoultchi noted that the easiest way to produce more product was to introduce an amplifiable gene through homologous recombination in the proper location with respect to the gene the expression of which was desired. When the amplifiable gene was amplified, the gene of interest would be as well, generating multiple copies and increased expression. A decision was made to move forward and file a patent application on two alternative forms of the idea of Skoultchi, including expressing a gene in the cell that had received the amplifiable gene through homologous recombination and the transfer of the amplifiable gene to secondary expression host cells and expressing the amplified gene in such secondary host cells.

8.      Mr. Rowland does not point to any portion of Exhibit A in support of his understanding of what Dr. Skoultchi "suggested," or what Dr. Skoultchi "noted." Mr. Rowland does not identify who reached the decision to move forward and file a patent application on two alternative forms of Dr. Skoultchi's strategy.

9.    Exhibit B to the Rowland declaration purports to be a draft application prepared by Dr. Rowland in August following the July meeting.  Exhibit 2054 ¶ 3.  Exhibit B's claims do not include a method "including expressing a gene in the cells that had received the amplifiable gene through homologous recombination."  Each of the independent method claims 1, 8, and 19 of Exhibit B is directed to the alleged "alternative" that includes isolating the DNA from the cell in which homologous recombination was used to insert a construct and transferring that isolated DNA to a secondary host cell for expression.  Exhibit B to Exhibit 2054 pages 17-19.

**IV.    Statement of the Reasons Why the Motion Should Be Granted**

**A.    CG's Exhibit 2040 (Exhibit A to Mr. Rowland's Declaration) Is Inadmissible for Lack of Authentication Under FRE Rule 901 and for Being Inadmissible Hearsay Under FRE Rule 802**

**1.    Exhibit A (CG's Exhibit 2040) Has Not Been Authenticated**

The only testimony presented with regard to Exhibit 2040 appears in Mr. Rowland's declaration at paragraph 2, where Mr. Rowland states that "Attached hereto as Exhibit A is a copy of notes of that meeting, which reflect three issues or areas of concern being addressed at CGI." As noted in the statements of material facts above, Mr. Rowland testified on cross-examination (a) that he was not the author of the document, (b) that the document had not been in his possession prior to his being shown the document at the time of his declaration, (c) that he did not know where the document came from, and (d) that he could not specifically recall whether he took notes at the meeting.

The only part of the exhibit which appears to be relevant to any issue involved in this interference appears on the eighth page of the document and is entirely in handwriting as opposed to the printing which constitutes the majority of the document.  There is no indication on the document as to when and by whom the handwritten portions were written.  There is no

-4-

testimony in the record with regard to the content of the handwritten material. The origin and chain of custody of the document are not set forth in the record.

Since the document is not self-authenticating, FRE Rule 901 requires that it be properly authenticated by witness testimony. No such testimony has been presented. No testimony has been presented which might tend to establish that the document falls within one of the exceptions set forth in FRE Rule 901.

Since the document is not properly authenticated, it is inadmissible as evidence. Basmadjian v. Landry, 54 USPQ2d 1617, 1619-20 (PTOBPAI 1997); Horton v. Stevens, 7 USPQ2d 1245, 1247-48 (PTOBPAI 1988); and 4 Revise et al., Interference Law and Practice, 2418-25 (1948).

### 2.    Exhibit 2040 (Exhibit A) is Inadmissible Hearsay

In addition, since the document is an out of court document, it is hearsay. Consequently, the document is inadmissible on that ground also. Horton v. Stevens, supra; and Wojciak v. Nishiyama, 61 USPQ2d 1576 (PTOBPAI 2001) (unpublished).

### B.    Paragraph 2 of the Rowland Declaration is Based on Inadmissible Hearsay Under FRE Rule 802

Paragraph 2 of Mr. Rowland's declaration is purely and simply a report of his current recollection of his perceptions of what he heard at a meeting he attended at Cell Genesys. The pertinent portions of the declaration set forth Mr. Rowland's perceptions of what Arthur Skoultchi "suggested" or "noted." Mr. Rowland does not report a single word that Dr. Skoultchi said or refer to any material written by Dr. Skoultchi. Wojciak v. Nishiyama, supra; and Horton v. Stevens, supra.

Mr. Rowland testified that he did not specifically recall whether he took notes at the meeting. After stating that "Skoultchi" noted that the easiest way to produce more product was to introduce an amplifiable gene through homologous recombination in the proper location with respect to the gene the expression of which was desired (Exhibit 2054 ¶ 2), Mr. Rowland continues by stating that:

> When the amplifiable gene was amplified, the gene of interest would be as well, generating multiple copies and increasing expression. A decision was made to move forward and file a patent application on two alternative forms of the idea of Skoultchi, <u>including expressing a gene in the cells that had received the amplifiable gene through homologous recombination</u> and the transfer of the amplified gene to secondary expression host cells and expressing the amplified gene in such secondary host cells. (Emphasis supplied.)

