# Exhibit A

27949/CELL-3

LEYDIG, VOIT & MAYER
Attorneys at Law
350 Cambridge Ave., Ste. 200
Palo Alto, CA  94306

## ASSIGNMENT

**Whereas I,** Arthur I. Skoultchi, of 71 N. Chatsworth
Ave., Larchmont, New York  10538, have made a certain new and
useful Invention relating to

PRODUCTION OF PROTEINS
USING HOMOLOGOUS RECOMBINATION

for which Invention I have executed an Application for Letters
Patent of the United States on _____11-14-89_____ and which
Application may be identified in the United States Patent and
Trademark Office as Serial No. __432,069__ ,
filed ____11-6-89____ ; and,

**Whereas,** Cell Genesys, Inc., a Delaware corporation
having a principal place of business at 2200 Sand Hill Road,
Menlo Park, California  94025, is desirous of acquiring the
entire right, title, and interest in and to said Invention, said
Application and the Letters Patent to be obtained therefor:

**Now, therefore,** for and in consideration of One Dollar
and other good and valuable considerations, to me in hand paid,
the receipt and sufficiency whereof are hereby acknowledged, I
have sold, assigned, and set over and by these presents do hereby
sell, assign, and set over unto the said

Cell Genesys, Inc.

and said Assignee's legal representatives, successors and
assigns, the entire right, title, and interest in and to said
Invention, said Application, and the Letters Patent, both foreign
and domestic, that may or shall issue thereon; and I do hereby
authorize and request the Commissioner of Patents and Trademarks
to issue said Letters Patent to the above-mentioned Assignee
agreeably with the terms of this Assignment.

**I hereby authorize** the above-mentioned Assignee or its
legal representative to insert in this instrument the Filing Date
and Serial Number of said Application or any other information
that may be necessary or desirable in order to comply with the
rules of the United States Patent and Trademark Office for
recordation of this document.

1.

**Upon said consideration,** I convey to said Assignee the right to make application in its own behalf for protection of said Invention in countries foreign to the United States and where expedient to claim under the International Convention or other international arrangement for any such application the date of the said United States Application (or other Application if any there be) in priority to other applications; and

**I do hereby covenant and agree** with the said Assignee that I will not execute any writing or do any act whatsoever conflicting with these presents, and that I will at any time upon request, without further or additional consideration, but at the expense of the said Assignee, execute such additional assignments and other writings and do such additional acts as said Assignee may deem necessary or desirable to perfect the Assignee's enjoyment of this grant, and render all necessary assistance in making application for and obtaining original, divisional, renewal, reissued or extended Letters Patent of the United States or of any and all foreign countries on said Invention, and in enforcing any rights or choses in action accruing as a result of such applications or patents, by giving testimony in any proceedings or transactions involving such applications or patents, and by executing preliminary statements and other affidavits, it being understood that the foregoing covenant and agreement shall bind and inure to the benefit of the assigns and legal representatives of both parties.

Date: _November 14, 1989_      By: _Arthur I. Skoultchi_

Arthur I. Skoultchi

BIR:jad
DEC/00ba/27949v

RECORDED
PATENT & TRADEMARK OFFICE

DEC 28 1989

ACTING COMMISSIONER, OF
PATENTS AND TRADEMARK OFFICE

2.

Exhibit B

40.02-581

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: | Art Unit: (not yet assigned) |
| A. Skoultchi *et al.* | Examiner: (not yet assigned) |
| Serial No.: 07/787,390 | Atty's Docket No. A-55129-1 |
| | CELL-003-1 |
| Filed: November 4, 1991 | Palo Alto, California |
| PRODUCTION OF PROTEINS USING HOMOLOGOUS RECOMBINATION | Date: April 13, 1992 |

*(Mail Room stamp: APR 16 1992 PAT & TRADEMARK — 45)*

CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the United States Postal Service as First Class Mail in an envelope addressed to the Commissioner of Patents and Trademarks, Washington, DC 20231 on April 13, 1992.

