IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CELL GENESYS, INC.,                    )
                                       )
    Plaintiff/Counterdefendant     )
                                       )
    v.                             )        Civil Action No. 05-12448-MLW
                                       )
APPLIED RESEARCH SYSTEMS ARS           )
HOLDING, N.V.,                         )
                                       )
    Defendant/Counterclaimant.     )
                                       )
APPLIED RESEARCH SYSTEMS ARS           )
HOLDING, N.V.,                         )
                                       )
    Plaintiff,                     )
                                       )
    v.                             )        Civil Action No. 04-11810-MLW
                                       )
CELL GENESYS, INC.,                    )
                                       )
    Defendant/Counterclaimant, and )
                                       )
TRANSKARYOTIC THERAPIES, INC.,         )
                                       )
    Defendant.                     )


**CELL GENESYS INC.'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR RECONSIDERATION
OR, IN THE ALTERNATIVE, CERTIFICATION,
OF THIS COURT'S AUGUST 13, 2007 ORDER**

Cell Genesys, Inc. ("CGI") respectfully submits this memorandum in support of its

motion for reconsideration, or in the alternative, certification, of this Court's Memorandum and

Order dated August 13, 2007 (the "Order").

## INTRODUCTION

This Court, in its Order, essentially wiped out all of the evidence that the parties have

spent the last 18-months gathering. The Order was issued notwithstanding that it directly

contradicts the law of the case reflected in this Court's August 9, 2006 Order, which endorsed

the parties' stipulation that the case would proceed on a "case-stated" basis, and would include

evidence from the five witnesses whose testimony and documents this Court now excludes.

Moreover, the Court's Order is premised on mistakes of law and fact. CGI respectfully contends

the Order is manifestly in error and constitutes a substantial injustice, and should therefore be

reconsidered, or in the alternative, certified to the United States Court of Appeals for the Federal

Circuit ("Federal Circuit").

## PROCEDURAL BACKGROUND

### The Court's August 9, 2006 Order.

The specific written record agreed to by both CGI and ARS was first proposed by CGI on

August 1, 2006, in its Report on Bifurcation (the "Report"). *See* Exhibit 4, Docket No. 51, Case

No. 05-12448.[1] In the Report, CGI indicated that it was prepared to move forward on a "case

stated" basis, and that "[r]ather than extend this proceeding unnecessarily, CGI will rely on the

sworn testimony of the fact witnesses already taken." *Id.*, Docket No. 51 at 3. CGI further

stated that "each of the witnesses in question was examined after CGI identified them as

witnesses in possession of material information with regard to the date of invention by Skoultchi

of the subject matter of the interference Count." *Id.* Those fact witnesses are George Savage,

---

[1] All references to Exhibits are attached to the accompanying Declaration of Steven B. Kelber.

1

Andrew Thompson, Mark Levin, Arthur Skoultchi and Raju Kucherlapati. In addition, CGI attached to its Report as Exhibit A a proffer of the proof that it would advance, stating the name(s) of the specific individuals who would testify to each piece of evidence, the relevant testimony (including the testimony of Savage, Thompson, Levin, Skoultchi and Kucherlapati) and documents pertaining to their testimony. *Id.*

During a hearing on August 8, 2006, the parties stipulated to proceed not just on a written record, but on the very specific written record that CGI submitted to the Court days earlier in the above-referenced briefing. *Id.* ARS agreed that the parties were proceeding on a case-stated basis, as set forth by CGI in its Report, and stated: "In their last paper, [CGI] said that no expert testimony was necessary, that it should be put in on a case-stated basis. We agree with that, your Honor. We can go forward on the papers." *See* Exhibit 5, Transcript, p. 31, ll. 10-13. ARS's counsel further stated: "CGI would be moving on this issue, your Honor, and we would be willing to take it on, as it's said, on a "case-stated" basis." (*Id.*, pp. 46 ll. 3 – 5).

The Court's August 9, 2006 Order embraced the parties' stipulation to proceed on the specific written record to which the parties agreed. The Court's Order of that date states, in relevant part: "It's my understanding that the second issue, whether the Board correctly found that CGI's Claims 107 to 109 are unpatentable over the Japan reference, can be done on the papers. There's not a motion for summary judgment, but it will be a trial on the written record, unless I decide I want to hear something." (*Id.*, p. 52, ll. 14-19). That Order further stated: "<u>As agreed by the parties,</u> the court will conduct a trial on the written record to decide the first question." Docket No. 124, Court's August 9, 2006 Order (emphasis added).

