IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CELL GENESYS, INC., ) | |
| ) | |
| Plaintiff/Counterdefendant ) | |
| ) | |
| v. ) | Civil Action No. 05-12448-MLW |
| ) | |
| APPLIED RESEARCH SYSTEMS ARS ) | |
| HOLDING, N.V., ) | |
| ) | |
| Defendant/Counterclaimant. ) | |
| ) | |
| APPLIED RESEARCH SYSTEMS ARS ) | |
| HOLDING, N.V., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-11810-MLW |
| ) | |
| CELL GENESYS, INC., ) | |
| ) | |
| Defendant/Counterclaimant, and ) | |
| ) | |
| TRANSKARYOTIC THERAPIES, INC., ) | |
| ) | |
| Defendant. ) | |

**DECLARATION OF STEVEN B. KELBER IN SUPPORT OF CGI'S MOTION
FOR RECONSIDERATION OR, IN THE ALTERNATIVE, CERTIFICATION,
OF THIS COURT'S AUGUST 13, 2007 ORDER**

I, Steven B. Kelber, being first duly sworn, do hereby depose and state that:

1.  I am lead counsel for Cell Genesys, Inc. ("CGI") in the above-captioned consolidated matters.

2.  Since 1979, I have been registered to practice before the United States Patent and Trademark Office, as an agent, and then, beginning in 1981, as an attorney.

3. Since about 1981, I have specialized in the practice of Interference Proceedings before the United States Patent and Trademark Office, first before the Board of Patent Interferences, then, beginning in 1985, the consolidated Board of Patent Appeals and Interferences (the "Board").

4. As lead counsel, I have represented parties-in-interest whose patents and application are involved in an interference in more than 150 patent interferences. Prior to 1998, I had no opportunity to present a witness offering live testimony, either directly or through a deposition, to the Board. All testimony was received in the form of a Declaration, or a transcript of deposition.

5. In October of 1998 the Board introduced new procedures to Interference Practice before the United States Patent and Trademark Office. These changes were not introduced by a change in the rules, but rather, by introduction of a new Standing Order that controlled practice and procedure in an Interference.

6. The Standing Order has been modified several times since its introduction in 1989. Interference 105,114 was conducted according to the Standing Order of May, 2003. A true and accurate copy of the 2003 Standing Order is attached hereto as Exhibit 1.

7. The Standing Order provided, for the first time, that the Board not only could receive live testimony so as to make determinations on credibility, but should receive such testimony where appropriate. *See* Exhibit 1, ¶ 14.4.

8. In my personal experience, the Board has exercised its power to hear live testimony. In some of these cases, the Interference is ongoing, and the information not public. In one such Interference, a second deposition of a witness was requested because

the witness, an expert, had been shown to have been an employee and consultant for the real party in interest. Accordingly, his credibility was brought into play. The party advancing the witness requested this deposition be conducted before the Board. Ultimately, the interlocutory Administrative Patent Judge Tierney monitored that deposition conducted by me, ruled on objections, asked the witness questions, and otherwise was in a position to assess the witness's credibility.

9. In an Interference that was essentially a contest between one of the inventors and the assignee of that inventor whom I represented, the inventor chose to represent himself, and sought permission to have his wife (not registered to practice) assist him in that representation. My client acquiesced in that request, but asked that all witness testimony, direct and cross-examination, be conducted before the Board, given the lack of experience of the witness and chosen representative. The Board agreed to that request, and Judges McKelvey (senior APJ at that time), Torczon and Lee (interlocutory judge) heard all testimony in that case.

10. The Board has received live testimony in other proceedings. Most Board proceedings are not released, and of those, very few are made precedential. Paper 143 in Interference 104, EEE (the identity of the parties and the interference number was blocked as not public information) is one of those rare precedential opinions. A true and accurate copy of this decision is attached hereto as Exhibit 2. This decision reflects the following observation:

> Messrs. Richard and David C are residents of Taiwan. They traveled to the United States and gave live testimony on February 24 and 25, 1999, in a hearing room of he Board, in the presence of Judges McKelvey and Lee, who observed the demeanor of the witnesses.

Exhibit 2, p. 2.

3

11. I am aware of other Interferences where I was not involved where the Board has received live testimony of witnesses wherever credibility was an issue.

12. It is now commonplace to record depositions on videotape (reduced to CDRs so that they can be conveniently reviewed) for submission to the Board so that the Board may review the demeanor of the witness. In the Interference at issue in the above-captioned matters, the Board held for the first time (APJ Tierney) that a party could be compelled to have its witness videotaped, and that the videotape would be reviewed by the Board for witness demeanor.

13. A true and accurate copy of the current version of the Standing Order, amended January, 2006 is attached hereto as Exhibit 3. That Standing Order has retained the provision that the Board may elect to receive live testimony at any time. Exhibit 3, ¶154.5. This provision is expanded upon, ¶ 157.3.4.

14. I have reviewed the Court's Order and Memorandum in the above-captioned consolidated cases dated August 13, 2007. Based on the foregoing facts, I cannot agree with the Court's observation on page 2 of that document that the "Board, which may not receive live testimony" or the Court's observation, page 23, that "Live testimony may not be presented in a PTO interference proceeding." It is my personal experience, and my understanding based on Board decisions and the experiences of others, that the Board may and does receive live testimony, whenever it views credibility to be an issue with respect to a given witness, or Board supervision is required. The Board also reviews videotapes to assess witness credibility, where appropriate.

15. Attached hereto as Exhibit 4 is a true and accurate copy of Docket No. 51, Case No. 05-12448.

16. Attached hereto as Exhibit 5 is a true and accurate copy of excerpts from the August 8, 2006 hearing in this matter.

17. Attached hereto as Exhibit 6 is a true and accurate copy of excerpts from the testimony of Kucherlapati.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Subscribed and sworn to, this 1st day of October, in the city of Fairfax, Virginia.

/s/ Steven B. Kelber
Steven B. Kelber

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 1, 2007.

/s/ Jill Brenner Meixel
Jill Brenner Meixel