# EXHIBIT 2

THIS OPINION WAS WRITTEN FOR PUBLICATION

The opinion in support of the decision being entered today is binding precedent of the Interference Trial Section of the Board of Patent Appeals and Interferences. The opinion is otherwise not binding precedent. The decision was entered on 16 April 1999.

Paper No. 143

Filed by:   Trial Section Motions Panel
            Box Interference
            Washington, D.C. 20231
            Tel: 703-308-9797
            Fax: 703-305-0942

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

R.C.

**Junior Party,**

v.

T.I.

**Senior Party.**

Patent Interference No. 104,EEE

Before: McKELVEY, Senior Administrative Patent Judge, and SCHAFER, LEE, and TORCZON, Administrative Patent Judges.

Lee, Administrative Patent Judge.

**DECISION ON MISCELLANEOUS MOTION**

**Introduction**

This interference is in the preliminary motions stage. In a preliminary motion for judgment, T.I. has alleged that the

1

inventorship of R.C.'s involved patent is incorrect. According to T.I., David C. -- not named inventor Richard C. -- should be designated as the inventor in the R.C. patent. In support of its preliminary motion, T.I. requested leave to take testimony of Richard C. and David C. The taking of live testimony of Richard C. and David C. was authorized. Also authorized was the production of pertinent documents relevant to the inventorship issue.

Messrs. Richard and David C. are residents of Taiwan. They traveled to the United States and gave live testimony on February 24 and 25, 1999, in a hearing room of the Board, in the presence of Judges McKelvey and Lee, who observed the demeanor of the witnesses.

T.I. has now moved under 37 CFR § 1.635 to have David C.'s 1994 day planner subjected to ink testing by a forensic document expert in the laboratory of the expert. A telephone conference was conducted with counsel for the parties on March 11, 1999, during which Judge Lee declined to make a ruling upon the T.I.'s oral request for testing. It was ordered that a written motion shall be filed T.I. T.I.'s motion was received on March 15, 1999 (Paper No. 124). The motion was accompanied by a declaration of T.I.'s document expert Mr. S. Upon receipt of T.I.'s motion, Judge Lee ordered T.I. to address the issue of whether its motion was timely raised (Paper No. 126). T.I. filed a response on

2

March 22, 1999 (Paper No. 130). Judge Lee ordered that R.C. need not file a response, and that if a response is necessary an opportunity would be given to R.C. to do so (Paper No. 126).

T.I.'s motion to have David C's 1994 Day Planner produced for further ink testing will be **denied**.

The position of T.I. is essentially this:

    a.    Two hand-drawn sketches purportedly representing the invention of R.C.'s involved patent appear as entries for September 5, 1994, and October 20, 1994, in David C's 1994 day planner. (R.C. Exhibits 1105 and 1106).

    b.    David C. testified that he made those sketches on or about the respective dates September 5, 1994, and October 20, 1994. See David C. Tr. at pgs. 68 and 83.

    c.    David C. testified that Richard C. is the sole inventor of the invention of R.C.'s involved patent in this interference. See David C. Tr. at pgs. 11-12 and 119-120.

    d.    On February 22, 1999, two days prior to the testimony of Messrs. David and Richard C., a forensic chemist and document analyst hired by T.I., Mr. S., is said to have conducted a visual inspection and infrared examination of David C.'s 1994 day planner. (Mr. S.

3

decl. para. 9).

e.   Based on Mr. S.'s visual inspection and infrared examination of the 1994 day planner on February 22, 1999, the ink used in the two sketches which are entries for September 5, 1994, and October 20, 1994, in the day planner

(i)   appears to be the same (Mr. S. decl. para. 11),

(ii)  does not appear elsewhere on either page of the entries for those two dates of the day planner (Mr. S. decl. para. 10), and

(iii) does not appear to be used for any other entry in the day planner for the period of August 16 through November 13, 1994.  (Mr. S. decl. para. 10).

f.   Based on his visual inspection and infrared examination of the day planner, Mr. S. doubts that the sketches reproduced in R.C. Exhibits 1105 and 1106 were made on their purported dates of September 5, 1994, and October 20, 1994. (Mr. S. decl. para. 12).

g.   Mr. S. suggests that chemical analysis of the inks be performed to positively disclose the similarities or differences in the inks as well as

4

whether the sketches were drawn much later than the calendar dates on which they appear. (Mr. S. decl. para. 13).

