IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CELL GENESYS, INC., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-12448-MLW |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V. | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04 11810 MLW |
| | ) | |
| CELL GENESYS, INC. AND TRANSKARYOTIC THERAPIES, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF CELL GENESYS, INC. -
CGI'S CLAIMS 107 – 109 ARE NOT UNPATENTABLE
OVER THE "JAPAN" REFERENCE**

Responsive to the Order of August 13, 2007, Cell Genesys, Inc. ("CGI") hereby submits its Memorandum addressing the issue of whether the Board "correctly found that CGI's claims 107 – 109 are unpatentable over the 'Japan' reference. The Court's Order directs the parties to revise their earlier briefing on this subject to only include evidence presented to the Board. Evidence submitted to the Board, including the minutes of the Scientific Advisory Board of CGI held July 24 – 25, 1989, establishes without question that Arthur Skoultchi ("Skoultchi"), the CGI inventor, disclosed to others at this meeting the invention at issue – i.e., the use of homologous recombination as a technique to induce a cell of choice to express a gene not ordinarily expressed thereby.

The Board found CGI claims 107 – 109 to be unpatentable over a reference having an effective date of August 29, 1989 - Japan. This reference, Japanese Patent Publication (Kokai) 1-215280 was considered by the Board in its Decision on Motions (the "Decision"), from which both parties appeal and seek review. Both parties assign, as error, the Board's application of Japan to their respective claims. The Board's discussion of Japan appears at pages 74 -78 of the Decision, Exhibit 1 to ARS's First Amended Complaint (Docket No. 2). The Board found CGI's claims 107 – 109 to be obvious over Japan, in view of secondary references. *See* Decision, p. 88. During the interference, CGI attempted to "antedate" Japan by demonstrating possession of the invention by CGI, and its inventor, Skoultchi, prior to the effective date of Japan, which is August 29, 1989. *Id.*, p. 74. The Board specifically stated, *id.*, pp. 90 – 92, that given its benefit date of November 6, 1989, the filing date of parent application 07/432,069, CGI could "remove" Japan as a prior art reference by demonstrating prior invention. Prior invention is established pursuant to the provisions of 37 C.F.R. § 1.131. *Id.*, pp. 92-93.

Although CGI presented evidence of prior possession of the invention, relying on minutes of a meeting held at CGI in July 1989, the Board specifically concluded that the evidence presented by CGI was sufficient to describe a method requiring insertion of "a foreign DNA amplification or expression enhancer sequence into the genome of CHO cell line in operable vicinity of the target gene," but was insufficient, taken alone, to depict the insertion by, specifically, homologous recombination (Decision, pp. 100-103). Additionally, in reviewing the evidence submitted by CGI during the interference, the Board was critical of the testimony of CGI's patent attorney, Bertram Rowland ("Rowland"), because he could not recall various circumstances of the meeting of July 24 – 25, 1989, but had specific recollection of the technology involved in Skoultchi's invention. *See id.*, pp. 109 – 112.

Accordingly, CGI has previously submitted in October 2006, and relies on, the sworn testimony of Rowland, which addressed not only those minutes, but additional efforts to diligently reduce the invention to practice in the form of a patent application filed in the United States Patent and Trademark Office, from a date prior to the effective date of Japan of August 29, 1989, and continuing to the November 6, 1989 filing date.

Evidence presented to the Board demonstrates unequivocally that Skoultchi and CGI conceived of the invention at issue prior to August 29, 1989, and pursued its reduction to practice with diligence. Indeed, CGI prepared a draft patent application on the basis of the disclosure reflected in the minutes of the meeting of CGI's Scientific Advisory Board of July 24 – 25, 1989 prior to and up until the very date Japan became available, a disclosure that verifies that the July 25, 1989 presentation contemplated homologous recombination. CGI proceeded to file a patent application on the same within three months – a time frame that has been determined to be reasonable and diligent pursuant to established case law. More is unnecessary to antedate Japan

as a reference, removing it as prior art, and establishing the patentability of CGI claims 107 –
109.

## I.    **OVERVIEW**

Pursuant to regulation, and the Decision of the Board, CGI demonstrates herein that it
had possession of the invention of claims 107 – 109 prior to the effective date of Japan.  The
burden of proof, in an interference, is preponderance of the evidence.  *Bruning v. Hirose*, 161
F.3d 681 (Fed. Cir. 1998).

