IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CELL GENESYS, INC., ) | |
| ) | |
| Plaintiff/Counterdefendant, ) | |
| ) | |
| v. ) | C.A. No. 05-12448-MLW |
| ) | |
| APPLIED RESEARCH SYSTEMS ARS ) | |
| HOLDING, N.V. ) | |
| ) | |
| Defendant/Counterclaimant. ) | |
| ) | |
| APPLIED RESEARCH SYSTEMS ARS ) | |
| HOLDING, N.V., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04 11810 MLW |
| ) | |
| CELL GENESYS, INC. AND ) | |
| TRANSKARYOTIC THERAPIES, INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF CELL GENESYS, INC. -
THERE IS INTERFERENCE-IN-FACT BETWEEN CLAIM 106 OF
CELL GENESYS AND ARS CLAIM 24**

In its Order of August 13, 2007, the Court directed that Cell Genesys present a revised Memorandum on the question of whether CGI claim 106 interfered-in-fact with ARS claim 24, or any other ARS claim that the Board did not find unpatentable. Specifically, the Court sought revised briefing on the issue of whether the Board correctly held that there is no interference-in-fact between CGI claim 106 and any of ARS's twenty-one claims that the Board found patentable. The Court expressly indicated that CGI should only include evidence that was previously presented to the Board.

1

CGI presents this Memorandum in satisfaction of the Court's Order. CGI respectfully submits that there is an interference-in-fact between its claim 106 and ARS claim 24, and that accordingly, the Board erred in its Decision. CGI further notes that during the Interference, ARS Motion 12 specifically argued that CGI claim 106 and ARS claim 24 define the same patentable invention, and so should correspond to the same proposed Count A-4. That is, they are in interference, in fact. The Board did not reach that Motion.

The Board reached a determination of no interference-in-fact *sua sponte*. See Decision on motions in Interference 105,114, Exhibit 1 to the ARS First Amended Complaint (Docket No. 2), pages 126 – 132 ("Decision"). Neither party moved, at any time, for judgment that there was no interference-in-fact between the claims of the two parties. Indeed, the interference was declared in 1997, as Interference 103,737 and at no time in the seven years of the pendency of the Interference before the Board, did either party, or the Board, ever suggest there could be a finding of no interference-in-fact, until the Board's Decision in June, 2004. It is, therefore, hardly surprising that the Board observed:

> There being no persuasive evidence or argument to the contrary, we conclude that there is no interference-in-fact between the subject matter claimed in ARS's '071 patent which stands patentable to ARS over prior art teachings of record and the subject matter claimed in Genesys's application 08/102,390 which stands patentable to Genesys over prior art teachings of record. Decision, page 132.

How could there be, when neither party, nor the Board, previously, had briefed, or so much as whispered, a finding of no interference-in-fact could be arrived at?

Accordingly, there are no findings of fact, no conclusions of law and indeed no briefing, on the basis of which one might evaluate the Board's conclusion. This Court

2

reviews that conclusion of law *de novo*. In particular, the Board did not, as it should have, compare CGI claim 106 with ARS claim 24. As these claims clearly interfere-in-fact, the Board's Decision was in error.

I. **THE ISSUE IS MOOT, AND DOES NOT RESOLVE ANY OTHER ISSUES BEFORE THIS COURT**

CGI has, contemporaneous with the filing of this Memorandum, filed a memorandum demonstrating that CGI's claims 107 – 109 are not unpatentable over Japan, as was found, erroneously, by the Board. CGI has demonstrated conception of the subject matter of its claims 107 – 109 prior to the effective date of the reference "Japan," August 29, 1989, coupled with diligence to a constructive reduction to practice, or application filing, three months later, on November 6, 1989. Accordingly, Japan is not "prior art" to CGI (it is with respect to ARS, whose application is a year later in time) and cannot be otherwise applied to render CGI claims 107 - 109 unpatentable. As the Board identifies no other grounds for unpatentability of claims 107 – 109, they are patentable to CGI. The Board specifically found that these claims 107 -109 are directed to the "same patentable invention as claims 3, 37 and 46 of ARS's '071 patent." Decision, page 132. Accordingly, the issue of interference-in-fact between Claim 24 and Claim 106 is moot.

