# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CELL GENESYS, INC., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-12448-MLW |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-11810-MLW |
| | ) | |
| CELL GENESYS, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant, and | ) | |
| | ) | |
| TRANSKARYOTIC THERAPIES, INC., | ) | |
| | ) | **SUBMITTED PURSUANT TO THE** |
| Defendant. | ) | **COURT'S AUGUST 13, 2007 ORDER** |

**ARS REVISED OPPOSITION TO CGI'S MOTION TO REVERSE THE BOARD'S DECISION THAT CGI CLAIMS 107-109 ARE UNPATENTABLE OVER "JAPAN"**

## TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................... 1

II.   ARGUMENT ............................................................................................................. 3

   A.   "Japan" is a statutory bar to patentability of claims 107-109 ............................. 3

   B.   Skoultchi's November 1989 application did not constitute a constructive
        reduction to practice of claims 107-109 .......................................................... 5

   C.   Skoultchi was not diligent between August 28 and November 6, 1989 ...................... 7

        1.   During the critical period, no work was done on Skoultchi's patent
             application for nearly two months ...................................................... 8

        2.   No other activity provided the missing diligence ........................................... 10

   D.   Skoultchi did not conceive the specific methods recited in claims 107-109 .............. 11

        1.   CGI had to prove that Skoultchi conceived at least as much of his
             claimed methods as "Japan" disclosed ......................................................... 11

        2.   Skoultchi did not conceive a method of expressing a gene in a primary
             cell ........................................................................................ 13

             a.    The July 24-25, 1989 document is not evidence of conception ........... 13

             b.    The August 29, 1989 document is not evidence of conception .......... 14

        3.   Skoultchi did not conceive a method involving insertion of only a
             regulatory sequence ........................................................................ 15

        4.   CGI admitted to the Patent Office that Skoultchi's "invention"
             excluded gene expression in a primary cell, and that it required an
             amplifiable gene ........................................................................... 17

III.  CONCLUSION ........................................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**

*Augustine Med., Inc. v. Gaymar Indus., Inc.*,
    181 F.3d 1291 (Fed. Cir. 1999) ................................................................................. 4

*Bigham v. Godtfredsen*,
    857 F.2d 1415 (Fed. Cir. 1988) ............................................................................... 6

*Brown v. Barton*,
    102 F.2d 193 (C.C.P.A. 1939) ................................................................................. 9

*Ex Parte Huetter*,
    62 U.S.P.Q.2d 1553 (Bd. Pat. App. & Interf. 2001) ............................................... 9

*Gould v. Schawlow*,
    363 F.2d 908 (C.C.P.A. 1966) ............................................................................... 10

*Griffith v. Kanamaru*,
    816 F.2d 624 (Fed. Cir. 1987) ................................................................................. 7

*Hull v. Davenport*,
    90 F.2d 103 (C.C.P.A. 1937) ................................................................................. 9

*In re Borkowski*,
    505 F.2d 713 (C.C.P.A. 1974) .......................................................................... 16, 17

*In re Chu*,
    66 F.3d 292 (Fed. Cir. 1995) ................................................................................... 4

*In re DeBaun*,
    687 F.2d 459 (C.C. P.A. 1982) ............................................................................. 10

*In re Eickmeyer*,
    602 F.2d 974 (C.C.P.A. 1979) ................................................................................. 8

*In re Folkers*,
    344 F.2d 967 (C.C.P.A. 1965) ................................................................................. 3

*In re Harry*,
    333 F.2d 290 (C.C.P.A. 1964) ........................................................................... 9, 10

*In re Moore*,
    444 F.2d 572 (C.C.P.A. 1971) ................................................................................. 8

*In re Mulder*,
  716 F.2d 1542 (Fed. Cir. 1983) ................................................................. 9

*In re Nelson*,
  420 F.2d 1079 (C.C.P.A. 1970) ........................................................... 9, 10

*In re Noxon*,
  210 F.2d 835 (C.C.P.A. 1954) ................................................................. 17

*In re Schaub*,
  537 F.2d 509 (C.C.P.A. 1976) ................................................................ 15

*In re Smith*,
  458 F.2d 1389 (C.C.P.A. 1972) ................................................................. 5

*In re Spiller*,
  500 F.2d 1170 (C.C.P.A. 1974) ............................................................... 11

*In re Tanczyn*,
  347 F.2d 830 (C.C.P.A. 1965) ................................................................ 11

*In re Wakefield*,
  422 F.2d 897 (C.C.P.A. 1970) ................................................................ 12

*Ireland v. Smith*,
  97 F.2d 95 (C.C.P.A. 1938) ...................................................................... 9

*Kawai v. Metlesics*,
  480 F.2d 880 (C.C.P.A. 1973) .................................................................. 6

*Rines v. Morgan*,
  250 F.2d 365 (C.C.P.A. 1957) .................................................................. 9

*Shindelar v. Holdeman*,
  628 F.2d 1337 (C.C.P.A. 1980) ................................................................ 9

*South Corp. v. United States*,
  690 F.2d 1368 (Fed. Cir. 1982) (en banc) ................................................. 3

**Statutes**

35 U.S.C. § 102(b) ................................................................... 1, 2, 3, 4, 5, 11

35 U.S.C. § 103 ......................................................................................... 5

35 U.S.C. § 112 ............................................................................ 1, 2, 4, 5, 6

35 U.S.C. § 120..............................................................................................1, 4, 5

**Rules**

37 C.F.R. § 1.115 ...........................................................................................3

37 C.F.R. § 1.116 ..........................................................................................17

37 C.F.R. § 1.131 ...........................................................................3, 5, 7, 9, 15, 17

37 C.F.R. § 1.131(b) .......................................................................................7

37 C.F.R. § 1.131(a)(2) ...................................................................................3

## I.    INTRODUCTION

Pursuant to the Court's August 13, 2007 Order, ARS respectfully submits the following revised brief to address "based solely on the admissible evidence," the merits of "whether the Board correctly found that CGI's Claim 107-109 are unpatentable over the 'Japan' reference."[1]

This Court can deny CGI's request to reverse the Board's decision that CGI's pending application claims 107-109 are unpatentable over the "Japan" reference for a few simple reasons.

