# EXHIBIT D



27949/CELL-003 US

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231, on <u>MAY 1, 1991</u>
(Date of Deposit)

Date: <u>May 1, 1991</u>   By: <u>Vicki A. Naso</u>

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of | ) |
| A. Skoultchi | ) Examiner: S. Ziska |
| Serial No. 07/432,069 | ) Art Unit: 184 |
| Filed: November 6, 1989 | ) RESPONSE |
| For: PRODUCTION OF PROTEINS USING HOMOLOGOUS RECOMBINATION | ) |

RECEIVED GROUP 1
MAY 0 9 1991

Commissioner of Patents and Trademarks
Box Non-Fee Amendment
Washington, D.C. 20231

Sir:

In response to the Official Action of February 4, 1991, the Examiner is respectfully requested to withdraw the rejections of Claims 1-25, the only claims in this application, and pass this application to issue, in view of the following remarks and the accompanying declaration.

It is noted that the Examiner has withdrawn a number of the rejections and objections of the prior Office Action.

The retention of the rejection of Claims 1, 8, and 20 under 35 U.S.C. §112 is respectfully traversed in view of the following remarks and accompanying declaration. The Examiner's attention is directed to the experimental section, lines 32 ff. The plasmid which is employed, pUCD, contains the DHFR cassette. Into this plasmid is introduced the homologous sequences for tPA. See page 12, line 34, to page 13, line 7. Thus, the Examiner errs in suggesting that Applicant solely

has a selective marker, the gene for hygromycin B resistance, since the use of the amplifiable gene DHFR is clearly included. Thus, the Examiner is respectfully requested to withdraw this rejection.

The next rejection concerns the use of a mutant DHFR gene. First, it should be noted that Applicant's invention utilizes the well known capabilities of amplifiable genes. There is an extensive literature of how to use these genes and it is not seen why Applicants need not build on such literature. A number of references are given on page 2, lines 25 to 33. Secondly, DHFR is ubiquitous among cells and bacterial or enkaryotic enzymes may be selected for higher $K_m$. Based on the higher $K_m$ it would be anticipated that the methotrexate would bind more strongly to such gene, thus enhancing the amplifiable effect. See page 11, lines 1-4. The Examiner is therefore respectfully requested to withdraw this rejection.

The next rejection is under 35 U.S.C. §103 and is primarily based on Kamarck. Let us first note what Kamarck does. Kamarck co-transforms mouse cells with genomic DNA and DNA carrying a marker. There is no suggestion that there is any homology between the genomic DNA, which is human DNA, and the recipient mouse cells. Kamarck then selects for those cells which are transformed by means of the marker gene. These cells are then screened for expression of CEA using a FACS and fluorescent antibodies. DNA from cells expressing CEA are then used in the same manner as the DNA previously used for transforming host cells. Kamarck then screens the resulting transfectants for the highest expression of CEA. Kamarck describes this particular cell line as an "amplificant."

Nowhere does Kamarck employ homologous recombination, an amplifiable gene, nor the process of homologous recombination in one host, transferring genomic DNA to a different host, amplifying by means of an amplifiable gene, and then producing the desired product. The only similarity

USSN 07/432,069                    2                          70

between Kamarck and the subject invention is that both use genomic DNA in a transformation step, but the similarity ends there.

Kamarck requires transfection of genomic DNA in conjunction with a marker. In the subject invention, the second transfection has the marker in cis with the target gene. The presence of the marker in conjunction with the target gene is as a result of a prior homologous integration, where the marker is introduced in proximity to the target gene. There is no suggestion of such an event in Kamarck.

Nor is Kamarck interested in a process for amplification, so as to obtain a plurality of copies of the target gene to enhance expression. Rather, Kamarck relies solely on a clone which is efficient in expression and has "amplified" the gene by an unknown mechanism (p5352, second column). There is no evidence for multiple copies being present, only enhanced expression. Furthermore, Kamarck specifically states, "Although it is unlikely that more than one gene is present in the secondary transfectants, multiple hybridizing poly(A)$^+$RNA bands were observed. It is possible that genes truncated during the transfection and amplification process are transcribed, resulting in additional mRNA species. Alternatively, both the transfectant mRNAs and the multiple message species in LoVo may represent products of differential RNA splicing." While Kamarck refers to an "amplification" process, there is no explanation as to what this process entails. Rather, Kamarck teaches that based on hybridization of cLV7 to genomic DNA, there is an upper limit of 7-9 CEA-related genes on chromosome 19. He then goes on to say that there may be an even larger number of CEA-related molecules if differential RNA splicing occurs. What conclusions may be drawn from this teaching is not clear, but one conclusion is that the "amplificant" has integrated a multiple number of genes which were present on the DNA introduced into the transfectant or there was a multiple integration during

USSN 07/432,069                                3

transfection. There is clearly no suggestion by Kamarck of any intent or purpose in expanding the number of genes. Rather, Kamarck is quite satisfied with the enhanced production of CEA, without any understanding of how it was achieved.

