## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CELL GENESYS, INC., | ) | |
| | ) | |
| Plaintiff/Counterdefendant | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-12448-MLW |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-11810-MLW |
| | ) | |
| CELL GENESYS, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant, and | ) | |
| | ) | |
| TRANSKARYOTIC THERAPIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF CELL GENESYS, INC. IN RESPONSE TO THE COURT'S ORDER OF NOVEMBER 6, 2007

Cell Genesys, Inc. ("CGI") hereby submits this Memorandum in response to this Court's Order dated November 6, 2007. (Docket No. 192). The Court's six-part Order required, among other things, that CGI file a memorandum addressing three separate (but related) issues. Pursuant to the Court's Order, CGI details below the following issues: (1) Why Dr. Nancy Craig ("Dr. Craig") and Dr. Jac Nickoloff ("Dr. Nickoloff") should be permitted to testify as to issues they addressed in the interference below; (2) whether Dr. Randall Kaufman ("Dr. Kaufman") is

willing to testify and, if so, whether CGI should be allowed to present his testimony; and (3) whether Bertram Rowland should be allowed to testify in this proceeding. *See* 11/6/07 Order at pp. 2-3, Docket No. 192.

## I.   DR. NICKOLOFF AND DR. CRAIG SHOULD BE ALLOWED TO TESTIFY.

CGI indicated in its Response to the Court's August 13, 2007 Order[1] that it wanted to present the live testimony of Dr. Craig and Dr. Nickoloff (among others). CGI further stated that such testimony would allow the Court to gain a better understanding of these witnesses' explanations with respect to how DHFR and other selectable, amplifiable genes work, and the phenomenon of homologous recombination, while also evaluating their credibility. Applied Research Systems ARS Holding, N.V., ("ARS") opposed the introduction of such testimony on the grounds that neither Dr. Craig nor Dr. Nickoloff was identified "in this case" as an expert witness on which CGI would rely. (Docket No. 187, pp. 1-4).

This Court's November 6, 2007 Order first directs CGI to "explain [ ] why its failure to file expert witness reports pursuant to Federal Rule of Civil Procedure 26(a)(2) for Dr. Jac Nickoloff and Dr. Nancy Craig was either substantially justified or was harmless within the meaning of Federal Rule of Civil Procedure 37(c)(1)."

CGI's answer is threefold. First, CGI *did* expressly give notice, pursuant to Fed. R. Civ. P. 26(a)(2), of its intention to rely on three witnesses – Dr. Craig, Dr. Nickoloff and Rowland. CGI filed its disclosure on July 12, 2005 in the action styled *Cell Genesys, Inc. v. Applied Research Systems, ARS Holding, N.V.*, C.A. No. 04-CV-1407 (JDB) in the United States District Court for the District of Columbia. That case was subsequently transferred to this Court as Civil Action No. 05-12448-MLW, which was consolidated with Civil Action No. 04-11810.

---

[1] The Court's August 13, 2007 Order stated that "a §146 proceeding is an option intended to provide an opportunity to present live testimony on disputed issues to enhance judgments concerning credibility." (Docket No. 172, p. 34).

Second, even if this Court finds that CGI's notice under Fed. R. Civ. P. 26 was technically inadequate, ARS (and the Court) was already on notice that CGI intended to rely on the expert testimony of these two noted scientists.

Third, assuming *arguendo* that CGI failed to comply with Fed. R. Civ. P. 26(a)(2), such non-compliance was harmless. Both the Federal Rules of Civil Procedure and First Circuit jurisprudence provide that where a failure to comply with the Fed. R. Civ. P. 26 notice provisions is harmless, the sanction of exclusion should not be imposed. *See, e.g.,* Fed. R. Civ. P. 37(c)(1). Indeed, ARS advised the Court and CGI that if CGI was to rely on Drs. Craig or Nickoloff at hearing or trial, it would not seek further cross-examination before such hearing.

A.    **CGI Complied With Rule 26(a).**

Contrary to ARS's argument, CGI *did* comply with Fed. R. Civ. P. 26(a) by disclosing the identity of Drs. Craig and Nickoloff. In fact, ARS was on notice that CGI would rely on the expert testimony of Drs. Craig and Nickoloff far in advance of the Court's August 13, 2007 Order.

