# EXHIBIT 2

Motion Hearing 1-18-06

1

1                UNITED STATES DISTRICT COURT

2                 DISTRICT OF MASSACHUSETTS

3                    No. 1:04-cv-11810-MLW

4

5

   APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.,
6            Plaintiff

7

   vs.
8

9

   CELL GENESYS, INC. and TRANSKARYOTIC THERAPIES, INC.,
10           Defendants

11

12                    *********

13

14              For Hearing Before:
            Chief Judge Mark L. Wolf
15

16                  Motion Session

17

            United States District Court
18            District of Massachusetts (Boston)
              One Courthouse Way
19            Boston, Massachusetts 02210
              Wednesday, January 18, 2006
20

21                    ********

22

            REPORTER: RICHARD H. ROMANOW, RPR
23              Official Court Reporter
             United States District Court
24      One Courthouse Way, Room 5200, Boston, MA 02210
                  (617) 737-0370
25


0                                                          2

1                  A P P E A R A N C E S

2

3   KEVIN M. FLOWERS, ESQ.
    MATTHEW C. NIELSEN, ESQ.
4     Marshall, Gerstein & Borun, LLP
      233 South Wacker Drive
                            Page 1

Motion Hearing 1-18-06

```
 5      6300 Sears Tower
        Chicago, Illinois 60606-6357
 6      (312) 474-6615
        Email: Kflowers@marshallip.com
 7    and
       FRED A. KELLY, JR., ESQ.
 8      Nixon Peabody, LLP
        100 Summer Street
 9      Boston, Massachusetts 02110
        (617) 345-1319
10      Email: Fkelly@nixonpeabody.com
        For Plaintiff
11

12

       STEVEN B. KELBER, ESQ.
13      Merchant & Gould
        901 Fifteenth Street NW
14      Suite 850
        Washington, D.C. 20005
15      (202) 326-0300
        Email: Skelber@merchant-gould.com
16    and
       T. CHRISTOPHER DONNELLY, ESQ.
17      Donnelly, Conroy & Gelhaar, LLP
        One Beacon Street, 33rd Floor
18      Boston, Massachusetts 02108
        (617) 720-2880
19      Email: Tcd@dcglaw.com
        For Cell Genesys, Inc.
20

21

       GERALD J. FLATTMAN, ESQ.
22      Kirkland & Ellis
        Citigroup Center
23      153 East 53rd Street
        New York, New York 10022-4611
24      (212) 446-4720
        Email: Gflattmann@kirkland.com
25    and
```

                                                              3

```
 1     ERIC J. MARANDETT, ESQ.
        Choate, Hall & Stewart
 2      Two International Place
        100-150 Oliver Street
 3      Boston, Massachusetts 02110
        (617) 248-5000
 4      Email: Emarandett@choate.com
        For Transkaryotic Therapies, Inc.
 5

 6

 7

 8

 9
```

Page 2

Motion Hearing 1-18-06

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

     4

1        P R O C E E D I N G S

2        (Begins 2:00 p.m.)

3        THE CLERK:  Civil Action 04-11810, Applied Research

4  Systems, ARS Holding, N.V. v Cell Genesys, Inc. and Case Number

5  05-12448, Cell Genesys, Inc. versus Applied Research Systems,

6  ARS Holding, N.V.  The Court is now in session.  Please be

7  seated.

8        THE COURT:  Counsel, please identify themselves for

9  the Court and for the record.

10        MR. KELLY:  Good afternoon, your Honor.  Fred

11  Kelly, Nixon Peabody for ARS, the plaintiff.

12        MR. FLOWERS:  Good afternoon, your Honor.  Kevin

13  Flowers from Marshall, Gerstein & Borun, for the plaintiff,

14  ARS.

Motion Hearing 1-18-06

15          MR. NIELSEN:  Good afternoon, your Honor.  Matthew

16   Nielsen from Marshall, Gerstein & Borun, on behalf of ARS.

17          THE COURT:  Okay.  Why don't you grab those

18   microphones, each of you, and try to speak into them loudly and

19   clearly.

20          MR. DONNELLY:  Good afternoon, your Honor.

21   Christopher Donnelly for Cell Genesys, Inc.

22          MR. KELBER:  Hello, your Honor.  Steven Kelber for

23   Cell Genesys, Inc.

24          MR. MARANDETT:  Good afternoon, your Honor.  Eric

25   Marandett from Choate Hall on behalf of Transkaryotic

                                                              5

1    Therapies.

2           MR. FLATTMANN:  Good afternoon, your Honor.  Gerald

3    Flattmann from Kirkland & Ellis also on behalf of Transkaryotic

4    Therapies.

5           THE COURT:  Okay.  These two cases are now pending

6    before me, as I think you understand, although there's one

7    submission from ARS opposing the motion for sanctions that was

8    filed December 23rd, and it apparently didn't recognize that my

9    order reassigning these cases, as they were intended to be

10   reassigned, was issued December 22.  But these cases are

11   pending before me.

12          I have your joint report and ARS's motion for discovery

13   sanctions.  What I haven't received are some submissions that

14   were referenced in the joint report.  Maybe there's been some

15   evolution and you've resolved them.  But I don't have any joint

16   motion for protective order.  Are the parties intending still

17   to file such an order, a proposed motion?

