# EXHIBIT 5

Paper No. _____

Filed on behalf of:    Junior Party CELL GENESYS, INC.
           Filed on behalf of Cell Genesys, Inc.
By:         Steven B. Kelber, Esquire
           Piper Rudnick LLP
           1200 Nineteenth Street, N.W.
           Washington, D.C. 20036-2430
           Tel: (202) 861-3900 (Receptionist)
             (202) 223-2085 (Facsimile)
           E-mail: steven.kelber@piperrudnick.com

## UNITED STATES PATENT AND TRADEMARK OFFICE

## BEFORE THE BOARD OF PATENT APPEALS
## AND INTERFERENCES
(Administrative Patent Judge Michael P. Tierney)

## APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.

Junior Party
(Patent 5,272,071)

vs.

## CELL GENESYS, INC.

Junior Party
(Application 08/102,390)

Patent Interference No.105,114

## DECLARATION OF JAC A. NICKOLOFF, PH.D.

INTERFERENCE 105,114
ARS V. CELL GENESYS
EXHIBIT 2029

I, Jac A. Nickoloff, Ph.D., do hereby declare as follows:

1. I received my B.A. with Highest Honors in Biochemistry from the University of California, Santa Barbara in 1978 and my Ph.D. in Biochemistry from the University of Colorado, Boulder in 1984. In addition, I completed two Postdoctoral fellowships prior to joining the faculty at the Harvard School of Public Health in the Department of Cancer Biology. I am currently Professor and Chair of the Department of Molecular Genetics and Microbiology at the University of New Mexico School of Medicine. Since 1982, I have conducted and supervised research in the field of homologous recombination and gene expression in eukaryotes, including studies in yeast and mammalian systems. I have published and lectured extensively on these and related subjects and serve as a reviewer for numerous scientific journals, including P.N.A.S., Cell, Gene, Molecular Pharmacology and Molecular and Cellular Biology. My expertise in the field of homologous recombination is further detailed in my curriculum vitae, which is submitted as Exhibit 2002.

2. I understand that an administrative proceeding in the United States Patent Office called an interference is being conducted between two parties, ARS (Applied Research Systems) and Cell Genesys Inc. I make this declaration in support of Cell Genesys.

3. I have reviewed ARS's U.S. Patent No. 5,272,071 (hereinafter "the '071 patent"; Exhibit 2001), which issued on December 21, 1993. I understand that the '071 patent claims are directed, generally, to a method of modifying the expression characteristics of a predetermined gene within the genome of a cell line (i.e., a native gene) by inserting a DNA regulatory element that is capable of altering the expression of the target gene product in that cell. Additionally, the regulatory element being inserted has to be operatively linked to the gene in question and the

-1-

insertion of the regulatory element is accomplished by means of homologous recombination. The '071 patent also claims cell lines having gene expression patterns modified by the above-described method (claim 52) and methods of obtaining a gene product obtained from such methods (claims 53-58).

4. As reflected in my curriculum vitae (Exhibit 2002), I have substantial personal experience related to homologous recombination and gene expression, both in research and literature review. My observations set forth below are within and supported by my personal knowledge and experience and may additionally be supported by reference to specific publications. In formulating my opinions, I have considered the literature broadly related to homologous recombination and gene expression in eukaryotic cells from 1980 to present. Furthermore, I have conducted my own review of the literature of the late 1980s and have re-read many of the references with which I was familiar at that time. In particular, I have also reviewed the following publications:

Exhibit 2003 - Orr-Weaver et al., *Proc. Natl. Acad. Sci. USA* 78:6354-6358, (1981)

Exhibit 2004 - Szostak et al., *Cell* 33:25-35, (1983)

Exhibit 2005 - Ramabhadran et al., *Gene* 38:111-118 (1985)

Exhibit 2006 - Stedman's Medical Dictionary

Exhibit 2007 - Webster's Dictionary

Exhibit 2008 - Nasmyth, *Cell* 42:213-223, (1985)

