**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CELL GENESYS, INC., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-12448-MLW |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-11810-MLW |
| | ) | |
| CELL GENESYS, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant, and | ) | |
| | ) | |
| TRANSKARYOTIC THERAPIES, INC., | ) | **SUBMITTED PURSUANT TO THE** |
| | ) | **COURT'S NOVEMBER 6, 2007 ORDER** |
| Defendant. | ) | **(COURT DOCKET NO. 192)** |

**ARS MEMORANDUM ADDRESSING NEW ARGUMENTS AND EVIDENCE RELIED
ON BY CGI IN SUPPORT OF ITS MOTION TO REVERSE THE BOARD'S DECISION
THAT CGI CLAIMS 107-109 ARE UNPATENTABLE OVER "JAPAN"**

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................................1

II.     ARGUMENT ................................................................................................................4

    A.    "Japan" is a complete statutory bar to patentability of claims 107-109 because the Board never found, and CGI has not attempted to prove, that those claims are entitled to the benefit of Skoultchi's November 6, 1989 filing date ........................................................................................... 4

    B.    CGI has not satisfied the requirements of Rule 131 because Skoultchi never submitted the requisite oath or declaration ................................................... 6

    C.    The Board did not find, and CGI has not even attempted to prove, that Skoultchi's November 1989 application constituted a constructive reduction to practice of the methods recited in claims 107-109 ............................ 8

    D.    CGI's new evidence and argument do not demonstrate that Skoultchi was diligent between August 28 and November 6, 1989 ................................................ 9

        1.    Contrary to CGI's assertions, the Board found that Skoultchi was *not* diligent ................................................................................................ 10

        2.    Rowland's uncorroborated testimony does not demonstrate diligence .................................................................................................... 10

        3.    Contrary to CGI's assertion, there is no rule that a patent attorney's preparation and filing of a patent application within three months is "*per se*" diligent ............................................................................... 12

    E.    CGI's new evidence and argument do not demonstrate that Skoultchi conceived the specific methods recited in claims 107-109 .................................... 13

        1.    CGI provides an incomplete standard of review ....................................... 13

        2.    The Board found that the document bearing the dates of July 24-25, 1989 did not disclose the full scope of CGI claims 107-109 .............. 14

        3.    Rowland's testimony cannot cure CGI's failures of proof ....................... 15

        4.    Kaufman's testimony is irrelevant ........................................................... 16

III.    CONCLUSION .........................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Brown v. Barbacid*,
   276 F.3d 1327 (Fed. Cir. 2002)..................................................................... 14

*Brown v. Barton*,
   102 F.2d 193 (C.C.P.A. 1939) ..................................................................... 12

*Cell Genesys, Inc. v. Applied Research Systems ARS Holding, N.V.*,
   499 F. Supp. 2d 59 (D. Mass. 2007) .............................................................. 7

*Eaton v. Evans*,
   204 F.3d 1094 (Fed. Cir. 2000)..................................................................... 14

*Ex parte Huetter*,
   62 U.S.P.Q.2d 1553 (Bd. Pat. App. & Interf. 2001) .................................... 12

*Griffith v. Kanamaru*,
   816 F.2d 624 (Fed. Cir. 1987)...................................................................... 11

*Hull v. Davenport*,
   90 F.2d 103 (C.C.P.A. 1937) ....................................................................... 12

*In re Mulder*,
   716 F.2d 1542 (Fed. Cir. 1983)..................................................................... 12

*In re Nelson*,
   420 F.2d 1079 (C.C.P.A. 1970) ................................................................... 12

*Ireland v. Smith*,
   97 F.2d 95 (C.C.P.A. 1938) ......................................................................... 12

*Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*,
   266 F.3d 1358 (Fed. Cir. 2001)...................................................................... 8

*Medichem, S.A. v. Rolabo, S.L.*,
   437 F.3d 1157 (Fed. Cir. 2006)..................................................................... 13

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*,
   237 F.3d 1359 (Fed. Cir. 2001)...................................................................... 8

*Shindelar v. Holdeman*,
   628 F.2d 1337 (C.C.P.A. 1980) ................................................................... 12

**Statutes**

35 U.S.C. § 102 ........................................................................................................ 2, 5, 6

35 U.S.C. § 112 ..................................................................................................... 2, 4, 5, 9

35 U.S.C. § 120 ............................................................................................................. 2

**Rules**

37 C.F.R. § 1.47 ............................................................................................................ 7

37 C.F.R. § 1.131 .................................................................................................... *passim*

## I.    INTRODUCTION

Pursuant to the Court's November 6, 2007 Order, ARS respectfully submits the following memorandum addressing new arguments and evidence that CGI relies on in its October 1, 2007 memorandum (Court Docket No. 179) requesting that this Court reverse the Board's Decision that CGI's claims 107-109 are unpatentable over the "Japan" prior-art reference.[1]

