**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CELL GENESYS, INC., | ) |
| | ) |
| Plaintiff/Counterdefendant, | ) |
| | ) |
| v. | ) Civil Action No. 05-12448-MLW |
| | ) |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) |
| | ) |
| Defendant/Counterclaimant. | ) |
| | ) |
| APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V., | ) |
| | ) |
| Plaintiff/Counterdefendant, | ) |
| | ) |
| v. | ) Civil Action No. 04-11810-MLW |
| | ) |
| CELL GENESYS, INC., | ) |
| | ) |
| Defendant/Counterclaimant, and | ) |
| | ) |
| TRANSKARYOTIC THERAPIES, INC., | ) |
| | ) **SUBMITTED PURSUANT TO THE** |
| Defendant. | ) **COURT'S NOVEMBER 6, 2007 ORDER** |
| | ) **(COURT DOCKET NO. 192)** |

**ARS MEMORANDUM ADDRESSING NEW EVIDENCE AND ARGUMENTS RELIED
ON BY CGI IN SUPPORT OF ITS MOTION TO REVERSE THE BOARD'S DECISION
THAT THERE IS NO INTERFERENCE-IN-FACT**

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II.   ARGUMENT ..........................................................................................................3

      A.    ARS is not estopped from arguing that CGI claim 106 and ARS claim 24
            do not interfere-in-fact ................................................................................3

      B.    CGI's incorrect construction of ARS claim 24 is fatal to its motion......................5

      C.    To determine interference-in-fact, this Court must consider each of claims
            24 and 106 as a whole ................................................................................7

      D.    The Board's Decision was supported by extensive findings ...................................8

            1.    CGI's new evidence fails to establish that the combination of claim
                  24 with the prior art renders claim 106 obvious ...........................................9

            2.    CGI's new evidence fails to establish that the combination of claim
                  106 with the prior art renders claim 24 obvious ........................................12

            3.    Much of the new evidence on which CGI relies was already
                  addressed by the Board in its Decision ......................................................13

                  a.    The Board already considered "Kaufman I" in finding no
                        interference-in-fact..........................................................................14

                  b.    Kaufman II ......................................................................................15

                  c.    The Board already considered the Declaration of Jac
                        Nickoloff in finding no interference-in-fact .................................16

                  d.    The declaration of Randal Kaufman does not support CGI's
                        arguments.........................................................................................16

            4.    The additional evidence not expressly cited or discussed by the
                  Board does not support CGI's arguments...................................................17

                  a.    The Kaufman patent does not disclose anything more than
                        the references already considered by the Board ...........................18

                  b.    The Craig declaration is irrelevant to the issue of
                        interference-in-fact..........................................................................18

                  c.    The deposition transcript of Jac Nickoloff is irrelevant to
                        the issue of interference-in-fact ....................................................19

            5.    CGI has failed to show that one of ordinary skill in 1989 would
                  have had a reasonable expectation of success in practicing each of
                  claims 24 and 106 .....................................................................................20

III.  CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*In re Fridolph*,
  30 C.C.P.A. 939 (1943) ............................................................................................... 8

*In re Gartside*,
  203 F.3d 1305 (Fed. Cir. 2000) ............................................................................. 10, 11

*In re Kahn*,
  441 F.3d 977 (Fed. Cir. 2006) .......................................................................... 7, 8, 10

*In re Rouffet*,
  149 F.3d 1350 (Fed. Cir. 1998) ................................................................................. 8

*Mazzari v. Rogan*,
  323 F.3d 1000 (Fed. Cir. 2003) .............................................................................. 11

*Medichem, S.A. v. Rolabo, S.L.*,
  437 F.3d 1157 (Fed. Cir. 2006) .............................................................................. 20

*Minnesota Mining & Mfg. Co. v Johnson & Johnson Orthopedics, Inc.*,
  976 F.2d 1559 (Fed. Cir. 1992) ................................................................................. 7

*New Hampshire v. Maine*,
  532 U.S. 74249, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) ..................................... 3

*Winner International Royalty Corp. v. Wang*,
  202 F.3d 1340 (Fed. Cir. 2000) .............................................................................. 10

Winter v. Fujita,
  53 U.S.P.Q.2d 1234 (Bd. Pat. App. & Interf. 1999) .......................................... 9, 12

## I.    INTRODUCTION

Pursuant to the Court's November 6, 2007 Order (Court Docket No. 192), ARS responds to the new arguments[1] and new evidence[2] relied upon by CGI in its October 1, 2007 interference-in-fact memorandum.[3]

In its latest brief, CGI admits that to find that claim 106 interferes with claim 24, this Court must apply a "two-way" test to those claims.[4] Under that two-way test, CGI bore the burden of proving that claim 106 anticipates or renders claim 24 obvious in view of the prior art, **and** that claim 24 anticipates or renders claim 106 obvious. It was not sufficient for CGI to show that "one way" is satisfied; to meet its burden of proving the existence of an interference-in-fact, CGI had to satisfy the test **both** ways.

