# Exhibit A, Part 1

The opinion in support of the decision being
entered today is <u>not</u> binding precedent of the Board.

Paper 172

Filed by:    Motions Panel
              Mail Stop Interference
              P.O. Box 1450               Filed:
              Alexandria, VA 22313-1450    22 June 2004
              Tel:  703-308-9797
              Fax:  703-305-0942

UNITED STATES PATENT AND TRADEMARK OFFICE

> **MAILED**
>
> **JUN 2 2 2004**
>
> PAT. & T.M  OFFICE
> BOARD OF PATENT APPEALS
> AND INTERFERENCES

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.
Junior Party,
(U.S. Patent 5,272,071)

v.

CELL GENESYS, INC.
Junior Party,[1]
(U.S. Application 08/102,390)

Interference 105,114

DECISION ON PRELIMINARY MOTIONS

Before TEDDY S. GRON, <u>Administrative Patent Judge</u>,
FRED E. McKELVEY, <u>Senior Administrative Patent Judge</u> and
JAMES T. MOORE <u>Administrative Patent Judge</u>.

---

[1]    The NOTICE REDECLARING INTERFERENCE NO. 103,737 (Paper
No. 1) accorded both parties junior party status due to disputes
relating to the scope of the interference count and the parties'
priority benefit dates.

Interference 105,114

TEDDY S. GRON, Administrative Patent Judge.

1.  Summary of the Decision

        The parties present: (1) preliminary motions for benefit of

the filing dates of their earliest applications for subject

matter defined by the interference count; (2) preliminary motions

for judgment that the other party's claims corresponding to the

count are unpatentable under 35 U.S.C. § 102/103; (3) preliminary

motions for judgment that the other party's claims corresponding

to the count are unpatentable under 35 U.S.C. § 112, first

paragraph (written description and/or enablement requirements);

(4) contingent preliminary motions to·add new claims and modify

the count; and (5) preliminary motions to designate certain

claims designated as corresponding to the count as not

corresponding to the count.  Having considered all the parties'

arguments and evidence, we conclude that each party has shown

that many of the other party's claims designated as corresponding

to the count are unpatentable to it over prior art, yet neither

party has established that the other party's claims do not

satisfy 35 U.S.C. § 112, first paragraph.  Since no party's

claims which remain patentable to it are directed to the same

patentable invention as a claim patentable to the other party,

there is no interference-in-fact, and this judgment of no

interference-in-fact will be entered.  Accordingly, the parties'

-2-

Interference 105,114

preliminary motions for benefit of the filing dates of their earliest applications for subject matter defined by the count, to modify the count, and to designate claims as not corresponding to the count are dismissed as moot.

2.  Introduction

On March 28, 2003, Interference No. 103,737 was redeclared as follows (Paper No. 1, pp. 6-8):

### Patent Interference No. 105,114

#### Junior Party ("ARS")

| | |
|---|---|
| Named inventor: | Scott C. Chappel, Jamaica Plain, MA |
| Patent: | U.S. Patent 5,272,071, issued December 21, 1993, from U.S. Application 07/893,447, filed May 28, 1992 |
| Title: | Method for the Modification of the Expression Characteristics of an Endogenous Gene of a Given Cell Line |
| Assignee: | Applied Research Systems Ars Holding, N.V., a subsidiary of Ares-Serono S.A. |
| Accorded Benefit: | None |

#### Junior Party ("GENESYS")

| | |
|---|---|
| Named inventor: | Arthur I Skoultchi, Larchmont, NY |
| Patent: | U.S. Application 08/102,390, filed August 5, 1993 |
| Title: | Production of Proteins Using Homologous Recombination |
| Assignee: | Cell Genesys, Inc. |
| Accorded Benefit: | None |

-3-

Interference 105,114

### Count 1

A method according to claim 2 or claim 3 of ARS's U.S. Patent No. 5,272,071.

### Parties' Claims Corresponding to Count 1

ARS's U.S. Patent 5,272,071:  Claims 1-58

GENESYS's U.S. Application 08/102,390:  Claims 105-106

### Parties' Claims Not Corresponding to Count 1

ARS's U.S. Patent 5,272,071:  None

GENESYS's U.S. Application 08/102,390:  None

In the same March 28, 2003, Notice Redeclaring Interference No. 103,737 (Paper No. 1), the APJ invited GENESYS "to file an expedited motion under 37 CFR § 1.633(c)(2) to amend or add additional claims that would correspond to ARS's allegedly distinct inventions" (Paper No. 1, pp. 2-3).  The APJ reminded GENESYS that the "moving party bears the burden of demonstrating that it is entitled to the relief requested.  37 CFR § 1.633(a)" (Paper No. 1, p. 3).

On April 10, 2003, GENESYS filed Cell Genesys Response To Paper No. 1 (Paper No. 10) in Interference 105,114 and an Amendment in Skoultchi's involved U.S. Application 08/102,390 (Paper No. 44 thereof), both papers requesting entry of new Claims 107-112.  In its Response, GENESYS stated that, "upon entry, the claims pending in the involved Cell Genesys

-4-

Interference 105,114

application shall be Claims 105-112.  All correspond to current

Count 1 of the interference" (Paper No. 10, p. 1, para. 1).

Genesys expressly stated (Paper No. 10, p. 1, para. 3)(emphasis

added):

> [T]he current count would render a count directed to
> the cell lines, such as Claim 19 of involved U.S.
> Patent 5,272,071, Chappel ("Chappel") anticipated or
> obvious, but the claim, and corresponding claims,
> such as <u>Claims 105, 106, 110 and 111 of Cell Genesys</u>
> <u>may not render current Count 1 obvious, as those claims</u>
> <u>do not require the use of homologous recombination,</u>
> recited in the current Count, <u>to arrive at the cell</u>
> <u>or cell line claimed.</u>  <u>Cf.</u> Cell Genesys Claim 112.

On April 24, 2003, Interference 105,114 was again redeclared

(Paper No. 16)), thereby (1) granting GENESYS's request (Paper

No. 10) for entry of its Amendment (Paper No. 44 in Application

08/102,390) adding new Claims 107-112 to involved Application

08/102,390; (2) designating Claims 105-112 of involved GENESYS

Application 08/102,390 as corresponding to Count 1, the sole

count of Interference 105,114; (3) granting ARS's Revised

Miscellaneous Motion 1 (Papers No. 4 and No. 11) for entry of a

certificate of correction; and (4) denying ARS's Revised

Miscellaneous Motion 2 (Papers No. 5 and No. 12) for entry of a

certificate of correction (Redeclaration, Paper No. 16, p. 6).

Claims 1-58 of ARS's involved U.S. Patent 5,272,071 (ARS's

'071 patent) which are designated as corresponding to Count 1 are

reproduced in <u>Appendix A</u> to this opinion.

