# Exhibit A, Part 4

Interference 105,114

genome of a mammalian cell through homologous recombination) of
Genesys's Application 08/102,390.  We have concluded that the
subject matter of Claims 105 and 110-112 is unpatentable over
subject matter described and/or taught by Section 102(b) prior
art of record.

Additionally, each member of this panel has independently
reviewed the written Transcript of the Testimony of Bertram
Rowland dated October 1, 2003 (Exh. 2055) in conjunction with the
video tape thereof of record.  We are as impressed, if not more
impressed, by Rowland's lapses of memory as we are impressed by
Rowland's memory.  We are especially impressed by the complexity
of the subject matter Rowland seems to recall (Exh. 2055: "DHFR"
and "homologous recombination" in the para. bridging pp. 35-36; )
in comparison to facts relating to the meeting and attendees
thereof which he cannot recall (Exh. 2055; the "Art" mentioned
in Exhibit A "probably is" Arthur Skoultchi (p. 9, l. 9-22);
"I don't recall specifically" who or what "Nussenblatt" is
(p. 10, l. 1-18); "I don't personally remember Mark" (p. 12,
l. 19); "I don't remember [Tom Wakeman]" (p. 14, l. 10-18);
"I have no recollection of Ron Worton" (pp. 14-15); "I believe
I was not the author of this document" (pp. 15-16)).  When asked
whether he took notes at the meeting, Rowland testified, "I have
no specific recollection, although that would have been my habit"

-109-

Interference 105,114

(Exh. 2055, p. 20, l. 1-3). When asked whose file the document came from, Rowland said he didn't know (Exh. 2055, p. 19, l. 4-9). Rowland did not recall the name of any persons at Leydig, Voit or Cell Genesys who worked with, or for, him on Cell Genesys's Cell-3 applications (Exh. 2055, pp. 24-26). When asked about the initials "E.S." in Exhibit D, Rowland couldn't recall (Exh. 2055, pp. 27-28). There were many, many basic facts regarding Exhibits A-E (Exh. 2054) that Rowland simply could not recall. On redirect examination by counsel for Genesys and further examination by counsel for ARS, Mr. Rowland provided the following explanation why he remembered the agenda of, and specifics of the complex technology discussed at, CGI's meeting on July 24-25, 1989 (Exh. 2055, pp. 34-36):

> Q. During the discussion with Chico, he asked you about a variety of names, many of which you couldn't recall the identity of the person or the initials.
>
> Do you recall that conversation?
>
> A. Yes.
>
> Q. In paragraph 2 of your declaration, you indicate that you have a current recollection of a meeting that you attended. How is it that you have such a clear—I'm sorry.
>
> How is it that you have a current recollection of that meeting but there are many names and individuals reflected there that you have no recollection of?
>
> A. Well, I was extraordinarily impressed by Dr. Skoultchi's coming up with this idea. And in my career, that spans some 30 years—at that time about 30 years-I had never heard a conception that I believed was also a

-110-

Interference 105,114

reduction of practice, that it was so clear that it would work.

And I have always used Skoultchi as the one exception that one can have an idea which is obviously going to work and there was no reason to believe it could not be executed.

. . . . .

I had quite a bit of dealings with DHFR in a number of contexts, one.

Two, with Oliver Smithies and Kuchlerapati and readings Capcchi, C-A-P-C-C-H-I, papers, because of the work that CGI was doing, it was pretty self-evident that one could introduce the DHFR gene in proximity to a target gene and that one would get the desired amplification/ identification of homologous recombination. So I felt that all the pieces were there.

. . . . .

I believe that once you had the idea, all the enabling technology was available.

Rowland's testimony does not remedy the deficiencies in Rowland's declaration and supporting exhibits (Exh. 2054). Moreover, we are not satisfied with Rowland's explanations why he could recall the complex technology discussed at CGI's meetings on July 24-25, 1989, many years later (Exh. 2055, pp. 34-36). Most importantly, Rowland's declaration (Exh. 2054, pp. 2-3, para. 2) that Dr. Skoultchi conceived of the invention of Claims 106-109 of Genesys's Application 08/102,390 at the time of CGI's meetings on July 24, 1989, and July 25, 1989, is not consistent with the recorded minutes of CGI's July 24-25, 1989, meeting (Exh. 2054, Exhibit A). Moreover, Rowland has not

-111-

Interference 105,114

explained how and when the handwritten entries in the recorded
minutes of CGI's July 24-25, 1989, meeting (Exh. 2054, Exhibit A)
became part of the document.

Genesys had the burden to antedate Japan. Genesys elected
to do so under 37 CFR § 1.131. In our view, Genesys's evidence
does not establish that it either reduced to practice, or
conceived of, the invention of Claims 105-112 (to the extent the
claims require insertion of heterologous DNA into the genome of a
mammalian cell through homologous recombination) prior to the
August 29, 1989, publication date of Japan. Accordingly, Japan
is prior art to Genesys's Claims 106-109, and Claims 107-109
appear to be unpatentable under 35 U.S.C. § 103 in view of the
combined prior art teachings of record, including that of Japan.

### ARS's rebuttal and/or showing

Having considered the whole of ARS's primary case to the
contrary, we concluded that the subject matter defined by
Claims 1, 2, 5-7, 9-20, 22, 23, 25, 26, 28-30, 32-39, 52-54, 56
and 57 of ARS's '071 patent is unpatentable under 35 U.S.C. § 103
as having been obvious in view of prior art including Japan.
However, ARS claims benefit under 35 U.S.C. § 120 of the
December 22, 1989, filing date of its parent Application
07/454,783 (ARS's '783 application), from which continuation-in-
part Application 07/893,447 (ARS's '447 application), filed

-112-

Interference 105,114

December 21, 1990, now U.S. Patent 5,272,071, issued December 21, 1993. If the full scope of the subject matter claimed in ARS's '447 application is entitled to the December 22, 1989, filing date of ARS's '783 application under 35 U.S.C. § 120, then Japan, which was published August 29, 1989, is prior art under 35 U.S.C. § 102(a), but it is not prior art under 35 U.S.C. § 102(b). Prior art under 35 U.S.C. § 102(a) may be antedated either by establishing prior invention under 37 CFR § 1.131 or otherwise. Prior art under 35 U.S.C. § 102(b) may not be antedated. Presuming ARS is entitled the an effective filing date of December 22, 1989, for the full scope of its claims corresponding to the count, ARS did not elect to antedate Japan under 37 CFR § 1.131 or otherwise. Whether of not ARS may yet antedate Japan primarily depends upon the effective filing date accorded the full scope of the invention defined by ARS's claims under 35 U.S.C. § 120. Should we conclude that the full scope of the inventions defined by ARS's claims corresponding to the count is not entitled to the effective filing date of December 22, 1989, the filing date of ARS's parent '783 application, then Japan is prior art under 35 U.S.C. § 102(b), and ARS may not antedate it.

