# Exhibit C

231018US25SD                                          BOX INTERFERENCE
Filed on behalf of: Junior Party Applied Research Systems ARS Holding
By:     Charles L. Gholz, Esq.
        Registration No. 26,395
        OBLON, SPIVAK, McCLELLAND,
        MAIER & NEUSTADT, P.C.
        1940 Duke Street
        Alexandria, Virginia  22314
        Direct:  (703) 412-6485
        Tel:  (703) 413-3000
        Fax:  (703) 413-2220
        E-Mail:  CGHOLZ@OBLON.COM

                                                        Paper No._____


                UNITED STATES PATENT AND TRADEMARK OFFICE
                          _____


                   BEFORE THE BOARD OF PATENT APPEALS
                            AND INTERFERENCES
                 (Administrative Patent Judge Michael P. Tierney)
                          _____


                APPLIED RESEARCH SYSTEMS ARS HOLDING, N.V.
                               Junior Party,

                           (Patent 5,272,071)

                                    v.

                          CELL GENESYS, INC.
                              Junior Party.

                         (Application 08/102,390)
                          _____

                      Interference No. 105,114

                          ARS'S MOTION 14
        (Contingent 37 CFR 1.633(c)(1) Motion to Add a Count)(Count A-5)

Table of Contents

I.      Statement of the Precise Relief Requested ............................................................. 1

II.     Identification of the Evidence Relied on in Support of This Motion .................................. 1

III.    Statement of the Material Facts in Support of This Motion ................................. 2

IV.     Statement of the Reasons Why This Motion Should Be Granted...................................... 13

        A.      ARS Bears the Burden of Proof with Respect to This Motion ............................ 13

        B.      The Interference Should Be Redefined by Adding ARS's Proposed
                Count A-5 Because the Subject Matter of That Count Defines a
                Patentable Invention That Is Claimed by Both Parties and Which
                is Separately Patentable from the Subject Matter Defined by
                Present Count 1 and ARS's Proposed Counts A-2, A-3, and A-4 ...................... 14

                1.      The Motion is Contingent ..................................................... 14

                2.      The Subject Matter Defined by Proposed Count A-5
                        Defines an Invention That Would Not Have Been
                        Anticipated by or Made Obvious by Count 1 or ARS's
                        Proposed Counts A-2, A-3, or A-4 ........................................... 14

        C.      Compliance with 37 CFR 1.637(c)(1) ................................................. 16

                1.      37 CFR 1.637(c)(1)(i) ...................................................... 16

                2.      37 CFR 1.637(c)(1)(ii) ..................................................... 17

                3.      37 CFR 1.637(c)(1)(iii) .................................................... 17

                4.      37 CFR 1.637(c)(1)(iv) ..................................................... 17

                5.      37 CFR 1.637(c)(1)(v) ...................................................... 17

                6.      37 CFR 1.637(c)(1)(vi) ..................................................... 18

                7.      37 CFR 1.637(c)(1)(vii) .................................................... 18

## I.    Statement of the Precise Relief Requested

Applied Research Systems ARS Holding, N.V. (hereinafter referred to as "ARS") requests that the interference be amended by adding ARS's proposed count A-5:

> A cell line according to claim 18 of ARS's U.S. Patent No.
> 5,272,071 or claim 105 or 110 of Genesys's application No.
> 08/102,390.

This motion is contingent on a determination by the APJ or a panel of the board that Cell Genesys, Inc. (hereinafter referred to as "Genesys") has a patentable claim directed to the same patentable invention defined by proposed count A-5. That is, this motion is contingent on a holding that one or more of Genesys's claims 105, 110, and 112 is patentable.

ARS's motion 10 requests that ARS's proposed count A-4 be added to the interference. That count is directed to the subject matter of ARS's claims 17, 19-21, and 52 and Genesys's claims 106 and 111.

## II.    Identification of the Evidence Relied on in Support of This Motion

(1)    Exhibit 3002:  first 37 CFR 1.639(b) declaration of Randal Kaufman.

(2)    Exhibit 3003:  CV of Randal Kaufman.

(3)    Exhibit 3004:  copy of ARS's involved patent 5,272,071.

(4)    Exhibit 3005:  "CELL GENESYS SUBMISSION OF CLAIMS" filed April 09, 2003.