It is not clear from the declaration whether the portion quoted above was based on statements made by Dr. Skoultchi or whether they were perceptions of Mr. Rowland, who was not qualified as an expert witness. That is a crucial point because it appears to be the only testimony in the record indicating that Dr. Skoultchi's "idea" included the concept of expressing the desired gene product in the primary cell.

In view of the fact that Mr. Rowland apparently could not remember much of anything else about the meeting, including whether he took notes and who many or most of the participants were, and the fact that he made no effort to review his files in connection with the

Skoultchi application, it might seem strange that his recollection was so clear and precise concerning the exact issue that dominates the present interference, i.e., whether Dr. Skoultchi possessed and disclosed in his patent applications a method of obtaining increased expression of a gene product, including a gene product of a silent gene, in the cell into which the amplifiable gene had been inserted. Although Mr. Rowland was not cross-examined on that point, CG's counsel apparently had scripted an explanation for Mr. Rowland's extraordinarily selective memory. He explored (improperly) that point on redirect examination:

> Mr. Kelber:    Q. During the discussion with Chico he asked you about a variety of names, many of which you couldn't recall the identify of the person or the initials.
>
> Do you recall the conversation?
>
> A. Yes.
>
> Q. In paragraph 2 of your declaration, you indicate that you have a current recollection of a meeting that you attended. How is it that you have such a clear--I'm sorry.
>
> How is it that you have a current recollection of that meeting but there are many names and individuals reflected there that you have no recollection of?
>
> A. Well, I was extraordinarily impressed by Dr. Skoultchi's coming up with the idea. And in my career, that's been some 30 years--at that time about 30 years--I had never heard a conception that I believe was also a reduction to practice, that it was so clear that it would work.

And I have always used Skoultchi as the one

exception that one can have an idea which is obviously going to

work and there was no reason to believe that it could not be

executed.  Exhibit 3099 34/4-35/4.

Oddly enough, Mr. Rowland's impressions apparently were not quite that vivid when he

drafted Exhibit B.  As previously indicated, none of the claims in the draft application that he

prepared a month after the meeting were directed to the first "alternative," and the specification

of the draft application is just as nebulous with regard to any expression in the primary cell as are

CG's involved '390 application and its parent '069 application.  Although Mr. Rowland's

memories were not so clear one month following the meeting (when he drafted the application),

they were much more clear and exact when he made his declaration some fourteen years later!

That is why hearsay is inadmissible.  What the listener perceives the speaker said, and

what the speaker said, are not reliably consistent.  The problem is compounded when, as here,

the reporter does not report the words Dr. Skoultchi said, but summarized the reporter's

understanding of the speaker's "idea."

Clearly, Mr. Rowland's attorney arguments in paragraph 2 of his declaration, based

entirely on hearsay, are inadmissible.

Respectfully submitted,

*Alton D. Rollins*

Charles L. Gholz
Registration No. 26,395
Back-up Lead Attorney for ARS
OBLON, SPIVAK, McCLELLAND,
 MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, Virginia 22314
(703) 412-6485 (direct dial)
(703) 413-2220 (facsimile)
CGHOLZ@OBLON.COM (e-mail)

Of Counsel:

Roger L. Browdy, Esq.
Registration No. 25,618
BROWDY & NEIMARK, P.L.L.C.
624 9th Street, N.W.
Washington, D.C.20001
rlbrowdy@browdyneimark.com

Alton D. Rollins, Esq.
Registration No. 34,083
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, Virginia 22314
(703) 412-6475 (direct dial)
(703) 413-2220 (fax)
AROLLINS@OBLON.COM
James J. Kelly, Esq.
Registration No. 41,504
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, Virginia 22314
(703) 412-6475 (direct dial)
(703) 413-2220 (fax)
JKELLYS@OBLON.COM

CERTIFICATE OF SERVICE

This is to certify that one copy of the foregoing is being sent by means of next business

day courier service addressed to:

> Steven B. Kelber, Esq.
> PIPER RUDNICK LLP
> 1200 Nineteenth Street, N.W.
> Washington, D.C. 20036-2430
>
> Linda R. Judge, Esq.
> Cell Genesys, Inc.
> 500 Forbes Blvd.
> South San Francisco, CA 94080

Dated: _1/16/04_                    _Alton D. Rollins_
                                        James J. Kelly     #34083

I:\INTERFERENCE\CASES\231018SER\MOTION\MOTIONSUPPRESSEXHIBITS.DOC

-10-