Signed _Joe S Winter_
        Joe S Winter

### REQUEST FOR RECORDATION OF ASSIGNMENT

The Commissioner of
Patents and Trademarks
Washington, D.C.  20231

Sir:

On December 20, 1991 an Assignment was recorded at reel 5953, frame 471 assigning the above-identified patent application to CELL GENESYS, INC.  That Assignment incorrectly identified CELL GENESYS, INC. as a corporation of the state of California.

Transmitted herewith for recordation is an Assignment executed by ARTHUR J. SKOULTCHI, the only inventor in the above-identified patent application.  This new Assignment correctly identifies CELL GENESYS, INC. as a corporation of the state of Delaware.

Our check in the amount of $40 to provide for the fee required is enclosed.  The Commissioner is hereby authorized to charge and additional fees which may be required or credit any overpayment associated with this communication to our Deposit

060 JK 04/22/92 07787390          1 581          40.00 CK

A-55129-1/BIR
CELL-003-1                              - 1 -

91620744

A-55129-1/BIR
CELL-003/1

**ASSIGNMENT**

WHEREAS I, **ARTHUR I. SKOULTCHI** of 71 North Chatsworth Avenue; Larchmont, NY 10538 have invented certain new and useful improvements in **PRODUCTION OF PROTEINS USING HOMOLOGOUS RECOMBINATION** for which invention I have executed an application for Letters Patent of the United States on or about **November 11, 1991** and which application may be identified in the United States Patent and Trademark Office as Serial No. 07/787,390, filed **November 4, 1991**; and

Whereas, **CELL GENESYS, INC**, a corporation of the State of Delaware and having its principal place of business at **344 Lakeside Drive, Foster City, CA 94404** (hereinafter referred to as assignee) is desirous of acquiring the entire right, title, and interest in and to said invention, said application and the Letters Patent to be obtained therefore;

Now, therefore, for and in consideration of One Dollar and other good and valuable considerations, to me in hand paid, the receipt and sufficiency whereof are hereby acknowledged, I have sold, assigned, and set over and by these presents do hereby sell, assign, and set over unto the said **CELL GENESYS, INC.** and said assignee's legal representatives, successors and assigns, the entire right, title, and interest in and to said invention, said application, and the Letters Patent, both foreign and domestic, that may or shall issue thereon; and I do hereby authorize and request the Commissioner of Patents and Trademarks to issue said Letters Patent to the above-mentioned assignee agreeably with the terms of this assignment.

I hereby authorize the above-mentioned assignee or its legal representative to insert in this instrument the filing date and serial number of my said application or any other information that may be necessary or desirable in order to comply with the rules of the United States Patent and Trademark Office for recordation of this document.

Upon said consideration, I convey to said assignee the right to make application in its own behalf for protection of said invention in countries foreign to the United States and where expedient to claim under the International Convention or other international arrangement for any such application the date of the said United States application (or other application if any there be) in priority to other applications; and I do hereby covenant and agree with the said assignee that I will not execute any writing or do any act whatsoever conflicting with these presents, and that I will at any time upon request, without further or additional consideration, but at the expense of the said assignee, execute such additional assignments and other writings and do such additional acts as said assignee may deem necessary or desirable to perfect the assignee's enjoyment of this grant, and render all necessary assistance in making application for and obtaining original, divisional renewal, reissued or extended Letters Patent of the United States or of any and all foreign countries on said invention, and in enforcing any rights or chose in action accruing as a result of such application or patents, by giving testimony in any proceedings or transactions involving such applications or patents, and by executing preliminary statements and other affidavits, it being

REEL 6080 FRAME 968

- 2 -                                          A-55129-1/BIR
                                               CELL-003/1

understood that the foregoing covenant and agreement shall bind, and inure to the
benefit of the assigns and legal representatives of both parties.