**The Court's Subsequent August 13, 2007 Order.**

In October 2006, CGI and ARS briefed two issues critical to this action: (1) whether Japanese Patent Publication No. 1-215280 (Japan) is prior art with respect to CGI's claims; and (2) whether there is an interference-in-fact between Claim 106 of CGI and Claim 24 of ARS.

Notably, the parties never had the opportunity to brief the second issue relating to interference-in-fact. The issue arose only when the Board raised it *sua sponte*, as late in the day as possible, in its dispositive decision on motions in Interference 105,114. *See* Docket No. 2, at Exhibit 1.

On the same day that ARS filed its memoranda regarding to the two issues above, it also filed three motions *in limine* seeking to exclude certain evidence offered by CGI in its opening memoranda. On August 13, 2007, this Court issued an Order pertaining to ARS's motions *in limine* (Docket No. 172), which barred from consideration all of the evidence that the parties had gathered during the course of this action. Specifically, the Court refused to consider any documents not presented to the Board below, or any testimony by witnesses who did not testify before the Board, with narrow exceptions. The Court held at page 2 of its Order:

> A Section 146 proceeding in the United States District Court is primarily intended to provide an opportunity for further, live testimony by witnesses who presented affidavits or depositions to the Board, which may not receive live testimony, so that the credibility of those witnesses can be better judged.

This Order was directly at odds with its prior August 9, 2006 Order, which permitted the parties to proceed on a case-stated basis and utilize the testimony and documents of the above-referenced witnesses.

**ARGUMENT**

I.    **THIS COURT SHOULD GRANT CGI'S REQUEST FOR RECONSIDERATION.**

For all of the reasons detailed below, CGI requests that this Court grant its motion to reconsider its August 13, 2007 Order, and permit CGI to introduce the testimony of Levin, Savage, and Thompson and the documents to which these witnesses testified, along with the '939 Patent and the Kucherlapati Article. The parties previously stipulated that this testimony would be part of the written record, and this Court agreed to that stipulation. Now, notwithstanding that ARS chose to take this testimony, it seeks to exclude it because it does not like its content. CGI takes the position that it should be able to utilize this evidence, and as such, respectfully asks the Court to reconsider its prior Order.

If this Court denies CGI's request for reconsideration of its Order, CGI requests that the Court issue an order certifying its August 13, 2007 Order, pursuant to the provisions of 35 U.S.C. § 1292(b), so that this precedential question may be laid squarely before the Federal Circuit. CGI respectfully submits that the issue satisfies the statutory requirements of 35 U.S.C. § 1292(b) and equity compels certification in the absence of reconsideration.

A.    **THE APPLICABLE STANDARD FOR RECONSIDERATION.**

While reconsideration is not granted automatically, a District Court may revise or amend an interlocutory order at any time up to final judgment, *David v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass 2000). "When faced with a motion for reconsideration, a district court must balance the need for finality against the duty to render just decisions." *Id.* The court may grant such a motion where the circumstances are extraordinary, "such as where the initial decision was clearly erroneous and would work a manifest injustice." *Id.* As this Court has previously observed, reconsideration is governed by the law of the case doctrine. *Martins v. Bicknell & Fuller*

4

*Corrugated Container Corps., No.* 84-482-WF, 1988 WL 9294 (D. Mass. Feb. 1, 1988) (Wolf, J.). As demonstrated below, this Court's Order is manifestly in error, and will work a substantial injustice on CGI if it is not modified.

### B.    RECONSIDERATION IS PROPER IN LIGHT OF COMPELLING FACTS AND LAW.

This Court's Order constitutes the type of circumstance warranting reconsideration for three independently-sufficient reasons.

*First*, the Court's Order reverses the "law of the case," which provided that the parties would proceed on a specific "case stated" written record, including the testimony of witnesses and certain documents that are now precluded from being offered into evidence. There is no basis for the Court to reverse its prior Order.

*Second*, the Order's premise that the Board cannot hear live testimony, or otherwise view witness demeanor, is incorrect. In fact, the Board <u>can</u> and does hear the testimony of witnesses, live or on videotape, and makes credibility determinations where they are perceived to be necessary.