According to T.I., if the ink test it desires reveals that the sketches were not made in 1994, but made much more recently, the credibility of David C.'s testimony would be seriously undermined.

### Findings of Fact

1. On February 22, 1999, two days prior to the testimony of Messrs. David and Richard C., R.C. produced David C.'s 1994 Day Planner for inspection and review by counsel for T.I. (Mr. S. decl. para. 9)

2. On February 22, 1999, T.I.'s document expert, Mr. S., visually inspected the pages of the Day Planner produced by R.C. and made an infrared examination analysis of selected portions, if not all, of the Day Planner. (Mr. S. decl. para. 11).

3. On February 22, 1999, based on his examination of David C.'s 1994 Day Planner, Mr. S. formed what he then thought was a reasonable suspicion that the two sketches were not made on or around their purported dates in the 1994 Day Planner. (Mr. S. decl. para 12).

4. On February 22, 1999, after having developed his suspicions with regard to the two sketches, Mr. S. believed that further testing of the ink on the Day Planner, via more complex

5

equipment in Mr. S.'s laboratory, would be necessary to confirm his suspicions as to the authenticity of the entries which form the two sketches. (Mr. S. decl. para. 14).

5. Counsel for T.I. was present at the time Mr. S. visually inspected and conducted infrared examination of David C.'s 1994 Day Planner on February 22, 1999. (Paper No. 130, at 4).

6. After the inspection, Mr. S. discussed with counsel for T.I. the results of his evaluation. (Paper No. 130, at 4). Therefore, on February 22, 1999, counsel for T.I. knew of Mr. S.'s suspicions regarding the Day Planner and his suggestion for further ink-testing of the Day Planner to confirm the suspicions.

7. Messrs. David and Richard C. are residents of Taiwan and traveled from Taiwan to Washington, D.C., to give live testimony in the form of an oral interrogation by counsel for T.I.

8. Judge Lee authorized three (3) days for the taking of the testimony of Messrs. David and Richard C., from February 24 through February 26, 1999.

9. The live testimony of Messrs. David and Richard C. commenced on February 24, 1999, and was completed at 2:50 PM, February 25, 1999.

10. At no time between February 22, 1999, when T.I. had developed a reasonable suspicion as to the date of entry of the

6

two sketches into David C.'s 1994 Day Planner, and the end of the live testimony of Messrs. David and Richard C., on February 25, 1999, did T.I. inform R.C. or the presiding Judges McKelvey and Lee that further testing of certain entries in David C.'s 1994 Day Planner would be necessary or desired. Nor did T.I.'s counsel at any time during interrogation of the witnesses raise with either witness the possibility that an expert could contradict the testimony of David C. concerning the date the entries were made. Thus, for example, counsel for T.I. did not ask David C. During testimony:

> What would you say if I told you that an expert in forensic document analysis is of the opinion, at least preliminarily, that the entries were made on a date subsequent to the date of the page of the diary on which the entries were made?

11. It was not until March 2, 1999, after both Messrs. David and Richard C. had left Washington, D.C., and as we understand it, returned to Taiwan, that T.I. informed R.C. that it would like to further test the 1994 Day Planner of David C.

Discussion

T.I.'s delay in not raising an issue during an evidentiary hearing, if condoned, would adversely affect the administration of justice in interference cases. As is apparent on this record, T.I. has engaged in tactics which are inconsistent with the philosophy of 37 CFR § 1.601 that interferences are to be conducted in a just, speedy and inexpensive manner.