The Board made certain findings below.  On review pursuant to 35 U.S.C. § 146, this
Court reviews the Board's conclusions of law *de novo*, but gives deference to findings of fact of
the Board based on the evidence before it during the interference.  *Allied-Signal v. Allegheny
Ludlum Corp.*, 29 USPQ2d 1039 (D.C. Conn. 1993).  The Board specifically found that CGI was
entitled to a filing date (reduction to practice) of November 6, 1989.  As determined by the
Board (and without any challenge by the parties here), CGI is entitled to a filing date (reduction
to practice) of November 6, 1989.  Similarly, the Board made no finding that CGI was not
diligent from a time prior to August 29, 1989 to its November 6, 1989 filing. As a matter of law,
three months from disclosure to filing is diligent. As overwhelming evidence demonstrates that
the disclosure made to Rowland, and reflected in the minutes of the meeting of July 25, 1989 in
fact is addressed to homologous recombination, there is persuasive evidence that CGI conceived
on the invention of Claims 107 – 109 prior to the effective date of Japan, and reduced that
invention to practice diligently. The Board concluded itself that all other features of the invention
of Claims 107 – 109 wre discolosed in the minutes.  On this basis, the Decision should be set
aside.  *Morgan v. Daniels*, 153 U.S. 120, 124 (1894).

## II.    THE REQUIREMENTS OF ANTEDATION

Where an applicant for patent, such as CGI, has its claims rejected as unpatentable over a prior art reference that has an effective date less than a year prior to the effective filing date, in this case, November 6, 1989, that party may proceed to demonstrate possession of the invention prior to the date of the reference.  While proceeding by means of a Declaration of the inventor pursuant to 37 C.F.R. § 1.131 ("Rule 131") is one way to demonstrate such possession, the law does not limit the applicant to this practice. *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.,* 266 F.3d 1358 (Fed. Cir. 2001) and *Purdue Pharma, L.P. v. Boehringer Ingleheim GmbH,* 237 F.3d 1357, 57 USPQ2d 1647, 1651 (Fed. Cir. 2001).  Evidence that demonstrates, by a preponderance of the evidence, prior conception and diligent reduction to practice, is sufficient. To do so, the party submits sworn testimony (in *ex parte* practice, an oath or declaration, herein, a declaration or deposition transcript) to establish invention of the subject matter of the rejected claim prior to the effective date of the reference.  The sworn testimony does not need to be submitted by the inventor (contrary to the Board's discussion in the Decision at p. 95, the rule expressly permits that "When any claim of an application or a patent under reexamination is rejected, the inventor of the subject matter of the rejected claim, the owner of the patent under reexamination, or the party qualified under §§ 1.42, 1.43, or 1.47, may submit an appropriate oath or declaration to establish invention of the subject matter f the rejected claim prior to the effective date of the reference...." 37 C.F.R. § 1.131(a)). CGI is the owner of the application in question, and thus is qualified under Rule 47, by virtue of the assignment from Skoultchi to CGI.

Pursuant to subsection (b) of Rule 131, CGI may demonstrate possession of the invention by a showing of facts sufficient to establish "conception of the invention prior to the effective date of the reference coupled with due diligence prior to said date . . . to the filing of the

application." 37 C.F.R. § 1.131(b).  The regulation specifies and emphasizes the importance of "original exhibits or drawings or records, or photocopies thereof, and indicates that they must either be submitted "or their absence satisfactorily explained." *Id.*

CGI has previously submitted, and relies on, photocopies of original documents demonstrating possession of the invention prior to August 29, 1989, together with the sworn testimony of Bertram Rowland, outside patent counsel for the fledgling company that was CGI in the fall of 1989.  Two documents presented to the Board below clearly demonstrate conception of the invention.   First, the minutes of that meeting which, as discussed below, are sufficient to demonstrate conception.  Second, the draft patent application of August 29, 1989 shows that the disclosure of the minutes of the meeting of July 25, 1989 were directed to precisely the invention – the use of homologous recombination.

The burden is also on CGI to demonstrate diligence in moving from conception to the filing of a patent application directed to the invention on November 6, 1989, starting from a date just prior than the date of the reference, August 29, 1989.  CGI relies on evidence demonstrating a continual effort to prepare and file that patent application, sometimes referred to as "attorney diligence," from a time prior to August 29, 1989 until the filing date.  Such showing of diligence comports with the law and was not questioned by the Board.