Besides being moot, it is not apparent that the Court's determination, on this subject that is reviewed on a completely *de novo* basis, has any bearing on any other issue advanced. The interference, as originally declared, was properly declared – that is there was an interference-in-fact. Both parties seek review, and modification, of the decisions of the Board as to other aspects, on claims that admittedly interfere-in-fact. This Court does not require a continued presence of interference-in-fact between claim 106 of CGI, and claim 24 of ARS, where there was originally a proper interference-in-fact.

3

Resolution of the issues mistakenly decided by the Board proceeds in this Court, whether or not those few claims the Board adjudged to survive do, in fact, interfere.

## II. APPLICABLE STANDARD

In an action pursuant to 35 U.S.C. § 146, the Court reviews the Board's conclusions of law *de novo*, but gives deference to findings of fact of the Board based on the evidence before it during the Interference. *Allied-Signal v. Allegheny Ludlum Corp.*, 29 USPQ2d 1039, 1042 (D.C. Conn. 1993). As noted above, the Board's Decision held that there was no evidence before it directed to the question of interference-in-fact, because neither the Board nor either party had ever considered the possibility of no interference-in-fact, before the Board's Decision on motions in June, 2004. This is so notwithstanding the seven year pendency of the Interference. In particular, the Board did not consider whether modification of CGI Claim 106 to include a selectable, amplifiable gene – which gives rise to ARS Claim 24 -- would have been obvious. With respect to the evidence advanced herewith, and the evidence identified by CGI as a proffer for the resolution of the question of interference-in-fact, this Court's findings are exclusively and completely *de novo*. With regard to the central and critical to the issue of interference in fact, the specific question of the obviousness of including a selectable amplifiable gene in the cell modified by homologous recombination according to CGI Claim 106, this Court's findings are exclusively and completely *de novo*. Other findings by the Board, which bear on the question of <u>interference-in-fact</u>, are entitled to deference. (CGI is unaware of same, but such may exist in the record below).

The Board's Decision, pp. 126-127, correctly notes that, under the rules governing this dispute, an interference-in-fact exists when at least one claim (CGI claim

4

106) that is designated to correspond to a count and at least one claim of an opponent (ARS claim 24) that is designated to correspond to the count define the same patentable invention. The Board then refers to 37 C.F.R. § 1.601(n) for the definition of "same patentable invention." Pursuant to that regulation, invention A (ARS claim 24) is the same patentable invention as invention B (CGI claim 106) when claim 24 is the same as, 35 U.S.C. § 102a, <u>or is obvious</u> (35 U.S.C. § 103) in view of CGI claim 106, assuming claim 106 is prior art with respect to invention A. *See* Decision, p. 127. Although not expressly recited in the Board's expression of the test, this is a two-way test for obviousness - *Eli Lilly & Co. v. Board of Regents of the Univ. of Washington*, 334 F.3d 1264, 1265 (Fed. Cir. 2003). The Board's error in failing to request or consider evidence and arguments directed to this fundamental test is highlighted by its conclusion at pages 127 - 128 indicating its basis for concluding there is no interference-in-fact. The Board's conclusion rests on the absence of recitation in claim 106 that the "DNA construct comprise an expressible amplifiable gene." In the Board's words:

> It is sufficient to note that the genome of the human 293 embryonal kidney cell of claim 106 of Genesys's application 08/102,390 need not have inserted therein any expressible, amplifiable gene capable of amplifying the silent human erythropoietin gene in a human 293 embryonal kidney cell when inserted in sufficiently close proximity thereto.

The Board failed to consider whether or not the insertion of an amplifiable gene into the 293 cell line of CGI claim 106, which the Board concedes comprises a silent erythropoietin (EPO) gene, would have been obvious, as of November 6, 1989. This is the fundamental question presented to this Court.