To establish that claims 107-109 are patentable over "Japan," CGI had to first prove that Dr. Skoultchi filed a patent application sufficiently describing and enabling the methods of claims 107-109 (as required under 35 U.S.C. § 112, ¶ 1) within one year after the August 29, 1989 effective date of "Japan" (*i.e.*, that "Japan" is not a statutory bar to the patentability of those claims under 35 U.S.C. § 102(b)). If CGI could overcome this first hurdle, it then had to prove that Skoultchi conceived those specific methods before August 29, 1989, and that he worked continuously on his patent application between August 28 and November 6, 1989.

CGI has failed to prove that Skoultchi or his patent application satisfied any of those requirements.

First, "Japan" is a statutory bar to the patentability of CGI's claims under § 102(b). To avoid that bar, CGI had to prove that its current claims (which it did not submit to the Patent Office until 1995) are entitled under 35 U.S.C. §§ 112 and 120 to the benefit of the patent application that Skoultchi filed on November 6, 1989. In the Memorandum that it filed on October 2, 2006, CGI failed to even mention whether its November 6, 1989 application satisfied

---

[1] Court Docket No. 172, at 49-50. In the same Order, the Court ordered the parties to address various other issues; ARS addressed those issues on September 12, 12007 in "ARS Motion for Revised Briefing Schedule and Response to Issues Raised in the Court's August 13, 2007 Order." (Docket No. 174).

§ 112, and, therefore, failed to prove that its claims are entitled to the benefit of that filing date under § 120. Because CGI did not file any other application within one year after the publication of "Japan" (*i.e.*, by August 29, 1990), "Japan" is a statutory bar to patentability under § 102(b). That is fatal to CGI's request to reverse the Board's decision, and to the extent CGI tries to argue or present any evidence on this issue in its revised submission, it is too late and CGI waived contesting that issue.

Second, the evidence does not show that Skoultchi conceived the specific methods of claims 107-109 prior to August 29, 1989. While Skoultchi may have had an idea regarding protein production at that time, CGI did not prove, as it was required to do, that he had intellectual possession of the specific methods recited in claims 107-109. Indeed, CGI admitted to the Patent Office that Skoultchi's "invention" did not cover those methods. This too is fatal to CGI's request to reverse the Board's decision.

Third, the evidence shows that Skoultchi was not continuously diligent in attempting to reduce his idea to practice from just before August 29 until he filed his first application on November 6, 1989. Indeed, CGI cannot point to *any* evidence of activity toward a reduction to practice for a period of ***nearly two months*** during the critical period. This too is fatal to CGI's request to reverse the Board's decision.

Finally, Skoultchi did not reduce the specific methods of claims 107-109 to practice. A constructive reduction to practice (which CGI alleges took place) required Skoultchi to file a patent application that satisfied the requirements of § 112, ¶ 1. Because, as noted above, Skoultchi's November 6, 1989 patent application did not adequately describe or enable the specific methods of claims 107-109, CGI did not and cannot prove that Skoultchi ever filed an application that constituted a constructive reduction to practice for those methods.

For any one and all of these reasons, the Court should deny CGI's request to reverse the Board's decision.

## II.    ARGUMENT

### A.    "Japan" is a statutory bar to patentability of claims 107-109

For CGI to prove under 37 C.F.R. § 1.131 ("Rule 131") that Dr. Skoultchi invented his claimed methods prior to the publication of "Japan," it first bore the burden to prove that "Japan" is not a statutory bar to the patentability of claims 107-109 under 35 U.S.C. § 102(b). In the Memorandum that it filed on October 2, 2006, CGI failed to even mention this issue, so its request to reverse the Board's decision should be denied, and to the extent CGI addresses this issue in any revised submission, it is too late and has been waived.

The express language of Rule 131(a)(2) placed this burden squarely on CGI: "Prior invention may not be established under this section if . . . [t]he rejection is based upon a statutory bar." One such statutory bar to patentability is 35 U.S.C. § 102(b), which provides

> A person shall be entitled to a patent unless . . . the invention was . . . *described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States* . . . . (emphasis added).[2]

Thus, for CGI to prove prior invention under Rule 131, it bore the burden to prove that "Japan" (published on August 29, 1989) was not a § 102(b) statutory bar to its claims. Skoultchi did not file the application in which claims 107-109 are pending until 1993 (more than one year

---

[2] *See also In re Folkers*, 344 F.2d 967, 968 (C.C.P.A. 1965) ("Whatever right to a patent appellant may have had at the time the invention was made, it has been lost within the meaning of section 102(b) if, indeed, the claimed invention became obvious to one of ordinary skill in this art through the publication of the reference more than one year before appellant filed his application."). The United States Court of Customs and Patent Appeals (the "C.C.P.A.") was a predecessor to the United States Court of Appeals for the Federal Circuit, and its decisions are treated as binding precedent by the Federal Circuit. *See South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (*en banc*).

after the publication of "Japan").[3] That 1993 application claimed priority to a "continuation-in-part" application[4] filed on November 6, 1990, which claimed priority to the 1989 application. Because Skoultchi filed this "CIP" application more than one year after August 29, 1989, it had to prove that claims 107-109 are entitled to the "benefit" of its 1989 filing date, or those claims are unpatentable under § 102(b) (because "Japan" was a "printed publication" that described the invention "more than one year prior to the date of the [November 6, 1990] application for patent.").