The Examiner states that both Kamarck and the subject invention attempt to increase heterologous protein expression. With all due respect, this is not true. Kamarck does not attempt to increase heterologous protein expression, rather he depends on the naturally existing sequence to provide for high levels of expression. What Kamarck apparently does is look for transfectants, where integration may have provided for multiple copies of the gene. By contrast, the subject invention is directed to a general capability for amplification without gene isolation. Thus, in the subject invention, the invention is concerned with amplifying single copy genes to provide for multiple copies.

Applicant's attorney certainly agrees with the Examiner that the selectable marker is one of choice and is not relevant to the subject invention.

The second comment the Examiner makes concerns the integration of the selection gene and amplifiable gene into the genome. Kamarck uses two different pieces of DNA, one genomic DNA of unknown sequence comprising unknown genes and a second piece of DNA comprising the marker. Thus, there is no certainty that the marker and genomic DNA will integrate at the same site. Again, this is an important distinction, since if the amplifiable gene and marker gene are not present in juxtaposition to the target gene, when the DNA is introduced into the expression host, one will not be able to select for expression hosts having the target gene, nor will one be able to amplify the target gene.

In a first step, a fragment carrying the CEA gene becomes integrated into the mouse genome along with a marker. The mouse genome is then fragmented and the same host cell strain transfected with the mouse DNA. Transfectants are

USSN 07/432,069                4

screened for high expression. There is no evidence of amplification, only higher CEA production, which could be the result of a variety of mechanisms including integration in front of an enhancer. Whatever the rationale, Kamarck does not suggest the subject process.

It would appear that the Examiner would equate (1) using a gene fragment used to transfect twice with (2) the subject process of homologous recombination of an amplifiable gene directed to a target gene in a genome. Kamarck is totally devoid of such a concept. Kamarck is not interested in producing a number of different human proteins at high level, but rather is only concerned with CEA and relies upon high levels of expression due to the fact that the gene is introduced in two steps into successive hosts twice and then selects for integrants by FACS separation which provide high levels of expression. By contrast, the subject invention is useful with any gene and does not solely rely upon the random circumstance of a desirable integration, but provides for amplification of the gene, so as to provide for multiple copies in the expression host.

In light of the Examiner's rejection, the question the Examiner is requested to address is not whether the subject invention is a composite of known techniques, but whether it was obvious to select the various techniques which are employed in the subject invention from the numerous references which the Examiner has brought together in light of the subject disclosure. The Examiner does not need the Kamarck reference to suggest that there is an interest in providing for high levels of expression of proteins of interest. Rather, in light of Kamarck, would one have considered the possibility of using homologous recombination to introduce an amplifiable gene into a human genome, where the amplifiable gene is directed to a target gene of interest. Then, would one have considered fragmenting the genome and transforming the genomic fragments into an expression host, selecting for integrants having a

USSN 07/432,069                 5                      73

selectable marker, which can be the amplifiable gene, and then amplifying the target gene to obtain high levels of expression.

The fact that Kamarck uses the same host strain twice to transfect with the same gene is a further distinction from the subject invention. The Examiner should recall that in the first transfection, human genomic DNA is used for transfection of the mouse cell. In the present invention, a construct comprising the amplifiable gene and a portion of the target gene is used to transfect human cells. Therefore, in the first step of the subject invention, one is not transfecting the host with the gene for expression, but rather the human target host for targeting the desired gene. Therefore, as to the first step of the two processes, they are totally different. In the second step, Kamarck now uses the mouse cell as the source of genomic DNA and transfects the same strain of mouse cell with the mouse genomic DNA. By contrast, in the subject invention, the human genomic DNA is now transformed into the expression host. Therefore, it is not merely a matter of using primary and secondary transfectants, but rather two different steps, where the steps are totally different as to manner and purpose.

In addition, Applicant submits a declaration by the inventor in support of the subject invention. The declaration demonstrates the successful targeting by homologous recombination of the erythropoietin gene, where the DHFR gene is introduced by homologous recombination in juxtaposition to the EPO gene. The subsequent steps for transfer of the modified genomic DNA into a host cell and amplification of the gene are described in detail.

In view of the above remarks and accompanying declaration, the Examiner is respectfully requested to withdraw the rejections and pass this application to issue.

— If in the opinion of the Examiner, a telephone conference would expedite the prosecution of the subject application, the Examiner is invited to call the undersigned attorney at (415) 494-7622.

Respectfully submitted,
COOLEY GODWARD CASTRO
 HUDDLESON & TATUM

Date: April 24, 1991        By: _____
                                Bertram I. Rowland, Ph.D.
                                Reg. No. 20,015

Cooley Godward Castro
 Huddleson & Tatum
5 Palo Alto Square
Suite 400
Palo Alto, CA  94306

20322134

USSN 07/432,069                          7