In 2004, CGI filed the first action under 35 U.S.C. §146 relating to the underlying interference in the United States District Court for the District of Columbia. On July 12, 2005, CGI served notice, pursuant to Rule 26, of the witnesses on whom it intended to rely. *See* Declaration of Steven Kelber ("Kelber Dec."), Exh. 1. Because the testimony taken before the Board applied to the interference action in the District Court, CGI made an unmistakable assertion of the witnesses it intended to call and rely on in the § 146 proceeding. CGI's statement included the original witnesses who testified before the Board, along with those witnesses who had not previously testified. Specifically, CGI's Notice expressly provided as follows:

> Cell Genesys, Inc. herewith supplements the disclosure of people and things made throughout the course of the interference below, Interference 105,114 and identifies further individuals pursuant to FRCP26(a)(1)(A), and documents not previously identified, pursuant to FRCP 26(1)(B). No other supplementation of the disclosures below is appropriate at this time. Cell Genesys, Inc expressly notes that the materials and individuals relied on below constitutes its full original disclosure under Rule 26(a) and Cell Genesys, Inc. may rely on those individuals and things. (emphasis supplied).

Kelber Dec., Exh. 1, p. 1.

Accordingly, ARS's October 15, 2007 Response to this Court is inaccurate. In particular, ARS stated that:

> CGI should not be permitted to present any expert testimony from Drs. Nickoloff or Craig because CGI neither identified them as expert witnesses who might testify live in this case, nor submitted any Fed. R. Civ. P. 26(a)(2)(B) expert reports in this case.

Docket No. 187, p. 2. In fact, as detailed above, ARS's statement is flatly wrong. CGI *did* disclose Drs. Craig and Nickoloff in July 2005 as witnesses in which it would rely when it expressly noted that it would rely on witnesses presented before the Board. ARS never – until over two years later in October 2007 – raised *any* argument that CGI's Rule 26 submission was inadequate or failed to provide it with the requisite notice. As CGI presented only four witnesses before the Board on whom it seeks to rely, including Drs. Craig and Nickoloff and Rowland, ARS could hardly have been in doubt as to whom CGI was referencing in its disclosure.[2]

Moreover, Fed. R. Civ. P. 26(a)(2)(B) specifies that the expert reports shall:

> [C]ontain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a

---

[2] CGI also presented the Declaration of Dr. Michael Heartline. He was deposed. Dr. Heartline was an employee of TKT, and may still be. Given the decision of ARS to make TKT a party to this lawsuit, the procedural problems of presenting Dr. Heartline as a witness on behalf of CGI are substantial. Should his testimony be required, CGI notes that TKT may be able to present him as a witness when and if Count 2 of ARS's Complaint is pursued.

4

> list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

While this Rule specifies content for these disclosures, it does not identify format. The information disclosed by CGI, which is contained in the evidence of record which ARS had before this case even began, satisfies the requirements of the Rule. *Rossi Pena-Crespo v. Commonwealth of Puerto Rico*, 408 F.3d 10, 13 (1st Cir. 2005). Tellingly, ARS fails to provide any basis for its argument that the Declarations and deposition transcripts of Drs. Craig and Nickoloff "are not expert reports." Docket No. 187, p. 2.

It is also important to note that this Court stated in its August 13, 2007 Order that an action brought under § 146 does not spring anew from the complaint, but is "intended to provide an opportunity for further, live testimony by witnesses who presented affidavits or depositions to the Board." Docket No. 172, p. 2. The Court further observed that by statute, the testimony presented to the Board, "when admitted shall have the same effect as if originally taken and produced in the suit." *Id.*, p. 22. The sworn testimony in question (e.g., Declarations and deposition transcripts) was expressly admitted by the Court on oral motion on January 18, 2006. *See* Kelber Dec., Exh. 2.

In sum, as demonstrated in the Declarations and transcripts at issue, this expert testimony meets every aspect and requirement of Fed. R. Civ. P. 26(a)(2)(B). The Declaration of Nancy Craig (Exhibit 2026), her resume (Exhibit 2027), the First Declaration of Jac Nickoloff (Exhibit 2029), and the Second Declaration of Jac Nickoloff (Exhibit 2030) are already of record in this case (Oral Motion, January 18, 2006 hearing). The transcripts of Drs. Craig and Nickoloff's depositions are also of record in this case. (Exhibits 2057 and 2058). For the convenience of

this Court, these documents are attached to the Kelber Declaration submitted herewith as Exhibits 2 through 8.