18          MR. KELBER:  Steve Kelber, Your Honor.  They are.

19   We are struggling with the problem of what occurs on a remand

20   back to the Patent Office.  If either ARS or CGI is totally

21   successful in its complaint, the case ultimately goes back to

22   the Patent Office where there are no protective orders.  We --

23   it's currently CGI's turn to circulate a draft and we expect to

24   have one that the parties will modify and jointly sign up on.

25             THE COURT:  All right.  We'll set a schedule for

□                                                                    6

1    that.  But you're going to want me to sign it, and for me to

2    sign it, it's going to have to have two provisions in it.  One,

3    it applies pretrial, but you're on notice that it might be

4    modified if we have a trial.  The rules about access to

5    discovery materials are different prior to trial than in

6    trial.  The First Circuit, the leading case on that, I think,

7    is still Anderson versus Cryobank.  Second, I want you to put a

8    provision in there that essentially is intended to put you on

9    notice of what the law was in the First Circuit the last time I

10   looked, and that is the Court retains the inherent authority to

11   modify one of these orders.  I wouldn't exercise that authority

12   without giving you notice and an opportunity to be heard.  But,

13   you know, if you agree, I'm going to read it -- I'm probably

14   going to sign it.  But if I find that it's unworkable in some

15   fashion, I may want to modify it.

16             In addition -- now I think of a third thing you need to

17   put in there.  If there are submissions that refer to

18   information subject to the protective order, the submissions

19   can be made under seal, but redacted copies have to be filed

20   for the public record.  So basically -- and simultaneously

21   filed for the public record.  But basically I want a minimum

22   amount of information sealed.  It's not going to be wholesale.

23   Okay?

24             Then you told me you were going to file a joint motion

Motion Hearing 1-18-06
25    for the filing of the interference record.  That's pretty

0                                                                        7

1    straightforward.  Isn't it?  You can agree on, at least, that.
2    Can't you?
3                  MR. KELBER:  Will do.
4                  THE COURT:  All right.  Should I save a tree,
5    should I grant the motion right now?  Somebody want to make the
6    motion orally?
7                  MR. KELBER:  So moved, your Honor.
8                  MR. FLOWERS:  And we have no opposition, your
9    Honor.
10                  THE COURT:  All right.  When do you want to file
11    that?
12                  MR. KELBER:  If it would serve the Court, your
13    Honor, in a week.
14                  THE COURT:  That's fine.  You know, is that
15    something I'm going to need though before we get to motions for
16    summary judgment?
17                  MR. KELBER:  Prior to summary judgment, your Honor,
18    the parties would rely on the record below for summary judgment
19    motions, yes.
20                  THE COURT:  But before that is it -- it's possible
21    I'll need it.  Fine.  I'm ordering you -- having granted your
22    oral motion to make the interference record part of the record
23    of this case, I'm ordering that you file it by a week from
24    Friday, which is the 27th, I believe?
25                  MR. KELBER:  Will do, your Honor.

0                                                                        8

1                  THE COURT:  All right.  Then I also didn't --
2                  MR. DONNELLY:  Your Honor, sorry to interrupt.
3    Just because this is going to fall on Mr. Kelly and I, as local
                                    Page 6

Motion Hearing 1-18-06

4      counsel, could you give us some guidance on how we work this
5      vis a vis the electronic filing?
6                  THE COURT:  Yeah, do not file it electronically.
7                  MR. DONNELLY:  Should we have it delivered to your
8      chambers or to --
9                  THE COURT:  You should have it delivered to
10     Mr. O'Leary, the Deputy Clerk.  How voluminous is it?
11                 MR. KELBER:  It's six boxes, your Honor.  Six
12     bankers boxes.
13                 THE COURT:  All right.  Well, I'm not going to
14     order that you file a duplicate.  But I am -- in my order, I'll
15     authorize you to file that record in the conventional,
16     nonelectronic way.  Thank you for reminding me.
17                 MR. DONNELLY:  Thank you, your Honor.
18                 THE COURT:  Now, I haven't received a motion from
19     CGI for further cross-examination of witnesses deposed under
20     114 interference hearing.  You know, we're here.  Is this going
21     to be a dispute?  My understanding -- and I don't have a -- I
22     think I told you before, I have not done an interference case
23     before, but I've looked at a few basic things like the
24     statutes.  And it's my understanding that under 35 United
25     States Code, Section 146, the law permits the PTO record to be

0                                                                  9

1      supplemented by further testimony.  And if you really want to
2      fight about this, I'll read what you write, but my inclination
3      going in would be to permit further cross-examination.  If it
4      turns out to be irrelevant once I get educated about the case
5      and focus on it, then you've spent some time asking some extra
6      questions.  But I don't want to get to summary judgment and
7      find there's some ambiguity in the record that frustrates my
8      ability to make a properly informed decision.