Exhibit 2009 - Nasmyth, *EMBO J.* 6: 243-248, (1987)

Exhibit 2010 -Smithies *et al. Nature*, 317:230-234, (1985)

Exhibit 2011 - Thomas et al., *Cell*, 51:503-512, (1987)

-2-

Exhibit 2012 - Raibaud et al., Gene, 29:231-241 (1984)

Exhibit 2013 - Cid et al., *Curr Genet.*, 12:105-110, (1987)

Exhibit 2014 - Kaufman et al., Mol Cell. Biol. 5:1750-1759 (1985)

Exhibit 2015 - Blowers et al., The Plant Cell, 2:1059-1070, (1990)

Exhibit 2016 - Japanese Patent Application, JP-A-1215280, published August 29, 1989.

Exhibit 2017 - U.S. Patent No. 6,528,313 (hereinafter 'the 313 patent)

5.  I have been asked by counsel for Cell Genesys to formulate an opinion of: (i) the understanding of one of "ordinary skill" (defined herein below) in the field of homologous recombination as it pertains to introducing heterologous (i.e. foreign) DNA into cells and gene expression prior to December 1989; and (ii) whether the subject matter described and claimed in the '071 patent had been disclosed in the prior art or would be considered readily apparent variations of methods taught by December 1989.

6.  In my opinion, a person of "ordinary skill" in the art would be a person having a Ph.D. in Molecular Biology, Biochemistry, Genetics or related fields and at least two years of experience with DNA recombination and gene expression.  An individual with such credentials and experience as of December 1989 would be well versed in methods for isolating, manipulating and characterizing RNA, DNA and proteins, in addition to understanding the relationships of DNA regulatory segments (e.g., promoters, enhancers etc.) and coding regions of genes, whether native or exogenous to the cell in which they are studied.

7.  As detailed herein below, it is my opinion, one of ordinary skill in the art would view claims 1-58 of the '071 patent as obvious variations of what was known in the field of homologous recombination and gene expression as of December 1989.  In addition, the '313

-3-

patent (Exhibit 2017), alone or in combination with the above cited references, clearly describes the same subject matter recited in the claims of the '071 patent.

**Homologous Recombination**

8. As an initial matter, I have noted that the '071 patent actually states that there is nothing new about the homologous recombination methodology, as it is employed in the '071 patent (*see* col. 23, lines 17 to 23).

9. This statement is fully in agreement with my understanding of the development of homologous recombination in eukaryotic and prokaryotic cells in the years leading up to December 1989. Numerous articles had been published throughout the 1980's, which described homologous recombination in yeast and higher organisms as being mechanistically conserved with the bacterial systems which had been described earlier.

10. I also note that the "cellular genome" or "cell line" that is specified in claims 1-8, 13-25 is not otherwise qualified, and therefore, appear to embrace both prokaryotic (e.g., bacteria) and eukaryotic cells.

11. The definition of a "eukaryotic" cell is one containing a membrane-bound nucleus (with chromosomes of DNA, RNA and proteins), and includes the multicellular organisms from the kingdoms fungi (e.g., yeast), plantae and animalia (e.g., mammals) (Exhibit 2006, Stedman's Medical Dictionary, p. 543; Exhibit 2007, Webster's Dictionary).

12. The use of homologous recombination to introduce circular and linear DNA into a targeted location within a chromosome, originally conducted with yeast, was well-known by the early 80's. For example, as early as 1981, the way in which circular and linear molecules recombine with homologous chromosomal sequences had been described with the suggestion to

-4-

use such methods for cloning of mutations and placing markers adjacent to nonselectable gene

locus to permit genetic mapping (Exhibit 2003, Orr-Weaver, abstract and p. 358, col. 1, last ¶

bridging col. 2).

13. Similarly, the underlying mechanisms involved in recombination events had been

described in detail (*see*, for example, Review article, Exhibit 2004, Szostak et al., *Cell* 33:25-35,

1983, p. 28, col. 1, last ¶).