Even if permitted to rely on its new arguments and evidence (*i.e.*, evidence on which CGI did not rely in the briefs it submitted last Fall), CGI fails to carry its burden of proving that the Board erred in deciding that claims 107-109 are unpatentable over "Japan." That's no surprise – as the Court has recently acknowledged, CGI admitted before this Court that it cannot prevail with the evidence that it is now forced to rely upon:

> At the November 1, 2007 hearing, CGI represented that it cannot prevail before this court without the evidence that the court has excluded or other evidence that it has proffered since the August 13, 2007, decision . . . .[2]

---

[1] With respect to ARS's pending motion to strike CGI's October 1, 2007 Japan and interference-in-fact briefs for advancing arguments and evidence on which CGI did not rely in the briefs it submitted last Fall, the Court has recently indicated that it "will subsequently decide whether the challenged argument and evidence will be stricken." November 6, 2007 Order (Court Docket No. 192) at 2, ¶3. The new arguments to which ARS objects, and addresses in this brief, include (i) the Board found that CGI claims 107-109 are entitled to the benefit of the November 6, 1989 filing date of Skoultchi's application; (ii) CGI does not have to submit a declaration or oath from Skoultchi, despite the requirement of 37 C.F.R. § 1.131; (iii) the Board found the November 6, 1989 application was a reduction to practice of CGI claims 107-109; (iv) the Board did not find that Skoultchi was not diligent; (v) the testimony of Rowland establishes diligence and conception, and was credible (for reasons previously unarticulated by CGI); (vi) the Board found each element of claims 107-109, other than homologous recombination, is reflected in the unauthenticated document bearing the dates of July 24-25, 1989; and (vii) the testimony of Dr. Kaufman establishes the July 24-25, 1989 document disclosed homologous recombination, and the Board erred by substituting its own expertise and judgment for that of Dr. Kaufman.

The new evidence to which ARS objects, and addresses in this brief, includes (i) various passages of Rowland's testimony in the '114 Interference; (ii) specific exhibits to Rowland's declaration in the '114 Interference (*e.g.*, Exhibits D & E); and specific excerpts of the testimony of Dr. Kaufman in the '114 Interference.

[2] Memorandum & Order at 4-5 (Court Docket No. 193).

To establish that claims 107-109 are patentable over "Japan," CGI has to prove several things. CGI has to first prove that Dr. Skoultchi filed a patent application sufficiently describing and enabling the methods recited in its claims 107-109 (as required under 35 U.S.C. § 112, ¶ 1) within one year after the August 29, 1989 effective date of "Japan" (so as to prove that "Japan" is not a complete statutory bar to the patentability of those claims under 35 U.S.C. § 102(b)). If (and only if) CGI overcomes this first hurdle, it then has to prove that Skoultchi conceived those recited methods before the day on which "Japan" was published (August 29, 1989), and that he then worked continuously on his patent application from just before "Japan" was published until the day on which he filed his application (*i.e.*, from August 28 to November 6, 1989).

Even if it were permitted to rely upon its new arguments and evidence, CGI cannot carry its burden of proving that Skoultchi or his patent application satisfied any of those requirements.

First, none of CGI's new arguments or evidence rebut the fact that "Japan" is a complete statutory bar to the patentability of CGI's claims under 35 U.S.C. § 102 (b). To avoid that bar, CGI had to prove that its current claims (which it did not submit to the Patent Office until 1995) are entitled under 35 U.S.C. §§ 112 and 120 to the benefit of the filing date of Dr. Skoultchi's first patent application (November 6, 1989). CGI now argues that the Board found it was entitled to that filing date, but a plain reading of the Board's Decision confirms otherwise. Consequently, CGI had to prove to this Court that claims 107-109 are entitled to the benefit of that filing date under §§ 112 and 120. Even after two briefing opportunities here, CGI has still not even attempted to make such a showing. Because CGI did not file any other application within one year after the publication of "Japan" (*i.e.*, by August 29, 1990), "Japan" is a complete statutory bar to patentability under § 102(b). This is fatal to CGI's request to reverse the Board's Decision.

Second, CGI's new argument about Rule 131 (the rule it moves under) fail to justify its failure to submit an oath or declaration from Skoultchi, which that rule expressly requires. CGI cannot benefit from the narrow exceptions for patents undergoing reexamination (because claims 107-109 have not issued in any patent, and because this § 146 action is not a reexamination), or for inventors who refuse to cooperate (there is certainly no evidence that Skoultchi was ever unwilling to cooperate with CGI). This too is fatal to CGI's request to reverse the Board's Decision.

Third, none of CGI's new arguments or evidence prove that Skoultchi conceived the specific methods recited in claims 107-109 prior to August 29, 1989. While Skoultchi may have had an idea regarding protein production at that time, CGI did not prove, as it was required to do, that Skoultchi had intellectual possession of the specific methods recited in claims 107-109. CGI now argues that this Court should review the Board's Decision *de novo*, but ignores that the Court should review the Board's factual findings to determine whether they were supported by *substantial evidence*. CGI's new argument that Mr. Rowland (whose testimony the Board found not credible) was present at a meeting in 1989 only to hear Skoultchi, which is why he could not remember anything else about the meeting, is just that – mere attorney argument not supported by the evidence. Nor does CGI's newfound reliance on the testimony of Dr. Kaufman add anything; Dr. Kaufman provided no testimony whatsoever about the unauthenticated document dated July 24-25, 1989 on which CGI relies as evidence of a conception by Skoultchi, and CGI has not proven any other nexus between Dr. Kaufman's testimony and that document. This too is fatal to CGI's request to reverse the Board's Decision.