CGI's new evidence and arguments (*i.e.*, those not presented in its original brief on this issue last Fall) do not salvage its case. Like the flawed interference-in-fact brief that CGI filed in this Court over a year ago, CGI's revised interference-in-fact brief still fails to demonstrate any

---

[1] With respect to ARS's pending motion to strike CGI's October 1, 2007 Japan and interference-in-fact briefs for advancing arguments and evidence on which CGI did not rely in the briefs it submitted last Fall, the Court has recently indicated that it "will subsequently decide whether the challenged argument and evidence will be stricken." November 6, 2007 Order (Court Docket No. 192) at 2, ¶3. The new arguments that ARS objects to, and addresses in this brief, includes (i) that ARS is estopped from arguing whether there is interference-in-fact between ARS claim 24 and CGI claim 106; (ii) that CGI claim 106 is obvious over ARS claim 24 in light of Exhibit 3015 ("Kaufman II"); and (iii) that ARS claim 24 is obvious over CGI claim 106 in light of Exhibit 2065 ("the Kaufman patent"), Exhibit 2014 ("Kaufman I"), Exhibit 3015 ("Kaufman II"), Exhibit 2026 (Declaration of Nancy Craig), Exhibit 2029 (Declaration of Jac Nickoloff), Exhibit 2056 (Deposition of Jac Nickoloff), and Exhibit 3002 (Declaration of Randal Kaufman).

[2] The new evidence to which ARS objects, and addresses in this brief, includes (i); specific passages from the Kaufman patent (ii); specific passages from Kaufman I; (iii) specific passages from Kaufman II; (iv) specific passages from the Declaration of Nancy Craig; (v) specific passages from the Declaration of Jac Nickoloff; (vi) an excerpt from the deposition of Jac Nickoloff; (vii) and specific paragraphs from the Declaration of Randal Kaufman.

[3] "Memorandum of Cell Genesys, Inc. – there is interference-in-fact between claim 106 of Cell Genesys and ARS Claim 24" ("CGI IIF Memo") (Court Docket No. 180).

[4] *Id.* at 5.

error in the Board's holding in its Decision in the '114 Interference that no interference-in-fact exists between claim 24 and claim 106.

Much of the new evidence on which CGI now relies is the very same evidence cited, considered, and extensively discussed by the Board in its Decision holding that these claims do not interfere. And to the extent CGI relies upon evidence not expressly cited in the Board's Decision, that evidence is either cumulative to the evidence that the Board did consider, is wholly irrelevant to the issue at hand, or is inadmissible.

CGI begins its revised brief with a wholly new argument: that ARS should be estopped from even opposing CGI's efforts to reverse the Board's holding of no interference-in-fact. This argument fails because ARS never argued that these claims do not interfere during the '114 Interference, and never benefited from such a position. Estoppel cannot apply under such circumstances, so ARS is certainly not estopped from opposing CGI's attempts to reverse the Board's Decision.

CGI's meager (and flawed) argument as to whether claim 106 is obvious in light of claim 24 relies on a single document, "Kaufman II"; a document that was already extensively discussed throughout the Board's Decision. After a thorough consideration of Kaufman II, the Board found no interference-in-fact between claim 24 and claim 106. This alone is a sufficient basis for this Court to deny CGI's motion.

As it did in its briefs last Fall, CGI's obviousness analysis still ignores the basic fact that claim 24 recites a cell line having a DNA construct that ***additionally*** comprises an "amplifiable gene" in a cell that already contains at least one "selectable marker gene." Due to CGI's blatant mis-construction of claim 24, even the new evidence included in CGI's revised brief cannot satisfy CGI's burden to prove error in the Board's finding that claim 106 does not anticipate or

render obvious *each* limitation in claim 24 (and vice-versa), as is required under the two-way obviousness analysis.

For all of these reasons, this Court should deny CGI's motion.

## II.    ARGUMENT

### A.    ARS is not estopped from arguing that claim 106 and claim 24 do not interfere

In its revised brief, CGI offers a wholly new argument: that ARS should somehow be estopped from arguing that claims 24 and 106 interfere due to a position ARS purportedly took during the Interference in ARS Contingent Motion 12.[5]

CGI's argument is wrong factually and legally. Estoppel cannot apply unless ARS benefited from a position previously taken that is inconsistent with its current position.[6] As CGI acknowledges in its revised brief,[7] the Board dismissed ARS' Contingent Motion 12 outright.[8] ARS could not and did not benefit from any position taken in a motion that was never addressed. Thus, any position taken by ARS in Contingent Motion 12 cannot serve as an estoppel.

That said, ARS Contingent Motion 12 actually addressed an argument for a new count due to interference-in-fact between ARS claim *19* and CGI claim *111* (*not* ARS claim 24 and CGI claim 106, as CGI implies).[9] Given the existence of that count, ARS then proposed a series

---

[5] *Id*. at 8-9.

[6] *See New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) ("[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (internal citation omitted).

[7] CGI IIF Memo at 2 (Court Docket No. 180).

[8] Decision on Preliminary Motions at 134(submitted herewith as Exhibit A to the Declaration of Matthew C. Nielsen ("Nielsen Decl.")).

[9] ARS Motion 12 at 2 (Nielsen Decl., Ex. B).

of claims to correspond to that count (under the applicable *one-way* obviousness analysis for claims corresponding to a count).[10]

ARS claim 19 recites a cell line capable of "enhanced expression" of a predetermined gene product.[11] Claim 24 neither recites "enhanced expression" of a predetermined gene, nor does it depend from claim 19. Rather, claim 24 depends from claim *18*, a claim directed to a cell line capable of expressing a "gene product of a normally *transcriptionally silent* gene."[12] In Contingent Motion 12, ARS proposed a separate count, A-5, directed to cells expressing a gene product of a normally transcriptionally silent gene that did include claim 24.[13]

As CGI is well-aware, ARS did *not* "affirmatively represent" that claim 24 and claim 106 interfere. As CGI's Opposition to ARS Contingent Motion 12 specifically acknowledged, claims 17, 19-21, 26, 27 and 52 were the *only* ARS claims that ARS designated as corresponding to its proposed count A-4.[14] Contrary to CGI's assertion, ARS actually represented in Contingent Motion 12 that it would *not* have been obvious that the cell line recited in CGI claim 106 could be modified to express a gene product of a normally transcriptionally silent gene (as required by

---

[10] As explained in detail in ARS's Revised Opposition, interference-in-fact requires "two-way" obviousness, whereas claims can be designated as corresponding to a count by demonstrating "one-way" obviousness. ARS Revised Opposition to CGI's Motion to Reverse the Board's Decision that there is no Interference-in-fact ("ARS Opposition") at 2-4 (Court Docket No. 183).