-5-

Interference 105,114

Claims 105-112 of GENESYS's involved Application 08/102,390 which are designated as corresponding to Count 1 are reproduced in Appendix B to this decision.

On April 29, 2003, ARS filed (1) ARS's Preliminary Statement under 37 CFR § 1.623 (Paper No. 43); (2) ARS's List of Exhibits Served With Motions 1-5 and 7-16 (Paper No. 44); and (3) the following preliminary motions:

A.    ARS's Preliminary Motion 1 under 37 CFR § 1.633(a) (Paper No. 45) asks for judgment that Genesys Claims 105-112 are unpatentable for noncompliance with the written description requirement of 35 U.S.C. § 112, first paragraph.

B.    ARS's Preliminary Motion 2 under 37 CFR § 1.633(a) (Paper No. 46) asks for judgment that Genesys Claims 106-112 are unpatentable for noncompliance with the enablement requirement of 35 U.S.C. § 112, first paragraph.

C.    ARS's Preliminary Motion 3 under 37 CFR § 1.633(a) (Paper No. 47) asks for judgment that Genesys Claims 105 and 110-112 are unpatentable under 35 U.S.C. § 102(b) over Kaufman et al., "Coamplification and Coexpression of Human Tissue-Type Plasminogen Activator and Murine Dihydrofolate Reductase Sequences in Chinese Hamster Ovary Cells," Molecular and Cellular Biology, Vol. 5, No. 7, pp. 1750-1759 (July 1985) (Exhibit (Exh.) 3007).

D.    ARS's Preliminary Motion 4 under 37 CFR § 1.633(a) (Paper No. 48) asks for judgment that Genesys Claims 110-112 are unpatentable under 35 U.S.C. § 102(b) over Raibaud et al., "A Technique for Integrating Any DNA Fragment into the Chromosome of Escherichia coli," Gene, Vol. 29, pp. 231-241 (1984)(Exh. 3008).

Interference 105,114

E.  ARS's Preliminary Motion 5 under 37 CFR § 1.633(a)
    (Paper No. 49) asks for judgment that Genesys
    Claims 110-112 are unpatentable under 35 U.S.C.
    § 102(b) over Japanese Patent Publication 1-215280,
    published August 29, 1989 (Exh. 3009 (We cite ARS
    Exh. 3010 and Genesys's Exh. 2016, which are
    certified English translations of Japanese Patent
    Publication 1-215280 of record.)).

F.  ARS's Preliminary Motion 7 under 37 CFR § 1.633(f)
    (Paper No. 50) asks for benefit under 35 U.S.C.
    § 120 of the filing dates of its parent U.S.
    Application 07/454,783 (Exh. 3013), filed December 22,
    1989, and its PCT application PCT/US90/07642
    (Exh. 3016), filed December 21, 1990, "with
    regard to Count 1".

G.  ARS's Preliminary Motion 8 under 37 CFR § 1.633(c)(1)
    (Paper No. 51) asks to substitute Count A-2 for
    current Count 1, contingent however upon the Board of
    Patent Appeals and Interferences (hereafter Board)
    concluding that "one or more of Cell Genesys . . .
    claims 105-112, or a claim subsequently added, is
    (1) patentable and (2) directed to the subject matter
    of proposed Count A-2" (Paper No. 51, p. 1, para. I).

H.  ARS's Preliminary Motion 9 under 37 CFR § 1.633(f)
    (Paper No. 52) asks for benefit under 35 U.S.C.
    § 120 of the filing dates of its parent U.S.
    Application 07/454,783 (Exh. 3013), filed December 22,
    1989, and its PCT application PCT/US90/07642
    (Exh. 3016), filed December 21, 1990, "with respect
    to ARS's proposed count A-2 . . . contingent on
    the granting of ARS motion 8" (Paper No. 52, p. 1,
    para. I).

I.  ARS's Preliminary Motion 10 under 37 CFR § 1.633(c)
    (Paper No. 53) asks to add Count A-3 to the
    interference, contingent however upon the Board's
    determination that "Cell Genesys . . . has a
    patentable invention defined by proposed count
    A-3 (Paper No. 53, p. 1, para. I).

J.  ARS's Preliminary Motion 11 under 37 CFR § 1.633(f)
    (Paper No. 54) asks for benefit under 35 U.S.C.
    § 120 of the filing dates of its parent U.S.

-7-

Interference 105,114

      Application 07/454,783 (Exh. 3013), filed December 22, 1989, and its PCT application PCT/US90/07642 (Exh. 3016), filed December 21, 1990, "with respect to ARS's proposed count A-3 . . . contingent on the granting of ARS motion 10" (Paper No. 54, p. 1, para. I).

K.    ARS's Preliminary Motion 12 under 37 CFR § 1.633(c)(1) (Paper No. 55) asks to add Count A-4 to the interference, contingent however upon the Board's determination that "Cell Genesys . . . has a patentable claim directed to the same patentable invention defined by proposed count A-4 (Paper No. 55, p. 1, para. I).

L.    ARS's Preliminary Motion 13 under 37 CFR § 1.633(f) (Paper No. 56) asks for benefit under 35 U.S.C. § 120 of the filing dates of its parent U.S. Application 07/454,783 (Exh. 3013), filed December 22, 1989, and its PCT application PCT/US90/07642 (Exh. 3016), filed December 21, 1990, "with respect to ARS's proposed count A-4 . . . contingent on the granting of ARS motion 12" (Paper No. 56, p. 1, para. I).

M.    ARS's Preliminary Motion 14 under 37 CFR § 1.633(c)(1) (Paper No. 57) asks to add Count A-5 to the interference, contingent however upon the Board's determination that "Cell Genesys . . . has a patentable claim directed to the same patentable invention defined by proposed count A-5 (Paper No. 57, p. 1, para. I).

N.    ARS's Preliminary Motion 15 under 37 CFR § 1.633(f) (Paper No. 58) asks for benefit under 35 U.S.C. § 120 of the filing dates of its parent U.S. Application 07/454,783 (Exh. 3013), filed December 22, 1989, and its PCT application PCT/US90/07642 (Exh. 3016), filed December 21, 1990, "with respect to ARS's proposed count A-5 . . . contingent on the granting of ARS motion 14" (Paper No. 58, p. 1, para. I).

O.    ARS's Preliminary Motion 16 under 37 CFR § 1.633(c)(4) (Paper No. 59) asks that ARS's Claims 1, 5-25, 36-39, and 48-58 and GENESYS's Claims 105-107 and 109-112

-8-

Interference 105,114

be designated as not corresponding to Count 1 or
ARS's proposed Count A-2, contingent however that
(1) GENESYS has at least one claim directed to the
subject matter defined by Count 1 or Count A-2;
(2) GENESYS's at least one claim directed to the
subject matter defined by Count 1 or Count A-2
survives ARS's Preliminary Motions 1-5; and
(3), ARS's Preliminary Motion 8 relating to ARS's
proposed Count A-2 is granted (Paper No. 59, p. 1,
para. I).