With the foregoing issue in mind, ARS's Preliminary Motion 7 (Paper No. 50) is somewhat confusing. Therein ARS's asks for

-113-

Interference 105,114

benefit under 35 U.S.C. § 120, yet the motion focuses on the

interference count, i.e., it is a motion under 37 CFR § 1.633(f)

to be accorded benefit of the filing date of the earlier filed

application alleging that the earlier application constitutes a

constructive reduction to practice of the count in accordance

with 37 CFR § 1.637(f)(3).  However, ARS's asks for the following

relief (Paper No. 50, p. 1, para. 1):

> [ARS] requests, under 35 USC 120 and 35 USC 363, that
> it be accorded the benefit of the filing dates of its
> parent application 07/454,783, filed December 22, 1989,
> . . . with regard to Count 1.

Count 1 of this interference is directed to "[a] method of

claim 2 or claim 3 of ARS's U.S. Patent No. 5,272,071" (Paper

No. 50, p. 2).  ARS shows that "[t]he '783 application was

abandoned on September 11, 1992, for failure to pay the issue fee

required in the notice of allowability issued on June 11, 1992.

[Exhibits 3020 and 3021.]" (Paper No. 50, pp. 4).  ARS then

states that original Claim 21 of ARS's '783 application

substantially corresponded to Claim 2 of the '071 patent (Paper

No. 50, pp. 5-6).  Thereafter, ARS states (Paper No. 50, p. 7,

para. 15 and 17):

> (15)  Detailed descriptions of the preferred
> embodiments are disclosed in the '783 application
> beginning at page 11 line 7 through page 30, including
> at page 24 line 3 through page 26 line 13 specific
> detailed instructions with regard to a specific
> embodiment using GH cell lines for activating a silent
> gene in that cell.  Exhibit 3002 ¶ 476.

-114-

Interference 105,114

. . . . .

(17)  Claim 21 of the '447 application as filed is
identical to claim 21 of the '783 application.  Thus,
it describes the invention of the count (claim 2) for
the reasons set forth above with regard to the '783
application.  The '071 patent provides detailed
disclosures of the invention at columns 6 line 62
through column 26.  Exhibit 3002 ¶ 477.

ARS acknowledged that it, as moving party, bears the burden

of proof that its motion should be granted (Paper No. 50, p. 7,

last para.).  Accord 37 CFR § 1.637(a).  To that end, ARS's

entire argument consists of the following (Paper No. 50,

pp. 8-9):

The '783 application provides a constructive
reduction of the invention defined by the first
alternative to count 1 (i.e, claim 2 of the '071 patent)
because that application contains a written description
of the invention and the method of carrying out the
invention, as set forth in the facts recited in the
foregoing section.

As noted in the foregoing section, the first
alternative to count 1 is essentially a verbatim copy of
claim 21 of the '783 application.  The differences in
the two claims involve simply (1) a recitation of
"predetermined gene" in claim 2, which is a necessarily
implicit limitation in claim 21 of the '783 application,
(2) the interchangeable use of "native" and "existing" in
describing the DNA regulatory segment of the constructs,
and (3) a difference in scope ("cell lines or
microorganisms" and "cell lines," both of which are well
supported by the disclosure of the '783 application).

Thus, ARS has met its burden of establishing by a
preponderance of the evidence that its '783 application
serves a constructive reduction to practice of the invention
defined by count 1.  Cf. Fiers v. Revel, 984 F.2d 1164,
1171-72, 25 USPQ2d 1601, 1607 (Fed. Cir. 1993).

-115-

Interference 105,114

However, if ARS cannot establish an effective date of
December 22, 1988, for the full scope of its claims under
35 U.S.C. § 120 by showing it is entitled to benefit of the
December 22, 1988, for the count, its motion under 37 CFR
§ 1.633(f) serves no purpose. If ARS cannot establish an
effective date of December 22, 1988, for the full scope of its
claims under 35 U.S.C. § 120, then Japan is prior art under
35 U.S.C. § 102(b) and, as such, it cannot be antedated for the
full scope of the invention ARS claims by any means, including a
preliminary motion under 37 CFR § 1.633(f) for benefit of an
earlier filing date for the invention defined by the count or any
other showing of priority with regard to the count.

Therefore, we proceed to consider first ARS's request for an
effective filing date under 35 U.S.C. § 120 of December 22, 1989,
the filing date of its parent application, for the full scope of
the subject matter of ARS's claims designated as corresponding to
the count.

The issue whether claimed subject matter is entitled to
benefit under 35 U.S.C. § 120, as opposed to benefit solely for
purpose of priority, is normally presented when a patent
applicant or patentee alleges that the subject matter it claims
is entitled to an effective filing date which antedates the
effective date of a prior art reference. To be entitled to

-116-

Interference 105,114

benefit under 35 U.S.C. § 120 of the December 22, 1989, filing

date of its parent '783 application, ARS must show that all the

requirements of 35 U.S.C. § 112, first paragraph, have been

satisfied for the full scope of the subject matter it now claims.

See In re Scheiber, 587 F.2d 59, 61-62, 199 USPQ 782, 784-185

(CCPA 1978)(footnotes omitted)(citations omitted):

> "Invention," as used in 35 USC 120, refers to the
> claimed invention in a continuing application.  In re
> Lukach, 58 CCPA 1233, 1235, 442 F.2d 967, 968, 169 USPQ
> 795, 796 (1971). . . . .
>
> The operation of § 120 differs from the operation
> of . . . Rule 131 (37 CFR 1.131).  The latter provides
> an applicant a mechanism for overcoming specific prior
> art references predating his effective filing date.
> The applicant need show priority with respect to only
> so much of the claimed invention as the references
> disclose, . . . , or only so much as render the claimed
> invention obvious. . . . Section 120, on the other hand,
> concerns only an applicant's effective filing date.
> Unlike Rule 131, § 120 operates independently of the
> prior art, of which it makes no mention, and it
> expressly requires an earlier application to disclose
> the claimed subject matter in compliance with 35 U.S.C.
> § 112, first paragraph.  Thus it is entirely appropriate
> that the showing required under § 120 differs from that
> required under Rule 131.
>
> . . . [A]lthough . . . claims are rejected on
> references that teach no more than is disclosed in his
> earlier applications, that circumstance does not entitle
> him to claim his earlier filing date under § 120 for
> claims not supported in those applications. . . .
> The court noted that "the description of a single
> embodiment of broadly claimed subject matter constitutes
> a description of the invention for anticipation purposes
> . . . whereas the same information in a specification
> might not alone be enough to provide a description of
> the invention for purposes of adequate disclosure" under

-117-

Interference 105,114

    the first paragraph of 35 USC 112. In re Lukach, supra
at 1236, 442 F.2d at 970, 169 USPQ at 797.