(5)    Exhibit 3006:  copy of amendment to Genesys's involved application 08/102,390, filed on April 09, 2003.

III.    **Statement of the Material Facts in Support of This Motion**

(1)    Count 1, the only count in the interference, reads as follows:

A method according to claim 2 or claim 3 of ARS's U.S.

Patent No. 5,272,071.

(2)    Claim 2 of ARS's involved U.S. patent 5,272,071 (hereinafter referred to as "the '071 patent") reads as follows:

2. A method of modifying the expression characteristics of

a predetermined gene within the genome of a cell line, comprising

inserting a DNA construct into said genome by homologous

recombination, said DNA construct comprising a DNA regulatory

segment capable of modifying the expression characteristics of

said gene when operatively linked thereto, as compared to its

existing DNA regulatory segment, and a DNA targeting segment

homologous to a region of said genome within or proximal to said

gene, wherein said construct is inserted such that said regulatory

segment is operatively linked to said gene of interest. [Exhibit

3004 col. 26.]

(3)    Claim 3 of the '071 patent reads as follows:

3. A method of modifying the expression characteristics of

a predetermined gene within the genome of a cell line, comprising

inserting a DNA construct into said genome by homologous

recombination, said DNA construct comprising an expressible, amplifiable gene capable of amplifying said gene when inserted in sufficiently close proximity thereto, and a DNA targeting segment homologous to a region of said genome within or proximal to said gene, wherein said construct is inserted such that said amplifiable gene is in sufficiently close proximity to said gene of interest to cause amplification thereof when said amplifiable gene is amplified. [Exhibit 3004 col. 27.]

(4)     Claim 1 of the '071 patent reads as follows:

1. A method of activating a predetermined normally transcriptionally silent gene within the genome of a cell line so as to enable said cell line to express the gene product of said gene, comprising inserting a DNA construct into said genome by homologous recombination, said DNA construct comprising a DNA regulatory segment capable of stimulating expression of said gene when operatively linked thereto and a DNA targeting segment homologous to a region of said genome within or proximal to said gene, wherein said construct is inserted such that said regulatory segment is operatively linked to said gene of interest. [Exhibit 3004 col. 25; emphasis added.]

(5)     Claims 26 and 27 of the '071 patent read as follows:

-3-

26.  A DNA construct for insertion into a predetermined host cell line, comprising a DNA regulatory segment capable of modifying the expression characteristics of genes in the host cell line when operatively linked thereto and a DNA targeting segment homologous to a region of the genome of a preselected gene within the host cell line. [Exhibit 3004 col. 28.]

27.  A DNA construct for insertion into a predetermined host cell line, comprising an expressible, amplifiable gene capable of amplifying a gene in the host cell line when inserted in sufficiently close proximity thereto, and a DNA targeting segment homologous to a region of the genome of a preselected gene within the host cell line. [Exhibit 3004 col. 28.]

(6)    Claim 107 of Genesys's involved application serial No. 08/102,390 (hereinafter referred to as "Genesys's claim ____") reads as follows:

107.  A method of causing a mammalian cell to express a gene of that cell's genome encoding a protein not normally expressed by said cell, comprising inserting a DNA construct through homologous recombination into said genome of said cell in proximity to said gene, said construct comprising at least one of an amplifiable gene, other regulatory sequence, or both, and DNA homologous with DNA of a region of said genome in proximity to

said gene, whereby expression of said gene in said cell is caused to

occur.  [Exhibit 3006 pages 1 and 2.]

(7)     Geneys's claim 109 differs from claim 107 only in the addition of "in said cell in which said DNA construct is incorporated" at the end of the claim (following "occur").

(8)     ARS's claim 2 defines a method of modifying the expression characteristics of a predetermined gene within the genome of a cell line which comprises inserting a DNA construct into the cell's genome by homologous recombination.  The DNA construct comprises (1) a DNA regulatory segment capable of modifying the expression characteristics of the predetermined gene when the DNA regulatory segment is operatively linked to the predetermined gene, as compared to the existing DNA regulatory segment, and (2) a DNA targeting segment homologous to a region of the cell's genome within or proximate to the predetermined gene. The procedure must insert the construct in such a manner that the regulatory segment is operatively linked to the predetermined gene.  Exhibit 3002 ¶ 589.