Date: _3/22/92_            By: _Arthur J. Skoultchi_

                               Arthur I. Skoultchi

RECORDED
PATENT AND TRADEMARK
OFFICE

APR 16 1992

Exhibit C

Paper No. _____

Filed on behalf of:                    Senior Party SKOULTCHI
                                       Filed on behalf of Skoultchi
By:                                    Steven B. Kelber, Esquire
                                       Piper Rudnick LLP
                                       1200 Nineteenth Street, N.W.
                                       Washington, D.C.  20036-2430
                                       Tel: (202) 861-3900 (Receptionist)
                                            (202) 223-2085 (Facsimile)
                                       E-mail:  steven.kelber@piperrudnick.com

## UNITED STATES PATENT AND TRADEMARK OFFICE

### BEFORE THE BOARD OF PATENT APPEALS
### AND INTERFERENCES
(Administrative Patent Judge Michael P. Tierney)

### SCOTT C. CHAPPEL

Junior Party
(Patent 5,272,071)

vs.

### ARTHUR I. SKOULTCHI

Senior Party
(Application 08/102,390)

Patent Interference No.103,737

## PARTIES JOINT STATEMENT REQUESTING
## INTERFERENCE REDECLARATION

Pursuant to the telephone conferences between counsel for the parties and APJ Tierney, including the telephone conferences on Thursday, March 13, 2003, the parties herewith jointly request administrative termination of Interference 103,737, and redeclaration of a new interference between Chappel, U.S. Patent 5,272,071 and Skoultchi, U.S. Patent Application Serial No. 08/102,390. It is the parties' understanding that the new interference would be declared pursuant to 37 C.F.R. §1.601 et. seq., and conducted under the provisions of the Standing Order, Trial Board Section, Board of Patent Appeals and Interferences, United States Patent and Trademark Office. The parties offer the following observations in support of their request:

1. The Rules and practice before the Trial Board concerning the presentation of evidence have substantially changed since Interference 103,737 was originally declared. Contrast Nabial v. May, 2 USPQ2d 1453 (BPAI 1986) with the Standing Order, and the requirements for presentation of evidence, with citation to the record. It is the parties' desire that resolution of any interference before this Board be made on a clear and comprehensive record, presented pursuant to the provisions of the Standing Order, so as to facilitate that resolution.

2. The law on the issues raised during the truncated preliminary motions period originally provided for in Interference 103,737 (confined to issues under 35 U.S.C. §112, first paragraph only) has grown and changed substantially. Specifically, the Court of Appeals for the Federal Circuit has spoken several times with respect to the issue of written description. In addition to the submission by the Junior Party concerning Federal Circuit precedent that followed the briefing on motions, attention is respectfully directed to the decision in Enzo BioChem, Inc.

-1-

Mar-25-03  05:37pm  From-PIPER RUDNICK IPO                    2028613877          T-805  P.05  F-045

v. Gen-Probe, Inc., 285 F.3d 1013, 62 USPQ2d 1289 (Fed. Cir. 2002), Gentry Gallery v. Berkline Corp., 134 F.3d 1473, 45 USPQ2d 1498 (Fed. Cir. 1998) and Cooper Cameron Corp. v. Kvaerner Oil Field Products, 291 F.3d 1317, 62 USPQ2d 1846 (Fed. Cir. 2002). A number of precedential decisions of this Board concerning the methods of presentation of evidence, and the requirements of evidence, before the Trial Board, have similarly issued.

3. There have been a variety of Rule changes introduced, both to 37 C.F.R. §1.601, and pursuant to the Standing Order, that would impact the way the interference would be decided, if it were decided on the papers originally filed. One change of particular significance is the requirement that the Count need no longer parallel the broadest claim of any issued patent, at least initially, presented in the interference. During the conference calls between the parties and APJ Tierney, concerns were raised as to the possible count or counts for this interference that might be appropriate, and the parties identify possible counts, below.