*Third*, the Court enunciates for the first time the "due diligence" standard, whereby a party may only present evidence not previously presented to the Board if it can demonstrate that it exercised due diligence below in trying to obtain such evidence. This standard is in conflict with virtually every available case on this subject, where courts generally find that exclusion is proper only where a party engages in intentional withholding of such evidence in the Board proceeding, or more egregious conduct. Moreover, even if this standard is the proper one, the Court incorrectly concludes that CGI failed to exercise due diligence by failing to subpoena the testimony of Levin, Savage and Thompson, since CGI had no information regarding the

substance of Levin's testimony, and did not know Savage and Thompson's last names, where they lived, or what role they played at CGI.

### 1.    The Court's Order Contradicts the Law of The Case Previously Established in this Court's August 9, 2006 Order.

The law of the case "doctrine is a salutary rule of policy and practice, grounded in important considerations related to stability in the decisionmaking process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy. The law of the case should be treated respectfully and, in the absence of exceptional circumstances, applied according to its tenor." *Employers Ins. Of Wausau v. First State Ins. Grp.*, 324 F. Supp. 2d. 333, 338 (D. Mass. 2004). This doctrine "contemplates that a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court." *United States v. Moran*, 393 F.3d 1, 7 (1st Cir. 2004). A deviation from the law of the case is permitted "where there has been a change in prevailing law or where there is new evidence on the question at issue." *Conley v. United States*, 323 F.3d 7, 13 (1st Cir. 2003). However, district courts should only re-open previously resolved issues "sparingly," where "exceptional circumstances" exist. *United States v. Craven*, 190 F. Supp.2d 177, 180 (D. Mass. 2002).

The law of this case was established by August 8, 2006, when the parties agreed to address the questions of interference-in-fact and antedation of Japan by CGI on a specific, case-stated written record. Indeed, this written record was first submitted to the Court by CGI, and was culled from thousands of pages of discovery taken by ARS in this litigation. Subsequently, the Court endorsed the stipulation in its August 9, 2007 Order and stated that the parties would proceed on the written record "[a]s agreed to by the parties."

6

Thereafter, notwithstanding a lack of "exceptional circumstances," such as a change in the prevailing law or the presentation of new evidence, the Court reversed course in its August 13, 2007 Order and determined that all of this evidence that had been gathered and presented was useless. The Court shifted its position and determined that only witnesses who presented testimony in affidavit or declaration at the Board below may testify before this Court. The Court also excluded documents relied upon by these witnesses at their deposition, which had previously been agreed to by the parties as part of the specific written record.

The Court's decision renders inadmissible, for instance, the testimony of experts taken by deposition. It also renders purposeless the five fact witness depositions taken by ARS and the hundreds of pages of documents reviewed. It renders pointless the significant cost of proceeding in this case from June of 2004 to date. In effect, and notwithstanding its August 9, 2006 Order permitting the parties to present the evidence that it spent months upon months gathering, the Court has now declared a "do over," thereby limiting the case only to the evidence presented before the Board. This is a manifest injustice – a change in the law of the case by the Court, but in the absence of any change in law or facts.

**2.    The Order Stems From A Misapprehension of Law and
Practice Regarding Live Testimony In A Board Proceeding.**

This Court's Order is based on the mistaken premise that the Board "may not receive live testimony" in an interference pursuant to 35 U.S.C. § 135. Order, p. 2. The Court's reasoning in support of this statutory construction emanates from the proposition set forth in 37 C.F.R. §§ 1.653(a), 1.677 that "[l]ive testimony may not be presented in a PTO interference proceeding." Order, p. 23. The Court's opinion further relies on the Federal Circuit's decision in *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1345 (Fed. Cir. 2000), which pertained to an interference

(Interference 102,654) that occurred in 1991, with final judgment issuing in 1996. The proposition cited by the Court here and in *Winner* is no longer the law or practice.

In point of fact, pursuant to the Trial Board practices and the May 1, 2003 Standing Order in effect at the time of the Interference between CGI and ARS, the Board is permitted to, and does, hear live testimony whenever it determines that credibility determinations are essential. The Standing Order under which Interference No. 105,114 proceeded provides that live testimony by "[c]ross-examination may be ordered to take place in the presence of the administrative patent judge." The Standing Order is attached to the accompanying Declaration of Steven Kelber ("Kelber Declaration") as Exhibit 1, § 14.4, p. 27. Indeed, by way of an example, pursuant to the provisions of the above-referenced Standing Order, in order to resolve questions of dates of invention, witnesses that were residents of Taiwan traveled "to the United States and gave live testimony on February 24, and 25, 1999, in a hearing room of the Board, in the presence of Judges McKelvey and Lee, who observed the demeanor of the witnesses." This decision is attached to the Kelber Declaration at Exhibit 2, *R.C. v T.I.* Decision on Miscellaneous Motion, Paper No. 143.