In an interference proceeding before the Patent and Trademark Office, testimony obtained in support of a preliminary motion is more than merely a discovery tool. Actually, the trial in an interference consists of a series of affidavits followed by cross-examination during a deposition. Since Richard and David C. are adverse parties to T.I., the trial consisted of testimony by David and Richard C. on direct examination by counsel for T.I. (normally a case-in-chief is by affidavit). In this case, the issue of inventorship was on "trial" insofar as the testimony of Messrs. David and Richard C. are concerned. And, while somewhat unusual in an interference case, the trial was conducted in the form of live testimony before Judges McKelvey and Lee on February 24 and 25, 1999.

In our view, it is grossly unfair, and also inexcusable, for T.I. to not request further testing of the Day Planner until subsequent to trial when the witnesses have returned to their domicile country. Had T.I. made its request sooner, the Day Planner could have been subjected to further detailed testing prior to February 26, 1999, and/or the witnesses might have postponed their departure by several days to permit a rebuttal by their own testimony, and/or R.C. might have produced their own document expert to respond to Mr. S.'s conclusions.

T.I.'s suspicion, based on a physical examination of the Day Planner by its own document expert, was known on February 22,

8

1999. Given that trial was to begin on February 24, two days later, and that the witnesses Richard C. and David C. were traveling from a foreign country and were scheduled to attend the trial only three days, it was unreasonable for T.I. to delay requesting further testing until its expert, Mr. S., has returned home and placed his opinion in writing. Mr. S.'s evaluations were already known and no significant useful purpose would have been served by waiting for the opinion to be recorded in writing.

T.I. conceivably could have thought perhaps that the testimony of Messrs. David and Richard C. would reveal that the entries for September 5, 1994, and October 20, 1994, were not entered on or about those dates. Thus, T.I. might have thought the testimony of Richard and David C. might obviate the need for further testing. T.I. assumed the risk that the testimony would not so indicate. Insomuch as T.I. did not want to "tip" its hand when obtaining the testimony of Messrs. David and Richard C. (see Paper No. 130, pgs. 6-7), it ran the litigation risk of being untimely in raising certain issues, as here. It is difficult to understand a party's holding back at trial important issues on the ground of not wanting to "tip" its hand, since the time of trial is ordinarily when all pertinent issues must be aired, if not already.

We conclude with a reference to a portion of a recent opinion of the Third Circuit, which while not involving an

9

interference, expresses our sentiments with respect to the events unfolding in this interference:

> In view of the actual knowledge Minarik possessed well before the evidentiary hearing on his first [post-conviction] petition [for habeas corpus relief under 28 U.S.C. § 2254], we conclude that Minarik had a duty to advise the Court of his new claims before the hearing. Those claims would obviously have required a second, extensive evidentiary hearing on essentially the same subject matter. Stated conversely, we hold that it was an abuse of the writ for Minarik to go forward without at least advising the Court of this withheld claim.

In re Minarik, 166 F.3d 591, 606 (3d Cir. 1999).

### Order

Upon consideration of T.I.'s motion, and for the reasons given,

It is **ORDERED** that the motion is denied.

10

It is **FURTHER ORDERED** that a copy of this precedential opinion, shall be published on the PTO Web Page, without revealing the identification of the parties, their respective counsel, and their involved cases.

<pre>
        _____
        Fred E. McKelvey, Senior      )
        Administrative Patent Judge)
                                      )
                                      )
                                      )
        _____)
        Richard E. Schafer            )
        Administrative Patent Judge)
                                      )   BOARD OF PATENT
                                      )      APPEALS
                                      )        AND
        _____)   INTERFERENCES
        Jameson Lee                   )
        Administrative Patent Judge)
                                      )
                                      )
                                      )
        _____)
        Richard Torczon               )
        Administrative Patent Judge)
</pre>

11