## III.    THE STANDARD OF PROOF

Rule 131(a) requires demonstration of conception prior to the effective date of the reference. *In re Moore*, 444 F.2d 572, 578-579 (C.C.P.A. 1971).  To demonstrate possession of the invention in the form of a conception, the evidence must show possession of either the whole invention, or a species or embodiment within the invention such that the claim as a whole reads on it. *In re Tanczyn*, 347 F.2d 830 (C.C.P.A. 1965).  What must be shown is possession of the

basic inventive concept. *In re Spiller*, 500 F.2d 1170 (C.C.P.A. 1974). The law also provides

that in the situation where a genus is claimed, such as claims 107 – 109 of CGI, the showing may

be sufficient upon the demonstration of possession of a single species within that genus. *Ex*

*parte Biesecker*, 144 USPQ 129 (POBA 1964). Testimony adduced in an interference may be

used in lieu of the Declarations called for by Rule 131 (Manual of Patent Examining Procedure

715.07(b)).

Where one proceeds to antedate a reference, as opposed to proving priority of invention

over another party, corroboration is not required. *Leveen v. Edwards*, 57 USPQ2d 1416

(B.P.A.I. 2000) ("Rule 131 showings do not need corroboration. In this respect, a showing under

Rule 131 may be viewed as easier than a showing for priority." 57 USPQ2d at 1421). This

distinction was discussed at length in *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 266

F.3d 1358, 1366 (Fed. Cir. 2001) (Concurrence: *The evidentiary standard for antedating a*

*reference is not the same as the PTO requirement for establishing priority in an interference*

*contest. Inventor's affidavits have always been admissible to antedate a reference*).

Accordingly, no showing of corroboration is required.

In reviewing the Decision, since the Court has elected at this stage not to consider new

evidence (but may consider live testimony at a subsequent date), the Board's findings on

questions of law are reviewed *de novo*. Its findings of fact are reviewed for substantial evidence.

The sole finding of the Board challenged herein is that CGI did not adduce evidence of a full

conception of the invention prior to August 29, 1989. Conception is a question of law, and thus,

the Board's finding is reviewed herein *de novo*. *Singh v. Brake*, 222 F.3d 1362, 55 USPQ2d

1673, 1677 (Fed. Cir. 2000); *Eaton v. Evans*, 204 F.3d 1094, 1097, 53 USPQ2d 1696, 1698 (Fed.

Cir. 2000); *Kridl v. McCormick*, 105 F.3d 1446, 41 USPQ2d 1686, 1689 (Fed. Cir. 1997); *Bosies*

*v. Benedict* , 27 F.3d 539, 542, 30 USPQ2d 1862, 1864 (Fed. Cir. 1994).

## IV.    SKOULTCHI CONCEIVED OF THE INVENTION OF CLAIMS 107 – 109 PRIOR TO AUGUST 29, 1989

CGI submits that Skoultchi conceived of the invention assigned to CGI and addressed in

Claims 107 – 109 prior to August 29, 1989.  The definition of conception remains much the

same as set forth in *Mergenthaler v. Schudder*, 11 App. D.C. 264, 1897 CD 724, quoted with

approval in *Kridl v. McCormick*, 105 F.3d 1446, 1447 (Fed. Cir. 1997).  The conception is "the

formation in the mind of the inventor of a definite and permanent idea of the complete and

operative invention as it is thereafter to be applied in practice."  A conception is "a specific,

settled idea, a particular solution to a problem at hand."  *Hitzeman v. Rutter*, 243 F.3d 1345, 58

USPQ2d 1161, 1168 (Fed. Cir. 2001).  To be complete, the conception must include a specific

utility.  *Bey v. Kollonitsch*, 215 USPQ 454 (B.P.A.I. 1981).

### A.    Construction of Claims 107 – 109

The Board construed claims 107 – 109 in its Decision.  That determination is entitled to

deference on review, and CGI does not challenge it herein.  The Board specifically found that

these claims require the following elements:

> 1)  Insertion of a DNA construct by homologous recombination into the genome of a mammalian cell in proximity to a target gene within that genome.  The purpose of insertion is "to stimulate or enhance expression of the target gene."

> 2)  The target gene is either a protein not normally expressed in the cell (claims 107 and 109) or a protein normally expressed in the cell (claim 108).

> 3)  The DNA construct comprises either an amplifiable gene, a regulatory sequence, or both.