5

### III. THE CLAIMS RECITE MANY OF THE SAME ELEMENTS

CGI Claim 106 is an independent claim. It does not depend on, or incorporate the limitations of, any other claim. In contrast, ARS Claim 24 depends from a claim that depends from another claim that depends from an independent claim. Such claims are interpreted as including all the limitations of the claims from which they depend. 35 U.S.C. § 112, ¶ 4; *Bloom Eng'g Co. v. North Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997). It is convenient to compare the two claims side by side, including all the recitations of the claims from which Claim 24 depends, to determine what elements overlap, and where there are differences. This can be presented as follows:

| ARS Claim 24 | CGI Claim 106 |
| --- | --- |
| 24. A cell line capable of expressing a gene product by a predetermined normally transcriptionally silent gene within the genome of said cell line, | 106. A human 293 embryonal kidney cell, |
| said genome having inserted therein a DNA regulatory segment operatively linked with said normally transcriptionally silent gene, said DNA regulatory segment being capable of promoting the expression of a gene product by said cell line, wherein the inserted DNA regulatory segment is part of a DNA construct comprising said DNA regulatory segment and at least one selectable marker gene, wherein said DNA construct comprises an amplifiable gene. | Wherein the genome of the cell has inserted therein an enhancer and promoter of cytomegalovirus operatively linked with the human erythropoietin gene,

So that the cell expresses human erythropoietin. |

Compared in this fashion, the similarities in the two claims are abundant. ARS claim 24 calls for a cell line, which includes mammalian cells such as human embryonal kidney cells. The Board so held, noting that the term "cell line" in the ARS claims "means nothing more than a cell culture derived from a single cell." Decision, p. 21.

Claim 24 further requires that the cell expresses a gene product encoded "by a predetermined normally transcriptionally silent gene" in the genome of the cell line. As noted above, the Board's Decision specifically observes that the erythropoietin gene of the cell line of Claim 106 is normally silent in human 293 embryonal kidney cells. So, as to this first and second requirement of ARS Claim 24, CGI claim 106 recites the same feature or patentable aspects. **(A cell with a transcriptionally silent gene).**

The third requirement of Claim 24 is also reflected in Claim 106. That is that the cell have inserted in its genome a regulatory segment operatively connected with the silent gene, such as erythropoietin. Claim 106 again satisfies this requirement, noting that cytomegalovirus ("CMV") enhancer and promoter are operatively linked with the silent erythropoietin gene. The CMV promoter and enhancer are a regulatory segment. The ARS involved patent, USP 5,272,071 defines enhancer/promoter sequences as regulatory elements. Col., 5, ll. 56 - 57. Thus, both CGI and ARS claims recite this third element in the same terms. **(Insertion of a regulatory segment operatively linked to the silent gene).**

We have, accordingly, looked at three limitations common to both ARS Claim 24, and CGI Claim 106: **(1)** cell line, **(2)** normally transcriptionally silent gene, and **(3)** insertion of a regulatory segment operatively connected with the silent gene. Claim 106 anticipates, or is the same as, Claim 24 of ARS, with respect to the cell line specified, the expression of a transcriptionally silent gene, and the provision of a regulatory segment operatively associated with the normally silent gene. As to these limitations, CGI Claim 106 anticipates ARS Claim 24, and so there is interference-in-fact there between. That

7

which anticipates a claim necessarily renders the same obvious. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983).

### IV. CLAIM 106 RENDERS CLAIM 24 OBVIOUS, AND VICE VERSA

ARS Claim 24 recites an additional limitation - that the inserted sequence (the construct that has the regulatory sequence on it) also includes a selectable marker, wherein the inserted DNA comprises an amplifiable gene. As noted above, the awkward construction is due to the fact that ARS Claim 24 depends from a claim which depends from a claim which depends from a claim. (Claim 24 depends from Claim 23 which depends from Claim 22 which depends from Claim 18). The claim requires the presence of a selectable marker and requires that the inserted sequence have an amplifiable gene. The '071 patent specifically notes that the amplifiable gene and the selectable marker may be the same, Col. 11, ll. 5 -9.

Claim 106 does not specifically recite the presence of an amplifiable gene or selectable marker. It cannot, accordingly, anticipate Claim 24. Anticipation is not required for interference-in-fact, however - it is enough that Claim 106 renders Claim 24 obvious, when taken as prior art to Claim 24. The question that this Court must resolve *de novo* is whether it would be an obvious modification of Claim 106 to supply a selectable amplifiable gene to the material inserted along with the regulatory segment? CGI respectfully submits that abundant evidence confirms this is the case.