To prove that its claims are entitled to the benefit of its 1989 filing date, CGI had to prove that its 1989 application satisfied all of the requirements of 35 U.S.C. § 112, ¶ 1 for those claims, *i.e.*, that its 1989 application (i) adequately described the specific methods recited in those claims such that one of ordinary skill in the art in 1989 reading that application would have understood that Skoultchi was in intellectual possession of those methods, and (ii) enabled one of ordinary skill in 1989 to practice those methods without undue experimentation.[5]

In the Memorandum that it filed on October 2, 2006, CGI did not even mention whether its November 1989 application satisfied § 112. Instead, CGI expected the Court to simply

---

[3] *See* U.S. Patent Application Serial No. 08/102,390, "Amendment under 37 C.F.R. § 1.115," dated June 1, 1994, at 1-2 (relevant pages submitted herewith as Exhibit A to Declaration of Matthew C. Nielsen).

[4] *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1302-03 (Fed. Cir. 1999) ("A CIP [continuation-in-part] application contains subject matter from a prior application and may also contain additional matter not disclosed in the prior application. Different claims of such an application may therefore receive different effective filing dates. Subject matter that arises for the first time in the CIP application does not receive the benefit of the filing date of the parent application.") (internal citations omitted).

[5] *In re Chu*, 66 F.3d 292, 297 (Fed. Cir. 1995) ("It is elementary patent law that a patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112.") (citing 35 U.S.C. § 120) (citations to cases omitted).

assume that it is entitled to the "effective filing date, in this case, November 6, 1989."[6] But CGI cannot ask this Court to simply assume that CGI's claims are entitled to that filing date. CGI had to prove it, and it did not.[7] To the extent CGI addresses this issue in a revised brief submitted one year later, it is simply too late and has been waived.

CGI's failure to prove that its November 6, 1989 application adequately described and enabled claims 107-109 means that the effective filing date for those claims is no earlier than November 6, 1990. Claims 107-109 are therefore unpatentable under § 102(b) because the effective date of "Japan" was August 29, 1989, which was "more than one year prior to the [November 6, 1990] date of the application for patent." CGI therefore cannot establish prior invention under any set of facts, and its request to reverse the Board's decision should be denied.

**B.      Skoultchi's November 1989 application did not constitute a constructive reduction to practice of claims 107-109**

As CGI acknowledged in the Memorandum that it filed on October 2, 2006, Rule 131 placed the burden on it to prove that Skoultchi reduced the subject matter of claims 107-109 to practice, either actually or constructively.[8] In that same Memorandum, CGI suggested that the

---

[6] CGI October 2, 2006 Memo at 4 (Court Docket No. 128).

[7] In its October 2, 2006 Memorandum, CGI implied that the Board found that it was entitled to the benefit of its 1989 filing date. *See id.* at 2 (Court Docket No. 128). The Board did not do that; rather, the Board dismissed CGI's Preliminary Motion 1 (in which CGI requested the benefit of that 1989 filing date) as moot. *See* Decision on Preliminary Motions at 133 (pertinent portions submitted herewith as Exh. B to Nielsen Decl.). CGI failed to appeal that dismissal in this action, so this Court would also be justified in finding that CGI waived any right to seek entitlement to that date.

[8] CGI October 2, 2006 Memo at 15 (Court Docket No. 128). *See also In re Smith*, 458 F.2d 1389, 1393-96 (C.C.P.A. 1972) ("Since the [applicant's first-filed] application does not describe the claimed subject matter in the contemplation of § 112, first paragraph, appellant is not entitled to the § 120 benefit of the filing date of that earlier application. Accordingly, [the prior art reference] stands as a § 102(b) statutory bar available for consideration along with other prior art in the determination of obviousness under 35 U.S.C. § 103, and appellant may not, by Rule 131 affidavit, overcome it.").

mere "preparation" of an application constitutes a reduction to practice.[9] It does not. The process of *preparing* the application relates only to diligence; it is irrelevant to the question of reduction to practice. Rather, CGI bore the burden of proving that it *filed* an application with the Patent Office that *described and enabled* the methods recited in claims 107-109 in compliance with § 112, ¶ 1.[10] It did not – and cannot – do so.

In its October 2, 2006 Memorandum, CGI never alleged (and thus did not prove) that Skoultchi's 1989 application satisfied the requirements of § 112, ¶ 1, that any other application (*e.g.*, the 1990 application) constituted a constructive reduction to practice, or that Skoultchi ever reduced his claimed methods to actual practice (*i.e.*, actually performed the methods). To the extent CGI tries to address that issue in a revised brief submitted one year later, it is too late and has been waived. This is a second reason for this Court to deny CGI's request to reverse the Board's decision that claims 107-109 are unpatentable.[11]

---

[9] CGI October 2, 2006 Memo at 15 (Court Docket No. 128).