As such, given CGI's compliance with the Federal Rules of Civil Procedure, and this Court's recognition of the importance of its role in hearing live testimony corresponding to the testimony presented below, testimony by Drs. Craig and Nickoloff is appropriate.[3]

### B.    ARS Had Notice of CGI's Reliance on the Expert Testimony of Drs. Craig and Nickoloff Even Beyond CGI's Rule 26 Disclosure.

If this Court determines that CGI's Rule 26 disclosure was somehow inadequate, CGI submits that it otherwise provided notice to ARS of its intention to rely on the expert testimony of Drs. Craig and Nickoloff, and such notice was sufficient.  Assuming *arguendo* that CGI failed to comply with a technicality required by Rule 26, the purpose of the Rule – that of giving notice to the opposing party of expert testimony that a party will rely on -- was still achieved and ARS was not prejudiced in any manner.

Indeed, CGI gave clear and unmistakable notice of its intention to rely on the evidence submitted before the Board below.  The language of 35 U.S.C. § 146 is instructive.  It provides, in pertinent part, that:

> In such suits the record in the Patent and Trademark Office shall be admitted on motion of either party upon the terms and conditions as to costs, expenses, <u>and the further cross-examination of the witnesses as the court imposes,</u> without prejudice to the right of the parties to take further testimony. (emphasis supplied).

---

[3] Furthermore, this matter (like most Interferences), is technically and procedurally complex.  The patent and application involved are directed to the modification of living organisms using a technique called Homologous Recombination.  While well developed and industrial deployed technology now, some 20 years after its invention, it is nonetheless complex.  CGI respectfully submits that the Court may benefit from the opportunity to ask these noted experts questions to resolve any ambiguities.

In a hearing before this Court on January 18, 2006, the Court raised the issue of the testimony offered below by, *inter alia*, Drs. Craig and Nickoloff, and how and under what circumstances it could be introduced and relied on.

> THE COURT:  Then you told me you were going to file a joint motion for the filing of the interference record. That's pretty straightforward. Isn't it? You can agree on, at least, that. Can't you?
>
> MR. KELBER: Will do.
>
> THE COURT: All right. Should I save a tree, should I grant the motion right now? Somebody want to make the motion orally?
>
> MR. KELB ER: So moved.
>
> MR. FLOWERS: And we have no opposition, your honor.
>
> THE COURT: All right. When do you want to file that?
>
> MR.KELBER:  If it would serve the Court, your Honor, in a week.
>
> THE COURT: That's fine. You know, is that something I'm going to need to [go] though before we get to motions for summary judgment.
>
> MR. KELBER: Prior to summary judgment, your Honor, <u>the parties would rely on the record below for summary judgment motions, yes.</u>

Kelber Dec., Exh. 2, Transcript pp. 6, l. 24 – p. 7, l. 19 (emphasis supplied).

As demonstrated above, CGI clearly provided notice of its intention to rely on the record below, including the testimony of Drs. Craig and Nickoloff. Not only did ARS know the nature of the expert testimony at issue, but it knew *the exact words* of their testimony by Declaration and transcript. Therefore, ARS did not need, nor could it benefit from any additional expert report.

Moreover, ARS failed to request cross examination as it was entitled under the language of 35 U.S.C. § 146, and had the opportunity to further cross examine these witnesses, but

specifically declined the Court's express invitation to do so. The Court indicated at the January

18, 2006 hearing that ARS could further depose these witnesses:

> [T]he law permits the PTO record to be supplemented by further testimony. And if you really want to fight about this, I'll read what you write, but my inclination going in would be to permit further cross-examination. If it turns out to be irrelevant once I get educated about the case and focus on it, then you've spent some time asking some extra questions. But I don't want to get to summary judgment and find there's an ambiguity in the record that frustrates my ability to make a properly informed decision.

Kelber Dec., Exh. 2, pp. 8, l. 25 – 9, l. 8. This invitation was made well before the close

of expert testimony. ARS determined that such cross examination was not necessary:

> MR. FLOWERS: Your Honor, if I may? I think the parties agree that if anyone is just going to testify at a hearing or a trial, they're going to be subject to cross-examination. It's strictly those witnesses who provided direct testimony in the interference and then were cross-examined in the interference proceeding. <u>That we're not going to go forward now and try to notice a few depositions of those folks to cross-examine them on direct testimony that was put in in the interference.</u>

*Id.*, p. 9, ll. 9-17 (emphasis added).