Motion Hearing 1-18-06

9          MR. FLOWERS:  Your Honor, if I may?  I think the
10    parties agree that if anyone is just going to testify at a
11    hearing or a trial, they're going to be subject to cross-
12    examination.  It's strictly those witnesses who provided direct
13    testimony in the interference and then were cross-examined in
14    the interference proceeding.  That we're not going to go
15    forward now and try to notice a few depositions of those folks
16    to cross-examine them on direct testimony that was put in in
17    the interference.  I think the parties are in agreement on
18    that.
19          MR. KELBER:  That's right, your Honor.
20          THE COURT:  So does that mean that I should not
21    anticipate a motion for further cross-examination pretrial of
22    witnesses deposed in the 114 interference proceeding?
23          MR. KELBER:  That would be correct, your Honor.  We
24    don't anticipate the need for that.
25          MR. FLOWERS:  That's correct, your Honor.

0                                                              10

1          THE COURT:  All right.  Then you gave me the joint
2    report, the status report that I've ordered, which is helpful
3    in framing this.  Has there been any evolution in the parties'
4    positions?
5          MR. FLOWERS:  No, your Honor.
6          MR. KELBER:  That captures it, your Honor.
7          THE COURT:  Okay.  I'll hear you on this.  The
8    dates that you proposed for CGI -- I'm lifting the stay in the
9    case that was originally assigned to me.  I guess that's ARS
10    versus CGI, because now the two cases are here.  So the stay is
11    lifted.  The dates you've proposed in your report and in the
12    order look fine to me as far as they go.  I'll adopt them.  If
13    I understand it correctly, an open issue is whether CGI will be

Page 8

Motion Hearing 1-18-06

14    permitted any additional fact discovery after ARS responds and
15    perhaps files counterclaims, and in its present posture, the
16    issue is too abstract.  It may be that CGI doesn't want any
17    more, it may even be that it will read the counterclaims, which
18    I would have thought, you know, would mirror the claims of the
19    other case, but maybe they'll be different.  CGI -- if CGI does
20    want additional fact discovery, you know you have an obligation
21    under the local rules to confer.  We see you can agree on some
22    things and not on others.  Maybe we'll get lucky.  But I'm not
23    inclined to say now that there can't be any further fact
24    discovery, but wait for that completion of the response
25    conference if there's an issue.  And the key would be to set

□                                                                              11

1    some dates for it.  Is that okay?
2              MR. FLOWERS:  Well, that's okay with us, your
3    Honor.
4              MR. KELBER:  That's fine, your Honor.
5              THE COURT:  All right.  So on your schedule, on
6    February 23rd -- on February 23rd -- but when will the case be
7    in a posture for CGI to know whether it wants any additional
8    discovery?  Are you going to have to have ARS's reply in Case
9    Number 04-11810?
10             MR. KELBER:  That would be correct, your Honor,
11   it's shortly after -- certainly the 24th or shortly after the
12   reply is filed.
13             THE COURT:  All right.  So the reply is to be filed
14   on the 23rd of February.  What if I give you until March 2, one
15   week, to inform CGI whether you're seeking any additional fact
16   discovery, and if so, what?  And I'll give you until March 9th
17   to see whether you can agree.  And if you don't agree, any
18   motion for additional discovery shall be filed by March 16th,

Page 9

Motion Hearing 1-18-06

19    any response by March 23. You seem capable -- well, actually,

20    you didn't file any replies on the sanctions. So if there are

21    going to be any replies, they'll be filed by March 28th. I'm

22    just trying to keep this on track. I'll plan to give you a

23    hearing, if a hearing is necessary, on April 10, 3:00. I'd

24    expect I would probably be able to do this on the papers, but

25    if I schedule a hearing, it will assure it comes up on my radar

⬚                                                                      12

1    screen.

2              Is there anything else that should be discussed

3    before we get to the motion concerning sanctions, that

4    unfortunate matter?

5              MR. FLOWERS:  I don't believe so, for ARS, your

6    Honor.

7              MR. KELBER:  Not for CGI, your Honor.

8              THE COURT:  All right.  I think this is implicit,

9    but the case is still stayed with regard to TKT.  It's not

10   required to respond now because Count II remains stayed.  When

11   I said I lifted the stay, I lifted the stay with regard to

12   Count I, not Count II.  Okay?

13             MR. FLATTMANN:  Thank you, your Honor.

14             THE COURT:  All right.  I've read the motion for

15   sanctions relating to Mr. Chapell's, C-H-A-P-E-L-L's

16   deposition.  My questions are, I guess, on the following

17   general categories.  I need to know better who is Mr. Chapell?

18   Is he a party or is he sufficiently under the custody of -- not

19   custody, but control of a party, that he ought to be treated

20   like a party, so that Rule 37D applies?  I know one of the

21   e-mails, CGI said that he was under the control of ARS.  But I

22   need to know more about that.

23             Rule 37D would permit, as I understand it, if it's

Page 10

Motion Hearing 1-18-06

24     applicable, awarding an appropriate case compensation for

25     travel time.  But Rule 37D applies only if it's a party who

0                                                                    13

1      failed to attend.  So if Rule 37D doesn't apply, what rule

2      does?  It may be Rule 37A(4) that applies if Mr. Chapell is not

3      a party.  But I think by its terms, and as Magistrate Judge

4      Collings of this Court discussed in Aetna Casualty, 130 FRD 2

5      and 4, under 37A(4), I could award attorneys fees and costs

6      relating to the motion to compel, but not the travel time, I

7      think.  And I have a question as to what the amounts are if I

8      -- let's say we're under 37D, what the amounts should be?

9      Because I just hate to have a proliferation of, you know,

10     litigation about reasonable attorneys fees.