14. Thus, by 1983, the general concept of gene targeting had been laid out  (Id. at p. 29,

"This type of "targeting" experiment shows that DNA ends interact directly with homologous

sequences") and the basic information about promoter regulation was known.  Thus, to one of

skill in the art it would have been obvious to apply these techniques to introduce the desired

DNA segment (e.g., gene of interest or regulatory sequence) by homologous recombination into a

particular gene location within a cellular genome.  Well before 1989, the foregoing was

demonstrated to be generally true irrespective of cell type.

**Gene Activation by Homologous Recombination and Insertion of Foreign Regulatory**

**Sequences**:

15. Nasmyth (Exhibit 2008, *Cell* 1985, 42:213-223; and Exhibit 2009, EMBO J., 1987, 6:

243-248) used exactly the same manipulations as in the '071 patent to provide novel regulatory

sequences to an intact native "HO" gene in yeast (i.e., homologous recombination using a

heterologous promoter, see, Exhibit 2008, '85, single transplacement, p. 220, col. 2 under

Experimental Procedures).  Yeast mother cells, but not daughter cells, express the HO gene

(Exhibit 2009, '87, Abstract, lines 8-10).  Inactivity of the HO gene in the daughter cell type is

formally and mechanistically equivalent to inactivity of the so called "silent gene within the

genome of a cell" (*see*, e.g., claim 1 of the '071 patent). Nasmyth demonstrated activating the silent HO gene with a heterologous (i.e., non-native) GAL1 promoter (Exhibit 2009, '87, p. 243, col. 2, last ¶, 3-7 and p. 244, col. 1, last ¶). The HO gene in the daughter cells was activated, however Nasmyth did not suggest employing the approach to *increase* the expression of the gene obtain large quantities of a desired gene product and stated that "...it is likely to be characteristic of genes that only function in very particular cell types..."(Exhibit 2008, '85, p. 218, col. 1, last 3 lines). Instead, the understood importance was that a silent gene could be activated using a heterologous DNA regulatory segment. The level of expression of HO obtained by replacing the wild-type promoter with the GAL1 promoter by recombination was found to be similar to that produced by the wild-type promoter, although this replacement did allow HO expression to be regulated by growing cells in medium containing glucose or galactose (Exhibit 2009, '87, p. 244, col. 2, last ¶).

16. In my opinion, with the exception of claims reciting a non-yeast limitation (e.g., claims 10 and 45, 11 and 46, and 12 and 47, reciting animal, mammalian, and plant, respectively), the claims of the '071 patent do not have any significant difference compared with the methods of the Nasmyth references. Thus, well prior to 1989, it was known to one skilled in the art that a native silent gene in yeast could be activated using a regulatory segment introduced by homologous recombination, as evidenced by the Nasmyth references.

**Heterologous Control of Gene Expression**

17. The concept of modifying gene expression by replacing the native regulatory element with a foreign element was known prior to 1989.

18. As early as 1985, Ramabhadran et al., had reported that a gene of interest (i.e., bovine

growth hormone gene (bGH)) that was not expressed when under control of the native bGH promoter in CV-1 monkey cells could, in fact, be expressed by replacing the native bGH promoter with the mouse metallothioein-I (MT) promoter. Replacing the native promoter resulted in high expression levels of a bioactive bGH, (Exhibit 2005, Ramabhadran et al., *Gene* 38:111-118, 1985, abstract), and the biologically active gene product was isolated (Id, p. 115, col. 2, line 23 to p. 117, line 21).

19.    Although in this example, the constructs are not integrated into the host genome, the principle of modifying gene expression through a foreign regulatory element is well illustrated. Those of skill in the art armed with this information would understand that whether in an episome or chromosome, a mammalian gene's expression level can be changed by replacing the regulatory segment of the gene of interest (i.e., the target gene).