Fourth, none of CGI's new arguments or evidence (including its reliance on Mr. Rowland's unsubstantiated testimony) prove that Skoultchi was continuously diligent in

3

attempting to reduce his idea to practice from just before August 29, 1989 until he filed his first application on November 6, 1989. Even if CGI's evidence is viewed in the most charitable light possible, it is evident that there is **no** evidence of activity toward a reduction to practice for a period of ***nearly two months*** during the critical three-month period. This too is fatal to CGI's request to reverse the Board's Decision.

Fifth, none of CGI's new arguments or evidence prove that Skoultchi reduced the specific methods recited in claims 107-109 to practice. A constructive reduction to practice (which CGI alleges took place) required Skoultchi to file a patent application that satisfied the requirements of § 112, ¶ 1. CGI now argues that the Board found Skoultchi's November 6, 1989 application constituted such a reduction to practice, but a plain reading of the Board's Decision shows otherwise. Consequently, CGI had to prove that Skoultchi's first application adequately described and enabled the specific methods recited in claims 107-109. Even after two briefing opportunities here, CGI has not even attempted to make such a showing. This too is fatal to CGI's request to reverse the Board's Decision.

For any one and all of these five separate reasons, the Court should deny CGI's request to reverse the Board's Decision.

## II.    ARGUMENT

### A.    "Japan" is a complete statutory bar to patentability of claims 107-109 because the Board never found, and CGI has not attempted to prove, that those claims are entitled to the benefit of Skoultchi's November 6, 1989 filing date

In its latest brief, CGI makes a new argument that the Board found claims 107-109 are entitled to the benefit of the filing date of Dr. Skoultchi's November 6, 1989 application.[3] CGI

---

[3] "Memorandum of Cell Genesys, Inc. – CGI's Claims 107-109 Are Not Unpatentable Over The 'Japan' Reference" ("CGI Memo") at 3 (Court Docket No. 179).

thereby implies that the "Japan" reference is not even a potential statutory bar to patentability under 35 U.S.C. § 102(b).

As ARS discussed in detail in its October 1, 2007 opposition brief, for CGI to prove under 37 C.F.R. § 1.131 ("Rule 131") that Dr. Skoultchi invented the specific methods recited in claims 107-109 prior to the publication of "Japan," CGI first had to prove that "Japan" is not a statutory bar to the patentability of those claims under 35 U.S.C. § 102(b). To satisfy that burden, CGI had to prove that claims 107-109 are entitled to the benefit of the filing date of Dr. Skoultchi's November 6, 1989 application. This required CGI to prove that the application satisfied all of the requirements of 35 U.S.C. § 112, ¶ 1 for those claims, *i.e.*, that the application (i) adequately described the specific methods recited in those claims such that one of ordinary skill in the art on November 6, 1989 reading that application would have understood that Skoultchi was in intellectual possession of those specific methods, and (ii) enabled one of ordinary skill as of November 6, 1989 to practice each of those specific methods without undue experimentation.[4]

CGI has failed to offer ***any*** evidence on the issue of whether the November 6, 1989 application satisfied any aspect of § 112. Instead, CGI suddenly says "[t]he Board specifically found that CGI was entitled to a filing date (reduction to practice) of November 6, 1989. As determined by the Board (and without any challenge by the parties here) CGI is entitled to a filing date (reduction to practice) of November 6, 1989."[5]

That is simply not true, as shown by the fact that CGI does not and cannot cite any part of the Board's Decision to support the statement. The Board held no such thing. Rather, the Board

---

[4] ARS Revised Opposition To CGI's Motion To Reverse The Board's Decision That CGI Claims 107-109 Are Unpatentable Over "Japan" ("ARS Opposition") at 3-5 (Court Docket No. 181).

[5] CGI Memo at 3 (Court Docket No. 179).

"dismissed as moot" CGI's Preliminary Motion 1 "to be accorded the benefit of the November 6, 1989 filing date of parent U.S. Application 07/432,069 . . . ."[6] CGI failed to appeal the Board's dismissal of that motion in this action, so this Court would be justified in finding that CGI waived any right to seek entitlement to that date.

Consequently, CGI had to prove entitlement to its 1989 filing date by proving to this Court that the November 6, 1989 application adequately described and enabled the specific methods recited in claims 107-109. CGI failed to offer any evidence (or even any argument) regarding that issue. Consequently, the effective filing date for claims 107-109 can be no earlier than November 6, 1990 (the filing date of Dr. Skoultchi's next-filed patent application). Because this later date is more than one year after the effective date of "Japan," claims 107-109 are unpatentable under § 102(b). CGI therefore cannot establish invention prior to "Japan" under any set of facts, and its request to reverse the Board's Decision should be denied on this basis alone.