[11] ARS Motion 12 at 9-10 (Nielsen Decl., Ex. B).

[12] *Id.* at 10 (emphasis added).

[13] ARS Motion 14 at 2, 10, 17 (Nielsen Decl., Ex. C).

[14] CGI Opposition 12 at 7 ("It is unclear why ARS designates Claim 17, 19-21, 26, 27 and 52 , and only those claims, out of the 58 ARS claims, as corresponding to proposed Count A-4.") (emphasis in original) (Nielsen Decl., Ex. D).

claim 24).[15] ARS only asked that its claim 24 be designated as ***corresponding*** to count A-4 in the event that ARS's contingent request for count A-5 was denied.[16]

      In short, ARS never took the position that claim 24 and claim 106 interfere, ARS never succeeding in maintaining or establishing that claims 24 and 106 interfere, and ARS never benefited from any such success. Consequently, ARS is not estopped from arguing that the Board correctly found that claims 24 and 106 do not, in fact, interfere.

      **B.    CGI's incorrect construction of ARS claim 24 is fatal to its motion**

      In its revised brief, CGI continues to misrepresent the language and limitations of claim 24 by asserting that the claim does not contain each of its expressly recited limitations. Although CGI certainly took the opportunity to include new evidence and arguments in its revised brief, CGI failed to correct this fundamental error in its arguments.

      CGI's continued mis-construction of claim 24[17] ignores the plain language of claim 24, which recites a cell line according to claim 23 having a DNA construct that ***additionally comprises*** an "amplifiable gene." Since claim 23 recites a cell line that already contains "at least one selectable marker," the cell line of claim 24 must necessarily contain ***both*** an amplifiable gene and at least one selectable marker gene.

---

[15] ARS Motion 12 at 13 (Nielsen Decl., Ex. B). The Board subsequently found erythropoietin to be a normally transcriptionally silent gene in an HEK 293 cell (Decision on Preliminary Motions (Nielsen Decl., Ex. A) at 127-28), but this does not alter the fact that ARS never affirmatively argued that its claim 24 and CGI's claim 106 interfere-in-fact.

[16] Incredibly, CGI asserts that ARS cited the Declaration of Randal Kaufman (Exhibit 3002) to support an argument that claims 24 and 106 defined a single count. *See* CGI IIF Memo at 16 (citing ARS Motion 12 at 17) (Court Docket No. 180). The referenced page of ARS Motion 12, however, does not contain even a single citation to Exhibit 3002. To the contrary, the two previous pages of Exhibit 12 actually contain several citations to Exhibit 3002 to support the argument that proposed counts A-4 and A-5 were not obvious over one another; *i.e.*, essentially the opposite the position that CGI asserts was taken by ARS. *See* Exhibit 12 at 15-16 (Nielsen Decl., Ex. B).

[17] *See* CGI IIF Memo at 6-7 (Court Docket No. 180).

Contrary to the misrepresentation of claim 24 by CGI on page 6 of its revised brief, and upon which it relies throughout its revised brief, when claim 24 is written out to show *verbatim* all of the limitations of the three claims from which it depends, it actually requires the following:

A cell line capable of expressing a gene product by a predetermined normally transcriptionally silent gene within the genome of said cell line,

said genome having inserted therein:

a DNA regulatory segment operatively linked with said normally transcriptionally silent gene,

said DNA regulatory segment is one which is capable of promoting the expression of a gene product normally expressed by said cell line,

wherein the inserted DNA regulatory segment is part of a DNA construct comprising:

[1] said DNA regulatory segment; and

[2] at least one selectable marker gene; and

wherein said DNA construct additionally comprises

[3] an amplifiable gene

The basic (and fatal) flaw in CGI's mis-construction of claim 24 is that CGI equates "selectable marker gene" with "amplifiable gene."[18] Contrary to CGI's assertion, claim 24 does **not** recite a cell line where the "at least one selectable marker" of claim 23 **is** the "amplifiable gene" of claim 24. The specification of the '071 patent shows that it is not: the '071 patent teaches that a "selectable marker" gene is one "that is capable of rendering the transfected cell line resistant to a normally toxic environment,"[19] whereas an "amplifiable gene" is a gene that "leads to an increase in copy number when under selective pressure."[20]

---

[18] *See, e.g.* CGI IIF Memo at 8 (Court Docket No. 180).
[19] U.S. Patent No. 5,272,071 ("the '071 patent") at column 10, lines 56-68 (Nielsen Decl., Ex. E).
[20] *Id.* at col. 10, line 68 to col. 11, line 1.