On September 2, 2003, GENESYS filed (1) Cell Genesys

Preliminary Statement under 37 CFR § 1.623 (Paper No. 61); and

(2) the following preliminary motions:

A.    GENESYS Preliminary Motion 1 under 37 CFR § 1.633(f)
      (Paper No. 62) for benefit of the November 6, 1989,
      filing date of U.S. Application 07/432,069 (Genesys
      Exhibit 2028) for interference Count 1.

B.    GENESYS Preliminary Motion 2 under 37 CFR § 1.633(a)
      (Paper No. 63) for judgment that Claims 1-58 of ARS's
      '071 patent are unpatentable under 35 U.S.C. § 102
      and/or § 103 as anticipated by, and/or obvious in view
      of, prior art.

C.    GENESYS Preliminary Motion 3 under 37 CFR § 1.633(a)
      (Paper No. 64) for judgment that Claims 1-58 of
      ARS's '071 patent are unpatentable for noncompliance
      with the enablement requirement of 35 U.S.C. § 112,
      first paragraph.

D.    GENESYS Preliminary Motion 4 under 37 CFR
      § 1.633(c)(2) & 37 CFR § 1.633(c)(3)(Paper No. 65)
      to add proposed Claims 113-126 to U.S. Application
      08/102,390, filed August 5, 1993, and designate
      Claims 113-126 as corresponding to interference
      count.

E.    GENESYS Preliminary Motion 5 under 37 CFR § 1.633(c)(2)
      & 37 CFR § 1.633(i)(Paper No. 77) to add proposed
      Claims 127-143 to U.S. Application 08/102,390, filed
      August 5, 1993, and designate Claims 127-143 as
      corresponding to interference count.

-9-

Interference 105,114

    F.    GENESYS Preliminary Motion 6 under 37 CFR § 1.633(i) &
           37 CFR § 1.633(f)(Paper No. 78) for benefit of the
           November 6, 1989, filing date of U.S. Application
           07/432,069 (Genesys Exhibit 2028) for proposed ARS
           Count A-2 of ARS contingent Preliminary Motion 8
           (Paper No. 51).

    G.    GENESYS Preliminary Motion 7 under 37 CFR § 1.633(i) &
           37 CFR § 1.633(f)(Paper No. 79) for benefit of the
           November 6, 1989, filing date of U.S. Application
           07/432,069 (Genesys Exhibit 2028) for proposed ARS
           Count A-3 of ARS contingent Preliminary Motion 10
           (Paper No. 53).

    H.    GENESYS Preliminary Motion 8 under 37 CFR § 1.633(i) &
           37 CFR § 1.633(f)(Paper No. 80) for benefit of the
           November 6, 1989, filing date of U.S. Application
           07/432,069 (Genesys Exhibit 2028) for proposed ARS
           Count A-4 of ARS contingent Preliminary Motion 12
           (Paper No. 55).

    I.    GENESYS Preliminary Motion 9 under 37 CFR § 1.633(i) &
           37 CFR § 1.633(f)(Paper No. 81) for benefit of the
           November 6, 1989, filing date of U.S. Application
           07/432,069 (Genesys Exhibit 2028) for proposed ARS
           Count A-5 of ARS contingent Preliminary Motion 14
           (Paper No. 57).

On January 16, 2004, ARS filed ARS's 37 CFR 1.635/1.656(h)

Motion to Suppress the Declaration of Dr. Michael Heartlein

(Exh. 2031)(Paper No. 145).

On January 16, 2004, ARS filed ARS's 37 CFR 1.635/1.656(h)

Motion to Suppress (CG's Exhibit 2040 and Portions of

Exhibit 2054)(Paper No. 147).

On January 20, 2004, GENESYS filed Motion to Suppress

Evidence and Impose Sanctions (Paper No. 149).

-10-

Interference 105,114

On February 26, 2004, ARS and GENESYS appeared for Oral Hearing on Preliminary Motions.

On March 31, 2004, ARS filed ARS's Request for a Teleconference to Discuss Filing a 37 CFR 1.635 Motion for Permission to File a Post-Hearing Memorandum Concerning New Issue Raised at Hearing (Paper No. 170).

3.  Discussion

A.  Interpretation of claim language

Our preliminary discussion and conclusions regarding the meaning of terms in, and the scope and content of, the parties' respective claims corresponding to the interference count shall be limited to those terms whose meaning the parties to this interference debate.  We will discuss other claim terminology as the need arises.

(1)  Claims 1-58 of ARS's '071 patent

(a)  "cell line"

Independent Claims 1, 2, and 3 of ARS's '071 patent are directed to methods of activating a "gene within the genome of a cell line" (Appendix A, ARS's '071 patent, col. 25, l. 58-59, col. 26, l. 58-59, and col. 27, l. 2-3).  Independent Claim 17 is directed to "[a] genome of a cell line" (Appendix A, ARS's '071 patent, col. 28, l. 8).  Independent Claim 18 is directed to "[a] cell line capable of expressing a gene product" (Appendix A,

-11-

Interference 105,114

ARS's '071 patent, col. 28, l. 14).  Independent Claim 19 is directed to "[a] cell line capable of enhanced expression of a gene product" (Appendix A, ARS's '071 patent, col. 28, l. 14). Claims 25, 53, and 54 are directed to "method[s] of obtaining a gene product from a cell line" of Claims 18, 19 and 20, respectively (Appendix A, ARS's '071 patent, col. 28, l. 50-52, col. 30, l. 55-57, and col. 30, l. 59-61).  Independent Claims 26 and 27 are directed to "DNA construct[s] for insertion into a predetermined host cell line" (Appendix A, ARS's '071 patent, col. 28, l. 55-56, and col. 28, l. 62-63).  The parties debate the meaning, and thus the scope, of the term "cell line" in the claims of ARS's patent.

The term "cell line" had acquired a definite meaning in the art in the 1989-1990 timeframe.  Darnell, J., et al., <u>Molecular Cell Biology</u>, First Edition,[2] Scientific American Books, Inc., W.H. Freeman and Company, New York, 1986 (Darnell I)(Appendix C), p. 1040, col. 2, states:

---

[2]    ARS cited Darnell, J., et al., Molecular Cell Biology, Second Edition, Scientific American Books, Inc., W.H. Freeman and Company, New York, 1990 (Darnell II)(Exh. 3019) to show what the term "cell line" would have meant to "[o]ne of ordinary skill in the relevant field in either the 1989 or the 1990 timeframe" (Paper No. 48, p. 9, para. (34); Paper No. 49, p. 9, para. (30)). We rely on Darnell I, the first edition of Darnell II.  The first edition alone shows what the term "cell line" would have meant to persons having ordinary skill in the art on December 22, 1989, the date ARS first filed its parent Application 07/454,783 and first utilized the term "cell line" to define its invention.