Accord In re Gosteli, 872 F.2d 1008, 1011, 10 USPQ2d 1614,
1616-1617 (Fed. Cir. 1989).

    If ARS claims benefit of an earlier-filed application under
35 U.S.C. § 120 for the full scope of the subject matter it later
claims, ARS must show that its earlier-filed application complies
with 35 U.S.C. § 112, first paragraph, for the full scope of the
subject matter of ARS's later claims. This is true whether or
not ARS's motion under 37 CFR § 1.633(f) for benefit of its
earlier filing date with respect to the interference count is
granted. See Utter v. Hiraga, 845 F.2d 993, ___, 6 USPQ2d 1709,
1713 (Fed. Cir. 1988):

> A party who . . . relies on an earlier-filed application
> under 35 U.S.C. §§ 119 or 120 has the burden to show that
> the foreign or parent application supports later added
> claims under 35 U.S.C. § 112 ¶ 1, regardless of whether the
> party is the junior or senior party in an interference.

    Here, the evidence shows that the specification supporting
the claims of ARS's '071 patent provides a considerable amount of
teaching and examples which were not presented in ARS's parent
application. See Exh. 2046 which has colored the subject matter
new to ARS's '071 patent specification, including Figures 5-15;
col. 5, l. 48, to col. 6, l. 4, relating to the invention defined
by Claims 2 and 3 of the patent; col. 12, l. 56, to col. 13,
l. 7, relating to the invention defined by Claims 2 and 3 of the

Interference 105,114

patent; the examples at col. 14, l. 34, to col. 22, l. 31;

col. 24, l. 6-24, adding new definitions for the term

"modification of expression" designed to exclude methods

described in art published in "1990"; and the Sequence Listing at

bridging cols. 23-26 describing DNA SEQ ID NOS: 1-3.  We find

that the information disclosed in ARS's '071 specification which

is not presented in its parent is both considerable in amount and

new in scope.  More importantly, the amount, kind and scope of

new information, definitions, and sequences added to ARS's '071

patent specification in support of the scope and content of the

inventions therein claimed are such that, absent a satisfactory

explanation why they are not necessary to describe and enable the

full scope of ARS's '071 patent claims, they reasonably suggest

that ARS's parent specification would not itself have supported

the breadth of subject matter later claimed in ARS's '071 patent.

It being impossible not to notice the wealth of new

information disclosed in ARS's '071 patent specification relative

to its parent specification and the relatively broader scope of

the inventions claimed in ARS's '071 patent, an explanation is in

order.  ARS has provided little or no explanation.  Rather,

ARS filed its Preliminary Motion 7 under 37 CFR § 1.633(a)

incorrectly requesting benefit of the filing date of its parent

application under 35 U.S.C. § 120 with respect to the invention

-119-

Interference 105,114

defined by the count, not with respect to the full scope of the

subject matter of the claims designated as corresponding to the

count as required.

It is axiomatic that where, as here, ARS's '071 patent

claims are directed to new and diverse biological materials and

methods for their production and use, and the claims are broad in

scope:

> [T]o be enabling, the specification of a patent must
> teach those skilled in the art how to make and use
> the full scope of the claimed invention without "undue
> experimentation." In re Vaeck, 947 F.2d [488] at 495,
> 20 USPQ2d [1438] at 1444 [(Fed. Cir. 1991)]; [In re]
> Wands, 858 F.2d [731] at 736-37, 8 USPQ2d [1400] at 1404
> [(Fed. Cir. 1988)]; In re Fischer, 427 F.2d 833, 839,
> 166 USPQ2d 18, 24 (CCPA 1970)(the first paragraph of
> section 112 requires that the scope of protection sought
> in a claim bear a reasonable correlation to the scope of
> enablement provided by the specification).

In re Wright, 999 F.2d 1557, 1561, 27 USPQ2d 1510, 1513 (Fed.

Cir. 1993). We understand that nothing more than objective

enablement is required and that "it is irrelevant whether this

teaching is provided through broad terminology or illustrative

examples." Id. Nevertheless, where as here, there are

sufficient reasons to suspect that the scope of the subject

matter for which protection is sought is not adequately described

or enabled by the description of the invention provided in the

specification of ARS's parent application, an explanation is in

order. ARS provides no explanation. To the contrary, ARS

-120-

Interference 105,114

strongly traverses Genesys's position that successful transformations of mammalian cell lines by insertion of foreign DNA constructs by homologous recombination and enhanced expression of an endogenous gene resulting therefrom would have been obvious to persons having ordinary skill in the art in light of prior art describing successful transformations of microorganisms and yeasts by insertion of foreign DNA constructs by homologous recombination and enhanced expression of an endogenous gene resulting therefrom.  In such an unpredictable art, ARS must explain why the dearth of instruction and guidance proffered in its parent specification would have been enough to enable one skilled in the art to make and use the full scope of the subject matter it later claimed.  As said in <u>Vaeck</u>, 947 F.2d 488, 496, 20 USPQ2d 1436, 1445 (Fed. Cir. 1991)(footnote omitted):

> [T]here must be sufficient disclosure, either through
> illustrative examples or terminology, to teach those of
> ordinary skill how to make and how to use the invention as
> broadly as it is claimed.  This means that the disclosure
> must adequately guide the art worker to determine, without
> undue experimentation, which species among all those
> encompassed by the claimed genus possess the disclosed
> utility.  Where, as here, a claimed genus represents a
> diverse and relatively poorly understood group of
> microorganisms, the required level of disclosure will be
> greater than, for example, the disclosure of an invention
> involving a "predictable" factor such as a mechanical or
> electrical element.  <u>See</u> <u>Fischer</u>, 427 F.2d at 839, 166 USPQ
> at 24.