(9)     ARS's claim 3 parallels claim 2, except that the DNA construct comprises an expressible, amplifiable gene capable of amplifying the predetermined gene when the amplifying gene is inserted in sufficiently close proximity to the predetermined gene.   The definition of the construct of claim 3 does not require a regulatory sequence.  Exhibit 3002 ¶ 590.

(10)     ARS's claims 2 and 3 overlap, and both claims 2 and 3 encompass methods in which the construct contains ("comprises") both a DNA regulatory segment and an expressible, amplifiable gene.  See, for example, ARS's claim 31 (Exhibit 3004 col. 29.), which specifies that the DNA construct in accordance with claim 2 additionally comprises an expressible, amplifiable gene, and the disclosure at Exhibit 3004 column 5 lines 48-65.  That is, the DNA constructs of

claims 2 and 3 do not "comprise" only the noted elements. Exhibit 3002 ¶ 591 and Swain v. Mallory, 327 F.2d 983, 141 USPQ 209 (CCPA 1969).

(11)    ARS's claims 2 and 3 specify that the object of the methods is "modifying the expression characteristics of a predetermined gene within the genome of a cell line" by inserting a DNA construct comprising a DNA regulatory segment capable of modifying the expression characteristics of the gene or "an expressible, amplifiable gene capable of amplifying said gene," or both.  Those claims are not limited to methods that simply enhance or increase the expression characteristics of a predetermined gene that normally expresses a protein product within the unmodified cell.  The "modification of the expression characteristics of a predetermined gene within the genome of a cell line" also encompasses activating a "silent" gene—i.e., a gene that is present in the genome of a cell line, but which does not express an expression product in the "normal" (unmodified) cell.  [Exhibit 3004 col. 24 lines 6-24.]  However, the modifications do not include termination of a cell line's normal expression products.  [Exhibit 3004 col. 24 lines 6-8.]  Exhibit 3002 ¶ 592.

(12)    Genesys's claim 108 is directed to a "method of causing a mammalian cell to increase the level of expression of a gene of that cell's genome encoding a protein normally expressed by said gene..." (emphasis supplied).  That method is narrower in some respects than ARS's claims 2 and 3, in that the cell line must be a mammalian cell line and the modification of the expression characteristics must "increase the level of expression of a gene of the cell's genome encoding a protein normally expressed by said cell,...whereby expression of said gene in said cell is caused to occur."  The method step of claim 108, like the method step of ARS's claims 2 and 3, comprises "inserting a DNA construct through homologous recombination into said genome of said cell in proximity to said gene."  The definition of the construct in Genesys's

-6-

claim 108 is essentially a combination of the alternative definitions of the construct in ARS's

claims 2 and 3 in that the construct of claim 108 comprises "at least one of an amplifiable gene,

other regulatory sequence, or both." Exhibit 3002 ¶ 593.

(13)    ARS's claim 1 is directed to a method of <u>activating a predetermined normally</u>

<u>transcriptionally silent gene within the genome of a cell line so as to enable that cell line to</u>

<u>express the gene product of the normally silent gene</u>. That is, the object of the method of claim 1

is not to "enhance" or increase a cell line's production of an expression product that the cell

normally produces. Instead, the method of claim 1 <u>activates</u> a cell line so that it expresses a

product that the cell line <u>would not produce</u> prior to that activation. That is a quite different

inventive concept from the concept of causing the cell to simply produce more of a product that

it produced without any recombinant engineering. Exhibit 3002 ¶ 594.

(14)    The method of ARS's claim 1 comprises inserting a DNA construct into the

genome of the target cell by homologous recombination. That DNA construct <u>must</u> comprise a

DNA regulatory segment capable of stimulating expression of the "silent" target gene when it is

operatively linked to that target gene. That is, the method of <u>activating</u> a predetermined

<u>transcriptionally silent gene</u> within the genome of the cell line can be accomplished only by

inserting a DNA regulatory segment specifically chosen or designed to be "capable of

stimulating expression of said [predetermined, normally transcriptionally silent] gene." Exhibit

3002 ¶ 595

(15)    Although the DNA construct of ARS's claim 1 can <u>optionally</u> include an

expressible, amplifiable gene (compare ARS's claim 8), an expressible, amplifiable gene alone

(i.e., without an appropriate DNA regulatory sequence capable of stimulating expression of the

predetermined normally transcriptionally silent gene) will <u>not</u> result in activation of the normally

transcriptionally silent gene so as to enable the cell into which the amplifiable gene is inserted to express the product of the normally transcriptionally silent gene.  Exhibit 3002 ¶ 596.