4. There has been generation of a substantial amount of evidence that was not available to the parties when the motions were originally filed. This includes, *inter alia*, issuance of U.S. Patent 5,981,214, which although not directed to the same patentable invention as the claims of U.S. Patent 5,272,071, issued on disclosure identical to Skoultchi's involved U.S. Patent Application Serial No. 08/102,390, and includes claims that do not require introduction of an amplifiable gene, as well as a variety of declarations, art and decisions advanced in oppositions in Europe which were successful, at the initial level, in revoking the grant of patents corresponding to the patent and application involved herein.

5. In connection with redeclaration of Interference 103,737, Skoultchi further represents, that upon redeclaration, it disavows the representation and positions taken in the Declaration of

-2-

Raju S. Kucherlapati, Ph.D., dated February 21, 1997, of record in Interference 103,737. In particular, certain observations advanced therein, in light of subsequent events, no longer reflect the position of party Skoultchi. To the extent facts or opinions set forth therein remain the position of party Skoultchi, they will be advanced through new evidence.

During the conference call, APJ Tierney asked the parties to advance potential counts. The parties have conferred on this, but are unable to come to agreement. Accordingly, each will be submitting proposed counts separately on March 26, 2003.

Finally, the parties note that on redeclaration, it would be appropriate to permit Skoultchi to advance claims that correspond to the proposed counts (Claim 105 would appear to correspond to the first count) so as to properly contest the interference. The presentation of such claims would be without prejudice to Chappel to contest either their correspondence to the Count or patentability to Skoultchi. Skoultchi would present in side-by-side column form, those points in the specification that Skoultchi relies to support the new Skoultchi claims.

Respectfully submitted,

PIPER RUDNICK LLP                            BROWDY AND NEIMARK, P.L.L.C.

Steven B. Kelber                             Roger L. Browdy
Registration No. 30,073                      Registration No. 25,618
Attorney for SKOULTCHI                       Attorney for CHAPPEL

1200 Nineteenth Street, N.W.                 624 9th Street, N.W.
Washington, D.C. 20036-2430                  Washington, D.C. 20001
Telephone: (202) 861-3900                    Telephone: (202) 628-5197
Facsimile: (202) 223-2085                    Facsimile: (202) 737-3528

-3-

## CERTIFICATE OF SERVICE

I hereby certify that true copies of:

1.     PARTIES JOINT STATEMENT REQUESTING INTERFERENCE
       REDECLARATION

2.     CERTIFICATE OF SERVICE

were served upon Counsel as follows:

   Steven B. Kelber
   Piper Rudnick, LLP
   1200 19th Street, N.W.
   Washington, D.C.  20036

via Federal Express, this _____ day of MARCH, 2003

                                   _____

                                         ROGER L BROWDY

INTERFERENCE 103,737

-4-

Exhibit D

Arthur I. Skoultchi    November 13, 2005

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA (Washington, DC)

------------------------------------x

CELL GENESYS, INC.

                      Plaintiff,

                      Civil Docket No.

      -against-      1:04-cv-01407-JDB

APPLIED RESEARCH SYSTEMS

ARS HOLDING N.V.

                      Defendant.

------------------------------------x

                      November 13, 2005

                      9:05 a.m.


      Deposition of ARTHUR I. SKOULTCHI, held

at the Marriott Residence Inn, LeCount Place, New

Rochelle, New York, pursuant to notice, before

Barbara Driscoll, a Notary Public of the State of

New York.

046f8c6e-9d4f-4930-bf3b-5c931a52b84b

Arthur I. Skoultchi    November 13, 2005

Page 21

1                           Skoultchi
2      declaration?
3           A.    I don't recall the details from memory.
4           Q.    Do you have any idea of the year in
5      which you provided that declaration?
6           A.    I don't recall.
7           Q.    What was the general topic of your
8      declaration?
9           A.    I really don't recall.
10          Q.    Do you recall if it was the facts and
11     events leading up to how you came up with the idea
12     for your patent application?
13          A.    I honestly don't recall.
14          Q.    Do you recall the attorney who asked
15     you to provide a declaration in connection with
16     that proceeding?
17          A.    I am not certain.
18          Q.    Was it Mr. Kelber?
19          A.    I believe not.
20          Q.    Was it Dr. Jensen?
21          A.    I believe not.
22          Q.    Do you know if it was a lawyer who they
23     worked with at the time?
24          A.    They?
25          Q.    Mr. Kelber and Dr. Jensen.