Notably, the underlying Interference in this action gave rise to the Board's decision that videotaped depositions could be submitted to the Board without agreement between the parties, "as video may demonstrate the demeanor of the witnesses. The Administrative Patent Judge is of the opinion that the witnesses' demeanor has the potential to shed light upon the witnesses' testimony." *Applied Research Sys. ARS Holding N.V. v. Cell Genesys, Inc.*, 68 USPQ2d 1863 (BPAI 2003). Indeed, the Board reviewed the videotaped deposition of CGI's witness, Roland, and commented on its perceptions as to his credibility. *See* First Amended Complaint, Exhibit 1 (Docket No. 2), Decision on Motion dated June 22, 2004, at pp. 109-112 ("[A]dditionally, each

8

member of this panel has independently reviewed the written transcript of the testimony of Bertram Roland dated October 1, 2003 (Exhibit 2055) in conjunction with the video tape thereof of record").

The Declaration of Steven Kelber submitted herewith further demonstrates that the Board will order live testimony (either direct or cross-examination) in order to observe the demeanor and credibility of witnesses.

As such, it is clear that the Board has full authority to seek live direct testimony, as well as testimony on cross-examination, where it determines that the credibility of a witness is in issue.

### 3.    The Court's Order Improperly Changes the Burden of Proof and Imposes a Standard Inconsistent With Prior Case Law.

Notwithstanding significant case law imposing a much more stringent standard of review, this Court concludes that, based on a "due diligence" standard, a District Court may prohibit a party from introducing documentary or testimonial evidence that was not presented to the Board below. Order, p. 31. According to this Court, a failure to exercise such due diligence requiring exclusion of evidence before the District Court includes a party's failure to issue a subpoena in a Board action.

#### (a)    The "due diligence" standard applied is improper.

Courts exclude a party from presenting new evidence in the District Court where the party intentionally withheld the evidence from the Board, or engaged in more egregious conduct. This standard is significantly more stringent than the due diligence standard applied by this Court, and requires some degree of outlandish conduct.

Indeed, even this Court's Order recognizes that courts apply this higher standard of proof before a court decides to exclude evidence. For example, this Court quotes *Conservolite, Inc. v.*

*Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994) and acknowledges that when determining whether to preclude testimony otherwise admissible by statute, courts consistently consider "whether there was suppression, bad faith, or gross negligence on the part of the Plaintiff in failing to raise an issue" and "whether or not the failure to identify or procure the evidence was attended by bad faith motives or tactical reasons." Order, p. 30. Moreover, this Court also cites *Kirschke v. Lamar*, 426 F.2d 870 (8th Cir. 1970) and *Barrett Co. v. Coppers Co.*, 22 F. 2d 395 (3rd Circuit 1927). Tellingly, each of these decisions finds that a party's *intentional* withholding of evidence before the Board is necessary to preclude a party from presenting new evidence in the District Court in a proceeding under 35 U.S.C. § 146. *Kirschke* states:

> A party should not be allowed to *intentionally withhold* part of the available and highly pertinent evidence from the Board on its belief or conclusion that it is not needed to prevail and then losing at the administrative level, seek to prevail in a subsequent trial by means of the withheld evidence.

426 F.2d at 872 (emphasis added). To the same effect, *Barrett* states that "when, as in this case, a party has refused to produce evidence for consideration . . . . which they withheld from that proceeding, and, therefore, withheld from the other patent tribunals and the Court of Appeals for the District of Columbia," 22 F.2d at 396, the evidence may be excluded.

Notwithstanding this stringent standard applied by these courts, this Court, based on the Seventh Circuit's decision in *Velsicol Chem. Corp. v. Monsanto Co.*, 579 F.2d 1038 (7th Cir. 1978), determined that the "due diligence" standard of review applies here, which forever bars a party from presenting evidence that the Court believes it could have obtained below.[2] However, this Court applies a standard here that goes beyond that imposed in *Velsicol*. Rather, *Velsicol*

---

[2] *Velsicol*, however, is of questionable continuing vitality, given the exclusive jurisdiction now vested in the Federal Circuit, which has declined to address the question decided by this Court regarding the circumstances in which a District Court may refuse to accept testimony on issues placed before the Board in the Interference, pursuant to 35 U.S.C. § 146.

concluded, repeatedly, that the party seeking to introduce new evidence not presented to the Board engaged in, at a minimum, gross negligence. "Moreover, the evidence in the record gives rise to a strong inference that *Velsicol* was grossly negligent in not eliciting the testimony in question from Richter and Koursner in the interference proceeding." 579 F.2d at 1048. "The evidence before the District Court strongly suggests that *Versicol* was grossly negligent in not procuring their testimony." *Id.* at 1047.