> 4) The DNA construct also includes DNA homologous with DNA
> in a region of the genome in proximity to the target gene (referred to
> as a targeting sequence or region).

It is worth noting that the Board below specifically found these claims to be directed to the same

invention as the principal Claim 3 of ARS, and notwithstanding the challenge of ARS that the

claims were neither described nor enabled, the Board did not adopt these arguments.

### B.    <u>Evidence Relied Upon</u>

As noted above, Rule 131 stresses the importance of documentation.  Accordingly, the

discussion of evidence of conception of the subject matter of claims 107 – 109 by CGI prior to

August 29, 1989 centers around a fundamental document:  the minutes of the meeting of the

Scientific Advisory Board where CGI's management and founders gathered to identify the

technology that would carry the company forward.  These minutes reflect the disclosure of

Skoultchi (Art) of his invention to both the Scientific Advisory Board and to CGI's outside

patent counsel, Rowland, who was invited to the morning of the second day of the July 24-25,

1989 meeting specifically to learn of Skoultchi and CGI's invention.  Thus, on July 25,1989

Rowland attended the meeting along with CGI's founders and administrators, including CEO

Mark Levin and his assistants Savage and Thompson, where Skoultchi gave a formal

presentation of his invention to the Company.  Just a month later, on August 29, 1989, a first

draft of the patent application directed to Skoultchi's invention, based on the disclosure of July

24 – 25, 1989, was completed.  As the meeting minutes and the draft patent application have

independent significance, they are each discussed separately below, together with the testimony

of Rowland.  What is critical to remember, however, is that a determination of conception, and

diligence, is made pursuant to a "rule of reason," or in other words, by asking whether it is more

likely than not that Skoultchi conceived of the invention no later than July 25, 1989.  This rule of

reason does not look at each item of proof separately, but rather, is in light of the evidence as a whole. *Singh v. Brake, supra.*

**C.    The Minutes from the Scientific Advisory Board Meeting of July 24-25, 1989 Establish CGI's Possession of the Invention On That Date**

Document bates labeled CGI 3224 – 3234 and Exhibit A to Exhibit 2054 in Interference 105,114 reflect the actual minutes of the Scientific Advisory Board (SAB) Meeting held July 24 and 25, 1989, at the Mayfield Fund. The Board was critical of this document, and in particular, the drawing reflecting Skoultchi's presentation at CGI 3231, which is referenced by the title "Art." (Decision, p. 95, *et seq.*). The drawing at CGI 3231 unquestionably describes the insertion of a construct into the genome of a cell, the construct including the DHFR amplifiable gene, which may include an enhancer regulatory segment ("for ↑ expression"), to be inserted either "upstream or downstream from the TPA gene" (also indicated by arrows drawn to the left or right of the TPA gene), which is the same description in the constructive reduction to practice filed by CGI on November 6, 1989. The process was specifically described as one for improving "protein production in mammalian cells without cloning of the TPA gene." Thus, without more, items 2 – 4 of the Board's construction of the invention of Claims 107 –are clearly made out by the minutes. Rowland testified, and the remaining evidence makes it clear, that this was to be achieved, per Skloultchi, through homologous recombination, the final element of the invention, which of course is clear from the written requirement of the minutes: "Need to know upstream or downstream sequences" which is true only for homologous recombination.

Rowland specifically recalled the meeting and Skoultchi's presentation. Rowland was only there on July 25, 1989 to hear Skoultchi's presentation, Exhibit 2054, ¶2. The first day of the meeting is reflected in the first six pages of the minutes. It is only on the second day, immediately in connection with Skoultchi's (Art's) presentation that Rowland is shown as

present. He did not come for the rest of the presentation, which occurred on July 24, 1989 and

after Skoultchi's presentation on July 25, 1989. Thus, answering the Board's criticism in the

Decision, pp. 109 – 111, Rowland's name does not appear in connection with any other subject

matter, as he was not part of the SAB, but rather was CGI's outside patent counsel. Exhibit

2054, ¶ 1. He came for Skoultchi's presentation and matters related to it only, so that a patent

application could be prepared. Rowland Declaration, Exhibit 2054, ¶ 2. Rowland felt that the

presentation was absolutely clear when presented, and it was absolutely clear that it would work.

Rowland transcript, Exhibit 2025 in Interference 105,114, pp. 34 – 35. He simply was not there

for a discussion of the names he could not remember.