### V. ARS IS ESTOPPED FROM ARGUING THAT CGI CLAIM 106 AND ARS CLAIM 24 DO NOT INTERFERE-IN-FACT

CGI begins with the proposition that ARS is *estopped* from arguing that Claims 106 and 24 do not interfere-in-fact. During Interference 105,114, ARS moved for judgment that Claims 18 and 22 – 24 of ARS, among others, be designated as

8

corresponding to the same Count as CGI claims 106 and 111, among others. ARS Motion 12. Specifically, ARS told the Board that if CGI claim 106 was found patentable (it was) is should be designated as corresponding to ARS Count A-4. ARS Motion, pp. 16 – 17. In the same Motion, ARS argued that "ARS's claim 18 and 22 - **24** should be designated as corresponding to Count A-4." ARS Motion 12, p. 17.

Interference 105,114 was conducted pursuant to 37 CFR §1.601 et seq. (these rules have since been replaced). Pursuant to Rule 601, a Count, such as that proposed by ARS as Count A-4, "defines a separate patentable invention." 37 CFR §1.601(f). Thus, ARS represented to the Board, and is bound by that representation herein, that ARS Claim 24 should be designated as corresponding to the same separate patentable invention as CGI Claim 106. Further, Claims which are designated as corresponding to a Count, in a Motion, must define the same patentable invention as that Count. 37 CFR §1.637(c)(10(iv) and (c)(2)(ii). Thus, ARS affirmatively represented to the Board, and cited factual evidence in support of the proposition that CGI Claim 106 and ARS Claim 24 both define the same patentable invention, that is, they interfere-in-fact. "An interference-in-fact exists when at least one claim of one party that is designated as corresponding to the count and at least one claim of the other party that is designated as corresponding to the count define the same patentable invention." 37 CFR §1.601(j). ARS having argued to the Board that its own Claim 24 and CGI claim 106 both define the same patentable invention, it can hardly be heard now to argue the contrary.

## VI. INDEPENDENT OF THE ARS MOTION, THERE IS ABUNDANT EVIDENCE OF RECORD BEFORE THE BOARD THAT DEMONSTRATES ARS CLAIM 24 IS OBVIOUS GIVEN CGI CLAIM 106, AND VICE VERSA

The determination of whether ARS Claim 24 is obvious, given CGI Claim 106, is made according to well established principles. A court must ask "whether a person of ordinary skill in the art, possessed with the understandings and knowledge reflected in the prior art, and motivated by the general problem facing the inventor, would have been led to make the combination recited in the claims." *Alza v. Mylan Labs, Inc.*, 464 F.3d 1286, 1290-91 (Fed. Cir. 2006), citing *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006). In the context of the inquiry addressed herein, taking Claim 106 as the principal piece of prior art, the inquiry undertaken is straightforward. One considers "(1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." *In re Dembiczak*, 175 F.3d 994, 998 (Fed. Cir. 1999).

Applying these rules of inquiry to the case at hand, the sole difference between ARS Claim 24 and CGI Claim 106 is the requirement, in Claim 24, to provide a selectable, amplifiable gene, such as DHFR, together with the regulatory segment inserted to cause expression of the silent (e.g., erythropoietin) gene. This particular step was commonplace in the art well prior to 1989 as a means for identifying successful transformation of genetic material. Evidence supporting this before the Board includes the Declaration of Jac A. Nickoloff, Ph.D., Exhibit 2029 in the Interference below, and the Declaration of Nancy Craig, Ph. D., Exhibit 2026 in the Interference below. CGI also relies herein on Exhibit 2014 below, the article Kaufman et al., Molecular and Cellular Biology, pp. 1750 – 1759 (1985) as well as the deposition of Nickoloff taken in the

interference below by ARS on September 26, 2003. CGI also relies herein on U.S. Patents 5,328,820, prior art with respect to the ARS '071 patent at issue, which was Exhibit 2064 below. Given the uniform high level of skill in the art, one familiar with this art would have followed the teachings of these sources without inventive effort, to add to the subject matter of CGI Claim 106 a selectable amplifiable gene like DHFR. These prior art sources are discussed below.

Both the sworn testimony offered on this subject below, but not noted by the Board as it was not part of the issues considered below, and the patents and articles of the time, demonstrate that there is strong evidence that the use of a selectable amplifiable gene like dihydrofolate reductase (DHFR) was well known to those of skill in the art in 1989, the earliest filing dates of the parties, and would have been obvious for selection to incorporate in the subject matter of Claim 106.