[10] *Bigham v. Godtfredsen*, 857 F.2d 1415, 1417 (Fed. Cir. 1988) ("To serve as constructive reduction to practice, the disclosure of the subject matter of count 2 must meet the requirements of 35 U.S.C. § 112, first paragraph"); *Kawai v. Metlesics*, 480 F.2d 880, 886 (C.C.P.A. 1973) ("It is well understood that the act of filing a United States patent application can be regarded as being a constructive reduction to practice of an invention described therein as of the filing date. It follows naturally from this that the written specification in the application is the evidence proving the invention of that which is reduced to practice, *i.e.*, the subject matter to which properly supported claims can be drawn.").

[11] In its October 2, 2006 Memorandum, CGI said that "notwithstanding the challenge of ARS that the claims were neither described nor enabled, the Board did not adopt these arguments." *Id*. at 8 (Court Docket No. 128). That statement is misleading, and, the issue to which CGI refers is irrelevant to the question of whether Skoultchi's 1989 application constituted a constructive reduction to practice of claims 107-109. In the '114 Interference, the Board dismissed (but did not deny) ARS's Preliminary Motions 1 and 2 for judgment that, *inter alia*, claims 107-109 are unpatentable because Skoultchi's 1993 application (not his 1989 application, which is the subject of this brief) fails to adequately describe or enable those claims, respectively, under 35 U.S.C. § 112, ¶ 1. As the Board explained, it dismissed those motions because those claims had already "been determined to be unpatentable over alternative and/or collective prior art teachings." Decision at 136 (submitted herewith as Exh. B to Nielsen Decl).

### C.    Skoultchi was not diligent between August 28 and November 6, 1989

The Court does not have to reach the issue of whether Skoultchi conceived the methods recited in claims 107-109 before the August 29, 1989 date of "Japan." The documents which CGI relied upon in its October 2, 2006 Memorandum (to the extent those documents are admissible) show that Skoultchi did not work continuously on his patent application between August 28 and November 6, 1989. Consequently, CGI did not and cannot prove that Skoultchi exercised the required reasonable diligence during the critical period.

CGI simply does not have sufficient evidence to meet its burden. In its October 2, 2006 Memorandum, CGI pointed to absolutely no activity for a period of nearly two months. CGI suggested that this is sufficient because "[t]he standards for finding conception and diligence are less rigorous in a Rule 131 setting [than in a priority contest in an interference]," and "[w]here one proceeds under Rule 131, corroboration is not required."[12] The first statement is false, and the second is a red herring. To prove diligence, Rule 131 required CGI to do more than simply *argue* diligence; CGI had to prove *what* was done, *when* it was done, and why whatever was done was evidence of *continuous* diligence.[13] CGI had to prove Skoultchi was diligent for the *entire* period from August 28 through November 6, 1989.[14] The cases CGI cited in its October 2,

---

[12] CGI October 2, 2006 Memo at 6 and 16-17 (Docket No. 128). Notably, in the '114 Interference, CGI never submitted a Rule 131 oath or declaration (as Rule 131(a) requires), and never argued that corroboration was not required.

[13] *See* cases discussed *infra* at pp. 9-10; 37 C.F.R. § 1.131(b) ("*The showing of facts shall be such, in character and weight, as to establish* reduction to practice prior to the effective date of the reference, or conception of the invention prior to the effective date of the reference *coupled with due diligence from prior to said date to a subsequent reduction to practice* or to the filing of the application.") (emphasis added).

[14] *Griffith v. Kanamaru*, 816 F.2d 624, 626 (Fed. Cir. 1987) ("Griffith must account for the *entire* period from just before Kanamaru's filing date until his reduction to practice. As one of our predecessor courts has noted: 'Public policy favors the early disclosure of inventions. This underlies the requirement for 'reasonable diligence' in reducing an invention to practice, not

2006 Memorandum to support a "less rigorous" standard for diligence (*i.e.*, that an invention

need only "remain[] a goal of the company") say no such thing; *they do not even discuss*

*diligence*.[15] And "corroboration" is not the issue here; the issue is that CGI cannot substitute

argument for actual *evidence*.

> ### 1.    During the critical period, no work was done on Skoultchi's patent application for nearly two months

CGI has said that "over a period of three months" leading up to the November 6, 1989

filing date, "CGI was diligent in pursuing the constructive reduction to practice, the filing of the

application . . . ."[16] But during that entire period, CGI can point to only *five* days (August 25,

August 29, September 6, November 1, and November 3) on which there is *any* evidence that *any*

work was done on Skoultchi's application. That leaves *nearly two months* (from September 7 to

November 1) during which there is absolutely *no* evidence that Skoultchi or anyone else did

*anything* related to the preparation or filing of his application. One need only look at CGI's

diagram (entitled "Timeline of Significant Events: Diligence: August to November, 1989") in

Appendix B attached to CGI's October 2, 2006 Memorandum to confirm this lack of diligence.

---

unlike the requirement that, to avoid a holding of suppression or concealment, there be no
unreasonable delay in filing an application once there has been a reduction to practice.'")
(citations omitted) (emphasis added).

[15] CGI October 2, 2006 Memo, at 16-17 (Docket No. 128). The cases CGI cites stand only for
the proposition that the standards of proof for *conception* and *reduction to practice* are not the
same in a Rule 131 context (where the focus is on the claims and a prior-art reference) and a
"priority contest" in an interference (where the focus is on a "count"). *See In re Eickmeyer*, 602
F.2d 974, 978-980 (C.C.P.A. 1979) ("[T]he conception and reduction to practice which must be
established under the rule need not be the same as what is required in the interference sense of
those terms.") (internal quotations and citations omitted); *In re Moore*, 444 F.2d 572, 578-80
(C.C.P.A. 1971) ("[I]t should be clear that . . . the conception and reduction to practice which
must be established under the rule need not be the same as what is required in the interference
sense of those terms.").