Thus, ARS knew that CGI would rely on the testimony of Drs. Craig and Nickoloff, it

was specifically advised that these witnesses may provide "further testimony," and yet still

elected not to further cross-examine them, although the Court would have permitted it. ARS

declined because it had already cross-examined these witnesses on their expert positions, and

would have the opportunity to do so again at hearing.

The purpose of Fed. R. Civ. P. 26(a)(2) is to provide notice of intended reliance on an

expert witness to the opposing party. In this case, ARS received more than just the identity of

such witnesses -- it also had the substance of the expert testimony, including its own cross

examination of these witnesses, as well as the opportunity to further cross examine these

witnesses. ARS chose simply to rely on its right to cross examine these witnesses at trial. Given

the context of a proceeding under 35 U.S.C. § 146, it is not clear that disclosure under Fed. R.

Civ. P. 26(a) is even necessary. Indeed, it makes no logical or procedural sense for a party to be

required to provide notice of reliance on witnesses and their testimony, where a party has already

relied on their testimony in a proceeding before the Board, and where the District Court has

admitted evidence in the Board proceeding below as part of the record in the current action.

Thus, even if this Court determines that CGI failed to meet the requirement under Fed. R. Civ. P.

26(a), CGI's failure to do so was substantially justified in light of ARS's prior notice of CGI's

reliance on certain expert testimony.

### C.    If This Court Determines that CGI Failed to Comply with Fed. R. Civ. P. 26(a), Such Failure Was Harmless.

If this Court determines that CGI somehow failed to meet the requirements of Rule 26(a)

notwithstanding its Rule 26(a) submissions and its statement at the January 18, 2006 hearing that

"the parties would rely on the record below," such failure was harmless under Fed. R. Civ. P.

37(c)(1). *See Diomed, Inc. v. AngioDynamics, Inc.*, 450 F. Supp. 2d 130, 137 (D. Mass. 2006)

(failure to comply with "the letter of Rule 26(a)" did not demonstrate sufficient prejudice to

warrant wholesale exclusion given that defendants were otherwise alerted to applicable

information). Since ARS was already on notice that CGI would rely on the testimony of these

witnesses, it had already cross-examined the witnesses once and declined to do so again before

trial, ARS was not prejudiced by a failure to receive another notice of these experts' testimony.

This proceeding has spanned three years. During the pendency of this action, there has

not been any change in the law or alteration of the facts to justify ARS's current position, given

its earlier election to refrain from further cross-examination of Drs. Craig and Nickoloff. If there

had been such a change in the law or facts, ARS should have provided notice to the parties and

9

the Court in order to reasonably rely on the need to depose Drs. Craig and Nickoloff as a result of such a change. ARS made no such submission providing that notice.

ARS has never changed its expressed position that it will not further cross-examine the witnesses testifying below, unless they appear at a hearing. If CGI had filed yet another paper informing ARS of its intention to rely on these experts, it would not have altered the course of this proceeding. As the record before this Court reflects, ARS still would have passed on the opportunity to depose them. *See* Kelber Dec., Exh. 2. Accordingly, to the extent actual notice under Rule 26(a) was not provided (although CGI contends that it was) and to the extent that such failure to provide that notice was not justifiable (although CGI contends that it was), ARS would not have proceeded any differently. Therefore, any failure by CGI to submit a more traditional filing under Fed. R. Civ. P. 26(a)(1) was harmless, and as a result, exclusion is not warranted.

## II.    BERTRAM ROWLAND SHOULD BE ALLOWED TO TESTIFY.

The Court's November 7, 2007 Order requires that CGI "address the issue of whether Bertram Rowland should be allowed to testify despite the earlier representation by CGI that he would not do so and ARS's reliance on that representation in not taking his deposition."

In response to the Court's August 13, 2007 Order, CGI identified Bertram Rowland ("Rowland"), CGI's principal witness in support of its position that Japan was not prior art to CGI, as a live witness. (Docket No. 178). Rowland's testimony before this Court would comprise his prior testimony -- in the form of a Declaration and deposition testimony -- from the Board proceeding. ARS opposed the identification of Rowland on the grounds that CGI earlier advised ARS that there was no need to issue a subpoena to Rowland because CGI did not intend to introduce Rowland's testimony in this proceeding. (Docket No. 187).