11          CGI says it had two lawyers who, you know, traveled five

12     hours each way.  You know, if you were working on this -- if

13     you were working on this case while you were traveling, maybe

14     all that effort doesn't have to be duplicated in the future,

15     you just have to refresh yourself to prepare for the

16     deposition.  So it might not be reasonable to award all of it.

17     I don't know how many hours were billed for that day and

18     whether any time was billed to other clients.  I want to be

19     sure that didn't occur.

20          So those are my questions.  Although I will say I

21     haven't read the e-mails.  I am tentatively, with an emphasis

22     on the "tentatively," of the view that if ARS wasn't going to

23     show up, knowing that CGI hadn't agreed to a postponement, you

24     should have filed a motion for a protective order.  I mean, I

25     do very few discovery disputes.  And I'm going to be disturbed

0                                                                    14

1      if anything like this comes up again, because, you know, with

Page 11

Motion Hearing 1-18-06

2    experienced professional counsel, this shouldn't happen.  You

3    know, it's nice that you're trying to accommodate each other.

4    I applaud that.  But for one reason or the other you can't

5    reach an agreement, you've got a lot of lawyers working on the

6    case and you know how to file a motion for protective order.

7    And if you don't, you might end up having to pay.  Because I

8    don't have the general sense that any busy lawyer -- and I know

9    you're all busy lawyers, you know, would hop on a train and

10   come up here if they didn't really think that the deposition

11   was going to go ahead.

12         So that's my present state of mind.  Unless you want to

13   try to settle this matter, I'm going to have to listen to this

14   and decide it.

15               MR. FLOWERS:  May I, your Honor?

16               THE COURT:  Well, unless you're going to agree,

17   it's their motion for sanctions, so they should go.  CGI should

18   go first.  Go ahead.

19               MR. KELBER:  I'll be brief, your Honor.  The

20   questions you asked center around the proposed deponent,

21   Dr. Chapell, or Chapell.  He is the sole inventor of the

22   involved ARS patent.  Our understanding is he is no longer

23   employed by ARS, but there was no need to issue a subpoena

24   because he was being -- provided ARS could identify him as a

25   witness in their opening identification of witnesses under Rule

15

1    26.

2               THE COURT:  Did somebody on behalf of ARS tell you

3    you didn't have to subpoena him under Rule 45?

4               MR. KELBER:  That is correct, your Honor.

5               THE COURT:  Who told you that?

6               MR. KELBER:  The gentleman at the table,

Page 12

Motion Hearing 1-18-06

7   Mr. Flowers.  Mr. Nielsen said they would make him available

8   without need for a subpoena.  The parties have cooperated to

9   the best of their ability, and I think it's been marked

10  cooperation.  That although subpoenas were issued in the early

11  stage when there was procedural questions, the witnesses whose

12  deposition was desired have, in all cases, been provided

13  voluntarily.  None of them are employed by the parties, but

14  they have been provided.

15              THE COURT:  Who is representing Dr. Chapell?

16              MR. KELBER:  I will have to leave that to

17  Mr. Flowers, your Honor.  My understanding is that counsel for

18  ARS will represent him.

19              THE COURT:  And, therefore, you say Rule 37D is the

20  applicable rule because he's, as a practical matter, a party?

21              MR. KELBER:  As a practical matter, your Honor, he

22  is as closely allied as a party can be.  There would be no

23  reasonable alternative way for CGI to pursue him independently

24  of ARS, having already agreed with ARS that he would be made

25  available and that they would defend him.

□                                                                    16

1               THE COURT:  Did you have any discussions about

2   whether you could go and speak to Dr. Chapell without going

3   through ARS's counsel?

4               MR. KELBER:  I don't believe we had those

5   discussions because it was identified that he would be

6   available through ARS's counsel very early on, your Honor.

7               THE COURT:  Okay.  Well, on this particular issue

8   then what does ARS say?  You know, should I treat him as a

9   representative of a party or not?

10              MR. FLOWERS:  He's definitely not a representative

11  of ARS.  He's a third party.  He's actually a venture

Page 13

Motion Hearing 1-18-06

12    capitalist here in Boston who works for, and is a member of a

13    company called Apple Tree Ventures.  He's a venture

14    capitalist.  He used to be employed by ARS back when the

15    application was filed and issued as the '071, but we have no

16    control over him.

17             THE COURT:  Who represents him?

18             MR. FLOWERS:  He has retained us, apart from -- to

19    represent him for the purposes of the deposition only.

20             THE COURT:  Who's paying you?  Do you have a fee

21    agreement with him?

22             MR. FLOWERS:  No, we don't.  We notified him of the

23    deposition.  He asked if we would represent him.

24             THE COURT:  And has it been your assumption that

25    ARS would pay you to do that?

□                                                              17

1              MR. FLOWERS:  ARS is paying our fees for everything

2     we do on the case, including any time that we spend on any

3     issue, which would include any depositions of any third party.

4              THE COURT:  Including representing Dr. Chapell?

5              MR. FLOWERS:  I don't know that ARS is actually

6     paying us for representing Dr. Chapell.  I guess, all I can say

7     is any time you --

8              THE COURT:  Well, is it customary for you to enter

9     into fee agreements with your clients?