20.    Evidence of the foregoing (integration in the genome) was presented the same year (Exhibit 2014, Kaufman et al., 1985, Mol Cell. Biol. 1750-1759). This reference teaches the expression of a desired gene product (i.e., t-PA), which was randomly inserted (Id., p. 1755, col. 2, last ¶) into a mammalian genome and expressed under the control of a heterologous DNA regulatory segment (i.e., SV40 enhancer, Ad major late promoter (AdMLP), Exhibit 2014, p. 1752, fig. 1, pLDSD and col. 2, 1st ¶). Additional experiments demonstrated amplification of a heterologous DHFR gene, which was also used to increase the expression level of a closely linked gene compared to the expression levels observed in the absence of amplification (Id., p. 1753, col. 2, last ¶, ll. 5-7 and table 2). In summary, one of skill in the art would recognize Kaufman et al. for teaching random integration of two different genes, expression of an exogenous gene that is regulated by heterologous promoter and expression of an amplifiable

-7-

exogenous gene and isolation of the desired product.

## Gene Targeting and Expression via Homologous Recombination

21. Between 1985-1989, researchers has also demonstrated that homologous recombination can be used to "target" the insertion of a foreign DNA segment into a desired genome.

22. In 1985, modification of a targeted mammalian gene by homologous recombination was disclosed by Smithies *et al.* (Nature 317: 230-234) (Exhibit 2010). The human β-globin locus was the target gene whose expression was modified in mammalian cells by homologous recombination (*see*, abstract and figure 1 legend). Importantly, Smithies states that: "[O]ur assay data indicate that the modification was achieved whether or not the target gene was active" (Exhibit 2010, p. 234, col. 1, lines 5-7; and summary). It is clear that Smithies et al. believed that the principle of being able to modify genes, both silent and active was important. A selectable marker was also employed to detect an otherwise non-selectable locus (Id, p. 231, col. 1, lines 19-25, Table 1, p. 232, col. 1, line 13 to col. 2, line 6)

23. Raibaud et al. (Gene 29:231-234, 1984), targeted a heterologous promoter to express a native bacterial gene (malQ in E. coli) and a heterologous gene (i.e., a selectable marker gene, Exhibit 2012, p. 236, fig. 3 and col. 1). The expression levels of the native target gene controlled by the heterologous regulatory sequence were not changed from the wild-type (Id., p. 239, col. 1, 1st ¶, last 11 lines of col. 2, lines 9-16).

24. As an example in yeast, Cid et al. (Exhibit 2013, Cid et al. *Curr Genet.*, 12:105-110, 1987) described gene targeting wherein the constitutive promoter of the target gene, a plasma membrane ATPase, was replaced with a galactose-dependent promoter by homologous

-8-

recombination. The expression level of the ATPase gene was then assayed in the presence and absence of galactose. While the expression of the ATPase gene under control of the galactose-dependent promoter was at least equivalent to the normal cells (p. 107, col. 2, line 34 to p. 108, col. 2, line 8, Table 1), Cid et al., did not report or suggest using the disclosed method to increase the level of gene expression.

25. Gene targeting by homologous recombination technology was further expanded in mammalian cells. By 1987, site-directed mutagenesis in mouse embryo-derived stem cells by gene targeting had been demonstrated. (Exhibit 2011, Thomas et al., *Cell* 51:503-512, 1987, abstract). Although the gene targeting experiment was designed to interrupt the target, and therefore, interrupt a normal endogenous gene, the authors of the report expressly indicated that the gene targeting should be equally effective for correcting or mutating the desired chromosomal locus (Exhibit 2011, Thomas et al., *Cell* 51:503-512 (1987), p. 503, col. 2, 2nd ¶ from bottom).

26. One of ordinary skill in the art would recognize that the claims of the '071 patent require the use of homologous recombination to introduce a segment of DNA (e.g., plasmid or vector), into a "cellular genome" in a targeted manner that is indistinguishable from the prior art described above.

27. A teaching of particular relevance prior to December 1989 was the combination of the aforementioned techniques (i.e., homologous recombination, gene targeting and insertion of DNA regulatory sequences and marker or amplifiable genes) to increase the expression of a native gene and utilize the method to produce a large quantity of a desired gene product, as taught in Japanese patent application JP-A-1215280.