**B.      CGI has not satisfied the requirements of Rule 131 because Skoultchi never submitted the requisite oath or declaration**

In its latest brief, CGI makes a new argument that it could satisfy the requirements of Rule 131 (the rule it moves under) without submitting an oath or declaration from its named inventor, Dr. Skoultchi.[7]

That is simply not true. Rule 131 unambiguously requires (in pertinent part):

(a) When any claim of an application or a patent under reexamination is rejected, ***the inventor of the subject matter of the rejected claim***, the owner of the patent under reexamination, or the party qualified under §§ 1.42, 1.43, or 1.47, ***may submit an appropriate oath or declaration*** to establish invention of the subject

---

[6] *See* Decision on Preliminary Motions at 133 (submitted herewith as Ex. A to the declaration of Matthew C. Nielsen).

[7] CGI Memo at 4 (Court Docket No. 179).

6

matter of the rejected claim prior to the effective date of the reference or activity on which the rejection is based.[8]

In its final Decision in the Interference, the Board pointed out that CGI had failed to satisfy this requirement, but assumed otherwise for the purpose of evaluating CGI's evidence of conception, diligence, and reduction to practice.[9]

CGI, in acknowledging this omission, tries to squeeze within a narrow exception to Rule 131 by arguing that it is the "owner of the application in question, and thus is qualified under Rule 47" to submit an oath or declaration from someone other than Skoultchi.[10]

CGI's effort to misrepresent that it has satisfied Rule 131 fails because CGI is not the "owner of [a] patent under reexamination" under Rule 131 (because claims 107-109 of CGI's '390 application-in-suit have not issued in any patent, and because this case is not a reexamination proceeding). Nor is CGI a "party qualified under" Rule 47 because it has never made, and indeed cannot make, the required showing that Skoultchi either refused to sign an oath or declaration or could not be reached after a diligent effort.[11] As the Court has recently found, "it appears that Dr. Skoultchi would have been readily available to CGI if it had sought to present his testimony to the Board in the '114 proceeding."[12]

---

[8] 37 C.F.R. § 1.131 (emphasis added).

[9] Decision on Preliminary Motions at 95 (Ex. A to Nielsen Decl.) ("Rule 131 indicates that inventor testimony is warranted" but "we will assume that the Declaration of Bertram I. Rowland and attached exhibits constitute 'an appropriate oath or declaration'").

[10] CGI Memo at 4 (Court Docket No. 179).

[11] 37 C.F.R. § 1.47(b) provides, in pertinent part, that an assignee can make an application for patent "[w]henever all of the inventors refuse to execute an application for patent, or cannot be found or reached after diligent effort," provided that "[t]he oath or declaration in such an application must be accompanied by a petition including proof of the pertinent facts, a showing that such action is necessary to preserve the rights of the parties . . . ."

[12] *Cell Genesys, Inc. v. Applied Research Systems ARS Holding, N.V.*, 499 F. Supp. 2d 59, 77 (D. Mass. 2007) (Wolf, C.J.).

Case 1:04-cv-11810-MLW    Document 196    Filed 11/19/2007    Page 12 of 23

Having failed to satisfy Rule 131, CGI cites two opinions in patent infringement actions concerning the validity of issued patents as putative support for CGI's proposition that "the law does not limit the applicant to [Rule 131] practice."[13] CGI is wrong – those were cases in which owners of issued patents were attempting to antedate prior-art references. Their holdings do not apply here, because CGI is still trying to obtain a patent and consequently must satisfy the requirements of Rule 131.[14]

Because CGI failed to ever submit the required oath or declaration from Dr. Skoultchi, it cannot antedate "Japan" under any set of facts, and its request to reverse the Board's Decision should be denied on this basis alone.

> ### C.   The Board did not find, and CGI has not even attempted to prove, that Skoultchi's November 1989 application constituted a constructive reduction to practice of the methods recited in claims 107-109

In tandem with its new and erroneous argument that the Board already found claims 107-109 to be entitled to the benefit of the filing date of CGI's November 6, 1989 application, CGI also argues for the first time that the Board found that the application constituted a constructive reduction to practice of those claims.[15]

Once again, as is clear from CGI's failure to cite any part of the Board's Decision in support of this statement, CGI is wrong; the Board **never** found or said that Skoultchi's

---

[13] CGI Memo at 4 (Court Docket No. 179).

[14] Moreover, in both cases, the inventors actually submitted declarations. For example, in *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1366 (Fed. Cir. 2001), the Federal Circuit noted that "[t]he district court credited the testimony via declaration of . . . one of the named inventors of the patents-in-suit, together with three exhibits that it found demonstrated conception and reduction to practice." Likewise, in *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 266 F.3d 1358, 1362-65 (Fed. Cir. 2001), the Federal Circuit held that the plaintiff had created a genuine issue of material fact precluding summary judgment based on the submission of an affidavit from the inventor, along with corroborating evidence.