The '071 patent indicates that there is some overlap between selectable marker genes and amplifiable genes, but it makes clear that they are not the same thing.[21] CGI continues to cite the relevant passage in a disingenuous attempt to equate selectable marker and amplifiable gene.[22] The full passage from the '071 patent actually teaches that when an amplifiable gene is used, it is desirable to ***additionally*** include a positive selectable marker gene, just as recited in claim 24:

> However, since most cell lines contain endogenous copies of these amplifiable genes, the cells will already be somewhat resistant to the selection conditions and distinguishing the cells which have transfected DNA from those which do not receive transfected DNA can be difficult. **Thus, in instances where an amplifiable gene is desired, a positive selection gene which is dominant, such as HPH, gpt, neo and tk (in tk-cells), should *also* be included in the construct**.[23]

Due to its mis-construction of claim 24, CGI never addresses the subject matter of claim 24 as a whole. As explained in ARS's Opposition, this Court can deny CGI's motion on this basis alone.[24]

**C.    To determine interference-in-fact, this Court must consider each of claims 24 and 106 as a whole**

In its revised brief, CGI adds a brief new argument to the effect of "that which anticipates necessarily renders obvious."[25] Although technically a correct statement, CGI misapplies this principal in an attempt to argue that ***parts*** of claims 24 and 106 interfere, since some limitations in the two claims are the same (and those individual limitations could therefore be considered "obvious" over one another).[26] This argument is disingenuous and irrelevant: whether the issue is

---

[21] *Id*. at col. 11, lines 5-18 ("The members of the positive selectable marker gene group and those of the amplifiable gene group overlap so that, ***in theory***, instead of using two genes, one for positive selection and one for amplification, one gene could be used for both purposes.") (emphasis added).

[22] CGI IIF Memo at 8 (Court Docket No. 180).

[23] '071 patent at col. 11, lines 5-18 (Nielsen Decl., Ex. E) (emphasis added).

[24] ARS Opposition at 9 (Court Docket No. 183).

[25] CGI IIF Memo at 7-8 (Court Docket No. 180).

[26] *Id*.

7

anticipation or obviousness, it is each claim *as a whole*, including all of their respective limitations, that must be considered.[27] There is no basis in law for the concept of an interference-in-fact between individual parts of claims.

ARS's revised Memorandum filed on October 1, 2007 contains a detailed discussion of the law of obviousness that need not be repeated here.[28] For the sake of clarity, however, a few points are worth reiterating. When deconstructed, most inventions can be viewed as new combinations of old elements that were separately known in the art.[29] The inventions at issue are no exception. But to establish obviousness, one of ordinary skill in the art must have been motivated to combine the known elements in the manner claimed.[30] Thus, a claimed invention is not obvious unless "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art."[31]

### D.    The Board's Decision was supported by extensive findings

In its revised brief, CGI continues to assert that the Board's finding of no interference-in-fact was not accompanied by any findings of fact or conclusions of law.[32] That is simply not true. The Board's Decision contains extensive findings of fact and conclusions of law that support the

---

[27] *Minnesota Mining & Mfg. Co. v Johnson & Johnson Orthopedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir. 1992) (Anticipation requires that the reference describe *each* and *every* limitation in the claim, either expressly or inherently); *In re Kahn*, 441 F.3d 977, 985 (Fed. Cir. 2006) (A claim is not obvious unless "the subject matter *as a whole* would have been obvious at the time the invention was made to a person having ordinary skill in the art.") (emphasis added).

[28] ARS Opposition at 11-12 (Court Docket No. 183).

[29] *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998).

[30] *In re Kahn*, 441 F.3d at 986 ("[T]he 'motivation-suggesting-teaching' requirement protects against the entry of hindsight into the obviousness analysis."); *In re Fridolph*, 30 C.C.P.A. 939, 942 (1943) ("[I]n considering more than one reference, the question always is: does such art suggest doing the thing the [inventor] did.").

[31] *In re Kahn*, 441 F.3d at 985.

[32] CGI IIF Memo at 4 (Docket No. 180), *Id.* at 18 ("The Board erred, because it reached its decision *sua sponte*, without requesting of considering testimony or documents reflecting the level of skill in the art in 1989").

Board's determination of no interference-in-fact.[33] In fact, much of the new evidence and testimony on which CGI now relies is the same evidence upon which the Board expressly made its findings. Moreover, as explained below, the scope and content of evidence and testimony now relied on by CGI (whether or not it was expressly considered by the Board) is no different from the scope and content of the evidence and testimony that formed the basis for the Board's findings. In any event, even if the scope and content of the evidence and testimony now relied on by CGI is any different from that relied on by the Board, CGI's new evidence is still insufficient to demonstrate any error in the Board's determination of no interference-in-fact.

### 1. CGI's new evidence fails to establish that the combination of claim 24 with the prior art renders claim 106 obvious

In its Decision, the Board found that claim 106 "recites specific provisions that are nowhere found in the prior art."[34] As noted above, and in ARS's Opposition,[35] CGI bore the burden to establish that the Board erred and that claim 24 renders claim 106 obvious in light of the prior art, when claim 24 is treated as a prior-art reference.[36]

In its October 2, 2006 Memorandum, CGI barely mentioned whether and how the Board erred in finding that claim 24 does not render claim 106 obvious. CGI's obviousness argument amounted to little more than the statement that there was nothing unusual about the combination. That, of course, is the complete inverse of the test for obviousness. Obvious is <u>not</u> demonstrated

---

[33] Decision on Preliminary Motion at, *e.g.*, pp. 39 and 126-133 (Nielsen Decl., Ex. A). In particular, the Board expressly considered each of the *Graham* factors, including the scope and content of the prior art listed at pages 32 and 39 of the Decision. The Board discussed each of these references individually and in combination, and made extensive findings with respect to the parties' claims in light of this prior art. *See*, *e.g.*, *id*. at 42-47 (findings based on "Kaufman I"), 49-54 (findings based on "Raibaud"), 56-58 (findings based on "Nasmyth I/II), 61-65 (findings based on "Smithies"), 66-68 (findings based on Cid), 71-74 (findings based on Thomas), and at 79-*et seq.* (findings based on "Japan").