-12-

Interference 105,114

> [E]ven though its lifetime is limited, a single culture,
> if carefully maintained, can be studied for a long time.
> Such a lineage of cells originating from one initial
> culture is called a <u>cell strain</u> . . . .

> . . . . A culture of cells with an indefinite life
> span is considered immortal; such a culture is called a
> <u>cell line</u> to distinguish it from an impermanent cell
> strain.

Darnell describes the state of the art in 1986 as follows:

> [T]here are two radically different types of cells that
> have persisted independently for perhaps a billion or
> more years of biological evolution. The two types are
> <u>eukaryotic cells</u>-literally, those with a true nucleus-
> and <u>prokaryotic cells</u>-those lacking a defined nucleus
> . . . [Darnell I, p. 134, col. 2].

> A necessary property of all growing cells-prokaryotic
> and eukaryotic alike-is the ability to duplicate their
> genomic DNA and to pass along identical copies of this
> genetic information to every daughter cell.  All growing
> cells undergo a <u>cell cycle</u> that comprises two periods:
> (1) <u>cell division</u> and separation of daughter cells, and
> (2) <u>interphase</u>, the period of cell growth.  [Darnell I,
> p. 146, col. 2.]

> Different eukaryotic cells grow and divide at quite
> different rates.  Yeast cells, for example, can divide and
> double in number in 120 min . . . .  Most growing plant and
> animal cells take from 10 to 20 h to double in number. . .
> [Darnell I, p. 147, col. 2].

> [C]ultured cells derived from a single cell are valuable
> in molecular studies because they constitute a homogeneous
> cell mass in which each cell contains the same constituents
> in the same proportions. . . [Darnell I, p. 187].

> An important characteristic of many cells chosen for
> study is that a single cell can be readily grown into a
> colony.  The process by which a single cell is grown into a
> colony of like cells is called <u>cloning</u>, and a genetically
> pure strain of cells is called a <u>clone</u>.  Microorganisms
> that grow in nature as single cells are relatively easy
> to grow in culture dishes-usually on top of <u>agar</u> . . . .

-13-

Interference 105,114

> Both prokaryotic and eukaryotic single-celled organisms
> are routinely grown in this manner.  In addition, it is
> now possible to clone cells from many animals and plants.
> The techniques of <u>cell culture</u> are critically important
> in modern biological research.  [Darnell I, p. 188, col. 1.]

> Genetically homogeneous populations can be obtained with
> eukaryotic cells as well as with prokaryotic cells.  For
> example, cultures of yeasts and molds can be grown either
> from a single vegetative cell (a growing cell) or from a
> single spore (a dormant cell).  [Darnell I, p. 191, col. 2.]

We find, based on the prior art teaching of the treatise

by Darnell, J., et al., <u>Molecular Cell Biology</u>, First Edition,

Scientific American Books, Inc., W.H. Freeman and Company, New

York, 1986 (Darnell I)(Appendix C), that:  (1) the term "cell

line" meant a permanent homogeneous culture of cells in 1989;

(2) there were two recognized types of cells, eukaryotic and

prokaryotic cells, in 1989; and (3) permanent eukaryotic and

prokaryotic cell cultures were basic to the art in 1989.

To the contrary, ARS argues that persons having ordinary

skill in the art reasonably would have understood from their

claims and specification at the time their parent application was

filed in 1989 that the term "cell line" in the claims of ARS's

'071 patent means a homogeneous culture of eukaryotic cells with

an indefinite life span.  ARS urges that the term "cell line" not

only excludes prokaryotes (microorganisms whose cells do not

contain a limiting membrane around the nuclear material, <u>e.g.</u>,

bacteria and cyanobacteria) but also excludes eukaryotic yeasts

-14-

Interference 105,114

(Paper No. 87, first full para.: "One of ordinary skill in the
relevant field in the 1989 or 1990 time frame reading the claims
of ARS's '071 patent in light of the specification of that patent
would have recognized that the term "cell line" as recited in
those claims does not embrace yeasts and prokaryotic
microorganisms.  Exhibit 3045 [Second Declaration of Randal
Kaufman, p. 14,] ¶33").

   Genesys answers that the term "cell line" in the claims of
ARS's '071 patent cannot be limited to an "eukaryotic cell line"
because each of dependent Claims 9, 32, and 44 limits the "cell
line" of the independent claim upon which it depends to an
"eukaryotic cell line" (Appendix A, ARS's '071 patent, col. 27,
l. 41, col. 29, l. 25, and col. 30, l. 16).  "[A] claim in
dependent form shall contain a reference to a claim previously
set forth and then specify a further limitation of the subject
matter claimed."  35 U.S.C. § 112, fourth paragraph.

   At oral hearing, ARS did not deny that its interpretation of
the term "cell line" as equivalent to "eukaryotic cell line" for
all its claims corresponding to Count 1 is inconsistent with the
broader reasonable interpretation, and the scope and content,
of the independent claims which the limitations of dependent
Claims 9, 32 and 44 and 35 U.S.C. § 112, fourth paragraph,
demand (Transcript of Proceedings (TP)(Paper No. 171), p. 14,

-15-

Interference 105,114

l. 1, p. 19, l. 2).  However, ARS explained that it had
inadvertently failed to notice that dependent Claims 9, 32
and 44 did not further limit Claims 1, 2 and 3 upon which they
respectively depend (TP, p. 16, l. 1-22).  Accordingly, ARS
maintains its view that, based on the teaching of the
specification and the prosecution history, it would have been
evident to persons having ordinary skill in the art that the term
"cell line" in each of its claims corresponding to Count 1
excludes prokaryotes and single-celled yeasts (TP, p. 17, l. 16,
to p. 18, l. 21).

     Yeasts are eukaryotes.  Molds are eukaryotes.  Both are
single-celled microorganisms.  Darnell, J., et al., <u>Molecular
Cell Biology</u>, First Edition, Scientific American Books, W.H.
Freeman and Company, New York, 1986 (Darnell I)(Appendix C),
p. 191, col. 1.  To accept ARS's arguments, we must conclude that
persons having ordinary skill in the art reasonably would have
understood from the claims, specification, and prosecution
history of ARS's '071 patent that the term "cell line" excludes
prokaryotic and eukaryotic microorganisms.

     Interpretations of the terms in the claims of ARS's patent
and the scope and content of those claims is a matter of law.
<u>Lemelson v. General Mills, Inc.</u>, 968 F.2d 1202, 1205, 23 USPQ2d
1284, 1287 (Fed. Cir. 1992).