-121-

Interference 105,114

Furthermore, regarding the adequacy of the disclosure in ARS's parent specification of how to make and use the full scope of new DNA sequences to which Claims 26 and 27 of ARS's '071 are directed, the Federal Circuit has said, "For DNA sequences, that means disclosing how to make and use enough sequences to justify grant of the claims sought." Amgen Inc. v. Chugai Pharmaceutical Co., 927 F.2d 1200, 1213, 18 USPQ2d 1016, 1027 (Fed. Cir.), cert. denied, 502 U.S. 856 (1991). At 1214, 18 USPQ2d at 1028, the court stated:

> Considering the structural complexity of the . . . gene[s], the manifold possibilities for change in . . . [their] structure, with attendant uncertainty as to what utility will be possessed by these analogs, we consider that more is needed concerning identifying the various analogs that are within the scope of the claim[s], methods for making them, and structural requirements for producing compounds with . . . [specified] activity. It is not sufficient, having made the gene and a handful of analogs whose activity has not been clearly ascertained, to claim all possible genetic sequences that have . . . [specified] activity.

ARS's parent application discloses no DNA sequences whatsoever.

Most interestingly, both ARS and Genesys, in traverse of the other party's urging that one's own claims are unpatentable in view of prior art teachings or for inadequacy of their supporting disclosure, have argued that, while the skill and expertise in the art generally is high, the predictability in the art varies. For example, the disclosure required to render ARS's claims obvious seems to be low relative to the disclosure required to

-122-

Interference 105,114

render Genesys's claims obvious, and <u>vice versa</u>.  For example,

the kind and amount of disclosure adequate to describe and enable

one skilled in the art to make and use the full scope of ARS's

claims seems to be high relative to the kind and amount of

disclosure adequate to describe and enable one skilled in the art

to make and use the full scope of Genesys's claims, and <u>vice</u>

<u>versa</u>.

     We conclude that ARS had an obligation to explain why the

disclosure in its parent application described the full scope of

the subject matter now claimed and would have enabled one skilled

in the art to make and use the full scope of the subject matter

now claimed without undue experimentation.  It is not enough to

cite various pages of the parent and patented specifications in

support of its position.  <u>Clintec Nutrition Co. v. Baxa Corp.</u>,

44 USPQ2d 1719, 1723 n.16 (N.D. Ill. 1997), which notes that

where a party points the court to multi-page exhibits without

citing a specific portion or page, the court will not pour over

the documents to extract the relevant information, citing <u>United</u>

<u>States v. Dunkel</u>, 927 F.2d 955, 956 (7th Cir. 1991).  <u>See also</u>

(1) <u>United States v. Lanzotti</u>, 205 F.3d 951, 957 (7th Cir. 2000)

(a party urging us to reverse a district court's judgment has an

obligation to argue why we should reverse that judgment, and to

cite appropriate authority to support that argument; the premise

-123-

Interference 105,114

of our adversarial system is that tribunals do not sit as self-
directed boards of legal inquiry and research, but essentially as
arbiters of legal questions presented and argued by the parties
before them; it is not the court's responsibility to research and
construct the parties' arguments); (2) Biotec Biologische
Naturver-Packungen GmbH & Co. KG v. Biocorp, Inc., 249 F.3d 1341,
1354, 58 USPQ2d 1737, 1746 (Fed. Cir. 2001)(on this appeal the
defendants do not review in any detail the evidence that they
assert invalidates the patents); and (3) Winner International
Royalty Corp. v. Wang, 202 F.3d 1340, 1351, 53 USPQ2d 1580, 1589
(Fed. Cir. 2000)(We agree with Winner that the district court did
not abuse its discretion in allowing allegedly late-disclosed
withnesses to testify.  Such witnesses were never even identified
by Wang in his opening brief, and, after Winner pointed this out
in its response brief, Wang still failed to identify the
witnesses in his reply brief.  Under such circumstances, we will
not search the record on the chance of discovering whether the
district court abused its discretion.)  We do not find the
relevant facts and apply the pertinent law at our own volition.
Nor will the board take on the role of an advocate for one of the
parties.  Compare Ernst Haas Studio, Inc. v. Palm Press, Inc.,
164 F.3d 110, 111-112, 49 USPQ2d 1377, 1378-1379 (2d Cir. 1999).
ARS has not shown that it is entitled to its earlier filing date

-124-

Interference 105,114

for the full scope of it claims.  Just as one could not "prevail

simply by asserting in a conclusory manner that . . . a

disclosure does not enable the transformation of . . . mammalian

. . . cells" based on the facts in Amgen Inc. v. Hoechst Marion

Roussel, Inc., 314 F.2d 1313, 1337, 65 USPQ2d 1385, 1402 (Fed.

Cir. 2003), based on the differences between the disclosures in

ARS's patented and parent applications in this case, ARS cannot

prevail simply by reasserting in a conclusory manner that its

parent disclosure would have enabled the transformation of all

cell lines in accordance with its claims corresponding to the

count.

    We conclude that ARS is entitled to no more than the

December 21, 1990, filing date of PCT/US90/07642, under 35 U.S.C.

§ 363, and Japan is prior art under 35 U.S.C. § 102(b) for all

claims of ARS's '071 patent designated as corresponding to the

interference count.  Accordingly, we conclude that (1) Claims 1,

2, 5-7, 9-20, 22, 23, 25, 26, 28-30, 32-39, 52-54, 56 and 57 of

ARS's '071 patent are unpatentable under 35 U.S.C. § 103 for

obviousness to persons having ordinary skill in the art in view

of Japan's teaching in combination with teachings of Kaufman I

(Exh. 2014), Smithies (Exh. 2010), and Thomas (Exh. 2011)),

optionally further in view of Kaufman II (Exh. 3015); and

(2) Claims 105 and 107-112 of Genesys's Application 08/102,390

-125-

Interference 105,114

are unpatentable under 35 U.S.C. § 103 in view of the same prior
art teachings.

Having considered ARS's case in support of its motion under
37 CFR § 1.633(a) for unpatentability of Genesys's claims over
cited prior art, we are confident that ARS has not met its burden
to show that remaining Claim 106 of Genesys's Application
08/102,390 is unpatentable under 35 U.S.C. § 102/103.  Having
considered Genesys's case in support of its motion under 37 CFR
§ 1.633(a) for unpatentability of ARS's patent claims over cited
prior art, we are not satisfied that Genesys has shown that
Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of ARS's '071
patent are unpatentable under 35 U.S.C. § 102/103.