(16)    Although each of Genesys's claims 107-109 recites the insertion into a cell of a DNA construct "comprising at least one of an amplifiable gene, other regulatory sequence, or both," none of those constructs requires the insertion of a DNA regulatory sequence at all, much less a DNA regulatory sequence "capable of stimulating expression of said [predetermined normally transcriptionally silent] gene."  Exhibit 3002 ¶ 597.

(17)    The concept of introducing a DNA construct containing a DNA regulatory segment chosen or designed to be capable of enhancing a normally transcriptionally silent gene in a cell line's genome, in a manner such at it will be operatively linked to that silent gene, for the purpose of enabling that cell to express the normally unexpressed gene product would not have been obvious to one of ordinary skill in the art during either the 1989 or the 1990 timeframe.  Moreover, even if the subject matter of ARS's claims 2 and 3 and/or the subject matter of Genesys's claim 108 had been available in the prior art, it would not have suggested to one of ordinary skill in the art in either the 1989 or the 1990 timeframe a method of activating a normally silent gene in a cell line as recited in ARS's claim 1.  Exhibit 3002 ¶ 598.

(18)    Present count 1, ARS's proposed count A-2, and ARS's proposed count A-3, with the single exception of ARS's claims 26 and 27 (which are directed to constructs used in the methods of those counts), are directed to methods for either (1) modifying the expression characteristics of a target gene within the genome of a predetermined cell line (count 1 and proposed count A-2) or (2) activating a silent gene in the genome of a predetermined cell line to cause that cell line to express a protein not previously expressed within that cell line (i.e., proposed count A-3).  Exhibit 3002 ¶ 599.

-8-

(19)    ARS's claims 17-19 read as follows:

17.    A genome of a cell line, the genome having a DNA regulatory segment operatively linked with a predetermined naturally occurring gene at an insertion site characterized by a predetermined DNA sequence, said DNA regulatory segment not being naturally occurring at said location in the genome.

18.    A cell line capable of expressing a gene product by a predetermined normally transcriptionally silent gene within the genome of said cell line, said genome having inserted therein a DNA regulatory segment operatively linked with said normally transcriptionally silent gene, said DNA regulatory segment being capable of promoting the expression of a gene product by said cell line.

19.    A cell line capable of enhanced expression of a gene product compared to the cell line from which it is derived, said gene product being the expression product of a predetermined endogenous gene within the genome of said cell, said genome having inserted therein in an operative manner, at or near said endogenous gene, an exogenous DNA regulatory segment and/or amplifiable gene capable of enhancing the expression of said gene product by said cell line.  [Exhibit 3004 col. 28.]

(20)    ARS claim 19 defines a cell line capable of enhanced expression of a gene product as compared to the cell line from which the new cell line is derived. The gene product is the expression product of a predetermined endogenous gene within the genome of the cell line. The cell line has been transformed by inserting, in an operative manner at or near the endogenous gene, an exogenous DNA regulatory segment and/or an amplifiable gene capable of enhancing the expression of the gene product by the transformed cell line. That is, claim 19 defines the cell lines that have been subjected to the transformation processes of ARS's claims 2 or 3 or both, although they are not limited to having been made by such processes. Exhibit 3002 ¶ 601.

(21)    ARS's claims 20, 21, and 52 depend directly or indirectly from claim 19. Exhibit 3004 cols. 28 and 30.

(22)    ARS's claim 18 defines cell lines capable of expressing a gene product of a predetermined normally transcriptionally silent gene within the genome of the cell line. That genome has been transformed according to the process of ARS's claim 1 by inserting a DNA regulatory segment operatively linked with the normally transcriptionally silent gene. The DNA regulatory segment is chosen or designed to be capable of promoting the expression of a gene product of the normally transcriptionally silent gene within that cell line. Exhibit 3002 ¶ 603.

(23)    ARS's claims 22-24 depend from ARS's claim 18 and define additional variations of the transformed cell lines of ARS's claim 18.