046f8c6e-9d4f-4930-bf3b-5c931a52b84b

Arthur I. Skoultchi    November 13, 2005

Page 22

1                          Skoultchi
2          A.     I don't know the answer to that.
3          Q.     Were you asked to search for documents
4   in connection with that interference?
5          A.     I believe I was.
6          Q.     Did you conduct a search for documents?
7          A.     To the best of my recollection, if I
8   was asked, I did.
9          Q.     Do you recall finding any pertinent
10  documents at that time?
11         A.     I have a vague recollection of finding
12  documents, yes.
13         Q.     Where did you search?
14         A.     At home.
15         Q.     In general, do you keep all of your
16  documents relating to your idea in your patent
17  application for homologous recombination at home
18  versus at Albert Einstein College of Medicine
19  where you work?
20         A.     Yes.
21         Q.     When you searched for documents, do you
22  recall actually providing documents to counsel in
23  connection with that interference?
24         A.     I believe I did.
25         Q.     Do you recall what those documents

046f8c6e-9d4f-4930-bf3b-5c931a52b84b

Arthur I. Skoultchi   November 13, 2005

Page 23

1                          Skoultchi

2    were?

3         A.    I believe one important document was a

4    notebook of notes taken by me at various times

5    through the relevant period and probably other

6    documents as well from meetings at Cell Genesys,

7    et cetera.

8         Q.    Have you reviewed the notebook you

9    referred to in connection with your preparation

10   for today's deposition?

11        A.    Yes.

12        Q.    Do you recall if it was a full notebook

13   that you provided back at the time of the

14   interference or might it have been an isolated

15   page or pages?

16             How long ago was it that you provided

17   that notebook, if you can recall?

18        A.    I am really not certain.  I think it

19   was approximately 10 years ago, but that is a bit

20   of a guess.

21        Q.    Do you think it was most likely before

22   the year 2000?

23        A.    I think so, but I am not certain.

24        Q.    Was it the original version of the

25   notebook you kept or was it a copy?

046f8c6e-9d4f-4930-bf3b-5c931a52b84b

Arthur I. Skoultchi    November 13, 2005

Page 52

1                        Skoultchi
2    requested in these requests that are in your
3    possession had been produced to counsel?
4         A.    Yes.
5         Q.    Are you currently employed by Cell
6    Genesys, Dr. Skoultchi?
7         A.    I am a consultant to Cell Genesys.
8         Q.    What are your duties as a consultant?
9         A.    To consult periodically with the
10   company in -- I don't recall the exact field of
11   expertise in the current consulting agreement.
12        Q.    Do you know if your consulting
13   agreement contemplates consulting with respect to
14   gene activation patent applications?
15        A.    I don't believe the field of consulting
16   includes that information that you just -- those
17   words, that type of information that you just
18   mentioned.
19        Q.    Does your consulting agreement
20   encompass testifying today about your patent
21   application for gene activation?
22        A.    I honestly don't remember the precise
23   wording of my consulting agreement with Cell
24   Genesys, so I can't answer whether it specifically
25   includes the type of activities that you

046f8c6e-9d4f-4930-bf3b-5c931a52b84b

Arthur I. Skoultchi    November 13, 2005

Page 53

1                          Skoultchi

2    mentioned.

3         Q.    How much are you being paid per year in

4    your role as a consultant for Cell Genesys?

5         A.    $10,000 per year.

6         Q.    How long have you been a consultant

7    with Cell Genesys?