The extensive dissenting opinion of Judge Pell in *Velsicol* is also instructive. Judge Pell criticized the majority opinion specifically because it relied on a characterization of gross negligence, a much lower standard than the deliberate withholding of the prior caselaw. 579 F.2d at 1051. Judge Pell further noted that the case law on which *Velsicol* is premised found it proper to exclude evidence where there was "conduct approaching intentional or deliberate withholding." *Id.* Judge Pell emphasized that prior cases specifically found that a decision to preclude a party to an action under 35 U.S.C. § 146 from introducing additional evidence in a subject raised below was proper <u>only</u> where that party intentionally or deliberately withheld or obstructed the evidence in question.

CGI respectfully directs this Court's attention to the extensive discussion in Judge Pell's dissent, 579 F.2d at 1054, reviewing multiple cases, each of which establishes a standard far beyond "due diligence" before a party may be precluded from introducing evidence in a proceeding under 35 U.S.C. § 146. Judge Pell characterizes these cases as follows:

> With the exception of one reference therein to "negligent in failing to submit" all the gamut of characterizations connote some considerable egregiousness at the administrative proceedings level: fraud, bad faith, gross negligence, suppression, deliberate withholding, readily available and of such importance, oversight of glaring proportions, and concealed.

579 F.2d at 1054.

11

Thus, CGI respectfully submits that even the decision in *Velsicol* rested on conclusions of gross negligence not found by the Court herein, or urged by ARS. The preceding case law, as discussed at length by Judge Pell, requires an even higher standard of misconduct before a party may be precluded from presenting evidence not presented to the Board on an issue raised before the Board.

Significantly, the Federal Circuit has recognized on two occasions that it has not yet decided the question of when a District Court may properly restrict testimony on issues either presented to the Board or raised by the Board's decision. *See General Instruments v. Scientific Atlanta*, 995 F.2d 209, 214 (Fed. Cir. 1993) and *Case v. CPC Int'l Inc.*, 730 F.2d 745, 752 (Fed. Cir. 1984). Given the absence of guidance in the Federal Circuit, other District Courts (in similar circumstances) have been more cautious in excluding evidence. In *Adhesives Research Inc. v. Minnesota Mining and Mfg. Co.*, 2003 WL 25548427 (D.D.C. 2003), the District Court observed:

> Since the Federal Circuit, whose authority controls here, has never decided the issue (of whether there are circumstances in which a District Court may refuse to admit new evidence even if it pertains to an issue that was raised before the Board) the Court will look for guidance to Appellate decisions that pre-date the establishment of the Federal Circuit. A review of those cases reveal that it was the law in several circuits, including the District of Columbia circuit, that in certain circumstances, a party in a Section 146 action was precluded or estopped from introducing new evidence, even if the evidence related to an issue that had been raised before the Board. This principle applied with particular force where a party had deliberately withheld the proffered evidence from the Board. *Id.* at \*3. (parenthetical and emphasis supplied).

In addition to the decisions in *Kirschke, Barrett* and *Velsicol*, discussed above, the *Adhesives* Court also reviewed the decisions in *Knutson v. Gallsworthy*, 164 F. 2d 497, 508-9 (DC Cir. 1947), *Greene v. Beidler*, 58 F. 2d 207, 209-10 (2nd Cir. 1932) and *Cody v. Aktiebolaget Flymo*, 452 F.2d 1274, 1279, N.8 (DC Cir. 1971). Based on these decisions, the *Adhesives* Court

12

formulated a rule that "[a]ny evidence that AR deliberately, intentionally, or willfully withheld from the Board will accordingly be excluded at trial." *Adhesives Research Inc.*, 2003 WL 25548427, at *4. Respectfully, neither ARS nor this Court has suggested that CGI "deliberately, intentionally, or willfully withheld [the] evidence from the Board" that it now seeks to submit.

The *Adhesives* Court also reviewed other contemporaneous District Court decisions, observing that "several district court decisions have permitted the introduction of all new evidence in a section 146 action, regardless of the reasons for its earlier absence, so long as the evidence pertains to an issue that was raised in Board proceedings." *Id.* at n. 7, citing *Heil Co. v. Snyder Indus., Inc.* 763 F.Supp. 422, 425 (D. Nebraska 1991) and *Estee Lauder Inc. v. Loreal*, S. A., 40 USPQ2d 1425 (D.D.C. 1996), *rev'd on other grounds* 129 F.3d 588 (Fed. Cir. 1997).