The minutes of the Scientific Advisory Board, and their content relative to Skoultchi's

invention, satisfies the legal requirements not only for demonstration of conception of the

invention (it reflects each and every element of the invention of Claims 107 – 109), but also the

CGI determination to proceed to the filing of a patent application directed to this invention. As

discussed above, Rule 131 specifically provides that a reference may be antedated, that is,

removed as prior art, by showing (1) conception of the invention at a time prior to the effective

date of the prior art, and (2) diligence from a time prior to the effective date of the prior art,

Japan, to a patent application filing directed to the invention. Not only do the minutes of the

Scientific Advisory Board's meeting reflect conception of the invention, but it also demonstrates

CGI's determination to move forward with a patent application directed thereto - this is why

Rowland, the patent attorney, was present at the meeting. More is not required by Rule 131,

provided that CGI did not subsequently abandon or cease work on the invention, thereby

interrupting diligence. In the three months between the directive to Rowland to prepare an

application based on the presentation by Skoultchi on July 25, 1989, CGI continuously moved

forward with the invention, as reflected by Exhibits C, D and E of Rowland's Declaration submitted to the Board, billing records showing work conducted on the application from a time prior to August 29, 1989 (Exhibit C, p. 3), during Spetember (Exhibit D p. 2) and October – November (Exhibit E, p. 3).

The draft patent application that is Exhibit B to the Rowland Declaration marks both the clear possession of the invention of Claims 107 - 109 and the determination of CGI to protect it through intellectual property. One can demonstrate reduction to practice by showing the preparation of a patent application directed to that invention. The draft application was prepared in one month and was forwarded to the inventor for comment and revision. These are the hallmarks of conception followed by diligent reduction to practice, the only requirements to antedating Japan as a reference. *Rines v. Morgan*, 250 F.2d 365 (C.C.P.A. 1957).

There can be no question that this document, which closely resembles the November 6, 1989 patent application filing, reflects Skoultchi's conception and possession of the invention prior to August 29, 1989. While the actual draft is also dated August 29, 1989, it was prepared by Rowland, on the basis of the information provided him on July 24, and 25, 1989, detailed above. The conception is Skoultchi's. For the application to have been prepared on August 29, 1989, it had to be transmitted to Rowland earlier. The draft patent application clearly reflects the four elements of claims 107 – 109 identified by the Board. Thus, the third page of this draft, under "description of specific embodiments," specifically notes "the method employs homologous recombination in a primary host cell for integrating an amplifying gene in the vicinity of the target gene, which target gene encodes the protein of interest." A wide variety of representative cells are set forth on the fourth page, lines 11 – 28. The application specifically notes, as observed by the Board that "these cells may or may not be expressing the gene of

interest" (emphasis supplied). The application then goes on, on the same page beginning at line 29, to describe the use of amplifiable marker genes, specifically identifying DHFR as a suitable amplifiable gene. Note that the use of these amplifiable genes as a marker is described on the following page 4, lines 1 – 3. Representative target genes, including tPA and EPO, are identified on the 5th page of the application, lines 4 – 15.

The remaining requirements of claims 107 – 109 pertain to the nature of the DNA constructs, which are also described beginning at page 5. The fourth requirement of the claims identified by the Board is that the constructs used to insert the amplifiable gene or regulatory sequence through homologous recombination have DNA homologous with the DNA of the target region, which is specifically set forth on page 5, lines 17 – 20. This subject matter is discussed onto the next page.

In addition to the amplifiable gene, the Board observed that claims 107 – 109 may embrace the insertion of a regulatory sequence. The draft application clearly describes the same, noting, at page 6, lines 34 and following, that "in some instances, one may wish to introduce an enhancer in relation to the transcriptional initiation origin, which can be provided by, for example, integration of the amplifying gene associated with the enhancer in a region upstream" from the target gene. Similarly, at page 6, the draft application provides the teaching to use homologous recombination to change the expression of a native gene by inserting sequences to change transcriptional regulation (i.e., gene expression). The application draft as completed on August 29, 1989, reflects information transferred to Rowland by Skoultchi in advance of August 29, 1989. Unquestionably, in order to arrive at the draft patent application of August 29, 1989, Skoultchi and CGI had to have possession of the conception of that invention earlier, that is, at the time the information was provided to Rowland, July 25, 1989.