## VII. THE COURT APPROVED RELIANCE ON THE EXPERT REPORT OF THEA TLSTY, WHICH DEMONSTRATES CLAIM 106 RENDERS CLAIM 24 OBVIOUS

Initially, CGI notes that the '390 application involved in the interference clearly teaches the use of selectable amplifiable genes like DHFR in the invention, for the same reason selected in the '071 patent. Both seek to use well known marker genes like DHFR to identify successfully transformed cells (transformed through homologous recombination). Moreover, CGI has submitted the expert report of Dr. Thea Tlsty, one of the world's foremost experts on selectable amplifiable genes like DHFR. In fact, that report is so soundly framed and exact that ARS elected NOT to depose Dr. Tlsty. CGI submits that the Court can accordingly look to her expert report as authoritative.

Tlsty reports that DHFR gene amplification was a well known and widely studied phenomenon well prior to the parties filing dates, at least as early as the mid 1980's. Tlsty offered that DHFR had become widely used in "molecular biology research as a selectable, amplifiable gene." ¶10 of the Tlsty Expert Report. At ¶ 13, Tlsty reports that "this use of DHFR genes with a promoter to express that gene to act as a selectable, amplifiable gene (*i.e.*, a positive selection marker) was known several years prior to 1989 and widely employed." (Citing to Kaufman, et al. 1985, relied on by the Board). Tlsty also reports that the ability of DHFR to amplify portions of the genome in proximity to the DHFR gene, to increase expression level, was widely used several years before 1989. Tlsty, ¶15. Thus, prior to 1989, it would have been obvious to modify the cell of CGI claim 106 to include a selectable amplifiable gene like DHFR. Thus, Claim 106 DOES render Claim 24 obvious, and they are in interference-in-fact. The Court need not consider Tlsty's testimony in a vacuum, however.

## VIII. ARS'S OWN INVENTOR, CHAPPEL, DEMONSTRATED THE OBVIOUS RELATIONSHIP BETWEEN CGI CLAIM 106 AND ARS CLAIM 24 IN HIS PRIOR WORK AND TESTIMONY

Perhaps the most compelling piece of evidence that use of an amplifiable selectable marker like DHFR was obvious in the very art to which the ARS '071 patent is directed, the expression of the THSß gene, comes from Chappel's own prior art. Christie Kelton and co-patentees taught the conventional use of an amplifiable selectable marker such as DHFR in an expression construct to modify a cell line to express THSß. U.S. Patent 5,240,832 recites "The expression vector also contained the mouse dihydrofolate reductase (DHFR) gene for a selectable and amplifiable marker." Col. 4, ll. 16 - 19. This particular piece of prior art lists as a coinventor, Scott Chappel, the inventor of the

involved '071 patent of ARS. This reference was before the Board in Interference 105,114. Chappel and ARS can hardly deny his own prior teachings.

During Chappel's deposition, Chappel was asked specifically about this piece of prior art. He agreed that the use of various DNA sequences, including the selectable amplifiable gene, DHFR, were all available and used by those of ordinary skill in the context of transforming cell lines to express target genes, well before the '071 patent was ever made the subject of a patent application. Chappel Transcript, pages 116-118. The use of an amplifiable and selectable marker, the ONLY difference between ARS claim 24 and CGI claim 106, was taught and conventional in the prior art, for the very purpose to which it is put in the '071 patent. Claim 24 is obvious, given Claim 106 as prior art. There is interference-in-fact.

There is also simply an abundance of art, of record in Interference 105,114 that demonstrates that as of 1989, those of skill in the art, given CGI Claim 106, would have recognized that it would have been obvious to further modify the cell by inserting an amplifiable, selectable gene like DHFR. Only the most prominent are identified below.