[16] CGI October 2, 2006 Memo at 17, 19 (Docket No. 128).

What CGI failed to include in its October 2, 2006 Timeline, and failed to disclose to this Court in its corresponding Memorandum, is that after Mr. Rowland purportedly prepared the first draft of the application and sent it to Skoultchi on September 6, the application sat idle for **nearly two months** (until November 1).[17] The lack of any evidence of diligence during this two month period is fatal to CGI's motion.[18]

In similar circumstances, where patent applicants have relied on allegations of diligence without pointing to sufficient supporting evidence, the courts have held that the applicants have failed to meet their burden under Rule 131. For example, in *In re Harry*, the applicant summarized the types of activity on which it relied, but failed to point to specific acts showing diligence. The court affirmed the Board's finding that the applicant's showing was inadequate:

---

[17] In its October 2, 2006 Memorandum (Court Docket No. 128), CGI failed to point to any specific activities that Skoultchi or Rowland were otherwise engaged in that might excuse this delay. CGI simply argued that Rowland "received those comments back from Skoultchi by November 1, 1989, and rapidly amended and prepared the final version." *Id.* at 18. Such conclusory assertions of diligence are insufficient to meet CGI's burden as a matter of law.

[18] In its October 2, 2006 Memorandum, CGI said that taking three months to prepare and file a patent application is "per se, diligent." *Id.* at 17-18 (Court Docket No. 128). CGI is dead wrong; courts have held that applicants failed to exercise diligence where there were periods of unexplained delay as brief as **two days**. *See, e.g., In re Mulder*, 716 F.2d 1542, 1545 (Fed. Cir. 1983) ("two-day period"); *Ireland v. Smith*, 97 F.2d 95, 99-100 (C.C.P.A. 1938) ("from immediately prior to May 6, 1930 . . . until May 31, 1930"); *Ex parte Huetter*, 62 U.S.P.Q.2d 1553, 1563-64 (Bd. Pat. App. & Interf. 2001) ("from a date prior to 2 September 1993 until . . . 4 October 1993"); *Hull v. Davenport*, 90 F.2d 103, 104-06 (C.C.P.A. 1937) (five weeks); *Brown v. Barton*, 102 F.2d 193, 196-99 (C.C.P.A. 1939) ("a little over five weeks"); *In re Nelson*, 420 F.2d 1079, 1080-81 (C.C.P.A. 1970) (a "two-month period"). Nor did the cases that CGI cites acknowledge or apply such a *per se* rule. In *Rines v. Morgan*, 250 F.2d 365, 366-69 (C.C.P.A. 1957), the applicant presented extensive evidence of specific acts of diligence on specific dates during the critical period (which CGI failed to do), and the court noted that "[t]he question as to whether an inventor has exercised reasonable diligence is one which must be determined by the particular circumstances of each individual case." And in *Shindelar v. Holdeman*, 628 F.2d 1337, 1341-42 (C.C.P.A. 1980), diligence was not even at issue (the issue was whether the purported inventor "suppressed" his invention), and the court merely noted in passing that, hypothetically, "a period of approximately three months could *possibly* be excused during the twenty-nine month delay . . . ." (emphasis added).

[Applicant's] affidavit says 'steps were taken to reduce the invention to practice in a commercial size unit by engineering preparation of drawings, cost estimates and both construction and installation of apparatus embodying the invention was done as promptly as possible in all the circumstances.' This is not proof or 'showing of facts' but mere pleading. It asserts that facts exist but does not tell what they are or when they occurred. The Patent Office must have such facts as will enable it and its reviewing courts to judge whether there was construction and when it occurred, or whether there was diligence. The affidavits were properly rejected for non-compliance with the rule and all of the references are available. [19]

Similarly, in *In re Nelson*, where the applicant alleged that he "never abandoned [the invention] during the period [in which he needed to show diligence] and that the invention was diligently pursued by him all that time," and the "exhibits show[ed] a steady interest on the part of various officers of applicant's employer and assignee" in the invention, the court affirmed the Board's finding that an unexplained two-month delay defeated the applicant's claim of diligence:

Neither the affidavits nor the supporting exhibits indicate what was happening with respect to perphenazine during this period from December to February. While constant effort is not required, the record before us does not give any reason whatever to explain the delay, and we will not speculate on possible explanations. The evidence is insufficient to show even a tentative consideration of perphenazine during the ***two-month period***. For these reasons, we cannot say that the board erred in finding an insufficient showing of reasonable diligence.[20]

## 2. No other activity provided the missing diligence

In its October 2, 2006 Memorandum, CGI said that while Rowland was diligent, CGI employees were simultaneously "exercising corporate diligence as well."[21] However, the Court

---

[19] *In re Harry*, 333 F.2d 920, 922 (C.C.P.A. 1964) (Rich, J.).

[20] *In re Nelson*, 420 F.2d at 1080-81 (emphasis added). *See also In re DeBaun*, 687 F.2d 459, 462 (C.C. P.A. 1982) ("We also agree that the declarations herein are insufficient under Rule 131 as they fail to allege facts showing the necessary diligence and/or reduction to practice of the invention now claimed."); *Gould v. Schawlow*, 363 F.2d 908, 918 (C.C.P.A. 1966) ("In our view, Gould's testimony taken as a whole does not set forth adequate facts to support a finding of that continuity of activity which constitutes reasonable diligence. Merely stating that there were no weeks or months that he 'did not work on the laser' is not enough, absent supporting facts showing specifically what that 'work' consisted of and when it was performed.").