Rowland should be permitted to testify for four reasons. First, the Court's August 13, 2007 Order excluding evidence gathered by ARS over a three-year period dramatically changed the landscape of this case. This Court previously determined that CGI *could* rely on certain evidence and testimony that entirely negated the need for the introduction of Rowland's testimony. In light of the Court's recent Order excluding this evidence, CGI now needs Rowland to testify in order to resolve issues going to the credibility of Rowland's testimony.

Second, ARS did not rely on CGI's representation that Rowland would not testify in making the determination not to take his deposition. As noted above, ARS specifically and expressly told this Court that it would not cross-examine witnesses testifying before the Board who already had been cross-examined, as it would have an opportunity to cross-examine them at the hearing or trial. Rowland, in this respect, was no different from Drs. Craig or Nickoloff, since he had also testified below.

Third, the Court's dramatic shift in its treatment of evidence between its Order of August 9, 2006 and its Order of August 13, 2007, creates a need for a balance of equities. The Court originally endorsed a stipulation advanced by ARS permitting reliance on a specific written record on a case-stated bases. Subsequently, the Court determined that evidence not presented to the Board must be excluded. The Court's August 13, 2007 decision essentially recasts the Court into a Court of Appeals, giving it an enhanced responsibility to make credibility determinations. The Board's determination of credibility or lack thereof with regard to Rowland was based on unreasonable assumptions, including the assumption that Rowland should have remembered names discussed at a meeting when he was not present, and that he was the author of the central document relied upon by CGI, the minutes of a special meeting of the CGI Scientific Advisory Board on July 24-25, 1989. No one ever asked Rowland when he was present, or if he directed

11

the document be prepared. If in fact this Court's principal role is to hear live testimony in order to make enhanced judgments as to credibility, there can be no question that Rowland is the most important witness this Court can hear. As ARS will have the right to cross-examine Rowland at hearing or trial, there is less prejudice involved in permitting Rowland to testify than in refusing to hear his testimony.

Fourth, there is no prejudice to ARS. CGI is willing to allow ARS to depose Rowland as to his direct testimony before the Board *before* Rowland testifies before this Court. ARS can then use the testimony for the purposes of impeachment. Nevertheless, whatever ARS would learn in another deposition could have been elicited through the exercise of due diligence when ARS had the opportunity to take testimony from Rowland below. Such testimony would therefore be barred by the Court's August 13, 2007 Order. CGI agrees to waive application of the restraints on evidence applied against it, in order to allow this Court to have the opportunity to make this essential credibility determination.

### A.    The Changing Landscape.

CGI's representation to ARS that it would not call Rowland as a witness at trial was premised on its understanding of the Court's prior instruction that the parties could pursue new fact discovery.[4] Indeed, ARS took this fact discovery, which included testimony of essential witnesses with knowledge that was not within CGI's control or knowledge during the interference.

For example, George Savage, who was unknown to CGI during the pendency of the interference, testified that he authored the minutes of the meeting of the SAB of July 24 - 25, 1989. He and Andrew Thompson both testified that Rowland was not present when certain

---

[4] CGI refers to and incorporates by reference the Procedural Background set forth in its memorandum in support of its motion for reconsideration or certification at Docket No. 176, pp. 1-3.

12

names were discussed. The Board had been critical of Rowland because he forgot those precise names, although Savage's and Thompson's testimony in this proceeding indicated that Rowland was not even present at that point in the meeting. Savage and Thompson were clear that Rowland did not forget that information, but rather he had not learned it in the first instance. This new testimony further verified that a principal purpose of the meeting was to bring CGI's inventor, Skoultchi, and Rowland together, so that Rowland could draft the patent application on Skoultchi's idea. This testimony further verified that a document prepared for CGI by Skoultchi for the purposes of the meeting disclosed the invention at issue, a document prepared no later than July 24, 1989, and authenticated by Mark Levin.

When the Court directed the parties to brief the issue of whether Japan was prior art to CGI, or whether CGI could successfully antedate the reference, it specifically and expressly directed the parties to rely on the testimony of Savage, Thompson and Levin, among others. The Court's instruction was reasonable, particularly given that the parties had agreed that the case would proceed on a case-stated basis. ARS had advanced a stipulation to so proceed on a specific written record, CGI accepted the stipulation, and the Court endorsed it. Accordingly, CGI advised ARS that it would not call Rowland to testify live before this Court.