10             MR. FLOWERS:  Usually, yes.

11             THE COURT:  Do you have a fee agreement with

12    Dr. Chapell?

13             MR. FLOWERS:  Not on this particular matter.  On

14    other matters, we do, yes.

15             THE COURT:  And on those other matters, he

16    undertakes to pay you?

Page 14

Motion Hearing 1-18-06

17          MR. FLOWERS:  Or his company, yes.

18          THE COURT:  Right.  But you don't have that kind of

19   undertaking in this case?

20          MR. FLOWERS:  We didn't sign any agreement with him

21   regarding specifically the representation at the deposition and

22   the preparation or anything like that.  We have agreements with

23   him on other matters.  We have a consulting agreement with him

24   as regards to this case, but we don't have any agreement as per

25   representation for the deposition.

□                                                                    18

1          THE COURT:  What do you mean by a "consulting

2    agreement"?

3          MR. FLOWERS:  That he'll be compensated for his

4    time that he spends.

5          THE COURT:  He's not being deposed as an expert,

6    but you're paying him?

7          MR. FLOWERS:  We have agreed to pay him to

8    compensate him for the time lost in preparing anything in

9    relation to this case, yes.

10          THE COURT:  Okay.  Well, I'm satisfied that he's

11   the functional equivalent of an employee, for these purposes.

12   Essentially he's employed by CGI.  What's that?

13          MR. FLOWERS:  He's not employed by ARS.  He's

14   employed by our law firm.

15          THE COURT:  As I say, he's the functional

16   equivalent of it.  For the purposes of Rule 37D, he has more

17   indicia of an employee or a representative of a party.  He's

18   being called as a fact witness, as I understand it, not as an

19   expert witness, nevertheless ARS is paying him.  I haven't

20   looked at the ethics of that, but I'm not interested in it --

21   I'm not focused on that at the moment.  ARS is paying him and

Page 15

Motion Hearing 1-18-06

22  is also paying his legal fees.  So I think the proper framework

23  for analysis is Rule 37D.  Now I'll decide whether to award

24  sanctions under Rule 37D.

25      What happened, according to the record?

0                                                              19

1          MR. KELBER:  This is our only fact witness

2   deposition, CGI's.  It's been a very important one.  It was

3   scheduled twice and moved at the request of ARS.  It was

4   rescheduled.  And at the time, your Honor, we were looking at

5   an impending closing date for experts.  His deposition is a

6   centerpiece of our case.  His deposition may be a centerpiece

7   of our answer.  We understood --

8          THE COURT:  Excuse me.  I'll give you guys a chance

9   to talk when he finishes, but it distracts me if you're doing

10  that, and I think it inhibits Mr. Flowers' ability to address

11  what's being argued.  So just listen.

12         MR. KELLY:  I'm sorry, your Honor.

13         THE COURT:  Go ahead.

14         MR. KELBER:  We heard, a few days before the

15  deposition, that there was a problem in scheduling.  Over a

16  series of conversations, what became apparent was that inside

17  counsel, Jill Uhl, would not be able to attend, but that the

18  lawyers and the witness were available to attend.  Our

19  understanding of the written exchange was that there was never

20  a final commitment that the deposition would not be attended or

21  defended, and we had an obligation to be there because the

22  witness's deposition had otherwise been properly noticed, your

23  Honor.  We did expect, at least, to see Mr. Kelly.  We did

24  suggest a protective order.  None was forthcoming.  That led us

25  to conclude that we needed to be here, where the deposition was

0                                                              20

Motion Hearing 1-18-06

1   noticed.  We did expect to see somebody that morning.  We

2   didn't see anybody that morning.  And that, your Honor,

3   produced the motion for sanctions.

4           THE COURT:  The day you were -- let's see.  The day

5   you were traveling is what, November the 30th?

6           MR. KELBER:  That's correct, your Honor.

7           THE COURT:  I'm looking at the e-mail traffic and

8   Mr. Flowers' declaration in support of the opposition to the

9   motion for sanctions.  And it appears that the last

10  communication on Tuesday, November 29, at 5:23 P.M., responding

11  to Mr. Flowers' e-mail at 4:32 P.M., with Mr. Kelber saying, "I

12  have no alternative but to proceed with the December 1

13  deposition as scheduled because he couldn't reach the decision-

14  makers at CGI."  Then the next response was at 12:01, which I

15  hope is one minute after noon and not one minute after

16  midnight.  Is that right?  Is that when you got it?

17          MR. KELBER:  That is correct, your Honor, in the

18  afternoon.

19          THE COURT:  And you say by that time you were

20  already on the train?

21          MR. KELBER:  We were already on the train, your

22  Honor.

23          THE COURT:  Well, if the deposition was noticed in

24  the manner that the parties agreed it could be -- it should be

25  noticed and didn't require a subpoena, as I said, I'm inclined

□                                                               21

1   to think it was CGI's -- I'm sorry, ARS's responsibility to

2   either show up with the witness or move for a protective order,

3   but I would like to hear from Mr. Flowers on that.