**Japanese Patent Application JP-A-1215280**

28.   Japanese patent application number JP-A-1215280 and its English translation

(Exhibit 2016) reflects a combination of the above described approaches and provided evidence

that the insertion of a promoter sequence operatively linked to a native coding region (albeit in

prokaryotic cells) could increase the expression of the target gene (Id., p. 4, lines 7-22, Examples

4 and 5).

29.   Specifically, JP-A-1215280 described the introduction of a promoter capable of

enhancing the expression of a gene in the chromosome of a microorganism already containing

the gene (p. 5, 1st ¶ , e.g., the Bacillus subtilis TRP gene), which involved inserting, by

homologous recombination (p. 5, last ¶, lines 1-2), a non-native regulatory sequence (i.e.,

promoter (e.g., Bacillus amyloliquefaciens, p. 8, lines 16-17), upstream or downstream of the

target gene (i.e., p. 5, 2nd ¶, line 3).  This approach successfully produced bacteria with enhanced

tryptophan synthesizing capabilities, indicative of enhanced expression of the TRP gene (Exhibit

2016, p.6, 1st ¶ and Examples 2, 3 and 4).

30.   JP-A-1215280 further describes the regulatory sequence to be inserted, at one or both

ends, DNA sequences that are homologous to the DNA sequences of the genes related to

production of the desired products already present on the chromosomes. (p. 5, last ¶, line 1 to p.

6, 1st ¶, lines 1-2). One of ordinary skill would instantly recognize these DNA sequences (one or

both, as described) as the DNA targeting segment described in the '071 patent.

31.   JP-A-1215280 also describes that the DNA construct contains expressible selectable

marker genes, conferring tetracycline and chloramphenicol resistance (p. 7,  lines 24-31).

32. The work disclosed in JP-A-1215280 in prokaryotes would have made it apparent to

those of skill in the art that by December 1989, that increasing the expression of a native gene in

-10-

a targeted fashion via homologous recombination could similarly be done in a eukaryotic cell line with a reasonable expectation of success, as such an adaptation would be firmly within the purview of a skilled artisan given the collective success in the prior art (i.e., homologous recombination, gene targeting, insertion of non-native regulatory regions) with eukaryotic cells, including yeast and mammalian cells.

33. Furthermore, it would be readily apparent to those of skill in the art that the target gene product expressed at high levels could be isolated if desired using standard methods such as those taught by Kaufman et al. and Raibaud et al. (see p. 1755, col. 2, line 2 to Kaufman and p.115, col. 2, line 23 to p. 117, col. 1, line 21, respectively).

34. In summary, as set forth above, a number of separate, but closely related approaches have been taken to modifiy gene expression in both prokaryotic and eukaryotic systems by the appropriate positioning of regulatory sequences and coding sequences through homologous recombination.

35. Accordingly, all of the necessary individual component techniques described in the '071 patent were available and well developed by 1989 (Exhibits 2008 - 2016, detailed supra). The references of Nasmyth, Cid, Raibaud, Thomas, Kaufman, and JP-A-1215280 bring these various component techniques together for prokaryotic and eukaryotic cells, including mammalian cells, to provide specific examples of gene activation and increased expression of a targeted, native gene.

**The Claims of the '071 Patent**

36. The method of claim 1 is directed to activate a predetermined normally "transcriptionally silent gene" using homologous recombination. As discussed above at ¶s 15-16, and 29,  such method was known to one of skill in the art by December 1989. (Nasmyth, Exhibit 2008, *Cell* 1985, 42:213-223; and Exhibit 2009, EMBO J., 1987, 6: 243-248; JP-A-1215280, p. 4, lines 14-19).  For convenience herein, I refer to art publically available as of December 1989 as "prior art".