[15] CGI Memo at 3 & 20 ("The Board . . . *conclusively* found a reduction to practice on November 6, 1989.") (emphasis added) (Court Docket No. 179).

8

November 6, 1989 application constituted a reduction to practice of any of the methods recited in any of claims 107-109.

Consequently, CGI had to prove that the November 6, 1989 application satisfied all of the requirements of § 112, ¶ 1. As ARS discussed in its October 1, 2007 opposition brief, Rule 131 places the burden on CGI to prove that Skoultchi reduced the subject matter of claims 107-109 to practice, *i.e.*, that his November 6, 1989 application *described and enabled* the specific methods recited in claims 107-109 so as to satisfy § 112, ¶ 1.[16] Even after two briefing opportunities, CGI has still failed to offer any evidence or argument regarding this issue. This is yet another independent reason why CGI cannot antedate "Japan" under any set of facts, and its request to reverse the Board's Decision should be denied on this basis alone.

**D.    CGI's new evidence and argument do not demonstrate that Skoultchi was diligent between August 28 and November 6, 1989**

On the issue of diligence, CGI makes the new argument that the Board made no finding as to whether Skoultchi was diligent in reducing his alleged inventions to practice through the preparation of his patent application, and places newfound emphasis on the testimony of Rowland.[17]

As discussed below, CGI's new argument and new emphasis on Rowland's testimony fail to prove that Dr. Skoultchi was diligent. This Court does not even have to reach the issue of whether Skoultchi conceived the methods recited in claims 107-109 before the August 29, 1989 publication date of "Japan," because the documents upon which CGI relies show that Skoultchi did not work continuously on his patent application between August 28 and November 6, 1989.

---

[16] ARS Opposition at 5-6 (Court Docket No. 181).

[17] CGI Memo at 3 & 14-15 (Court Docket No. 179).

Consequently, CGI did not and cannot prove that Skoultchi exercised the required diligence

during the critical period.

       1.      **Contrary to CGI's assertions, the Board found that Skoultchi was *not* diligent**

CGI represents that "the Board made no finding that CGI was not diligent from a time

prior to August 29, 1989 to its November 6, 1989 filing."[18]

That is not true. Rather, the Board considered CGI's evidence and found:

> Having considered the Declaration of Bertram Irwin Rowland (Exh. 2054) and attached Exhibits A-E, ***we find that the evidence as a whole does not establish that Genesys either reduced to practice the invention of Claims 105-112 . . . or conceived of the invention of Claims 105-112*** . . . prior to the August 29, 1989, publication date of Japan, ***coupled with due diligence*** from a time prior to said date to a subsequent reduction to practice or to the November 6, 1989, filing date of Genesys's Application 08/102,390.[19]

Consequently, and as CGI later admits (and tacitly concedes by attempting to prove),

"[t]he burden is also on CGI to demonstrate diligence" for the entire period between August 28

and November 6, 1989.[20]

       2.      **Rowland's uncorroborated testimony does not demonstrate diligence**

CGI's new reliance on Rowland's testimony – the same testimony which the Board

considered and rejected as not credible – fails to salvage CGI's case.[21]

Instead, the ***evidence*** (as opposed to CGI's attorney argument) shows that Rowland did

no work on Skoultchi's patent application for nearly two months (from September 7 to

---

[18] *Id*. at 3. *See also id*. at 16 ("[T]he Board also did not take issue with the CGI evidence of diligence . . . .") & 20 ("The Board had no issues with CGI's showing of diligence . . . .").

[19] *See* Decision on Preliminary Motions at 104-108 (Ex. A to Nielsen Decl.) (emphasis added).

[20] CGI Memo at 5 (Court Docket No. 179).

[21] CGI does not even try to explain how the Board (which makes regular determinations on the issue of diligence) possibly misapprehended Rowland's testimony or the import of the few documents on which he and CGI relied in deciding that CGI failed to prove diligence.

November 1, 1989). For example, while CGI places new emphasis on Rowland's billing records, those records fails to reflect any work on Skoultchi's application during that entire time period.

CGI points to a document bearing a date of August 29, 1989 ("the draft application"), and says it alone "is evidence of diligence throughout the period prior to the effective date of Japan, to the filing date of November 6, 1989."[22] But Rowland's own billing records do not reflect ***any*** work having been done on Skoultchi's application between September 7 and November 1, 1989, which constitutes two-thirds of the period for which CGI must prove ***continuous*** diligence. CGI points to "markings in handwriting"[23] on the August 29, 1989 document, but CGI cannot point to ***any*** evidence in the record as to who made those markings, or when they were made.