[34] Decision on Preliminary Motions at 88 (Nielsen Decl., Ex. A)

[35] ARS Opposition at 2-4, 12-13 (Court Docket No. 183).

[36] *Winter v. Fujita*, 53 U.S.P.Q.2d 1234, 1243 (Bd. Pat. App. & Interf. 1999).

by arguing that there is **no** evidence that one would **not** have been motivated to combine the teaching of the prior art; obviousness requires evidence that one **would have** been motivated to combine the teachings of the prior art in the manner claimed.[37]

In its revised brief, CGI makes the same argument,[38] but belatedly addresses a single new reference, the so-called "Kaufman II" article (Exhibit 3015).[39] However, not only did the Board consider Kaufman II in its Decision,[40] the Board expressly found CGI's claim 106 to be non-obvious over Kaufman II, even when combined with a host of other prior-art references:

> Even presuming Japan to be prior art under 35 U.S.C. § 102(a) with respect to the subject matter of Claims 105-112 of Genesys's Application 08/102,390, we nevertheless conclude that the combined teachings of Japan, Kaufman I, Thomas and Smithies, optionally further in view of Kaufman II, do not establish a prima case of obvious under 35 U.S.C. S 103 for the invention of Genesys's Claim 106. We agree with Genesys's view that "Claim 106 . . . recites specific provisions that are nowhere found in the prior art" (Paper No. 63, p. 23, Para. 1).[41]

CGI cites pages 157, 174 and 175 of Kaufman II, disingenuously suggesting that this reference, alone, teaches each of the elements recited in CGI's claim 106 and provides a motivation to combine them.[42] However, the Board already considered this reference and found that not to be the case. Motivation to combine is an issue of pure fact.[43] Thus, this Court is to review the Board's finding on this point based on whether it was supported by substantial

---

[37] *In re Kahn*, 441 F.3d at 986.

[38] CGI IIF Memo at 16-17 (Court Docket No. 180).

[39] Kaufman, R., "High Level Production of Proteins in Mammalian Cells," in *Genetic Engineering, Principles and Methods*, Vol. 9 (Setlow, J., ed.) (Plenum Press, New York, 1987); pp. 155-198 ("Kaufman II") (Exhibit 3015).

[40] *See e.g.*, Decision on Preliminary Motions at 39 (Nielsen Decl., Ex. A).

[41] *Id*. at 88.

[42] CGI IIF Memo at 17 (Court Docket No. 180).

[43] *In re Gartside,* 203 F.3d 1305, 1316 (Fed. Cir. 2000); *Winner International Royalty Corp. v. Wang*, 202 F.3d 1340 (Fed. Cir. 2000).

evidence.[44] Despite that burden, CGI does nothing more than point to individual elements scattered throughout a prior-art reference and suggest that there is nothing unusual about the combination. This is wholly insufficient to satisfy its burden to show that the Board's decision was not supported by substantial evidence.

Moreover, Kaufman II does not in fact disclose each of the elements recited in CGI's claim 106. CGI glosses over the fact that its claim 106 requires <u>both</u> the CMV promoter <u>and</u> the CMV enhancer. Although Kaufman II mentions the CMV enhancer,[45] the passage cited by CGI makes ***no*** reference to the CMV promoter. In fact, there is not a single mention of the CMV promoter in the three pages of detailed discussion of promoters found in Kaufman II[46] (or anywhere else in Kaufman II, for that matter). Further, and despite CGI's assertion to the contrary, none of this discussion contains a single reference to the 293 cell line recited in claim 106, much less any suggestion to combine 293 cells with the CMV promoter, CMV enhancer, and the erythropoietin gene.

The lone reference to 293 cells that CGI did manage to glean from Kaufman II is found nearly 20 pages earlier in the document. Even a cursory examination of that passage shows that it only describes the use of such cells with recombinant adenovirus vectors, not with the CMV promoter, the CMV enhancer, or the erythropoietin gene.[47]

Given the Board's thorough review of the scope and content of the prior art (at pages 36 *et seq.* in its Decision), including a specific discussion of the implications of Kaufmann II to

---

[44] *Mazzari v. Rogan*, 323 F.3d 1000, 1005 (Fed. Cir. 2003) ("substantial evidence" standard applies in §145 proceeding where no additional evidence is provided); *see also In re Gartside*, 203 F.3d at 1313-14.

[45] Kaufman II at 175 (Exhibit 3015).

[46] *Id.* at 175-178.

[47] *Id.* at 157 ("293 cells can complement recombinant adenoviruses which contain replacements in the Ela and Elb region.").

claim 106 (at page 88), and its detailed analysis of the interference-in-fact question (at pages 126-133), this Court should find that the Board's determination that claim 24 does not render claim 106 obvious was supported by substantial evidence. The Court can uphold the Board's finding of no interference-in-fact on this basis alone.

> ### 2.    CGI's new evidence fails to establish that the combination of claim 106 with the prior art renders claim 24 obvious

CGI also bore the burden to prove that the second part of the two-way test is satisfied, *i.e.*, that claim 106 renders claim 24 obvious in light of the prior art, when claim 106 is treated as a prior-art reference.[48] Even considering the new evidence contained in CGI's revised brief, CGI still fails to satisfy its burden.[49]

CGI's arguments fail for at least two reasons. First, CGI never addresses (much less provides evidence regarding) whether one of ordinary skill would have been motivated to add to the cell of claim 106 ***both*** the selectable marker gene and the amplifiable gene required by claim 24. Second, CGI fails to establish that the Board erred in finding that the prior art did not suggest a cell line having inserted therein an amplifiable gene, an exogenous regulatory element, and a selectable marker, so as to modify expression of an endogenous transcriptionally-silent gene.[50] CGI now cites evidence not addressed in its original brief, but none of this new evidence establishes that the scope and content of the prior art was any different than that already considered by the Board.