-16-

Interference 105,114

We cannot determine the meaning of the term "cell line" in ARS's claims from the claim language itself. Where, as here, the parties dispute the meaning of the terms in, and accordingly the scope and content of, the claims of a patent; the dispute cannot be resolved by close examination of the language of the claims itself; and art-recognized definitions of the terms do not necessarily support the patentee's view; the specification and the prosecution history may be considered to resolve what persons having ordinary skill in the art would have understood the claim language to mean. Lemelson v. General Mills, Inc., 968 F.2d at 1206-1207, 23 USPQ2d at 1287-1288.

On its face, the specification of the ARS's '071 patent (Exh. 2046) refers to "cloned microorganism[s]" and "cell line[s,]" in the alternative. However, contrary to ARS's arguments (Paper No. 87, p. 8-10, and the exhibits cited thereat), alternative references to "cloned microorganism[s] or cell line[s,]" do not necessarily mean that they are distinct, i.e., that the term "cell line[s]" necessarily excludes "cloned microorganism[s.]" Depending on the inventors' disclosure, "cell line" and "cloned microorganism" may be no more distinct than a permanent cell culture or a permanent cell culture of a single-celled microorganism. For example, ARS's '071 patent specification teaches (emphasis added):

-17-

Interference 105,114

        The present invention relates to a process for the
modification of the expression characteristics of a gene
which is naturally present within the genome of <u>a stable
cell line or cloned microorganism</u>.  [ARS's '071 patent,
col. 1, l. 15-18]

        It is still another object of the present invention
to provide a method of modifying the expression
characteristics of a gene of interest by inserting DNA
regulatory segments and/or amplifying segments into the
genome of <u>a stable cell line or cloned microorganism</u>
upstream of, within, or otherwise proximal to the native
gene of interest.  [ARS's '071 patent, col. 4, l. 32-38]

        It is still a further object of the present invention
to provide a method for modifying the expression
characteristics of a gene which is naturally present within
the genome of <u>a stable cell line or cloned microorganism</u> and
at the same time insert characteristics which will aid in
the selection of cells which have been properly modified.
[ARS's '071 patent, col. 4, l. 39-45]

        It is a further object of the present invention to
provide <u>cell lines and microorganisms</u> which include the
genomes in accordance with the present invention.  [ARS's
'071 patent, col. 4, l. 55-57]

For other references to "cell line[s] or microorganism[s]" in the

ARS's '071 patent specification, see also: ARS's '071 patent,

col. 5, l. 2-3, 89, 50-51, 55, 64-65; col. 6, l. 9-10.

    However, many other times ARS's '071 patent specification

uses only the term "cell line" without an alternative reference

to cloned microorganism.  See ARS's '071 patent, col. 2, l. 58

("nucleus of a cell line"); col. 2, l. 67-68 ("stability of the

cell line"); col. 4, l. 11-13 ("cell line stability"); col. 4,

l. 24-26 ("[i]t is a further object of the present invention to

provide a method for expressing specific genes present but

-18-

Interference 105,114

normally transcriptionally silent in a cell line of choice");
col. 4, l. 63-66 ("one can also modify the expression
characteristics of a gene which is naturally present, but not
necessarily silent or inert, within the genome of a stable cell
line"); col. 8, l. 49-52 ("there are provided new methods for
expressing normally transcriptionally silent genes of interest,
or for modifying the expression of endogenously expressing genes
of interest, within a <u>differentiated cell line</u>" (emphasis
added)); col. 10, l. 57 ("transfected cell line"); col. 11,
l. 10-11 ("most cell lines contain endogenous copies of these
amplifiable genes"); col. 12, l. 31-32, 46 ("the host cell
line"); col. 12, l. 60-61 ("cell line"); and col. 13, l. 11
("the cell line chosen").

While the specification does refer to the "nucleus of a cell
line" (ARS's '071 patent, col. 2, l. 58) and "a differentiated
cell line" (ARS's '071 patent, col. 8, l. 52), its references
there to the nucleus of a cell line and a differentiated cell
line indicate that there the specific "cell line" discussed
cannot be a single-celled prokaryote or eukaryote. Prokaryotes
are single-celled microorganisms which, unlike eukaryotes, do not
have a defined nucleus. Darnell, J., et al., <u>Molecular Cell
Biology</u>, First Edition, Scientific American Books, W.H. Freeman
and Company, New York, 1986 (Darnell I)(Appendix C), p. 134,

-19-

Interference 105,114

col. 2. However, a single reference to a cell line with a nucleus does not suggest that all "cell lines" within the scope of the invention claimed must have a defined nucleus. It is the word eukaryotic, not the term "cell line" which limits the "cell line" to a culture of cells having a defined nucleus.

ARS's '071 patent specification does not explicitly state that the term "cell line" excludes prokaryotic and eukaryotic microorganisms. To the contrary, the specification teaches that both cloned prokaryotic and eukaryotic microorganisms may be treated by ARS's inventive methods. See ARS's '071 patent, col. 22, l. 32-50; emphasis added):

> The present invention is not limited to the cell line that is described herein. . . . The source of the cell line is not important. The cell line may be animal or plant, primary, continuous or immortal. Of course, it is desirable that any such cell line be stable and immortal so that after treatment with the technique in accordance with the present invention, expression can be commercialized. Cloned microorganisms, whether prokaryotic or eukaryotic, may also be treated by the technique of the present invention.

The paragraph above suggests that ARS's invention is not limited to animal or plant "cell lines," and the "cell lines" need not be permanent or immortal.

Nor does the term "eukaryotic cell line" of dependent Claims 9, 32 and 44 of ARS's '071 patent exclude single-celled eukaryotic yeasts from the invention ARS claims; albeit, eukaryotic yeasts are not preferred embodiments. ARS's '071

-20-

Interference 105,114

patent teaches (ARS's '071 patent, col. 9, l. 5-22; emphasis

added):

> . . . [I]n accordance with the method of the
> present invention, any gene which is normally expressed
> when present in its specific eukaryotic cell line,
> particularly a differentiated cell line, can be forced
> to expression in a cell line not specific for it wherein
> the gene is in a silent format. . . . Furthermore,
> the expression characteristics of genes not totally
> transcriptionally silent can be modified as can the
> expression characteristics of genes in microorganisms.
>
> In one embodiment of the present invention,
> eukaryotic cells that contain but do not normally
> transcribe a specific gene of interest are induced to
> do so by the technique described herein.  The homologous
> recombination vector described below is inserted into a
> clonal cell line . . . .

We conclude that the term "cell line" in Claims 1, 2 and 3

of ARS's '071 patent does not exclude prokaryotes such as

bacteria, single-celled eukaryotes such as yeasts and molds, or

any other procaryotic and eukaryotic microorganisms.  "Cell line"

means nothing more than a cell culture derived from a single

cell, preferably a permanent cell culture derived from a single

cell.  The preferred definition is entirely consistent with

Darnell's 1986 definition of "cell line" - "A culture of cells

with an indefinite life span is . . . called a cell line . . . ."