    C.    Interference-in-fact

Having concluded that Claims 1, 2, 5-7, 9-20, 22, 23, 25,
26, 28-30, 32-39, 52-54, 56 and 57 of ARS's '071 patent and
Claims 105 and 107-112 of Genesys's Application 08/102,390 are
unpatentable over prior art, we need to further consider whether
there is an interference-in-fact between the subject matter
defined by patentable Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55
and 58 of ARS's '071 patent and patentable Claim 106 of Genesys's
Application 08/102,390, the only patentable claims remaining
before us.  "An interference-in-fact exists when at least one
claim that is designated to correspond to a count and at least

-126-

Interference 105,114

one claim of an opponent that is designated to correspond to the

count define the same patentable invention."  37 CFR § 1.601(j).

"Same patentable invention" and "separate patentable invention"

are defined in 37 CFR § 1.601(n) as follows:

> (n)  Invention "A" is the <u>same patentable invention</u> as an
> invention "B" when invention "A" is the same as (35 U.S.C.
> 102) or is obvious (35 U.S.C. 103) in view of the invention
> "B" assuming invention "B" is prior art with respect to
> invention "A".  Invention "A" is a <u>separate patentable</u>
> <u>invention</u> with respect to invention "B" when invention "A"
> is new (35 U.S.C. 102) and non-obvious (35 U.S.C. 103) in
> view of the invention "B" assuming invention "B" is prior
> art with respect to invention "A".

> Claim 106 of Genesys's Application 08/102,390 reads:

> 106.  A human 293 embryonal kidney cell, wherein the
> genome of the cell has inserted therein an enhancer and
> promoter of cytomegalovirus operatively associated with
> human erythropoietin gene, so that the cell expresses
> human erythropoietin.

The products or methods of making the products defined by each of

Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of ARS's '071

patent comprise, or insert within the genome of a cell line, a

DNA construct comprising an expressible, amplifiable gene capable

of amplifying a target gene when inserted in close proximity

thereto.  It is sufficient to note that the genome of the human

293 embryonal kidney cell of Claim 106 of Genesys's Application

08/102,390 need not have inserted therein any expressible,

amplifiable gene capable of amplifying the silent human

erythropoietin gene in a human 293 embryonal kidney cell when

-127-

Interference 105,114

inserted in sufficiently close proximity thereto. Rather the
genome of the human 293 embryonal kidney cell of Claim 106 of
Genesys's Application 08/102,390 has inserted therein an enhancer
and promoter of cytomegalovirus operatively associated with the
silent human erythropoietin gene in the human 293 embryonal
kidney cell. Not only is the specific DNA construct inserted
into the genome of a human 293 cell of Genesys's Claim 106
patentably distinct in structure and function from any specific
DNA construct described in ARS's patentable claims, but the DNA
inserts in ARS's disclosure do not suggest enhancers and
promoters of cytomegalovirus. Alternatively, the enhancers and
promoters of cytomegalovirus comprising the human 293 cell genome
insert of Genesys's Claim 106 do not collectively or severably
constitute an amplifiable gene capable of amplifying a gene
silent in the genome of any other mammalian cell. Nor does the
evidence of record establish that the invention of any one of
ARS's remaining patentable claims would have been obvious to
persons having ordinary skill in the art in light of the specific
subject matter defined by the only remaining claim which is
patentable to Genesys.

ARS has not shown that the specific subject matter of
Claim 106 of Genesys's Application 08/102,390 would have been
obvious to a person having ordinary skill in the art further in

Interference 105,114

light of any other prior art of record, and we find no basis for

such a conclusion of record.  On the other hand, Genesys has

argued that Claims 3 and 27 of ARS's '071 patent are unpatentable

in view of prior art teachings including Kaufman I and Japan

(Paper No. 63, pp. 12-1, para. 41, 44 and 47).  However,

Kaufman I does not appear to teach that expressible, amplifiable

genes inserted into the genome of a cell line by homologous

recombination reasonably would be expected to amplify endogenous

target genes.  For a suggestion to do so with reasonable

expectation of success, Genesys points to Japan's disclosure.

However, Japan does not reasonably suggest that expressible,

amplifiable genes inserted into the genome of a cell line by

homologous recombination would be capable of amplifying an

endogenous target gene in a cell line.  In short, Japan does not

provide persons skilled in the art with a reasonable expectation

of success.  To the extent Genesys relies on Japan's teaching to

establish that Claims 3 and 27 ARS's '071 patent would have been

obvious in view of combined prior art teachings, Genesys merely

concludes:

> 41.  The inclusion of an amplifiable gene to increase
> expression, as called for in claims 3, 8, 31 and 43 was
> known in the prior art (Exhibit 2014, Kaufman et al.,
> p. 1753, col. 2, last ¶, ll. 5-7 and table 2; JP-A-1215280,
> p. 5, 3rd ¶, ll. 1-3).  Exhibit 2029, Nickoloff, ¶ 39.

Interference 105,114

The pinpointed disclosure in Kaufman I does not support Genesys's

conclusion (Exh. 2014, p. 1753-54, bridging para.; emphasis

added):

> To understand why t-PA activity did not increase
> with MTX resistance, clone 4C1 was subcloned in
> nucleoside-free medium before MTX selection to generate
> five subclones, and these subclones were selected for MTX
> resistance.  Only subclones H3B and B10A expressed higher
> levels of t-PA when selected for MTX resistance (Table 2).
> The variation in responses of the different subclones to
> coamplification could have resulted from the integration
> of multiple DHFR genes at different sites, only some of
> which were linked to the t-PA gene, and upon MTX selection
> some subclones amplified DHFR sequences not linked to
> t-PA sequences.  Alternatively, the variation could
> have resulted from rearrangements around the site of
> amplification which separated the t-PA gene from the
> DHFR gene.  To examine these possibilities in more detail,
> Southern blot analysis of the original and MTX resistant
> transformants derived from clone 4C1 was performed.  The
> results showed that most subclones amplified a similar, if
> not identical, restriction fragment (35-kb band; Fig. 2A,
> arrow).  However, subclone B10A amplified all restriction
> fragments containing t-PA sequences.  Since B10A had
> amplified both the 35-kb band and the other restriction
> fragments, they were probably closely linked.  In other
> subclones the copy number of the 35-kb fragment did not
> correlate with the copy number of the various t-PA
> restriction fragments (for example, compare subclones
> D8Bα and H8Bα), but the 35-kb was preferentially
> amplified in all subclones.  These results indicate
> that the coamplification variability between subclones
> probably results from DNA rearrangements which dissociate
> the DHFR gene from the t-PA gene during the MTX selection.
> One subclone (H12B) exhibited no DNA amplification upon
> MTX selection, implying that in this subclone MTX
> resistance probably resulted from a mechanism other than
> gene amplification.