(24)    Genesys's claim 111 reads as follows:

> 111. A cell capable of expressing a gene at higher levels
>
> than that normally expressed by that cell, comprising heterologous
>
> DNA which comprises at least one amplifiable gene or a regulatory

-10-

sequence, inserted in said cell's genome in a region in the vicinity

of said gene, whereby said gene may be amplified and expressed.

[Exhibit 3006 page 2.]

(25)    Genesys's claim 111 defines a cell capable of expressing a gene at levels higher

than those normally expressed by the cell.  The cell comprises heterologous DNA which

comprises at least one of an amplifiable gene or a regulatory sequence inserted into the cell's

genome in a region in the vicinity of the gene of interest.  That is, the cell of claim 111 contains

exogenous (heterologous) DNA which comprises either an amplifiable gene, a regulatory

sequence, or both inserted into the vicinity of the gene of interest.  Accordingly, the cells that are

the subject matter of Genesys's claim 111 include similar types of cells to those of ARS's claim

19.  Exhibit 3002 ¶ 606.

(26)    Genesys's claims 105, 106, and 110 read as follows:

105.    A mammalian host cell that expresses a gene

product encoded by a target gene which is not normally expressed

within the genome of the cell line, said genome having inserted

therein a heterologous regulatory sequence operatively associated

with the normally nonexpressed target gene, so that the

mammalian host cell expresses the target gene product.  [Exhibit

3005 page 1.]

106.    A human 293 embryonal kidney cell, wherein the

genome of the cell has inserted therein an enhancer and promoter

of cytomegalovirus operatively associated with the human

erythropoietin gene, so that the cell expresses human

erythropoietin.  [Exhibit 3005 page 1.]

110.    A cell capable of expressing a gene not normally

expressed by that cell comprising heterologous DNA which

comprises at least one amplifiable gene or a regulatory sequence,

inserted in said cell's genome in a region in the vicinity of said

gene, whereby said gene may be amplified and expressed.  [Exhibit

3006 page 2.]

(27)    Genesys's claims 105 and 110 define cells that are capable of expressing a gene

product not normally expressed within the genome of the cells.  The cell that is the subject of the

claims is a transformed version of a cell to which a heterologous regulatory sequence and/or an

amplifiable gene has been inserted in the vicinity of the gene which does not normally express a

product in the untransformed cell.  The cells of Genesys's claims 105 and 110 were presented as

being directed to the same patentable invention as the cell lines of ARS's claim 18.  Exhibit 2005

page 1 and 2006 pages 3 and 4.  Exhibit 3002 ¶ 608.

(28)    Genesys's claim 106 defines a human 293 embryonal kidney cell, wherein the

genome of the cell has inserted therein "an enhancer and promoter of cytomegalovirus

operatively associated with the human erythroropoietin gene," "so that the cell expresses human

erythropoietin."  The "enhancer and promoter of cytomegalovirus" is "operatively associated

with the human erythropoietin gene."  In any event, claim 106 appears to be intended to

encompass the same type of transformed cells that are the subject matter of ARS's claim 19.

Exhibit 3002 ¶ 609.

(29)    One of ordinary skill in the art during either the 1989 or the 1990 timeframe would not have found it to be obvious that cell lines transformed to enhance or modify the expression characteristics of those cell lines according to ARS's claim 19 or Genesys's claim 106 and/or 111 could be modified to cause expression of a gene product of a normally transcriptionally silent gene within the genome of those cell lines or how to transform the cell lines of ARS's claim 19 and/or Genesys's claim 106 and/or 111 to cause those cell lines to express a gene product of a normally transcriptionally silent gene within the cell line's genome. Conversely, one of ordinary skill in the art during either the 1989 or the 1990 timeframe would not have found it to be obvious that the transformed cell lines of ARS's claim 18 or Genesys's claims 105, 110, or 112 would continue to express, but in an enhanced manner, the same gene products that the cell lines expressed prior to their transformation which enabled them to express the gene product of the normally transcriptionally silent gene.  Exhibit 3002 ¶ 610.

IV.    **Statement of the Reasons Why This Motion Should Be Granted**

A.    **ARS Bears the Burden of Proof with Respect to This Motion**

As the moving party, ARS bears the burden of proving by a preponderance of the evidence that its motion should be granted.  Kubota v. Shibuya, 999 F.2d 517, 523, 27 USPQ2d 1418, 1423 (Fed. Cir. 1993); Behr v. Talbott, 27 USPQ2d 1401, 1405 (PTOBPAI 1992) (expanded panel); and 37 CFR 1.637(a).