8         A.    Since its inception.

9         Q.    What other positions have you held at

10   Cell Genesys since its inception?

11        A.    As I mentioned previously, I was a

12   founder and member of the scientific advisory

13   board.

14        Q.    Are you still a member of the

15   scientific advisory board?

16        A.    No.

17        Q.    When did your position on the board

18   end?

19        A.    I don't remember the precise date.

20        Q.    Before the year 2000, do you think?

21        A.    Sorry.  I don't remember.

22        Q.    But you have been a consultant with

23   Cell Genesys all along?

24        A.    Yes.

25        Q.    Do you receive any other financial

046f8c6e-9d4f-4930-bf3b-5c931a52b84b

Arthur I. Skoultchi    November 13, 2005

Page 54

1                        Skoultchi

2    benefits from Cell Genesys right now?

3         A.    I believe as part of my consulting

4    agreement, there is a stock option available, a

5    grant, a stock option grant.

6         Q.    How many shares of stock?

7         A.    I am sorry.  I don't remember.

8         Q.    Is there an event that is necessary for

9    those stock options to vest?

10        A.    As I recall, a substantial portion have

11   vested.  I don't remember whether it is all or

12   not.

13        Q.    Maybe a better question is, is it just

14   part of your guaranteed compensation as part of

15   your consulting agreement that you will have a

16   certain number of stock options granted to you per

17   year?

18        A.    No.

19        Q.    Do you recall how many stock options or

20   how many shares of stock you have an option for?

21        A.    No.

22        Q.    Are you a shareholder of Cell Genesys

23   right now?

24        A.    Yes.

25        Q.    How many shares of stock in Cell

046f8c6e-9d4f-4930-bf3b-5c931a52b84b

Arthur I. Skoultchi    November 13, 2005

Page 55

1                          Skoultchi

2    Genesys do you own?

3        A.    I don't remember the precise number.

4        Q.    Is it over 100,000 shares?

5        A.    No.

6        Q.    Over 50,000?

7        A.    I don't believe so.

8        Q.    Is it over 20,000?

9        A.    Perhaps.

10        Q.    Do you have any idea what the net worth

11    of your shares of CGI are?

12        A.    I am a very busy guy.  I have a lot of

13    other stuff going on.  No, I don't.

14        Q.    So roughly 20 to 50,000 shares?

15        A.    To the best of my recollection.

16        Q.    Do you own any shares of stock in

17    Abgenyx?

18        A.    Yes.

19        Q.    How many shares?

20        A.    I don't recall.

21        Q.    More than 100,000?

22        A.    No.

23        Q.    More than 50,000?

24        A.    No.

25        Q.    More than 20,000?

046f8c6e-9d4f-4930-bf3b-5c931a52b84b

Arthur I. Skoultchi    November 13, 2005

Page 56

1                          Skoultchi

2        A.      No.

3        Q.      More than 10,000?

4        A.      No.

5        Q.      Do you think it is more than 5,000?

6        A.      No.

7        Q.      Somewhere between five to 10,000 shares

8    of stock in Abgenyx?

9        A.      No.

10       Q.      Sorry.  I missed an answer.

11               Less than 5,000 shares of Abgenyx?

12       A.      Correct.

13       Q.      Do you have any stock options for

14   Abgenyx?

15       A.      No.

16       Q.      Do you have a rough idea what the total

17   value of your shares of Abgenyx and Cell Genesys

18   stock is worth?

19       A.      I really don't.

20       Q.      Do you know if it is more than a

21   million dollars?

22       A.      I believe it is less than a million

23   dollars.