Critical to the *Adhesives* Court's determination not to permit certain evidence was its finding "that AR deliberately, intentionally and willfully withheld the evidence on suppression or concealment that was in its possession or of which it had knowledge." *Id.* at 5.

In sum, where the court with exclusive jurisdiction has expressly not decided the issue and courts across the country have precluded the introduction of new evidence only where there has been intentional withholding, or similarly egregious conduct, there is no basis for a District Court to create a new standard of "due diligence" requiring the party to subpoena witnesses even though it does not know the basis of their testimony or their last names or addresses.

**(b)    Even if the "due diligence" standard is deemed proper, CGI did not fail to exercise such diligence.**

As indicated below, CGI's failure to present (1) U.S. Patent No. 5,024,939 ("'939 Patent"), (2) the 1985 Kucherlapati Article, and (3) testimony of certain fact witnesses, did not result from a lack of diligence of CGI.

13

  (i)  **United States Patent No. 5,024,939 and the 1985**
       **Kucherlapati Article.**

  The Court's Order precludes CGI from presenting two documentary pieces of evidence,

United States Patent No. 5,024,939 and the 1985 Kucherlapati Article, each of which bears

solely on the question of whether CGI Claim 106 interferes-in-fact with ARS's Claim 24. *See*

Order, pp. 42-43. The Court excluded these documents because "CGI does not address why

these documents were unavailable during the Board proceedings." *Id.*, p. 42. Because the

documents had been in the public record prior to the commencement of Interference No.

105,114, the Court stated that "some modicum of diligence would have revealed their existence."

As a result, this Court determined that CGI lacked the requisite diligence, stating:

> Therefore, the Court finds that CGI's failure to make an effort to present
> the Kucherlapati Article and the '939 Patent to the Board resulted from
> lack of due diligence. In view of the foregoing, none of the disputed
> evidence not previously presented to the Board will be admitted in this
> case.

*Id.*, pp. 42-43.

  The Court's Order fails to take into consideration the critical fact that <u>CGI had no</u>

<u>opportunity to present the '939 Patent or the Kucherlapati article to the Board, because the</u>

<u>question of interference in-fact was raised *sua sponte* by the Board, long after the close of</u>

<u>motions.</u>[3] In fact, the first discussion of the question of interference-in-fact appears at pages

126-133 of the June 2004 Decision on Motions. Docket No. 2, First Amended Complaint at Exh.

1. Prior to that time, neither party, nor the Board, had raised this issue. Unlike a District Court

proceeding, parties to an interference cannot introduce evidence unless it is in support of a

Motion, Opposition or Reply. *Lanuza v. Fan*, 76 USPQ2d 1559, 1577 (BPAI 2005) (finding that

---

[3] *See also* CGI's Opposition to the ARS Motion to Exclude Evidence Relied on in CGI's Memorandum Regarding
Interference in Fact Not Presented to the Board Below at pp. 1-4, incorporated herein by reference. (Docket No.
145).

in order to place evidence before the Board in a contested case, a party must list the evidence by Exhibit number(s) in a Motion, Opposition or Reply). Neither CGI nor ARS ever argued that there was no interference-in-fact. It was only after the Board's disposal of certain claims on both sides that it *sua sponte* determined a lack of interference in-fact between the surviving claims. Docket No. 2, First Amended Complaint, Ex. 1, Decision of the Board of June 22, 2004, p. 126.

Accordingly, this Court now deprives CGI of the opportunity to carry its burden of proof on the question of whether the surviving claims interfere-in-fact, because CGI did not present evidence to the Board (although it lacked any opportunity to present it). The Court's standard of due diligence would require CGI to be omnipotent. This "Catch 22" is precisely what proceedings under 35 U.S.C. § 146 were intended to resolve. As the Court of Appeals for the Federal Circuit observed:

> Section 146 authorizes the District Court on review to accept testimony, but normally as to issues raised by the parties during the proceedings below or by the Board's decision. (Emphasis applied.)

*Conservolite Inc. v. Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994), citing *Case v. CPC Int'l, Inc.*, 730 F.2d 745, 752 (Fed. Cir.), *cert. denied*, 469 U.S. 872 (1984).