### V.     CGI WAS DILIGENT IN MOVING FROM SKOULTCHI'S CONCEPTION TO A PATENT APPLICATION FILING FROM PRIOR TO AUGUST 29, 1989

The second element of proof under Rule 131 is a showing of "diligence" in moving from the conception of the invention to a filing of a patent application directed to that invention. Unlike conception, which is frequently reflected in a single document or exchange, diligence, as a matter for antedating under Rule 131, connotes action over time. The inquiry on diligence is whether CGI reasonably pursued the subject matter of Claims 107 - 109, conceived of no later than August 28, 1989, to the patent application filed on November 6, 1989. The diligence need not stretch back all the way to the first conception, but rather, must have been from a time just prior to the effective date of the reference, August 29, 1989.

Although diligence is a concept common to Rule 131 and interference practice, adequate diligence is measured according to two different standards. *In re Eickmeyer*, 602 F.2d 974, 979 – 80 (C.C.P.A. 1979) where the Court specifically noted that the proof submitted pursuant to Rule 131 are not the same as proofs of priority in an interference. The standards for finding conception and diligence are less rigorous in a Rule 131 setting. *See In re Moore*, 444 F.2d 572, 578 – 579 (C.C.P.A. 1971) (the Court observed that the parallel of the terms of Rule 131 and the interference with respect to conception, reduction to practice and diligence, is one of convenience rather than necessity). In the context of a Rule 131 showing, diligence is demonstrated by evidence which supports the conclusion that the company at no time ceased to direct itself to the invention and that it remained a goal of the company. *Moore, supra.* Accordingly, the diligence of CGI over time is reviewed herein, rather than in separate appendices, as was appropriate for evidence of conception.

-13-

When the decision was made to go forward with a patent application on July 25, 1989, the first draft was prepared and sent to the inventor for comment, which draft was returned, followed by a second rendering and filing, over a period of three months. This is a classic timeline demonstrating diligence. That this three-month period during which preparation, revision and filing of an application is sufficient to constitute reasonable diligence, is echoed in the decision of *Shindelar v. Holdeman*, 628 F.2d 1337 (C.C.P.A. 1980). The Court specifically found that a three-month period from disclosure to filing was reasonable. *Id.* at 1342. This is exactly the same time period that elapsed from the communication of Skoultchi's invention to Rowland at the very end of July, 1989 to the filing, three months later at the beginning of November. As a legal proposition, CGI was, per se, diligent.

CGI's proof begins with the attendance, by Rowland, at that part of the SAB meeting where Skoultchi presented his idea. That meeting concluded with the instruction to Rowland on July 25, 1989, prior to the effective date of Japan, to prepare a patent application. Exhibit 2054, ¶ 2. (*A decision was made to move forward and file a patent application on two alternative forms of the idea of Skoultchi, including expressing a gene in the cells that had received the amplifiable gene through homologous recombination and the transfer of the amplified gene to secondary expression host cells and expressing the amplified gene in such secondary host cells* ). Rowland had the disclosure, both from Skoultchi's presentation to the meeting of the Scientific Advisory Board, and Skoultchi's conversation with Rowland that day.

Thus, the first draft was prepared by Rowland throughout the month following the SAB meeting, and completed and sent on the very date that Japan became available, and is evidence of diligence throughout the period prior to the effective date of Japan, to the filing date of November 6, 1989. This is confirmed by Exhibit C to Exhibit 2054, which is an invoice

reflecting Rowland's activities in drafting the patent application as early as August 25, and again on August 29, 1989. Clearly, from a time prior to the effective date of Japan, CGI's patent attorney was drafting the patent application in question.

It is important to note that the draft application was marked up subsequent to its compilation date of August 29, 1989, and returned to Rowland for preparation of a final draft. Note the markings in handwriting on the draft patent application (Exhibit B to Exhibit 2054) and Rowland's own testimony. (*I reviewed and revised the application, I spoke with inventor Skoultchi by telephone, and filed the application on November 6, 1989*). *See* Exhibit 2054, Rowland's Declaration, ¶ 5. Accordingly, it is clear that from a time prior to August 29, 1989, in a continuous and routine fashion extending through to the filing date of November 6, 1989, CGI was diligent in pursuing the constructive reduction to practice, the filing of the application, which is all that is required by Rule 131. The diligence requirement of 131, like the conception requirement, is satisfied by the testimony and exhibits relied on herein. Indeed, Rowland testified that he continuously prepared and filed the application in question, from its disclosure to him at the end of July 1989, to its filing in the beginning of November 1989 in accordance with his "normal business practice, taking the case up in its normal order." Exhibit 2054, ¶5. "The exhibits reflect a progression of about three months from identification of invention to filing of a patent application directed thereto, which is consistent with my memory of my general working practices at that time period." Declaration of Rowland, Exhibit 2054, ¶ 5. This led Rowland to conclude that: "I worked on the application with due diligence and attention, to the best of my recollection." Exhibit 2054, ¶ 5.