IX. **REFERENCES SUBMITTED TO THE BOARD THAT DEMONSTRATED THE INSERTION OF DHFR OR OTHER AMPLIFIABLE GENE INTO THE GENOME OF A CELL FOR THE PURPOSES OF AMPLIFYING A GENE TO CHANGE EXPRESSION LEVEL AS OF NOV. 6, 1989, INCLUDE:**

A. <u>U.S. Patent 5,079,159 – Exhibit 2065</u>. This patent describes the use of selectable and amplifiable genes such as DHFR to increase expression of a gene not normally expressed by the cell – aTP (the example of the Skoultchi application). See Column 2, lines 57 – 68 for a discussion of amplifiable genes like DHFR, and Example 2, Column 18, line 23 – Column 19, line 55, which describes preparation of a plasmid

13

bearing the gene for aTP and DHFR with appropriate promoters, and Example 3, Column 19, line 57 – Column 22, line 42, which describes modification of a Chinese Hamster Ovary cell with that plasmid, Col. 20, l. 1 – 25, followed by amplification using the DHFR gene, Col. 30, l. 26 – 55. Amplified clones showed enhanced tPA expression. Table 4, Col. 22.

  B. <u>Kaufman et al, Molecular and Cellular Biology, pp. 1750 – 1759 (1985).</u> Exhibit 2014. This reference describes the expression of a gene not normally expressed by a cell (Chinese Hamster Ovary) through the use of modification of DHFR. Stepwise amplification increased tPA expression by 100-fold. Abstract, p. 1750. The authors conclude that use of an inserted DHFR gene to amplify the expression of the target gene works uniformly. "To date, we have not observed any disparities between the level of gene amplification and the amount or protein secreted into the medium." Page 1758, right hand column.

  C. <u>Genetic Engineering, Principles and Methods, Volume 9, 1987. Exhibit 3015.</u> This reference (written by Kaufman) repeatedly discusses the use of amplification of DHFR to amplify an associated gene of interest to increase expression of the gene of interest. *See* pp. 165 – 166, as well as the discussion of other amplifiable genes including CAD and ADA, selectable, amplifiable genes identified as suitable in the ARS '071 patent. "The primary advantage of the DHFR selection system is the ability to select for cells which contain an amplified copy number of DHFR genes…It is possible to coamplify and coexpress the heterologous gene (target gene) by selection of the transformants in increasing concentrations of methotrexate." *Id.*, p. 166. "Studies…have

demonstrated that the most frequent mechanism (to become resistant) is overproduction of dihydrofolate reductase (DHFR) which results from an amplification of DHFR."

## X. EXPERTS WHOSE TESTIMONY WITH REGARD TO THE OBVIOUS SELECTION OF DHFR TO AMPLIFY A GENE AND ALTER EXPRESSION WAS BEFORE THE BOARD INCLUDE

1. <u>Nancy Craig, Ph. D., in her Declaration, Exhibit 2026</u>. "[O]ne of skill in the art would recognize and fully expect increased target gene expression in the primary cell line as a result of homologous recombination and gene amplification in that primary cell line." ¶ 19 (The amplifiable gene is DHFR - ¶ 21, Step 3.).

2. <u>Jac Nickoloff, Ph.D., in his Declaration, Exhibit 2029</u>. "Additional experiments demonstrated amplification of a heterologous DHFR gene, which was used to increase the expression level of a closely linked gene compared to the expression levels observed In the absence of amplification." (Citing Kaufman et al). ¶19. "In summary, one of skill in the art (as of 1989) would recognize Kaufman et al for teaching…expression of an exogenous gene that is regulated by a heterologous promoter and expression of an amplifiable exogenous gene." Id. "A teaching of particular relevance prior to December 1989 was the combination of the aforementioned techniques (i.e., homologous recombination gene targeting and insertion of DNA regulatory sequences and marker or amplifiable genes) to increase expression of a native gene...." ¶ 27. **"The inclusion of an amplifiable gene to increase gene expression, as called for in claims 3, 8, 31 and 43 was known in the prior art (Exhibit 2014, Kaufman et al, p. 1753, Col. 2, last ¶, ll. 5 – 7 and table 2, JP-A-1215280, p. 5, 3rd ¶, lines 1-3)."** ¶ 39. (parenthetical in original).

    3.    <u>Jac Nickoloff, Ph.D in his deposition taken by ARS. Exhibit 2056 is the transcript</u>. "In 1989 amplifiable genes were known...And an amplifiable gene or regulatory element, these are all essentially interchangeable pieces." P. 51, l. 21 – p. 52, l. 11.