[21] CGI October 2, 2006 Memo at 19-20 (Court Docket No. 128).

has deemed inadmissible all of the documents and testimony which CGI relied upon in support of that argument. Consequently, CGI cannot prove any so-called "corporate diligence" was exercised.

### D.   Skoultchi did not conceive the specific methods recited in claims 107-109

Because CGI cannot prove that "Japan" is not a statutory bar under § 102(b), or that Skoultchi's November 6, 1989 patent application constituted a constructive reduction to practice, or that Skoultchi was diligent during the critical period, this Court need not even consider CGI's arguments regarding conception. However, if the Court reaches that issue, the documents upon which CGI relies (to the extent not deemed inadmissible by the Court) show that while Skoultchi may have had some idea regarding protein production by August 29, 1989, Skoultchi did not conceive the specific methods of claims 107-109 prior to that date.

### 1.   CGI had to prove that Skoultchi conceived at least as much of his claimed methods as "Japan" disclosed

In its October 2, 2006 Memorandum, CGI said it can prove prior conception by showing Skoultchi's "possession of … a species or embodiment within the invention such that the claim as a whole reads on it," or by showing "possession of the basic inventive concept."[22] But contrary to CGI's arguments, it is not sufficient for CGI to show that Skoultchi conceived only *part* of what his claims encompass; rather, CGI had to prove that Skoultchi conceived as much of

---

[22] CGI October 2, 2006 Memo at 5 (Court Docket No. 128). CGI cited *In re Spiller*, 500 F.2d 1170 (C.C.P.A. 1974), to support this proposition, but *Spiller* did not hold that one can antedate a reference merely by showing conception of an idea similar to that disclosed in the reference. Rather, "possession of what is shown carries with it possession of variations and adaptations which would, at the same time, be obvious to one skilled in the art." *Id.* at 1178. Thus, if one cannot show conception of exactly what the reference disclosed (and what is claimed) one must show conception of something that one of ordinary skill would recognize as rendering obvious that which the reference disclosed (and is claimed). As explained *infra*, CGI cannot show either.

11

his claimed methods as "Japan" disclosed,[23] or that one of ordinary skill in 1989 would have viewed whatever method Skoultchi conceived as rendering the specific method disclosed in "Japan" obvious.[24]

To answer these questions, the Court must first address the question of just what "Japan" disclosed. Yet CGI failed to even mention this issue in its October 2, 2006 Memorandum. "Japan" discussed inserting a DNA "regulatory sequence" into the genome of bacteria in proximity to a gene that is already being "expressed" in that cell, so as to place the gene under the control of the regulatory sequence and thereby modify its expression in that cell.[25] Significantly, "Japan" did not discuss inserting an "amplifiable gene" into any cell, nor did it discuss putting any gene from a first cell into a second cell and expressing the gene in that second cell.[26]

---

[23] *In re Tanczyn*, 347 F.2d 830, 833 (C.C.P.A. 1965) ("The primary consideration is whether, *in addition to showing what the reference shows*, the affidavit also establishes possession of either the whole invention claimed or something falling within the claims, in the sense that the claim as a whole reads on it.") (emphasis added).

[24] In its October 2, 2006 Memorandum, CGI cited *In re Wakefield*, 422 F.2d 897 (C.C.P.A. 1970) for the proposition that "[i]dentity between the claimed invention and the showing of prior possession is not required. A showing of the conception commensurate with the extent of the invention as claimed is sufficient." *Id*. at 13 (Court Docket No. 128). But that is not what *Wakefield* held. Rather, *Wakefield* said "antedating affidavits must contain facts showing a completion of the invention *commensurate with the extent the invention is shown in the reference*, whether or not it be a showing of the identical disclosure of the reference." *Id*. at 901 (emphasis added). On that basis, some claimed inventions were patentable ("With regard to the recited elements of these claims, we believe appellants have shown as much as [the prior art reference] shows."), and other claimed inventions were not ("[T]he examiner was correct in his view that [the prior art reference] discloses a substantially gel-free product. Since appellants' affidavits do not show their possession of such a product prior to [the date of the prior art reference], we must affirm the board's decision as to [unpatentability]."). *Id*. at 902.

[25] *See* Decision at 74-79 (submitted herewith as Exh. B to Nielsen Decl.).

[26] *See id*. In its October 2, 2006 Memorandum, CGI implied that ARS's request to reverse the Board's decision regarding the application of "Japan" to ARS's claims somehow supports CGI's motion for judgment. *See id*. at 1 (Court Docket No. 128) ("Both parties assign as error the

### 2. Skoultchi did not conceive a method of expressing a gene in a primary cell

Dr. Skoultchi did not conceive the method of "causing a mammalian cell to express [or to "increase the level of expression of"] a gene *of that cell's genome* . . . whereby expression of said gene *in said cell* is caused to occur," as each of claims 107-109 require, prior to August 29, 1989.[27] Nor did CGI, in its October 2, 2006 Memorandum, explain how any document on which it relies to show conception establishes that Skoultchi conceived a method of inserting DNA into the genome of a first cell so as to cause expression *in that first cell* of a gene already in that first cell's genome (as opposed to transplanting such a gene into a second cell and expressing the gene in that second cell, which is a wholly different, and unclaimed, method). Because CGI failed to prove this, it cannot prove that Skoultchi conceived the specific methods recited in claims 107-109.

### a. The July 24-25, 1989 document is not evidence of conception

CGI relies on a document dated July 24-25, 1989,[28] but failed in its October 2, 2006 Memorandum to explain how this document proves that Skoultchi conceived any method of causing gene expression to occur in a primary cell.