More than a year later, the Court changed course, reversing its earlier instructions and excluding all the evidence that CGI had relied on in good faith. In particular, the Court directed the parties to rely only on evidence previously before the Board. As a result, the Court stripped CGI of all witnesses and documents demonstrating a date of invention in advance of August 29, 1989, aside from Rowland's testimony and the minutes of July 24 - 25, 1989. Once the Court reversed course, CGI then needed the testimony of Rowland, which had previously been unnecessary.

13

**B.    ARS Did Not Rely On CGI's Representation.**

The Court's November 7, 2007 Order assumes that ARS relied on CGI's representation

that it would not call Rowland to testify in this matter, and *because of that representation*, it

refrained from deposing Rowland.  In fact, the evidence is to the contrary.  As noted above with

respect to Drs. Craig and Nickoloff, ARS specifically represented to this Court during a hearing

in January 2006 that it would not take Rowland's deposition before any such testimony in a

hearing or trial, regardless of whether CGI elected to call him.

After CGI moved the record from the Interference into evidence, the Court specifically

asked ARS (and CGI) if it wanted to take further cross-examination of the witnesses who

testified for CGI before the Board:  The Court stated that "my inclination going in would be to

permit further cross-examination."  Kelber Dec., Exh. 2, p. 8.  Clearly, the Court was noting that

witnesses had testified before the Board, but if any testimony would be relied on, the parties

could take further cross-examination of them.  ARS expressly refused the invitation, as it applied

to Rowland:

> Your Honor, if I may?  I think the parties agree that if anyone is just going to testify at a
> hearing or a trial, they're going to be subject to cross-examination.  It's strictly those
> witnesses who provided direct testimony in the interference and then were cross-
> examined in the interference proceeding.  That we're not going to go forward now and try
> to notice a few depositions of those folks to cross-examine them on direct testimony that
> was put in in the interference.

*Id.*, p. 9, ll. 9 - 17 (emphasis added).

Like Drs. Craig and Nickoloff, Rowland, in the words of counsel for ARS, had "provided

direct testimony in the interference and then w[as] cross-examined in the interference

proceeding."  ARS specifically stated that these witnesses would be subject to cross-examination

if they testified before this Court, as Rowland certainly would be.  Accordingly, ARS indicated

they would not be deposed before trial.  ARS did not rely on CGI's representation when it

14

decided to refrain from deposing Rowland in this proceeding – it was simply following its own trial strategy as expressed by counsel.

### C.     Rowland's Testimony Will Permit this Court to Fulfill Its Essential Role.

In its August 13, 2007 decision, this Court emphasized that its principal function with respect to "further testimony" in a § 146 proceeding is to hear testimony from those who testified below in order to make enhanced judgments regarding credibility.  The Board made only one credibility finding below:  It found that Rowland lacked credibility.  The Board's finding was based on a videotape taken over CGI's objection.  The Board found that Rowland lacked credibility because it assumed that he was present for the entirety of the July 24 - 25, 1989 meeting, even though he was never asked how long he attended that meeting.  Moreover, the Board made this credibility determination by assuming that if Rowland did not author the minutes, he should have an understanding of how they came to exist.  Again, however, Rowland was never asked what role he had with respect to minutes of meetings for which he was not present.  It was not CGI's responsibility to elicit that testimony.

The Board's negative credibility decision was made without the benefit of live testimony, or the opportunity to question Rowland.  As ARS points out in its Opposition to CGI's Motion for Reconsideration, there is a world of difference between videotape and live testimony.  This Court is skilled in assessing the credibility of fact witnesses.  The only way to realize what the Court has recast as its essential role in the consideration of "further testimony" specifically contemplated by statute is to have Rowland testify and respond to the Court's questions. Rowland has confirmed that he is prepared to do so.  *See* Declaration of Kelber, ¶ 3.

Nor is this a trivial exercise.  Rowland testified in his deposition in this proceeding that he clearly remembered Skoultchi's disclosure of the invention of the subject matter of the Count

15

on July 25, 1989. If this Court finds Rowland credible, the result is dramatically altered. As a result, CGI's claims 107-109 would be patentable to it, and CGI has no other claim to assert in this proceeding. It is unclear whether ARS would continue to seek reversal of the decision finding its own claims invalid over Japan, but the case would be dramatically reduced. In balancing the equities, it is proper for this Court to permit this testimony so that it can make an enhanced credibility determination, particularly where that determination is a controlling question in the case.