4           MR. FLOWERS:  Well, your Honor, at the time, the

5   deposition had not been noticed for that date.  We had agreed
                            Page 17

Motion Hearing 1-18-06

6    to -- it had been noticed for a previous date.  We had agreed a

7    couple of times to reschedule it, then the parties were

8    involved in settlement negotiations.  In fact, at the very time

9    of this exchange of messages, both on the phone and through

10    e-mail, we had actually been involved in some serious

11    settlement negotiations.  We were awaiting an actual settlement

12    offer on paper from CGI, which we received.  That was what led

13    us to originally ask to reschedule the date for his

14    deposition.  We didn't think it made sense to go forth with

15    potential unnecessary depositions, not just his, but others.

16            THE COURT:  That's what caused you to reschedule it

17    for December 1 or ask that it be later?

18            MR. FLOWERS:  No, that's what caused us to

19    reschedule it, by agreement between us, to reschedule it for

20    December 1.  There was some talk about December 2nd or December

21    1st, but eventually we said, "Yes, December 1st."  Then we

22    found out that our in-house counsel, Ms. Uhl, who's been

23    involved in this case from the very beginning, would not be

24    able to be in attendance at either any kind of preparation

25    session for the witness or for the deposition itself.  So I

 

▯                                                                      22

1    thought, at the time, when I talked to Mr. Kelber on the phone,

2    that we had made it very clear that we couldn't show up for the

3    deposition.

4            We disagreed about that.  And as I understand from your

5    Honor now, we should have filed for a protective order.  We

6    didn't think, at the time, we needed to.  We discussed it.  We

7    didn't really think we needed to since we weren't refusing and

8    Dr. Chapell wasn't refusing to appear for a deposition.  We

9    simply wanted to reschedule it for eight days later.

10            So I sent -- I sent at Mr. Kelber's request, I sent this

Motion Hearing 1-18-06

11    written, by e-mail, a notification to him, on November 22nd in
12    the afternoon saying we're -- I'm sorry, November 29th in the
13    afternoon at the end of business, as he had requested, saying
14    "We can't go forward."  I thought that was the end of it.  Then
15    I come in and I see this e-mail and so I responded to it the
16    next day and apparently he's already on a train and headed to
17    Boston.
18              THE COURT:  Okay.  And you have worked out things,
19    so -- so basically what you're telling me is you sent your
20    e-mail at 4:32 P.M., but you weren't there when Mr. Kelber came
21    back at 5:23 P.M.?
22              MR. FLOWERS:  That's exactly right, your Honor.
23    And, in fact, your Honor, it should be noted that the
24    deposition, in fact, went forward tomorrow.
25              THE COURT:  Well, I think it's an unfortunate

☐                                                                    23

1     situation, but basically the rules, the Federal Rules of Civil
2     Procedure, make it clear that if you don't reach an agreement
3     and you think you have just cause to be protected against what
4     is, in effect, a properly-noticed deposition, because you had
5     agreed to it, and I don't understand you to be arguing that
6     he'd be a fool to rely on your representations about whether
7     you can go ahead on December 1st without a Rule 45 subpoena.
8     You know, I think -- I find that ARS should have moved for a
9     protective order.
10              Now, under Rule 37D, which I find, as I described, to be
11    applicable, I see that I'm authorized to -- well, it says I
12    "may make such orders in regard to the failure as are just,"
13    and, among other things, "take any action under" -- "authorized
14    under Rule 37D(2)(A), (B) or (C)."  Well, that's interesting.
15    It says "(A), (B) or (C)."  And without looking at it -- it
                              Page 19

Motion Hearing 1-18-06

16    says (A), (B) or (C).  If I try to parse this out, I don't see

17    (A), (B) or (C) authorizing an award of essentially costs.  Is

18    there something you want to point me to?

19                THE KELBER:  We are looking at 37D, your Honor.  Is

20    that correct?

21                THE COURT:  Right.

22                MR. KELBER:  And --

23                THE COURT:  Here it is, it's in 37D itself.

24                MR. KELBER:  Yes, your Honor.

25                THE COURT:  Oh, but wait a minute.  It says:  "Any

                                                                           24

1    motion" -- oh, it says:  "In lieu of any order in addition

2    thereto, the Court shall require the party failing to act or

3    the attorney advising that party," quote, "to pay the

4    reasonable expenses, including attorneys fees, caused by the

5    failure" -- "unless the Court finds the failure was

6    substantially justified or that other circumstances make an

7    award of expenses unjust."

8         I mean, this kind of merges into the amount.  I mean, I

9    don't think I have here some willful failure.  You're shaking

10    your head in a way that indicates --

11                MR. KELBER:  I agree, your Honor, that we're not

12    seeking sanctions, and that's why we quoted the exact language

13    your Honor just read in the motion.  We're not seeking anything

14    beyond the fees and costs dedicated to being there on that day

15    for --

16                THE COURT:  What did you do while you were on the

17    train?

18                MR. KELBER:  We worked for preparation of expert

19    reports to come, because that's the big part of this case.

20    Expert reports and summary judgment motions, your Honor.

Page 20

Motion Hearing 1-18-06

21          THE COURT:  Yeah.  So -- I mean, now I'm trying to

22    figure out what's a just amount?  You got away from your

23    office.  If you want, you can turn off your telephone.  In

24    other words -- you know, it's not like it was lost time to

25    you.  You were still able to bill your client.  I ordinarily --

0                                                                   25

1     you know, if you hadn't gone and you were sitting in your

2     office billing your client --

3           MR. KELBER:  If I hadn't gone, your Honor, because

4     the deposition wasn't going to occur until today, then I would

5     have worked on cases other than this case.  But --

6           THE COURT:  But you would have had to do this work

7     at some point anyway.  Because you did it on the train, you

8     have less to do at some other point.