37. Claim 2 recites modifying the expression characteristics of a predetermined gene within the genome of a cell line by inserting a DNA regulatory segment using homologous recombination, which was known to one skilled in the art. (Raibaud, p. 231, col. 1, lines 19-25, Table 1, p. 232, col. 1, line 13 to col. 2, line 6;  Smithies p. 234, col. 1, lines 5-7; and summary, Cid,  p107, col. 2, line 34 to p. 108, col. 2, line 8, Table 1  and  JP-A-1215280, p. 4, lines 7-22, Examples 3-5)

38.  Claims 4, 6, 13, 14, 29, 36, 37, 41 and 49 recite the inclusion of a selectable marker in the heterologous DNA segment introduced by homologous recombination, which was known prior to December 1989 (Exhibit 2012, Raibaud et al.,  p. 236, fig. 3 and col. 1; JP-A-1215280, p. 7,  lines 24-31).  The same is true for claims 7, 15, 30, 38, 42, 48, 50 and 51, specifying a negative selectable marker with or without orientation dependence (Exhibit 2012, Raibaud et al., p. 7, col. 1-2). The use of herpes simplex virus thymidine kinase gene (HSV-*tk*) as a selectable marker, as claimed in Claims 16, 39 and 51, was also disclosed in Thomas et al., p 504, col 2, last ¶ ll.6-8.

-12-

39. The inclusion of an amplifiable gene to increase gene expression, as called for in claims 3, 8, 31 and 43  was known in the prior art (Exhibit 2014, Kaufman et al., p. 1753, col. 2, last ¶, ll. 5-7 and table 2; JP-A-1215280, p. 5, 3rd ¶, lines1-3 ).

40. Claims 5 and 40 recite that there are two DNA targeting segments, one segment being upstream of the regulatory segment and the other targeting segments being downstream of the regulatory segment. Such elements are also known in the prior art. (Raibaud, p. 367, fig. 4; '313 patent, col 6, lines 15-24).

41. Claims 17-24 and 52-58 are drawn to a cell line capable of expressing, or enhanced expression of predetermined endogenous gene product by inserting a regulatory segment or an amplifiable gene using homologous recombination, which was known in the prior art. (Exhibit 2010, Smithies,  p. 232, col. 2, line 7 to p. 233, col. 1, line 4; Exhibit 2014, Kaufman et al., p. 1752, col. 1, last ¶ to p. 1753, col. 2, line 28, and Exhibit 2011, Thomas, et al., p. 503, col. 1, line 3).

42. Claims 26 and 27 are drawn to a DNA construct for insertion into a predetermined host cell line, the construct comprises a DNA regulatory segment capable of modifying the expression characteristics of genes in the host cell line (Claim 26)  or comprises an expressible, amplifiable gene capable of amplifying a gene in the host cell line (Claim 27) which were also known in the prior art. (Exhibit 2016, English translation of JP-A-1215280,  Examples 1-3; Exhibit 2014, Kaufman et al., p. 1751, col. 1, line 30 to col. 2, line 7).

43. Claims 9, 32 and  44 recite the inclusion of an eukaryotic cell as a host cell which is able to express the gene product based on the method of Claims 1-3, which is also known in the prior art. (Exhibit 2010, Smithies,  p. 230, col. 1, line 2,  Exhibit 2014, Kaufman et al., p. 1751,

-13-

col. 2, lines 7-8). The same is true for claims 10-12, 33-35, and 45-47 specifying an animal cell (Thomas, et al., p. 503, col. 1, line 3), a mammalian cell (Exhibit 2010, Smithies, p.230, col. 1, line 2, Exhibit 2014, Kaufman et al., p. 1751, col. 2, lines 7-8) and a plant cell line. (Exhibit 2015, Blowers et al., p.1061, col. 1, 3rd ¶, lines 1-4 ).

**JP-A-1215280  and the Subject Matter Claimed in the '071 patent**

44. It is my opinion that one of ordinary skill in the art would recognize that  JP-A-1215280 teaches the same methods described in Claims 1, 2, 4, 6-7, 13, 15, 26, 28-30, 36 and 38 of the '071 patent.  As detailed above,  JP-A-1215280 discloses a method of enhancing the expression level of an endogenous gene in a  cell, including a silent gene, by inserting a DNA construct which includes a  expression regulatory sequence, such as a promoter, a targeting sequence and selectable marker genes, into the cellular chromosome through homologous recombination (*see*, e.g., p. 4, lines 5-18; p. 5 2nd ¶ to 4rd ¶; p. 7, lines 23-31). Therefore, the combination of individual elements recited in Claims 1, 2, 4, 6-7, 13, 15, 26, 28-30, 36 and 38 of the '071 patent, are indistinguishable from those described in the JP-A-1215280.