CGI also relies on Rowland's testimony, *e.g.*, "I worked on the application with due diligence and attention, to the best of my recollection."[24] But just like CGI's attorney arguments, that testimony amounts to no more than an ***allegation*** of diligence. As a matter of law (as discussed in detail in ARS's October 1, 2007 opposition brief), that cannot prove diligence.[25]

To prove diligence, Rule 131 requires CGI to do more than simply ***argue*** that Skoultchi or his lawyer was diligent; CGI had to prove *what* was done, *when* it was done, and why whatever was done is evidence of ***continuous*** diligence.[26] And CGI had to prove diligence for the ***entire*** period from August 28 through November 6, 1989.[27]

---

[22] CGI Memo at 14-15 (Court Docket No. 179).

[23] *Id*. at 15.

[24] *Id*.

[25] ARS Opposition at 7-10 (Court Docket No. 181).

[26] *See id.* (discussion of pertinent cases) at 9-10.

[27] *Griffith v. Kanamaru*, 816 F.2d 624, 626 (Fed. Cir. 1987) ("Griffith must account for the ***entire*** period from just before Kanamaru's filing date until his reduction to practice. As one of our predecessor courts has noted: 'Public policy favors the early disclosure of inventions. This underlies the requirement for 'reasonable diligence' in reducing an invention to practice, not

Viewing CGI's evidence in the most charitable light possible, there are only *five* days (August 25, August 29, September 6, November 1, and November 3) on which there is *any* evidence that *any* work was done on Skoultchi's application.[28] That leaves *nearly two months* (from September 7 through November 1) during which there is absolutely *no* evidence that Skoultchi or anyone else did *anything* related to his application. As a matter of law, CGI has failed to provide enough evidence to carry its burden on diligence, which is fatal to its motion.

> **3.    Contrary to CGI's assertion, there is no rule that a patent attorney's preparation and filing of a patent application within three months is "*per se*" diligent**

CGI repeatedly argues that, as a matter of law, taking three months to prepare and file a patent application is diligent.[29] CGI is dead wrong; there is no such bright-line or "*per se*" rule regarding diligence. Rather, as ARS discussed in its October 1, 2007 opposition brief,[30] courts have consistently held that applicants failed to exercise diligence where there were periods of unexplained delay of less than three months, *e.g.*, in one instance for a period of *two days*.[31] CGI

---

unlike the requirement that, to avoid a holding of suppression or concealment, there be no unreasonable delay in filing an application once there has been a reduction to practice.'") (citations omitted) (emphasis added).

[28] Most of these dates are derived from Rowland's billing records (Exhibits C-E to '114 Interference Exhibit 2054), regarding which the Board found "There were many, basic facts regarding Exhibits A-E (Exh. 2054) that Rowland simply could not recall." Decision on Preliminary Motions at 110 (Ex. A to Nielsen Decl.).

[29] CGI Memo at, *e.g.*, 2-3 & 14 (Court Docket No. 179).

[30] ARS Opposition at 9. n.18 (Court Docket No. 181).

[31] *See, e.g., In re Mulder*, 716 F.2d 1542, 1545 (Fed. Cir. 1983) ("two-day period"); *Ireland v. Smith*, 97 F.2d 95, 99-100 (C.C.P.A. 1938) ("from immediately prior to May 6, 1930 . . . until May 31, 1930"); *Ex parte Huetter*, 62 U.S.P.Q.2d 1553, 1563-64 (Bd. Pat. App. & Interf. 2001) ("from a date prior to 2 September 1993 until . . . 4 October 1993"); *Hull v. Davenport*, 90 F.2d 103, 104-06 (C.C.P.A. 1937) (five weeks); *Brown v. Barton*, 102 F.2d 193, 196-99 (C.C.P.A. 1939) ("a little over five weeks"); *In re Nelson*, 420 F.2d 1079, 1080-81 (C.C.P.A. 1970) (a "two-month period"). Nor did the case that CGI cites acknowledge or apply such a *per se* rule. In *Shindelar v. Holdeman*, 628 F.2d 1337, 1341-42 (C.C.P.A. 1980), diligence was not even at issue (the issue was whether the purported inventor "suppressed" his invention), and the court

relies on Rowland's testimony that he "[took] the case up in its normal order," but fails to offer any additional proof of that.[32] As discussed above, such conclusory **allegations** of diligence fail as a matter of law to prove diligence.

This is yet another independent reason why CGI cannot antedate "Japan" under any set of facts, and its request to reverse the Board's Decision should be denied on this basis alone.

### E.    CGI's new evidence and argument do not demonstrate that Skoultchi conceived the specific methods recited in claims 107-109

On the issue of conception, CGI makes the new arguments (some relying on evidence on which CGI did not rely last Fall) that (i) the Court should review the Board's Decision on conception *de novo*; (ii) the Board found that the document bearing the dates July 24-25, 1989 evidenced a conception of each element of claims 107-109 other than homologous recombination; (iii) the Board erred in finding Rowland's testimony not credible; and (iv) the testimony of Dr. Randall Kaufman shows that Skoultchi conceived the methods recited in claims 107-109 before the publication of the "Japan" reference.

As discussed below, CGI is wrong on each of these points. Consequently, CGI has not shown that the Board erred in concluding that Skoultchi did not conceive the specific methods recited in claims 107-109.