---

[48] *Winter*, 53 U.S.P.Q.2d at 1243.

[49] The second half of the two-way obviousness inquiry requires that CGI demonstrate that one of ordinary skill in the art in 1989 would have been motivated to combine claim 106 with the prior art to produce the cell line of claim 24 (a cell line having inserted into its genome a DNA construct containing a selectable marker gene, an amplifiable gene, and an exogenous DNA regulatory segment operatively associated with an endogenous normally transcriptionally silent gene).

[50] *See*, *e.g.*, Decision on Preliminary Motions at 42-43 (Nielsen Decl., Ex. A).

CGI's argument, with or without its new evidence, boils down to the idea that it would have been obvious to add an amplifiable gene to the cell of claim 106, and that this somehow results in claim 24. As described above and in ARS's revised Memorandum, CGI is wrong. Claim 24 requires both an exogenous regulatory element **and** an amplifiable gene. None of the new evidence relied on by CGI suggests modifying the cell of claim 106 through the use of a combination of a selectable marker gene **and** an amplifiable gene to produce a cell line that expresses the gene product from a normally transcriptionally silent gene, as required in claim 24.

CGI never addresses that point. Instead, CGI offers mere attorney argument that the prior art suggested adding an amplifiable gene. Because CGI never addresses whether a person of ordinary skill in the art in 1989 would have considered claim 24 **as a whole** obvious over claim 106 in view of the prior art, CGI fails to fully address the two-way obviousness test for interference-in-fact. This is another independent basis on which this Court can uphold the Board's Decision.

### 3. Much of the new evidence on which CGI relies was already addressed by the Board in its Decision

In its revised Memorandum, CGI relies on a host of new evidence and testimony, much of which was already extensively discussed and considered in the Board's Decision.[51]

### a. The Board already considered "Kaufman I" in finding no interference-in-fact

One of the items of new evidence on which CGI relies was already extensively discussed in the Board's Decision, where it is identified as "Kaufman."[52] Kaufman I describes inserting the gene encoding human Tissue Plasminogen Activator ("human tPA") into hamster cells using

---

[51] This includes: Kaufman I (Exhibit 2014), Kaufman II (Exhibit 3015), Nickoloff Declaration (Exhibit 2029), and Kaufman Declaration (Exhibit 3002).
[52] *See, e.g.*, Decision on Preliminary Motions at 40-47 (Nielsen Decl., Ex. A).

a vector that contains DHFR as an amplifiable gene.[53] CGI cannot legitimately argue that the human tPA gene is a predetermined endogenous gene in the genome of hamster cells. And CGI does not and cannot point to anything in Kaufman I that suggests application of the method described therein to an endogenous gene.

In fact, the Board specifically addressed and rejected CGI's present argument that, inclusion of an amplifiable gene to increase expression (such as is required by claim 24) was known in the prior art,[54] in the very section of the Decision devoted to its finding of no interference-in-fact.[55]

> However, Kaufman I does not appear to teach that expressible, amplifiable genes inserted into the genome of a cell line by homologous recombination reasonably would be expected to amplify endogenous target genes.[56]

CGI offers no evidence showing that the Board's finding in this regard was incorrect.

Moreover, although the vector described in Kaufman I contains DHFR as an amplifiable gene, CGI cannot point to anything in Kaufman I that discloses or suggests the use of a selectable marker gene *in addition* to that amplifiable gene.[57] Thus, CGI cannot legitimately argue that Kaufman I discloses or suggests modifying the cell of CGI's claim 106 to include both an amplifiable gene and a selectable marker gene, as required by ARS claim 24.

CGI's reliance on Kaufman I, without even addressing the Board's analysis of that reference, does nothing to demonstrate error in the Board's finding of no interference-in-fact.

### b.    Kaufman II adds nothing to the analysis

CGI now cites another article, which the Board referred to as "Kaufman II" in its Decision, as new evidence in support of its argument that claim 24 is obvious in light of claim

---

[53] Kaufman I (Abstract) (Exhibit 2014).
[54] Decision on Preliminary Motions at 129 (Nielsen Decl., Ex. A).
[55] *Id.* at 130.
[56] *Id*. at 129.
[57] Kaufman I at 1752 (Figure 1) (Exhibit 2014).

106 in combination with the prior art. Just as for Kaufman I, CGI offers nothing to explain how or why one of ordinary skill in 1989 would have been motivated to combine the disclosure of Kaufman II with CGI's claim 106 to arrive at the invention recited in claim 24. CGI appears to rely on Kaufman II as evidence of the same knowledge in the art as demonstrated by Kaufman I, namely, that it was known in the art that an amplifiable gene could be used to co-amplify a heterologous gene.[58] Like Kaufman I, Kaufman II only discloses co-transfection of a *heterologous* gene with an amplifiable gene, and does not suggest use of an amplifiable gene to co-amplify an *endogenous, transcriptionally silent* gene, such as that in claims 106 and 24.[59] Nor does CGI point to anything in Kaufman II that discloses or suggests modifying the 293 cell of claim 106 to include both an amplifiable gene and a selectable marker gene, as required by claim 24.