Darnell I (Appendix C), p. 1040, col. 2.  When the "cell line" is

grown from a single-celled microorganism, the "cell line" is a

"cloned microorganism," just as indicated throughout ARS's '071

patent specification.  The "cell line" may be animal or plant.

-21-

Interference 105,114

It may be immortal. However, ARS's '071 patent does not teach, and the evidence as a whole does not establish, that it must be either animal or plant or immortal. While the "cell line" preferably is a differentiated cell line and immortal, it may not be differentiated or immortal. ARS teaches no more and no less.

That persons having ordinary skill in the art would have understood that the broadest claims of ARS's '071 patent encompass methods for activating or modifying the expression characteristics of a predetermined gene within the genome of prokaryotic or eukaryotic yeast cells is evident from the teaching in ARS's '071 patent specification that there is no patentable distinction between the methods claimed for activating or modifying the expression characteristics of a predetermined gene within the genome of "cell lines" derived from prokaryotic microorganisms, eukaryotic microorganisms, animal cells, plant cells, etc. ARS's '071 patent explicitly states that persons having ordinary skill in the art would have been able to make and use the invention without undue experimentation, regardless whether the invention involves a target gene of a differentiated cell line or a microorganism ('071, col. 10, l. 50-55; emphasis added):

> Once the concept of the present invention is known, along with the techniques disclosed herein, one of ordinary skill in the art would be able to make and use the present invention with respect to any given gene of interest

-22-

Interference 105,114

in <u>any cell line or microorganism</u> without use of undue experimentation.

The specification explicitly teaches, "Cloned microorganisms, whether prokaryotic or eukaryotic, may also be treated by the technique of the present invention" (ARS's '071 patent, col. 22, l. 48-50). After all, ARS's '071 patent teaches (ARS's '071 patent, col. 23, l. 29-40; emphasis added):

> <u>The critical feature of the present invention is the use of homologous recombination techniques to insert a DNA regulatory sequence which causes modification of expression characteristics in the cell line or microorganism being used</u>, operatively linked with a gene of the genome of the cell line, preferably one which is normally transcriptionally silent, or to insert an amplifiable sequence, without a regulatory sequence, sufficiently near a gene in the genome of the cell line which already transcribes as to cause amplification of such gene upon amplification of the amplifiable sequence.

Finally, ARS suggests that the examiner sent Claims 1-58 of the '447 application to issue in ARS's '071 patent for the reasons stated in the Notice of Allowability mailed June 28, 1993. However, in support, ARS emphasizes only that fraction of the examiner's reasons for allowance which employs the phrase "in a cell line" and thus obfuscates the examiner's statement of the invention (Paper No. 47, pp. 14-15, bridging para.). The examiner's complete, unemphasized reasons for allowance read as follows (Exh. 3011, pp. 2-3, bridging para.):

> The following is an Examiner's Statement of Reasons for Allowance: The present invention relates to a method

-23-

Interference 105,114

> of activating [a] normally transcriptionally silent gene
> which becomes activated by inserting a DNA construct
> operatively linked to the gene of interest by homologous
> recombination. Prior to the present invention there
> was no evidence in the prior art of a process for the
> modification of the expression characteristics of a
> predetermined gene which is normally transcriptionally
> silent (non-expressed) by targeting a promoter with a DNA
> construct operatively linked to the gene of interest in a
> cell line by means of homologous recombination and thus
> obtaining expression of a silent gene.  Upon further search,
> no other art was found that rendered the claims anticipated
> or obvious.  Therefore, the claimed invention is novel,
> unobvious and patentable over the art of record.

The examiner specifically mentioned the "homologous

recombination" aspect of the inventive "method of activating [a]

normally transcriptionally silent gene which becomes activated by

inserting a DNA construct operatively linked to the gene of

interest by homologous recombination" (Exh. 3011, p. 2, first

sentence of the Examiner's Statement of Reasons for Allowance).

As support for the examiner's interpretation of the

invention claimed in ARS's '071 patent, and inapposite to the

secondary evidence to which ARS points, Bertram Irwin Rowland,

the patent attorney responsible for drafting and prosecution

Arthur I. Skoultchi's U.S. Application 07/432,069, filed

November 6, 1989 (Exh. 2054, pp. 3-4, para. 3-5), the parent of

Cell Genesys's involved U.S. Application 08/102,390, filed

August 5, 1993, declared (Exh. 2054, p. 2, para. 2):

> 2.  I have a current recollection of a meeting I attended
> at Cell Genesys, Inc. on or about July 24, 1989.  The
> meeting was attended by Dr. Arthur Skoultchi and others

-24-

Interference 105,114

> of Cell Genesys, Inc. ("CGI") herein). . . . Among the
> issues discussed at the meeting . . . was the problem
> that CGI, then in a start-up phase, wanted to work with
> a variety of proteins the recombinant forms of which and
> the isolated nucleic acids encoding them, were already
> patented.  There were discussions of various proteins of
> interest, together with a discussion of how the patents
> of third parties might be avoided.  Arthur Skoultchi
> ("Skoultchi" herein) suggested that the third party
> patents might be avoided if homologous recombination
> were used to alter cells to enhance expression of wild-
> type proteins encoded by the cells or to express genes
> that were not normally expressed.  I observed that most
> of the patents I was familiar with would not cover
> such a process, or the product of the resulting gene
> expression.

Consistent with Mr. Rowland's statement, Claim 112 of Cell

Genesys's involved application is directed to eukaryotic or

prokaryotic "cell[s capable of expressing a gene not normally

expressed by that cell] . . . wherein . . . heterologous DNA has

been inserted through homologous recombination" (Appendix B,

Claims 110 & 112).

While ARS has pointed to testimony and documentary evidence

which supports it's argument that the term "cell line" in

Claims 1-58 of ARS's '071 patent may be interpreted to exclude

prokaryotic and eukaryotic microorganisms, Claims 9, 32, and 44

of ARS's '071 patent and ARS's '071 patent specification support

the contrary view.  Moreover, the prosecution histories of the

inventions claimed in ARS's involved patent and Cell Genesys's

involved application and Darnell's treatise (Darnell I)(Appendix

C) are consistent with a holding that the term "cell line" in the

-25-

Interference 105,114

claims of ARS's '071 patent does not exclude prokaryotic or eukaryotic single-celled microorganisms.

(b)  <u>Claims 26, 27, 17, 18, 19 and 1-3</u>

<u>Claim 26</u> of ARS's '071 patent is directed to:

A DNA construct for insertion into a predetermined host cell line, comprising:

(1)  a DNA regulatory segment capable of modifying the expression characteristics of a gene in the host cell line when operatively linked thereto; and

(2)  a DNA targeting segment homologous to a region of the genome of a preselected gene within the genome of the host cell line.