Nor does Japan teach that any of its "expression-controlling"

sequences can be an "expressible, amplifiable gene" which can

-130-

Interference 105,114

amplify expression of a target gene when inserted into the genome

of a cell line by homologous recombination at a location

proximate thereto.  Japan merely teaches (Exh. 2016, p. 5, third

para., l. 1-3):

> The expression-controlling region to be inserted is
> normally inserted using plasmids that can be amplified
> in the host microbe or as cyclic or linear DNA that
> cannot be amplified in the host microbe.

With regard to Claim 27 of ARS's '071 patent, Genesys cites

Japan's Examples 1-3; Kaufman I, p. 1751, cols. 1-2, bridging

para.; and the Declaration of Nickoloff (Exh. 2029, para. 42).

Given the content of the discussion in each of Japan and

Kaufman I relating to amplification, we fail to see how the

materials and methods of Kaufman I and Japan's examples broaden

their general teachings.  Genesys's burden to explain its case

has not been satisfied, and we will not endeavor to make its case

for it.

Genesys further concludes (Paper No. 63, p. 14, para. 47):

> 47.  Furthermore, one of ordinary skill in the art
> would consider the use of an amplifiable gene as part of
> the method to increase gene expression, as recited in
> Claims 3, 8, 31, 41-43, 48-50 of the '071 patent, as an
> obvious variation of what is taught in Japan-A-1215280,
> especially given the teachings in Kaufman et al.
> (Exhibit 2014).  Exhibit 2029, Nickoloff, ¶ 45.

Initially, we thought that the Declaration of Jac A. Nickoloff,

Ph.D. (Exh. 2029, para. 39, 42 and 45) might shed greater light

-131-

Interference 105,114

on the matter.  Upon full consideration of the declaration, we found little more than a restatement of Genesys's conclusion.

There being no persuasive evidence or argument to the contrary, we conclude that there is no interference-in-fact between the subject matter claimed in ARS's '071 patent which stands patentable to ARS over prior art teachings of record and the subject matter claimed in Genesys's Application 08/102,390 which stands patentable to Genesys over prior art teachings of record.  More particularly, there is no interference-in-fact between the subject matter Genesys has not shown to be unpatentable to ARS, subject matter defined by Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of ARS's '071 patent, and the subject matter ARS has not shown to be unpatentable to Genesys, subject matter defined by Claim 106 of Genesys's Application 08/102,390.

While Claims 107-109 of Genesys's Application 08/102,390 are directed to the "same patentable invention" as Claims 3, 27 and 46 of ARS's '071 patent, Genesys has maintained throughout these proceedings that the subject matter defined by Claims 3, 27 and 46 of ARS's '071 patent is unpatentable to ARS under 35 U.S.C. § 103 in view of prior art teaching including Japan (Paper No. 63, pp. 12-14) and has suggested that the subject matter of Claims 107-109 of Genesys's Application 08/102,390 would have

-132-

Interference 105,114

been unpatentable to Genesys under 35 U.S.C. § 103 in view of

prior art teaching including Japan had Genesys not successfully

established under 37 CFR § 1.131(a) that it invented the subject

matter of Claims 107-109 of Genesys's Application 08/102,390

prior to the August 29, 1989, effective date of Japan (Paper

No. 63, p. 24, first full paragraph).

We conclude that Genesys has not established the subject

matter of ARS's Claims 3, 27 and 46 is unpatentable under

35 U.S.C. § 103 over cited prior art including Japan. However,

because Genesys argued that Japan's teaching cannot be applied to

its claims because it invented the same patentable invention

prior to the effective filing date of Japan, and Genesys failed

to establish prior inventorship thereof under 37 CFR § 1.131(a),

the subject matter defined by Claims 3, 27 and 46 of ARS's '071

patent is not patentable to Genesys. Therefore, on the record

before us, this interference should be dissolved.

    D.   Preliminary Motions

        (1)  Genesys's Preliminary Motion 1 (Paper No. 62)

under 37 CFR § 1.633(f) to be accorded the benefit of the

November 6, 1989, filing date of parent U.S. Application

07/432,069 (Exh. 2028) is dismissed as moot.  Dismissed.

        (2)  ARS's Preliminary Motion 7 (Paper No. 50) under

37 CFR § 1.633(f) to be accorded the benefit of the filing dates

-133-

Interference 105,114

of its parent U.S. Application 07/454,783 (Exh. 3013), filed

December 22, 1989, and its PCT application PCT/US90/07642 (Exh.

3016), filed December 21, 1990, "with regard to Count 1," is

dismissed as moot.  <u>Dismissed</u>.

      (3)  Genesys's Preliminary Motion 2 (Paper No. 63)

under 37 CFR § 1.633(a) for judgment that Claims 1-58 of ARS's

'071 patent are unpatentable ARS over prior art is granted for

Claims 1, 2, 5-7, 9-20, 22, 23, 25, 26, 32-39, 52-54, 56, and 57

of ARS's '071 patent and denied for Claims 3, 4, 8, 21, 24, 27,

31, 40-51, 55 and 58 of ARS's '071 patent, for reasons stated

herein.  <u>Granted-in-part</u>; <u>Denied-in-part</u>.

      (4)  ARS's Preliminary Motion 3 (Paper No. 47) under

37 CFR § 1.633(a) for judgment that Genesys's Claims 105 and

110-112 are unpatentable over Kaufman I (Exh. 3007) is granted

with regard to Genesys's Claims 105, 110 and 111 and denied with

regard to Genesys's Claim 112, for reasons stated herein.

<u>Granted-in-part</u>; <u>Denied-in-part</u>.

      (5)  ARS's Preliminary Motion 4 (Paper No. 48) under

37 CFR § 1.633(a) for judgment that Genesys's Claims 110-112 are

unpatentable over Raibaud (Exh. 3008) is granted, for reasons

stated herein.  <u>Granted</u>.

      (6)  ARS's Preliminary Motion 5 (Paper No. 49) under

37 CFR § 1.633(a) for judgment that Genesys's Claims 110-112 are

Interference 105,114

unpatentable over Japan (Exh. 3009, 3010, and 2016) is granted, for reasons stated herein. <u>Granted</u>.

(7)  ARS's contingent Preliminary Motions 8 (Paper No. 51), 10 (Paper No. 53), 12 (Paper No. 55), 14 (Paper No. 57), and 16 (Paper No. 59) under 37 CFR § 1.633(c)(1) or 1.633(c)(4) are dismissed.  <u>Dismissed</u>.