-13-

B.    **The Interference Should Be Redefined by Adding ARS's Proposed Count A-5 Because the Subject Matter of That Count Defines a Patentable Invention That Is Claimed by Both Parties and Which is Separately Patentable from the Subject Matter Defined by Present Count 1 and ARS's Proposed Counts A-2, A-3, and A-4**

1.    **The Motion is Contingent**

This motion is contingent upon Genesys's having an allowable claim directed to the subject matter defined by proposed count A-5.  If, as a result of ARS's motions under 37 CFR 1.633(a), Genesys has no patentable claim directed to that subject matter, this motion should not be reached.

2.    **The Subject Matter Defined by Proposed Count A-5 Defines an Invention That Would Not Have Been Anticipated by or Made Obvious by Count 1 or ARS's Proposed Counts A-2, A-3, or A-4**

Count 1 and ARS's proposed count A-2 are directed to a method for "modifying the expression characteristics of a predetermined gene within the genome of a cell line" (ARS's claims 2 and 3) or "causing a mammalian cell to increase the level of expression of a gene of the cell's genome encoding a protein normally expressed by said cell" (Genesys's claim 108). Those methods include inserting into the cell's genome a construct that includes a DNA regulatory segment, an expressible, amplifiable gene, or both.  The subject matter of proposed count A-5 is modified cell lines.  The modified cell lines of proposed count A-5 cannot be prepared by the methods of the current count and ARS's proposed count A-2 without the selection of or design of a particular DNA regulating segment capable of activating a silent gene that is specifically recited in ARS's proposed count A-3 and ARS's claim 1.  ARS's proposed count A-3 (ARS's claim 1) defines a process used to prepare the cell lines of proposed count A-5.  However, the cell lines of proposed count A-5 would not anticipate or make obvious the methods of proposed count A-3 because the methods by which the cells were made cannot be

-14-

determined by examining the structure of the cells.    Analysis of the cell lines (e.g., sequencing) would lead to a large number of DNA fragments that would not necessarily even include the DNA materials used in the constructs used to transform the cells.  Exhibit 3002 ¶ 611.

Moreover, the cell lines of proposed count A-5 do not anticipate the methods of count 1 or proposed count A-2.  That is because the cell lines themselves do not suggest the methods by which those cell lines were prepared or the results achieved by those methods.  That is, cell lines identical to or similar to those of proposed count A-5 could not be prepared by insertion of an expressible amplifiable gene into a cell line in a position proximal to an endogenous normally "silent" gene in order to activate that gene.  Exhibit 3002 ¶ 612.

Finally, as noted in Orikasa v. Oonishi, 10 USPQ2d 1996, 2003 (Comm'r 1990), a process and product do not normally constitute the same patentable invention.  As the opinion states:

> Depending on the facts of any particular case, it is possible, although highly unlikely, that a method of making a material and the material are directed to the same patentable invention.
> (Emphasis supplied.)

The cell lines of proposed count A-5 constitute a separate patentable invention with respect to the cell lines of proposed count A-4.  Where nothing in the prior art suggests that the result obtained by the process of the claim or count could be achieved, the prior art provides no motivation for even trying to achieve that result by modifying the prior art methods.  In re Dow Chemical Co., 837 F.2d 469, 473, 5 USPQ2d 1529, 1531 (Fed. Cir. 1988); and In re Vaeck, 947 F.2d 488, 495, 20 USPQ2d 1438, 1444 (Fed. Cir. 1991).

-15-

In this case, nothing in the prior art would have suggested to one of ordinary skill in the art in either the 1989 or the 1990 timeframe (1) that a process specifically designed to <u>activate</u> a normally transcriptionally silent gene might modify or enhance the production of a gene product already being produced in the target cell or (2) that a process for enhancing the known expression characteristics of a cell line could be modified to activate the expression of a "silent" gene's expression product.  Exhibit 3002 ¶ 613.