24       Q.      More than $500,000?

25       A.      I believe it is less than 500,000.

LegaLink Chicago
(312) 263-3524

046f8c6e-9d4f-4930-bf3b-5c931a52b84b

Exhibit E

Mark Levin    November 15, 2005

Page 1

Volume:  I

Pages :  1 - 225

Exhibits: 52 - 61


UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CASE NO. 04 CV 01407(JDB)

- - - - - - - - - - - - - - - - - -

CELL GENESYS, INC.,                          :

                 Plaintiff,                   :

    Vs.                                        :

APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.,:

                 Defendant.                   :

- - - - - - - - - - - - - - - - - -


DEPOSITION OF MARK LEVIN

Tuesday, November 15, 2005 9:00 a.m.

Nixon Peabody

100 Summer Street

Boston, Massachusetts

Reporter:  Rosemary F. Grogan, CSR, RPR

LegaLink Boston

320 Congress Street, Boston, MA  02210

(617)542-0039

ede2967c-6e65-4cdc-85af-16dfc6d58787

Mark Levin    November 15, 2005

Page 22

1    Mayfield Fund?

2        A.    It's possible, but I don't remember.    That was

3    long before I was at Mayfield.

4        Q.    You were never involved with Integrated

5    Genetics?

6        A.    Never.

7        Q.    Have you ever worked with Scott Chapel?    Let

8    me ask you a better question:    Have you ever met Scott

9    Chapel?

10        A.    It's possible.    Who is he?

11        Q.    He's the named inventor of the patent that is

12    owned by ARS.

13        A.    I doubt it.

14        Q.    Okay.    You were CEO of Cell Genesys?

15        A.    I was.

16        Q.    Okay.    When was that?

17        A.    So I can give approximate dates.    Approximate

18    dates would be mid-'88 to early 1990.

19        Q.    Do you remember when Cell Genesys was

20    incorporated?

21        A.    I don't remember the exact date, no.    I would

22    guess it was mid-'88; somewhere around there, but I'm

23    not positive.

24        Q.    Okay.    And did you leave Cell Genesys in early

ede2967c-6e65-4cdc-85af-16dfc6d58787

Mark Levin    November 15, 2005

Page 23

1    1990?

2        A.    Once we hired a CEO, I remained on the board

3    for some period of time.

4        Q.    How long was that?

5        A.    A few years, but I don't remember exactly how

6    long because I moved back to the east coast and it

7    became more difficult.

8        Q.    You can't remember the date when you ceased

9    being a board member at CGI?

10       A.    I cannot.

11       Q.    Have you held any other positions at CGI?

12       A.    I have not.

13       Q.    Did you own any stock in CGI?

14       A.    At the time I did.

15       Q.    And now?

16       A.    No.

17       Q.    Do you have any stock option in CGI stock?

18       A.    I do not.

19       Q.    How about any interests in any of CGI debt?

20       A.    I do not.

21       Q.    Do you have any financial interest at all in

22    CGI?

23       A.    I have none.

24       Q.    How about Abgenix?

LegaLink Chicago
(312) 263-3524

ede2967c-6e65-4cdc-85af-16dfc6d58787

Mark Levin    November 15, 2005

Page 24

1    A.    No.

2    Q.    Do you have a financial interest in any other

3    entity that has a position in CGI; for example, through

4    a fund like the Mayfield Fund or a mutual fund?

5         MR. KELBER:    Objection as to form.    You can

6         answer it.

7    A.    So, I wouldn't know.    It's possible that

8    venture funds that I've invested in have invested in

9    other companies that have some relationship in some

10   matter with CGI, but I'm certainly unaware of those.

11   Q.    Are you under contract with CGI right now?

12   A.    I am not.

13   Q.    When was the last time you were under contract

14   with CGI?

15   A.    It would have been early 1990's as a board

16   member.

17   Q.    Okay.    How did you first become involved with

18   CGI?

19   A.    As I remember in late -- let me get my decades

20   right here; 1987, I got a call from a friend of mine

21   named Steve Rowe, who I had known from Genentech, and he

22   said I met some people that I should meet.    And I was at

23   Mayfield at the time.

24              And we got together and met for a few

ede2967c-6e65-4cdc-85af-16dfc6d58787