Thus, this Court's Order effectively puts CGI in a tightly closed box. This Court ruled that because CGI had not presented the '939 Patent and the Kucherlapati Article, which relate only to interference-in-fact, to the Board, it cannot now present them to this Court. However, CGI could not have presented either of these documents (or any evidence pertaining to interference-in-fact) to the Board since it was raised for the first time in the seventh year of the case's history, after briefing was complete. Such a finding is not equitable. As this Court's Order observes, a proceeding under 35 U.S.C. § 146 is in the nature of equitable relief, which is respectfully requested.

15

### (ii)    Testimony.

Similarly, the Court simply has no basis to hold that CGI lacked the requisite diligence because it did not seek permission from the Board regarding the issuance of subpoenas on fact witnesses.

Importantly, the PTO cannot issue a subpoena. Rather, to serve subpoenas on these witnesses, CGI would have to seek the Board's permission to issue such a subpoena through the appropriate federal district court pursuant to 35 U.S.C. § 24. In order for the Board to agree to permit a party to issue such a subpoena, the party must make a proffer of the nature of the witness's testimony pursuant to 37 C.F.R. 1.639. Specifically, a party, as noted, may only present evidence in the context of a Motion, Opposition or Reply. To secure permission to issue a subpoena or otherwise take discovery, the party must show that such testimony is required to support a *prima facie* case. It must demonstrate how the discovery it seeks will support that burden. *Tropix v. Lumigen,* 53 USPQ2d 2018 (BPAI 2000). Where a party cannot determine the nature of the witness's testimony because the witness refuses to cooperate in such a discussion, the Board will simply not permit the issuance of the subpoena in the hopes of something turning up. Similarly, where a party to a Board proceeding cannot identify the last names or addresses of the proposed subpoenaed witnesses, the Board will similarly not issue such a subpoena.

The Court, without citation, and contrary to the very conservative practice of the Board as reflected in *Tropix, Inc. v. Lumigen, Inc.* and *Ginter v. Benson*, 77 USPQ2d 1638 (BPAI 2005), simply asserts that the Board would have granted a subpoena to depose Levin, as well as Thompson and Savage. However, the Court acknowledges that CGI attempted to contact Levin to secure his documents and testimony, but was unsuccessful. Order, p. 41. Nevertheless, the Court still concludes that "if necessary, CGI could have asked the Board to authorize a subpoena

for Levin." With respect to Savage and Thompson, the Court's Order notes that CGI and counsel, "did not know of their existence or location until ARS deposed Levin" as it was Levin who identified "George and Andy," as George Savage and Andy Thompson, and identified their residence as California. *Id.*

CGI submits that it was as diligent as it possibly could have been, through its attempt to obtain information from Levin which would have permitted it to ask the Board to authorize these subpoenas. Since Levin declined to assist CGI during the interference, CGI had no information pertaining to the information Levin possessed, or as to the last names of "George and Andy," where they lived or what role they performed. Absent a direct link between the expected testimony and the issues before the Board, the Board will not permit the issuance of a subpoena. *See* Exhibit 6, Excerpts from Testimony of Kucherlapati. As such, it was impossible for CGI to depose or otherwise subpoena the documents of Levin, Savage and Thompson, or to seek the issuance of these subpoenas, because it could not proffer the information in which the Board requires to warrant the authorization of a subpoena.

## II.    IN THE ALTERNATIVE, THIS COURT SHOULD CERTIFY ITS AUGUST 13, 2007 ORDER TO THE FEDERAL CIRCUIT.

If this Court rejects CGI's request for a modification of its August 13, 2007 Order, CGI respectfully requests that the Court certify the Order to the Federal Circuit on the issue of whether this Court may properly preclude CGI from presenting the testimony and documents of Levin, Savage and Thompson as well as the '939 Patent and Kucherlapati Article, for review pursuant to 28 USC § 1292(b).

A court may certify an order, not otherwise appealable, for interlocutory appeal, if three conditions are met. The order must: (1) "involve[ ] a controlling question of law"; (2) as to which there is a substantial ground for difference of opinion; and (3) where an immediate appeal

may materially advance the ultimate termination of the litigation." *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997); *Kagan v. Dress,* 1993 WL 160580, at *2 (D. Mass. April 21, 1993) (Wolf, J.); *see* 28 U.S.C. § 1292(b).

The question at issue here clearly satisfies the above-referenced statutory requirements. Moreover, the Federal Circuit is likely to review this question when certified, since it has indicated on two separate occasions that this issue has not previously been decided. The fact that several cases, like *Adhesives Research*, have noted the difficulty created by the absence of Federal Circuit precedent on the question further reinforces the likelihood that the Federal Circuit will take up the certified Order.