## VI.    THE BOARD'S CRITICISM OF CGI'S SHOWING OF CONCEPTION WAS IN ERROR

As noted above, the Board accepted November 6, 1989 as the filing date of a constructive reduction to practice of the invention of Claims 107 – 109 (if not, CGI could not have antedated Japan). Moreover, the Board also did not take issue with the CGI evidence of diligence from a date prior to the effective date of Japan to that reduction to practice. Indeed, CGI presents a classic three-month case of "attorney diligence." What the Board took issue with, however, was one aspect of the minutes of the SAB meeting of July 24 – 25, 1989, and Rowland's credibility. Neither criticism is well founded.

Initially, the Board found nothing to link the discussion in the minutes of the disclosure of Skoultchi's idea to homologous recombination. It specifically rejected the argument that the indication, in the description of that invention that one needed to know the upstream/downstream sequences of the (tPA) target indicated the method contemplated was homologous recombination. Decision, pp. 97 – 103. The Board rejected this argument notwithstanding that it did not rely on any testimony, but rather based on its own understanding of what is conveyed in a textbook. Although the text of Randall Kaufman is quoted at length on pages 102 – 103 of the Decision, no part of that quote discusses when the sequence of the gene target (upstream and downstream) need to be known. The Board substituted its own expertise and understanding for those of skill in the art. The Court of Appeals for the Federal Circuit has previously noted that this is not in accordance with the APA, and rejects such findings. *Brand v. Miller*, 487 F.3d 862, 82 USPQ2d 1705, 1707 (Fed. Cir. 2007). Instead, the Board should have taken heed of the author's own testimony. Kaufman appeared as an expert for ARS below, and his deposition, Exhibit 2056, was of record below, and is herein. (Deposition of September 30, 2003).

Q: What did you need to know to prepare the DNA that would be used to effect homologous recombination?

**A: Well, you'd want to know where you wanted to recombine the DNA, so you'd want to know the sequence target. ...**

Q: You said you want to know the sequence target, the DNA sequence target. What do you mean by the sequence target?

**A: If the intent was to put in a particular piece of DNA into the genome at a particular site, then you would want to know the sequence of that site.**

Q: And is it correct that that's one of the virtues of homologous recombination, that you can target the DNA that you want to introduce into a particular site?

**A: That's the definition of homologous recombination is that it's a site-specific integration, yeah.**

Exhibit 2056, pp. 8 – 9. Unquestionably, the author recognized by the Board for his expertise linked homologous recombination as a method of inserting DNA with the requirement that you know the target sequence, that is, the site of insertion and the sequences upstream and downstream. This is the link that the Board was looking for was in the record. *See also* Exhibit 2056, p. 73. (*Q: So because homologous recombination is used you don't need to isolate the gene, is that right? A: Other than the fact that knowing the sequence boundaries of the gene, you only need to – you don't need to have to isolate the gene intact*). Again and again, expert Kaufman testified that homologous recombination was distinguished from other methods of gene insertion by the requirement of knowing the sequence of the gene as well as upstream or downstream of that gene, the target sequence. This is precisely what Skoultchi disclosed on July 25, 1989.

The Board also ignored Rowland's own testimony. Rowland specifically testified that the patent application he completed drafting on August 29, 1989 was based on the disclosure provided to him on July 25, 1989. Exhibit 2054, ¶ 3. The draft, prepared throughout August, 1989, is unquestionably directed to homologous recombination, the practice Rowland learned of from Skoultchi, and prepared as a patent application draft. (*See* Summary of the Invention, page 3 of Exhibit B to Rowland's Declaration, line 13 – 14. *Expression of mammalian proteins of*

*interest is achieved by employing homologous recombination...*). If Exhibit B is the application Rowland prepared on the basis of Skoultchi's disclosure, and Rowland testifies that it is, and his billing records confirm this, then Skoultchi's disclosure, as its own text reveals, was directed to the use of homologous recombination. As it includes all the elements of the claims as recognized by the Board, it establishes conception of the invention by Skoultchi and CGI no later than July 25, 1989.