    4.    <u>Randal Kaufman, Ph.D., in his Declaration, Exhibit 3002</u>, testified that ARS Claim 18, and the claims that depend from it, including dependent claims 22 – **24**, which define additional variations of the transformed cell lines of ARS's claim 18, were directed to the same invention as CGI claim 106. ¶ 610, p. 192. That is why he testified that Claim 106 of CGI and Claims 18 and 20 – 24 of ARS were directed to the same invention and defined a single count. ¶499. *See also* ARS Motion 12, which cites Kaufman's testimony in support of the proposition that "ARS's Claims 18 and 22 – 24 should also be designated as corresponding to proposed Count A-4." P. 17, the same Count which ARS argued Genesys's claim 106 or a similar claim directed to the subject matter defined by Claim 106...should be designated as corresponding to ARS's proposed count A-4." P. 17. Claims that correspond to a single Count (ARS's proposed Count A-4) necessarily define the same patentable invention. 37 CFR ¶1.601.

## XI    CGI CLAIM 106 IS OBVIOUS GIVEN ARS CLAIM 24.

    CGI notes that Claim 106 may be considered a type of species of the genus claimed in ARS Claim 24. Occasionally, where the specific elements of the species are NOT obvious given the genus, two way obviousness may not occur. *See Eli Lilly, supra*. In this case, however, as noted, the 293 cell line, the CMV regulatory segment, and DHFR were all well known examples of human cell lines, constitutive regulatory sequences and selectable amplifiable genes. Their selection, given the genus of Claim

24, would have been obvious. Indeed, one need only turn to a single reference, Genetic Engineering, to find identification of the use of 293 cells, p. 157 and the CMV regulatory segment, p. 175, to enhance the expression of proteins like EPO and tPA, p. 174. Thus, this one reference which also teaches the obvious nature of the use of DHFR given CGI claim 106, teaches the remaining elements of the CGI Claim 106. There is no evidence or suggestion there is anything unusual or specific to these selections, given Claim 24. Two way obviousness, and therefore Interference-In-Fact, is made out.

## XII. CONCLUSION

CGI Claim 106 interferes with ARS Claim 24 if it renders it obvious, taken as prior art. Claim 106 specifically satisfies or teaches every limitation of Claim 24 but one - the inclusion of a selectable amplifiable gene like DHFR. The use of DHFR in this context was notorious to those of skill in the art well prior to the dates of invention of the parties hereto. Dr. Thea Tlsty, one of the world's most foremost experts in DHFR technology, offered that observation in her expert report. ARS was in such deep agreement with the report of Tlsty that it did not take her deposition. ARS's own inventor, Chappel, testified that his prior art teaching in U.S. Patent 5,240,832 reflects the fact that use of a selectable amplifiable gene was customary in the modification of genes in a cell before the '071 patent was filed. Accordingly, the claims are an Interference-in-Fact. In this respect, it must be remembered that this question of law is reviewed *de novo,* and the burden of proof is preponderance of the evidence. The evidence uniformly supports the conclusion that one of ordinary skill in the art, in 1989, would have concluded that modification of CGI Claim 106 to add the selectable, amplifiable gene

(DHFR) of ARS Claim 24 would have been an obvious modification. There is NO evidence to the contrary.

The Board erred, because it reached its decision *sua sponte,* without requesting or considering testimony or documents reflecting the level of skill in the art in 1989. Both testimony and U.S. Patent documents, all filed during the course of Interference 105,114, confirm that it would have been obvious to modify the cell of Claim 106 by adding a selectable, amplifiable gene like DHFR.

Entry of judgment to that effect is respectfully requested.

                         Respectfully submitted,

                         CELL GENESYS, INC.

                         By its attorneys,

                         /s/ Steven B. Kelber
                         Steven B. Kelber
                         Jagtiani + Guttag
                         10363-A Democracy Lane
                         Fairfax, Virginia 22030
                         Tel. (703) 563-2011

                         T. Christopher Donnelly (BBO #129930)
                         Jill Brenner Meixel (BBO #652501)
                         Donnelly, Conroy & Gelhaar, LLP
                         One Beacon Street, 33rd Floor
                         Boston, Massachusetts 02108
                         Telephone: (617) 720-2880

Dated: October 1, 2007

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 1, 2007.

                                            /s/ Jill Brenner Meixel
                                            Jill Brenner Meixel