The Board considered this same document, but held it failed to evidence a conception of any of the methods of claims 107-109 by Skoultchi.[29] CGI's attorney argument in this § 146

---

Board's application of Japan to their respective claims."). It does not. ARS's disagreement with the Board's decision regarding its own claims is wholly unrelated to any issue in CGI's current motions.

[27] *See* claims 107-109 of CGI's '390 application (recitation of claims submitted herewith as Exh. K to Nielsen Decl.).

[28] *See* CGI "Record," Court Docket No. 129-5 (at CGI 3224-34).

[29] *See* Decision at 100-101 (submitted herewith as Exh. B to Nielsen Decl.).

action does not cure the deficiencies which the Board found in that document, or show that the Board erred in rejecting it. Moreover, that document contains inadmissible hearsay, which ARS moved to suppress in the '114 Interference and has moved to exclude from evidence in this § 146 action.[30]

CGI's argument that this document "discloses . . . each and every element of the invention of Claims 107-109" is simply that: attorney argument. It is not evidence. The Board found that this document is ambiguous regarding the method discussed, and in the Memorandum that it filed on October 2, 2006, CGI did not point to any testimony by any witness indicating what, if anything, this document would actually disclose to one of ordinary skill about the methods of claims 107-109. Nor can CGI point to any such testimony now, because none exists. The diagram in this document simply says "transfer into CHO (Chinese Hamster Ovary) cells"; thus, it is not evidence that Skoultchi disclosed a method for causing gene expression to occur in a primary cell during the July 1989 meeting.

### b.    The August 29, 1989 document is not evidence of conception

CGI has relied on a document bearing a date of August 29, 1989 that appears to be a draft of the patent application filed on November 6, 1989.[31] However, this document says nothing about expressing genes in a primary cell; it says expression takes place in an "expression host," *i.e.*, a secondary cell.[32] Moreover, the Board considered this document, yet did not find it to evidence a conception by Skoultchi, and CGI has not shown that the Board erred.[33]

---

[30] *See* "Motion In Limine To Exclude Hearsay Relied On By CGI In Its 'Japan' Memorandum" (Docket No. 138), at 2; Docket No. 139 (ARS Memorandum In Support) at 7-8.

[31] *See* CGI "Record," Court Docket No. 129-12 (at Court Docket page 12 of 18).

[32] *Id*. ("An amplifying gene is introduced by homologous recombination in juxtaposition to a target gene, the resulting combination of amplifying gene and target gene transferred to a convenient host and the target gene amplified by means of the amplifying gene. The resulting

### 3.    Skoultchi did not conceive a method involving insertion of only a regulatory sequence

Claims 107-109 specifically require inserting into the genome of a cell a "construct comprising *at least one of* an amplifiable gene, other regulatory sequence, *or* both . . . ."[34] As noted above, CGI bore the burden of proving that Skoultchi conceived so much of his claimed methods as "Japan" disclosed. "Japan" disclosed inserting a "regulatory sequence" into the genome of a cell (as opposed to inserting an "amplifiable gene" into the genome of a cell). CGI failed to prove that Skoultchi conceived at least as much as "Japan" disclosed, because the evidence indicates Skoultchi's only idea was to insert an amplifiable gene, not a regulatory sequence. That is not sufficient to antedate "Japan" under Rule 131.

In its October 2, 2006 Memorandum, CGI said "a genus is claimed" in claims 107-109, but failed to explain what that genus is, or what "species" are within that genus.[35] Even if the language in claims 107-109 reciting a "construct comprising at least one of an amplifiable gene, other regulatory sequence, or both . . ." refers to a genus, CGI still bore the burden of proving (i) conception of the *same* species disclosed in "Japan," *i.e.*, insertion of a "regulatory sequence," or (ii) conception of a *different* species (*i.e.*, an amplifiable gene"), combined with evidence proving that the species disclosed in "Japan" (insertion of a regulatory sequence) would have been obvious over the species Skoultchi allegedly conceived (insertion of an amplifiable gene).[36]

---

expression host may then be grown in culture with enhanced expression of the target gene.")

[33] *See* Decision at 104-108 (submitted herewith as Exh. B to Nielsen Decl.).

[34] *See* claims 107-109 of CGI's '390 application (recitation submitted herewith as Exh. K to Nielsen Decl.) (emphases added).

[35] *See* October 2, 2006 CGI Memo at 5 (Docket No. 128).

[36] *See In re Schaub*, 537 F.2d 509, 512 (C.C.P.A. 1976) ("When that species of the generic invention which has been completed prior to the effective date of the reference would make

CGI never acknowledged or addressed this point in its October 2, 2006 Memorandum, and it certainly did not provide the Court with any evidence establishing that one of ordinary skill in 1989 would have recognized amplifiable genes and regulatory sequences as species of the same genus, or that one of ordinary skill in 1989 would have considered inserting a regulatory sequence to be obvious in view of inserting an amplifiable gene. Nor can it do so now in any revised submission – no such evidence exists. Because CGI cannot provide such evidence, it must instead prove that Skoultchi conceived what "Japan" disclosed – insertion of a regulatory sequence – before August 29, 1989.