### D.    ARS Is Not Prejudiced.

In its November 6, 2007 Order, the Court assumes that ARS relied on CGI's representation that it would not call Rowland as a live witness when it decided not to take Rowland's deposition. As noted above, the evidence indicates that ARS would not have taken Rowland's deposition in any event. However, if this Court is concerned about potential prejudice to ARS by allowing Roland to testify at a hearing or trial before the Court, then this Court should provide ARS with the opportunity to depose Rowland in advance of his live testimony. This solution cures any prejudice that ARS could suffer. CGI and Rowland are quite willing to provide ARS with this opportunity.

Rowland is agreeable to being deposed in California in advance of testifying before this Court. Kelber Declaration, ¶ 4. No date for hearing has yet been set, but such live testimony would not occur prior to the hearing scheduled before this Court for January 23, 2008. There is abundant time to conclude Rowland's second deposition by ARS (the first one took less than three hours) before any hearing before this Court. It is not possible for ARS to be prejudiced given such a situation.

16

For all of the foregoing reasons, CGI respectfully submits that law and equity compel the conclusion that it should be permitted to call Rowland for live testimony in this proceeding.

## III.    RANDAL A. KAUFMAN SHOULD BE ALLOWED TO TESTIFY.

This Court's November 6, 2007 Order stated that CGI should "state[ ] whether Dr. Randal Kaufman is willing to testify and, if so, address[ ] the issues discussed at the November 1, 2007, hearing concerning whether CGI should be allowed to present his testimony."

Two issues are pertinent with respect to CGI's request to present Randal Kaufman, Ph.D. ("Dr. Kaufman") as a witness providing live testimony in this matter. First, CGI must secure information as to whether Dr. Kaufman will testify willingly on CGI's behalf, as he is not subject to the subpoena power of this Court (Dr. Kaufman is a Howard Hughes Medical Institute Researcher at the University of Michigan, and resides in Michigan). Repeated calls and emails to Dr. Kaufman have not elicited a response – probably because of the fact that the University of Michigan campus is on vacation for Thanksgiving. CGI will advise this Court immediately upon receiving an indication from Dr. Kaufman as to whether he would be willing to testify voluntarily.

In the event that Dr. Kaufman is willing to testify, this Court should hear his testimony for numerous important reasons. First, as the Court is aware, the Board's decision on the two issues that it identified for determination[5] turn on technical issues involving homologous recombination and the use of amplifiable, selectable genes such as DHFR. Dr. Kaufman is well known for his experience and expertise on this subject. Indeed, ARS retained him as an expert in the Interference because of his famed expertise. ARS can hardly object now to allowing this Court to similarly benefit from that expertise.

---

[5] These issues are (1) whether CGI invented the inventive subject matter before the effective date of the Japan reference, and (2) whether CGI Claim 106 interferes with the ARS claims not found unpatentable by the Board.

Second, and even more importantly, Dr. Kaufman offered testimony that is pivotal on both issues selected by this Court for review. In particular, in connection with antedating the Japan reference, CGI relied below on the minutes of a CGI Scientific Advisory Board meeting in July 1989. Independent of Rowland's testimony, if the Board had concluded that the document reflected all of the features of the invention at issue, the Japan reference could not have been applied against CGI's claims. The Board carefully analyzed the reference *and found only a single feature to be missing from the reference. Dr. Kaufman offered testimony on this single feature.*

The Board found nothing to link the discussion in the minutes pertaining to the disclosure of Skoultchi's idea to homologous recombination. It specifically rejected the argument that pursuant to the indication in the description of that invention, one needed to know the upstream and downstream sequences of the (tPA) target indicated the method contemplated was homologous recombination. *See* First Amended Complaint, Exhibit 1 (Docket No. 2), Decision on Motion dated June 22, 2004, pp. 97 -103. The Board rejected this argument by relying on its own textbook understanding of this issue, and without relying on any testimony. Although Dr. Kaufman's textbook is quoted at length on pages 102 - 103 of the June 2004 decision, the quoted language does not discuss when the sequence of the gene target (upstream and downstream) needs to be known. In effect, the Board substituted what it sees as its own expertise and understanding for those of skill in the art. The Court of Appeals for the Federal Circuit has previously noted that this is not in accordance with the APA, and has rejected such findings. *Brand v. Miller*, 487 F.3d 862, 82 USPQ2d 1705, 1707 (Fed. Cir. 2007).