9           MR. KELBER:  I would have not have been

10    "entrained," if you will, for 10 hours, your Honor, to do that

11    work.  I would have done it in bits and pieces.  You do what

12    you can.  You can't carry the whole file with you.  It is, as

13    we've discussed, six or seven bankers boxes.  You do what you

14    can.  It's not nearly as effective, your Honor.  The whole

15    purpose for being on the train at that time in that place was

16    to take the deposition.  It seems --

17          THE COURT:  How many hours did you bill that day to

18    this case and other cases?

19          MR. KELBER:  I would have to pull that up.  I

20    didn't -- I didn't work, once we got into Boston, your Honor,

21    on a totally different case, a case that's in Seattle.  So

22    there are hours billed that are not devoted to this case for

23    this client.  The exact number?  I don't know.  But it would

24    have been on the order of 4 1/2 to 5.

25          THE COURT:  On this case?
                        Page 21

Motion Hearing 1-18-06

26

1          MR. KELBER:  No, your Honor, not on this case.  Our
2     bill for the actions for that day in this case is pending this
3     Court's resolution of the same.  I wouldn't bill the client if,
4     in fact, we were compensated pursuant to this Court's order.
5          THE COURT:  Don't you have to keep track of your
6     time, you keep contemporaneous time records?
7          MR. KELBER:  Your Honor, the time that Dr. Jensen
8     and I spent pursuing the opportunity for the deposition is
9     pretty close on exactly to what's being sought here, the 10
10    hours devoted plus a couple.  So you've got 30 total hours.
11    The sanctions motion itself, um, covers a lower billing
12    associate of ours, your Honor, and my time and Dr. Jensen's
13    time for the deposition.
14         THE COURT:  Well, let's see.  The time you're
15    seeking is your time and who else's time?
16         MR. KELBER:  Dr. Jensen, your Honor.  She was
17    co-counsel in the interference below.  She's my partner by
18    reason of the fact that she is not an attorney, but a patent
19    agent.  She's here in the courtroom today, but she's not at
20    this table.
21         THE COURT:  Do you want to be heard on the amount
22    or do you want to be heard on even more than the amount?
23         MR. FLOWERS:  Thank you, your Honor.  I would
24    because, you know, if we're talking about reasonable fees and
25    expenses incurred, and obviously you will, we talked about the

27

1     fact that -- I told Mr. Kelber that "I know the Courts don't
2     like to hear about he said/she said," I know that, but we had
3     two phone conversations and I sent him an e-mail and I made it

4   very clear that we were not going to be there.  I don't see how

5   any expenses or costs are reasonable.  He knew we weren't going

6   to be there.  I don't know what was in his mind, but I don't

7   see how it's reasonable that when someone tells you they're not

8   going to be there, to get on the train, go, spend the night,

9   get up the next morning, get the court reporter there, show up,

10  nobody is there, okay, now we're going to go home, and then

11  say, "Okay, 10.0 hours for me, 10.0 hours for her, 10.0 hours

12  for somebody else."

13              THE COURT:  Well, it strikes me, as I said, that it

14  was reasonable for him to get on because, according to the

15  e-mail traffic, you told his client "We're going forward with

16  this deposition on December 1."  When he got your e-mail,

17  around 4:30 on the 29th, he couldn't reach his client.  He knew

18  you didn't have a protective order and so he wrote you back and

19  said, "We've got to go ahead."  If you worked the hours you

20  probably usually work at your desk, you would have gotten that

21  e-mail.

22              MR. FLOWERS:  I was out of the office.  I wasn't at

23  home, I was out of the office.

24              THE COURT:  You could probably have looked at your

25  Blackberry or something.  But, I mean, I don't find it was

0                                                                  28

1   unreasonable for him to get on.  I don't find that it was

2   willful or malicious of you to dupe him into coming.  You were

3   trying to dissuade him.  And he was trying to tell you, in

4   effect, and in that 5:30 e-mail, you know, "I hear you, but I

5   don't agree, because my client hasn't authorized me not to

6   come."  So the rules make it clear.  I think the ball is in

7   your court to go get a protective order or try to, and that's

8   why I think they should get something.  But my inclination --

Page 23

Motion Hearing 1-18-06

9   yeah, you want to be heard on the amount?

10          MR. FLOWERS:  Just from a practical standpoint, as

11   a lawyer, your Honor, they got on the train, presumably, so

12   it's easier to work on a train.  Mr. Kelber said he was working

13   on expert reports in this case.  He didn't have the deposition

14   of Dr. Chapell yet, so, obviously, he was working on something

15   that he would have had to work on anyway.  So I don't know why

16   we would be billed for that time he was spending productively.

17   If he worked for his client, I don't know why CGI wouldn't get

18   billed for the time that he was spending working productively

19   on the case.