45. Furthermore, one of ordinary skill in the art would consider the use of an amplifiable gene as part of the method to increase gene expression, as recited in Claims 3,  8, 31, 41- 43, and 48-50 of the '071 patent, as an obvious variation of what is taught in JP-A-1215280, especially given the specific teachings in Kaufman et al. (Exhibit 2014).

**The '313 Patent and the Subject Matter Claimed in the '071 patent**

46. Finally, it is my opinion that one of ordinary skill in the art would recognize that the '313 patent teaches exactly the same methods described and claimed in the '071 patent.

-14-

Specifically, the '313 patent describes a process of modifying the expression level of an endogenous gene in a eukaryotic cell by inserting a vector into the genome of the eukaryotic cell through homologous recombination. The vector contains a "foreign" DNA sequence that is heterologous with respect to the DNA sequence of the endogenous gene, and two "flanking" DNA sequences, one on each side of the "foreign" DNA sequence, which permit homologous recombination with the target site. ( Exhibit 2017, the '313 patent.)

47. According to the '313 patent, the effects of insertion include: the replacement of coding sequence of the endogenous gene, the replacement of a regulatory sequence, the inactivation of a gene by mutation, and the reactivation of a gene by the improvement of the level of expression, depending on the type of sequences inserted (Exhibit 2017, the '313 patent, col. 5, lines 21-27). Therefore, the '313 patent teaches how to activate or inactivate a gene in a mammalian cell

48. The '313 patent also describes that the inserted DNA may contain a foreign regulatory sequence (Exhibit 2017, col. 5, lines 64-65), that the insertion site is selected for the purpose of inserting the foreign regulatory sequence in order to give a "double promoter" effect with the endogenous regulatory sequence, or replacing an endogenous promoter by the foreign regulatory sequence, and that the coding sequence which is situated under the control of the foreign regulatory sequence may be endogenous (col. 5 , line 64 to col. 6, line 5). These descriptions clearly indicate that the foreign regulatory sequence is capable of modifying the expression characteristics of a gene when operatively linked to the gene.

49. Additionally, the '313 patent describes that the inserted foreign DNA may contain both a regulatory sequence and a coding sequence (Exhibit 2017, col. 6, lines 6-10) and the use

-15-

of "intercalating" sequences between one or other of the flanking sequences and the foreign gene. The intercalating sequences may be markers or sequences necessary for the selection of the transformants (col. 6, lines 25-29). This description would include the "expressible, amplifiable gene" of the '071 patent, because the "expressible, amplifiable gene" is a "coding sequence" and the "expressible, amplifiable gene" of the '071 patent can be a positive selectable marker gene (Exhibit 2001, the '071 patent, col. 11, lines 5-8).

50. With regard to the targeting sequences, the '313 patent describes two flanking sequences that are homologous to the genomic sequences adjacent to the desired insertion site (col. 6, lines 15-17). In my opinion, the flanking sequences are the same as the DNA targeting segment of the '071 patent.

51. Therefore, individual elements of the method and the methods themselves, as presented in the '071 patent and claims, are indistinguishable from those described in the '313 patent.

52. I declare that all statements made herein of my own knowledge are true and all statements made on information and belief are believed true. Further, I am aware that willful false statements and the like are punishable by fine, imprisonment or both, 18 U. S. C. § 1001, and may jeopardize the position of Cell Genesys in the above-captioned interference, and any patents that have issued or are to issue on the applications of Cell Genesys involved therein.

_Aug 4, 2003_
Date

Jac A. Nickoloff, Ph.D.

-16-