### 1.    CGI provides an incomplete standard of review

CGI represents that "[c]onception is a question of law, and thus, the Board's finding is reviewed herein *de novo*."[33] That is only partially true. While conception is a question of law, it

---

merely noted in *dicta* that, hypothetically, "a period of approximately three months could *possibly* be excused during the twenty-nine month delay . . . ." (emphasis added).

[32] CGI Memo at 15 (Court Docket No. 179).

[33] *Id*. at 6.

is based on subsidiary findings of *fact*.[34] This Court can accordingly review *de novo* the Board's ultimate conclusion that Skoultchi did not conceive the methods recited in claims 107-109 before August 29, 1989, but that should be done on the basis of whether substantial evidence supports the Board's underlying findings of fact.[35]

As discussed below as well as in ARS's October 1, 2007 opposition brief,[36] CGI has failed to show that the Board's findings were not supported by substantial evidence or that the Board's ultimate conclusion was erroneous.

> **2.    The Board found that the document bearing the dates of July 24-25, 1989 did not disclose the full scope of CGI claims 107-109**

CGI says the Board found that the document bearing the dates July 24-25, 1989 (which CGI has failed to authenticate) evidenced a conception of each element of claims 107-109 other than homologous recombination.[37] That is simply not true. The Board not only found that the document failed to disclose homologous recombination, it also found that the document failed to evidence a conception of the full scope (*i.e.*, failed to disclose other limitations) of claims 107-109:

> [I]n our view, Exhibit A to Rowland's declaration, with or without the corroboration and explanation provided by Mr. Rowland's declaration, does not establish that Genesys conceived of an invention within the scope of any one of Claims 105-112 . . . *not to mention the full scope of the subject matter claimed*, prior to the August 29, 1989 publication date of Japan.[38]

---

[34] *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1171 (Fed. Cir. 2006) ("[I]ssues of conception and reduction to practice are questions of law predicated on subsidiary factual findings . . . ."), quoting *Eaton v. Evans*, 204 F.3d 1094, 1097 (Fed. Cir. 2000).

[35] *Brown v. Barbacid*, 276 F.3d 1327, 1332 (Fed. Cir. 2002) ("Accordingly, this court reviews without deference the Board's legal conclusions on priority, conception, and reduction to practice, and reviews for substantial evidence the Board's factual findings.") (citations omitted).

[36] ARS Opposition at 11-16 (Court Docket No. 181)

[37] CGI Memo at 3 (Court Docket No. 179).

[38] *See* Decision on Preliminary Motion at 99 (Ex. A to Nielsen Decl.) (emphasis added).

14

Nor has CGI shown here that Skoultchi conceived methods that included claim limitations separate from homologous recombination. For instance, and as discussed in ARS's October 1, 2007 opposition brief,[39] CGI has not proven that Skoultchi conceived a method of inserting DNA directly into a mammalian cell so as to increase expression of a gene already existing in that cell, as recited in CGI's current claims (as opposed to taking the resulting DNA and expressing it in a wholly different or secondary cell). Nor has CGI proven that Skoultchi conceived a method of inserting a "regulatory sequence" alone (as opposed to an "amplifiable gene") into such a cell so as to increase expression of a gene already existing in that cell, as is also covered by CGI's current claims. Because CGI failed to make these proofs, it has failed to prove that Skoultchi conceived the full scope of the specific methods recited in claims 107-109.

### 3.    Rowland's testimony cannot cure CGI's failures of proof

In an effort to explain away the Board's factual findings concerning Rowland's "lapses of memory" about the meeting that purportedly took place in July 1989 (*e.g.*, "facts relating to the meeting and attendees thereof which he cannot recall"),[40] CGI suddenly says Rowland was at the meeting only on July 25 (and not July 24), and that he attended the meeting only to listen to Skoultchi (implying that Rowland timed his appearance with the beginning of Skoultchi's presentation, and left immediately after Skoultchi finished his presentation).[41]

CGI does not point to any evidence to support this new story, because there is none. Other than identifying people who supposedly spoke at the meeting, the unauthenticated document bearing the dates of July 24-25, 1989 does not indicate who was present on each date

---

[39] ARS Opposition at 13 (Court Docket No. 181).

[40] *See* Decision on Preliminary Motion at 109 (Ex. A to Nielsen Decl.).

[41] CGI Memo at 9-10 & 18-19 (Court Docket No. 179). ARS further objects to this argument on the ground that CGI did not present it to the Board in the '114 Interference.

or at any given time. Tellingly, Rowland's billing records make no mention of July 24 or July 25, 1989. Nor does CGI point to any other document that might support this story. Moreover, nobody (including Rowland himself) has testified that he was present only on July 25, or only for Skoultchi's presentation on July 25. To the contrary, Rowland himself testified:

> I have a current recollection of a meeting I attended at Cell Genesys, Inc. on or about *July 24, 1989*. *The meeting was attended by* Dr. Arthur Skoultchi and *others of Cell Genesys, Inc*. ("CGI" herein). Attached hereto as Exhibit A is a copy of the notes of that meeting, which reflect *three issues or areas of concern being addressed at CGI. Among the issues discussed at the meeting* . . . .[42]

Consequently, CGI has failed to show that the Board's finding that Rowland's testimony failed to corroborate CGI's conception case was not supported by substantial evidence.