Thus, CGI fails to show that Kaufman II is any greater in scope or content (with respect to the obviousness/non-obviousness of claim 24) than Kaufman I. CGI's new reliance on Kaufman II does not advance its attempt to demonstrate interference-in-fact between ARS claim 24 and CGI claim 106.[60]

### c.    The Board already considered the Declaration of Jac Nickoloff in finding no interference-in-fact

In its revised brief, CGI relies upon the Declaration of Jac Nickoloff,[61] though it is entirely unclear why CGI would wish to do so. Exactly one sentence before the Board's pronouncement "[t]here being no persuasive evidence or argument to the contrary, we conclude that there is no interference-in-fact," the Board explained that the Nickoloff declaration was

---

[58] CGI IIF Memo at 14 (Court Docket No. 180).
[59] CGI also fails to show that Kaufman II suggests the use of *both* an amplifiable gene and a selectable marker gene, as expressly required by claim 24.
[60] Though not as extensive as for Kaufman I, the Board's Decision also addressed Kaufman II. *See, e.g.*, Decision on Preliminary Motions at 88 (Nielsen Decl., Ex. A).
[61] CGI IIF Memo at 15 (Court Docket No. 180).

"little more than a restatement of CGI's conclusions."[62] In fact, the Board expressly rejected the very paragraph in the declaration on which CGI now relies as "evidence" that it would have been obvious to modify the cell of claim 106 to add DHFR.[63]

CGI makes no attempt to demonstrate that the Board erred in rejecting the Nickoloff declaration as wholly conclusory, nor does CGI attempt to explain how the Nickoloff declaration provides evidence that one of ordinary skill in 1989 would have been motivated to modify claim 106 to add an amplifiable gene (let alone an amplifiable gene **and** a selectable marker gene). The Nickoloff declaration does not, in any way, call into question whether the Board's finding of no interference-in-fact was correct.

### d.    The declaration of Randal Kaufman does not support CGI's arguments

CGI now relies on the Kaufman Declaration (Exhibit 3002 in the Interference), arguing that Dr. Kaufman testified that claims 106 and 24 were directed to the same invention.[64]

Dr. Kaufman said no such thing. In fact, in the paragraph (¶ 499) CGI cites, Dr. Kaufman said nothing more or less than that he had been informed that ARS had proposed that count A-5 be added to the Interference (and that count A-5 would be directed to a cell line according to ARS claim 18, or CGI claims 105, 106, 110 or 112).[65] Dr. Kaufman offered no opinion on whether claims 24 and 106 were directed to the same invention. The Kaufman Declaration provides nothing to support CGI's request that the Court overturn the Board's finding of no interference-in-fact.

---

[62] Decision on Preliminary Motions at 131-32 (Nielsen Decl., Ex. A).

[63] *Id*. at 129 ("The pinpointed disclosure in Kaufman I does not support [CGI's] conclusion").

[64] CGI IIF Memo at 16 (citing Exhibit 3002 at ¶499).

[65] As actually proposed, ARS count A-5 was directed to a cell line according to ARS claim 18 or to CGI claim 105 or 110, not to claim 106.

CGI says that in ¶ 610 of the Kaufman Declaration, Dr. Kaufman testified that dependent claim 24 was directed to the same invention as CGI claim 106. CGI is incorrect. In his ¶ 610, Dr. Kaufman said not *one* word about whether claim 24 was directed to the same invention as claim 106. Instead, he discussed whether a person of ordinary skill in the art would have expected that a cell line of ARS claim 18, or a cell line of CGI claims 105, 106, 110, or 112, would continue to express, in an enhanced manner, the gene product of the normally transcriptionally silent gene.[66]

### 4.    The additional evidence not expressly cited or discussed by the Board does not support CGI's arguments

CGI's now relies on one document not expressly discussed by the Board (U.S. Patent No. 5,079,159) ("the Kaufman patent") (Exhibit 2065).[67] CGI's reliance on this reference fails because CGI offers no evidence showing that the scope and content of the Kaufman patent is any greater than that of the other Kaufman references expressly considered by the Board in its Decision.

With respect to CGI's new reliance on testimony from Drs. Craig or Nickoloff, that testimony is either irrelevant to the issue at hand or provides nothing more than the evidence and testimony already addressed by the Board in its Decision.

### a.    The Kaufman patent does not disclose anything more than the references already considered by the Board

The Kaufman patent, although not expressly cited or considered by the Board, discloses nothing more than either Kaufman I or Kaufman II. In fact, just like Kaufman I, the Kaufman patent describes inserting the gene encoding human Tissue Plasminogen Activator ("the tPA

---

[66] Kaufman Decl. at 192 (¶610) (Exhibit 3002).
[67] CGI also identifies a second Kaufman patent in its brief (Exhibit 2064, U.S. Patent No. 5,238,820), but offers no explanation of its relevance. This second Kaufman patent does not provide any additional information relevant to the question of interference-in-fact that is not already presented in the other documents relied on by CGI.

gene") into hamster cells using a vector that contains DHFR as an amplifiable gene.[68] As noted,

the human tPA gene is clearly not a predetermined normally transcriptionally silent endogenous

gene in the genome of a hamster cell.[69] Moreover, the vector used in the Kaufman patent

contains only an amplifiable gene, not a selectable marker gene in addition to an amplifiable

gene.[70] Thus, the Kaufman patent, like each of the other Kaufman references, is nothing more

than a disclosure of inserting a foreign (heterologous) gene, together with an amplifiable gene,

into a cell. Thus, and in contrast to CGI's assertion,[71] nothing in the Kaufman patent suggests

using gene amplification to increase expression of an endogenous gene in a cell (such as that of

claim 106), just as the Board found with respect to Kaufman I.[72]

> **b.** **The Craig declaration is irrelevant to the issue of interference-in-fact**

CGI's new reliance on the Craig Declaration (Exhibit 2026)[73] is entirely misplaced. The

paragraphs of the Craig Declaration cited by CGI contain nothing more than a discussion of the

purported teachings of the *specification* of CGI's '390 application-in-suit.[74] Dr. Craig's

testimony about the *specification* of Dr. Skoultchi's patent application has nothing whatsoever to

do with CGI's current claims or whether claim 24 or 106 would have been obvious in light of the

prior art. To the extent that the cited paragraphs are seen as testimony that amplifiable genes

were known in 1989, this was already apparent from the assortment of references already

considered by the Board, including Kaufman I and Kaufman II.