<u>Claim 27</u> of ARS's '071 patent is directed to:

A DNA construct for insertion into a predetermined host cell line, comprising:

I.  an expressible, amplifiable gene segment capable of amplifying a gene in the host cell line when inserted in proximity thereto, and

II.  a DNA targeting segment homologous to a region of the genome of a preselected gene within the genome of the host cell line.

Interference 105,114

Claim 17 of ARS's '071 patent is directed to:

A genome of a cell line having

I.   a DNA regulatory segment, operatively linked
     with;

II.  a predetermined naturally occurring gene at an
     unnatural, predetermined insertion site
     characterized by a predetermined sequence.

Claim 18 of ARS's '071 patent is directed to:

A cell line capable of expressing anew the expression
product of a gene transcriptionally silent within the genome
of the cell line, said cell line having inserted in its
genome, a DNA regulatory segment operatively linked with
said transcriptionally silent gene which promotes its
expression.

Claim 19 of ARS's '071 patent is directed to:

A cell line capable of enhancing the expression of the
expression product of a gene endogenous to the genome of the
cell line, said cell line having inserted in its genome a
functionally effective exogenous DNA regulatory segment or
amplifiable gene.

Claim 1 of ARS's '071 patent is directed to:

A method of activating a transcriptionally silent gene
within the genome of a cell line to express the product it

-27-

Interference 105,114

encodes, comprising inserting a DNA construct into the genome of the cell line by homogeneous recombination, said DNA construct comprising:

    I.    a DNA regulatory segment capable of stimulating expression of said gene in the host cell line when operatively linked thereto; and

    II.    a DNA targeting segment homologous to a region of said genome of the cell line within or proximal to said gene.

Claim 2 of ARS's '071 patent is directed to:

A method of modifying the expression of a gene within the genome of a cell line, comprising inserting a DNA construct into the genome of the cell line by homogeneous recombination, said DNA construct comprising:

    I.    a DNA regulatory segment capable of modifying the expression of said gene in the host cell line when operatively linked thereto; and

    II.    a DNA targeting segment homologous to a region of said genome of the cell line within or proximal to said gene.

Claim 3 of ARS's '071 patent is directed to:

A method of modifying the expression of a gene within the genome of a cell line, comprising inserting a DNA

-28-

Interference 105,114

construct into the genome of the cell line by homogeneous

recombination, said DNA construct comprising:

    I.   an expressible, amplifiable gene capable of

        amplifying said gene in the host cell line when

        inserted in proximity thereto; and

    II.  a DNA targeting segment homologous to a region of

        said genome of the cell line in proximity to said

        gene.

Claims 9-12, 32-35 and 44-47 of ARS's '071 patent depend

from Claims 1, 2 and 3, respectively, and further limit the cell

lines of each independent claim to eukaryotic, animal, human and

plant cell lines.  Consistent with ARS's statement of "Current

Methods Employed To Express Proteins Using Recombinant DNA

Technology" in ARS's '071 patent, ARS does not argue that

Claims 4-8, 13-16, 20-25, 28-31, 36-43 and 48-58 of ARS's "071

patent are patentable irrespective of the patentability of the

claims upon which they depend.  Thus, they are presumed to stand

or fall with the patentability of Claims 1-3, 9-12, 17-19, 26,

27, 32-35 and 44-47 of ARS's '071 patent upon which they depend.

    (2)  <u>Claims 105-112 of Genesys Application 08/102,390</u>

       (a)  <u>Claims 110-112</u>

On April 10, 2003, GENESYS filed Cell Genesys Response To

Paper No. 1 (Paper No. 10) in Interference 105,114 and an

Interference 105,114

Amendment in Skoultchi's involved U.S. Application 08/102,390

(Paper No. 44 thereof).  Both papers requested entry of new

Claims 107-112.  GENESYS stated (Paper No. 10, p. 1, para. 3)

(emphasis added):

> [T]he current count would render a count directed to
> the cell lines, such as Claim 19 of involved U.S.
> Patent 5,272,071, Chappel ("Chappel") anticipated or
> obvious, but the claim, and corresponding claims,
> such as <u>Claims 105, 106, 110 and 111 of Cell Genesys
> may not render current Count 1 obvious, as those claims
> do not require the use of homologous recombination</u>,
> recited in the current Count, <u>to arrive at the cell
> or cell line claimed</u>.  <u>Cf.</u> Cell Genesys Claim 112.

<u>Claim 110</u> of GENESYS 08/102,390 is drawn to (Appendix. B;

Exh. 3006):

> A cell capable of expressing a gene not normally
> expressed by that cell comprising heterologous DNA which
> comprises at least one amplifiable gene or a regulatory
> sequence, inserted in said cell's genome in a region in the
> vicinity of said gene, whereby said gene may be amplified
> and expressed.

<u>Claim 111</u> of GENESYS 08/102,390 is drawn to (Appendix B;

Exh. 3006):

> A cell capable of expressing a gene at higher levels
> than that normally expressed by that cell, comprising
> heterologous DNA which comprises at least one amplifiable
> gene or a regulatory sequence, inserted in said cell's
> genome in a region in the vicinity of said gene, whereby
> said gene may be amplified and expressed.

<u>Claim 112</u> of GENESYS 08/102,390 is drawn to (Appendix B;

Exh. 3006):

> The cell of Claim 110, wherein said heterologous
> DNA has been inserted through homologous recombination.

Interference 105,114

While GENESYS's response to Paper No. 1 indicates that
Claims 110 and 111 "may not require the use of homologous
recombination" (Paper No. 10, p. 1, para. 3), GENESYS argued at
oral hearing on February 26, 2004, that the prior knowledge of
sequences upstream and/or downstream of the target gene, which
Claim 111 purportedly requires for insertion of the heterologous
DNA into said cell's genome "in a region in the vicinity of said
gene," is required only when DNA is to be inserted by homologous
recombination (TP (Paper No. 171), p. 25, l. 12, to p. 26,
l. 18).  However, GENESYS does not deny that the identical
language in Claim 110 does not require insertion by homologous
recombination (TP (Paper No. 171), p. 24, l. 18, to p. 25,
l. 8), presumably because dependent Claim 112, whereby "said
heterologous DNA has been inserted through the use of homologous
recombination, must further limit Claim 110 upon which it depends
to satisfy 35 U.S.C. § 112, fourth paragraph.