(8)  ARS's contingent Preliminary Motions 9 (Paper No. 52), 11 (Paper No. 54), 13 (Paper No. 56) and 15 (Paper No. 58) under 37 CFR § 1.633(f) are dismissed.  <u>Dismissed</u>.

(9)  Genesys's contingent Preliminary Motions 6 (Paper No. 78), 7 (Paper No. 79), 8 (Paper No. 80) and 9 (Paper No. 81) under 37 CFR § 1.633(c)(1) and 37 CFR § 1.633(f) are dismissed. <u>Dismissed</u>.

(10) Genesys's Preliminary Motion 4 (Paper No. 65) under 37 CFR § 1.633(c)(2) and 37 CFR § 1.633(c)(3) to add proposed Claims 113-126 to Application 08/102,390 and designate them as corresponding to the interference count is denied. Genesys has not shown that the subject matter thereof is patentable to Genesys as required by 37 CFR § 1.637(c)(ii). <u>Denied</u>.

(11) Genesys's Preliminary Motion 5 (Paper No. 77) under 37 CFR § 1.633(c)(2) and 37 CFR § 1.633(c)(3) to add proposed Claims 127-143 to Application 08/102,390 and designate

Interference 105,114

them as corresponding to the interference count is denied.
Genesys has not shown that the subject matter thereof is
patentable to Genesys as required by 37 CFR § 1.637(c)(ii).
<u>Denied</u>.

(12) ARS's Preliminary Motion 1 (Paper No. 45) under
37 CFR § 1.633(a) for judgment that Genesys's Claims 105-112 are
unpatentable under 35 U.S.C. § 112, first paragraph, for
noncompliance with its written description requirement; ARS's
Preliminary Motion 2 (Paper No. 46) under 37 CFR § 1.633(a) for
judgment that Genesys's Claims 105-112 are unpatentable under
35 U.S.C. § 112, first paragraph, for noncompliance with its
enablement requirement; and Genesys's Preliminary Motion 3 (Paper
No. 64) for judgment that Claims 1-58 of ARS's '071 patent are
unpatentable under 35 U.S.C. § 112, first paragraph, for
noncompliance with its enablement requirement; are dismissed
with regard to Claims 105 and 107-112 of Genesys's Application
08/102,390 and Claims 1, 2, 5-7, 9-20, 22, 23, 25, 26, 32-39,
52-54, 56 and 57 of ARS's '071 patent, which have been determined
to be unpatentable over alternative and/or collective prior art
teachings; and denied for Claim 106 of Genesys's Application
08/102,390 and Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58
of ARS's '071 patent.  Our reasons are as follows.

-136-

Interference 105,114

We find that the evidence and arguments the parties submitted in support of their respective Section 112 motions generally are inconsistent with the evidence and arguments the parties submitted in support of their respective motions for judgment that same claims are unpatentable over cited prior art teachings. See Genesys's Preliminary Motion 2 (Paper No. 63) and ARS's Preliminary Motions 3 (Paper No. 47), 4 (Paper No. 48) and 5 (Paper No. 49). Both ARS and Genesys have urged that the subject matter the other party claims would have been obvious to persons having ordinary skill in the art in view of prior art with guidance and direction no more comprehensive than that found in the parties' respective specifications. For example, Genesys argues that references such as Japan and Kaufman I would have rendered the subject matter of ARS's Claims 1, 2, 3, 17-19, 26, and 27 obvious to persons having ordinary skill in the art regardless whether ARS's claims are directed to methods for activating, modifying or causing a prokaryotic microorganism or eukaryotic yeast, plant or animal cell to stimulate or enhance expression of an endogenous or exogenous target gene by inserting an effective DNA regulatory sequence or amplifiable gene into the genome of the microorganism or cell in operative vicinity to the target gene by homologous, or random recombination. None of Japan, Kaufman I, Raibaud, or other references cited by the

-137-

Interference 105,114

parties provide a broad scope of examples in support of their respective teachings. We find that each reference presents few examples and the scope of those examples is extremely limited. Nevertheless, to justify their respective positions, both ARS and Genesys note the high level of skill in the art and present conflicting expert testimony and prior art in support. We particularly note that the testimony of Bert Rowland, counsel for Cell Genesys at the appropriate time, is said to reflect Dr. Skoultchi's belief that insertion by homologous recombination is the only patentable feature of its invention (Exh. 2054, pp. 2-3, para. 2, and Exhibit A thereto). While we have found Rowland's testimony generally not credible, we cannot help but notice that his testimony, "I believe that once you had the idea, all the enabling technology was available" (Exh. 2055, p. 36), is inconsistent with the argument now made by Genesys.

Certainly, we find scant evidence in support of ARS's motions that the subject matter of Claim 106 of Genesys's Application 08/102,390, Genesys's only remaining patentable claim, is not adequately described and would not have been enabled by Genesys's supporting specification. With regard to the full scope of the subject matter the parties broadly claim, we note that both ARS and Genesys argue and point to the same relative kind, amount and weight of conflicting testimony and

-138-

Interference 105,114

prior art teaching in support their respective positions that the
subject matter the other party claims is inadequately supported.
On the other hand, the parties have not concomittently explained
why their own disclosures with substantially the same level of
support well satisfy the requirements of 35 U.S.C. § 112, first
paragraph.  We are at a loss to understand how and why prior art
disclosures which would have rendered one party's claims obvious
to a person having ordinary skill in the art, and supported the
invention it claims, would not also have rendered the other
party's claims directed to the same patentable invention obvious
to person having ordinary skill in the art, and supported the
invention other party claims.  ARS's disclosure appears to be no
less enabling than Genesys's disclosure, and <u>vice versa</u>.  The art
Genesys applies against ARS's claims appears to be no less
pertinent to the subject matter Genesys's claims, and <u>vice versa</u>.

     We need not dwell on the adequacy of support in the parties
respective disclosures for the subject matter of Genesys's
Claims 105 and 107-112 and Claims 1, 2, 5-7, 9-20, 22, 23, 25,
26, 32-39, 52-54, 56, and 57 of ARS's '071 patent.  We conclude
that none of those claims is directed to subject matter which is
patentable over prior art of record.  That same prior art is
evidence of the level of skill and knowledge in the art at the
pertinent time.  ARS has not made a case for the unpatentability

-139-

Interference 105,114

of the subject matter of Genesys's Claim 106, and we find enough support for that claim in Genesys's disclosure to require ARS to establish that the subject matter thereof is unpatentable to Genesys. As for the subject matter of Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of ARS's '071 patent, having considered all the evidence of record, we conclude that Genesys's arguments, evidence and testimony against the patentability of ARS's patentable claims are no less complete, comprehensive and convincing than ARS's contravening arguments, evidence and testimony. Accordingly, Genesys has not met its burden to show that it is entitled to the relief it seeks against Claims 3, 4, 8, 21, 24, 27, 31, 40-51, 55 and 58 of ARS's '071 in Preliminary Motion 3 (Paper No. 64), and ARS has not satisfied its burden to show that it is entitled to the relief it seeks against Claim 106 of Genesys's Application 08/102,390. Therefore, the motions are dismissed-in-part and denied-in-part.