The cell lines of ARS's proposed count A-5 would not have anticipated or made obvious the cell lines of proposed count A-4 in either the 1989 or the 1990 timeframe.  Nothing in the subject matter of proposed count A-4 would have indicated that the cell lines of that proposed count have been, or could be, modified to express a gene product not normally expressed by the starting cell lines from which the transformed cell lines of proposed count A-4 were prepared.  Nothing in the subject matter defined by proposed count A-5 would have suggested to one of ordinary skill in the art in either the 1989 or the 1990 timeframe that such cell lines could be modified to enhance the expression characteristics of the cell lines of count A-4 with regard to a gene product normally produced by the cell line prior to transformation.  The expression characteristics and structures of the cell lines of proposed count A-4 would not have been predictable from knowledge of the expression characteristics and structures of the cell lines of proposed count A-5 and <u>vice versa</u>.  Exhibit 3002 ¶ 614.

In short the <u>cell</u> lines of proposed counts A-4 and A-5 have different genetic structures and possess different properties, neither of which would have been predictable from the other.

C.    **Compliance with 37 CFR 1.637(c)(1)**

1.    **37 CFR 1.637(c)(1)(i)**

ARS proposes the following count A-5 be added to the interference.

-16-

A cell line according to claim 18 of ARS's U.S. Patent No. 5,272,071 or claim 105, 110, or 112 of Genesys's application No. 08/102,390.

2.    **37 CFR 1.637(c)(1)(ii)**

This section is not applicable because ARS is a patentee, not an applicant.

3.    **37 CFR 1.637(c)(1)(iii)**

ARS is filing herewith its motions 1-6 for judgments that all of Genesys's claims 105-112 are unpatentable.  If those motions are granted, this motion will not be reached.  If any of Genesys's claims 105, 110, or 112 or a similar claim directed to the subject matter defined by those claims survives those motions, then those surviving Genesys's claims should be designated as corresponding to ARS's proposed count A-5.

4.    **37 CFR 1.637(c)(1)(iv)**

ARS's claims 17, 18, and 22-24 should be designated as corresponding to proposed count A-5.

5.    **37 CFR 1.637(c)(1)(v)**

Proposed count A-5 defines a separately patentable invention relative to the subject matter defined by existing count 1 and/or ARS's proposed counts A-2, A-3, and A-4 for the reasons set forth in section IV.B.2 above.

6.    **37 CFR 1.637(c)(1)(vi)**

This motion is accompanied by ARS's motion No. 15, which is a motion under 37 CFR 1.633(f) requesting the benefit of the filing dates of ARS's earlier filed applications with respect to the proposed count.

7.    **37 CFR 1.637(c)(1)(vii)**

This section is not applicable inasmuch as Genesys was not accorded in the Notice Declaring the Interference the benefit of the filing dates of any earlier filed applications with regard to the original interference count.  Genesys is even more unentitled to the benefit of any earlier filed application with respect to proposed count A-4.

Respectfully submitted,

Charles L. Gholz
Registration No. 26,395
Back-up Lead Attorney for ARS
OBLON, SPIVAK, McCLELLAND,
 MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, Virginia  22314
(703) 412-6485 (direct dial)
(703) 413-2220 (facsimile)
CGHOLZ@OBLON.COM (e-mail)

Of Counsel:

Roger L. Browdy, Esq.
Registration No. 25,618
BROWDY & NEIMARK, P.L.L.C.
624 9th Street, N.W.
Washington, D.C.20001
rlbrowdy@browdyneimark.com

-18-

Alton D. Rollins, Esq.
Registration No. 34,083
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, Virginia 22314
(703) 412-6475 (direct dial)
(703) 413-2220 (fax)
AROLLINS@OBLON.COM

James J. Kelly, Esq.
Registration No. 41,504
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, Virginia 22314
(703) 412-6475 (direct dial)
(703) 413-2220 (fax)
JKELLYS@OBLON.COM

## CERTIFICATE OF SERVICE

This is to certify that one copy of the foregoing is being sent by means of next business

day courier service addressed to:

Steven B. Kelber, Esq.
PIPER RUDNICK LLP
1200 Nineteenth Street, N.W.
Washington, D.C. 20036-2430

and

Linda R. Judge, Esq.
Cell Genesys, Inc.
500 Forbes Blvd.
South San Francisco, CA 94080

Dated: 29 A 07

Charles L. Gholz

I:\INTERFERENCE\CASES\231018SER\MOTION\MOTION 14.DOC

-19-