### A.    The Question is "Controlling".

"[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *Philip Morris Inc.*, 957 F. Supp. at 330, quoting *Arizona v. Ideal Basic Indus.,* 673 F.2d 1020, 1026 (9th Cir. 1982).

Here, the legal question of under what circumstances a District Court may prohibit introduction of new testimony on an issue raised before the Board, or by the Board, in the context of an action under 35 U.S.C § 146, is clearly controlling. If the Federal Circuit reverses this Court's Order, and finds that the new evidence in this case is admissible, the outcome of the litigation in this Court would be materially affected. *See* Part C below.

### B.    There is a Substantial Ground For Difference of Opinion.

"[I]t can be concluded that there is a substantial ground for difference of opinion about an issue when the matter involves one or more difficult and pivotal questions of law not settled by

controlling authority." *Philip Morris Inc.*, 957 F. Supp. at 330, quoting *McGillicuddy v. Clements*, 746 F.2d 76, n. 1 (1st Cir. 1984) (quotations omitted).

There is substantial ground for difference of opinion on this controlling question of law. First, this matter clearly involves a difficult and pivotal question of law, which has not been settled by controlling authority – the Federal Circuit. Even the Federal Circuit has acknowledged that this issue has not yet been resolved. *See General Instruments*, 995 F.2d at 214 and *Case*, 730 F.2d at 752.

Second, this Court's Order constructs a new, less stringent "due diligence" standard for the exclusion of evidence, in stark contrast to the prevailing standard that exclusion should occur where a party <u>intentionally</u> or <u>deliberately</u> withholds or excludes such evidence. Moreover, this Court's Order is 180 degrees reversed from its August 9, 2006 Order, which directed the parties to proceed on the "case-stated" specific written record it now excludes. The Court attempts to justify the exclusion, noting that it "now understands that a § 146 proceeding is an option intended to provide an opportunity to present live testimony on disputed issues to enhance judgments concerning credibility." Order, p. 34. The law has not changed between August 9, 2006 and August 13, 2007; as this Court demonstrates by its shifting opinions, there is abundant basis for a difference of opinions.

**C.    An Immediate Appeal May Materially Advance Ultimate Termination.**

"[T]he requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." *Philip Morris Inc.*, 957 F. Supp. at 330 (quotations omitted), quoting 16 Charles Alan Wright, et al., *Federal Practice and Procedure*, § 3930 at 432 (2d ed. 1996).

Beyond doubt, if the new evidence is admitted, this increases the likelihood that CGI will antedate the Japan reference, which will establish CGI's claims 107 – 109 patentable, and in interference with the claims of ARS. Priority of invention would be the sole issue for the Court to determine. If ARS lost on that issue (and there is no evidence of invention by ARS prior to the effective date of Japan), the entire litigation would be over – Counts II through IV would be dismissed. If the Court upholds its Order, Counts I, III and IV need to be resolved, and only then can the Court move on to consider Count II, infringement by TKT, where this evidence will be presented. Only then, years from now, will this issue go to the Federal Circuit.

Since certification now will likely advance the litigation, and review by the Federal Circuit will not impose new delays (the Court already has the parties' briefing on these issues), CGI respectfully requests that this Court certify its August 13, 2007 Order if it denies its request for reconsideration. Given the express reservation of the Federal Circuit on this issue, CGI respectfully submits that certification is warranted, unlike the Court's controlling question of law where certification was declined in *Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer,* 1993 WL 137483 at *5 (D. Mass. April 19, 1993) (Wolf, J).

Respectfully submitted,


Dated: <u>October 1, 2007</u>

<u>/s/  Steven B. Kelber</u>
Steven B. Kelber
Jagtiani+Guttag
10363-A Democracy Lane
Fairfax, Virginia 22030
Tel:  703-563-2011
Fax:  703-591-5907

T. Christopher Donnelly (BBO # 129930)
Jill Brenner Meixel (BBO# 652501)
DONNELLY, CONROY & GELHAAR, LLP
One Beacon Street, 33d Floor
Boston, MA 02108
Tel: 617-720-2880
Fax: 617-720-3554

COUNSEL FOR DEFENDANT
CELL GENESYS, INC.


## <u>Certificate of Service</u>

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 1, 2007.


<u>/s/    Jill Brenner Meixel</u>
Jill Brenner Meixel

21