The Board was also critical of Rowland because he did not remember much of the meeting, or many of the names reflected on the minutes. Decision pp. 109 – 10. The reason for Roland's lack of memory on this issue is simple: He <u>only</u> came to the meeting to hear Skoultchi, and get instruction with respect to Skoultchi's idea from CGI to prepare a patent application. Moreover, <u>he was not there on the July 24, when many of the names the Board insists he should have recognized were reflected in the minutes.</u> Decision, pp. 109 – 110. The Board took Rowland to task for not knowing the names Nussenblatt, Tom Wakeman and Ron Worton, and for not knowing the source of the notes. Simple inspection of the Minutes, Exhibit A to Exhibit 2054, shows that the names Nussenblatt (pages 1-3) Wakeman (fourth page) and Ron Worton (6th page) were all discussed on July 24th (as shown, notes for the 25th begin on the 7th page of the minutes). The Board was simply wrong, given that there is no substantial evidence that suggests that Rowland would have, or should have, known these names, since they were candidates discussed at CGI when Rowland was not present.

What <u>is</u> telling are the names that Rowland recognized. In addition to Skoultchi (Exhibit 2055, transcript of Rowland's deposition, p. 9), he knew Raju Kucherlapati (p. 12), Oliver Smithies (p. 13), Kurt Wheeler (p. 16), the venture capital firm that housed and birthed CGI – the Mayfield Fund (page 16), and that he was not the author of the minutes (p. 16 – of course not, he

was not there for most of the meeting). In short, Rowland knew that which one would have expected him to know – the scientists and proponents of his client, CGI, and the projects he was working on for them. Not remembering the names of potential candidates he had never heard of is hardly a criticism sufficient to doubt his testimony that once Skoultchi told Rowland of Skoutchi's idea, "it was so clear it would work."

## VII.    CONCLUSION

In order to antedate Japan, CGI must show conception of the invention of Claims 107 - 109, with respect to at least one species, before August 29, 1989. The minutes of the CGI Scientific Advisory Board meeting of July 25, 1989 illustrate that invention, both by sketch and in words. No less an authority than Randall Kaufman testified repeatedly that the indication, on the minutes, that you needed to know the target sequence (target gene and upstream/downstream sequences) linked it specifically to homologous recombination. In any event, Rowland's own testimony, and the patent application draft from August, 1989 based on Skoultchi's disclosure, specifically identifies the invention as one using homologous recombination – the Board's only criticism of that showing.

Moreover, the Board's dismissal of Rowland's testimony because he did not know the names of some people discussed at a meeting he was not present for (July 24, 1989) and for minutes that he did not author, is simply unsupportable. Rowland was CGI's outside patent counsel, not a member of the Scientific Advisory Board. He came for that part of the meeting he was specifically invited for – to hear Skoultchi's presentation, in order to prepare a patent application on it. It is simply unreasonable to discount his clear testimony – that he heard Skoultchi's presentation, understood it completely to be directed to homologous recombination to increase expression of a gene, recognized it would work, and set about drafting a patent

application to it in August (including at least one revision on August 25, 1989) – simply because he was unaware of the names of certain candidates discussed out of his presence and never a part of CGI.

The Board had no issues with CGI's showing of diligence, and conclusively found a reduction to practice on November 6, 1989. With respect to diligence, the burden is a preponderance of the evidence. The case law specifically observes that a three-month period from disclosure to filing of a patent application, accompanied by continuous activity as shown herein, is the measure of diligence. There is <u>no</u> evidence suggesting that CGI ever walked away or abandoned the invention – not for one day. The evidence makes out clear diligence.

In view of all the foregoing, judgment to the effect that CGI claims 107 – 109 are not rendered unpatentable by Japan is respectfully requested.

Respectfully submitted,

CELL GENESYS, INC.

By its attorneys,

/s/ Steven B. Kelber
Steven B. Kelber
Jagtiani + Guttag
10363-A Democracy Lane
Fairfax, Virginia 22030
Telephone (703)-593-2011

T. Christopher Donnelly (BBO #129930)
Jill Brenner Meixel (BBO #652501)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
Telephone: (617) 720-2880

Dated: October 1, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 1, 2007.

/s/ Jill Brenner Meixel
Jill Brenner Meixel