None of the documents or testimony on which CGI relies and that are in evidence show that Skoultchi ever thought of inserting only a regulatory sequence to alter expression in a primary cell, or that one of ordinary skill in 1989 would have viewed inserting a regulatory sequence as obvious in view of inserting an amplifiable gene. Those documents either say nothing at all about the nature of the inserted DNA, or refer only to inserting an amplifiable gene.[37] That does not prove Skoultchi conceived inserting a regulatory sequence alone into a primary cell to alter expression in that primary cell, which is the method encompassed by claims 107-109.[38]

_____

obvious to one of ordinary skill in the art the species disclosed in the reference, the reference may be said to have been 'indirectly antedated.'").

[37] The document dated July 25 refers only to a "DHFR$^{mut}$" gene (a mutant DHFR gene) and to "amplification of DHFR" in "CHO cells." *See* CGI "Record," Court Docket No. 129-6, at CGI 3231. In its October 2, 2006 Memorandum, CGI suggested the Board found that the July 25 document described insertion of either a regulatory sequence or an amplifiable gene into the genome of a cell. *See id.* at 2 (Court Docket No. 128). The Board found no such thing; rather, it observed that the document referred to inserting a "mutant DHFR sequence." *See* Decision at 103 (relevant pages submitted herewith as Exhibit B to Nielsen Decl.). The document dated August 29 discusses only the use of an "amplifying gene." *See* CGI "Record," Court Docket No. 129-11 (Court Docket page 10 of 17) to 129-12 (Court Docket page 12 of 18).

[38] Analogous cases include, *e.g., In re Borkowski*, 505 F.2d 713, 718 (C.C.P.A. 1974) ("We find

**4.      CGI admitted to the Patent Office that Skoultchi's "invention" excluded gene expression in a primary cell, and that it required an amplifiable gene**

CGI cannot reconcile its current arguments regarding the scope of "Skoultchi's invention" with its earlier admissions to the Patent Office. For example, in response to a rejection over prior art, CGI said that the "subject invention" excluded expression in a "native host" (*i.e.*, a primary cell):

> [I]n accordance with the subject invention, one provides for the transfer from the natural host, which is not likely to be a convenient expression host, to an expression host of known characteristics, which allows for efficient expression of the desired product. Thus, *it follows naturally from the subject invention, that one would not use the native host for expression*.[39]

CGI also told the Patent Office that Skoultchi's "invention" comprised insertion of an "amplifiable gene," and again that the expression takes place in an "expression host" (secondary cell):

> *In the present invention, a construct comprising the amplifiable gene* and a portion of the target gene is used to transfect human cells. Therefore, in the first step of the subject invention, one is not transfecting the host with the gene for expression, but rather the human target host for targeting the desired gene. . . . *[I]n the* **[second step of the]** *subject invention, the human genomic DNA is now transformed into the expression host*. Therefore, it is not merely a matter of

---

ourselves in agreement with the board's decision to the extent that it held the proofs submitted under Rule 131 'taken as a whole' to be unconvincing. The original and supplemental affidavits together with the accompanying comments do not adequately explain what facts or data appellants are relying upon to show a completion of their invention prior to April 13, 1961. The affidavits for the most part consist of vague and general statements in the broadest terms as to what the exhibits show along with the assertion that the exhibits describe a reduction to practice. This amounts essentially to mere pleading, unsupported by proof or showing of facts."); *In re Noxon*, 210 F.2d 835, 840 (C.C.P.A. 1954) ("It is entirely clear that a proper showing of conception under Rule 131, supra, requires proof of the most convincing character. That proof cannot be supplied by speculative analysis tending to enlarge upon a normal and reasonable interpretation of the contents of the exhibits.").

[39] U.S. Patent Application Serial No. 07/432,069, "Response under 37 C.F.R. § 1.116" dated September 18, 1991, at 4 (emphasis added) (relevant pages submitted herewith as Exhibit C to Nielsen Decl.).

using primary and secondary transfectants, but rather two different steps, where the steps are totally different as to manner and purpose.[40]

## III.    CONCLUSION

For the foregoing reasons, ARS respectfully requests that the Court deny CGI's request to reverse the Board's decision that claims 107-109 are unpatentable over "Japan."

Dated: October 1, 2007                                    Respectfully submitted,


                                                  By:    /s/ Kevin M. Flowers
                                                  Fred A. Kelly, Jr. (BBO # 544046)
                                                  Jill E. Uhl (BBO # 656283)
                                                  NIXON PEABODY LLP
                                                  100 Summer Street
                                                  Boston, MA 02110
                                                  Tel: 617-345-1000
                                                  Fax: 617-345-1300

                                                  Kevin M. Flowers (*pro hac vice*)
                                                  Matthew C. Nielsen (*pro hac vice*)
                                                  MARSHALL, GERSTEIN & BORUN LLP
                                                  6300 Sears Tower
                                                  233 S. Wacker Drive
                                                  Chicago, IL  60606-6357
                                                  Tel: (312) 474-6300
                                                  Fax: (312) 474-0448

                                                  Counsel For Plaintiff APPLIED RESEARCH
                                                  SYSTEMS ARS HOLDING, N.V.

---

[40] U.S. Patent Application Serial No. 07/432,069, "Response" dated May 1, 1991, at 6 (emphasis added) (relevant pages submitted herewith as Exhibit D to Nielsen Decl.).

18

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **ARS REVISED OPPOSITION TO CGI'S MOTION TO REVERSE THE BOARD'S DECISION THAT CGI CLAIMS 107-109 ARE UNPATENTABLE OVER "JAPAN," DECLARATION OF MATTHEW C. NIELSEN** in support of the same, and all exhibits cited therein are being filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the above date.

Additionally, two courtesy copies are being dispatched via UPS for next business day delivery to the Court.

 /s/ Matthew C. Nielsen
Counsel For Plaintiff APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.