18

Instead, the Board should have taken heed of Dr. Kaufman's testimony. Dr. Kaufman

appeared as an expert for ARS below, and his deposition, Exhibit 2056, was of record below and

is herein. (Kelber Dec., Exh. 9). Dr. Kaufman testified as follows:

> Q: What did you need to know to prepare the DNA that would be used to
> effect homologous recombination?
>
> **A: Well, you'd want to know where you wanted to recombine the
> DNA, so you'd want to know the sequence target. ...**
>
> Q: You said you want to know the sequence target, the DNA sequence
> target. What do you mean by the sequence target?
>
> **A: If the intent was to put in a particular piece of DNA into the
> genome at a particular site, then you would want to know the
> sequence of that site.**
>
> Q: And is it correct that that's one of the virtues of homologous
> recombination, that you can target the DNA that you want to introduce
> into a particular site?
>
> **A: That's the definition of homologous recombination is that it's a
> site-specific integration, yeah.**

*Id.*, pp. pp. 8 - 9. Unquestionably, the author -- recognized by the Board for his expertise --

linked homologous recombination as a method of inserting DNA with the requirement in the

SAB meeting minutes that you know the target sequence, that is, the site of insertion and the

sequences upstream and downstream. The link that the Board was looking for was in the record.

*Id.* at p. 73. (*Q: So because homologous recombination is used you don't need to isolate the

gene, is that right? **A: Other than the fact that knowing the sequence boundaries of the gene,

you only need to – you don't need to have to isolate the gene intact**). Again and again, expert

Dr. Kaufman testified that homologous recombination was distinguished from other methods of

gene insertion by the requirement of knowing the sequence of the gene as well as upstream and

downstream of that gene, the target sequence.

19

This Court's ability to hear Dr. Kaufman's testimony on this subject matter will not only permit a credibility determination, but will allow it to ask whatever questions it has on this one feature. If this Court reaches a conclusion different from the Board below, the current dispute over what evidence is admissible on this issue is rendered moot.

Kaufman also offered essential testimony that will bear on the second issue identified by this Court for briefing -- interference-in-fact -- although not offered for that purpose. Indeed, during the interference, Dr. Kaufman, appearing as a witness for ARS, specifically testified that CGI claim 106 was directed to the same invention as, and interfered with, ARS Claim 24, the exact same position advanced by CGI herein. Dr. Kaufman testified in his Declaration, Exhibit 3002, that ARS Claim 18, and the claims that depend from it, including dependent claims 22 – 24, which define additional variations of the transformed cell lines of ARS's claim 18, were directed to the same invention as CGI claim 106. ¶ 610, p. 192. This is precisely why he testified that Claim 106 of CGI and Claims 18 and 20 - 24 of ARS were directed to the same invention and defined a single count. ¶ 499. *See also* ARS Motion 12, which cites Dr. Kaufman's testimony in support of the proposition that "ARS's Claims 18 and 22 – 24 should also be designated as corresponding to proposed Count A-4," the same Count that ARS argued CGI's claim 106 or a similar claim directed to the subject matter defined by Claim 106. . . . should be designated as corresponding to ARS's proposed count A-4." *Id.*, p. 17. Claims that correspond to a single Count (ARS's proposed Count A-4) necessarily define the same patentable invention. 37 CFR ¶ 1.601.

Given the widespread credit given to this expert, particularly on the question of amplifiable, selectable genes, like DHFR, it clearly would be advantageous to this Court to hear

his live testimony, and, if necessary, to question him as to why his opinion that CGI's and ARS's claims interfere was contradicted by the Board.

Respectfully submitted,

CELL GENESYS, INC.

By its attorneys,

 /s/ Steven B. Kelber
Jagtiani + Guttag
10363-A Democracy Lane
Fairfax, Virginia 22030
Tel. (703) 563-2011

T. Christopher Donnelly (BBO #129930)
Jill Brenner Meixel (BBO #652501)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts  02108
Telephone:  (617) 720-2880

Dated:  November 19, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 19, 2007.


/s/ Jill Brenner Meixel
Jill Brenner Meixel