20          THE COURT:  That's what I was getting at.

21          MR. FLOWERS:  And, you know, I don't have

22   instruction from my client on this, but I understand you

23   feel -- you found that Dr. Chapell is effectively, in this

24   context, a representative, so 37D is applicable.  You found

25   that our notification to Mr. Kelber wasn't sufficient.  I

0                                                                     29

1   understand that we're going to be punished in some way and, mea

2   culpa, I accept that.  You know, it's the cost of them drafting

3   the motion.  Perhaps that's a reasonable sanction.

4          THE COURT:  Well, part of the problem is it's just

5   going to -- you know, if I do this in my normal fastidious

6   fashion, it's going to involve more time and expense.  And

7   there are at least three lawyers on each side here in the

8   courtroom charging, some of them, $650 an hour.  That would

9   make $165,000 a year.  It sounds like a lot of money to me.

10   But I -- as my questions to Mr. Kelber indicate, I feel that

11   not all the time on the train was wasted.  This was work that

12   was going to be done anyway.  There may be some redundancy in

13   getting back to it.

Page 24

Motion Hearing 1-18-06

14          I've sometimes found that time on the train is nice.

15     Not that many distractions.  It's harder for people to reach

16     you if you don't want to be reached.  You know, unless the

17     parties tell me that they want me to order affidavits or

18     contemporaneous time records or things like that, I'm going to

19     order CGI to pay $7,000, which has a sort of the practical

20     effect of -- well, I'm going to order that CGI pays the $7,000.

21     It has the practical effect of essentially splitting the cost

22     as a result of the misunderstanding, but that's actually not my

23     motive.  The basis for my doing that is that, as my question

24     suggests, I think some of this time they would have had to

25     spend at some point anyway, so it's not reasonable to require

                                                                    30

1      CGI to -- I'm sorry, ARS to have to pay that.  But when I was a

2      lawyer 25 years ago and now as a judge, I know if I'm working

3      on a complicated matter, I work on it, and then instead of

4      being able to also work on it the next day, I have to put it

5      down and it takes a certain amount of time to get back to where

6      I left off.  And I don't think ARS, in the circumstances that

7      -- as I've found them, you know, should have to incur all that

8      cost itself.

9          So unless you want to run the risk of getting ordered to

10     pay much more after I study the affidavits, I'm going to grant

11     the motion and order ARS to pay by a week from Friday, which I

12     think we've previously found was the 27th, $7,000 as a

13     sanction.

14          MR. FLOWERS:  We won't wait for affidavits, your

15     Honor.  We accept that.

16          THE COURT:  All right.  I mean, it's just a

17     cautionary note.  I think that takes care of -- is there

18     anything else that ought to be on the formal agenda?

                              Page 25

Motion Hearing 1-18-06

19          MR. FLOWERS:  No, your Honor.

20          THE COURT:  I'd like to see all of you, and you can

21     bring those who are in the back, too, since some of them

22     traveled some distance back, to the jury room.  I need to get

23     refreshed on what this is all about and -- you know, the one

24     thing I haven't built into this schedule, and I probably will

25     after I talk to you informally because I always do it, is at

                                                              31

1      some point before you file these motions for summary judgment,

2      I'm going to build in a time for conference.  And before we

3      have that conference, I'm going to require that you go back and

4      talk settlement again.  I'm encouraged that you did it once and

5      it was an earnest discussion.

6          You know, even though I've seen you, you know, several

7      times with particular focus on preliminary issues, I really

8      don't know very much about this case, so I have no perception

9      of the merits.  But I do feel I can be almost prophetic in

10     saying this has to be very expensive and risky business for

11     both sides.  But I have no sense whatsoever.  I can't.  I

12     haven't seen the six boxes yet and I haven't studied what you

13     have to demonstrate in an interference.  But, you know, if

14     there's some business-like resolution that, you know, would

15     permit people to coexist, you could probably each make, what I

16     would regard, as a lot of money.  You know, if you insist on

17     rolling the dice, I think it's in the nature of an

18     interference, that either one or the other could be out of this

19     business, right, if one side prevailed completely or you could

20     end up with a sort of mixed verdict, some claims survive, some

21     claims don't survive.  Then where are we?  You have to start

22     talking, again, about how you coexist.  So we'll see you back

23     in the jury room in a few minutes.

                              Page 26

Motion Hearing 1-18-06
24          And I'll add in the fact, on the record, unless I change
25     -- see I don't see how you would do this?  We'll talk about the

0                                                                                    32

1     end of the schedule.  I'm content with the time you've given
2     each other for completing the depositions, but I don't know how
3     you're going to do motions for summary judgment, you know,
4     within two weeks of the completion of discovery?  And you're
5     going to come back and ask me for more time.  So we'll talk
6     about the end of this and I'm going to build in some time (A)
7     to either confer, when you have all the discovery, again, to
8     see if you can resolve it and (B) I may want to see you before
9     those motions are filed.  The Court's in recess.
10               (Adjourned, 3:00 P.M.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

0                                                                                    33

1                    C E R T I F I C A T E
2

Page 27

Motion Hearing 1-18-06

3

4

5           I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

6    hereby certify that the foregoing record is a true and accurate

7    transcription of my stenographic notes, before

8    Chief Judge Mark L. Wolf, on Wednesday, January 18, 2006, to

9    the best of my skill and ability.

10

11

12

13

14

15

16    _____
17    RICHARD H. ROMANOW

18

19

20

21

22

23

24

25

□