### 4.    Kaufman's testimony is irrelevant

CGI makes the additional new argument that the testimony of Dr. Kaufman during the '114 Interference shows that the unauthenticated document bearing the date of July 24-25, 1989 evidences a conception of the methods recited in claims 107-109, and "[t]he Board substituted its own expertise and understanding for those of skill in the art."[43]

The testimony of Dr. Kaufman upon which CGI relies is irrelevant to the question of whether or what Dr. Skoultchi may have conceived – Dr. Kaufman never testified about the July 24-25, 1989 document in the '114 Interference, or what a person of ordinary skill in the art might understand from that document.[44] Nor has CGI shown any other nexus between the testimony of Dr. Kaufman (*e.g.*, "the definition of homologous recombination is that it's a site-specific integration") and anything in the document bearing the dates of July 24-25. Consequently, CGI

---

[42] Declaration of Bertram Irwin Rowland ('114 Interference Exhibit 2054) at ¶2 (emphasis added).

[43] CGI Memo at 16-17 (Court Docket No. 179).

[44] ARS further objects to CGI's attempt to rely on Dr. Kaufman's testimony on the ground that CGI did not rely that specific testimony on this issue in the '114 Interference.

fails to show that the Board "substituted its own expertise and judgment for those of skill in the art."

If Dr. Kaufman's work has any relevance to this issue, it supports the Board's finding that the document bearing the dates of July 24-25, 1989 does not exclude methods that do not utilize homologous recombination, such as methods that Dr. Kaufman described earlier in his career. For example, CGI apparently expects this Court to ignore the following factual findings by the Board:

> Comparing the cotransfection method described in Kaufman I to the method described by the handwritten note and hand drawn information at page 8 of [the document bearing the dates of July 24-25, 1989], we find that the methods described in [that document] do not exclude methods described by Kaufman I. . . . *Kaufman I shows that the method depicted on page 8 of [the document bearing the dates of July 24-25, 1989] is not necessarily a method whereby foreign DNA was inserted into the genome of CHO cells by homologous recombination*. We find, therefore, that the evidence to which Rowland points in support of his declaration, as a whole, does not establish that insertion by homologous recombination is the necessary and only reasonable construction one skilled in the art would have given to the method depicted on page 8 of [the document bearing the date of July 24-25, 1989].[45]

Consequently, CGI has failed to show that there was not substantial evidence supporting the Board's findings regarding CGI's failure to prove Skoultchi conceived the methods of claims 107-109.

## III.    CONCLUSION

None of the evidence or arguments that CGI has presented, either in the '114 Interference below, in its original briefs last Fall, or in its latest brief, establishes that the Board was incorrect in finding that Skoultchi did not invent any of his claimed methods prior to the effective date of the "Japan" reference. For the foregoing reasons, ARS respectfully requests that the Court deny

---

[45] *See* Decision on Preliminary Motion at 101-103 (Ex. A. to Nielsen Decl.) (emphasis added).

CGI's request to reverse the Board's Decision that claims 107-109 are unpatentable over

"Japan."

Dated: November 19, 2007                                    Respectfully submitted,

                                                           By: /s/ Kevin M. Flowers
                                                           Fred A. Kelly, Jr. (BBO # 544046)
                                                           Jill E. Uhl (BBO # 656283)
                                                           NIXON PEABODY LLP
                                                           100 Summer Street
                                                           Boston, MA 02110
                                                           Tel: 617-345-1000
                                                           Fax: 617-345-1300

                                                           Kevin M. Flowers (*pro hac vice*)
                                                           Matthew C. Nielsen (*pro hac vice*)
                                                           Elliot C. Mendelson (*pro hac vice*)
                                                           Cullen N. Pendleton (*pro hac vice*)
                                                           MARSHALL, GERSTEIN & BORUN LLP
                                                           6300 Sears Tower
                                                           233 S. Wacker Drive
                                                           Chicago, IL  60606-6357
                                                           Tel: (312) 474-6300
                                                           Fax: (312) 474-0448

                                                           Counsel For APPLIED RESEARCH SYSTEMS
                                                           ARS HOLDING, N.V.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **ARS MEMORANDUM ADDRESSING NEW ARGUMENTS AND EVIDENCE RELIED ON BY CGI IN SUPPORT OF ITS MOTION TO REVERSE THE BOARD'S DECISION THAT CGI CLAIMS 107-109 ARE UNPATENTABLE OVER "JAPAN," DECLARATION OF MATTHEW C. NIELSEN** in support of the same and all exhibits cited therein are being filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the above date.

 /s/ Matthew C. Nielsen
Counsel For APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.