> **c.** **The deposition transcript of Jac Nickoloff is irrelevant to the issue of interference-in-fact**

---

[68] Kaufman patent, Examples 1-3, Col. 16-20 (Exhibit 2065).
[69] A requirement for claim 24.
[70] *See, e.g.*, Kaufman patent, Figure 6B (Exhibit 2065).
[71] CGI IIF Memo at 13 (Court Docket No. 180).
[72] Decision on Preliminary Motions at 129 (Nielsen Decl., Ex. A).
[73] CGI IIF Memo at 15 (Court Docket No. 180).
[74] Craig Decl. at ¶¶19 and 21 (Exhibit 2026).

CGI's new reliance on an excerpt from the deposition of Jac Nickoloff (Exhibit 2056) is also misplaced. On its face, the quoted passage contains nothing more than testimony that amplifiable genes were known in 1989. That has never been disputed and, as already noted, was extensively disclosed in references fully considered by the Board in its Decision, such as Kaufman I and Kaufman II.

CGI also cites an assertion by Dr. Nickoloff that an amplifiable gene and a regulatory element are interchangeable pieces. This too, does nothing to further CGI's argument. As part of its interference-in-fact argument, CGI must demonstrate the obviousness of ***adding*** an amplifiable gene (and a selectable marker gene) to the cell of claim 106, not the substitution of one of the other elements of claim 106 for an amplifiable gene.

Thus, even if CGI were permitted to rely upon this new evidence, CGI still fails to demonstrate two-way obviousness, and still fails to establish any error in the Board's finding that the prior art did not suggest a cell line having inserted therein an amplifiable gene, an exogenous regulatory element, and a selectable marker, to modify expression of an endogenous transcriptionally silent gene, as required by claim 24.

**5.    CGI has failed to show that one of ordinary skill in 1989 would have had a reasonable expectation of success in practicing each of claims 24 and 106**

Given CGI's failure to show that one of ordinary skill would have been motivated to combine each claim-at-issue here with the teaching of the prior art to arrive at the other claim-at-issue, it is hardly necessary to address the "reasonable expectation of success" aspect of the

obviousness analysis.[75] Nevertheless, it should be noted that Dr. Tlsty, CGI's own witness, expressed "doubts" in her expert report that one could use an expressible amplifiable gene to over-express a gene that is normally transcriptionally silent in the genome of the cell line, even today.[76] Thus, Dr. Tlsty confirmed that one of ordinary skill in 1989, looking at claim 106 in combination with the prior art, could not have had a reasonable expectation of success in making the cell line of claim 24.

## III.    CONCLUSION

None of the evidence or arguments that CGI has presented, either in the '114 Interference below, in its CGI's briefs last Fall, or in its latest brief, establishes any error in the Board's finding that ARS claim 24 and CGI claim 106 are not obvious over one another in light of the prior art. For the reasons discussed herein, this Court should deny CGI's motion to reverse the Board's determination that there is no interference-in-fact between claim 106 and any of ARS's claims, including claim 24.

---

[75] *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1164 (Fed. Cir. 2006) ("if all the elements of an invention are found in a combination of prior art references: a proper analysis under § 103 requires, inter alia, consideration of two factors: (1) whether the prior art would have suggested to those of ordinary skill in the art that they should make the claimed composition or device, or carry out the claimed process; and (2) whether the prior art would also have revealed that in so making or carrying out, those of ordinary skill would have a reasonable expectation of success.").

[76] Expert Report of Thea Tlsty, Ph.D. (Kelber Decl., Ex. A) at ¶32 (Court Docket No.127).

Dated: November 19, 2007                    Respectfully submitted,


                                            By: /s/ Kevin M. Flowers
                                            Fred A. Kelly, Jr. (BBO # 544046)
                                            Jill E. Uhl (BBO # 656283)
                                            NIXON PEABODY LLP
                                            100 Summer Street
                                            Boston, MA 02110
                                            Tel: 617-345-1000
                                            Fax: 617-345-1300


                                            Kevin M. Flowers (*pro hac vice*)
                                            Matthew C. Nielsen (*pro hac vice*)
                                            Elliot C. Mendelson (*pro hac vice*)
                                            Cullen N. Pendleton (*pro hac vice*)
                                            MARSHALL, GERSTEIN & BORUN LLP
                                            6300 Sears Tower
                                            233 S. Wacker Drive
                                            Chicago, IL 60606-6357
                                            Tel: (312) 474-6300
                                            Fax: (312) 474-0448


                                            Counsel for APPLIED RESEARCH SYSTEMS ARS
                                            HOLDING, N.V.

21

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **ARS MEMORANDUM ADDRESSING NEW EVIDENCE AND ARGUMENTS RELIED ON BY CGI IN SUPPORT OF ITS MOTION TO REVERSE THE BOARD'S DECISION THAT THERE IS NO INTERFERENCE-IN-FACT, DECLARATION OF MATTHEW C. NIELSEN** in support of the same and all exhibits cited to therein are being filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the above date.

 /s/ Matthew C. Nielsen
Counsel for APPLIED RESEARCH
SYSTEMS ARS HOLDING, N.V.