While prior knowledge of sequences upstream and/or
downstream of a target gene may be required for insertion of
heterologous DNA into a cell's genome "in a region in the
vicinity of said gene" by homologous recombination, neither
Claim 110 nor Claim 111 requires prior knowledge of sequences
upstream and/or downstream of a target gene in a cell's genome
before inserting a heterologous DNA into the cell's genome "in a

-31-

Interference 105,114

region in the vicinity of said gene" and neither claim explicitly

requires insertion by homologous recombination.  GENESYS does not

point to any evidence of record indicating that prior knowledge

of sequences upstream and/or downstream of a target gene is never

needed to insert an heterologous DNA into a cell's genome "in a

region in the vicinity of said gene" by other known insertion

techniques.  Nor has GENESYS pointed to any evidence of record

that heterologous DNA cannot be inserted into a cell's genome in

a region in the vicinity of a target gene absent prior knowledge

of sequences upstream and/or downstream of the target gene, e.g.,

by random or point-specific insertion techniques.  GENESYS has

not shown that heterologous DNA cannot be randomly inserted into

a cell's genome at a specific site in a region in the vicinity of

a target gene by procedures other than homologous recombination

(TP (Paper No. 171), p. 24, l. 22, to p. 25, l. 3).  Moreover,

prior art Genesys cites against the patentability of subject

matter claimed in ARS's '071 patent, prior art which is discussed

in depth later in this paper, indicates that heterologous DNA

sequences can be inserted by random recombination (Kaufman I) or

homologous recombination into the genome of a cell line in the

vicinity of the target cell with or without prior knowledge of

sequences upstream and/or downstream of the target gene.

Heterologous DNA sequences are commonly inserted by homologous

-32-

Interference 105,114

recombination within flanking DNA sequences which correspond

to an endogenous target gene without prior knowledge of the

precise nucleotide sequences located upstream or downstream of

the endogenous target gene.

> During patent examination the pending claims must be
> interpreted as broadly as their terms reasonably allow.
> See In re Prater, 415 F.2d 1393, 1404-05, 162 USPQ 541,
> 550-51 (CCPA 1969)(before the application is granted,
> there is no reason to read into the claim the limitations
> of the specification).  The reason is simply that during
> patent prosecution when claims can be amended, ambiguities
> should be recognized, scope and breadth of language
> explored, and clarification imposed.

In re Zletz, 893 F.2d 319, 321, 13 USPQ2d 1320, 1322 (Fed. Cir.

1989).

> Patent application claims are given their broadest
> reasonable interpretation during examination proceeding,
> for the simple reason that before a patent is granted the
> claims are readily amended as part of the examination
> process.  In re Prater, 415 F.2d 1393, 1405-05 [sic],
> 162 USPQ 541, 550 (CCPA 1969).  Claims may be amended
> for the purpose of distinguishing cited references, or
> in response to objections raised under section 112.

Burlington Industries, Inc. v. Quigg, 822 F.2d 1581, 1583,

3 USPQ2d 1436, 1438 (Fed. Cir. 1987).

Giving Claims 110-112 of GENESYS's involved Application

08/102,390 their broadest reasonable interpretation consistent

with GENESYS's initial statement (Paper No. 10, p. 1, para. 3)

and continuing interpretation of the breadth of Claim 110 upon

which Claim 112 depends, we conclude that:

-33-

Interference 105,114

(1) <u>Claims 110 and 111</u> are directed to <u>prokaryotic or
eukaryotic host cells</u> capable of expressing a gene not normally
expressed by that cell (Claim 110), or capable of expressing a
gene at higher levels than normally expressed by that cell
(Claim 111), comprising heterologous DNA which comprises at least
one <u>amplifiable gene or a regulatory sequence, inserted by any
known technique in said cell's genome in a region in the vicinity
of said gene</u>, whereby said gene may be amplified and expressed;
and

(2) <u>Claim 112</u> is directed to a <u>prokaryotic or eukaryotic
host cell</u> capable of expressing a gene not normally expressed by
that cell, or capable of expressing a gene at higher levels than
normally expressed by that cell, comprising heterologous DNA
which comprises at least one <u>amplifiable gene or a regulatory
sequence, inserted by homologous recombination in said cell's
genome in a region in the vicinity of said gene</u>, whereby said
gene may be amplified and expressed.

(b)  <u>Claim 105</u>

<u>Claim 105</u> is directed to a <u>mammalian host cell</u> that
expresses a product encoded by a target gene not normally
expressed within the genome of the cell line,[3] comprising a

---

[3]    Genesys's Application 08/102390 expressly states,
"The target genes may be any gene of interest . . ." (Exh. 2047,
p. 5, l. 24-25).  We conclude, therefore, that a target gene may

-34-

Interference 105,114

heterologous regulatory DNA sequence inserted by any known
technique in the genome of the cell line such that it is
operatively associated with the target gene, whereby said
mammalian host cell expresses the target gene product.

> (c)  Claim 106

The cell of Claim 106 is a human embryonal kidney cell,
wherein the genome of the cell has inserted, by any known
technique, an enhancer and promoter of cytomegalovirus
operatively associated with human erythropoietin gene, so that
the cell expresses human erythropoietin.

> (d)  Claims 107-109

The methods of Claims 107-109 comprise inserting a DNA
construct by homologous recombination into the genome of a
mammalian cell in proximity to a target gene within the genome of
said cell to stimulate or enhance expression of the target gene,

wherein the target gene encodes (1) a protein not normally
expressed in said cell (Claims 107 & 109), or (2) a protein
normally expressed in said cell (Claim 108); and

wherein said DNA construct comprises (a) an amplifiable gene
(Claim 107, 108 and 109), a regulatory sequence (Claim 107, 108
and 109), or both (Claim 107, 108 and 109), and (b) DNA

---

be a gene endogenous or exogenous to the cell's genome, unless
the target gene is defined as a "gene of that cell's genome" as
it is in Claims 107-109 of Genesys's Application 08/102390.

Interference 105,114

homologous with DNA in a region of the genome in proximity to the
target gene (Claim 107, 108 and 109).

There appears to be no significant difference in the scope
of Genesys's method Claims 107 and 109.  If there is a difference
between Genesys's method Claims 107 and 109 and Genesys's method
Claim 108, it is the level at which the target gene is expressed
in the mammalian cell prior to inserting the DNA construct.  In
Claims 107 and 109, the target gene is silent for expression of
the protein it encodes in the unmodified mammalian cell, and the
insert stimulates its expression of that protein.  In Claim 108,
the protein the target gene encodes is expressed in the
unmodified mammalian cell, and the insert enhances improved
expression of that protein.  There is no clear line of
distinction between Claims 107 and 109.

B.  Patentability of the parties' claims over prior art

In GENESYS's Preliminary Motion 2 under 37 CFR § 1.633(a)
(Paper No. 63), Genesys moves for judgment that Claims 1-58 of
ARS's '071 patent are unpatentable under 35 U.S.C. § 102/103 over
prior art.  In determining the prior art status of each of the
references upon which Genesys relies in support of its motion,
we initially will presume that Claims 1-58 of ARS's '071 patent
are entitled to benefit under 35 U.S.C. § 120 of the December 22,
1989, filing date of ARS's parent U.S. Application 07/454,783.

-36-