Dismissed-in-part; Denied-in-part.

    E.    Miscellaneous Motions

        (1)    ARS's Motion To Suppress the Declaration of Dr. Michael Heartlein (Exh. 2031) under 37 CFR § 1.635/1.656 (Paper No. 147) is dismissed. ARS acknowledges that "CG submitted Dr. Heartlein's declaration, Exhibit 2031, in support of its preliminary motion 3" (Paper No. 147, p. 1, III(1)).

-140-

Interference 105,114

Having considered all the pertinent evidence of record, we dismissed-in-part and denied-in-part Genesys's Preliminary Motion 3 (Paper No. 64). Accordingly, ARS's motion to suppress Heartlein's declaration is moot. <u>Dismissed</u>.

(2) ARS's Motion To Suppress (CG's Exhibit 2040 and Portions of Exhibit 2054)(Paper No. 147) is dismissed. Genesys submitted the Declaration of Bertram I. Rowland and supporting exhibits under 37 CFR § 1.131(a) which ARS here seeks to suppress to establish invention of the subject matter of Genesys's claims corresponding to the interference count prior to the effective date of Japanese Patent Publication No. 1-215280, published August 29, 1989. Herein we have concluded that Genesys's showing under 37 CFR § 1.131(a), including the Declaration of Bertram I. Rowland and supporting exhibits ARS seeks to suppress, does not establish that Genesys invented the subject matter defined by Genesys's claims corresponding to the interference count prior to August 29, 1989. Accordingly, ARS motion to suppress the Declaration of Bertram I. Rowland and supporting exhibits is moot. <u>Dismissed</u>.

(3) Genesys's Motion To Suppress Evidence And Impose Sanctions pursuant to 37 CFR § 1.656(h)(Paper No. 149) relates to declaratory and testimonial evidence filed in support of ARS's Preliminary Motions 1 (Paper No. 45) and 2 (Paper No. 46). After

-141-

Interference 105,114

having considered all the pertinent arguments and supporting

evidence, we dismissed-in-part and denied-in-part ARS's

Preliminary Motions 1 and 2.  Accordingly, Genesys's motion to

suppress evidence in support thereof is dismissed as moot.

Dismissed.

     While the Board may impose appropriate sanctions under

37 CFR § 1.616(a) against a party who fails to comply with

applicable regulations and orders entered by an Administrative

Patent Judge or the Board, we shall not do so in this case.

Suffice it to say that a proponent for imposition of sanctions

should present its case with clean hands.  Having considered all

the evidence and testimony proffered by both parties in this

case, we are not satisfied with the arguments and evidence either

party has placed before us.

     F.    Other observations

     We note several violations of the guidelines for cross-

examination (Paper No. 2, Standing Order, § 46), which counsel

for ARS characterized as "idiosyncratic" and "unusual" (Exh.

2055, p. 6, l. 21-22).  Even if counsel believe the guidelines

are idiosyncratic and/or unusual, in the future we expect counsel

to strictly adhere to those guidelines.  The board's experience

with the guidelines has been very positive.  Side-show

discussions have virtually been eliminated from transcripts of

-142-

Interference 105,114

cross-examination thereby allowing the parties and the board to concentrate on the witness testimony as opposed to counsel's attempting to "testify" or direct witness testimony through bogus objections.

1.    By Mr. Kelber: "Mischaracterizes the testimony" (Exh. 2055, p. 20, l. 22, through p. 21, l. 1).  If a lawyer for one party "mischaracterizes" testimony, any mischaracterization should be corrected (1) by the witness without help from counsel, or (2) by counsel on redirect.

2.    By Mr. Kelber: "Objection as to form" (Exh. 2055, p. 22, l. 18).  The objection appears in numerous places in the transcript (Exh. 2055).  There is no objection as to form in interference practice.  <u>See</u> Guideline 3, Example 2.  If a question is in "improper form" (whatever that might be), the witness can state that the witness does not understand the question.

3.    By Mr. Gholz: "Objection.  Assumes a fact not in evidence" (Deposition Transcript of Roger L. Browdy (Exh. 2069), p. 20, l. 4-5).  We note that the witness was able to answer the question.  If a question "assumes a fact not in evidence," then in a brief a party may tell us why the answer is not entitled to much weight.  Alternatively, the fact may turn out to be in evidence via testimony of a subsequent witness.

-143-

Interference 105,114

     4.    By Mr. Gholz: "Objection as to form" (Deposition Transcript of Roger L. Browdy, p. 28, l. 5).

     5.    By Mr. Gholz: "Numbered in ink or in the typing?" (Deposition Transcript of Roger L. Browdy, p. 33, l. 8-9).  It is up to the witness, not counsel, to make clarifications.  If the witness is not confused, then counsel should not say anything.  If the witness is confused, the witness can ask a question.  Counsel's opportunity to correct confusion is on redirect.

    G.   <u>Order</u>

    The interference is returned to the Trial Section for such action as may be appropriate not inconsistent with the views expressed herein.


TEDDY S. GRON                 )
Administrative Patent Judge    )
                                   )
                                   )

FRED E. McKELVEY             ) BOARD OF PATENT
Senior Administrative Patent Judge)  APPEALS AND
                                 )  INTERFERENCES
                                 )
                                 )

JAMES T. MOORE               )
Administrative Patent Judge    )

Interference 105,114

cc (Fed Ex):

Counsel for APPLIED RESEARCH SYSTEMS
    ARS HOLDING, N.V.:

    Charles L. Gholtz, Esq.
    OBLON, SPIVAK, McCLELLAND, MAIER
       & NEUSTADT, P.C.
    1940 Duke Street
    Alexandria, VA  22314

Counsel for CELL GENESYS, INC.:

    Steven B. Kelber, Esq.
    PIPER RUDNICK LLP
    1200 Nineteenth Street, N.W.
    Washington, D.C.  20036-2430